```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF GEORGIA
 2                      ATLANTA DIVISION

 3  FAIR FIGHT, INC. ET AL,          )
                                     )
 4              PLAINTIFFS,          )   CRIMINAL ACTION FILE
           V.                        )   NO. 2:20-CV-00302-SCJ
 5                                   )
    TRUE THE VOTE ET AL,             )
 6                                   )
                DEFENDANTS.          )
 7  _____)

 8

 9
    ----------------------------------------------------------
10
              BEFORE THE HONORABLE  STEVE C. JONES
11                 TRANSCRIPT OF PROCEEDINGS
                       DECEMBER 31, 2020
12
    ----------------------------------------------------------
13

14
         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
15        AND COMPUTER-AIDED TRANSCRIPT PRODUCED BY

16
         JANA B. COLTER, FAPR, RMR, CRR, CRC
17                OFFICIAL COURT REPORTER
                  1949 U.S. COURTHOUSE
18                75 TED TURNER DRIVE, SW
                  ATLANTA, GEORGIA  30303
19                   (404) 215-1456

20

21

22

23

24

25
```

```
1   APPEARANCES:

2
    FOR THE PLAINTIFFS:        ALLEGRA J. LAWRENCE-HARDY
3                              LESLIE J. BRYAN
                               ARIA CHRISTINE BRANCH
4                              UZOMA NKWONTA
                               DARA LINFENBAUM
5

6

7   FOR THE DEFENDANTS:        RAY STALLINGS SMITH, III
                               EMILIE O. DENMARK
8                              JAMES BOPP, JR.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

```
 1                       _  _  _

 2                  P R O C E E D I N G S

 3       (ATLANTA, FULTON COUNTY, GEORGIA, DECEMBER 31, 2020, VIA

 4   ZOOM VIDEOCONFERENCING.)

 5

 6            COURTROOM DEPUTY:  GOOD MORNING, EVERYONE.

 7   JUDGE JONES WILL BE WITH US IN JUST A MOMENT.

 8            THE COURT:  WELL, AS THEY SAY IN NASA, I THINK WE

 9   HAVE BLASTOFF, PEOPLE.  THAT'S THE REASON WHY I'M LOOKING

10   FORWARD TO SEEING ALL OF YOU-ALL LIVE, IN A REAL COURTROOM,

11   VERY, VERY SOON.

12            MR. SMITH:  YES, SIR, YOUR HONOR.

13            THE COURT:  GOOD MORNING, AND I APOLOGIZE FOR

14   EVERYTHING.  THERE'S A REASON WHY I WENT TO LAW SCHOOL, BECAUSE

15   SCIENCE WAS NOT MY TOP THING.

16            LET'S MAKE SURE WE HAVE EVERYBODY WE NEED TO HAVE

17   HERE THIS MORNING.

18            MS. WRIGHT, CAN YOU HEAR ME?

19            COURTROOM DEPUTY:  YES, SIR.  CAN YOU HEAR ME?

20            THE COURT:  LET'S SEE IF I CAN TURN THE VOLUME UP A

21   LITTLE BIT.

22            CAN YOU HEAR ME NOW?

23            COURTROOM DEPUTY:  YES, SIR.  I CAN HEAR YOU.  CAN

24   YOU HEAR ME?

25            THE COURT:  IF YOU WILL GO AHEAD AND CALL THE CASE
```

1  FOR TODAY.

2          COURTROOM DEPUTY:  YES, SIR.  THE COURT CALLS THE

3  MATTER OF FAIR FIGHT, INCORPORATED AND OTHERS V. TRUE THE VOTE

4  AND OTHERS, CIVIL ACTION NUMBER 2:20-CV-302.

5          THE COURT:  OKAY.  WILL THE PLAINTIFFS ANNOUNCE

6  EVERYONE THAT IS PARTICIPATING IN THIS HEARING THIS MORNING?

7          MS. LAWRENCE-HARDY:  YES.  GOOD MORNING, YOUR HONOR.

8          THE COURT:  GOOD MORNING.

9          MS. LAWRENCE-HARDY:  THE PLAINTIFFS ARE READY TO

10 PARTICIPATE.  WOULD YOU LIKE TO KNOW WHO I HAVE WITH ME TODAY?

11         THE COURT:  YES, MA'AM.

12         MS. LAWRENCE-HARDY:  THANK YOU, SIR.

13         THE COURT:  YES, MA'AM.

14         MS. LAWRENCE-HARDY:  LET ME FIRST THANK THE COURT FOR

15 MAKING TIME FOR US DURING THIS HOLIDAY WEEK FOR THIS URGENT

16 MATTER.

17         I AM PLEASED TO INTRODUCE THE COURT TO LEAD COUNSEL

18 IN THIS CASE FROM PERKINS COIE, ARIA BRANCH AND UZOMA NKWONTA,

19 WHO ARE BOTH HERE WITH US.  YOU ALSO HAVE HERE TODAY

20 LESLIE BRYAN, WHOM I KNOW THAT YOU KNOW, AND DARA LINDENBAUM AS

21 WELL AS MAIA COGEN FROM MY FIRM, YOUR HONOR.  SO THANK YOU FOR

22 YOUR TIME TODAY.

23         THE COURT:  WELL, GOOD MORNING TO ALL OF YOU-ALL AND

24 I'M GLAD TO SEE YOU-ALL TODAY.  AND I APOLOGIZE FOR HAVING YOU

25 HERE ON NEW YEAR'S EVE.  IT'S JUST THE WAY IT WORKS OUT.

1          FOR DEFENSE COUNSEL, WOULD YOU-ALL INTRODUCE

2  YOURSELVES AND WHO WILL BE LEAD COUNSEL AND WHO WILL BE WORKING

3  WITH YOU, MR. SMITH.

4          MR. SMITH:  YES, YOUR HONOR.  GOOD MORNING.

5          RAY SMITH FOR THE DEFENDANTS, YOUR HONOR.  AND I HAVE

6  WITH ME EMILIE DENMARK FROM MY FIRM.

7          AND I'D LIKE TO INTRODUCE TO YOU JAMES BOPP FROM THE

8  BOPP LAW FIRM.  HE'S GOING TO BE HANDLING THE CASE PRO HAC, AND

9  HIS ASSOCIATES, AND I'LL LET HIM INTRODUCE THOSE FOLKS TO YOU.

10 THEY'RE FROM TERRE HAUTE, INDIANA.

11         THE COURT:  ALL RIGHT.  MR. BOPP?

12         MR. BOPP:  THANK YOU, YOUR HONOR.  I DO HAVE

13 ASSOCIATES WHO ARE IN THE PUBLIC VIEWING OF THIS, I THINK.

14 THEY WILL NOT BE PARTICIPATING, SO I WILL HANDLE THE MATTER.

15 AND THANK YOU FOR ALLOWING ME TO PARTICIPATE IN YOUR COURT.

16         THE COURT:  VERY WELL.  THANK YOU FOR BEING HERE,

17 MR. BOPP, AND THE SAME THING I SAID TO YOU THAT I SAID TO

18 PLAINTIFFS' COUNSEL, I APOLOGIZE FOR HAVING YOU-ALL HERE ON NEW

19 YEAR'S EVE, BUT IT'S THE WAY IT WORKS OUT.

20         LET ME JUST STATE FOR THE RECORD THAT THE COURT

21 STARTED THIS HEARING OFF, I WAS IN MY COURTROOM, BUT BECAUSE OF

22 THE COMPUTER PROBLEMS WITH THE COMPUTER IN MY COURTROOM, I

23 MOVED TO MY OFFICE.  BUT IF ANYONE SHOWS UP IN THE COURTROOM,

24 OBVIOUSLY WE'RE DOING THIS BY ZOOM, BUT THE VIEW YOU SEE IS OF

25 MY OFFICE AND NOT OF MY COURTROOM BECAUSE OF COMPUTER PROBLEMS

1  WITH THE COMPUTER IN MY COURTROOM.

2          I'D LIKE TO START OFF THIS MORNING BY FIRST OF ALL,

3  THERE'S THREE ISSUES THIS MORNING WE HAVE TO ADDRESS, AND LET

4  ME SAY WHAT I PLAN ON DOING.  WE'RE GOING TO ADDRESS ALL OF

5  THEM.  I'M NOT GOING TO ISSUE A RULING ON ANY OF THEM, I'LL

6  EXPLAIN WHY LATER TODAY.  IT'S MY GOAL TO GIVE YOU-ALL A

7  WRITTEN ORDER THIS EVENING.  IT MIGHT BE AS EARLY AS 5:00, IT

8  MIGHT BE AS LAST AS 9:00, BUT I'M GOING TO GET YOU A RULING

9  TODAY IN WRITING ONE WAY OR THE OTHER.

10          WHAT I'D LIKE TO ADDRESS FIRST, THOUGH, IS THAT THE

11  DEFENDANTS HAVE FILED A MOTION TO DISMISS FOR INSUFFICIENT

12  PROCESS UNDER RULE 12(B)(4).

13          MR. BOPP, WILL YOU GO AHEAD, IF YOU WANT TO SAY

14  ANYTHING ORALLY ABOUT THAT MOTION.  I HAVE THE MOTION, I'VE

15  READ THE MOTION, BUT IF YOU WANT TO SAY ANYTHING, AND THEN I'LL

16  HERE FROM THE PLAINTIFFS REGARDING THAT MOTION.

17          MR. BOPP:  YES, JUST SHORTLY, YOUR HONOR.  WE

18  UNDERSTAND THE OBLIGATIONS OF THE PLAINTIFFS IS TO SUE THE

19  ACTUAL ORGANIZATION AND TO NAME THEM PROPERLY.  TRUE THE VOTE

20  IS INCORPORATED.  THEY DO NOT NOTE THAT IN EITHER THE CAPTION

21  OR IN THE PARAGRAPH DESCRIBED WHERE THEY NAME THEM.  THEY DO

22  NOT USE THE INCORPORATED.  AND WE UNDERSTAND THAT TO BE

23  IMPROPER AS NOT PROPERLY NAMING THEM, SO WE HAVE MOVED TO

24  DISMISS TRUE THE VOTE AND -- BECAUSE THEY ARE NOT PROPERLY

25  NAMED.

1        AND THEY NOTE IN THEIR PARAGRAPH THAT TRUE THE VOTE

2   IS INCORPORATED IN TEXAS, SO WE THINK -- WE WANT TO MAKE SURE

3   THAT THE CORPORATE PROTECTION EXTENDS HERE.

4        THE COURT:  WOULD YOU HAVE ANY PROBLEM -- AS YOU

5   KNOW, THE COURT HAS AUTHORITY TO AMEND -- SINCE YOU'RE SAYING

6   TRUE THE VOTE, INCORPORATED IS THE PROPER NAME, WOULD YOU HAVE

7   A PROBLEM IF THE COURT JUST AMENDS IT AND MAKES IT TRUE THE

8   VOTE, INCORPORATED?

9        MR. BOPP:  NOT AT ALL, YOUR HONOR.

10       THE COURT:  OKAY.  GOOD.  THANK YOU, MR. BOPP.

11       THEN WE WILL -- THE COURT WILL, WHEN I ENTER AN

12  ORDER, THE ORDER WILL SUBMIT MAKING ALL CORRECTIONS TO TRUE THE

13  VOTE, INCORPORATED.

14       MS. LAWRENCE, DO YOU HAVE ANY -- I DON'T THINK YOU

15  WILL HAVE ANY OBJECTION TO THAT, BUT I'LL ALLOW YOU TO BE

16  HEARD.

17       MS. LAWRENCE-HARDY:  YOUR HONOR, I'M JUST CHECKING

18  WITH MS. BRANCH, BUT I DO NOT BELIEVE WE HAVE ANY OBJECTIONS TO

19  THAT APPROACH.

20       MS. BRANCH:  NO OBJECTION, YOUR HONOR.

21       THE COURT:  MS. BRANCH, I APOLOGIZE.

22       THE COURT IS ORDERING TO MAKE THE AMENDMENT TO MAKE

23  IT TRUE THE VOTE, INCORPORATED.

24       THE SECOND MOTION IS A MOTION BROUGHT BY THE

25  PLAINTIFFS.

1          AND, MS. BRANCH, THIS IS A MOTION TO ALLOW THE

2    PLAINTIFFS JOHN DOE AND JANE DOE TO STAY ANONYMOUS.

3          I'LL HEAR FROM YOU AND THEN I'LL HEAR FROM MR. BOPP.

4          MS. BRANCH:  YES, YOUR HONOR.  MAY IT PLEASE THE

5    COURT, ARIA BRANCH ON BEHALF OF THE PLAINTIFFS.

6          YOUR HONOR, THIS IS A CASE ABOUT VOTER SUPPRESSION

7    AND VOTER INTIMIDATION TACTICS ENGAGED IN BY TRUE THE VOTE,

8    WHICH IS AN ORGANIZATION THAT HAS A HISTORY OF ENGAGING IN

9    MERITLESS VOTER CHALLENGES AND OTHER TACTICS THAT HAVE THE

10   EFFECT OF SUPPRESSING THE VOTE OF BLACK AND BROWN VOTERS ACROSS

11   THE COUNTRY.

12         FOLLOWING THE 2020 NOVEMBER PRESIDENTIAL ELECTION AND

13   NOW IN THE RUNUP TO THE JANUARY RUNOFF, TRUE THE VOTE HAS

14   PARACHUTED INTO GEORGIA AND IT HAS BROUGHT VOTER INTIMIDATION

15   EFFORTS ALONG WITH THAT.

16         BASED ON THE ORGANIZATION'S PUBLIC STATEMENTS, MANY

17   OF WHICH WE HAVE INCLUDED AS EXHIBITS TO OUR MOTION FOR

18   PRELIMINARY INJUNCTION, TRUE THE VOTE IS ENGAGING IN A

19   BROAD-BASED FACIAL ATTACK ON THE ELIGIBILITY OF VOTERS TO

20   PARTICIPATE IN THE RUNOFF ELECTIONS IN GEORGIA.

21         THIS HAS TAKEN THE FORM OF THREE MAJOR EFFORTS, THE

22   FIRST IS WHAT THEY REFER TO AS A, QUOTE/UNQUOTE, LANDMARK VOTER

23   CHALLENGE PROGRAM, IN WHICH THEY'RE CHALLENGING THE ELIGIBILITY

24   OF OVER 360,000 GEORGIA VOTERS TO VOTE IN THE RUNOFF.  THEY'RE

25   DOING THIS BASED ON A SINGLE DATA POINT, AND THAT IS THE FACT

```
 1   THAT THESE INDIVIDUALS HAVE CHANGED THEIR MAILING ADDRESS IN
 2   ACCORDANCE WITH THE NATIONAL CHANGE OF ADDRESS REGISTRY.
 3           THESE INDIVIDUALS HAVE CHANGED THEIR MAILING ADDRESS
 4   IN THE MIDDLE OF A PANDEMIC, WHERE MANY VOTERS ARE TRANSIENT
 5   FOR MANY DIFFERENT REASONS, WHETHER IT'S BECAUSE THEY'RE TAKING
 6   CARE OF FAMILY IN DIFFERENT STATES, WHETHER IT'S BECAUSE OF
 7   ECONOMIC PRESSURES, THEY'RE WORKING IN DIFFERENT STATES, AT
 8   THIS POINT IN TIME, A CHANGE OF ADDRESS, THIS SINGLE DATA POINT
 9   THAT DEFENDANTS ARE RELYING ON TO STRIKE THE ELIGIBILITY OF
10   VOTERS IS ESSENTIALLY JUNK SCIENCE.  IT IS NOT WARRANTED, AND
11   THAT'S WHY MOST OF THESE CHALLENGES HAVE BEEN REJECTED BY
12   COUNTIES.
13           THE COURT:  BUT WHY SHOULD I ALLOW YOUR CLIENTS TO
14   PROCEED ANONYMOUSLY?
15           MS. BRANCH:  YOU SHOULD ALLOW JANE AND JOHN DOE TO
16   PROCEED ANONYMOUSLY FOR TWO PRIMARY REASONS.  ONE, BECAUSE
17   TRUE THE VOTE'S VOTER INTIMIDATION TACTICS, THESE TACTICS WERE
18   THEY'RE CHALLENGING OVER 360,000 GEORGIA VOTERS AMOUNTS TO
19   VOTER INTIMIDATION, AS DETAILED IN OUR COMPLAINT AND IN OUR
20   MOTION FOR TEMPORARY RESTRAINING ORDER.
21           SECOND, BECAUSE THE DOE PLAINTIFFS FEAR RETALIATION
22   FROM DEFENDANTS AND THEIR SUPPORTERS FOR HAVING FILED THIS
23   LAWSUIT AND BEING ASSOCIATED WITH THE LAWSUIT.
24           NOW, THE ELEVENTH CIRCUIT HAS RECOGNIZED THAT
25   PLAINTIFFS SHOULD BE PERMITTED TO PROCEED ANONYMOUSLY IN
```

1   EXCEPTIONAL CASES INVOLVING MATTERS OF A HIGHLY SENSITIVE AND

2   PERSONAL NATURE WHERE THERE'S REAL DANGER OF PHYSICAL HARM OR

3   WHERE THE INJURY LITIGATED AGAINST WOULD BE INCURRED AS A

4   RESULT OF THE DISCLOSURE OF THE PLAINTIFFS' IDENTITY.

5            ALL THREE OF THOSE CIRCUMSTANCES ARE PRESENT HERE.

6   THIS IS AN EXCEPTIONAL CASE THAT REQUIRES ANONYMITY.  THIS CASE

7   IS TAKING PLACE AGAINST A BACKDROP OF A FEVER PITCH OF CLAIMS

8   OF VOTER FRAUD.  THIS IDEA THAT THERE ARE CERTAIN VOTERS IN THE

9   STATE OF GEORGIA WHO ARE ILLEGAL, WHO ARE NOT ENTITLED TO VOTE

10  AND WHO ARE EXERCISING THEIR RIGHT TO VOTE IN VIOLATION OF THE

11  LAW.

12           YOUR HONOR, WE HAVE SUBMITTED SEVERAL EXHIBITS THAT

13  DETAIL THE DIFFERENT THREATS THAT ELECTION OFFICIALS HAVE BEEN

14  UNDER WHEN JUST THESE RUMORS, THESE UNSUBSTANTIATED CLAIMS OF

15  VOTER FRAUD ARE MADE.

16           FOR EXAMPLE, IN FULTON COUNTY, AN ELECTION WORKER WAS

17  FORCED TO GO INTO HIDING AFTER HE WAS FALSELY ACCUSED OF

18  DISCARDING A BALLOT.  HIS PERSONAL INFORMATION WAS EXPOSED

19  ONLINE, INCLUDING HIS LICENSE PLATE.

20           A GWINNETT COUNTY ELECTION WORKER WAS THREATENED

21  ONLINE, ACCUSED OF BEING A TRAITOR, AND THREATENED WITH A

22  NOOSE.

23           THINGS HAVE GOTTEN SO BAD IN GEORGIA THAT A

24  REPUBLICAN OFFICIAL HAS WARNED THAT IF THESE CLAIMS OF VOTER

25  FRAUD DON'T STOP, AND THESE ARE JUST THE CLAIMS THAT

1    TRUE THE VOTE IS MAKING, THEY'RE MAKING THESE UNSUBSTANTIATED

2    CLAIMS OF VOTER FRAUD, IF THESE CLAIMS DON'T STOP, SOMEONE IS

3    GOING TO GET KILLED.

4          SO THE DOE PLAINTIFFS IN THIS CASE ARE AWARE OF THIS

5    HISTORY, THEY'RE AWARE OF THE DEFENDANT'S ROLE IN PERPETUATING

6    THIS FALSE NARRATIVE OF VOTER FRAUD, AND THEY'RE AWARE OF THIS

7    CULTURE OF INTIMIDATION AND THREATS AND THEY REASONABLY FEAR

8    FOR THEIR SAFETY IN THIS ENVIRONMENT.

9          THEY ARE CONCERNED THAT IF THEY ARE ASSOCIATED WITH

10   THIS LAWSUIT, THEIR PERSONAL INFORMATION WILL BE LEAKED ONLINE.

11         AND WE SUBMITTED IN EXHIBIT 2, A TWITTER POST FROM A

12   TWITTER FEED THAT IS ASSOCIATED WITH TRUE THE VOTE THAT HAS

13   THREATENED ON TWITTER THAT IF THE GEORGIA COUNTIES REFUSE TO

14   HANDLE THE CHALLENGES OF THESE 360,000, QUOTE/UNQUOTE,

15   INELIGIBLE VOTERS THAT TRUE THE VOTE HAS CHALLENGED, THEN THIS

16   INDIVIDUAL PLANS TO RELEASE THE ENTIRE LIST SO THAT AMERICA CAN

17   DO THE QUALITY CONTROL.  THOSE ARE HIS WORDS.  THAT TWITTER

18   POST IS IN EXHIBIT 2 OF OUR COMPLAINT.

19         GIVEN THIS ATMOSPHERE, THE DOE PLAINTIFFS HAVE A REAL

20   THREAT OF HAVING THEIR INFORMATION LEAKED ONLINE AND BEING

21   HARASSED AS A RESULT OF BEING ASSOCIATED WITH THIS LAWSUIT.

22         THEY'RE PRIVATE INDIVIDUALS WHO HAVE DONE NOTHING

23   WRONG.  THEY'RE ELIGIBLE TO VOTE IN GEORGIA.  THEY PAY TAXES IN

24   GEORGIA.  THEY MAINTAIN HOMES AND FAMILIES IN GEORGIA AND

25   THEY'RE IN AND OUT OF THE STATE TRAVELING BECAUSE OF PERSONAL

1   OBLIGATIONS AND WORK OBLIGATIONS.  BUT THEY HAVE A REAL FEAR

2   AND A LEGITIMATE THREAT OF HARASSMENT OR VIOLENCE IF THEIR

3   NAMES ARE ASSOCIATED WITH THIS LAWSUIT.

4           THE COURT:  MS. BRANCH, LET ME ASK YOU THIS QUESTION.

5   ONE OF THE THINGS THAT THE DEFENSE IS GOING TO BE CHALLENGING,

6   AND WE'RE GOING TO TALK ABOUT IT MORE LATER, IS STANDING IN

7   THIS CASE, THE JOHN AND JANE DOE.

8           I COULD BE WRONG, BUT I WOULD THINK YOU ARE GOING TO

9   HAVE TO GIVE SOME FACTS OR SOMETHING THAT COULD REALLY MAKE AN

10  IDENTIFICATION TO THEM.  YOU CAN START TALKING ABOUT HOW THEY

11  HAVE STANDING AND HOW THEY HAVE SOME OF THE THINGS I THINK

12  WE'LL PROBABLY GET INTO THAT STILL MIGHT LEAD TO

13  IDENTIFICATION.  IT'S KIND OF LIKE HAVING SOME SEXUAL CASES,

14  OBVIOUSLY IN A LOT OF THOSE CASES WE GO WITH JOHN DOE OR JANE

15  DOE OR WHATEVER, BUT SOMETIMES THEIR INFORMATION IS BROUGHT

16  FORWARD THAT IF SOMEONE KNOWS ABOUT THE SITUATION AND STILL IT

17  LEADS TO THEIR IDENTIFICATION.  WHAT DO YOU HAVE TO SAY ABOUT

18  THAT?

19          MS. BRANCH:  WELL, WE CERTAINLY RECOGNIZE THAT WE AS

20  THE PLAINTIFFS HAVE THE BURDEN TO PROVE STANDING IN THIS CASE,

21  AND WE PUT FORTH THE FACTS IN OUR COMPLAINT THAT SUBSTANTIATE

22  THE DOE STANDING.  I THINK IT IS SUFFICIENT TO CARRY OUR BURDEN

23  AT THIS STAGE IN THE LITIGATION.

24          THAT SAID, WE DO HAVE DECLARATIONS FROM BOTH OF THE

25  DOE PLAINTIFFS THAT WE ARE WILLING TO SUBMIT TO THE COURT FOR

1    THE COURT'S REVIEW IN-CAMERA.  THE DOE PLAINTIFFS --

2              THE COURT:  YOU READ MY MIND.  THAT WAS GOING TO BE

3    MY NEXT QUESTION, WHY CAN'T I SEE SOMETHING IN-CAMERA.  BECAUSE

4    YOU'VE NOT SUBMITTED TO ME AN AFFIDAVIT SO FAR.  SO YOU'RE

5    PREPARED FOR THE COURT SEE SOMETHING IN-CAMERA REGARDING JOHN

6    AND JANE DOE?

7              MS. BRANCH:  YES, YOUR HONOR, WE HAVE SIGNED A

8    DECLARATION FROM BOTH OF THEM THAT EXPLAIN THEIR CIRCUMSTANCES,

9    THEIR STANDING, AND THEIR REAL FEAR OF THREATS AND RETALIATION.

10             THE COURT:  WHEN WILL I GET THIS?  WHEN WILL I GET

11   THIS INFORMATION?

12             MS. BRANCH:  WE CAN SUBMIT IT TO YOU --

13             THE COURT:  EXCUSE ME?

14             MS. BRANCH:  WE CAN SUBMIT IT TO YOUR HONOR

15   IMMEDIATELY AFTER THIS HEARING, OR EVEN DURING IT IF, I CAN GET

16   SOMEONE TO --

17             THE COURT:  HERE'S WHAT I REALLY PREFER.  I REALLY

18   PREFER YOU DON'T SEND IT TO ME BY EMAIL.  I THINK MS. LAWRENCE

19   WOULD HAVE TO HAVE SOMEONE FROM HER OFFICE BRING IT TO THE

20   CLERK'S OFFICE AND THEY BRING IT TO ME SINCE YOU'RE SAYING THIS

21   IS DANGEROUS AND THINGS OF THAT NATURE, SO SOMETHING OF THIS

22   NATURE, I FEEL LIKE I NEED TO SEE SOMETHING IN-CAMERA.

23             SO, MS. LAWRENCE, I'M NOT TRYING TO ADD WORK TO YOUR

24   STAFF, BUT I'LL PROBABLY NEED SOMETHING BROUGHT TO MY OFFICE

25   TODAY, SINCE IT'S MY PLAN TO GET YOU-ALL AN ORDER OUT TODAY.

```
1   IT MAY BE LATE TODAY, BUT TODAY, SO...

2           MS. LAWRENCE-HARDY:  WELL, YOUR HONOR, WE WILL BE

3   HAPPY TO GET YOU WHATEVER WOULD BE HELPFUL TODAY.

4           THE COURT:  THANK YOU, MS. LAWRENCE.

5           WHAT ELSE, MS. BRANCH?

6           MS. BRANCH:  WELL, I CAN ADDRESS STANDING, YOUR

7   HONOR, IF YOU'D LIKE ME TO NOW --

8           THE COURT:  NOT RIGHT NOW.  ALL I WANT TO ADDRESS

9   RIGHT NOW IS YOUR MOTION TO PROCEED ANONYMOUSLY.  IF YOU DON'T

10  HAVE ANYTHING ELSE NOW, I'LL HEAR FROM MR. BOPP.

11          MS. BRANCH:  I HAVE JUST A COUPLE OF OTHER POINTS I'D

12  LIKE TO ADDRESS.

13          THE COURT:  OKAY.  I'M SORRY.  GO AHEAD.

14          MS. BRANCH:  THANK YOU, YOUR HONOR.  IN RESPONSE TO

15  THE DEFENDANT'S OPPOSITION TO OUR MOTION, IN THAT OPPOSITION,

16  THEY MAKE THE CLAIM THAT NAME AND ADDRESS INFORMATION IS NOT

17  WHAT SHOULD BE CONSIDERED HIGHLY SENSITIVE INFORMATION AND

18  THEREFORE IT DOESN'T MEET THE STANDARD TO PROCEED ANONYMOUSLY.

19  AND WE TAKE REAL ISSUE WITH THAT.

20          IN THIS CASE, EXPOSING THESE PLAINTIFFS' NAME AND

21  ADDRESS INFORMATION WILL SUBJECT THEM TO HARM.  THEY WILL BE,

22  YOU KNOW, PUBLICLY MADE AVAILABLE FOR THREATS.  THEY WORK IN

23  PUBLIC SETTINGS, SO INDIVIDUALS COULD SHOW UP TO THEIR HOME

24  ADDRESS, TO THEIR WORK ADDRESS.  THEY'RE EASILY IDENTIFIABLE

25  PEOPLE.
```

1          SO I DON'T -- WE DISAGREE, AND THE CASE LAW SUPPORTS

2    THAT, YOU KNOW, THIS IS IN THE COURT'S DISCRETION WHETHER WE

3    PROCEED ANONYMOUSLY, IT IS NOT THAT WE HAVE TO MEET SOME

4    SPECIFIC -- SOME SPECIFIC -- WE DON'T HAVE TO SAY THAT CERTAIN

5    SPECIFIC INFORMATION IS NOT SUBJECT FOR DISCLOSURE.

6          AND I THINK THAT THAT'S ALL I HAVE ON THAT, ON THAT

7    MOTION, BUT I'M HAPPY TO ADDRESS ANY -- ANY ARGUMENTS THAT

8    OPPOSING COUNSEL MAY HAVE.

9          THE COURT:  IF I UNDERSTAND YOU CORRECTLY, YOUR MAIN

10   ARGUMENT IS THAT JOHN AND JANE DOE HAVE POTENTIAL OF HAVING

11   PHYSICAL HARM OR DANGER BROUGHT TO THEM IF THEIR IDENTITY IS

12   REVEALED, AND OUT OF THAT FEAR, YOU ARE ASKING ME TO ALLOW THEM

13   TO PROCEED ANONYMOUSLY?

14         MS. BRANCH:  YES, YOUR HONOR.  AND THAT THAT FEAR IS

15   LEGITIMATE IN THIS CURRENT CLIMATE.

16         THE COURT:  AND YOU SUPPORT THAT WITH THE PROFFER

17   THAT YOU MADE ABOUT SITUATIONS THAT HAVE ALREADY OCCURRED HERE

18   IN GEORGIA, AND OF THAT NATURE.  ALL RIGHT.

19         MS. BRANCH:  THAT'S CORRECT, YOUR HONOR.

20         THE COURT:  ALL RIGHT.  THANK YOU, MS. BRANCH.

21         MR. BOPP?

22         MR. BOPP:  THANK YOU, YOUR HONOR.  I WILL TRY TO BE

23   MORE TARGETED TO ADDRESS THE MOTION THAT'S BEFORE YOU, HOWEVER,

24   I WOULD HAVE A FEW POINTS.

25         FIRST, OF COURSE ONE OF THE PROBLEMS HERE IS THAT THE

```
 1  COMPLAINT WAS NOT VERIFIED.

