United States District Court
Northern District of Georgia
Gainesville Division

| | |
|---|---|
| **Fair Fight, Inc., John Doe,** and **Jane Doe**, *Plaintiffs and Counter-Defendants*, v. **True the Vote, Inc., Catherine Engelbrecht, Derek Somerville, Mark Davis, Mark Williams, Ron Johnson, James Cooper,** and **John Does 1-10**, *Defendants*, **Fair Fight Action, Inc.**, *Defendant to Counterclaim*. | Civ. No. 2:20-cv-00302-SCJ  Hon: Steve C. Jones |

# Defendants' Initial Disclosures

(1) If the defendant is improperly identified, state defendant's correct identification and state whether defendant will accept service of an amended summons and complaint reflecting the information furnished in this disclosure response.

N/A

(2) Provide the names of any parties whom defendant contends are necessary parties to this action, but who have not been named by plaintiff. If defendant contends that there a question of misjoinder of parties, provide the reasons for defendant's contention.

Defendant Catherine Engelbrecht is an individual and is therefore not

1

personally liable for the corporate actions of True the Vote, Inc., and is therefore improperly named as a Defendant.

Defendant Derek Somerville is not connected in any way with Defendant True the Vote, Inc. or its activities or any other parties or actions alleged by Plaintiffs, and is improperly named as a Defendant.

Defendant Mark Davis is not connected in any way with Defendant True the Vote, Inc. or its activities or any other parties or actions alleged by Plaintiffs, and is improperly named as a Defendant.

Defendant James Cooper is not connected in any way with Defendant True the Vote, Inc. or its activities or any other parties or actions alleged by Plaintiffs, and is improperly named as a Defendant.

**(3) Provide a detailed factual basis for the defense or defenses and any counterclaims or crossclaims asserted by defendant in the responsive pleading.**

Defendants did not engage in, nor direct any person to engage in, voter intimidation as under Section 11(b) of the Voting Rights Act. Defendants' activities are constitutionally protected under the First Amendment's right of free speech, to petition the government and to vote.

**<u>Voter Challenges</u>**

Defendant Ron Johnson brought valid and lawful individual elector challenges, challenging an individual elector's right to vote in the January 5, 2021, election, in Jackson County. Likewise, Defendant Mark Williams brought valid and lawful individual elector challenges, challenging an individual elector's right to vote in the January 5, 2021, election, in Gwinnett County. Defendant True the Vote, Inc. provided assistance to Defendants Ron Johnson and Mark Williams in preparing their Section 230 challenges.

These challenges stemmed from detailed research identifying registered voters who no longer reside in the county of record and voters who no longer reside in the state of Georgia, according to filings with the United States Postal Service National Change of Address (NCOA) and other supporting commercial

**Defs.' Initial Disclosures**

2

databases. The relied-upon research was performed uniformly across all counties, without regard to any demographic or voting history. These challenges were made according to the requirements detailed in O.C.G.A. § 21-2-230. *See* Question 4.

None of the Defendants have used these challenges as a way to harass, threaten, or intimidate any voters. Defendants brought Section 230 challenges based upon NCOA records that showed that the challenged elector had requested that the U.S. Postal Service deliver their mail at a new address. This information provides sufficient evidence for a county election board to find probable cause under the Section 230 procedure. In fact, Georgia Secretary of State Brad Raffensperger himself relied upon NCOA data when he sent letters to individuals warning them of the consequences of voting in the runoff election while not a resident of Georgia.[1] Recently, a federal judge denied an injunction against Ben Hill County Board of Elections, who had voted NCOA data provided sufficient evidence for probable cause, allowing the board to proceed with the Section 230 process in Ben Hill County. *Majority Forward, et al. v. Ben Hill County Board of Elections*, Case No: 1:20-cv-00266, Order, ECF No. 27.

None of these Section 230 challenges sought to remove voters from the registration rolls, and all of these challenges required the county board to find probable cause before proceeding with the due process procedures for verifying any voters' eligibility to vote in that election.

## **Plaintiffs and Counter-Defendants Intimidation of Defendants/Counter-Plaintiffs**

In this current political environment of doxing, harassment, and death threats brought about, in part, by Counter-Defendant Fair Fight, Inc.'s and Defendant Fair Fight Action, Inc.'s scurrilous and baseless allegations in their Complaint, press releases and other public communications that Counter-Plaintiffs have and are engaged in vote suppression and voter intimidation, it is objectively

---

[1] Obama-Appointed Judge Strikes Blow to Rule of Law In Geogia Elections, Georgia Secretary of State Website (December 29, 2020), https://sos.ga.gov/index.php/elections/obama_appointed_judge_strikes_blow_to_rule_of_law_in_georgia_elections.