 2              THE COURT:  RIGHT.

 3              MR. BOPP:  AND THE -- EVEN THESE INDIVIDUAL

 4  PARAGRAPHS WERE NOT VERIFIED BY THE PLAINTIFFS.

 5              AND NONE OF THE FACTS -- NONE OF THE ALLEGATIONS IN

 6  THE COMPLAINT ARE VERIFIED.  WHEN YOU LOOK AT THE MOTION FOR A

 7  PRELIMINARY INJUNCTION AND LOOK AT THE EXHIBITS, NONE OF THOSE

 8  ARE VERIFIED, NONE OF THOSE ARE AUTHENTICATED, NONE OF THOSE

 9  ARE -- IS THERE ANY AFFIDAVIT OR DECLARATION THAT WOULD GIVE

10  THE COURT CONFIDENCE THAT THESE EXHIBITS ACTUALLY EXIST?

11              AND OF COURSE WE KNOW FROM OUR PLEADINGS THAT, I

12  MEAN, YOU REALLY HAVE TO HAVE AUTHENTICATION AND VERIFICATION

13  FOR THINGS LIKE NEWSPAPER ARTICLES OR EMAILS OR COPIES OF

14  WEBSITE PAGES, ET CETERA.

15              I MEAN, THE ONLY AFFIDAVIT IS AN AFFIDAVIT OF AN

16  EMPLOYEE OF FAIR FIGHT, WHICH IS TO ESTABLISH FAIR FIGHT'S

17  STANDING FOR HAVING DIVERTED RESOURCES, BUT WE DON'T CONTEST

18  THAT FAIR FIGHT HAS STANDING TO -- UNDER ELEVENTH CIRCUIT

19  PRECEDENT TO BE A PLAINTIFF IN THIS CASE.

20              BUT AS TO THE TWO INDIVIDUALS, WE'RE NOW TOLD THAT

21  THEY HAVE HAD -- THEY HAVE A DECLARATION, AND OF COURSE THEY

22  ARE OFFERING THAT YOU BE PROVIDED THAT IN-CAMERA.

23              I MEAN, WE REALLY WOULD OBJECT TO OUR BEING NOT ABLE

24  TO VIEW AND RESPOND TO THE DECLARATIONS, AND WE WILL -- WE

25  WOULDN'T HAVE A PROBLEM WITH IDENTIFYING INFORMATION BEING
```

1   DELETED, LIKE THE NAME OF THE PERSON, BUT I'M JUST REALLY

2   PUZZLED WHY THERE WASN'T AN ANONYMOUS DECLARATION AS TO THE

3   ALLEGATIONS IN THE COMPLAINT REGARDING THESE INDIVIDUALS.  BUT

4   WE -- WE REALLY THINK THAT WE WOULD BE ENTITLED TO EXAMINE AND

5   RESPOND TO THAT AFFIDAVIT AND TO THOSE DECLARATIONS.

6           THE COURT:  IF I'M HEARING YOU CORRECTLY, YOU WOULD

7   NOT HAVE A PROBLEM WITH DECLARATIONS THAT ARE REDACTED?

8           MR. BOPP:  RIGHT, CORRECT.

9           THE COURT:  WHAT IF THE COURT UPON SEEING THIS

10  IN-CAMERA DECLARATION DECIDES WHAT SHOULD BE REDACTED AND THEN

11  GIVE IT TO YOU?

12          MR. BOPP:  YES.  WE WOULD -- WE WOULD LIKE TO HAVE

13  THE OPPORTUNITY TO EXAMINE IT.  AND IT'S FINE AT THIS POINT IF

14  IT'S REDACTED.

15          NOW, I KNOW HOW THESE THINGS ARE HANDLED, YOU KNOW,

16  WHEN YOU HAVE A JOHN DOE OR A JANE DOE, YOU KNOW, THERE'S --

17  THERE'S DISCOVERY THAT CAN BE DONE, DONE WITH THEM, THEY CAN BE

18  DEPOSED AND ALL OF THAT BUSINESS BUT -- AND THERE CAN BE A

19  PROTECTIVE ORDER PROTECTING THEIR IDENTITY FROM DISCLOSURE, AND

20  WE WOULDN'T HAVE A PROBLEM WITH ANY OF THAT, IF THAT'S THE WAY

21  THE COURT'S GOING.

22          BUT -- BUT WE REALLY THINK THERE IS A PUBLIC --

23  NUMBER ONE, AS YOU KNOW, I THINK, THERE'S A VERY IMPORTANT

24  PUBLIC INTEREST IN COURT PROCEEDINGS AND CLAIMS AND PARTIES IN

25  THE COURT TO BE TRANSPARENT AND PUBLICLY DISCLOSE.  IT'S VERY

1  RARE FOR SOMEONE TO BE ABLE TO PROCEED ANONYMOUSLY.  AND THAT

2  REALLY REQUIRES, I THINK, ONE OF TWO THINGS HERE, ONE IS THAT

3  THERE IS ACTUAL EVIDENCE, AND I USE THE WORD "EVIDENCE" TO MEAN

4  EVIDENCE, NOT ALLEGATIONS, BECAUSE WE'VE GOT A MILLION

5  ALLEGATIONS, MANY OF THEM SCANDALOUS ALLEGATIONS, ABOUT THE

6  ACTIVITIES OF THE DEFENDANTS HERE.  AND THAT -- THAT'S NOT

7  EVIDENCE.

8         SO EVIDENCE THAT THERE'S A REASONABLE PROBABILITY, AS

9  THE SUPREME COURT SAID IN *DELL V. REED*, THAT THE PUBLIC

10 DISCLOSURE OF THE NAMES OF THESE INDIVIDUALS WOULD SUBJECT THEM

11 TO HARASSMENT AND INTIMIDATION.  AND THAT IS NOT A SUBJECTIVE

12 STANDARD.  I MEAN, I KNOW SOMETHING ABOUT *DELL V. REED*, I

13 ARGUED IT IN THE SUPREME COURT, SO IT -- IT'S A PRETTY STRICT

14 STANDARD AND JUST SIMPLE ALLEGATIONS OR SUBJECTIVE FEARS ARE

15 NOT SUFFICIENT.

16        AND OF COURSE HERE, WE HAVE ZERO EVIDENCE, ZERO

17 EVIDENCE, THAT ANY OF THE 350,000 PEOPLE WHO HAVE BEEN SUBJECT

18 TO AN ELECTORAL CHALLENGE HAVE BEEN HARASSED OR INTIMIDATED.

19 WE HAVE ZERO.  IN FACT, THEIR COMPLAINT, FULL OF SCANDALOUS

20 ALLEGATIONS, HAS -- DOESN'T EVEN ALLEGE THAT, THAT THAT HAS

21 EVER OCCURRED WHILE THEY SAY THAT THOSE NAMES ARE ALREADY ON

22 THE PUBLIC RECORD, SO THEY'RE TALKING ABOUT SUBJECTIVE FEARS.

23        SO THAT'S A REALLY IMPORTANT CONCEPT AND I DON'T

24 THINK THEY'VE MET THEIR -- THEIR BURDEN.  AND OF COURSE I CAN'T

25 COMMENT ON THE DECLARATIONS, BECAUSE, YOU KNOW, IT'S BEEN

1    SPRUNG ON US, YOU KNOW, JUST A FEW MINUTES AGO.

2            THE COURT:  LET ME ASK YOU THIS QUESTION.  EXCUSE ME

3    FOR INTERRUPTING, MR. BOPP.

4            MR. BOPP:  YES.

5            THE COURT:  BUT LET ME ASK YOU THIS QUESTION:  IF

6    THEY DO FILE DECLARATIONS AND THE COURT SEES IT AND THE COURT

7    GOES THROUGH DOING THE REDACTIONS, ANYTHING THAT'S TIED TO

8    THEIR IDENTITY, WOULD YOU NEED TIME TO RESPOND TO THAT

9    DECLARATION?

10           MR. BOPP:  WELL, WE MAY.  I WOULD LIKE TO HAVE THE

11   OPPORTUNITY.  WE WOULD HAPPY TO RESPOND, YOU KNOW, VERY QUICKLY

12   TO THE COURT ON WHETHER OR NOT WE WANT TO RESPOND.  OKAY?  AND

13   IT MAY BE THAT WE WAIVE THAT, AND I CAN CERTAINLY SEE A

14   CIRCUMSTANCE IN WHICH I WOULD WAIVE THAT, SO -- BUT I -- IT'S

15   DIFFICULT TO PRE-JUDGE THAT.

16           THE COURT:  THANK YOU, SIR.

17           MR. BOPP:  NOW, THE FINAL THING I WOULD SAY IS --

18   WHICH GOES TO THE HEART OF THIS, IS THEIR ALLEGATION THAT

19   EMPLOYING THE 230 PROCEDURE IS ITSELF INTIMIDATION.  THAT'S

20   WHAT SHE JUST ARGUED.  THAT IS THE HEART OF THEIR CASE.  WELL,

21   LATE NIGHT, JUDGE GARDNER UPHELD THE 230 PROCEDURE AND PROVIDED

22   IN THE 230 PROCEDURE CERTAIN DUE PROCESS PROTECTIONS THAT WOULD

23   BE EMPLOYED IN HOW THE PROCEDURE IS IMPLEMENTED, THAT SHE

24   SPECIFICALLY PERMITTED, BECAUSE THEY CHALLENGED THIS, ELECTORS

25   CAN MAKE THE CHALLENGE.  SHE DIDN'T PROHIBIT ELECTORS FROM

1    MAKING THE CHALLENGE BASED UPON THE NATIONAL CHANGE OF ADDRESS

2    INFORMATION.  BUT SHE DID ISSUE DUE PROCESS PROTECTIONS

3    REGARDING THE STEPS THAT OCCUR AFTER THE CHALLENGE IS MADE.

4         SO I JUST DON'T SEE UNDER THE LAW, UNDER THE

5    VOTING RIGHTS ACT, UNDER THE CONSTITUTION THAT ONE COULD CLAIM

6    THAT A PERFECTLY LAWFUL PROCEDURE THAT HAS BEEN UPHELD BY A

7    FEDERAL COURT YESTERDAY CAN BE DEEMED ILLEGAL, BECAUSE IT IS,

8    QUOTE, INTIMIDATION TO EMPLOY -- TO LAWFULLY EMPLOY THAT

9    PROCEDURE.

10        SO IF THEY'RE TRYING TO BOOTSTRAP THIS -- THE ABILITY

11   OF THE CLAIM, THE INDIVIDUAL CLAIM TO PURSUE THIS BASED UPON

12   THAT CLAIM, WELL, I HAVE -- I HAVE TO ADDRESS IT AND I JUST

13   DID.  I JUST DON'T SEE HOW THAT COULD POSSIBLY BE THE CASE.

14        AND OF COURSE, THERE ARE NUMEROUS OTHER ARGUMENTS I

15   WILL SOON MAKE WHEN WE GET TO THE MERITS ON WHY IT WOULD BE

16   UNCONSTITUTIONAL TO INTERPRET THE VOTING RIGHTS ACT, SECTION

17   11(B) INTIMIDATION, TO PUNISH AND PROHIBIT PEOPLE FROM

18   EXERCISING THEIR FIRST AMENDMENT RIGHT TO PETITION THE

19   GOVERNMENT FOR REDRESS OF GOOD GRIEVANCES, WHICH IS EXACTLY

20   WHAT THIS PROCEDURE PROVIDES, PUNISH THEIR SPEECH THAT'S

21   ASSOCIATED WITH IT AND ENJOIN THEM FROM PROTECTING THEIR FIRST

22   AMENDMENT RIGHT TO VOTE, WHICH THIS PROCEDURE PROTECTS.

23        THE COURT:  ONE OF THE THINGS -- I READ THE ORDER

24   THAT JUDGE GARDNER PUT IN, AND ON PAGE 2 OF THAT ORDER, IN

25   MUSCOGEE COUNTY, SHE DOES SAY, THOUGH:  MUSCOGEE COUNTY

1   DEFENDANTS ARE ENJOINED FROM UPHOLDING A CHALLENGE TO ANY

2   VOTER'S ELIGIBILITY SOLELY ON THE BASIS OF INFORMATION FROM THE

3   NCOA REGISTRY.

4           AND THIS IS SOMETHING WE'RE GOING TO GET INTO A WHOLE

5   LOT MORE TODAY, BUT THERE'S A CASE OUT OF THE ELEVENTH CIRCUIT

6   HERE, IT'S CALLED A-R-C-I-A, *ARCIA V. FLORIDA SECRETARY OF*

7   *STATE*, IT'S 772 F.3D 1335.

8           IN THAT CASE, THE ELEVENTH CIRCUIT SAYS -- AND I

9   THINK THIS IS WHERE THE CONFUSION IS GETTING IN ALL OF THIS,

10  YOU DO HAVE 21-2-230 AND 21-2-229, IN THIS CASE 21-2-230 DEALS

11  WITH THE ELECTION, INDIVIDUAL CHALLENGES OF AN ELECTOR BY

12  ANOTHER ELECTOR IN THAT COUNTY OR JURISDICTION IS NOT WRONG,

13  BASED ON INDIVIDUAL INFORMATION, BUT AS THEY EXPLAIN IN ARCIA,

14  WHEN YOU HAVE SYSTEMATIC CHALLENGES WITHIN 90 DAYS OF AN

15  ELECTION, THEN I THINK THAT MIGHT BE A CONFLICT WITH THE

16  NATIONAL VOTER REGISTRATION ACT.

17          AND ONE OF THE QUESTIONS I ASKED YOU IN THE COURSE OF

18  THIS -- AND YOU DON'T HAVE TO ANSWER RIGHT NOW -- IS WHEN

19  YOU'RE CHALLENGING OVER 360,000 PEOPLE, THAT IS NOT INDIVIDUAL,

20  THAT IS SYSTEMATIC, AND IT'S DEFINITELY WITHIN 90 DAYS.

21          NOW, YOU'RE PROBABLY SAYING, BUT, JUDGE, WE'RE

22  DEALING WITH DID WE VIOLATE 11(B) OF THE VOTER REGISTRATION

23  ACT.  AND THAT WOULD BE VERY CORRECT, THE PLAINTIFF'S GOT TO

24  SHOW THAT BECAUSE OF THIS -- AND I THINK YOU-ALL DON'T DISAGREE

25  THAT YOU-ALL WOULD CHALLENGE 360,000 PEOPLE IN GEORGIA BASED ON

1   THE NCOA, SO I THINK THERE THERE'S A LITTLE ARGUMENT I THINK

2   CAN BE MADE THERE ABOUT A SYSTEMATIC CHALLENGE, BUT THE

3   QUESTION IS DOES THIS SYSTEMATIC CHALLENGE COME TO THE LEVEL OF

4   VIOLATING 11(B) OF THE VOTER REGISTRATION ACT.

5           AND I READ JUDGE GARDNER'S ORDER, AND SHE DID GO

6   BACK, SHE ISSUED A TEMPORARY RESTRAINING ORDER, AND THEN

7   YESTERDAY, SHE ISSUED A PRELIMINARY INJUNCTION THAT SAID BEN

8   HILL, 150 PEOPLE, FINE, MUSCOGEE COUNTY, SHE GRANTED IT IN

9   PART, AND I THINK BASICALLY WHAT SHE DID IS KIND OF JUST LEFT

10  WHAT MUSCOGEE COUNTY WAS ALREADY DOING IN PLACE, THE

11  PROVISIONAL BALLOTS.

12          BUT THE QUESTION THAT I THINK HAS TO COME UP, YOU'RE

13  RIGHT, YOU CAN EXERCISE YOUR RIGHT AS AN ELECTOR IN A

14  PARTICULAR COUNTY TO CHALLENGE SOMEONE ON AN INDIVIDUAL BASIS

15  WITHIN 90 DAYS OF AN ELECTION.  THE QUESTION IS THOUGH, IS THAT

16  IF YOU'RE DOING IT SYSTEMATICALLY DOES THAT RISE TO THE LEVEL

17  OF VOTER INTIMIDATION OR HARASSMENT.

18          MR. BOPP:  WELL, I'M -- I'M PREPARED TO ANSWER THAT

19  QUESTION FOR SURE, YOUR HONOR.  AND I'M HAPPY TO DO IT NOW OR

20  WHEN YOU --

21          THE COURT:  I'M SURE YOU ARE.  I CAN TELL BY THE LOOK

22  ON YOUR FACE THAT YOU'RE READY TO GIVE ME AN ANSWER, BUT NOT

23  YET, NOT YET.  WE'RE NOT THERE JUST YET.

24          MR. BOPP:  OKAY.  FAIR ENOUGH.

25          THE COURT:  MS. BRANCH, MR. BOPP POINTS OUT TWO VERY

1    IMPORTANT POINTS.  THE COMPLAINT IS NOT VERIFIED, THERE IS

2    NOTHING VERIFIED IN THIS PACK OF MOTIONS AND COMPLAINTS THAT

3    HAVE BEEN FILED.  ARE YOU PREPARED TO FILE A DECLARATION FROM

4    JANE AND JOHN DOE OR DO YOU OBJECT TO THAT?

5            MS. BRANCH:  SO I WANT TO MAKE A COUPLE OF POINTS,

6    YOUR HONOR, IN RESPONSE TO THAT QUESTION AND ALSO TO MR. BOPP'S

7    ARGUMENT.  SO THE FIRST IS THAT --

8            THE COURT:  LET'S TRY NOT TO GET TOO MUCH INTO

9    ARGUMENT, THOUGH, ABOUT WHETHER OR NOT THIS IS A VIOLATION OF

10   11(B).  I'M GOING TO GIVE YOU GUYS ALL THE TIME YOU NEED --

11   WELL, NOT ALL THE TIME YOU NEED, BUT AS MUCH TIME AS I THINK

12   YOU NEED TO ARGUE IT.

13           MS. BRANCH:  SURE.  NO, NOT IN RESPONSE TO THAT.

14           BUT HE DID ARGUE, AND YOUR QUESTION GOES TO THE POINT

15   ABOUT WHETHER THE EVIDENCE WE'VE SUBMITTED IS ADMISSIBLE,

16   WHETHER IT'S VERIFIED.  THE CASE LAW IS CLEAR THAT AT THE

17   PRELIMINARY INJUNCTION AND THE TRO STAGE, WHICH IS WHERE WE ARE

18   NOW, A DISTRICT COURT MAY RELY ON AFFIDAVITS AND HEARSAY

19   MATERIALS WHICH MAY BE ADMISSIBLE EVIDENCE.

20           THE COURT:  I DON'T HAVE ANY AFFIDAVITS HERE FROM

21   YOU, THOUGH.

22           MS. BRANCH:  WELL, SO, YOUR HONOR, YOU HAVE ONE FROM

23   FAIR FIGHT AND WE ARE WILLING TO SUBMIT FOR YOUR IN-CAMERA

24   REVIEW THE TWO AFFIDAVITS FROM JANE AND JOHN DOE.

25           THE COURT:  THAT'S SOMETHING THAT I NEED TO SEE.

```
 1              MS. BRANCH:  ONE POINT ON THAT IS THAT WE WOULD LIKE
 2   TO BE -- WE WOULD LIKE TO REVIEW THE COURT'S REDACTIONS TO THE
 3   DOE DECLARATIONS PRIOR TO THEM BEING SUBMITTED, JUST TO MAKE
 4   SURE THAT THEY'RE COMFORTABLE WITH THE INFORMATION THAT WILL BE
 5   (AUDIO DISRUPTS).
 6              THE COURT:  THAT'S ONLY FAIR.  THAT SOUNDS FAIR.  OF
 7   COURSE.
 8              MS. BRANCH:  THANK YOU, YOUR HONOR.
 9              BUT THE DEFENDANTS IN THEIR -- IN THEIR OPPOSITION,
10   THEY RAISE ALL OF THESE VARIOUS TECHNICALITIES ABOUT OUR
11   MOTION.  WE'RE NOT REQUIRED TO SUBMIT A VERIFIED COMPLAINT.
12   WE'VE SUBMITTED -- WE WILL SUBMIT ADDITIONAL AFFIDAVITS.  WE
13   HAVE SUBMITTED AN AFFIDAVIT FROM A SENIORITY ADVISER TO FAIR
14   FIGHT.
15              BUT THEY CAN'T DEFEAT A TRO MOTION BY RAISING THESE
16   TECHNICALITIES AND TO ACTUALLY RAISING OBJECTIONS.  SO THEY
17   DON'T -- THEY RAISE THE QUESTION ABOUT THE AUTHENTICITY OF THE
18   EXHIBITS, MOST OF WHICH ARE PUBLIC INTERNET PAGES THAT ARE
19   AVAILABLE FOR ANYONE TO SEE.  THEY HAVE NO GROUNDS TO QUESTION
20   THE AUTHENTICITY OF THOSE EXHIBITS.  THERE'S NO QUESTION THAT
21   THEY'RE --
22              THE COURT:  WHY NOT?  WHY NOT?  WHY DON'T THEY HAVE
23   GROUNDS TO QUESTION THE AUTHENTICATION OF THESE EXHIBITS?
24              MS. BRANCH:  BECAUSE THEY'RE AVAILABLE PUBLICLY.
25   THEY CAN GO ONLINE AND VERIFY THE AUTHENTICITY OF THOSE
```

1   EXHIBITS.  AND THEY DON'T ACTUALLY OBJECT TO THE AUTHENTICITY,

2   THEY JUST RAISE THIS SPECTER OF QUESTION ABOUT AUTHENTICITY THE

3   SAME WAY THEY RAISE THE SPECTER OF VOTER FRAUD.

4          THE COURT:  SHOULD I NOT BE BASING MY DECISION ON --

5   IF I DIDN'T HAVE AFFIDAVITS FROM JOHN AND JANE DOE WITHOUT

6   AUTHENTICATING -- IN OTHER WORDS, I WOULD BE BASING IT ON

7   BASICALLY -- WOULD I JUST NOT BASICALLY BE RULING ON WHAT'S IN

8   THE BRIEFS?

9          MS. BRANCH:  YOU'D BE RULING ON WHAT'S IN THE BRIEFS,

10  BUT ALSO IN THE EXHIBITS, BECAUSE AS A -- YOU KNOW, WE'RE

11  ALLOWED TO SUBMIT AT THIS STAGE IN THE LITIGATION AFFIDAVITS

12  AND HEARSAY.  AND SO YOU ARE WELL -- THE COURT IS WELL WITHIN

13  ITS POWER TO RELY ON THE HEARSAY MATERIALS THAT WE'VE

14  SUBMITTED, THE PUBLIC MATERIALS THAT WE'VE SUBMITTED.

15         WE, OF COURSE, CAN SUBMIT AN ATTORNEY DECLARATION

16  ATTESTING TO THE AUTHENTICITY OF THOSE EXHIBITS, IF THAT WOULD

17  BE HELPFUL FOR THE COURT, BUT IT'S MY POSITION THAT WE'RE NOT

18  REQUIRED TO DO THAT AND THE COURT CAN RELY ON THOSE EXHIBITS IN

19  RULING ON OUR MOTION.

20         THE COURT:  ALL RIGHT.  OKAY.  THANK YOU.

21         I WILL NOT RULE AT THIS POINT IN TIME ON THE MOTION

22  FOR ANONYMITY IN THIS MATTER, I WILL WAIT UNTIL I RECEIVE THE

23  IN-CAMERA INFORMATION AND PROCEED FROM THERE.

24         ALL RIGHT.  LET'S GET INTO NOW THE MOTION FOR THE

25  PRELIMINARY INJUNCTION.

1            AND MS. BRANCH, YOU CAN GO AHEAD AND START.

2            MS. BRANCH:  THANK YOU, YOUR HONOR.

3            THE COURT:  LET ME ASK YOU THIS QUESTION.

4            MS. BRANCH:  OKAY.

5            THE COURT:  HAS TRUE THE VOTE PUBLISHED ANY

6    CHALLENGES TO THE -- HAVE THEY PUBLISHED ANY CHALLENGES TO

7    THEIR LIST?  HAS TRUE THE VOTE PUBLISHED ANY OF THEIR CHALLENGE

8    LIST?  HAVE THEY PUBLISHED THAT CHALLENGE LIST?

9            MS. BRANCH:  SO I'M NOT SURE WHETHER TRUE THE VOTE

10   HAS PUBLISHED THE CHALLENGE LIST, BUT THE CHALLENGE LISTS ARE

11   AVAILABLE PUBLICLY, SO THEY HAVE --

12           THE COURT:  HOW?

13           MS. BRANCH:  -- SUBMITTED CHALLENGES, THEY'VE SAID,

14   TO OVER 85 COUNTIES.

15           THE COURT:  HOW ARE THEY AVAILABLE PUBLICLY?  I THINK

16   I KNOW THE ANSWER, BUT I NEED TO HEAR IT FROM YOU.  HOW ARE

17   THEY AVAILABLE PUBLICLY?

18           MS. BRANCH:  YES, YOUR HONOR.  HOW ARE THEY AVAILABLE

19   PUBLICLY, WAS THAT THE QUESTION?

20           THE COURT:  YEAH.  YES, MA'AM.

21           MS. BRANCH:  THEY'RE AVAILABLE PUBLICLY BECAUSE SOME

22   OF THE COUNTIES HAVE MADE THEM AVAILABLE.  AND THEN ALSO,

23   IMPORTANTLY, AN INDIVIDUAL WHO IS ASSOCIATED WITH TRUE THE VOTE

24   IS THREATENING, ON HIS TWITTER ACCOUNT, TO MAKE THEM PUBLICLY

25   AVAILABLE.

1        THE COURT:  BUT HE HASN'T DONE IT SO FAR.  SO THE

2   ONLY WAY THEY'RE AVAILABLE PUBLICLY IS THROUGH THE COUNTIES,

3   WHEREIN THERE'S A CHALLENGE UNDER 230, YOU'RE SAYING THE

4   COUNTIES THEN MAKE THEM PUBLIC?  I THINK COBB COUNTY MAY HAVE

5   DONE SO.

6        MS. BRANCH:  THAT'S RIGHT, YOUR HONOR.  COBB COUNTY,

7   FORSYTH COUNTY, A COUPLE OF OTHER COUNTIES HAVE MADE THOSE

8   LISTS PUBLIC, BUT IMPORTANTLY, THEY WOULDN'T BE --

9        THE COURT:  I THINK MR. BOPP IS PROBABLY SAYING WELL,

10  JUDGE, WE DIDN'T DO IT, THE COUNTIES DID IT.

11       MS. BRANCH:  RIGHT, YOUR HONOR.  BUT THE POINT IS

12  THAT THEY'RE ENGAGED -- TRUE THE VOTE IS ENGAGED IN THESE MASS

13  VOTER CHALLENGES THAT ARE COMPLETELY UNSUBSTANTIATED.  WITHOUT

14  HAVING MADE THESE CHALLENGES, THESE LISTS WOULD NOT BE MADE

15  PUBLICLY AVAILABLE.

16       AS YOUR HONOR NOTED EARLIER, THIS -- WHAT THEY'RE

17  DOING IS UNPRECEDENTED.  CHALLENGING OVER 360,000 GEORGIANS

18  BASED ON THEIR ELIGIBILITY TO VOTE BASED ON ONE DATA POINT,

19  WHICH IS A CHANGE OF ADDRESS NOTIFICATION, IS UNPRECEDENTED.

20  THEY ADMIT THAT IN THEIR PAPERS AND ONLINE.  THEY TALK ABOUT

21  THIS BEING A LANDMARK -- A LANDMARK PROGRAM THAT IS EXTREMELY

22  AGGRESSIVE.

23       SO, YOU KNOW, WE ARE NOT CHALLENGING THE LEGALITY OF

24  GEORGIA'S CHALLENGE STATUTE.  WHAT WE ARE CHALLENGING IS THE

25  MANNER IN WHICH TRUE THE VOTE HAS TAKEN ADVANTAGE OF THAT

1  STATUTE IN THE MIDDLE OF A PANDEMIC.

2          AND IMPORTANTLY, THEY DIDN'T START BRINGING THESE

3  CHALLENGES UNTIL AFTER EARLY VOTING HAD BEGUN.  SO VOTERS WERE

4  ALREADY CASTING THEIR BALLOTS, THEY WERE IN POLLING PLACES

5  DROPPING OFF BALLOTS AT DROP BOX LOCATIONS AND THEN THEY

6  BROUGHT THIS CHALLENGE.

7          THE COURT:  WELL, LET ME ASK YOU THIS QUESTION,

8  MS. BRANCH, YOU SAY YOU'RE NOT CHALLENGING THE LEGALITY OF

9  GEORGIA'S 21-2-230 OR 229, BUT IN A SENSE, AREN'T YOU?  BECAUSE

10  IF THE BOARD OF ELECTIONS OR CHALLENGES BASED ON INFORMATION ON

11  THE NCOA LIST WITHIN 90 DAYS OF AN ELECTION, AREN'T THEY

12  CONFLICTING WITH THE NATIONAL VOTER REGISTRATION ACT, AND IF

13  THAT'S THE CASE, AREN'T WE TALKING ABOUT THE SUPREMACY CLAUSE,

14  PREEMPTION?

15          MS. BRANCH:  THAT'S CORRECT, YOUR HONOR, AND THAT'S

16  EXACTLY WHAT THE JUDGE --

17          THE COURT:  SHOULD THESE COUNTIES BE PARTIES TO THIS

18  CASE?

19          MS. BRANCH:  NOT TO THIS CASE, BECAUSE WE DON'T HAVE

20  A NATIONAL VOTER REGISTRATION ACT CLAIM IN THIS CASE.  THIS

21  CASE IS ABOUT TRUE THE VOTE'S ACTIONS AND WHETHER THE

22  CHALLENGES, WHICH IS ONLY ONE PART OF THEIR PROGRAM, I WANT TO

23  EMPHASIZE THAT, SO YES, THEY HAVE ENGAGED IN THESE MASS

24  CHALLENGES THAT ARE UNPRECEDENTED.

25          AND THEY ALSO HAVE AN ELECTION INTEGRITY HOTLINE.

1   THEY ARE SHOWING UP AT DROP BOX LOCATIONS WATCHING VOTERS DROP

2   OFF THEIR BALLOTS.  THEY'VE CREATED A FUND TO INCENTIVIZE

3   PEOPLE TO REPORT SO-CALLED ALLEGATIONS OF ELECTION MALFEASANCE.

4   SO THIS IS ONE OF -- THE MASS CHALLENGE IS JUST ONE PART OF

5   THEIR PROGRAM.

6           AND THE QUESTION HERE IS WHETHER IN THE CULTURE AND

7   THE ATMOSPHERE OF VOTER FRAUD THAT EXISTS -- THESE CLAIMS OF

8   ILLEGAL VOTING IN GEORGIA THAT EXIST AND THAT TRUE THE VOTE IS

9   HELPING TO PERPETUATE, WHETHER TRUE THE VOTE'S ACTIONS RISE TO

10  THE LEVEL OF VIOLATING THE VOTING RIGHTS ACT.

11          AND, YOUR HONOR, I WOULD CONTEND THAT THEY NOT ONLY

12  HAVE REACHED THE LEVEL THAT THE VOTING RIGHTS ACT IS INTENDING

13  TO PREVENT, BUT THEY HAVE VERY MUCH CROSSED THE LINE.  THE

14  VOTING RIGHTS ACT --

15          THE COURT:  LET'S GO THROUGH, LET'S SEE IF WE CAN GO

16  POINT BY POINT TO CONNECT THE DOTS OF WHAT TRUE THE VOTE HAS

17  DONE THAT COULD BE CALLED VOTER INTIMIDATION OR VOTER

18  HARASSMENT ON THE LEVEL OF THE VOTER REGISTRATION ACT.

19          OKAY.  I THINK ONE, YOU'RE SAYING FILING THESE

20  360,000 CHALLENGES IS ONE WAY YOU'RE SAYING THAT THEY ARE

21  TRYING TO INTIMIDATE AND HARASS.  IS THAT ONE?

22          MS. BRANCH:  CORRECT, YOUR HONOR.

23          THE COURT:  OKAY.  TWO WOULD BE -- YOU'RE SAYING TWO,

24  IS THIS MILLION-DOLLAR BOUNTY.  NOW, LET'S TALK ABOUT TWO A

25  LITTLE BIT.  HOW DOES TWO RELATE TO THE CLAIMS IN THIS CASE?

1      MS. BRANCH:  SO THE CREATION OF THIS MILLION-DOLLAR

2  BOUNTY IS INCENTIVIZING INDIVIDUALS IN GEORGIA TO REPORT VOTER

3  FRAUD, REPORT CLAIMS OF VOTER FRAUD TO TRUE THE VOTE.  AND

4  TRUE THE VOTE THEN -- CAN THEN PUBLICIZE THOSE CLAIMS AND

5  THEY -- AND THEY'RE CREATING THIS CULTURE OF -- THIS IDEA THAT

6  THERE ARE ILLEGAL VOTERS IN GEORGIA.  THEY ARE PUBLICIZING THIS

7  IDEA.  AND THEY'RE CREATING INCENTIVES TO -- TO, YOU KNOW,

8  SEEK -- TO FEED THESE CLAIMS.

9      AND THIS IS HAVING A REAL EFFECT ON FAIR FIGHT'S

10  EFFORTS.  IT IS AN ORGANIZATION THAT EXISTS TO PROTECT THE

11  RIGHTS OF VOTERS, INCLUDING BLACK AND BROWN VOTERS, AND ENGAGE

12  US IN GOTV EFFORTS.  AND THESE EFFORTS THAT TRUE THE VOTE ARE

13  ENGAGED IN ARE HAVING A NEGATIVE IMPACT ON FAIR FIGHT'S ABILITY

14  TO ACHIEVE ITS MISSION.

15      FAIR FIGHT IS ENGAGING IN RESOURCE DIVERSION MERGE.

16  THEY'RE HAVING TO MOVE STAFF WHO ARE FOCUSED ON GOTV EFFORTS TO

17  FOCUS NOW ON MAKING SURE THAT VOTERS ARE AWARE OF THESE

18  CHALLENGES, CALLING VOTERS, TRACKING THESE CHALLENGES ACROSS

19  THE STATE OF GEORGIA, SHOWING UP AT ELECTION BOARD HEARINGS TO

20  HELP DEFEND THESE --

21      THE COURT:  WELL, LET'S TALK ABOUT THE INTIMIDATION

22  PART.  I THINK NO ONE IS CHALLENGING FAIR FIGHT'S STANDING.

23      BUT AS FAR AS VOTER INTIMIDATION, YOU'RE SAYING IT'S

24  INTIMIDATING VOTERS IN GEORGIA, IN PARTICULAR VOTERS THAT

25  APPEAR ON THE NCOA LIST.  I'M ASSUMING JOHN DOE AND JANE DOE IS

1    ON THIS LIST.

2              MS. BRANCH:  CORRECT.

3              THE COURT:  OKAY.  AND SINCE FAIR FIGHT'S COMING NOT

4    AS AN ASSOCIATE STANDING, BECAUSE I DON'T THINK THEY'RE

5    CLAIMING THAT THEY HAVE ANY MEMBERS THAT ARE BEING INTIMIDATED,

6    THEY'RE COMING AS A DIVERSION OF RESOURCES.  SO REALLY WHAT

7    WE'RE TALKING ABOUT THE INTIMIDATION HERE IS JANE AND JOHN DOE,

8    CORRECT?

9              MS. BRANCH:  THAT'S CORRECT, YOUR HONOR.

10             THE COURT:  AND SO WHAT I'M HEARING YOU SAY IS THAT

11   JANE AND JOHN DOE IS ON THIS LIST, AND THE FACT THAT THEY HAVE

12   THIS MILLION-DOLLAR BOUNTY OUT, IF IT BECOMES KNOWN THAT JANE

13   AND JOHN DOE IS ON THIS LIST, THEIR LIVES COULD BE IN DANGER?

14             MS. BRANCH:  THAT'S CORRECT, YOUR HONOR.  AND NOT

15   JUST JANE AND JOHN DOE, BUT OVER --

16             THE COURT:  OVER 300,000 PEOPLE.

17             MS. BRANCH:  -- 300,000 GEORGIANS WHO ARE BEING

18   CHALLENGED.

19             THE COURT:  OKAY.  WHAT'S ANOTHER WAY THAT

20   TRUE THE VOTE IS ATTEMPTING -- TRYING TO INTIMIDATE AND HARASS

21   THESE VOTERS?

22             MS. BRANCH:  SO THEY'VE SET UP -- I MEAN, THEY'VE

23   ENGAGED IN LOTS OF PUBLIC STATEMENTS.

24             THE COURT:  LIKE WHAT?

25             MS. BRANCH:  I'M SORRY.