**Defs.' Initial
Disclosures**

reasonable that Counter-Plaintiffs are and will be intimidated from protecting their right to vote under Section 230, or by other means, and from advocating for the protection of their right to vote by preventing voter fraud.

In their Complaint, Counter-Defendant Fair Fight, Inc. allege that Counter-Plaintiffs have: "attempt[ed] voter suppression and intimidation," Complaint, ECF 1, ¶1; "spearheaded a coordinated attack on Georgia's electoral system, threatening voters with entirely frivolous claims . . . ," *Id.*, ¶ 2; committed "repeated attempts at voter suppression" by their Section 230 challenges, *Id.* at ¶ 7; "created an atmosphere of intimidation," *Id.*, ¶ 9; and "will expose lawful Georgia voters to the threat of harassment from Defendants' supporters." ¶ 62.

One of Counter-Defendant's attorneys, Marc Elias, hailed an early decision (later reversed in part) in the *Majority Forward* case, which involved a challenge to the Section 230 procedure employed in certain counties, as a "blow to GOP voter suppression." Kyle Cheney, *Judge blocks voter purge in 2 Georgia counties*, POLITICO (Dec. 28, 2020, 11:08PM, updated Dec. 29, 2020, 10:00AM), https://www.politico.com/news/2020/12/28/georgia-voter-rolls-senate-451820.

Spokesman for Counter-Defendant Fair Fight, Inc. and Defendant Fair Fight Action Inc., Stacy Abrams, in a CNN interview with Jake Tapper, stated that the Section 230 challenges were a "pretext," were "untrue and unfounded," and that TTV had a "long history of voter intimidation and voter suppression." https://www.cnn.com/videos/politics/2021/01/03/sotu-abrams-full.cnn.

Furthermore, Ms. Abrams appeared on CNN on December 28, 2020. During her interview, at 8:33 am, Ms. Abrams stated, "Republicans do not know how to win without voter suppression as one of their tools. That's why we see True the Vote down here in Georgia challenging 364,000 voters nine days, eight days before the election. Because voter suppression is their modus operandi." Source of CNN video link: https://truethevote.org/stacey-abrams-says-voter-verification-is-voter-suppression-attacks-true-the-vote/.

Counter-Plaintiffs have been subject to doxing, harassment, and threats as a result of Counter-Defendant Fair Fight, Inc.'s and Defendant Fair Fight Action, Inc.'s scurrilous and baseless allegations in public communications that Counter-Plaintiffs have and are engaged in vote suppression and voter intimidation.

For instance, Tommy Roberts, a Section 230 challenger in Ben Hill County, Georgia, received threatening and harassing emails where he was told to "go

f[&^%] yourself!!!," and that "You f[&#$]ing lowlife racist worthless piece of s[&*%]. You f[&#$]ing purge ONE legitimate vote, a[$$]hole, and we will f[&#$]ing string you up my your little 6 year old's short hairs. Comprende, d[^%)]head? You're a f[&#$]ing pathetic uneducated inbred d[^*]do. Worthless white garbage. YOU and your racist lowlife f[&#$]ing buddies are an embarrassment to the country and the human race. GO f[^&*] yourself, a[$$]hole. We are watching you[.]" ECF No. 40-1.

Upon information and belief, Defendant Fair Fight Action, Inc. has assisted and acted in concert with Counter-Defendant Fair Fight, Inc. to threaten, harass, and otherwise intimidate Counter-Plaintiffs by their scurrilous and baseless allegations in public communications that Counter-Plaintiffs have and are engaged in vote suppression and voter intimidation.

**(4)   Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which defendant contends are applicable to this action.**

**<u>Georgia Election Law</u>**

A person may not vote in an Georgia election unless they are "[a] resident of this state and of the county or municipality in which he or she seeks to vote[.]" O.C.G.A. § 21-2-216(a). *See also* O.C.G.A. § 21-2-217 (detailing the rules for determining residency).