```
1              THE COURT:  WHAT HAVE THEY SAID PUBLICLY?

2              MS. BRANCH:  THEY HAVE RELEASED, THEY'VE MADE PRESS

3    RELEASES.  IF YOU LOOK AT THE TWITTER ACCOUNT IN EXHIBIT 2 THIS

4    INDIVIDUAL IS AFFILIATED WITH TRUE THE VOTE, AND HE HAS

5    THREATENED TO RELEASE THE NAMES OF INDIVIDUALS.

6              THE COURT:  IS THIS THE CRUSADERS FOR FREEDOM TWITTER

7    OR IS THIS ANOTHER TWITTER?

8              MS. BRANCH:  CRUSADE FOR FREEDOM, YES, YOUR HONOR.

9              THE COURT:  SO YOU'RE SAYING THAT THE CRUSADE FOR

10   FREEDOM TWITTER, TRUE THE VOTE IS RESPONSIBLE FOR THAT?

11             MS. BRANCH:  SO IN HIS TWITTER ACCOUNT, HE TWEETS AND

12   SAYS, QUOTE, WE HAVE CHALLENGED OVER 360,000 VOTERS IN GEORGIA.

13   SO THAT "WE" IS TRUE THE VOTE, BECAUSE TRUE THE VOTE IS THE

14   ORGANIZATION THAT IS RESPONSIBLE FOR THOSE CHALLENGES.  AND SO

15   HE IS ENGAGED IN THREATENING AND INTIMIDATING THERE, BECAUSE

16   HE'S THREATENING TO RELEASE THE NAMES OF THE INDIVIDUALS WHO

17   ARE ON THESE LISTS IF TRUE THE VOTE DOESN'T GET WHAT IT WANTS.

18             THE COURT:  IS THERE ANYTHING THAT TRUE THE VOTE HAS

19   KNOWLEDGE THAT CRUSADE FOR FREEDOM IS AN AGENT OF THEIRS, AND

20   THEY'VE ACKNOWLEDGED AND AGREED WITH WHAT THE INDIVIDUAL

21   CRUSADE FOR FREEDOM HAS SAID?  I UNDERSTAND HE SAID "WE," BUT,

22   YOU KNOW, SOMETIMES PEOPLE INCLUDE FOLKS IN IT WITHOUT THE

23   OTHER PEOPLE'S CONSENT.

24             MS. BRANCH:  WELL, IN TRUE THE VOTE'S BRIEF IN

25   OPPOSITION TO OUR MOTION THEY SAY THAT WE HAVE NOT PROVEN THAT
```

1   THIS INDIVIDUAL WAS ASSOCIATED WITH TRUE THE VOTE, BUT THEY

2   CERTAINLY DON'T DISCLAIM THAT HE IS.  THEY NEVER ONCE SAY THAT

3   THIS INDIVIDUAL WHO OWNS THIS TWITTER ACCOUNT IS NOT ASSOCIATED

4   WITH TRUE THE VOTE.  THEY HAD THE OPPORTUNITY TO DO SO AND THEY

5   DID NOT.

6           THE COURT:  IF MR. BOPP SITTING HERE TODAY DISCLAIMED

7   CRUSADE FOR FREEDOM'S TWITTER, THEN WHAT WOULD YOU SAY TO THAT?

8           MS. BRANCH:  THEN -- THEN THAT WOULD BE -- I MEAN, I

9   THINK THAT'S SOMETHING, ONE, THAT NEEDS TO BE PROVEN, SO

10  POTENTIALLY EXPEDITED DISCOVERY WOULD BE WARRANTED ON THAT

11  ISSUE, BUT I DO THINK --

12          THE COURT:  WELL, LOOK AT THE TIME, YOU'VE ONLY GOT

13  FIVE DAYS UNTIL JANUARY THE 5TH.  I DON'T MIND LETTING YOU-ALL

14  GIVE ME AS MUCH INFORMATION AS YOU WANT, BUT THE MORE

15  INFORMATION YOU GIVE ME, THE MORE TIME THAT THE RULING WILL BE

16  DELAYED.  OF COURSE, IT MIGHT -- I'VE GOT A QUESTION TO

17  MR. BOPP I'LL ASK LATER ABOUT ARE THERE GOING TO BE ANY MORE

18  CHALLENGES, BUT --

19          MS. BRANCH:  UNDERSTOOD.  I WANT TO MAKE THE POINT,

20  YOUR HONOR, THAT THE IDEA OF MASS VOTER CHALLENGES INTIMIDATING

21  VOTERS IN VIOLATION OF THE VOTING RIGHTS ACT IS NOT A NOVEL

22  CONCEPT.

23          MOST RECENTLY, THE EASTERN DISTRICT OF VIRGINIA HELD

24  THAT PLAINTIFFS STATED A VALID CLAIM UNDER 11(B) WHERE

25  DEFENDANTS PUBLISHED THE NAMES OF ALLEGEDLY INELIGIBLE VOTERS,

1   WHICH IS ESSENTIALLY WHAT IS BEING DONE HERE AND WHAT IS

2   THREATENED TO BE DONE HERE.

3          TRUE THE VOTE WHEN THEY MAKE THESE CHALLENGES, THEY

4   KNOW THAT THEY ARE PART OF THE PUBLIC RECORD, THEY BECOME PART

5   OF THE PUBLIC RECORD AND THAT COUNTIES MAY OR MAY NOT RELEASE

6   THEM, THERE ARE ALSO (AUDIO DISRUPTS) --

7          THE COURT:  LET'S TALK ABOUT THAT VIRGINIA CASE,

8   MS. BRANCH.  ISN'T IT TRUE IN THAT VIRGINIA CASE, THOUGH, IT

9   WAS NOT JUST THE CHALLENGE, IT WAS TO THE TOTALITY OF WHAT THEY

10  DID THAT LED TO THE RULE.  YOU POINTED OUT ONE OF THE THINGS

11  THEY DID, PUBLISHING THE NAMES THEMSELVES OF THESE INDIVIDUALS,

12  THAT'S WHY I WAS ASKING YOU TO GIVE ME THINGS THAT YOU ARE

13  INTIMATING THAT TRUE THE VOTE HAS DONE.

14         MS. BRANCH:  THAT'S TRUE, YOUR HONOR, BUT THERE

15  ARE -- I MEAN, THE SAME WAY THAT TRUE THE VOTE -- THE SAME WAY

16  THAT IN THAT CASE THERE WAS A TOTALITY OF THE CIRCUMSTANCES,

17  THAT EXISTS HERE AS WELL.  TRUE THE VOTE IS ENGAGED IN MORE

18  THAN JUST MASS VOTER CHALLENGES.

19         THE COURT:  SO FAR YOU'VE GIVEN ME TWO THINGS.

20  YOU'VE GIVEN ME THE BOUNTY AND YOU'VE GIVEN ME THE CRUSADE FOR

21  FREEDOM TWITTER AND THE MASS CHALLENGES.  OF COURSE I THINK YOU

22  MIGHT HAVE THE CRUSADE FOR FREEDOM TWITTER MESSAGE BEING

23  DISAVOWED BY TRUE THE VOTE, BUT I'LL LET THEM ANSWER

24  THEMSELVES.

25         WHAT ELSE THOUGH?  WE'RE TALKING ABOUT THE TOTALITY

```
 1   HERE.  IS IT FAIR TO SAY JUST THE CHALLENGES ALONE IN
 2   THEMSELVES, WOULD THAT BE ENOUGH TO VIOLATE 11(B)?
 3           MS. BRANCH:  I DO THINK THAT THE CHALLENGES ALONE
 4   WOULD BE ENOUGH TO VIOLATE 11(B), BUT THERE IS THIS TOTALITY OF
 5   THE CIRCUMSTANCES --
 6           THE COURT:  WHY?
 7           MS. BRANCH:  -- INCLUDING THE EFFORTS THAT
 8   TRUE THE VOTE IS ENGAGED IN, WHICH CANNOT BE DIVORCED,
 9   YOUR HONOR, FROM THE CIRCUMSTANCES OF THESE CLAIMS OF ILLEGAL
10   VOTING AND VOTER FRAUD THAT EXISTS IN GEORGIA RIGHT NOW.
11           THE LAW UNDER SECTION (B) DOES NOT REQUIRE US TO TIE
12   EVERY SPECIFIC INSTANCE OF VOTER INTIMIDATION THAT EXISTS IN
13   THE STATE TO TRUE THE VOTE.  THE TEST IS WHETHER VOTER
14   INTIMIDATION IS TAKING PLACE AND DEFENDANTS ARE PRESUMED TO
15   INTEND THE NATURAL CONSEQUENCES OF THEIR ACTION, WHICH MEANS
16   THEY CANNOT DIVORCE THEIR ACTIONS FROM THE CULTURE OF VOTER
17   FRAUD THAT THEY HELPED CREATE.
18           AND THESE INSTANCES OF VOTER INTIMIDATION AND FEAR
19   AND THREATS, WHAT HAPPENED IN FULTON COUNTY, WHAT HAPPENED TO
20   THE ELECTION WORKER IN GWINNETT COUNTY.  THESE THREATS ARE ALL
21   EVIDENCE THAT THE NATURAL CONSEQUENCE OF THE ACTIONS THAT
22   TRUE THE VOTE IS ENGAGED IN ARE VOTER INTIMIDATION.  WE CAN'T
23   DIVORCE THEIR ACTIONS FROM THE CONTEXT IN WHICH THEY'RE TAKING
24   PLACE, AND THAT IS THE TEST UNDER SECTION (B).
25           YOU KNOW, IT IS IMPORTANT TO NOTE THAT TRUE THE VOTE
```

1   HAS BEEN FANNING THESE FLAMES OF VOTER FRAUD, WHICH NUMEROUS

2   COURTS HAVE SAID JUST DOES NOT EXIST.  THEY'VE BEEN DOING IT

3   SINCE THE 2020 PRESIDENTIAL ELECTION.  THEY FILED LAWSUITS

4   FOLLOWING THE 2020 PRESIDENTIAL ELECTION WHERE THEY ALLEGE

5   VOTER FRAUD, THEY DISMISSED THOSE CASES FOUR DAYS LATER BECAUSE

6   THEY COULDN'T PROVE IT.

7          SO NOW WHAT THEY'VE DONE IS THEY'VE GONE TO COUNTIES

8   TO BYPASS THE COURT SYSTEM TO MAKE THESE ALLEGATIONS OF VOTER

9   FRAUD, BOTH BEFORE THE COUNTIES AND PUBLICLY.  THEY HAVE

10  CREATED AND CONTRIBUTED TO THIS CULTURE OF INTIMIDATION.  AND

11  THE SPECIFIC EFFORTS THAT TRUE THE VOTE HAS ENGAGED IN, THE

12  VOTER HOTLINE, THE BOUNTY, THE MASS CHALLENGES OF OVER 360,000

13  GEORGIANS, WHO THEY SAY THEMSELVES IS UNPRECEDENTED.

14          IF YOU LOOK AT THEIR WEBSITE, THEY TALK ABOUT, YOU

15  KNOW, THIS HUGE PROBLEM OF VOTER FRAUD.  THEY SAY NO RETREAT,

16  NO SURRENDER, THEY USE THREATENING LANGUAGE.  ALL OF THAT IS

17  EXISTING IN THIS CULTURE OF VOTER INTIMIDATION AND THREATS AND

18  IT AMOUNTS TO A VIOLATION OF SECTION 11(B).

19          THEY ARE PRESUMED TO INTEND THE NATURAL CONSEQUENCE

20  OF THEIR ACTIONS, SO WE CAN'T DIVORCE THE SPECIFIC ACTIONS THAT

21  THEY'RE ENGAGED IN, WHICH I DO THINK AMOUNT TO VOTER

22  INTIMIDATION FROM THE CULTURE IN WHICH THEY ARE TAKING PLACE.

23          THE COURT:  QUESTION, IN THE DEFENDANTS' BRIEF, THEY

24  SAY THEY HAVE NO RELATIONSHIP TO PLAINTIFFS' EXHIBITS 1111,

25  1112, 1115, 1116, 1117 AND 1122.  WERE THOSE EXHIBITS MORE FOR

```
 1   A STARKER CONTEXT AND BACKGROUND OR WERE THOSE EXHIBITS FOR THE
 2   TOTALITY OF THE CIRCUMSTANCES?
 3           MS. BRANCH:  THOSE EXHIBITS ARE TO SHOW THE TOTALITY
 4   OF THE CIRCUMSTANCES, TO SHOW THE CULTURE IN WHICH
 5   TRUE THE VOTE'S ACTIONS ARE TAKING PLACE IN GEORGIA.  WE ARE IN
 6   AN UNPRECEDENTED TIME IN OUR HISTORY WHERE VOTERS ARE BEING
 7   ACCUSED OF ENGAGING IN VOTER FRAUD, AND MANY OF THEM VOTERS OF
 8   COLOR BEING ACCUSED OF ENGAGING IN VOTER FRAUD WITH NO BASIS.
 9           THE COURT:  LISTEN TO MY QUESTION.  THE QUESTION IS
10   THAT THE DEFENDANTS SAY THEY HAVE NO RELATIONSHIP TO THOSE
11   EXHIBITS.  WHAT DO YOU HAVE TO SAY ABOUT THAT?  THEY'RE SAYING
12   WE DON'T HAVE ANYTHING TO DO WITH THOSE EXHIBITS.
13           MS. BRANCH:  WELL, I MEAN, THESE INSTANCES OF THREATS
14   AND COERCION AND INTIMIDATION OF ELECTION OFFICIALS, THESE ARE
15   INDIVIDUALS WHO ARE PAID TO PROTECT AND RUN OUR ELECTIONS, THEY
16   MAY NOT --
17           THE COURT:  I TOTALLY AGREE WITH YOU.  I TOTALLY
18   AGREE WITH YOU.  I THINK IT'S TOTALLY WRONG, ANYBODY THAT
19   THREATS SOMEONE IN THE SECRETARY OF STATE'S OFFICE OR ANYBODY
20   IN THE LOCAL ELECTIONS OFFICE IS TOTALLY WRONG AND THEY SHOULD
21   BE PROSECUTED TO THE FULL EXTENT OF THE LAW.  I DON'T DISAGREE
22   WITH YOU AT ALL.
23           BUT WHAT I'M ASKING YOU IS THAT TRUE THE VOTE SAID WE
24   HAD NOTHING TO DO WITH IT, ON AGAIN, 1111, 1112, 1115, 1116,
25   1117, AND 1122, THEY SAID WE HAVE NO RELATIONSHIP.
```

1          MS. BRANCH:  RIGHT.  SO THAT'S NOT THE TEST UNDER

2    11(B).  SO THE TEST IS WHETHER THEIR ACTIONS HAVE CREATED,

3    UNDER AN OBJECTIVE VIEW, WHETHER THEY HAVE CONTRIBUTED TO

4    CREATING VOTER INTIMIDATION.  SO THE TEST WASN'T WHETHER THEY

5    WERE SPECIFICALLY TIED TO THOSE INSTANCES.  THE TEST IS THAT

6    UNDER THE TOTALITY OF THE CIRCUMSTANCES, VIEWING THEIR ACTIONS

7    IN THE CONTEXT OF THOSE -- YOU KNOW, THE CIRCUMSTANCES THAT ARE

8    PRESENT IN THOSE EXHIBITS, WHETHER IT AMOUNTS TO VOTER

9    INTIMIDATION.  THEY CAN'T JUST DISCLAIM THAT THEY'RE ENGAGED IN

10   VOTER INTIMIDATION BY SAYING, OH, NO, WE'VE DIDN'T HAVE

11   ANYTHING TO DO WITH THAT.  THEY'RE WELL AWARE OF THE

12   CIRCUMSTANCES, MANY OF WHICH THEY'VE HELPED CREATE, AND THOSE

13   CIRCUMSTANCES ARE WHAT'S HAVING AN EFFECT ON JANE AND JOHN DOE.

14          JANE AND JOHN DOE ARE AWARE OF THESE THREATS TO

15   ELECTION OFFICIALS, THEY'RE AWARE OF THESE MASS VOTER

16   CHALLENGES.  THE 360,000 GEORGIANS WHO HAVE BEEN CHALLENGED,

17   THEY'RE AWARE OF THIS CULTURE, THIS IDEA THAT THEY'RE BEING

18   TAGGED AS ILLEGAL.  AND IF THEIR INFORMATION IS RELEASED, IF

19   THEIR NEIGHBORS FIND OUT, THEY COULD BE SUBJECT TO CRIMINAL

20   PROSECUTION FOR THE ALLEGATIONS THAT DEFENDANTS ARE MAKING

21   AGAINST THEM.  AND THOSE ALLEGATIONS ARE UNSUBSTANTIATED.

22   THEY'RE BASED ON ONE DATA POINT, THE FACT THAT THESE

23   INDIVIDUALS MAY HAVE CHANGED THEIR MAILING ADDRESS IN THE

24   MIDDLE OF A GLOBAL PANDEMIC WHICH HAS LASTED FOR OVER A YEAR,

25   THERE ARE ANY NUMBER OF CIRCUMSTANCES WHY THESE INDIVIDUALS MAY

1    HAVE MOVED OUT-OF-STATE OR MAY BE TRANSIENT AND WITHIN STATES.

2    AND I THINK THE MUSCOGEE COUNTY OPINION RECOGNIZES THAT.  IT

3    SAYS THAT YOU CAN'T -- THAT CHALLENGES TO VOTERS BASED ON THAT

4    SOLE DATA POINT, BASED ON THE FACT THAT THEY'VE CHANGED THEIR

5    ADDRESS ARE NOT SUFFICIENT.  THERE HAS TO BE MORE TO SHOW THAT

6    THESE VOTERS ARE INELIGIBLE.

7             THE COURT:  WELL, YES, BUT -- I DON'T WANT TO GET TOO

8    MUCH INTO THE ORDER OF ANOTHER JUDGE, BUT SINCE YOU BROUGHT IT

9    UP, HOWEVER, JUDGE GARDNER DOES ALLOW MUSCOGEE COUNTY TO STILL

10   MAKE THESE PEOPLE VOTE BY PROVISIONAL BALLOTS, AND THEY'RE

11   STILL GOING TO HAVE HEARINGS ON THESE PROVISIONAL BALLOTS UP

12   THROUGH JANUARY THE 8TH.

13             MS. BRANCH:  CORRECT, YOUR HONOR.  AND THAT IS THE

14   REAL -- THAT IS THE REAL THREAT HERE IS THAT THESE VOTERS ARE

15   BEING CHALLENGED AND THE PRESUMPTION IS NOW ON THEM TO PROVE

16   THEIR ELIGIBILITY WHEN IT'S BASED ON JUNK SCIENCE, ESSENTIALLY.

17   AND THERE ARE SEVERAL COURTS THAT HAVE FOUND THAT.  AND THE

18   STATUTE OF THE NVRA MAKES CLEAR THAT A CHANGE OF ADDRESS IS NOT

19   SUFFICIENT TO REMOVE SOMEONE FROM THE VOTER ROLLS.

20             THE COURT:  IN ORDER TO HAVE THESE PEOPLE VOTE BY

21   PROVISIONAL BALLOT AND THEY HAVE TO HAVE THESE HEARINGS, DID

22   NOT THE MUSCOGEE COUNTY BOARD OF ELECTIONS HAVE TO FIND

23   PROBABLE CAUSE?

24             MS. BRANCH:  RIGHT, BUT THEY STILL -- THE DEFENDANTS,

25   THE CHALLENGERS STILL HAVE TO PROVE PROBABLE CAUSE AND THEY

1    HAVE TO DO SO --

2              THE COURT:  THE BOARD OF ELECTIONS HAS TO FIND

3    PROBABLE CAUSE TO GO FORWARD.  IF THEY DON'T FIND PROBABLE

4    CAUSE, THERE'S A NUMBER OF COUNTIES IN THE STATE OF GEORGIA,

5    ATHENS, CLARK COUNTY, I THINK IS ONE THAT THEY'VE FROZEN,

6    GWINNETT COUNTY IS ANOTHER, WHEN THESE CHALLENGES WERE MADE,

7    THEY JUST SAID NO.  THEY BASICALLY SAID, I GUESS, SAID WE DON'T

8    FIND PROBABLE CAUSE FOR THESE CHALLENGES, AND THEY'RE NOT GOING

9    TO BE PROVISIONAL BALLOTS BEING OFFERED BASED ON THESE

10   CHALLENGES, THERE ARE NOT GOING TO BE ANY HEARINGS BASED ON

11   THESE CHALLENGES.

12             HOWEVER, MUSCOGEE COUNTY, THEY SAID, YEAH, WE'RE

13   GOING TO MAKE THEM DO THIS, SO THEY WOULD HAVE TO -- UNDER

14   21-2-230, THEY HAVE TO FIND PROBABLE CAUSE IN ORDER TO GO

15   FORWARD.  AGAIN, I'M NOT GOING TO MAKE ANY MORE COMMENTS ON

16   JUDGE GARDNER'S ORDER BECAUSE I DON'T HAVE A TRANSCRIPT, AND I

17   DON'T -- PLUS IT'S INAPPROPRIATE FOR ME TO COMMENT ON AN

18   OPINION CASE.  SO I'M ONLY GOING TO -- I'M NOT GOING TO RESPOND

19   TO ANYTHING ELSE YOU-ALL HAVE SAID ABOUT THAT ORDER, BECAUSE I

20   DON'T THINK IT WOULD BE APPROPRIATE, BECAUSE I DON'T HAVE

21   EVERYTHING.

22             IT'S THERE.  I WILL CONSIDER IT.  I'LL GIVE IT WHAT

23   WEIGHT I WANT TO GIVE IT WHEN I'M LOOKING AT DOING MY ORDER,

24   BUT I THINK I'M GOING TO STAY AWAY FROM ANYMORE COMMENTS ON IT.

25             BUT I DO HAVE TO SAY, THOUGH, IF YOU ARE ARGUING THAT

1   THE PRELIMINARY INJUNCTION THERE WAS GRANTED TO SHOW THAT WHAT

2   THEY ARE DOING IS WRONG, KEEP TO THE SECOND ARGUMENT TO IT

3   BASED ON THE ORDER THAT I'VE SEEN THIS MORNING.

4           LET ME ASK YOU THIS QUESTION:  DO YOU AGREE THAT

5   PUBLIC DISCLOSURE OF THESE NAMES -- ARE YOU ARGUING THAT PUBLIC

6   DISCLOSURE OF THESE NAMES IS WRONG?

7           MS. BRANCH:  YES, YOUR HONOR, A PUBLIC DISCLOSURE --

8           THE COURT:  WHY IN YOUR -- WHY IN YOUR REQUEST FOR

9   RELIEF, INJUNCTIVE RELIEF, YOU DON'T ASK -- IT DOES NOT APPEAR

10  THAT YOU'RE ASKING FOR ANY INJUNCTIVE RELIEF AGAINST PUBLIC

11  DISCLOSURE OF THE DOE PLAINTIFF'S INFORMATION.

12          MS. BRANCH:  FOR THE DOE INFORMATION -- SO WE HAVE,

13  YOU KNOW, IN OUR MOTION FOR PROCEEDING ANONYMOUSLY, WE MAKE

14  CLEAR THAT WE DO NOT WANT THE DOE INFORMATION TO BE RELEASED,

15  WE WANT THEM TO PROCEED ANONYMOUSLY, THAT IS THE PROTECTION

16  THAT WE ARE REQUESTING.

17          THE COURT:  BUT IN THE REQUEST FOR RELIEF, THE

18  DEFENDANTS POINT OUT:  IT DOES NOT APPEAR THAT YOU ARE ASKING

19  FOR ANY INJUNCTIVE RELIEF AGAINST PUBLIC DISCLOSURE OF THE DOE

20  PLAINTIFFS' INFORMATION.

21          MS. BRANCH:  THAT'S CORRECT, YOUR HONOR.  I DO THINK

22  THAT -- WELL, SO THE DOE PLAINTIFFS' INFORMATION HAS ALREADY

23  BEEN DISCLOSED PUBLICLY, FOR ONE.  SO IT IS -- AND THEY STATE

24  THAT IN THEIR DECLARATIONS AND WE ALSO STATE THAT IN OUR

25  COMPLAINT.

1          THE COURT:  BUT DID YOU ASK FOR ANY INJUNCTIVE RELIEF

2    FOR ANY PUBLIC DISCLOSURE OF ANY OF THESE INDIVIDUALS IN YOUR

3    RELIEF REQUEST?

4          MS. BRANCH:  SO OUR REQUEST FOR RELIEF IS THAT WE

5    WANT TRUE THE VOTE TO STOP CHALLENGING --

6          THE COURT:  THAT WAS NOT MY QUESTION.  THAT'S NOT MY

7    QUESTION.  MY QUESTION IS IN YOUR REQUEST FOR RELIEF, DO YOU

8    ASK FOR ANY INJUNCTIVE RELIEF AGAINST PUBLIC DISCLOSURE FOR ANY

9    OF THESE 360,000-PLUS PEOPLE?

10          MS. BRANCH:  WE DO NOT, YOUR HONOR, BUT I DO THINK

11    THAT --

12          THE COURT:  WHY?  WHY?  IF YOU SAY THE PUBLIC

13    DISCLOSURE IS ONE OF THE THINGS THAT LEADS TO INTIMIDATION, WHY

14    DON'T YOU ASK FOR INJUNCTIVE RELIEF?

15          MS. BRANCH:  YOUR HONOR, I DO THINK THAT WE WOULD

16    REQUEST THAT.

17          THE COURT:  BUT YOU HAVEN'T SO FAR.

18          MS. BRANCH:  IF WE COULD SUPPLEMENT OUR MATERIALS, WE

19    WOULD REQUEST THAT.  WE FOCUSED ON THE MOTION TO PROCEED

20    ANONYMOUSLY TO PROTECT THE DOE PLAINTIFFS.

21          I DO THINK THAT THERE IS -- THAT TRUE THE VOTE SHOULD

22    BE PROHIBITED FROM RELEASING THE CHALLENGE LIST PUBLICLY, AND

23    THAT -- BUT THAT IS NOT THE HARM, THAT'S NOT THE SOLE HARM

24    THERE, RIGHT?

25          SO YES, THEY'RE THREATENING TO RELEASE THE LIST

1  PUBLICLY AND WE WOULD CONTEND THAT THAT SHOULD NOT BE

2  PERMITTED.  BUT THE HARM IS CAUSED BY THESE CHALLENGES, THE

3  HARM IS CAUSED BY THE CREATION OF THIS ATMOSPHERE OF ILLEGAL

4  VOTERS, OF VOTER FRAUD, OF ATTACKING WHO IS ILLEGAL AND WHO IS

5  NOT, AND THAT IS THE FOCUS FOR OUR REQUEST FOR RELIEF, SO WE

6  ASK --

7          THE COURT:  LET ME ASK YOU -- GO AHEAD.  I'M SORRY.

8  PLEASE FINISH.

9          MS. BRANCH:  WE ASK THAT THE COURT ENJOIN

10  TRUE THE VOTE FROM SUBMITTING ANY FURTHER REQUESTS FOR

11  CHALLENGES, THAT THEY BE PROHIBITED FROM ENGAGING IN ANY POLL

12  MONITORING OR ELECTION OBSERVING ACTIVITIES, WHICH THEY HAVE

13  SAID THEY'RE GOING TO DO ALL.  AND ALSO THAT THEY'RE GOING TO

14  REPORT.

15          THOSE ARE CLEAR ACTIVITIES THAT ARE INTIMIDATING TO

16  VOTERS, AND THEY'RE MAKING THESE STATEMENTS PUBLICLY TO

17  INTIMIDATE VOTERS.  THAT IS -- I MEAN, IT'S THE CLEAR PURPOSE.

18          AND THEY'VE SAID THEMSELVES THAT THEIR CHALLENGES

19  DON'T ACTUALLY HAVE THE EFFECT OF REMOVING PEOPLE FROM THE

20  VOTER ROLLS, SO THERE IS REALLY NO HARM TO THEM, YOUR HONOR, IF

21  YOU WERE TO ENJOIN THEM FROM MAKING THESE ADDITIONAL

22  CHALLENGES, BECAUSE --

23          THE COURT:  WELL, LET ME ASK ABOUT THE ONES THAT HAVE

24  ALREADY BEEN CHALLENGED BY TRUE THE VOTE AND THE OTHER

25  DEFENDANTS.  IT APPEARS TO ME THAT YOU ARE NOT ASKING FOR THOSE

1  CHALLENGES TO BE WITHDRAWN, IN YOUR RELIEF, IN YOUR REQUEST FOR

2  RELIEF.

3          MS. BRANCH:  I'M SORRY, YOUR HONOR, I --

4          THE COURT:  IN THE PRELIMINARY INJUNCTION, IT APPEARS

5  TO THE COURT THAT YOU ARE NOT CURRENTLY ASKING FOR ANY ALREADY

6  FILED CHALLENGES TO BE WITHDRAWN.

7          MS. BRANCH:  YOUR HONOR, WE WOULD REQUEST THAT.  I DO

8  THINK THAT MOST OF THE COUNTIES THAT TRUE THE VOTE HAS

9  SUBMITTED THESE CHALLENGES TO HAVE REJECTED THEM, AND THEY'VE

10  REJECTED THEM FOR THE REASONS DISCUSSED HERE, WHICH IS THAT

11  THEY HAVE NO BASIS.

12          THE COURT:  WHAT ABOUT THE ONES WHERE -- I GUESS MY

13  QUESTION IS THAT YOU'RE ARGUING THAT THESE CHALLENGES ARE JUST

14  INTIMIDATION, THEY'RE HARASSMENT, BUT IN YOUR REQUEST FOR

15  RELIEF, YOU DON'T ASK THAT ANYONE THAT'S ALREADY FILED, THE

16  ALREADY FILED CHALLENGES BE WITHDRAWN.

17          MS. BRANCH:  SO I THINK THERE ARE SEPARATE LAWSUITS

18  DIRECTED AGAINST THE COUNTIES THAT HAVE RECEIVED THESE

19  CHALLENGES TO REQUIRE THEM TO DISMISS THEM, AND THE FOCUS OF

20  OUR --

21          THE COURT:  AREN'T YOU ASKING ME TO STOP THEM FROM

22  DOING THIS?  AREN'T YOU ASKING ME TO SAY TRUE THE VOTE, STOP

23  THESE CHALLENGES?  ISN'T THAT KIND OF HARD, WHAT YOU'RE ASKING

24  ME HERE?

25          MS. BRANCH:  IT'S A --

1          THE COURT:  IT'S CRITICAL FOR ME TO ISSUE AN

2   INJUNCTION ENJOINING TRUE THE VOTE FROM FILING ANY MORE OF

3   THESE CHALLENGES, AND THE ONES THEY'VE GOT THERE TO BE

4   WITHDRAWN.

5          MS. BRANCH:  YES, YOUR HONOR.

6          THE COURT:  SO THAT COMES TO MY QUESTION, WHY DID YOU

7   NOT ASK ME FOR ANY OF THAT RELIEF?

8          MS. BRANCH:  YOUR HONOR, WE WOULD BE HAPPY TO

9   SUPPLEMENT THIS PROPOSED ORDER WITH THAT -- WITH THAT REQUEST

10  OF RELIEF.  I DO -- YOU KNOW, THAT IS -- WE'RE OBVIOUSLY MOVING

11  VERY QUICKLY TO GET THIS BEFORE YOUR HONOR, AND SO IT MAY BE

12  THAT WE SHOULD -- WE SHOULD SUPPLEMENT THAT, IF THE COURT WOULD

13  ALLOW IT.

14         THE COURT:  OKAY.  ONE QUESTION, DEFENDANTS CONCEDE

15  THAT FAIR FIGHT HAS SHOWN INJURY OF FACT BASED ON DIVERSION OF

16  RESOURCES, NEVERTHELESS THEY SAY THAT STANDING IS LACKING

17  BECAUSE IT CANNOT PROVE REDRESSABILITY.  HOW WILL A FAVORABLE

18  DECISION ADDRESS THE REDRESSABILITY FOR FAIR FIGHT?  IN OTHER

19  WORDS, HOW WILL A FAVORABLE DECISION REDRESS THE ALLEGED HARMS

20  DONE TO FAIR FIGHT?

21         MS. BRANCH:  SURE, YOUR HONOR.  I DON'T FOLLOW THAT

22  ARGUMENT AT ALL, BECAUSE AS SET FORTH IN OUR COMPLAINT, OUR

23  MOTION AND IN MS. GROH-WARGO'S DECLARATION, WE TALK ABOUT THE

24  DIVERSION OF RESOURCES, WHICH, AS YOU SAID, DEFENDANTS DO NOT

25  CONTEST.