Accordingly, Georgia law sets out a process for challenging an elector's right to vote in an election, providing that:

> Any elector of the county or municipality may challenge the right of any other elector of the county or municipality, whose name appears on the list of electors, to vote in an election. Such challenge shall be in writing and specify distinctly the grounds of such challenge. Such challenge may be made at any time prior to the elector whose right to vote is being challenged voting at the elector's polling place or, if such elector cast an

**Defs.' Initial Disclosures**

> absentee ballot, prior to 5:00 P.M. on the day before the election; provided, however, that challenges to persons voting by absentee ballot in person at the office of the registrars or the absentee ballot clerk shall be made prior to such person's voting.

O.C.G.A. § 21-2-230(a).

These challenges do not result in an automatic disqualification of the challenged elector, but triggers a statutory procedure where the county election board must take further steps to verify the challenged elector's current eligibility to vote in the run-off election. Once such a challenge has been made, the law requires that "the board of registrars shall immediately consider such challenge and determine whether probable cause exists to sustain such challenge." O.C.G.A. § 21-2-230(b). A challenge may be denied if probable cause does not exist. O.C.G.A. § 21-2-230(b). On the other hand, "[i]f the registrars find probable cause, the registrars shall notify the poll officers of the challenged elector's precinct or, if the challenged elector voted by absentee ballot, notify the poll officers at the absentee ballot precinct and, if practical, notify the challenged elector and afford such elector an opportunity to answer." O.C.G.A. § 21-2-230(b).

Georgia law then makes clear the steps that should be taken with regards to a challenged elector. They are as follows:

(a) If the challenged elector appears at the polling place to vote, such elector shall be given the opportunity to appear before the registrars and answer the grounds of the challenge.

(b) If the challenged elector does not cast an absentee ballot and does not appear at the polling place to vote and if the challenge is based on grounds other than the qualifications of the elector to remain on the list of electors, no further action by the registrars shall be required.

(c) If the challenged elector cast an absentee ballot and it is not practical to conduct a hearing prior to the close of the polls and the challenge is based upon grounds other than the qualifications of the elector to remain on the list of electors, the absentee ballot shall be treated as a challenged ballot pursuant to subsection (e)

**Defs.' Initial**
**Disclosures**

of Code Section 21-2-386. No further action by the registrars shall be required.

(d) If the challenged elector does not cast an absentee ballot and does not appear at the polling place to vote and the challenge is based on the grounds that the elector is not qualified to remain on the list of electors, the board of registrars shall proceed to hear the challenge pursuant to Code Section 21-2-229.

(e) If the challenged elector cast an absentee ballot and the challenge is based upon grounds that the challenged elector is not qualified to remain on the list of electors, the board of registrars shall proceed to conduct a hearing on the challenge on an expedited basis prior to the certification of the consolidated returns of the election by the election superintendent. The election superintendent shall not certify such consolidated returns until such hearing is complete and the registrars have rendered their decision on the challenge. If the registrars deny the challenge, the superintendent shall proceed to certify the consolidated returns. If the registrars uphold the challenge, the name of the challenged elector shall be removed from the list of electors and the ballot of the challenged elector shall be rejected and not counted and, if necessary, the returns shall be adjusted to remove any votes cast by such elector. The elector making the challenge and the challenged elector may appeal the decision of the registrars in the same manner as provided in subsection (e) of Code Section 21-2-229.

(f) If the challenged elector appears at the polls to vote and it is practical to conduct a hearing on the challenge prior to the close of the polls, the registrars shall conduct such hearing and determine the merits of the challenge. If the registrars deny the challenge, the elector shall be permitted to vote in the election notwithstanding the fact that the polls may have closed prior to the time the registrars render their decision and the elector can actually vote, provided that the elector proceeds to vote

**Defs.' Initial Disclosures**

       immediately after the decision of the registrars. If the registrars uphold the challenge, the challenged elector shall not be permitted to vote and, if the challenge is based upon the grounds that the elector is not qualified to remain on the list of electors, the challenged elector's name shall be removed from the list of electors.

(g)   If the challenged elector appears at the polls to vote and it is not practical to conduct a hearing prior to the close of the polls or if the registrars begin a hearing and subsequently find that a decision on the challenge cannot be rendered within a reasonable time, the challenged elector shall be permitted to vote by casting a challenged ballot on the same type of ballot that is used by the county or municipality for provisional ballots. Such challenged ballot shall be sealed in double envelopes as provided in subsection (a) of Code Section 21-2-419 and, after having the word "Challenged," the elector's name, and the alleged cause of the challenge written across the back of the outer envelope, the ballot shall be deposited by the person casting such ballot in a secure, sealed ballot box notwithstanding the fact that the polls may have closed prior to the time the registrars make such a determination, provided that the elector proceeds to vote immediately after such determination of the registrars. In such cases, if the challenge is based upon the grounds that the challenged elector is not qualified to remain on the list of electors, the registrars shall proceed to finish the hearing prior to the certification of the consolidated returns of the election by the election superintendent. If the challenge is based on other grounds, no further action shall be required by the registrars. The election superintendent shall not certify such consolidated returns until such hearing is complete and the registrars have rendered their decision on the challenge. If the registrars deny the challenge, the superintendent shall proceed to certify the consolidated returns. If the registrars uphold the challenge, the