```
1           IF TRUE THE VOTE STOPS THESE VOTER CHALLENGES, THEN

2    FAIR FIGHT WILL NO LONGER HAVE TO DIVERT RESOURCES TO

3    COUNTERACT THE HARM THAT IS IMPOSED BY THEM, SO THEY WILL NO

4    LONGER HAVE TO SEND STAFF TO COUNTY BOARDS TO OBSERVE AND

5    REPRESENT VOTERS AT CHALLENGE HEARINGS, THEY WILL NO LONGER

6    HAVE TO SPEND TIME AND RESOURCES BOTH VOLUNTEER AND PAID STAFF

7    TO TRACK THESE CHALLENGES, SO -- AND THAT -- THE SAME GOES FOR

8    THEIR -- ENJOINING THEIR PARTICIPATION IN POLL WATCHING OR

9    PHOTOGRAPHING AND VIDEO RECORDING ANY OF THE ELECTION WORKERS

10   AT THE POLLS.

11          IF TRUE THE VOTE STOPS THOSE ACTIVITIES, FAIR FIGHT

12   WILL NO LONGER NEED TO DIVERT RESOURCES TO COUNTERACT THAT HARM

13   AND THIS COURT IS ENTITLED AND HAS THE POWER TO REDRESS FAIR

14   FIGHT'S INJURIES.

15          THE COURT:  LET'S TALK ABOUT STANDING FOR JOHN AND

16   JANE DOE.  TELL ME HOW THEY HAVE STANDING AT THIS POINT.

17   WHAT'S BEFORE THE COURT THAT SHOWS THAT JOHN AND JANE DOE HAVE

18   GOT STANDING?

19          MS. BRANCH:  SURE.  SO THE DOE PLAINTIFFS HAVE BEEN

20   SUBJECT TO CHALLENGES BY THE DEFENDANTS, THEIR NAMES AND

21   ADDRESSES ARE ONLINE, YET THEY ARE LAWFUL VOTERS WHO HAVE BEEN

22   IN AND OUT OF WORK FOR -- WORK- AND FAMILY-RELATED OBLIGATIONS.

23   THEY INTEND TO REMAIN RESIDENTS OF GEORGIA.

24          AS A RESULT OF DEFENDANTS' CHALLENGES, THE DOE

25   PLAINTIFFS HAVE SUFFERED AN INJURY.  THEIR NAMES AND ADDRESSES
```

1   HAVE BEEN PUBLISHED ONLINE AND THEY ARE FEARFUL THAT THEY WILL

2   BE SUBJECT TO HARASSMENT.  THEY'VE ALREADY BEEN PUBLICLY

3   ASSOCIATED WITH BEING AN ILLEGAL VOTER.  THEY ARE BEING

4   INTIMIDATED AND THEY'RE FEARFUL THAT THEY WILL CONTINUE TO BE

5   INTIMIDATED IF THEY ARE -- IF INDIVIDUALS ARE ABLE TO IDENTIFY

6   THEM, THEY'RE FEARFUL OF HARASSMENT OR RETALIATION FOR

7   EXERCISING THEIR RIGHT TO VOTE.  AND THAT IS EXACTLY WHAT

8   SECTION 11(B) IS MEANT TO PROTECT AGAINST.

9        THEY WILL -- THEY ARE FEARFUL THAT THEY WILL BE

10  SUBJECT TO HARASSMENT FOR EXERCISING THEIR CONSTITUTIONAL RIGHT

11  TO VOTE.  THE DEFENDANTS MAKE THESE ARGUMENTS THAT WE'RE

12  REQUIRED TO HAVE AFFIRMATIVE TESTIMONY FROM VOTERS AND THAT OUR

13  INJURIES ARE TOO SPECULATIVE, NONE OF WHICH -- NONE OF WHICH

14  ARE -- HAVE ANY GROUNDS IN THE LAW.

15       WE HAVE PROVIDED SPECIFIC EVIDENCE THAT THE DOE

16  PLAINTIFFS ARE -- WE WILL PROVIDE SPECIFIC EVIDENCE THAT THE

17  DOE PLAINTIFFS ARE FEARFUL OF RETALIATION, AND A FUTURE INJURY

18  SO LONG AS IT IS SUBSTANTIATED IS SUFFICIENT FOR STANDING.

19       THE COURT:  LET ME ASK YOU THIS QUESTION.  THEIR

20  NAMES HAVE ALREADY BEEN PUBLISHED, YOU SAID.  AND BASED ON THE

21  FACT THAT THEIR NAMES HAVE ALREADY BEEN PUBLISHED, THEY'RE

22  FEARFUL THAT SOMEONE MAY DO PHYSICAL HARM TO THEM OR ENDANGER

23  THEIR LIVES IN SOME WAY.  IS THAT THE ARGUMENT?

24       MS. BRANCH:  THAT IS PART OF IT, YOUR HONOR.  THAT IF

25  SOMEONE WERE TO FIND OUT THAT THEY CAST A BALLOT OR WHEN THEY

1   GO TO CAST A BALLOT, THAT THEY WILL BE TAGGED AS AN ILLEGAL

2   VOTER.  AND, I MEAN, TRUE THE VOTE SAYS THAT THEY'RE GOING TO

3   HAVE PEOPLE AT DROP BOX LOCATIONS, THEY'RE GOING TO HAVE

4   PEOPLE, YOU KNOW, TRACKING THESE VOTERS, ESSENTIALLY.  AND SO

5   THEY'RE FEARFUL THAT THEY WILL BE HARASSED AS A RESULT OF

6   TRUE THE VOTE HAVING TAGGED THEM AS AN ILLEGAL VOTER.

7           THE COURT:  BASED ON YOUR ARGUMENT, I'M MAKING THE

8   ASSUMPTION THAT THEY HAVE NOT BEEN CALLING ANYBODY IN THE

9   COUNTY WHERE THEY LIVE TO SAY YOU HAVE BEEN CHALLENGED UNDER

10  SECTION 230 AND YOU'VE GOT TO VOTE BY PROVISIONAL BALLOT, THAT

11  BASICALLY SO FAR, WHAT THEY HAVE IS THE SITUATION WHERE THEIR

12  NAMES -- SINCE THERE ARE SO MANY PEOPLE, I THINK I CAN ASK THIS

13  QUESTION -- THEIR NAMES HAVE ALREADY BEEN PUBLISHED WHERE?

14          MS. BRANCH:  I BELIEVE THEY'VE BEEN PUBLISHED ON THE

15  COUNTY WEBSITE.

16          THE COURT:  OKAY.  AND I WON'T ASK WHAT COUNTY, BUT

17  IN THE INFORMATION THAT YOU GIVE ME FOR THIS IN-CAMERA

18  INSPECTION, YOU SHOULD LET ME KNOW WHAT COUNTY YOU'RE TALKING

19  ABOUT.

20          MS. BRANCH:  YES, YOUR HONOR.

21          THE COURT:  AND THIS WAS PUBLISHED BY THE COUNTY, NOT

22  BY TRUE THE VOTE, THEIR NAMES HAVE BEEN PUBLISHED BY THE COUNTY

23  ON THE COUNTY WEBSITE AS SOMEBODY WHO'S BEEN CHALLENGED?

24          MS. BRANCH:  THAT'S CORRECT, YOUR HONOR, BUT THE

25  COUNTY WOULD HAVE NEVER PUBLISHED IT HAD --

```
1            THE COURT:  I UNDERSTAND THAT.

2            MS. BRANCH:  -- TRUE THE VOTE NOT EVER MADE THE

3   CHALLENGE.

4            THE COURT:  I UNDERSTAND THAT.  I'M TRYING TO FIGURE

5   OUT THE STANDING ASPECT.  THEIR NAMES HAVE BEEN PUBLISHED BY

6   THE COUNTY IN WHICH THEY LIVE AS SOMEBODY WHO'S BEEN CHALLENGED

7   BY AN ELECTORATE, CORRECT?

8            MS. BRANCH:  YES.

9            THE COURT:  OKAY.

10           MS. BRANCH:  BUT THEY'VE BEEN CHALLENGED BASED ON --

11   I MEAN, THEY'VE BEEN -- THEY'RE SUBJECT TO THIS MASS CHALLENGE,

12   RIGHT?  TRUE THE VOTE IS ENGAGED IN THIS MASS ACTIVITY TO

13   CHALLENGE VOTERS BASED ON NO REAL EVIDENCE.

14           THE COURT:  OKAY.  WELL, LOOK AT THIS HERE,

15   MS. BRANCH, AND I APOLOGIZE, THEIR NAME HAS BEEN PUBLISHED BY

16   THE COUNTY IN WHICH THEY LIVE IN, AND MY UNDERSTANDING RIGHT

17   NOW IS THE ONLY LIST THAT'S BEEN PUBLISHED BY THE COUNTIES WAS

18   SOMEBODY THAT'S BEEN CHALLENGED BY AN ELECTORATE IN THAT

19   COUNTY.  SO JOHN AND JANE DOE HAVE BEEN CHALLENGED IN THE

20   COUNTY, AND THE COUNTY HAS PUBLISHED THEIR NAME BECAUSE THEY'VE

21   BEEN CHALLENGED.  IS THAT WHAT YOU'RE SAYING?

22           MS. BRANCH:  YES, YOUR HONOR.  THEY HAVE BEEN

23   PUBLISHED BY THE COUNTY.  SO THE COUNTY IS THE ONE THAT

24   PUBLISHED THE CHALLENGE.  BUT THE CHALLENGE WOULD HAVE NEVER

25   BEEN PUBLISHED HAD TRUE THE VOTE NOT MADE IT.
```

1    AND I WANT TO MAKE CLEAR THAT PART OF THEIR -- PART

2 OF THEIR EFFORT IS TO ENGAGE IN THIS PUBLIC INTIMIDATION.  THEY

3 KNOW THAT BY MAKING THESE CHALLENGES, THEY BECOME PUBLIC

4 RECORD, THEY MAKE THEIR WAY ONLINE.  AND SO ON THEIR WEBSITE,

5 YOU KNOW, THEY ENCOURAGE PEOPLE TO ENGAGE IN THIS KIND OF CATCH

6 THE VOTER, CATCH THE ILLEGAL VOTER.  THIS IS A PART OF THE

7 PROGRAM.  THIS IS ANTICIPATED BY TRUE THE VOTE AS PART OF THEIR

8 REASON FOR MAKING THE CHALLENGE BECAUSE --

9    THE COURT:  LET'S GO BACK TO THIS QUESTION I HAVE

10 ABOUT RELIEF, WHY AREN'T YOU ASKING THEM THAT THIS CHALLENGE --

11 IF THEY'VE ALREADY BEEN CHALLENGED, WE WOULDN'T VOTE, IN OTHER

12 WORDS, THAT'S ONE WAY TO GIVE YOUR CLIENTS REDRESSABILITY, IS

13 IT NOT?  IF THIS CHALLENGE -- IF THEY HAVE BEEN CHALLENGED BY

14 SOMEONE IN THAT COUNTY, AN ELECTOR IN THAT COUNTY, IF I FIND A

15 VIOLATION OF 11(B) BUT THERE'S NO REQUEST FOR ME TO HAVE THE

16 CHALLENGE WITHDRAWN, HOW IS YOUR CLIENT HELPED?

17    MS. BRANCH:  WELL, I THINK, YOUR HONOR, THE HARM THAT

18 THEY HAVE SUFFERED IS NOT NECESSARILY RELATED TO HAVING THE

19 CHALLENGE WITHDRAWN.  THEY HAVE ALREADY SUFFERED THE HARM, AND

20 SO HAVING THE CHALLENGE WITHDRAWN ISN'T NECESSARILY GOING TO

21 REDRESS THAT ANYWAY.  THE CHALLENGE HAS BEEN MADE, THEIR NAMES

22 HAVE BEEN PUBLISHED ONLINE.  THEY ARE FEARFUL, THEY ARE

23 CURRENTLY FEARFUL OF BEING INTIMIDATED, OF BEING HARASSED, AND

24 SO THEY HAVE SUFFERED THAT INJURY AND WITHDRAWING THE CHALLENGE

25 AT THIS POINT IS NOT GOING TO CHANGE THAT.

1          THE COURT:  OKAY.  ALL RIGHT.  THANK YOU, MS. BRANCH.

2  I'M SURE I'LL BE COMING BACK TO YOU WITH A FEW MORE QUESTIONS.

3          MR. BOPP --

4          MS. BRANCH:  THANK YOU, YOUR HONOR.

5          THE COURT:  HOLD ON.  HOLD ON.  MS. BRANCH.

6          MS. BRANCH:  SURE.  I WOULD LIKE THE OPPORTUNITY TO

7  RESPOND TO OPPOSING COUNSEL'S ARGUMENTS ABOUT THE

8  FIRST AMENDMENT AND CONSTITUTIONAL PROTECTIONS.

9          THE COURT:  YOU CAN DO THAT RIGHT NOW.

10          MS. BRANCH:  OKAY.  WHICH I THINK YOU ALLUDED TO

11  EARLIER.  SO THE DEFENDANTS MAKE THIS ARGUMENT IN THEIR

12  OPPOSITION THAT THEY ARE PERMITTED -- THEY'RE ENGAGING IN

13  CONSTITUTIONALLY PROTECTED ACTIVITY.  AND THAT IS JUST

14  INCORRECT, YOUR HONOR.  THEY DON'T HAVE A CONSTITUTIONAL RIGHT

15  TO CHALLENGE VOTERS.

16          THE CHALLENGE MECHANISM UNDER WHICH THEY BRING THESE

17  CHALLENGES COMES FROM GEORGIA LAW.  BUT FOR GEORGIA LAW,

18  TRUE THE VOTE COULDN'T GO UP TO COUNTY BOARDS AND SAY THESE

19  VOTERS ARE NOT ELIGIBLE TO VOTE IN THE RUNOFF.

20          TO THE EXTENT THAT THIS CHALLENGE PROVISION IS BEING

21  USED TO VIOLATE FEDERAL LAW OR IS BEING DONE IN VIOLATION OF

22  THE VOTING RIGHTS ACT, IT IS PREEMPTED PURSUANT TO THE ELECTION

23  CLAUSE.

24          THE ELECTION CLAUSE GIVES STATES THE PRIMARY

25  RESPONSIBILITY TO SET THE TIMES, PLACES AND MANNER OF FEDERAL

1    ELECTIONS, BUT IT ALSO GIVES CONGRESS THE ULTIMATE POWER TO

2    MAKE OR ALTER THOSE REGULATIONS, AND THAT'S EXACTLY WHAT

3    CONGRESS DID HERE WITH THE VOTING RIGHTS ACT.

4            WITH THE VOTING RIGHTS ACT, WITH SECTION 11(B),

5    CONGRESS MADE THE DECISION THAT IT IS TIME TO PROTECT THE

6    VOTERS, TO ENSURE THAT THESE AWFUL THINGS THAT HAVE HAPPENED IN

7    OUR PAST IN THIS COUNTRY WITH RESPECT TO INTIMIDATING MINORITY

8    VOTERS AND EXERCISING THE FRANCHISE DO NOT PERSIST INTO THE

9    FUTURE.  SO TO THE EXTENT THAT GEORGIA LAW IS USED TO VIOLATE

10   FEDERAL OR TO BE DONE IN VIOLATION OF THE VOTING RIGHTS ACT, IT

11   YIELDS TO FEDERAL LAW, SO I WANT TO MAKE THAT POINT.

12           IN ADDITION, THE FIRST AMENDMENT FREEDOM IS NOT

13   UNLIMITED.  THIS IS KIND OF SIMILAR TO THESE ARGUMENTS THAT

14   HAVE COME UP IN RESPONSE TO LAWSUITS FILED BY THE TRUMP

15   CAMPAIGN AND THEIR AFFILIATES FOLLOWING THE PRESIDENTIAL

16   ELECTION THAT INDIVIDUALS ARE PERMITTED TO ENGAGE IN POLL

17   WATCHING AND POLL MONITORING AND THAT'S PROTECTED BY THE FIRST

18   AMENDMENT.  AND COURTS HAVE REPEATEDLY SAID, NO, IT'S NOT.  TO

19   THE EXTENT IT INTIMIDATES VOTERS, IT IS NOT PROTECTED BY THE

20   FIRST AMENDMENT.  IT JUST IS, YOU KNOW, SIMILAR TO WHAT YOU SEE

21   WITH LAWS THAT PROHIBIT THE SOLICITATION OF VOTES -- VOTES

22   WITHIN CERTAIN AREAS OF A POLLING PLACE.  AND THOSE TYPES OF

23   LAWS HAVE BEEN CHALLENGED, CLAIMING THAT THEY VIOLATE THE

24   FIRST AMENDMENT.  AND THE SUPREME COURT HAS SAID NO, THERE'S --

25   THOSE LAWS ARE NARROWLY TAILORED TO PREVENT VOTER INTIMIDATION.

1  THAT'S THE SAME HERE.  THIS CHALLENGE LAW, TO THE EXTENT THAT

2  IT VIOLATES FEDERAL LAW IS -- IT IS NOT PERMISSIBLE.

3       I WANT TO ALSO ADDRESS THE DEFENDANT'S ARGUMENT ABOUT

4  THE INTENT REQUIREMENT THAT THEY SAY EXISTS UNDER SECTION

5  11(B), BECAUSE ESSENTIALLY, THE DEFENDANTS ARE READING INTO

6  11(B) LANGUAGE THAT SIMPLY DOES NOT EXIST.  THEY CLAIM THAT

7  11(B) REQUIRES A SHOWING OF DISCRIMINATORY ANIMUS BASED ON

8  THESE CHERRYPICKED PIECES OF LEGISLATIVE HISTORY THAT THEY SAY

9  MEANS THAT CONGRESS INTENDED TO INVOKE THE

10  FIFTEENTH AMENDMENT'S INTENT REQUIREMENT.  THERE IS NO SUPPORT

11  IN THE CASE LAW WHATSOEVER FOR THAT ARGUMENT.  DEFENDANTS CITE

12  NO CASES TO SUPPORT THEIR INTERPRETATION OF LEGISLATIVE

13  HISTORY.

14       BY CONTRAST, MULTIPLE FEDERAL COURTS HAVE AGREED THAT

15  OUR INTERPRETATION, THE PLAINTIFF'S INTERPRETATION OF THE

16  LEGISLATIVE HISTORY FOUND THAT CONGRESS DID NOT INTEND FOR

17  SECTION 11(B) TO REQUIRE A SHOWING OF INTENT OR DISCRIMINATORY

18  ANIMUS.  AND I CAN GIVE YOU SOME CITES TO COURT CASES THAT MAKE

19  THIS VERY CLEAR.  THE *NATIONAL COALITION ON BLACK CIVIC*

20  *PARTICIPATION V. WOHL*, THAT IS A VERY RECENT CASE OUT OF THE

21  SOUTHERN DISTRICT OF NEW YORK, WHERE THE COURT SAYS, AND I

22  QUOTE:  THE LEGISLATIVE HISTORY MAKES CLEAR THAT THE PROHIBITED

23  ACTS OF INTIMIDATION NEED NOT BE RACIALLY MOTIVATED, AND THAT

24  IS A SECTION 11(B) CASE.

25       SAME THING WITH *WILLINGHAM V. COUNTY OF ALBANY*,

1    THAT'S A NORTHERN DISTRICT OF NEW YORK CASE, IT STATES THE SAME

2    PROPOSITION.  THE DEFENDANT'S ARGUMENT ON THIS IS JUST SIMPLY

3    NOT SUPPORTED.  THE COURT DOESN'T EVEN NEED TO REACH THAT

4    QUESTION, THOUGH, BECAUSE THE PLAIN TEXT OF 11(B) MAKES CLEAR

5    THAT THERE IS NO ANIMUS REQUIREMENT.  IF CONGRESS INTENDED TO

6    INCLUDE A PURPOSE REQUIREMENT, AN INTENT REQUIREMENT IN THE

7    STATUTE, IT CERTAINLY KNEW HOW TO DO THAT.

8            IN THE CIVIL RIGHTS ACT OF 1957, IT SAYS, AND I

9    QUOTE, "FOR THE PURPOSE OF."  CONGRESS COULD HAVE WRITTEN THAT

10   INTO SECTION 11(B), AND IT DIDN'T.  AND FEDERAL COURTS HAVE

11   AGREED THAT THE PLAIN TEXT OF SECTION 11(B) DOES NOT REQUIRE

12   ANY ANIMUS.

13           DEFENDANT'S ARGUMENT ON THIS IS SIMPLY NOT SUPPORTED

14   BY THE LAW.  THEIR VIEW OF LEGISLATIVE HISTORY IS FALSE, IT'S

15   CHERRYPICKED.  IF YOU LOOK AT THE LEGISLATIVE HISTORY AS CITED

16   IN OUR BRIEF, YOU CAN SEE THAT THE ATTORNEY GENERAL AT THE TIME

17   THAT SECTION 11(B) WAS PASSED MADE CLEAR THAT THE STATUTE

18   DOESN'T HAVE AN INTENT REQUIREMENT, AND IT WAS DISTINGUISHED

19   FROM THE CIVIL RIGHTS ACT OF 1957 ON THOSE GROUNDS.

20           IN ADDITION, THE DEFENDANTS MAKE THE ARGUMENT THAT

21   SECTION 11(B) WAS PASSED PURSUANT TO THE FIFTEENTH AMENDMENT

22   AND NOT THE ELECTIONS CLAUSE.  AGAIN THERE, THEY RELY SOLELY ON

23   THEIR INTERPRETATION OF LEGISLATIVE HISTORY, WHICH HAS

24   ABSOLUTELY NO SUPPORT IN THE CASE LAW AND THEY DON'T CITE A

25   SINGLE CASE ON IT.

1          TO THE CONTRARY, MULTIPLE SUPREME COURT OPINIONS

2   UPHELD THAT THE ELECTIONS CLAUSE BROADLY AUTHORIZES FEDERAL

3   REGULATION OF BALLOT CASTING AND THESE HOLDINGS POINT TO THE

4   ELECTIONS CLAUSE, NOT THE FIFTEENTH AMENDMENT OF THE

5   CONSTITUTIONAL AUTHORITY FOR 11(B) AND THAT LANGUAGE COMES

6   DIRECTLY FROM THE EASTERN DISTRICT OF VIRGINIA CASE, THE LULAC

7   CASE THAT WE DISCUSSED.

8          THE COURT:  THERE'S A CASE IN THE NINTH CIRCUIT, AND

9   I CAN'T REMEMBER THE CITE OFF THE TOP OF MY HEAD, IN WHICH A

10  UNITED STATES DISTRICT COURT JUDGE DID REQUIRE INTENT AND THE

11  NINTH CIRCUIT AFFIRMED THE RULING, HE DID NOT FIND -- HE OR SHE

12  DID NOT FIND -- THE DISTRICT COURT JUDGE, HE OR SHE DID NOT

13  FIND A VIOLATION OF SECTION 11(B).  AND ONE OF THE REASONS FOR

14  IT, THEY HAD THAT INTENT REQUIREMENT AND THE ELEVENTH

15  CIRCUIT -- THE NINTH CIRCUIT, EXCUSE ME, AFFIRMED IT.

16         AND I'LL TRY TO FIND THAT CASE, IT OBVIOUSLY WOULD BE

17  IN MY RULING, BUT I GUESS MY QUESTION IS:  IS IT AGREED UPON BY

18  COURTS?  I DON'T THINK THE SUPREME COURT'S HAD A CASE.  THERE

19  ARE NOT A LOT OF CASES ON 11(B), I ASSURE YOU, BUT IS IT -- I'M

20  NOT DISAGREEING WITH YOU ON WHAT I THINK THE INTENT OF CONGRESS

21  WAS IN TERMS OF -- YOU KNOW, KRAVITCH WAS WHEN HE KEPT DRAGGING

22  THIS UP, BUT THE QUESTION I HAVE, IS IT UNIFORM AMONG CIRCUITS

23  AND DISTRICT COURTS THAT THE INTENT REQUIREMENT IS NOT

24  REQUIRED?

25         MS. BRANCH:  I DON'T THINK SO, YOUR HONOR, AND I

1  CONFESS, I DON'T KNOW WHICH SPECIFIC NINTH CIRCUIT CASE YOU'RE

2  REFERRING TO, BUT I DO KNOW THAT THERE IS -- THERE IS CASE LAW

3  OUT THERE THAT KIND OF HAS A BROADER ANALYSIS OF SECTION 11(B),

4  AND IN SOME PLACES, IT IMPORTS THE PURPOSE REQUIREMENT OF THE

5  CIVIL RIGHTS ACT, WHICH IS 11(B), AND I THINK THAT'S JUST A

6  MISTAKE IN THE JUDICIAL ANALYSIS, SO I THINK THAT THAT WOULD BE

7  THE CASE WITH RESPECT TO THE NINTH CIRCUIT CASE THAT YOU'RE

8  REFERRING TO.

9          THE COURT:  THE CASE IN VIRGINA, THOUGH, DID NOT GO

10 IN FRONT OF THE FOURTH CIRCUIT, I THINK THE DISTRICT COURT MADE

11 ITS RULING.  AND I THINK THE CASE IN CALIFORNIA DID GO BEFORE

12 THE NINTH CIRCUIT AND THE NINTH CIRCUIT AFFIRMED WHAT THEY DID.

13         MS. BRANCH:  UNDERSTOOD, YOUR HONOR.  I MEAN, I THINK

14 THAT THE WEIGHT OF THE CASE LAW ON THIS ISSUE REALLY SHOWS THAT

15 THERE IS NO INTENT REQUIREMENT IN SECTION 11(B).  I THINK BOTH

16 THE WEIGHT OF THE CASE LAW AND ALSO THE PLAIN LANGUAGE OF THE

17 STATUTE SAYS THAT IT PROHIBITS THE INTIMIDATION, THE COERCION

18 OR THE THREATS MADE TO VOTERS WHO ARE VOTING OR ATTEMPTING TO

19 EXERCISE THEIR RIGHT TO VOTE.  THERE IS NO PURPOSE REQUIREMENT

20 IN THAT PLAIN LANGUAGE.  AND I THINK THAT THE COURTS HAVE

21 INTERPRETED THAT HAVE MADE --

22         THE COURT:  HERE'S THE NINTH CIRCUIT CASE I'M TALKING

23 ABOUT AND I CAN'T PRONOUNCE THE NAMES CORRECTLY, SO I'M GOING

24 TO SPELL IT.  I THINK IT'S OLAGUES, O-L-A-G-U-E-S, V.

25 RUSSONIELLO, R-U-S-S-O-N-I-E-L-L-O.