**Defs.' Initial Disclosures**

>name of the challenged elector shall be removed from the list of electors and the ballot of the challenged elector shall be rejected and not counted and, if necessary, the returns shall be adjusted to remove any votes cast by such elector. The elector making the challenge and the challenged elector may appeal the decision of the registrars in the same manner as provided in subsection (e) of Code Section 21-2-229.

O.C.G.A. § 21-2-230(c)-(I).

Georgia law permits two distinctly different challenges to the ability of an ineligible elector to vote. First, the presence of the elector on the list of electors (called under federal law "voter registration lists") can be challenged under O.C.G.A. § 21-2-229. No challenges were not brought under this section since the challenges did not question the challenged electors presence on the list of electors. Second, the eligibility of a registered elector to vote in a particular election can be challenged under O.C.G.A. § 21-2-230. The current challenges were brought under this section and only question the challenged elector's eligibility to vote in the run-off election and did not seek to have the elector removed from the registration list, which, as noted, is a separate and different challenge under Georgia law.

O.C.G.A. § 21-2-230 does not trigger any National Voter Registration Act (NRVA) provisions because it does not involve "remov[ing] the names of ineligible voters from the official lists of eligible voters," but, instead, questions their right to vote in a particular election. 52 U.S.C.A. § 20507.

**National Voter Registration Act, 52 U.S.C. sec. 20507(d)(1) ("NVRA")**

The NVRA regulates removal of a person from a state's registration rolls and would prohibit doing so within 90 days of an election. However, the NVRA has no application to the Section 230 procedure, since the NVRA only regulates a state's registration rolls, not a challenge to a person's eligibility to vote in a particular election under the Section 230 procedure.

**Defs.' Initial Disclosures**

**National Change of Address ("NCOA")**

The NCOA Registry is legally sufficient basis for challenging a voter's right to vote in an election. *See Husted v. A. Philip Randolf Inst.*, 138 S. Ct. 1833 (2018). Recently, a federal judge denied an injunction against Ben Hill County Board of Elections, who had voted NCOA data provided sufficient evidence for probable cause, allowing the board to proceed with the Section 230 process in Ben Hill County. *Majority Forward, et al. v. Ben Hill County Board of Elections*, Case No: 1:20-cv-00266, Order, ECF No. 27. So throughout government, NCOA data may provide probable cause to begin the lawful process of verifying a voter's eligibility to vote in an election.

**Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b)**

Section 11(b) of the Voting Rights Act prohibits any person, "whether acting under color of law or otherwise," from acts which "intimidate, threaten, or coerce . . . any person for voting or attempting to vote," or any attempted acts to do so. 52 U.S.C. § 10307(b). The Voting Rights Act gives "a broad interpretation to the right to vote, recognizing that voting includes 'all action necessary to make a vote effective.'" *Allen v. State Board of Elections*, 89 S.Ct. 817, 831-832 (1969) (citing 52 U.S.C. § 10310(c)(1)).

Counter-Plaintiffs' Section 230 challenges are quintessential petitions to the government for redress of grievances and are protected under the First Amendment to the U.S. Constitution. Counter-Plaintiffs' speech related to their Section 230 challenges and in favor of election integrity efforts is an exercise of their right of free speech and is protected under the First Amendment to the U.S. Constitution. Section 11(b) of the Voting Rights Act permits Plaintiffs to bring a private cause of action against Defendants. Private actions brought under Section 11(b) require judicial enforcement. Judicial enforcement amounts to state action and is subject to constitutional limitations. *Shelley v. Kraemer*, 334 U.S. 1, 19 (1948). The same is true for judicial enforcement of a private cause of action permitted under federal law such as Section 11(b).