```
 1            AND I'LL READ IT.  IT'S A CASE IN WHICH THE
 2   PLAINTIFFS ALLEGE THE UNITED STATES ATTORNEY INTIMIDATED VOTERS
 3   DURING AN INVESTIGATION OF A VOTER REGISTRATION FRAUD.  THE
 4   NINTH CIRCUIT AFFIRMED THE DISTRICT COURT'S DISMISSAL OF
 5   SECTIONS 131(B) AND SECTION 11(B) CLAIMS BECAUSE WHILE THERE
 6   WAS EVIDENCE THAT THE INVESTIGATION DID INTIMIDATE THE
 7   APPELLANTS' CLAIMS, IT FAILED TO RAISE A MATERIAL ISSUE OF FACT
 8   AS TO WHETHER THE GOVERNMENT OFFICIAL DID, IN FACT, INTEND TO
 9   INTIMIDATE THEM.
10            SO I HAVE A CIRCUIT SAYING YOU'VE GOT TO SHOW
11   INTIMIDATION, YOU'VE GOT TO HAVE INTENT, YOU'VE GOT TO HAVE THE
12   INTENT TO SHOW IT.  THEY SAY YEAH, THEY INTIMIDATED THE
13   APPELLANTS, BUT THERE WAS NOT -- THEY SAID THEY DIDN'T SHOW
14   INTENT.
15            LET ME SEE IF I CAN FIND THE CITE FOR YOU FOR THAT
16   CASE.  I SEE MS. LAWRENCE AND MS. BRYAN WRITING QUICKLY SO I'M
17   SURE THAT THEY'RE PULLING IT UP RIGHT NOW.  I'VE BEEN DEALING
18   WITH MS. LAWRENCE AND MS. BRYAN FOR A WHILE, SO I KNOW THEM
19   PRETTY GOOD.
20            LET'S SEE HERE.  THAT IS 797 F.2D 1511, IT'S ON
21   PAGE 1522, NINTH CIRCUIT, 1986.  SO MY QUESTION IS JUST THAT --
22   I'M SOMEWHAT IN AGREEMENT WITH YOU, I THINK CONGRESS MAY NOT
23   HAVE INTENDED IT, I CAN'T -- YOU KNOW, I'M SURE THAT MR. BOPP
24   IS GOING TO HAVE A DIFFERENT POINT ON THAT, BUT THE COURTS ARE
25   NOT CONSISTENT IN IT AND THE ONLY CIRCUIT COURT THAT HAS
```

1  ADDRESSED IT HAS BEEN THE NINTH CIRCUIT, AND THEY SAID INTENT

2  TO INTIMIDATE WAS REQUIRED.

3          MS. BRANCH:  WELL, YOU'RE -- I MEAN, YOU'RE OBVIOUSLY

4  CORRECT, YOUR HONOR, THAT THERE ISN'T A TON OF CASE LAW OUT ON

5  SECTION 11(B).  I UNDERSTAND THE CASE YOU'RE POINTING TO IS A

6  NINTH CIRCUIT, BUT I WILL SAY THAT THE MAJORITY -- THERE ARE

7  SEVERAL DISTRICT COURTS OPINIONS THAT ARE MORE RECENT THAT WERE

8  DECIDED --

9          THE COURT:  WHO TAKES PRECEDENT, A CIRCUIT OR --

10          MS. BRANCH:  I UNDERSTAND, YOUR HONOR.  UNDERSTOOD,

11  YOUR HONOR.  I JUST -- I THINK THAT THAT -- I NEED TO READ THAT

12  CASE.

13          THE COURT:  LET ME MAKE SURE I POINT OUT THAT -- TO

14  THE JUDGE ON THE ELEVENTH CIRCUIT -- OBVIOUSLY, THE JUDGE ON

15  THE ELEVENTH CIRCUIT AS FAR AS THIS COURT'S CONCERNED TAKES

16  PRECEDENT, HOWEVER, THE ELEVENTH CIRCUIT, AS FAR AS I CAN

17  DETERMINE, HAS NOT RULED ON THIS, BUT THE NINTH CIRCUIT HAS.

18          NOW, I'M NOT DISAGREEING WITH YOU, THERE IS DISTRICT

19  COURT -- AND I'M FAMILIAR WITH THE VIRGINIA CASE, AND I'M

20  FAMILIAR WITH NOT ALL OF THE DISTRICT COURT CASES, BUT THE ONE

21  CIRCUIT COURT CASE THAT I HAVE FOUND INDICATED THAT INTENT WAS

22  NEEDED.

23          MS. BRANCH:  WELL, AS YOU SAID, YOUR HONOR, THE

24  ELEVENTH CIRCUIT, AS FAR AS I'M AWARE, HAS NOT SPOKEN ON THIS

25  ISSUE.  I THINK YOUR HONOR IS -- YOU KNOW, YOU'RE WELL WITHIN

1  YOUR POWER TO REVIEW THE DISTRICT COURT OPINIONS, TO REVIEW THE

2  LEGISLATIVE HISTORY AND TO RELY ON THE PLAIN LANGUAGE OF THE

3  STATUTE, WHICH DOES NOT REQUIRE INTENT.

4        THE COURT:  AND THE NINTH CIRCUIT OPINION, LET ME

5  SAY, FOR ME, IS PERSUASIVE AUTHORITY.  YOU KNOW, OBVIOUSLY WHAT

6  BINDS ME IS THE ELEVENTH CIRCUIT AND THE SUPREME COURT, BUT THE

7  NINTH CIRCUIT CAN BE LOOKED UPON BY ME AS PERSUASIVE AUTHORITY.

8  THAT'S WHAT THE DISTRICT COURT JUDGE'S RULE IS.

9        MS. BRANCH:  YES, YOUR HONOR.

10        SO I WILL RESERVE MY TIME, UNLESS YOU HAVE ANY

11  FURTHER QUESTIONS FOR ME.  I THINK I HAVE COVERED MY

12  AFFIRMATIVE ARGUMENTS AND SOME OTHER RESPONSES TO THE

13  DEFENDANT'S OPPOSITION.

14        I WILL JUST CLOSE BY SAYING THAT YOU KNOW, A TRO AND

15  A PRELIMINARY INJUNCTION ARE THE APPROPRIATE FORMS OF RELIEF

16  HERE.  THEY ARE CREATED TO MAINTAIN THE STATUS QUO.  THE

17  DEFENDANTS SAY THAT THEIR -- THEIR CHALLENGES ESSENTIALLY DON'T

18  HAVE ANY SUBSTANTIVE EFFECT, BECAUSE WHEN THEY MAKE THESE

19  CHALLENGES, THE VOTERS AREN'T ACTUALLY REMOVED FROM THE VOTER

20  ROLL.

21        BUT WHAT WE DO KNOW IS ON THE OTHER SIDE, WHEN YOU

22  BALANCE THE EQUITIES, ON THE OTHER SIDE, VOTERS ARE BEING

23  INTIMIDATED BY THEIR ACTIONS, VOTERS ARE BEING CHALLENGED BASED

24  ON UNWARRANTED GROUNDS.  AND YOU'RE BALANCING HERE A TEXAS

25  ORGANIZATION THAT HAS COME INTO GEORGIA, GIVEN THESE VOTER

1  CHALLENGES TO GEORGIA VOTERS TO GO INTO COUNTY ELECTION BOARDS

2  AND MAKE UNSUBSTANTIATED CLAIMS OF INELIGIBILITY.  YOU'RE

3  BALANCING THAT AGAINST REAL HARM TO GEORGIA VOTERS WHO ARE

4  TRYING TO EXERCISE THEIR RIGHT TO VOTE.

5          THIS COURT SHOULD PROTECT THOSE VOTERS, IT SHOULD

6  ENTER A PRELIMINARY INJUNCTION OR A TEMPORARY RESTRAINING ORDER

7  TO PRESERVE THE STATUS QUO, TO STOP THESE CHALLENGES FROM

8  CONTINUING TO OCCUR AND TO STOP VOTERS FROM HAVING TO PROVE

9  THEIR ELIGIBILITY BASED ON JUNK SCIENCE.

10          AND IT WOULD BE WITHIN THE PUBLIC INTEREST, IT WOULD

11  SERVE THE PUBLIC INTEREST TO HAVE THESE CHALLENGES STOPPED AND

12  ALSO TO ENJOIN TRUE THE VOTE FROM ENGAGING IN ANY FURTHER

13  INTIMIDATION TACTICS, LIKE SHOWING UP TO POLLING LOCATIONS,

14  SHOWING UP TO DROP BOXES AND VIDEO RECORDING VOTERS, ALL

15  ACTIONS AND ACTIVITIES THAT THEY HAVE PUBLICLY SAID THAT

16  THEY -- THAT THEY WANT TO ENGAGE IN.

17          THE ENTIRE PURPOSE OF SECTION 11(B) IS TO ALLOW

18  COURTS TO SHUT DOWN THESE TYPES OF ACTIVITIES WHEN THE

19  OBJECTIVE RESULT OF THEM IS GOING TO BE VOTER INTIMIDATION AND

20  RESULT IN VOTERS NOT EXERCISING THEIR RIGHT TO VOTE.

21          WE HAVE SHOWN THAT THERE WILL BE IRREPARABLE HARM

22  ONCE AN ELECTION HAS TAKEN PLACE, THERE CAN BE NO DO-OVER,

23  THERE CAN BE NO REDRESS.  THERE IS CASE LAW ON THAT.

24          WE'VE SHOWN THAT WE'RE LIKELY TO SUCCEED ON THE

25  MERITS OF OUR VOTING RIGHTS ACT CLAIM.  AND THERE'S NOTHING ON

1 THE OTHER SIDE OF THE EQUITIES THAT WOULD JUSTIFY THE HARM THAT

2 THE PLAINTIFFS ARE SUFFERING, SO, YOUR HONOR, I THINK IT IS

3 EXTREMELY APPROPRIATE AND WARRANTED THAT THIS COURT WILL

4 PROVIDE THE PLAINTIFFS WITH THE PRELIMINARY RELIEF THAT THEY

5 HAVE REQUESTED.

6        IF AT THE END OF THE DAY THE ACTIONS ENGAGED IN BY

7 TRUE THE VOTE ARE PROVEN TO BE COMPLETELY LEGITIMATE, THEN THAT

8 CAN BE PROVEN.  THIS CASE WILL CONTINUE AFTER THE PRELIMINARY

9 PHASE AND TRUE THE VOTE CAN PROVE THAT THEIR CHALLENGES ARE

10 BASED ON REAL SCIENCE, OR, YOU KNOW, THEY HAVE SOME VALIDITY TO

11 THEM.

12        I DON'T THINK THEY'LL BE ABLE TO MAKE THAT SHOWING,

13 BUT IT IS IMPORTANT THAT THIS COURT INTERVENE TO PROTECT THE

14 RIGHTS OF VOTERS AND TO PRESERVE THE STATUS QUO AND NOT ALLOW

15 TRUE THE VOTE TO CONTINUE TO ENGAGE IN THESE INTIMIDATION

16 TACTICS.

17        THE COURT:  THANK YOU, MS. BRANCH.

18        MR. BOPP, BEFORE WE START, I'D LIKE TO TAKE A QUICK

19 10-MINUTE BREAK RIGHT HERE, AND THEN WE'LL START WITH YOUR

20 ARGUMENT.

21        (WHEREUPON, A RECESS WAS TAKEN.)

22        THE COURT:  OKAY.  MR. BOPP, YOU MAY PROCEED.

23        MR. BOPP:  THANK YOU, YOUR HONOR.  BEFORE I GET TO

24 THE SPECIFICS OF THE CLAIM UNDER 11(B), I WANT TO SAY A FEW

25 GENERAL THINGS.

```
1              FIRST, IS WE WOULD OBJECT TO HAVING THIS MATTER BE --
2    FORCING US TO LITIGATE A MOVING TARGET.  YOU KNOW, THE
3    PLAINTIFFS ARE OFFERING TO MAKE NEW CLAIMS, THE PLAINTIFFS ARE
4    OFFERING TO REQUEST NEW RELIEF, THIS IS A MOVING TARGET.  THEY
5    HAD UNTIL 5:00 YESTERDAY.  THEY FILED THE COMPLAINT ON THE
6    23RD.  IF THEY WANTED TO PURSUE A PI, WHICH YOU HAD TO ORDER
7    THEM TO DO, THEY COULD HAVE PUT THAT TOGETHER, PROVIDED THE
8    RELIEF THAT THEY SOUGHT, AND DESPITE THE SCURRILOUS ALLEGATIONS
9    OF VOTER SUPPRESSION AND IMMEDIATE HARM, THEY DIDN'T DO ANY OF
10   THAT UNTIL YOU ORDERED THEM TO DO IT, AND THEY'VE FILED IT.  WE
11   SHOULDN'T BE SUBJECTED TO THEM -- THEIR CONTINUAL REVISION OF
12   WHAT WE ARE HAVING TO DEFEND.
13             SECOND, WE HAVE THREE LEVELS OF FACTS, QUOTE, FACTS,
14   END OF QUOTE, THAT WE ARE BEING ASKED TO DEAL WITH.  THE FIRST
15   LEVEL IS STATEMENTS OF COUNSEL.  THERE ARE MANY OF THE
16   STATEMENTS OF COUNSEL THAT ARE NOT IN THE COMPLAINT, NOT IN THE
17   EXHIBITS, NOT IN THE MOTION FOR PRELIMINARY INJUNCTION, THEY
18   ARE NOWHERE, AND SHE IS MAKING REPRESENTATIONS OF FACT THAT'S
19   COMPLETELY IMPROPER AND CANNOT BE RELIED UPON BY THIS COURT.
20             SECOND LEVEL IS ALLEGATIONS IN THE COMPLAINT, THE
21   PRELIMINARY INJUNCTION AND THE EXHIBITS.  THAT IS NOT EVIDENCE.
22   EVIDENCE IS REQUIRED TO ENJOIN US.  FOR THIS COURT TO MAKE A
23   DECISION TO ENJOIN US, YOU MUST HAVE SUFFICIENT EVIDENCE.  ALL
24   OF THAT IS NOT -- ALMOST NONE OF THAT IS EVIDENCE.
25             NOW, WHAT EVIDENCE DO WE HAVE?  WE HAVE AN AFFIDAVIT
```

1    THAT'S A STANDING AFFIDAVIT.  NOW, THEY ARGUE THAT NO EVIDENCE

2    IS REQUIRED, THAT YOU CAN ENJOIN US -- ENJOIN US, PROHIBIT US

3    FROM OUR LAWFUL ACTIVITY, EXERCISE THE POWER OF THE FEDERAL

4    CONSTITUTION AGAINST -- AND FEDERAL LAW AGAINST US WITH NO

5    EVIDENCE.

6           AND WHAT IS THEIR ARGUMENT ON THAT?  THEY SAID THAT

7    THE STANDARDS OF EVIDENCE ARE RELAXED SO THAT HEARSAY EVIDENCE

8    IS PERMITTED.  NOW, THAT IS TRUE, HEARSAY EVIDENCE IS

9    PERMITTED.  BUT WHAT IS HEARSAY EVIDENCE?  HEARSAY EVIDENCE IS

10   WHEN SOMEBODY STANDS UP AND SWEARS THAT JOE BLOW SAID

11   SOMETHING, BUT THAT PERSON HAS SWORN THAT JOE BLOW SAID

12   SOMETHING.

13          THE COURT:  WELL, THEY HAVE NEWSPAPER ARTICLES FOR

14   HEARSAY EVIDENCE.

15          MR. BOPP:  THE ARTICLES ARE NOT AUTHENTICATED,

16   THEY'RE NOT VERIFIED.  YOU KNOW, I'VE BEEN DOING THIS FOR 47

17   YEARS.  I'VE NEVER SEEN ANYTHING LIKE THIS.  WHAT IS CUSTOMARY

18   IN THESE SITUATIONS IS THAT SOMEONE VERIFY THROUGH AN

19   AFFIDAVIT, I GOT THIS, YOU KNOW, WEB PAGE FROM THIS WEBSITE.  I

20   GOT THIS PRESS RELEASE FROM SUCH AND SO, THIS NEWSPAPER ARTICLE

21   WAS PUBLISHED IN, YOU KNOW, SUCH AND SO AT SUCH AND SUCH A TIME

22   SO THAT THERE IS SOME EFFORT, SOME MINIMAL EFFORT -- WITH ALL

23   THESE LAWYERS FROM ALL OVER THE UNITED STATES, THEY HAD NO

24   INTENTION OF BRINGING UP A PI.  I MEAN, THIS -- THE FIRST THING

25   THEY DID BEFORE -- BEFORE THEY FILED THEIR COMPLAINT WAS TO

1    CALL THE PRESS.  AND THERE'S A NATIONAL --

2           THE COURT:  STOP IT.  STOP IT.  STOP IT.  LET'S KEEP

3    IT TO THE CASE.  I UNDERSTAND -- I'VE READ WHAT YOU'VE ALREADY

4    SAID, THAT THEY CALLED BEFORE THEY FILED IT, AND I SEE WHERE

5    YOU'RE FIXING TO GO, BUT LET'S KIND OF KEEP IT ON WHAT TO DO

6    LEGALLY.

7           MR. BOPP:  THEY CANNOT -- THEY CANNOT CLAIM THAT THEY

8    DIDN'T HAVE TIME.  THEY CANNOT CLAIM THAT THEY -- THEY DON'T

9    HAVE ENOUGH LAWYERS.  THEY CANNOT CLAIM ANYTHING TO JUSTIFY

10   THEIR FAILURE TO PROVIDE EVIDENCE BEFORE THIS COURT, AND THEY

11   NEED TO BE HELD TO THAT.  AND JUST SPRINGING AN AFFIDAVIT, TWO

12   AFFIDAVITS -- TWO DECLARATIONS ON US AT THIS POINT IS REALLY

13   KIND OF SHOCKING, BUT I'VE AGREED TO IT.  OKAY?  BUT THEY NEED

14   TO BE HELD TO A STANDARD THAT THE LAW REQUIRES.

15          THE COURT:  WELL, LET ME SAY THIS, MR. BOPP, ANYTHING

16   THAT THEY BRING, I'M DEFINITELY GOING TO ALLOW YOU TO RESPOND.

17   AND AS I POINTED OUT, I MAY NOT BE ABLE TO ISSUE AN ORDER

18   TODAY.

19          YOU KNOW, MS. BRANCH HAS INDICATED THAT SHE'S GOING

20   TO GIVE ME MORE INFORMATION.  ANYTHING SHE GIVES ME, YOU'RE

21   GOING TO BE GIVEN THE RIGHT UNDER DUE PROCESS TO RESPOND --

22   WELL, ALL OF THE DEFENDANTS ARE GIVEN THE RIGHT TO RESPOND.

23          AND IF THAT RESULTS IN ME NOT BEING ABLE TO ISSUE AN

24   ORDER TODAY, OR JANUARY THE 5TH, THAT'S JUST THE WAY IT'S GOING

25   TO BE, BUT YOU ARE NOT -- YOU ARE NOT GOING TO BE PUT IN A

1   SITUATION WHERE THEY GIVE ME SOMETHING AND I RULE JUST BASED ON

2   THAT.  NO.  ANYTHING THEY GIVE ME, YOU'RE GOING TO HAVE A RIGHT

3   TO RESPOND AND YOU ALSO HAVE THE RIGHT TO SAY, JUDGE, I NEED

4   MORE TIME TO RESPOND TO THIS.

5          MR. BOPP:  JUDGE, I APPRECIATE THAT AND I AM

6   CONFIDENT THAT THAT IS THE CASE, THAT YOU WILL ALLOW US TO

7   RESPOND.  BUT WHAT I AM SAYING IS THIS SHOULD BE CUT OFF.  IN

8   OTHER WORDS, THEY HAD A 5:00 DEADLINE IN ORDER FOR US TO

9   RESPOND.  WE SHOULDN'T BE JUST SUPPLEMENTING, SUPPLEMENTING,

10  SUPPLEMENTING AND, YOU KNOW --

11         THE COURT:  AND THAT'S AN ARGUMENT TO TAKE INTO

12  CONSIDERATION THAT MAYBE, YOU KNOW, I SHOULDN'T CONSIDER

13  ANYTHING ELSE.  YOU KNOW, THAT'S ALWAYS -- I'LL TAKE THAT AS AN

14  ORAL MOTION BY YOU, JUDGE, YOU SHOULDN'T CONSIDER ANYTHING

15  ELSE.  ISN'T THAT RIGHT?  THAT'S SO NOTED.  THAT THERE IS AN

16  ORAL MOTION THAT, JUDGE, YOU SHOULD GO ON THE RECORDS YOU HAVE.

17         MR. BOPP:  ALL RIGHT.  THANK YOU, YOUR HONOR.

18  THIRD -- THIRD --

19         THE COURT:  WHAT'S YOUR THIRD ONE?

20         MR. BOPP:  THIRD IS THE 230 PROCEDURE.  NOW, THE 230

21  PROCEDURE IS -- ALLOWS FOR AN ELECTOR, A VOTER, TO SUBMIT A

22  CHALLENGE TO A PARTICULAR OTHER VOTER BASED ON EVIDENCE THAT

23  THEY MAY HAVE, THAT THEY HAVE, THAT THAT VOTER IS NO LONGER

24  ELIGIBLE TO VOTE IN THIS ELECTION.  IT HAS NOTHING TO DO WITH

25  THAT, RIGHT, IT HAS NOTHING TO DO WITH THE VOTER REGISTRATION

1    ROLLS.

2            THE COURT:  BUT IS THAT THE CASE?  THAT'S MY

3    QUESTION.  YOU JUST RAISED MY FIRST QUESTION.

4            MR. BOPP:  YES.

5            THE COURT:  THERE IS NO QUESTION THAT IN THAT

6    21-2-230 THAT AN ELECTOR IN THAT COUNTY CAN CHALLENGE ANOTHER

7    ELECTOR WITH INDIVIDUAL INFORMATION.

8            BUT HERE, DO WE REALLY HAVE THAT?  IS THIS NOT A

9    SYSTEMATIC CHALLENGE?  IT'S BEEN POINTED OUT THAT OVER 85

10   COUNTIES IN THIS STATE HAVE ALREADY HAD CHALLENGES, THEY'VE

11   CHALLENGED OVER 360,000 PEOPLE.  IS THAT REALLY INDIVIDUAL

12   VOTERS?  IN OTHER WORDS -- IT'S INDIVIDUAL VOTERS DOING IT, BUT

13   IT'S LIKE AN ORGANIZED SET OF INDIVIDUAL VOTERS.

14           MR. BOPP:  WELL, OKAY.  FIRST, YOUR HONOR, THEY DID

15   NOT MAKE AN NVRA CHALLENGE OR CLAIM.  AND WE SHOULDN'T BE --

16   AND THEY SHOULDN'T BE ABLE TO PARACHUTE THAT IN AT THAT POINT.

17   OKAY?  THAT'S NOT IN THEIR COMPLAINT, IT'S NOT IN THE PI.

18           THE COURT:  IT'S NOT IN THEIR COMPLAINT, IT IS NOT,

19   HOWEVER, IT CAN BE CONSIDERED.  ONE OF THE THINGS THAT THE

20   ELEVENTH CIRCUIT HAS POINTED OUT, AT LEAST I CAN THINK ABOUT

21   FOUR CASES IN THE LAST FIVE MONTHS IN THIS CIRCUIT, IF WE DO

22   THINGS ON THE EVE OF THE ELECTION, IT CAUSES CONFUSION.  AND

23   ONE OF THE THINGS THAT THEY'RE TRYING TO KEEP THEM FROM

24   DOING -- FEDERAL COURTS, IN PARTICULAR -- FROM DOING IS CAUSING

25   CONFUSION IN STATE ELECTIONS, BECAUSE STATE GOVERNMENT OVERSEES

1  THE ELECTION.  IF YOU'VE GOT OVER 360,000 CHALLENGES, WITHIN 20

2  DAYS, I THINK YOU-ALL FILED THIS ON DECEMBER THE 18TH, AND YOU

3  HAVE OVER 360,000 CHALLENGES WITHIN 20 DAYS OF AN ELECTION,

4  DOES THAT NOT CAUSE CONFUSION AND WEIGHT AGAINST WHAT THE

5  ELEVENTH CIRCUIT AND THE SUPREME COURT SAYS, WHICH IS THAT IT

6  SHOULD NOT BE ALLOWED.

7           MR. BOPP:  YEAH, BUT THAT'S THE PURCELL PRINCIPLE,

8  YOUR HONOR.  AND THE PURCELL PRINCIPLE APPLIES TO FEDERAL

9  COURTS AND STATE COURTS AND GOVERNMENTAL OFFICIALS.  THIS IS

10 NOT A CHANGE IN LAW, YOUR HONOR.

11          THE COURT:  BUT THIS IS NOT --

12          MR. BOPP:  IN SECTION 230 --

13          THE COURT:  BUT YOU'RE NOT --

14          MR. BOPP:  IN SECTION 230 --

15          THE COURT:  I'M SORRY.  GO AHEAD.  I'M SORRY.  GO

16 AHEAD.

17          MR. BOPP:  THIS IS NOT A CHANGE IN THE LAW, THAT'S

18 WHAT THEY ARE TALKING ABOUT, CHANGING THE LAW ON THE EVE OF AN

19 ELECTION.  230 IS THE LAW.  IT'S ADOPTED BY THE GEORGIA

20 LEGISLATURE.  IT PROVIDES AN OPPORTUNITY -- IT PROVIDES AN

21 OPPORTUNITY AND IT SAYS NOTHING ABOUT HOW MANY CHALLENGES A

22 PERSON MAKES AT ALL.

23          THE COURT:  WHAT YOU ARE DOING, IT SAYS YOU ARE

24 CIRCUMVENTING THE LAW -- YOU'RE CIRCUMVENTING IT BY CONFLICTING

25 IT WITH ANOTHER LAW.  THERE IS A FEDERAL LAW THAT INDICATES

1   THAT, YOU KNOW, IT'S NOT -- IT'S ON THE NRVA, I UNDERSTAND,

2   THAT WITHIN 90 DAYS OF AN ELECTION, AND I UNDERSTAND YOUR

3   ARGUMENT, WELL, WE'RE NOT REMOVING THEM FROM THE VOTE, BUT IN A

4   SENSE, IF THEY CAN'T VOTE, YOU ARE IN A SENSE REMOVING THEM.

5           MR. BOPP:  BUT YOU'RE NOT, YOUR HONOR, THEY'RE NOT

6   REMOVED FROM THE VOTER ROLLS.  THE NVRA --

7           THE COURT:  IF THE BOARD OF ELECTIONS FINDS THAT JOHN

8   DOE NO LONGER LIVES IN THAT ELECTORAL COUNTY, WHAT HAPPENS?

9           MR. BOPP:  IF THEY'RE NO LONGER ELIGIBLE TO VOTE,

10  THEY CAN'T VOTE IN THAT PARTICULAR ELECTION.  THEY ARE NOT

11  REMOVED FROM THE VOTER ROLLS.

12          THE COURT:  IF THEY DON'T LIVE ANY LONGER IN THAT

13  COUNTY, YOU'RE SAYING THE ONLY THING THAT HAPPENS IS YOU CAN'T

14  VOTE IN THAT PARTICULAR ELECTION?

15          MR. BOPP:  THE ONLY THING THAT RESULTS FROM A 230

16  CHALLENGE IS THEY CANNOT VOTE IN THAT ELECTION.  THE 229 IS THE

17  PROCEDURE UNDER GEORGIA LAW THAT DEALS WITH REMOVING PEOPLE

18  FROM THE VOTER ROLLS.  RIGHT?  229 IS GOVERNED BY THE NVRA.

19          THE 230 IS NOT BECAUSE IT HAS NOTHING TO DO WITH YOUR

20  PRESENCE ON THE VOTER ROLL, IT HAS TO DO WITH WHETHER OR NOT

21  YOU'RE ELIGIBLE TO VOTE IN A PARTICULAR ELECTION.  AND LOOK,

22  YOU WELL KNOW, YOU HANDLED THE BLACK VOTERS MATTER FUND WHICH

23  YOU JUST RECENTLY ISSUED AN OPINION ON, THAT PEOPLE MOVE --

24          THE COURT:  THAT IS NOT EXACTLY WHAT I INTENDED, BUT

25  GO AHEAD.