The Constitution "protects vigorous advocacy, *certainly of lawful ends*,

**Defs.' Initial Disclosures**

against government intrusion." *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 429 (1963) (emphasis added). Plaintiffs seek judicial enforcement of Section 11(b) against Defendants that would prohibit and punish them for filing Section 230 challenges. This would violate Counter-Plaintiffs' rights to free speech and to petition the government protected under the First Amendments of the U.S. Constitution. If Section 11(b) were interpreted, as Counter-Defendants contend, to apply to prohibit and punish the filing of Section 230 challenges, Section 11(b) would be unconstitutional as applied.

170. In filing their Complaint, Counter-Defendant Fair Fight, Inc. did not lawfully employ a lawful procedure since the Complaint is baseless litigation and, therefore, wrongful conduct.

Counter-Defendant Fair Fight, Inc. and Defendant Fair Fight Action, Inc.'s scurrilous and baseless allegations in public communications that Counter-Plaintiffs have and are engaged in vote suppression and voter intimidation were false and, therefore, wrongful conduct. Counter-Defendant Fair Fight, Inc. and Defendant Fair Fight Action, Inc.'s intended to intimidate Counter-Plaintiffs from protecting their right to vote through their scurrilous and baseless allegations in public communications that Counter-Plaintiffs have and are engaged in vote suppression and voter intimidation and Counter-Defendant Fair Fight, Inc. intended to intimidate Counter-Plaintiffs from protecting their right to vote by filing their Complaint.

If Section 11(b) were interpreted, as Counter-Defendants contend, to not require any discriminatory or racial animus, Counter-Defendant Fair Fight, Inc. and Defendant Fair Fight Action, Inc. have intimidated or have attempted to intimidate Counter-Plaintiffs from protecting their right to vote in violation of Section 11(b) of the Voting Rights Act.

Furthermore, it is objectively reasonable that Counter-Plaintiffs are and will be intimidated from protecting their right to vote under Section 230, or by other means, and from advocating for the protection of their right to vote by preventing voter fraud, as a result of the Counter-Defendant Fair Fight, Inc.'s filing of the instant Complaint. While filing a lawsuit is typically protected under the First Amendment as petitioning the government, *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 429 (1963), the First Amendment does

**Defs.' Initial Disclosures**

not protect "baseless litigation," *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743 (1983), as here.

## Vote Dilution

Counter-Plaintiffs' right to vote is constitutionally protected as a fundamental right. *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). Included within that constitutional protection of right to vote is the principle that valid and eligible votes should not be diluted by unlawful votes. "The right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Bush v. Gore*, 531 U.S. 98, 105 (2000) (quoting *Reynolds*, 377 U.S. at 555).

Counter-Plaintiffs' Section 230 challenges seek to prevent such vote dilution by lawfully employing a lawful procedure that ensures that the challenged electors are eligible voters in Georgia. Counter-Defendants seek judicial enforcement of Section 11(b) that, as sought to be applied, would violate Counter-Plaintiffs' right to vote protected under the U.S. Constitution, because it would deprive the Counter-Plaintiffs of a lawful state procedure that they lawfully employed to protect their right to vote. If Section 11(b) were interpreted, as Counter-Defendants contend, to apply to prohibit and punish the filing of Section 230 challenges, Section 11(b) would be unconstitutional as applied.

In addition, Counter-Plaintiffs brought the Section 230 challenges to protect their right to vote from vote dilution. Since the right to vote can be denied by vote dilution, as well as by a prohibition on the right to vote, any intimidation or threat based upon a voter's attempt to protect his or her vote from dilution would violate Section 11(b).

## Constitutional Vagueness

Counter-Plaintiffs brought Section 230 challenges without racial animus, did not target challenged electors based on their race and were made without regard to a county's racial demographics. Counter-Plaintiff True the Vote, Inc.

**Defs.' Initial Disclosures**

assisted with Section 230 challenges in almost every county in Georgia. Counter-Defendants allege that section 11(b) does not require that the prohibited conduct to be racially motivated. Complaint, ECF 1, ¶ 74.

However, since Section 11(b) is based on the 15th Amendment to the United States Constitution, racial animus must be proven to find a Section 11(b) violation. Furthermore, Counter-Plaintiffs brought lawful Section 230 challenges without an intent to intimidate any elector from voting. Counter-Defendants allege no intent to intimidate need be shown under Section 11(b) to violate it. Complaint, ECF 1, ¶

However, in order for there to be a violation of Section 11(b), an intent to intimidate must be proven. In addition, Counter-Plaintiffs' Section 230 challenges lawfully employed a lawful procedure and this conduct was not wrongful. Counter-Defendants allege that Counter-Plaintiffs' Section 230 challenges are "objectively likely to intimidate voters in violation of § 11(b) of the Voting Rights Act." Complaint, ECF 1, ¶ 78.