```
 1              MR. BOPP:  WELL, I UNDERSTAND THAT.  BUT PEOPLE MOVE,
 2    SOME 10 PERCENT OF THE PEOPLE MOVE.  YOU HANDLED THE CASE IN
 3    WHICH HUNDREDS OF THOUSANDS OF PEOPLE WERE REMOVED FROM THE
 4    VOTER ROLLS BECAUSE THEY HAD MOVED.  ALL RIGHT.  AND BECAUSE
 5    THE STATE OF -- AND YOU UPHELD THE STATE OF GEORGIA USING THE
 6    SAFE HARBOR PROCEDURE WHICH INVOLVED A TRIGGER WHICH WAS THE
 7    NATIONAL CHANGE OF ADDRESS SYSTEM OF THE POST OFFICE, THAT IS
 8    THE SYSTEM -- THAT IS THE TRIGGER, IT'S NOT, AGAIN, THEY'RE
 9    CONCLUSIVE, JUST SO LONG AS UNDER 230 IT IS NOT CONCLUSIVE.
10    OKAY?
11              THE COURT:  BUT THAT'S THE TRIGGER THAT YOU ALL WERE
12    USING --
13              MR. BOPP:  YES, YOU UPHELD IT AS THE TRIGGER.
14              THE COURT:  WELL --
15              MR. BOPP:  BECAUSE THAT IS WHAT FEDERAL LAW PROVIDES
16    FOR IT.
17              THE COURT:  WELL, I DON'T KNOW IF THE WAY YOU'RE
18    READING IT AND INTERPRETING IT IS THE SAME WAY I INTENDED FOR
19    IT TO BE READ, BUT I DO KNOW THAT YOU-ALL ARE USING THE
20    NATIONAL CHANGE OF ADDRESS LIST AS THE TRIGGER TO CHALLENGE
21    THESE INDIVIDUALS, BUT YET YOU ARGUE --
22              MR. BOPP:  THAT IS CORRECT.
23              THE COURT:  -- THE NATIONAL VOTER REGISTRATION ACT
24    GIVES YOU THE RIGHT TO DO THIS.
25              MR. BOPP:  BUT WHAT -- BUT WE HAVE TO BE SPECIFIC
```

1   ABOUT WHAT WE MEAN BY CHALLENGE.  OKAY?

2           THE COURT:  WELL, LET'S START WITH A.  A, YOU ARE

3   USING THE NATIONAL CHANGE OF ADDRESS LIST TO CHALLENGE?

4           MR. BOPP:  THE VOTE -- THE VOTERS WHO HAVE FILED THE

5   CHALLENGES, BECAUSE TRUE THE VOTE FILED NO CHALLENGES.

6           THE COURT:  THAT IS CORRECT.  I UNDERSTAND THAT.

7           MR. BOPP:  UNDER 230, TRUE THE VOTE COULD NOT FILE A

8   CHALLENGE BECAUSE THEY'RE NOT AN ELECTOR IN THE STATE OF

9   GEORGIA, RIGHT?

10          THE COURT:  RIGHT.

11          MR. BOPP:  SO THE VARIOUS INDIVIDUAL VOTERS FILED

12  CHALLENGES, WHICH -- WHICH TRUE THE VOTE ASSISTED THEM WITH,

13  THAT'S CERTAINLY TRUE, IN -- IN THOSE CHALLENGES, WAS BASED

14  PRINCIPALLY ON THE NATIONAL CHANGE OF ADDRESS INFORMATION.

15          NOW, THAT -- WHEN -- WHEN YOU DO -- AND -- AND THE

16  PLAINTIFFS, THE WAY THEY TALK ABOUT THIS, YOU WOULD THINK THAT

17  WHEN THEY -- WHEN A VOTER FILES A CHALLENGE UNDER 230, YOU'RE

18  JUST REMOVED.  OKAY.  OR OFTEN THEY SAY YOU'RE REMOVED FROM THE

19  VOTER LIST, BUT THEY ALSO SAY YOU CAN'T VOTE.

20          OKAY.  WELL, SEE, THAT'S PATENTLY FALSE.  THE

21  ELECTION BOARD -- IT TRIGGERS -- A CHALLENGE TRIGGERS A

22  PROCEDURE.  THE FIRST THING IS THAT THE ELECTION BOARD LOOKS AT

23  THE EVIDENCE PRESENTED BY THE VOTER AND MAKES THE DECISION

24  WHETHER OR NOT THERE'S PROBABLE CAUSE FOR WHAT?

25          THE COURT:  TO HAVE A HEARING.

1           MR. BOPP:  IF THERE'S PROBABLE CAUSE -- THE PROBABLE

2    CAUSE IS NOT TO REMOVE THE VOTER.  IF YOU FIND PROBABLE CAUSE,

3    IT'S PROBABLE CAUSE TO CONTACT THE VOTER TO GET VERIFICATION OF

4    THE PERSON'S ELIGIBILITY.

5           THE COURT:  ALL RIGHT.  BUT HERE'S THE KEY -- HERE'S

6    THE KEY.

7           MR. BOPP:  OKAY.

8           THE COURT:  THE NATIONAL CHANGE OF ADDRESS IS WHAT

9    STARTS IT.  AND YOU REFERRED TO IT, AND I SAID I WASN'T GOING

10   TO DO IT AGAIN, BUT YOU REFERRED TO JUDGE GARDNER'S ORDER.  IN

11   HER ORDER --

12          MR. BOPP:  YEAH.

13          THE COURT:  -- SHE POINTS OUT MUSCOGEE COUNTY

14   DEFENDANTS ARE ENJOINED FROM UPHOLDING THEIR CHALLENGE TO ANY

15   VOTER ELIGIBILITY SOLELY ON THE BASIS OF INFORMATION ON THE

16   NCOA REGISTRY, SO THEREFORE --

17          MR. BOPP:  EXACTLY.

18          THE COURT:  -- THE INTENT BEHIND 230 WAS FOR AN

19   INDIVIDUAL ON INDIVIDUAL KNOWLEDGE TO CHALLENGE SOMEONE.

20   THEY'RE NOT CHALLENGING ON INDIVIDUAL KNOWLEDGE, THEY'RE

21   CHALLENGING BASED ON A NAME APPEARING ON AN NCOA REGISTRY,

22   WHICH IS ORGANIZED BY TRUE THE VOTE.

23          MR. BOPP:  BUT THAT IS EVIDENCE.  I MEAN, PEOPLE --

24   PEOPLE -- HOW DO YOU GET ON THE REGISTRY?  I MEAN, YOU KNOW

25   THIS.  YOU HANDLED THE OTHER CASE.  HOW DO YOU GET ON IT?

```
1   WELL, BECAUSE YOU FILE WITH THE POST OFFICE THAT YOU WANT TO

2   CHANGE THE ADDRESS FOR YOUR MAIL.  SO THIS IS SOMETHING THE

3   VOTER HAS DONE.  THIS IS NOT SOMEBODY ELSE DOING IT.  OKAY?

4   THE VOTER DID THIS.  ALL RIGHT?

5            AND WE KNOW -- WE KNOW THAT ABOUT TEN PERCENT OF THE

6   PEOPLE MOVE EVERY YEAR.  WE KNOW MANY OF THOSE PEOPLE MOVE

7   OUT-OF-STATE AND ARE NO LONGER ELIGIBLE TO VOTE IN A PARTICULAR

8   ELECTION.  AND WE KNOW THAT THERE ARE MANY OF THESE PEOPLE THAT

9   ARE VOTERS, ON VOTER REGISTRATION ROLLS, THAT THEN DO THIS.

10  OKAY?  AND ARE NO LONGER ELIGIBLE TO VOTE IN THE ELECTION.

11           THE COURT:  BUT WE ALSO KNOW --

12           MR. BOPP:  SO THIS IS A FAILSAFE MECHANISM --

13           THE COURT:  BUT WE ALSO KNOW -- BUT WE ALSO KNOW THAT

14  THAT NCOA LIST IS SO INCONSISTENT THAT CONGRESS AND THE COURTS

15  HAVE SAID THAT YOU CANNOT REMOVE SOMEONE BASED ON THAT LIST

16  ALONE.  YOU HAVE A TWO-STEP SYSTEM.

17           MR. BOPP:  OF COURSE.

18           THE COURT:  230 GENERAL ELECTIONS --

19           MR. BOPP:  OF COURSE.

20           THE COURT:  -- NOTICES.

21           BUT YOUR ARGUMENT IS THAT, BUT JUDGE, WE'RE NOT

22  DEALING WITH THAT, YOUR ARGUMENT IS THAT WE'RE JUST DEALING

23  WITH 230.

24           MR. BOPP:  WELL, THAT'S PRECISELY TRUE.  AND UNDER

25  JUDGE GARDNER'S ORDER, THAT WILL CONTINUE TO BE TRUE, THAT YOU
```

1 CANNOT RE -- SHE HAS ORDERED THAT YOU CANNOT REMOVE -- PREVENT

2 A VOTER FROM VOTING IN AN ELECTION UNDER 230 BASED ON THE

3 NATIONAL CHANGE OF ADDRESS INFORMATION.

4          SHE DID NOT, THOUGH, ENJOIN FILING A CHALLENGE BASED

5 ON THAT INFORMATION.  IN FACT, SECTION -- BECAUSE NUMBER --

6 SECTION 1, YOU READ THE WORDS ARE ENJOIN FROM UPHOLDING A

7 CHALLENGE.  UPHOLDING A CHALLENGE IS NOT FINDING PROBABLE CAUSE

8 AND INVESTIGATING IT.  OKAY?  IT IS THE END RESULT WHERE YOU

9 HAVE A HEARING, YOU CONSIDER THE EVIDENCE FROM THE VOTER AND

10 THEN YOU, QUOTE, UPHOLD.  PROBABLE CAUSE IS TO INVESTIGATE.

11 ALL RIGHT?

12          NOW, SECONDLY, SECTION 2 ON PAGE 2 IS OBVIOUSLY

13 TALKING ABOUT A CHALLENGE THAT THE ELECTION BOARD IS

14 CONSIDERING.  IN OTHER WORDS, THAT AN ELECTOR BASED ON THE

15 NATIONAL CHANGE OF ADDRESS REGISTRY HAD FILED THE CHALLENGE,

16 THEY HAD DETERMINED THERE WAS PROBABLE CAUSE BASED UPON THE

17 EVIDENCE PRESENTED, ONE OF THE -- ONE OF THOSE ITEMS CERTAINLY

18 WOULD BE OR COULD VERY WELL BE THE NCOA.

19          AND THEN NUMBER TWO PROVIDES THE DUE PROCESS

20 PROTECTIONS ON HOW THAT SECOND STAGE IS GOING TO BE HANDLED,

21 THAT IS THE CONSIDERATION OF THE CHALLENGE WITH A HEARING, THE

22 VOTER HAVING THE OPPORTUNITY TO PRESENT EVIDENCE, ET CETERA.

23          SO THERE IS NOTHING -- LOOK, SHE -- THESE -- MANY OF

24 THESE SAME LAWYERS FILED SUIT AGAINST THESE TWO COUNTIES ON THE

25 BASIS THAT THE NVRA PROHIBITED THIS.

1          JUDGE GARDNER HAS ALREADY CONSIDERED THIS ARGUMENT.

2     THEY ARGUED -- ONE OF THEIR THREE COUNTS WAS THAT THE 90-DAY

3     RULE, THAT YOU'VE CITED TO, IN THE NVRA PROHIBITS THIS

4     PROCEDURE WITHIN 90 DAYS OF AN ELECTION.

5          OBVIOUSLY JUDGE GARDNER REJECTED THAT.  SHE'S

6     AUTHORIZING THE PROCEDURE AND PROVIDING FOR DUE PROCESS

7     PROTECTIONS DURING THE PROCEDURE.  IF IT WERE TRUE THAT THE

8     NVRA IS APPLICABLE TO THIS PROCEDURE AND PROHIBITS ANYONE --

9     ANY CHALLENGE BEING MADE WITHIN 90 DAYS OF AN ELECTION, WHICH

10    YOU REFERRED TO, SHE WOULD HAVE ENJOINED THE WHOLE PROCEDURE

11    AND SAID YOU CANNOT USE THIS PROCEDURE DURING THAT 90 DAYS, BUT

12    SHE DOESN'T DO THAT.

13          THE COURT:  HOW DOES YOUR ARGUMENT SQUARE, THOUGH,

14    WITH THE *ARCIA* CASE THAT COMES OUT OF THE ELEVENTH CIRCUIT?  IN

15    OTHER WORDS, HOW --

16          MR. BOPP:  BECAUSE IF IT'S -- BECAUSE THAT INVOLVED

17    STRIKING SOMEONE FROM THE VOTER REGISTRATION ROLL, WHICH IS

18    SPECIFICALLY THE ACTIVITY THAT IS REGULATED BY THE NATIONAL

19    VOTING RIGHTS ACT -- THE VOTER REGISTRATION ACT.  THAT'S THE

20    REASON THEY CALL IT VOTER REGISTRATION ACT IS BECAUSE IT

21    APPLIES TO VOTER ROLLS, REGISTRATION ROLLS, NOT THE

22    CIRCUMSTANCE IN WHICH AN INELIGIBLE VOTER COMES TO VOTE BUT IS

23    NO LONGER ELIGIBLE TO VOTE AND THEREFORE, THIS LAW PROVIDES A

24    PROCEDURE IN ORDER FOR A CHALLENGE TO YOUR ELIGIBILITY TO VOTE

25    IN A PARTICULAR ELECTION, WHICH IS 230, TO BE DETERMINED AND

1   HAS NO EFFECT ON THE VOTER REGISTRATION ROLL, THE PERSON

2   CONTINUES.

3           THE COURT:  SEE, I --

4           MR. BOPP:  NO EFFECT.

5           THE COURT:  WE'LL KNOW MORE AFTER THIS, BUT I THINK

6   YOU'RE TRYING TO SEPARATE 229 AND 230 --

7           MR. BOPP:  OF COURSE I AM, BECAUSE THEY'RE COMPLETELY

8   DIFFERENT.

9           THE COURT:  THEY ARE DIFFERENT, BUT THE WAY YOU'RE

10  DOING IT, WHAT YOU'RE DOING -- YOUR ORGANIZATION IS DOING,

11  THOUGH, IS YOU ARE ORGANIZING INDIVIDUALS SYSTEMATICALLY TO

12  CHALLENGE OVER 360,000 PEOPLE'S RIGHT TO VOTE, AND THAT'S WHAT

13  WE'RE HERE FOR, FOR ME TO DETERMINE UNDER 11(B) WHETHER OR NOT

14  THIS ORGANIZED EFFORT IS ORGANIZED TO INTIMIDATE THESE

15  INDIVIDUALS.

16          MR. BOPP:  YEAH, I --

17          THE COURT:  IN OTHER WORDS, I THINK WE'RE KIND OF

18  GETTING OFF A LITTLE BIT TOO MUCH INTO JUDGE GARDNER'S ORDER IN

19  THAT ASPECT.  THE QUESTION IS WHETHER OR NOT THIS ORGANIZED,

20  SYSTEMATIC EFFORT TO CHALLENGE 360,000 PEOPLE IS DONE WITH THE

21  IDEA OF INTIMIDATING PEOPLE TO KEEP THEM FROM VOTING.

22          MR. BOPP:  AND NOW I'M VERY HAPPY TO ADDRESS THAT

23  NEXT.  THIS WAS RAISED BY COUNSEL AND BY YOU AS TO WHETHER OR

24  NOT THE NATIONAL VOTER -- THE VOTER REGISTRATION ACT APPLIED

25  HERE.  I'VE EXPLAINED WHY IT DOES NOT APPLY.  I'VE EXPLAINED

```
 1   WHAT -- THAT JUDGE GARDNER REJECTED THAT, THAT VERY CLAIM,

 2   AND --

 3            THE COURT:  OF COURSE JUDGE GARDNER'S ORDER DOES NOT

 4   BIND THIS COURT.

 5            MR. BOPP:  WELL, OF COURSE IT DOESN'T.

 6            THE COURT:  I HAVE GREAT RESPECT FOR JUDGE GARDNER.

 7            MR. BOPP:  AND YOU CAN COLLATERALLY ATTACK IT OR YOU

 8   CAN GO TALK TO HER ABOUT THAT, I GUESS.

 9            THE COURT:  WELL, I WON'T BE TALKING TO HER ABOUT IT.

10            MR. BOPP:  I KNOW.  I KNOW.  SO NOW -- AND ONE OTHER

11   PRELIMINARY THING, IF THE COURT WOULD PERMIT, BEFORE I GET TO

12   THE SPECIFICS OF 11(B).

13            AND THAT IS WE NOW KNOW WHAT THE CLAIM OF THE

14   PLAINTIFFS TRULY ARE -- IS.  OKAY?  AND THAT IS BECAUSE OF A

15   CULTURE THAT HAS BEEN CREATED OF UNFOUNDED VOTER FRAUD THAT

16   ANYBODY WHO RAISES IT, ANYBODY THAT EMPLOYS ANY LEGAL PROCEDURE

17   THAT IS AVAILABLE TO THEM TO PREVENT IT, ANYBODY THAT QUESTIONS

18   IT IS INVOLVED IN VOTER INTIMIDATION AND CAN BE PUNISHED UNDER

19   FEDERAL LAW, ANYONE.

20            BECAUSE I CAN'T -- MY CLIENT CAN'T DO ANYTHING ABOUT

21   THIS CULTURE -- I MEAN, YOU LOOK AT THEIR COMPLAINT, THEY --

22   YOU KNOW, THEY'RE COMPLAINING ABOUT TRUMP LAWYERS AND SIDNEY

23   POWELL AND ALL THESE DIFFERENT PEOPLE THAT HAVE NOTHING TO DO

24   WITH MY PLAINTIFF -- OR MY DEFENDANT HERE, OR DEFENDANTS HERE,

25   NOTHING.  AND THAT THAT CULTURE WILL EXIST WHETHER --
```

1    WHETHER -- SUCH AS IT IS, AND I THINK IT IS GROSSLY UNFAIRLY

2    DESCRIBED, BUT THAT WILL EXIST NO MATTER WHAT TRUE THE VOTE

3    DOES OR DOESN'T DO.  AND THIS MEANS ANYONE -- EVERYONE, THAT

4    RAISES THE QUESTION OF THE ELIGIBILITY OF A VOTER, WHETHER OR

5    NOT THERE IS VOTER FRAUD, WILL BE GUILTY UNDER FEDERAL LAW OF

6    INTIMIDATION AND CAN BE PUNISHED.

7            THE COURT:  MR. BOPP, COME ON NOW.  LET'S BE

8    REALISTIC HERE.  WE'RE NOT TALKING ABOUT A FEW PEOPLE, 20 OR 25

9    PEOPLE INDIVIDUALLY CHALLENGING 20 OR 25 OTHER PEOPLE.  WE'RE

10   TALKING ABOUT A CHALLENGE TO OVER 300,000 PEOPLE.  THAT IS NOT

11   AN EVERYDAY OCCURRENCE, THAT IS NOT JUST -- I'M NOT DISAGREEING

12   WITH YOU THAT PEOPLE HAVE A RIGHT UNDER 229 AND 230,

13   PARTICULARLY 230, TO CHALLENGE AN ELECTOR IN A PARTICULAR

14   ELECTION.  STATE OF GEORGIA LAW MAKES THAT QUITE CLEAR.

15           BUT IN THIS CASE, THE REASON WHY WE'RE HAVING THIS

16   HEARING, WHEN YOU AND I OUGHT TO BE GETTING READY FOR NEW

17   YEAR'S DAY AND WE'RE DEALING WITH THIS HEARING IS BECAUSE THERE

18   ARE OVER 300,000 PEOPLE THAT YOU ALL YOURSELVES SAY ARE GOING

19   TO BE CHALLENGED, AND I DON'T KNOW IF THAT MEANT IT'S HAPPENED

20   SO FAR IN 84 COUNTIES, IT'S NOT JUST A REGULAR OCCURRENCE.  ARE

21   YOU ARGUING THIS IS JUST A REGULAR OCCURRENCE OF SOMEBODY

22   EXERCISING THEIR RIGHTS?

23           MR. BOPP:  WELL, LET'S -- LET'S -- LET'S ADDRESS THAT

24   IN TWO WAYS.  THERE IS NOTHING UNDER 230 THAT SAYS YOU'RE

25   LIMITED TO EITHER -- EITHER PERSONAL KNOWLEDGE OR YOU CAN ONLY

1   MAKE SO MANY.  AND -- AND LOOK, WE HAVE TO BE REALISTIC,

2   THERE'S THINGS -- A THING CALLED MODERN TECHNOLOGY.  OKAY?

3   THAT -- THAT -- AND MODERN TECHNOLOGY ALLOWS THE TAKING -- THE

4   CHANGE OF ADDRESS REGISTRY AND COMPARING IT TO THE VOTER

5   REGISTRATION ROLL.

6           AND JUST BECAUSE THERE'S A BUNCH OF PEOPLE THAT ARE

7   POTENTIALLY -- POTENTIALLY, BECAUSE IT'S A PROCESS, INELIGIBLE

8   DOESN'T MEAN IT'S OKAY.  SO, IN OTHER WORDS, WHAT WOULD BE

9   WRONG HERE IS YOU CAN CHALLENGE 20 OR 30 PEOPLE BUT YOU CAN'T

10  CHALLENGE 1,000 PEOPLE BECAUSE IT'S TOO MANY.  WELL, YEAH, BUT

11  THESE TOO MANY ARE VOTERS THAT ARE -- THAT IF IT'S DETERMINED

12  BY THE COUNTY IS VOTING -- BASED ON EVIDENCE -- IS VOTING

13  ILLEGALLY, WE'RE TALKING ABOUT AFFECTING ELECTIONS, AND THEY

14  WANT TO MAKE THAT ILLEGAL, BECAUSE THERE ARE TOO MANY

15  POTENTIALLY INELIGIBLE PEOPLE.

16           THE COURT:  WHAT WAS THE REASON FOR TRUE THE VOTE TO

17  FEEL THAT WE NEED, IN THE STATE OF GEORGIA, WE NEED TO

18  CHALLENGE, YOU KNOW, ON DECEMBER THE 18TH, FOUR DAYS AFTER

19  EARLY VOTING BEGAN AND PROBABLY TWO WEEKS BEFORE OUT-OF-STATE

20  BALLOTS BEGIN, WHAT WAS THE REASONING OR LOGICAL THOUGHT BEHIND

21  WE NEED TO CHALLENGE THESE 360,000 PEOPLE?  I DON'T THINK

22  THERE'S ANY ARGUMENT THAT TRUE THE VOTE IS ORGANIZING THESE

23  INDIVIDUALS TO CHALLENGE IN DIFFERENT COUNTIES.  YOU'RE RIGHT,

24  TRUE THE VOTE CAN'T DO IT.  IT HAS TO BE AN ELECTOR IN THAT

25  PARTICULAR COUNTY, SO OBVIOUSLY TRUE THE VOTE HAS ORGANIZED

1  THESE INDIVIDUALS IN THESE DIFFERENT 159 COUNTIES IN GEORGIA TO

2  CHALLENGE THESE PEOPLE THAT THEY FEEL ARE VOTING ILLEGALLY

3  IS --

4          MR. BOPP:  WELL, BASED UPON --

5          THE COURT:  -- BECAUSE THESE PEOPLE COULD BE VOTING

6  ILLEGALLY THAT COULD AFFECT AN ELECTION?

7          MR. BOPP:  YES.  BECAUSE THEY'RE -- THEY'RE --

8  THEY'RE -- THEY HAVE A NATIONWIDE GOAL OF PRESERVING THE

9  INTEGRITY OF OUR ELECTIONS.  AND PART OF THAT IS TO ENSURE THAT

10 ONLY ELIGIBLE VOTERS VOTE.

11         NOW, THERE IS A CONSTITUTIONAL DIMENSION TOO, TO THAT

12 ACTIVITY, ONE IS THEY'RE PETITIONING THE GOVERNMENT FOR REDRESS

13 OF GRIEVANCES WHEN THEY ASSIST PEOPLE AND THOSE PEOPLE FILE

14 A -- UNDER THIS STATUTE, PROPERLY, LEGALLY UNDER THIS STATUTE

15 TO TRIGGER -- POTENTIALLY TRIGGER A PROCESS TO ENSURE THAT THIS

16 PERSON IS AN ELIGIBLE VOTER, RIGHT?

17         THAT'S PETITIONING YOUR GOVERNMENT AT THE HEART.

18 THEIR -- THEIR DISCUSSION OF ALL OF THAT, THEIR RECRUITMENT OF

19 PEOPLE TO DO THAT, THEIR DISCUSSION -- THEIR PUBLIC

20 COMMUNICATIONS ABOUT THAT ARE ALSO PROTECTED BY THE

21 FIRST AMENDMENT AT THE VERY CORE.  OKAY?  THE -- SO -- SO

22 THEY'RE -- SO THE PLAINTIFFS HERE ARE TRYING TO USE THE

23 VOTING RIGHTS ACT TO -- TO TARGET CORE FIRST AMENDMENT

24 ACTIVITY.

25         NOW, THERE'S ANOTHER RIGHT THAT THESE INDIVIDUAL

1  ELECTORS WHO ARE MAKING THE CHALLENGES ARE ALSO VINDICATING,

2  WHICH IS THEIR RIGHT TO VOTE, BECAUSE UNDER RANDALLS V. DASIMS,

3  THE RIGHT TO VOTE CAN BE ABRIDGED IN TWO WAYS, YOU PROHIBIT

4  SOMEBODY FROM VOTING OR YOU DILUTE THE VOTE BY, QUOTE, BALLOT

5  STUFFING, END OF QUOTE.  WHAT IS BALLOT STUFFING?  THEY USE

6  THAT WORD, THE U.S. SUPREME COURT USED THE WORD BALLOT STUFFING

7  TO DESCRIBE VOTE DILUTION.  WHAT WERE THEY TALKING ABOUT?

8  INELIGIBLE PEOPLE VOTING.

9          THE COURT:  IN THE STATE OF GEORGIA --

10          MR. BOPP:  GEORGIA --

11          THE COURT:  GO AHEAD.

12          MR. BOPP:  SO THAT -- AND SO GEORGIA HAS INITIATED A

13  PROCEDURE TO PROTECT THE RIGHT TO VOTE FROM INELIGIBLE PEOPLE

14  BEING -- VOTING, AND THAT IS THE 230 PROCEDURE.

15          THE COURT:  IN THE STATE OF GEORGIA, WE'RE TALKING

16  ABOUT --

17          MR. BOPP:  SO THERE ARE TWO --

18          THE COURT:  WE HAD A PRIMARY IN JUNE, WE HAD A

19  RUNOFF, I THINK, IN AUGUST, AND WE HAD A GENERAL ELECTION IN

20  NOVEMBER.  WHY DID TRUE THE VOTE WAIT UNTIL DECEMBER THE 18TH

21  TO FEEL THAT WE NEED TO STOP THIS FRAUD IN GEORGIA?

22          MR. BOPP:  WELL, THEY -- THEY -- THEY -- THEY

23  ASSISTED IN MAKING THESE CHALLENGES BECAUSE THERE'S A RUNOFF

24  ELECTION COMING UP.

25          AND, YOUR HONOR, YOU SURELY KNOW THAT THERE IS

1  WALL-TO-WALL TV AND RADIO AND MAIL AND EVERYTHING ELSE GOING ON

2  IN GEORGIA RIGHT NOW, AND THERE WILL PROBABLY BE $2 BILLION

3  SPENT, EITHER DIRECTLY OR INDIRECTLY, TO INFLUENCE THAT RUNOFF

4  ELECTION.

5            AND -- AND, YOU KNOW, IT'S OF NATIONAL IMPORTANCE AND

6  THAT IS WHY EVERY CELEBRITY FROM HOLLYWOOD IS IN GEORGIA AND

7  ALL THESE POLITICIANS AND PRESIDENTS AND PRESIDENTS-ELECT AND

8  ALL OF THIS ARE COMING TO GEORGIA.  IT'S AN IMPORTANT ELECTION.

9  AND -- AND IT WILL MAKE A BIG DIFFERENCE TO OUR COUNTRY.

10           SO OF COURSE, THERE'S ALL SORTS OF PEOPLE.  I MEAN,

11  I'M LOOKING AT LAWYERS AROUND WASHINGTON, D.C., YOU KNOW,

12  SEATTLE, WASHINGTON, ALL OVER THE PLACE, YOU KNOW, WHO ARE HERE

13  BRINGING THE CHALLENGE IN ORDER TO STRIKE DOWN A KEY ANTIFRAUD

14  PROTECTION, WHICH IS TO ALLOW VOTERS TO CHALLENGE -- WITH

15  SUFFICIENT EVIDENCE, TO ALLOW VOTERS TO MAKE A CHALLENGE ON --

16  TO DETERMINE WHETHER OR NOT A PARTICULAR PERSON IS ELIGIBLE TO

17  VOTE IN THE ELECTION, IF THEY HAVE SUFFICIENT GROUNDS.

18           AND SO OBVIOUSLY, IT'S IMPORTANT TO EVERYONE, YOU

19  KNOW, AND CERTAINLY TRUE THE VOTE SHOULDN'T BE FAULTED FOR

20  COMING IN AND PURSUING THE PROTECTION OF THE FIRST AMENDMENT,

21  THE PROTECTION OF THE RIGHT TO VOTE, THE INTEGRITY OF OUR

22  ELECTIONS WHICH ARE ALL AT STAKE UNDER THIS 230 PROCEDURE.

23           I MEAN, IF IT'S ILLEGAL TO CHALLENGE THE ELIGIBILITY

24  WITH SUFFICIENT EVIDENCE IN A DUE PROCESS PROCEDURE, IF IT'S

25  ILLEGAL TO DO THAT, WELL, THEN THAT MEANS EVERY INELIGIBLE

1   VOTER ON THE VOTER REGISTRATION ROLL HAS CARTE BLANCHE TO VOTE

2   ILLEGALLY, BECAUSE NO ONE CAN CHALLENGE IT, NO ONE CAN QUESTION

3   IT, AND IF ANYBODY DOES, THEY'RE GOING TO BE PUNISHED, THEY'RE

4   GOING TO BE SUED AND PUNISHED UNDER FEDERAL LAW.

5           THE COURT:  I DON'T THINK -- I THINK YOU'RE QUITE

6   FAMILIAR WITH THE CASES I'VE HANDLED.  TWO YEARS AGO, I HANDLED

7   A CASE WHERE THE SECRETARY OF STATE WAS ALLOWED TO PURGE OVER

8   300,000, YOU KNOW, VOTERS.  SO I DON'T THINK PEOPLE -- I DON'T

9   THINK THE STATE OF GEORGIA, I DON'T THINK SECRETARY

10  RAFFENSPERGER IS ALLOWING PEOPLE TO VOTE ILLEGALLY.  LET'S MOVE

11  ON.

12          MR. BOPP:  SO THE VOTING RIGHTS.

13          THE COURT:  YES.

14          MR. BOPP:  SO THE SECTION 11(B), YOUR HONOR.

15          THE COURT:  RIGHT.

16          MR. BOPP:  YOU KNOW, SO WHAT I'VE JUST ARGUED IS THAT

17  WE HAVE A LAWFUL PROCEDURE, AND UNDER THE DUE PROCESS

18  PROTECTIONS OF JUDGE GARDNER, WE HAVE A LAWFUL PROCEDURE.  WE

19  HAVE A LAWFUL PROCEDURE THAT HAS A LAWFUL END.  THE LAWFUL END

20  IS PROTECTING ELECTION INTEGRITY AND THE RIGHT TO VOTE FROM

21  ILLEGAL VOTERS VOTING THAT ALLOWS VOTERS TO CHALLENGE THE

22  ELIGIBILITY UNDER -- WITH SUFFICIENT FACTS AND WITH A DUE

23  PROCESS PROCEDURE, THEIR ABILITY TO VOTE IN A PARTICULAR

24  ELECTION.

25          AND THIS HAS BEEN ENGAGED IN LAWFULLY, THAT IS

1   ENGAGED IN -- TRIGGERING THIS PROCEDURE HAS BEEN A LAWFUL

2   EXERCISE.  IN OTHER WORDS, THERE IS NOTHING -- AND IF YOU READ

3   THESE CASES ABOUT VOTER INTIMIDATION, ALMOST EVERY CASE -- AND

4   I WOULD ARGUE EVERY CASE INVOLVES SOME SORT OF WRONGFULNESS,

5   INAPPROPRIATENESS.  NOW, SOMETIMES ILLEGALITY OR VIOLENCE, BUT

6   CERTAINLY -- AND THAT'S NOT REQUIRED, OKAY, IT DOESN'T HAVE TO

7   BE ILLEGAL, IT DOESN'T HAVE TO BE VIOLENT.  OKAY?

8             THE COURT:  YES.

9             MR. BOPP:  BUT SOMETHING WRONGFUL OR INAPPROPRIATE,

10  THEY -- THEY TALK ABOUT A THREAT OF INJURY, IN OTHER WORDS,

11  YOU'RE MAKING A THREAT OF INJURY, OR THEY'RE TALKING ABOUT

12  YOU'RE CALLING UP IN ROBO CALLS, WHICH IS ONE OF THE CASES THEY

13  CITE, AND TELLING BLACK VOTERS THAT THE COPS ARE GOING TO GO

14  AFTER YOU IF YOU HAVE ANY OUTSTANDING WARRANTS AND THE CREDIT

15  CARD COMPANY'S GOING TO GO AFTER YOU BECAUSE -- IF YOU VOTE

16  MAIL-IN BALLOT.  OKAY?  I MEAN, AND THAT WAS ALL FALSE.  THOSE

17  STATEMENTS WERE ALL FALSE.  AND THEY MISREPRESENTED THEMSELVES.

18  ALL RIGHT?  BY USING THE NAME OF A -- OF THE VERY UNFORTUNATE

19  VICTIM, A BLACK VICTIM OF VIOLENCE, THE MOTHER'S NAME.  AND SO

20  EVERY ONE OF THESE CASES INVOLVED THAT SORT OF LEVEL OF

21  WRONGFULNESS, INAPPROPRIATENESS, INTENTIONAL DECEPTION, IN

22  OTHER WORDS, SOMETHING'S WRONG ABOUT THIS, OKAY, DOING THIS.

23            THE COURT:  DOES THIS MEAN, THEN, THAT TRUE THE VOTE

24  IS DISAVOWING CRUSADE FOR FREEDOM'S TWITTER INFORMATION AND

25  DISAVOWING ANY THREATS THAT HAVE BEEN MADE TO INDIVIDUALS OR

1  ANYBODY'S HOUSE HAS BEEN CALLED?  TRUE THE VOTE IS SAYING WE

2  DIDN'T DO IT AND WE'RE NOT INVOLVED WITH IT AND WE DISAVOW IT?

3         MR. BOPP:  ABSOLUTELY, 100 PERCENT.  WE HAVE NO IDEA

4  WHO CRUSADE FOR FREEDOM IS.  COUNSEL SAID -- MADE A STATEMENT

5  OF FACT -- WE ARE ASSOCIATED -- TRUE THE VOTE IS ASSOCIATED

6  WITH THAT GROUP, THAT'S PATENTLY FALSE.  AND LOOK, THERE IS NO

7  ALLEGATION, YOU KNOW, THERE'S NO EVIDENCE, THERE'S NO NOTHING

8  OF THAT.  AND OF COURSE THEY DISAVOW THAT.  TRUE THE VOTE

9  DOESN'T THINK WE OUGHT TO BE PUBLISHING THESE CHALLENGES ON THE

10  INTERNET, AND THERE'S NO EVIDENCE THAT WE HAVE -- THAT TRUE THE

11  VOTE HAS EVER CONSIDERED DOING THAT.

12         THE COURT:  TELL ME ABOUT THIS BOUNTY, THIS

13  MILLION-DOLLAR BOUNTY.  THE PLAINTIFFS ARGUE THAT EXHIBIT 4,

14  THERE'S A ONE-MILLION-DOLLAR BOUNTY THAT'S SET BY YOUR

15  DEFENDANTS AS A WHISTLEBLOWER FUND FOR CATCHING PEOPLE VOTING

16  ILLEGALLY.

17         MR. BOPP:  THAT'S A TOTAL MISREPRESENTATION OF

18  EXHIBIT 4.  IF YOU TURN TO THE SECOND PAGE OF THE PRESS

19  RELEASE, YOU WILL FIND AT THE TOP THE PURPOSE OF THE FUND.  IT

20  SAYS, QUOTE, TRUE THE VOTE IS STEPPING UP TO PROVIDE THE

21  RESOURCES NEEDED THAT WILL ENSURE VOTERS, ELECTION WORKERS AND

22  VOLUNTEERS WHO ARE OBSERVING THE EXTENDED BALLOT COUNTING

23  PROCESS AND SEE FIRSTHAND THE ILLEGAL -- ILLEGAL ACTIONS TAKING

24  PLACE, HAVE THE RESOURCES NEEDED TO DOCUMENT AND REPORT THE

25  MALFEASANCE WITH CONFIDENCE THAT THE ISSUES WILL BE PURSUED.