However, in order to violate Section 11(b), there must be some element of "wrongfulness" in the person's conduct in order for it to intimidate or threaten a voter. *See Nat'l Coal. on Black Civic Participation v. Wohl*, No. 20 CIV. 8668 (VM), 2020 WL 6305325 (S.D.N.Y. Oct. 28, 2020) (holding blatantly dishonest robocalls which lied about the potential use of personal information gleaned from voting by mail was intimidation); *Daschle v. Thune*, No. 4:04 Civ. 04177, Order at 2 (concluding that conduct such as photographing license plates and speaking loudly about other Native American defendants who had been arrested for voter fraud constituted intimidation).

Counter-Plaintiffs' Section 230 challenges lawfully employed a lawful procedure, were not inherently wrongful and, thus, could not constitute intimidation under Section 11(b).

A statute or regulation is considered unconstitutionally vague under the due process clause of the Fifth Amendment if it "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Georgia Pac. Corp. v. Occupational Safety & Health Review Comm'n*, 25 F.3d 999, 1005 (11th Cir. 1994). If Section 11(b) were interpreted, as Counter-Defendants contend, to apply to the lawful employment of a lawful procedure without any discriminatory animus, intent to

**Defs.' Initial Disclosures**

intimidate, and wrongful conduct, Section 11(b) would be unconstitutionally vague. No "man or woman of common intelligence" in Georgia would know which, or how many, voter challenges allowed under Georgia law would be considered a violation of § 11(b).

**(5)     Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the subjects of the information.(Attach witness list to Initial Disclosures as Attachment A.)**

See Attachment A


**(6)     Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. For all experts described in Fed.R.Civ.P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule. (Attach expert witness list and written reports to Initial Disclosures as Attachment B.)**

See Attachment B

**(7)     Provide a copy of, or description by category and location of, all documents, data compilations or other electronically stored information, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information. (Attach document list and descriptions to Initial Disclosures as Attachment C.)**

See Attachment C


**Defs.' Initial Disclosures**

**(8)** In the space provided below, provide a computation of any category of damages claimed by you. In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying under Fed.R.Civ.P. 34. (Attach any copies and descriptions to Initial Disclosures as Attachment D.)

N/A

**(9) If defendant contends that some other person or legal entity is, in whole or in part, liable to the plaintiff or defendant in this matter, state the full name, address, and telephone number of such person or entity and describe in detail the basis of such liability.**

N/A

**(10) Attach for inspection and copying as under Fed.R.Civ.P. 34 any insurance**
**agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments to satisfy the judgment. (Attach copy of insurance agreement to Initial Disclosures as Attachment E.)**

N/A

**Defs.' Initial Disclosures**

15

Dated: February 8, 2021

/s/ Ray Smith, III
Ray Smith, III, GA #662555
SMITH & LISS, LLC
Five Concourse Parkway
Suite 2600
Atlanta, GA 30328
Telephone: (404) 760-6000
Facsimile: (404) 760-0225
*Local Counsel for Defendants*

Respectfully Submitted,

James Bopp, Jr.,* IN # 2838-84
  jboppjr@aol.com
Jeffrey P. Gallant,* VA # 46876
  jgallant@bopplaw.com
Courtney Turner Milbank,* IN#
    32178-29
  cmilbank@bopplaw.com
Melena Siebert,* IN # 35061-15
  msiebert@bopplaw.com
Rob Citak,* KY # 98023
  rcitak@bopplaw.com
THE BOPP LAW FIRM, PC
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434
Facsimile: (812) 235-3685
*Lead Counsel for Defendants*
**Admitted Pro hac vice*

**Defs.' Initial Disclosures**

## Certificate of Service

I hereby certify that the foregoing document was served electronically on January 21, 2021, upon all counsel of record via the United States District Court for the Northern District of Georgia, electronic filing system.

| | |
|---|---|
| **SMITH & LISS LLC** | */s/ Ray S. Smith, III* |
| Five Concourse Parkway | Ray S. Smith, III |
| Suite 2600 | Georgia Bar No. 662555 |
| Atlanta, Georgia 30328 | *Local Counsel for Defendants* |
| (404) 760-6000 | |
| rsmith@smithliss.com | |

Defs.' Initial
Disclosures