```
 1              THE COURT:  OKAY.  ARE YOU TALKING ABOUT --

 2              MR. BOPP:  THERE IS NOTHING IN HERE ABOUT GIVING THEM

 3   ANY MONEY.  THERE IS NO BOUNTY HERE.  THIS IS NO REWARD.  THIS

 4   IS TO COVER EXPENSES TO DOCUMENT THEY'RE -- WHAT THEY HAVE

 5   OBSERVED.

 6              THE COURT:  ALL RIGHT.  THAT'S A GOOD CLEAR POINT.

 7   TWO QUESTIONS THEN.  ARE YOU SAYING, THEN, THAT THIS CAN BE

 8   MONEY TO PAY TO -- THE PLAINTIFFS' ARGUE THIS IS MONEY TO HAVE

 9   INDIVIDUALS SHOW UP OUTSIDE OF POLLING PLACES AND VIDEOTAPE

10   PEOPLE GOING TO VOTE, WRITE DOWN THEIR TAG NUMBERS, SO

11   YOU'RE -- BY SHAKING YOUR HEAD, I'M SEEING THAT YOU'RE SAYING

12   NO, THAT IS NOT WHAT THIS MONEY IS FOR.

13              MR. BOPP:  ABSOLUTELY NOT.  THIS IS FOR --

14              THE COURT:  BUT ARE PEOPLE DOING THAT?  I UNDERSTAND

15   WHAT YOU'RE SAYING, YOU'RE GOING TO HAVE INDIVIDUALS -- AND I'M

16   GOING TO ASK YOU ABOUT THE POLL MONITORS -- BUT BY YOUR BODY

17   MOVEMENT, YOU'RE SAYING, JUDGE, WE'RE NOT GOING TO HAVE ANYBODY

18   VIDEOTAPING ANYBODY, WRITING DOWN TAG NUMBERS.  WE JUST WANT

19   PEOPLE INSIDE OF THE VOTING PLACES, THE ONES THAT ARE INSIDE,

20   AND THEY'RE TAKING THE DAY OFF --

21              MR. BOPP:  AND AUTHORIZED.

22              THE COURT:  AND AUTHORIZED, I FORGOT THE AUTHORIZED.

23   AND I WAS GOING TO ASK YOU, I THINK YOU MADE A TYPOGRAPHICAL

24   ERROR WHEN YOU QUOTED IT POLL MONITORS BASED ON 21-2-208 AND I

25   THINK IT'S 21-2-408.
```

1              MR. BOPP:  WELL, THANK YOU FOR THE CORRECTION.  I'M
2  SORRY.
3              THE COURT:  THEY MAY HAVE TO BE SELECTED BY A
4  POLITICAL PARTY.  BUT WHAT YOU'RE SAYING, THEN, IS THAT IF ANY
5  OF THESE PEOPLE THAT ARE SELECTED BY A POLITICAL PARTY TO BE
6  INSIDE THESE PLACES OBSERVING, YOU'RE PAYING THEM FOR TAKING
7  THEIR TIME OFF FROM WORK, AS YOU SAID, TO REALLY DOCUMENT THESE
8  THINGS, THAT'S WHAT THAT MILLION DOLLARS IS FOR.
9              MR. BOPP:  RIGHT.  IT'S NOT A BOUNTY, IT'S FOR
10  EXPENSES TO -- TO ASSIST THEM IN DOCUMENTING WHAT THEY BELIEVE
11  TO BE ILLEGAL ACTIVITY AND HAVE IT PRESENTED TO PROPER -- THE
12  PROPER OFFICIALS TO DEAL WITH IT.
13              REGARDING TAPING PEOPLE OR VIDEOTAPING THEM, THERE'S
14  NOTHING -- LOOK AT ALL OF THESE.  WHAT IS THIS?
15              THE COURT:  WELL, I'M JUST ASKING.  IT'S IN THERE SO
16  I HAVE TO ASK YOU ABOUT IT.
17              MR. BOPP:  I KNOW SHE SAID -- I KNOW SHE SAID IT WAS
18  IN THERE, BUT I'M JUST SAYING, WHERE -- WHERE IS IT?
19              THE COURT:  SO WHAT I HEAR YOU SAYING, THEN, IS THAT
20  IF AN INDIVIDUAL MEETS THE REQUIREMENTS UNDER 21-2-408, AND WAS
21  SELECTED BY A POLITICAL PARTY TO BE THERE, YOU-ALL ARE PREPARED
22  TO REIMBURSE THEM FOR THEIR EXPENSES?
23              MR. BOPP:  YES.  YES.  AND THAT -- AND THAT OFFER HAS
24  BEEN MADE TO BOTH THE REPUBLICAN AND DEMOCRAT PARTIES, AND --
25  AND THE -- BECAUSE WATCHERS SHOULD BE BIPARTISAN.  THERE IS

1   BIPARTISAN EVIDENCE OF VOTER FRAUD -- YOU REMEMBER THAT NORTH

2   CAROLINA CONGRESSIONAL SEAT WHERE REPUBLICAN'S OPERATIVES

3   COMMITTED VOTER FRAUD.  THAT WAS INVALIDATED.  THERE WAS A

4   SPECIAL ELECTION.

5            I MEAN, YOU KNOW, THE PENDERGAST MACHINE IN KANSAS

6   CITY WAS A REPUBLICAN MACHINE.  THE TAMMANY HALL IN NEW YORK

7   CITY WAS A DEMOCRAT MACHINE.  I MEAN, THIS IS JUST -- YOU KNOW,

8   THE INTEGRITY OF OUR ELECTIONS, IS A -- YOU KNOW, CAN BE UNDER

9   THREAT BY ANY AND ALL POLITICAL PARTIES OR POLITICAL

10  PERSUASIONS OR WHATEVER, AND SO THAT'S WHY IT'S IMPORTANT ON A

11  BIPARTISAN BASIS AND NON-PARTISAN BASIS, ACTUALLY, TO PRESERVE,

12  YOU KNOW, THE NECESSARY PROVISIONS THAT ENSURE ONLY ELIGIBLE

13  VOTERS GET TO VOTE AND ENSURE THAT THEY DO GET TO VOTE.

14            THE COURT:  I'VE GOT TWO LAST QUESTIONS FOR YOU AND

15  THEN YOU CAN CLOSE OUT WHAT YOU WANT TO TELL ME.

16            MR. BOPP:  OKAY.

17            THE COURT:  WHAT I'M HEARING YOU SAYING, THEN, YOUR

18  ORGANIZATION IS NOT ENCOURAGING PRIVATE INDIVIDUALS TO SHOW UP

19  AT THE POLLS AND RECORD OR REPORT ANY ILLEGAL ACTIVITY UNLESS

20  THEY'RE MEETING THE REQUIREMENTS UNDER 21-2-408?

21            MR. BOPP:  THAT'S CORRECT.

22            THE COURT:  AND YOU DISAVOW ANY -- YOU'VE ANSWERED

23  THIS, BUT I JUST WANT TO HAVE IT REINFORCED -- TRUE THE VOTE IS

24  DISAVOWING ANY ACTIVITY THAT IT HAS AN INTENT TO INTIMIDATE OR

25  HARASS ANY VOTER.  OBVIOUSLY THE PLAINTIFFS DISAGREE WITH YOU

1  ABOUT WHETHER OR NOT FILING ALL OF THESE CHALLENGES, BUT AS FAR

2  AS CALLING PEOPLE UP, TELLING THEM THAT YOUR NAME'S ON A LIST

3  OR PUTTING THEIR NAME ON THE INTERNET, THINGS LIKE THAT,

4  TRUE THE VOTE IS NOT DOING THAT?

5        MR. BOPP:  THAT'S RIGHT.  THEY'RE NOT DOING IT.  AND

6  NOT ONLY DO THEY DISAVOW IT, THEY CONDEMN IT.  THAT'S WRONG.

7  IT'S WRONG TO INTIMIDATE VOTERS, IT'S WRONG TO HARASS VOTERS,

8  IT'S WRONG TO TARGET MINORITIES, IT'S WRONG.

9        AND, YOU KNOW, THESE VOTERS THAT TRUE THE VOTE

10  ASSISTED WERE NOT JUST FILED IN A COUPLE OF COUNTIES.  THESE

11  WERE FILED IN EVERY COUNTY -- AS FAR AS I KNOW, EVERY COUNTY IN

12  THE STATE, THEY -- THEY WERE CHALLENGED.  NOW, THERE MAY BE A

13  FEW SMALL ONES THAT DIDN'T GET DONE BECAUSE THEY, YOU KNOW,

14  WHATEVER PROCEDURE OCCURRED.

15        BUT THIS WAS FILED -- INTENTIONALLY DESIGNED AND

16  FILED ALL THROUGHOUT THE STATE BECAUSE THERE ARE PEOPLE THAT

17  MOVE AND BECOME INELIGIBLE, EVEN THOUGH THEY'RE VALIDLY ON THE

18  VOTER REGISTRATION ROLLS AND THEY'RE NO LONGER ELIGIBLE TO VOTE

19  IN A PARTICULAR ELECTION.

20        NOW, WHETHER THAT'S IN A REPUBLICAN COUNTY OR A

21  DEMOCRAT COUNTY, THAT -- THAT'S IRRELEVANT.  AN INELIGIBLE

22  VOTER VIOLATED THE RIGHT TO VOTE IF THEY VOTE BECAUSE IT

23  DILUTES THE VOTE OF ELIGIBLE VOTERS.  THAT'S A CONSTITUTIONALLY

24  PROTECTED RIGHT.  THIS PROCEDURE PROTECTS THAT RIGHT.  BECAUSE

25  EVEN THOUGH VOTER REGISTRATION ROLLS GOT CLEANED UP A COUPLE OF

1   YEARS AGO, AS YOU WERE DESCRIBING IN GEORGIA, WHICH YOU

2   APPROVED, RIGHT, FROM A CHALLENGE, IN THE NEXT TWO YEARS PEOPLE

3   MOVE.   OKAY?

4        AND NOW, THEY -- IF PEOPLE KNOW THAT SOMEBODY

5   MOVES -- MOVED AND WANT TO TAKE THEM OFF THE VOTER REGISTRATION

6   ROLL, THEY CAN DO THAT UNDER 229, THE GEORGIA PROCEDURE, BUT

7   UNDER FEDERAL LAW, THAT HAS TO BE DONE AT LEAST 90 DAYS PRIOR

8   TO THE ELECTION.   RIGHT?

9        NOW, IF THEY WANT TO JUST SIMPLY PREVENT THEM FROM

10  VOTING IN A PARTICULAR ELECTION, THEY CAN FILE A CHALLENGE

11  UNDER 230, AND THAT'S THE ONLY EFFECT THAT THAT HAS IN DOING

12  THAT.

13        THE COURT:   SO AGAIN, IF WE -- I'M SORRY.

14        MR. BOPP:   SO THIS IS PROTECTING THE INTEGRITY OF OUR

15  ELECTIONS, IT'S PROTECTING THE RIGHT TO THE VOTE, IT'S -- IT'S

16  MAKING -- IT PROVIDES A FAILSAFE PROCEDURE, BECAUSE EVERYBODY

17  KNOWS REGISTRATION -- PEOPLE MOVE AND THESE REGISTRATION ROLLS

18  ARE ONLY CLEANED UP PERIODICALLY, DESPITE -- AND USUALLY OVER

19  INTENSE OPPOSITION OF PEOPLE THAT WANT TO KEEP THEM ON THE

20  ROLLS, EVEN THOUGH THEY'RE INELIGIBLE AND THEY'VE MOVED.

21        BUT YOU KNOW -- AND YOU'VE HANDLED ONE OF THOSE

22  CHALLENGES, AND -- BUT IN THE MEANTIME, THIS HAPPENS.   AND

23  THAT'S WHY WE -- WE HAVE THOSE.   AND IT SEEMS TO ME WE SHOULD

24  LOOK AT THIS AND SAY, WELL, THE MORE INELIGIBLE VOTERS THAT

25  ACTUALLY VOTE IN AN ELECTION, ISN'T THAT WORSE?   I MEAN, THE

1    MORE THE VOTE, THE WORSE IT IS, ISN'T IT?

2             I MEAN, SO, TRUE THE VOTE OUGHT TO BE LOOKED AT AS,

3    WELL, THEY JUST WEREN'T, YOU KNOW, PICKING A FEW PEOPLE AND

4    SAYING YOU CAN'T VOTE.  BUT THEY WERE TRYING -- TRYING, BASED

5    UPON SUFFICIENT EVIDENCE, WHICH IS THE CHANGE OF ADDRESS, TO

6    TRIGGER THE PROCEDURE THAT THEY WERE TRYING TO GET ALL

7    INELIGIBLE VOTERS OFF -- FROM BEING ABLE TO VOTE IN THE

8    ELECTION.

9             AND THAT MEANS WHETHER THEY'RE IN DEMOCRAT COUNTIES,

10   REPUBLICAN COUNTIES, THEY'RE WHITE, THEY'RE BLACK, THEY'RE

11   HISPANIC, THEY'RE WHATEVER, ALL THROUGHOUT THE STATE.  THIS

12   SHOULD BE PRAISED TO THE HILT, NOT HAVE PEOPLE SUE YOU IN

13   FEDERAL COURT AND TRY TO PUNISH YOU UNDER A LAW DESIGNED TO

14   PROTECT AGAINST THE KU KLUX KLAN, BECAUSE THAT'S WHERE THE

15   ORIGIN OF THE VOTING RIGHTS ACT IS, OF COURSE.

16            NOW, IT HAS BEEN AMENDED, I AGREE.  BUT THAT'S WHERE

17   THE -- THAT'S THE ORIGIN, IS THE SYSTEMATIC TARGETING OF BLACKS

18   BY ORGANIZATIONS THAT WERE SEEKING, USING -- THROUGH WRONGFUL

19   MEANS, OF SOME SORT OR ANOTHER TO INTIMIDATE PEOPLE FROM

20   PARTICIPATING IN THE RIGHT TO VOTE.

21            NOW --

22            THE COURT:  ONE LAST QUESTION.

23            MR. BOPP:  YES.

24            THE COURT:  AND I THINK I KNOW THE ANSWER, BUT I WANT

25   TO ASK IT:  DO YOU AGREE WITH MS. BRANCH'S ASSESSMENT ON

1  WHETHER OR NOT INTENT HAS TO BE SHOWN?

2        MR. BOPP:  WE BELIEVE INTENT HAS TO BE SHOWN.  WE

3  AGREE WITH THE NINTH CIRCUIT DECISION, AND BY THE WAY --

4        THE COURT:  I'M SHOCKED THAT YOU AGREE WITH THE

5  NINTH CIRCUIT DECISION.

6        MR. BOPP:  LOOK, I'VE HANDLED ABOUT 15 CASES IN THE

7  NINTH CIRCUIT, AND I'VE WON MOST OF THEM, SO I THINK WELL OF

8  THE NINTH CIRCUIT.  I KNOW THERE ARE SOME REPUBLICANS THAT

9  DON'T.

10        BUT ANYWAY, THIS CAN BE FOUND AT 797 F.2D 1511, AND

11  IT'S A 1986 DECISION, AND THAT'S ITS CITE, AND IT SAYS:

12  HOWEVER, AS DISCUSSED BELOW, WE FIND THAT THE APPELLANTS HAVE

13  FAILED TO ESTABLISH A VOTING RIGHTS ACT VIOLATION, WHICH IS --

14  THEY'RE REFERRING TO 11(B) HERE.  TO ESTABLISH A VOTING ACT

15  VIOLATION, UNLIKE A CONSTITUTIONAL VIOLATION OF THE CITIZEN'S

16  RIGHT TO VOTE, THE PLAINTIFF MUST SHOW AN INTENT TO DENY OR

17  ABRIDGE THE RIGHT TO VOTE, END OF QUOTE.

18        NOW, LOOK, I KNOW THAT THERE IS ONE OR TWO DISTRICT

19  COURT DECISIONS THAT DISAGREE WITH THIS.  I MEAN, IN MY

20  PRACTICE, I PAY MORE ATTENTION TO THE CIRCUIT COURTS THAN -- AS

21  MUCH AS I RESPECT DISTRICT COURT JUDGES --

22        THE COURT:  THANK YOU.

23        MR. BOPP:  -- I DO PAY A LOT MORE ATTENTION TO

24  CIRCUIT COURTS, BECAUSE IF THIS CASE GETS ON THE APPEAL, WE --

25  WE BOTH KNOW THAT THE ELEVENTH CIRCUIT IS GOING TO PAY A HECK

1  OF A LOT MORE ATTENTION TO THE NINTH CIRCUIT DECISIONS THAN

2  THEY ARE SOME DISTRICT COURT IN NEW YORK, AND THAT'S JUST THE

3  WAY THINGS WORK.

4         NOW, THE ADDITIONAL THING THAT I WOULD SAY IS THE

5  ONLY -- YOU KNOW, THEY BASE THEIR CLAIM OF NOT ONLY STANDING,

6  BUT HARM, OKAY, OR INTIMIDATION, SIMPLY BASED ON THE FILING OF

7  THESE CHALLENGES, SAY -- THEY SAY THAT PUTS YOU ON THE PUBLIC

8  RECORD.  AND IT HAS NOTHING EVEN TO DO WITH WHETHER OR NOT IT'S

9  ONLINE OR ANYTHING LIKE THAT.  THEIR CLAIM IS IF YOU FILE THEM,

10 YOUR NAME IS ON THE LIST, IT'S A -- THAT LIST IS PUBLIC RECORD.

11 NOW, I THINK IT IS PUBLIC RECORD.  ALL RIGHT?

12         AND THEN THEY SAY FROM THAT, THAT THEY -- THEY FEAR

13 HARASSMENT AND INTIMIDATION.  YOU KNOW, HARASSMENT AND

14 INTIMIDATION HAS TO BE OBJECTIVE, NOT SUBJECTIVE.  AND THE

15 COURT IN *DOE V. REED* CONSIDERED THAT VERY QUESTION, BECAUSE

16 WHAT WAS INVOLVED IN *DOE V. REED*, AND I REPRESENTED DOE THAT

17 LOST, IS A PETITION TO PUT AN INITIATIVE ON THE BALLOT IN THE

18 FACE OF THREATS BY PEOPLE WHO OPPOSE THE PETITION.  THAT IF

19 PEOPLE SIGN THIS PETITION, THAT THE -- THAT THEY WILL PURSUE

20 THEM, OKAY, AND HARASS THEM.  SO THAT WAS THE THREAT THAT WAS

21 MADE AGAINST PEOPLE TO TRY TO GET THEM NOT TO SIGN THIS

22 PETITION.

23         ON THE BASIS OF THAT THREAT, WE BROUGHT SUIT TO HAVE

24 THE PETITION, ONCE FILED, BE CONFIDENTIAL SO THAT THEIR NAMES

25 WERE NOT DISCLOSED AND COULD BE THEN PUNISHED BY THESE PEOPLE

1   WHO HAD ALREADY THREATENED TO HARASS THEM, ALL RIGHT?

2           THIS WENT ALL THE WAY TO THE SUPREME COURT, AND I

3   ARGUED IT IN THE SUPREME COURT AND I LOST, BECAUSE WHAT THE

4   SUPREME COURT SAID IS, YOU KNOW, THIS OR THAT -- OR THE

5   SUBJECTIVE FEAR OR THIS OR THAT PERSON'S STATEMENT, YOU KNOW,

6   THAT THEY MIGHT DO SOMETHING LIKE THAT, LIKE HARASS SOMEBODY,

7   IS JUST NOT ENOUGH, OKAY, FOR A PETITIONER'S SIGNATURE OR, IN

8   AFFECT, FOR ANYTHING THAT YOU HAVE TO SHOW A, QUOTE, REASONABLE

9   PROBABILITY THAT THE PEOPLE WILL BE SUBJECT TO HARASSMENT AND

10  INTIMIDATION.

11          SO IT'S NOT AN ANECDOTAL, YOU KNOW, THIS PERSON SAID

12  THIS, LIKE WHOEVER THIS PERSON IS IN EXHIBIT 2, IS I'LL PUT

13  YOUR NAME ON THE INTERNET.  THAT'S NOT EVEN A THREAT OF

14  HARASSMENT, OTHER THAN IF YOU FEAR PUTTING YOUR NAME ON THE

15  INTERNET HARASSMENT ITSELF.  AND MAYBE IT IS, I DON'T KNOW.

16  BUT YOU HAVE TO HAVE A REASONABLE PROBABILITY THAT THE PEOPLE,

17  WHOSE NAMES ARE GOING TO BE DISCLOSED -- AND THERE WERE

18  HUNDREDS OF THOUSANDS OF NAMES ON THESE PETITIONS IN THE STATE

19  OF WASHINGTON -- WILL BE SUBJECT TO HARASSMENT AND

20  INTIMIDATION.

21          HERE WE ARE, HOW LONG SINCE THE 100 -- THE 350 NAMES

22  HAVE BEEN FILED WITH VARIOUS COUNTIES?  HOW LONG ARE WE AWAY

23  FROM THAT?  A WEEK, TEN DAYS.

24          THE COURT:  12 DAYS -- 13 DAYS, ACTUALLY.

25          MR. BOPP:  THEY DON'T HAVE THE EVIDENCE OF A SINGLE

1   PERSON BEING HARASSED OR INTIMIDATED.  THEY DON'T MAKE AN

2   ALLEGATION IN THEIR COMPLAINT OF A SINGLE PERSON BEING HARASSED

3   OR INTIMIDATED -- OR HARASSED, SOMEBODY TRYING TO INTIMIDATE

4   THEM OR HARASSED, NOT BY SUBJECTIVE FEARS, OKAY, THEY DON'T --

5   THEY HAVE NO EVIDENCE OF THAT, THEY DON'T EVEN ALLEGE IT IN THE

6   COMPLAINT -- IN THE PI MOTION -- IN THE COMPLAINT THAT THEY

7   FILED ON THE 23RD AND THE PI MOTION THAT THEY FILED THE DAY

8   BEFORE YESTERDAY, THEY JUST SAID THAT THE DOES FEAR IT, NOT

9   THAT THEY'VE BEEN SUBJECTED TO IT.

10          SO TALK ABOUT NO EVIDENCE OR NO ALLEGATIONS THAT

11  WOULD MEET THE STANDARD OF *DOE V. REED,* WHERE IS THE REASONABLE

12  PROBABILITY THAT THESE PEOPLE WHOSE NAMES HAVE NOW BEEN, QUOTE

13  ON, THE PUBLIC RECORD, END QUOTE, 12 DAYS WILL BE SUBJECT TO

14  WHAT THEY CLAIM TO FEAR?

15          I MEAN, THIS HAS GONE SO BEYOND ANY OF THE CASES I'VE

16  READ IN TERMS OF WHERE, YOU KNOW, YOU HAVE -- YOU DO HAVE

17  CASES, A POLICE OFFICER SHOWING UP AT MEETINGS OF BLACKS WHO

18  ARE ORGANIZING REGISTRATION EFFORTS AND YOU HAVE THEM SHOWING

19  UP AND SURVEILLING AND WRITING DOWN THE LICENSE PLATES OF ALL

20  THE CARS, VIDEOTAPING THEM, AND THEN SOME OF THEM BEING SUBJECT

21  TO UNLAWFUL ARREST AND PROSECUTION, UNLAWFUL ARREST AND

22  PROSECUTION, THAT'S INTIMIDATION, THAT'S ILLEGAL, THAT IS

23  PROHIBITED BY THE VOTING RIGHTS ACT.  AND DOGGONE IT, IT SHOULD

24  BE.  ALL RIGHT?

25          BUT BECAUSE SOMEBODY IS CONCERNED ABOUT THEIR OWN

1   RIGHT TO VOTE BEING DILUTED BY ILLEGAL VOTERS, PROPERLY EMPLOYS

2   WITHIN THE VERY CONFINES OF THAT STATUTE A PROCEDURE THAT

3   PROTECTS THAT RIGHT TO VOTE FROM ILLEGAL VOTERS, TO CALL THAT

4   VOTE SUPPRESSION, IS TO TURN THE KU KLUX KLAN ACT INTO A WEAPON

5   AGAINST THE FIRST AMENDMENT AND THE RIGHT TO VOTE OF EVERYONE.

6   AND I HOPE THIS COURT DOES NOT COUNTENANCE THAT EFFORT.

7            THE COURT:  THANK YOU, MR. BOPP.

8            IF THERE'S ANYTHING ELSE THAT COMES FROM THE

9   PLAINTIFFS, OBVIOUSLY, AGAIN, YOU WILL HAVE A RIGHT TO RESPOND.

10           THANK YOU, MS. BRANCH, ANY FINAL WORD ON THIS?

11           WOULD 15, 20 MINUTES BE ENOUGH TIME?

12           MS. BRANCH:  YES, YOUR HONOR.  THANK YOU.  I WANT TO

13  ADDRESS A COUPLE OF POINTS THAT MR. BOPP MADE AND ALSO RESPOND

14  TO QUESTIONS EARLIER FROM THE COURT.

15           THE FIRST IS THAT THE NINTH CIRCUIT CASE THAT

16  YOUR HONOR HAS REFERENCED HAS ACTUALLY BEEN VACATED BY THE

17  UNITED STATES SUPREME COURT IN A CASE CALLED *STATE V.*

18  *MUNSINGWEAR*, AND THE CITE FOR THAT IS 340 U.S. 36.  SO THAT

19  CASE ACTUALLY IS NOT PRECEDENTIAL AND SHOULD NOT BEAR ON

20  YOUR HONOR'S DECISION IN THIS CASE.

21           THE COURT:  WHAT DOES THAT CASE SAY?  WHAT ARE THEY

22  SAYING IN VACATING IT?

23           MS. BRANCH:  IT MAKES CLEAR THAT -- THE VACATER OF IT

24  MAKES CLEAR THAT INTENT WAS NOT REQUIRED TO PROVE AN 11(B)

25  VIOLATION.  AND I'M ACTUALLY PULLING UP THE CASE NOW, BUT IT

1   WAS VACATED BY THE SUPREME COURT, AND IT DOESN'T HAVE ANY

2   OPINION PRECEDENTIAL --

3            THE COURT:  OKAY.  THANK YOU.

4            MS. BRANCH:  THANK YOU.

5            THE OTHER POINT I WANTED TO MAKE IS IN RESPONSE TO

6   MR. BOPP'S ARGUMENT THAT THEY'RE BEING FORCED TO LITIGATE A

7   MOVING TARGET, AND THAT OUR RELIEF HAS CHANGED, IT HAS NOT.

8   OUR COMPLAINT ACTUALLY STATES IN THE PRAYER FOR RELIEF ON

9   PAGE 29, REQUEST C, WE ASK FOR THE COURT TO ORDER DEFENDANTS TO

10  WITHDRAW THEIR PENDING CHALLENGES TO VOTERS IN EACH OF

11  GEORGIA'S 159 COUNTIES.

12           AND PRAYER FOR REQUEST -- FOR RELIEF TO REQUEST D, WE

13  ORDER -- WE ASK THE COURT TO ORDER TRUE THE VOTE TO CEASE ANY

14  AND ALL OPERATIONS IN THE STATE OF GEORGIA, YOUR HONOR, SO THE

15  DEFENDANTS ARE ON NOTICE THAT WE HAVE REQUESTED THAT RELIEF.

16  THE FACT THAT IT'S NOT INCLUDED IN OUR PROPOSED ORDER SHOULD

17  NOT CONSTRAIN THE COURT.  AS I'M SURE THE COURT KNOWS, IT HAS

18  THE POWER TO FASHION INJUNCTIVE RELIEF AS IT SEES FIT, BUT THE

19  DEFENDANTS CANNOT SAY THAT THEY WERE NOT ON NOTICE THAT WE'D

20  REQUESTED THAT SPECIFIC RELIEF, AND WE DO THINK WE ARE ENTITLED

21  TO IT.

22           THE OTHER POINT I WANTED TO MAKE ON STANDING IS

23  THAT --

24           THE COURT:  LET ME ASK YOU ONE QUESTION ON THE

25  VACATED CASE.  YOU DON'T DISAGREE, THOUGH, THAT I CAN STILL

1    GIVE THE VACATED CASE -- USE ITS PERSUASIVE AUTHORITY ON IT?

2              MS. BRANCH:  YES, YOUR HONOR, BUT I DO THINK THAT THE

3    NINTH CIRCUIT CASE IS DISTINGUISHABLE FROM THE CIRCUMSTANCES

4    HERE.  THE FIRST IS THAT THERE IS NO STATUTORY INTERPRETATION

5    ANALYSIS IN THAT CASE, IT MERELY ASSUMES THAT INTENT IS

6    REQUIRED, AND THEN IT WAS VACATED LATER BY THE SUPREME COURT.

7    SO THERE ISN'T ACTUALLY ANY ANALYSIS IN THAT CASE.  THE CASE

8    THAT THAT CASE DOES CITE TO AND RELIES ON FOR THIS INTENT

9    REQUIREMENT ACTUALLY REFERENCES THE CIVIL RIGHTS ACT OF 1957,

10   WHICH INCLUDES THE SPECIFIC PURPOSE LANGUAGE IN THE STATUTE, SO

11   THAT IS CLEAR.  THAT CASE IS CLEARLY DISTINGUISHABLE, BECAUSE

12   IT RELIES ON THE CIVIL RIGHTS ACT.  HERE WE'RE TALKING ABOUT

13   SECTION 11(B) OF THE VOTING RIGHTS ACT, WHICH DOES NOT CONTAIN

14   THAT PURPOSE LANGUAGE.

15             SO I DO THINK THAT THAT CASE IS NOT ON ALL FOURS WITH

16   THIS ONE, AND THAT IT IS DISTINGUISHABLE, BUT I DON'T THINK

17   THAT IT SHOULD BE RELIED ON FOR PERSUASIVE EVIDENCE, AND THE

18   FACT THAT THE SUPREME COURT -- OR PERSUASIVE AUTHORITY, I'M

19   SORRY, AND THE FACT THAT THE SUPREME COURT VACATED IT.

20             THE COURT:  WELL, THE SUPREME COURT INSTRUCTED THE

21   NINTH CIRCUIT TO REMAND THE CASE TO THE DISTRICT COURT, SO IT'S

22   MOOT, RIGHT?

23             MS. BRANCH:  YES, YOUR HONOR.

24             THE COURT:  OKAY.  ALL RIGHT.  GO AHEAD.

25             MS. BRANCH:  WITH RESPECT TO STANDING, I KNOW THAT

```
 1   THERE HAS BEEN DISCUSSION HERE TODAY ABOUT YOUR HONOR REVIEWING
 2   THE DECLARATIONS THAT WE WILL SUBMIT ON BEHALF OF THE DOES, AND
 3   THAT THAT MAY TAKE TIME TO REVIEW.  I WANT TO MAKE CLEAR THAT,
 4   YOU KNOW, FAIR FIGHT HAS STANDING IN THIS CASE, IT'S BLACK
 5   LETTER LAW THAT ONLY ONE PLAINTIFF IS REQUIRED TO HAVE
 6   STANDING, AND DEFENDANTS DON'T EVEN REALLY CHALLENGE FAIR
 7   FIGHT'S STANDING, SO IT IS -- WE WILL CERTAINLY DO AS
 8   YOUR HONOR REQUESTED AND SUBMIT THOSE DECLARATIONS, BUT I DON'T
 9   THINK THEY'RE NECESSARY FOR YOUR HONOR TO FIND THAT STANDING IS
10   HERE.
11        THE COURT:  NO, IF YOU DON'T THINK THEY'RE NEEDED,
12   DON'T SUBMIT THEM.
13        MS. BRANCH:  SO I DO THINK THAT THEY ARE RELEVANT TO
14   OUR MOTION TO PROCEED ANONYMOUSLY, AND THAT WOULD BE THE
15   PURPOSE OF SUBMITTING THEM.  BUT -- AND THEY'RE ALSO RELEVANT
16   TO THE DOE STANDING, BUT I DID WANT TO MAKE THE POINT THAT ONLY
17   ONE PLAINTIFF IS REQUIRED TO HAVE STANDING.
18        THE COURT:  LET ME SAY THIS:  ANYTHING THAT IS
19   IN-CAMERA, ALL THOSE THINGS, THE IDEA THAT THIS IS COMING FROM
20   THE COURT, YOU HAVE TO PRESENT YOUR CASE AS YOU SEE FIT.  IF
21   YOU DON'T THINK ANY OF THOSE THINGS ARE NEEDED, DON'T SUBMIT
22   THEM, BECAUSE I CAN START DRAFTING MY ORDER IMMEDIATELY AFTER
23   THIS IF YOU DON'T THINK THEY'RE NEEDED AND THEY'RE NOT GOING TO
24   BE SUBMITTED, THEN I CAN GO AHEAD AND START WORKING ON MY
25   ORDER.
```

1          MS. BRANCH:  I DO THINK THEY'RE NEEDED WITH RESPECT

2     TO THE MOTION TO PROCEED ANONYMOUSLY.  I THINK THEY ARE HELPFUL

3     TO YOUR HONOR'S ANALYSIS ON THAT POINT, BUT WITH RESPECT TO

4     STANDING, I DO THINK THAT WE HAVE PROVEN STANDING ON BEHALF OF

5     FAIR FIGHT AND THE DEFENDANTS DON'T OBJECT TO THAT.

6          THE OTHER POINT I WANT TO MAKE IS THAT OPPOSING

7     COUNSEL TAKES ISSUE WITH A LOT OF EVIDENCE AND THE FACTS THAT

8     HAVE BEEN PRESENTED TODAY, BUT A LOT OF THE FACTS HERE ARE

9     ABSOLUTELY UNDISPUTED.  OPPOSING COUNSEL DOES NOT DISPUTE THAT

10    THEY ASSISTED VOTERS WITH MAKING THESE MASS CHALLENGES, THEY

11    DON'T DISPUTE THAT THERE IS A CLIMATE OF INTIMIDATION, IN FACT,

12    THEY SAY THEY'VE CREATED THIS FUND TO HELP WITH THEIR

13    SUPPORTERS WHO MIGHT BE INTIMIDATED.  THEY DON'T DISPUTE THAT

14    CHALLENGE --

15         THE COURT:  I DON'T THINK HE SAID THAT.  I DON'T

16    THINK HE SAID THAT.  AS FAR AS THE FUND, HE DIDN'T SAY THAT IT

17    WAS ASSIST THEIR PEOPLE WHO MAY BE INTIMIDATED.  HE SAID TO

18    REIMBURSE EITHER DEMOCRAT OR REPUBLICAN MONITORS THAT ARE

19    MEETING REQUIREMENTS OF THE 21-2-408.

20         MS. BRANCH:  WELL, AND I DO WANT TO -- I WANT TO

21    ADDRESS THE FUNDS, BECAUSE I DO THINK THAT OPPOSING COUNSEL'S

22    REPRESENTATION OF THAT TODAY HAS BEEN INACCURATE.  IN THE PRESS

23    AND ON THE TRUE THE VOTE WEBSITE, THEY -- YOU KNOW, THEY

24    CLEARLY SAY THAT THEY HAVE LAUNCHED A VALIDATE THE VOTE

25    INITIATIVE AND WHISTLEBLOWER COMPENSATION FUND TO ENSURE

1  ELECTION INTEGRITY AND THE FUND HAS ESTABLISHED IN EXCESS OF

2  ONE MILLION DOLLARS TO INCENTIVIZE ELECTION MALFEASANCE

3  REPORTING.  SO THAT'S FROM THE TRUE THE VOTE'S OWN WEBSITE,

4  THAT THIS FUND WAS ESTABLISHED TO INCENTIVIZE ELECTION

5  MALFEASANCE REPORTING.

6          NOT ONLY THAT, THE EXECUTIVE DIRECTOR OF

7  TRUE THE VOTE STATED ON NOVEMBER THE 6TH, IN ANNOUNCING THAT

8  VALIDATE THE VOTE FUND, QUOTE, EARLIER TODAY WE LAUNCHED AN

9  INITIATIVE CALLED VALIDATE THE VOTE.  AND WHAT VALIDATE THE

10 VOTE IS ABOUT IS PUTTING A BOUNTY ON THE FRAUD.

11         SO THE IDEA THAT THIS IS SOME INNOCENT COMPENSATION

12 FUND IS JUST NOT -- IT'S NOT HOW IT'S BEEN REPRESENTED BY

13 TRUE THE VOTE, THE ORGANIZATION ITSELF, OR THE EXECUTIVE

14 DIRECTOR OF THAT ORGANIZATION.

15         AND IT MATTERS HOW THIS FUND IS PERCEIVED BY VOTERS

16 IN GEORGIA, BY PEOPLE WHO ARE THE SO-CALLED ELECTION WATCHDOGS.

17 THESE PRESS STATEMENTS THAT THEY -- THAT THEY RELEASED TALK

18 ABOUT PUTTING A BOUNTY ON THE FRAUD.  THEY TALK ABOUT PROVIDING

19 INCENTIVES FOR REPORTING ELECTION MALFEASANCE, WHATEVER THAT

20 MEANS.  AND SO IT MATTERS THAT VOTERS ARE RECEIVING THESE

21 MESSAGES, SUPPORTERS OF TRUE THE VOTE ARE RECEIVING THESE

22 MESSAGES, AND THAT'S HOW THEY CHARACTERIZE THIS FUND.  SO I

23 DON'T THINK THAT THE CHARACTERIZATION THAT WAS PRESENTED TODAY

24 IS ACCURATE.

25         I ALSO WANT TO ADDRESS THE FACT THAT, YOU KNOW,

1  TRUE THE VOTE IS MAKING IT SOUNDS LIKE ALL OF THEIR ACTIVITIES

2  ARE INNOCENT, AND THAT THERE IS RAMPANT VOTER FRAUD AND THAT

3  ALL THEY'RE DOING IS HELPING TO DETECT IT.  AND THAT'S JUST NOT

4  THE CASE.  THEY HAVE BEEN INVOLVED IN MULTIPLE ATTEMPTS TO

5  EXPOSE, QUOTE/UNQUOTE, VOTER FRAUD AT THE EXPENSE OF THE RIGHTS

6  OF GEORGIA VOTERS.

7        FOR EXAMPLE, THEY PUBLISHED THE VIDEO OF A JACKSON

8  COUNTY MEETING WHERE THE JACKSON COUNTY BOARD OF ELECTIONS WAS

9  CONSIDERING THE CHALLENGES, THEY PUBLISHED THAT.  AND SO THAT

10  WAS MADE PUBLIC, THE VOTERS' NAMES AND ADDRESSES AND INDIVIDUAL

11  IDENTIFYING INFORMATION THAT WAS DISCUSSED DURING THAT MEETING

12  WAS MADE PUBLIC BY TRUE THE VOTE.

13        SO IT IS NOT THAT THEY'RE THESE INNOCENT BYSTANDERS

14  IN THIS EFFORT.  THEY ARE ATTRIBUTING TO THE CULTURE OF VOTER

15  FRAUD AND THEY ARE FANNING THE FLAMES AND MAKING THESE PUBLIC

16  STATEMENTS AND EXPOSING THIS INFORMATION PUBLICLY, AND SO WE

17  WANT TO MAKE THAT CLEAR.

18        ANOTHER EFFORT THAT THEY'VE BEEN INVOLVED IN WITH

19  RESPECT TO RECENT ELECTIONS IS THAT THEY ENGAGED IN EFFORTS TO

20  RECRUIT FORMER MILITARY SNIPERS TO BE POLL OBSERVERS.  THERE

21  WAS PRESS ON THAT, THE FACT THAT THESE INDIVIDUALS WOULD BE

22  LOCATED AT POLLING LOCATIONS AND COULD INTIMIDATE VOTERS.

23        THE COURT:  YOU UNDERSTAND THAT TO BE A POLL MONITOR

24  OR A POLL WATCHER, THERE ARE CERTAIN REQUIREMENTS THAT HAVE TO

25  BE MET UNDER THE STATUTE, RIGHT?

1           MS. BRANCH:  YES, YOUR HONOR.

2           THE COURT:  SO ARE YOU ARGUING THAT THESE PEOPLE ARE

3    BEING SELECTED, ARE BEING SUBMITTED BECAUSE THESE MILITARY

4    SNIPERS ARE GOING TO BE INSIDE OBSERVING?

5           MS. BRANCH:  I MEAN, THEY HAVE MET GEORGIA'S LAW

6    REQUIREMENTS, BUT THESE -- THEY WERE SPECIFICALLY RECRUITED BY

7    TRUE THE VOTE BECAUSE THEY ARE INTIMIDATING, BECAUSE THEY HAVE

8    THIS MILITARY TRAINING, THEY'VE BEEN ENGAGED IN AS FORMER

9    MILITARY SNIPERS.

10          THE COURT:  THEY'RE OBVIOUSLY NOT GOING TO WALK IN

11   THERE WITH RIFLES.

12          MS. BRANCH:  RIGHT, BUT THEY'RE -- I MEAN, LOOK, I

13   DON'T KNOW SPECIFICALLY WHAT THEIR TACTICS ARE BEHIND THIS, BUT

14   IT IS PUBLICIZED, IT IS OUT IN THE PUBLIC TO MAKE IT CLEAR THAT

15   THEY HAVE RECRUITED FORMER MILITARY SNIPERS TO STAND AT POLLING

16   LOCATIONS.  IF I'M A VOTER AND I SEE THAT, THEN I COULD BE

17   INTIMIDATED BY THAT.  I DO THINK THAT'S INTIMIDATING.  AND I

18   THINK THAT THIS CULTURE THAT THEY'RE CONTRIBUTING TO BY

19   UNDERTAKING THESE EFFORTS DELIBERATELY AND THESE CHALLENGES OF

20   360,000 VOTERS ARE THE MOST RECENT, AND THEY'RE EXTREMELY

21   EGREGIOUS, BUT I JUST WANT TO BE CLEAR THAT TRUE THE VOTE IS

22   NOT THIS INNOCENT BYSTANDER.

23          THIS IS AN ORGANIZATION THAT IF YOU LOOK AT THEIR

24   WEBSITE AND THE EXHIBITS THAT WE SUBMITTED TO OUR COMPLAINT,

25   THAT WAS CREATED TO FAN THE FLAMES OF THIS CULTURE OF VOTER

1    FRAUD.

2            AND, I MEAN, COURTS HAVE REPEATEDLY SAID THAT

3    ELECTION FRAUD DOESN'T EXIST.  THIS IDEA THAT JUST BECAUSE A

4    VOTER HAS CHANGED THEIR ADDRESS IN THE MIDDLE OF A PANDEMIC, I

5    MEAN, THERE'S A LOT OF PEOPLE WHO ARE TRANSIENT AT THIS TIME,

6    IT JUST -- IT IS JUNK SCIENCE, AND IT'S NOT -- IT HAS NO BASIS

7    IN FACT.  VOTERS SHOULD NOT BE CHALLENGED ON THOSE GROUNDS.

8            THE COURT:  MR. BOPP HAS MANY ARGUMENTS, BUT AS I

9    TAKE IT, HIS MANY ARGUMENTS ARE:  WE ARE FOLLOWING THE LAW THAT

10   THE STATE OF GEORGIA SAYS.  WE CAN FOLLOW IT.  AND THAT WE HAVE

11   A RECENT ORDER FROM JUDGE GARDNER SAYING THAT IS NOT ILLEGAL IF

12   WE FOLLOW THIS LAW.

13           MS. BRANCH:  RIGHT.  AND I UNDERSTAND THAT ARGUMENT.

14   I THINK IT IS INCORRECT.  JUDGE GARDNER'S ORDER SAYS THAT YOU

15   CAN'T CHALLENGE VOTERS ON THIS ONE DATA POINT.

16           AND MR. BOPP HAS LAUNCHED THESE CHALLENGES BASED ON

17   THAT DATA POINT.

18           THE COURT:  NO, THEY CAN'T BE REMOVED.  THEY CAN'T BE

19   REMOVED.

20           MS. BRANCH:  THEY CAN'T BE REMOVED ON THAT BASIS.

21           THE COURT:  THEY CAN'T BE REMOVED ON THAT NCOA, BUT

22   THEY CAN BE CHALLENGED.  IN OTHER WORDS, BEN HILL, WHO HAD 150

23   VOTERS, THE TRO SAYS BEN HILL REMOVED, NO PRELIMINARY

24   INJUNCTION.

25           SO WHAT MR. BOPP HAS SAID IS, JUDGE, UNDER MY

1   FIRST AMENDMENT RIGHTS, WELL, NOT HIS FIRST AMENDMENT RIGHTS,

2   BUT UNDER THE FIRST AMENDMENT THEY ARE FOLLOWING THE LAW THAT

3   THE STATE OF GEORGIA SAID IT CAN DO.  IN FACT, I THINK THE

4   SECRETARY OF STATE OF THIS STATE THINKS THAT THEY CAN DO IT

5   THAT WAY.

6            MS. BRANCH:  SO I -- I MEAN, I DON'T THINK THAT

7   TRUE THE VOTE HAS A CONSTITUTIONAL DUTY OR ALLOWANCE TO

8   CHALLENGE THE VOTERS.  IT'S A RIGHT CREATED UNDER GEORGIA LAW.

9   AND TO THE EXTENT THAT IT CONFLICTS WITH BETTER LAW, BECAUSE IT

10  IS INTIMIDATING VOTERS, THEN IT IS PREEMPTED, AND I THINK

11  THAT'S EXACTLY THE CASE HERE.

12           THE COURT:  THANK YOU, MS. BRANCH.

13           AND THANK YOU, MR. BOPP.

14           WHAT I WILL DO -- JUST ONE QUICK QUESTION,

15  MS. BRANCH, ARE YOU GOING TO SEND THE COURT ANYTHING?  IF YOU

16  ARE --

17           AND, MS. LAWRENCE, I'M GOING TO BE HERE.  IT WOULD

18  PROBABLY BE BETTER, MS. LAWRENCE, IF YOU CAN JUST BRING ME A

19  COURTESY COPY, IF YOU-ALL DECIDE TO SUBMIT ANYTHING.

20           NOW, LET ME SAY THIS, BASED ON WHAT YOU SEND ME,

21  OBVIOUSLY I'M GOING TO REDACT EVERYTHING, SEND IT BACK TO

22  YOU-ALL.  BUT YOU ALSO TALKED ABOUT SENDING SOME ADDITIONAL

23  INFORMATION, THAT MIGHT -- AND I'M NOT SAYING IT WILL -- THAT

24  MIGHT PREVENT ME FROM BEING ABLE TO ENTER AN ORDER TODAY,

25  PARTICULARLY IF MR. BOPP SAYS, JUDGE, I NEED TIME TO RESPOND TO

1    THIS.

2          BUT IF POSSIBLE, IF YOU CAN GET ME THIS

3    INFORMATION -- AND, MS. LAWRENCE, TELL ME IF I'M ASKING YOU TOO

4    MUCH -- BEFORE 4:00 -- OR YOU NEED MORE TIME?

5          MS. LAWRENCE-HARDY:  JUDGE, THE COURIER IS ON HIS WAY

6    TO YOU.  I'M GOING TO LOOK AT MS. BRANCH TO LET ME KNOW HOW SHE

7    WANTS TO RESPOND TO THE OPENING THE COURT HAS JUST OFFERED, BUT

8    WE CAN ABSOLUTELY GET IT TO YOU BY 4:00, IF THAT'S THE

9    DIRECTION IN WHICH WE GO.

10          THE COURT:  DO YOU NEED MORE TIME?  YOU KNOW, I ALSO

11   WILL GIVE YOU THE TIME.  BUT ALL I'M JUST SAYING TO YOU,

12   MS. BRANCH AND MS. LAWRENCE, IS THAT WHAT I GET IS GOING TO

13   SORT OF DETERMINE HOW QUICK I CAN PUT OUT AN ORDER, BECAUSE

14   AGAIN, THERE'S -- WHATEVER I GET, THROUGH SOME MEANS, I HAVE TO

15   LET MR. BOPP KNOW ABOUT IT.  AND WHAT HE DOES AFTER THAT WILL

16   DETERMINE, YOU KNOW, HOW I PROCEED WITH MY ORDER.

17          MS. LAWRENCE-HARDY:  YOUR HONOR, MAY I JUST CONFIRM

18   THAT YOU ARE AT THE RICHARD RUSSELL BUILDING, THAT YOU'RE

19   DOWNTOWN?

20          THE COURT:  YEAH, THE RICHARD RUSSELL BUILDING.  I'M

21   IN THE RICHARD RUSSELL BUILDING.  THERE ARE A NUMBER OF THINGS

22   I HAVE TO DO TODAY, SO I'M IN THE RICHARD RUSSELL BUILDING.

23          AND AGAIN, MS. LAWRENCE, IF YOU CAN'T GET IT BY 4:00

24   JUST SEND ME -- OR SEND MS. WRIGHT AN EMAIL TO SAY TELL THE

25   JUDGE -- I'M GOING TO BE HERE.  YOU KNOW, I'VE ALREADY TOLD MY

1    WIFE, MY NEW YEAR'S MAY COME IN SITTING AT THE RICHARD RUSSELL

2    BUILDING.  SHE LOVED THAT, BUT, YOU KNOW, SO I'LL BE HERE.

3              AND, MR. BOPP, THERE'S NOT GOING TO BE ANY DECISIONS

4    MADE ON ANYTHING UNTIL YOU SEE IT OR KNOW ABOUT IT.

5              I WANT TO THANK ALL THE LAWYERS INVOLVED IN THIS

6    CASE.  I APOLOGIZE, I UNDERSTAND I'VE PUSHED MS. BRANCH AND

7    MR. BOPP, AND I'VE PUSHED YOU-ALL HARD.  AND MS. LAWRENCE AND

8    MS. BRYAN'S DEALT WITH ME ENOUGH TO KNOW THAT THAT'S JUST MY

9    STYLE.  IT'S NOTHING PERSONAL.  IT'S JUST THAT I NEED TO KNOW

10   CERTAIN THINGS, AND YOU-ALL RESPONDED VERY WELL TO QUESTIONS.

11             WHEN I SIT DOWN TO WRITE THIS ORDER, I MAY THINK

12   MAYBE I SHOULD HAVE ASKED THEM THAT QUESTION.

13             BUT YOU-ALL BOTH HAVE RESPONDED VERY WELL, AND YOU

14   WERE VERY, VERY PREPARED.  AND I ALWAYS LIKE LAWYERS THAT ARE

15   PREPARED, AND YOU-ALL WERE.

16             SO THANK YOU FOR BEING HERE AND THANK YOU FOR YOUR

17   ARGUMENT, AND I'LL BE IN TOUCH.

18             HAVE A HAPPY NEW YEAR TO EVERYBODY, AND LET'S HOPE IN

19   2021, THAT WE GO BACK TO NORMAL.

20             MR. BOPP:  YES.

21             THE COURT:  AND WE GET RID OF THIS VIRUS.  THANK YOU,

22   EVERYBODY.

23             MS. LAWRENCE-HARDY:  THANK YOU, YOUR HONOR.

24             MS. BRANCH:  THANK YOU.

25             MR. BOPP:  THANK YOU.

1

2          (WHEREUPON, THE PROCEEDINGS WERE ADJOURNED AT 1:12

3  P.M.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        REPORTERS CERTIFICATE

2

3

4              I, JANA B. COLTER, OFFICIAL COURT REPORTER FOR THE

5    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

6    GEORGIA, WITH OFFICES AT ATLANTA, DO HEREBY CERTIFY:

7              THAT I REPORTED ON THE STENOGRAPH MACHINE THE

8    PROCEEDINGS HELD IN OPEN COURT ON DECEMBER 31, 2020, IN THE

9    MATTER OF *FAIR FIGHT, INC ET AL V. TRUE THE VOTE ET AL*, CASE

10   NUMBER 2:20-CV-00302-SCJ; THAT SAID PROCEEDINGS IN CONNECTION

11   WITH THE HEARING WERE REDUCED TO TYPEWRITTEN FORM BY ME; AND

12   THAT THE FOREGOING TRANSCRIPT (107 PAGES) IS A TRUE AND

13   ACCURATE RECORD OF THE PROCEEDINGS.

14             THIS THE 19TH DAY OF JANUARY, 2021.

15

16

17

18                        _____

                          /S/ JANA B. COLTER, FAPR, RMR, CRR, CRC
19                             OFFICIAL COURT REPORTER

20

21

22

23

24

25