**United States District Court**
**Northern District of Georgia**
**Gainesville Division**

| | |
|---|---|
| **Fair Fight, Inc., John Doe,** and **Jane Doe**, <br><br> *Plaintiffs* and *Counter-Defendants*, <br><br> *v.* <br><br> **True the Vote, Inc., Catherine Engelbrecht, Derek Somerville, Mark Davis, Mark Williams, Ron Johnson, James Cooper,** and **John Does 1-10**, <br><br> *Defendants* and *Counter-Plaintiffs*, <br><br> **Fair Fight Action, Inc.**, <br> *Counter-Defendants.* | Civ. No. 2:20-cv-00302-SCJ <br><br> Hon: Steve C. Jones |

**Defendants' Response in Opposition to Plaintiffs Fair Fight, Inc., John Doe, Jane Doe, and Counter-Defendant Fair Fight Action, Inc.'s  Motion to Dismiss Defendants' Counterclaims**

**Defs.' Resp. to**
**Pls.' Mot. to Dismiss**          1

## Table of Contents

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I. The Plain Language and Subsequent Interpretations of the Voting Rights Act
    Supports Counter-Plaintiffs' Section 11(b) Counterclaim Against Counter-
    Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II. Counter-Plaintiffs Have Plausibly Alleged Counter-Defendants Have Engaged
    in Conduct that Could Be Considered Intimidating Under
    Section 11(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# Table of Authorities

## Cases

*United States v. McLeod*, 385 F.2d 734 (5th Cir. 1967) . . . . . . . . . . . . . . . . . . . 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Black Voters v. McDonough*, 565 F.2d 1 (1st Cir. 1977) . . . . . . . . . . . . . . . . . . 10

*Clark v. Marengo Cty.*, 469 F. Supp. 1150 (S.D. Ala. 1979) . . . . . . . . . . . . . . . 10

*Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213 (11th Cir. 2016) . . . . . . . . . . . . . 9

*Reynolds v. Sims*,   377 U.S. 533 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Rogers v. Lodge*, 458 U.S. 613 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States by Clark v. Democratic Exec. Comm. of Barbour Cty., Ala.*, 288 F. Supp. 943 (M.D. Ala. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Dallas Cty. Comm'n*, 548 F. Supp. 794 (S.D. Ala. 1982) . . . . . 10

**Statutes**

52 U.S.C. § 10101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

52 U.S.C. § 10307(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

O.C.G.A. § 21-2-230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11, 15

**Defs.' Resp. to**
**Pls.' Mot. to Dismiss**          4

## Introduction

Counter-Plaintiffs brought valid and lawful individual elector challenges to various county boards of elections, which challenged some voters' eligibility to vote in the U.S. Senate Runoff Election in Georgia. These challenges stemmed from detailed research identifying registered voters who no longer reside in the county of record and voters who no longer reside in the state of Georgia, according to filings with the United States Postal Service National Change of Address ("NCOA") and other supporting commercial databases. The relied-upon research was performed uniformly across all counties, without regard to any demographic information or voting history.

The NCOA data provided a starting point, but certainly not the end point, of the data relied upon for the challenges. Commercial databases and proprietary methods were used to "scrub" the data in an attempt to further verify identity and eliminate those unlikely to be ineligible to vote in Georgia. For instance, zip codes surrounding military bases were removed because the Georgia voters living in those places were very likely to still be eligible to vote. Other considerations, such as proximity to a college or university were also taken into account. This research

**Defs.' Resp. to**
**Pls.' Mot. to Dismiss**              5

was done before any Georgia voter presented it to a county board of elections for a challenge. These challenges were not "frivolous," and were made according to the requirements detailed in O.C.G.A. § 21-2-230.

Some boards of elections found these challenges presented probable cause for the board to begin the statutory procedures mandated to determine whether the challenged elector was eligible to vote. Some boards of elections found that the challenges did not present probable cause and therefore no further action was required by the board or by any challenged voter.

Plaintiffs sued Defendants under Section 11(b) of the Voting Rights Act. 52 U.S.C. § 10307(b). The suit alleges that Defendants' "frivolous" Section 230 challenges "created an atmosphere of intimidation." Complaint, ¶¶ 2, 9. Plaintiffs sought emergency preliminary relief, which this Court denied, finding the Plaintiffs had not provided sufficient evidence to show they were likely to succeed on the merits of their claims. Order, ECF No. 29 at 26.

Defendants True the Vote, Inc., Mark Williams, and Ron Johnson ("Counter-Plaintiffs") brought five counterclaims. *See Defendants' Answer to Plaintiffs' Complaint for Declaratory and Injunctive Relief, Affirmative Defenses,*

**Defs.' Resp. to**
**Pls.' Mot. to Dismiss**          6

*and Counterclaims Against Plaintiffs and Defendant Fair Fight Action, Inc.*, ECF No. 40. Counter-Defendants have moved to dismiss all five counterclaims. Counter-Plaintiffs agree that Counterclaims 1-4 are more properly considered as affirmative defenses. Therefore, Counter-Plaintiffs request that this Court dismiss Counterclaims 1-4 and consider them as affirmative defenses in future briefings and proceedings. Counter-Plaintiffs do not agree that counterclaim 5 should be dismissed.

Counterclaim 5, the remaining counterclaim, alleges Fair Fight, Inc.'s baseless suit is itself conduct that violates Section 11(b) of the VRA because it intimidates voters from protecting their right to vote from vote dilution.

In addition, Counter-Plaintiffs allege that both Fair Fight, Inc. and Fair Fight Action, Inc. worked in concert with one another to threaten, harass, and otherwise intimidate Counter-Plaintiffs by their scurrilous and baseless allegations in public communications that Counter-Plaintiffs have and are engaged in vote suppression and voter intimidation. Ms. Stacey Abrams, who is associated with both Fair Fight, Inc. and Fair Fight Action, Inc. stated on CNN that the Section 230 challenges were a "pretext," were "untrue and unfounded," and that TTV had

a "long history of voter intimidation and voter suppression." *Id.* at ¶ 164. The day after Ms. Abrams' statements, Section 230 challengers received threatening and harassing emails. *Id.* at ¶ 167.

The VRA's plain language and court precedent surrounding claims of vote dilution support Counter-Plaintiffs' Section 11(b) counterclaim against Counter-Defendants Fair Fight, Inc. and Fair Fight Action, Inc. Counter-Plaintiffs have plausibly alleged Counter-Defendants have engaged in conduct that could be considered intimidating under Section 11(b). Therefore, Plaintiffs' motion to dismiss should be denied as to counterclaim 5.

### Standard of Review

A complaint must include "enough facts to state a claim to relief that is plausible on its face" to withstand a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility and a motion to dismiss must be denied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to survive a motion to dismiss, a plaintiff must allege more than labels and conclusions and

must do more than make a "formulaic recitation of the elements of a cause of action." *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) (internal citations omitted). The relevant question is whether the complaint includes enough factual allegations to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## Argument

### I. The Plain Language and Subsequent Interpretations of the Voting Rights Act Supports Counter-Plaintiffs' Section 11(b) Counterclaim Against Counter-Defendants.

Section 11(b) of the Voting Rights Act prohibits any person, "whether acting under color of law or otherwise," from acts which "intimidate, threaten, or coerce . . . any person for voting or attempting to vote," or any attempted acts to do so. 52 U.S.C. § 10307(b). The word "vote" is defined within the VRA, and includes:

> all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast with respect to candidates for public office and propositions for which votes are received in an election . . . .

52 U.S.C. § 10101(e). Courts in this circuit and elsewhere have long recognized

**Defs.' Resp. to**
**Pls.' Mot. to Dismiss**                    9

that "the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *United States by Clark v. Democratic Exec. Comm. of Barbour Cty., Ala.*, 288 F. Supp. 943, 946 (M.D. Ala. 1968) (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 (1964)). Recognition that dilution of voting rights is a protected right under the VRA has been analyzed in many different contexts. *See*, *Rogers v. Lodge*, 458 U.S. 613, 621 (1982) (considering vote dilution claim's applicability to county governing bodies); *Black Voters v. McDonough*, 565 F.2d 1, 4 (1st Cir. 1977) (analyzing whether system instituted to "minimize or cancel out the voting strength of racial or political elements of the voting population"); *United States v. Dallas Cty. Comm'n*, 548 F. Supp. 794, 867 (S.D. Ala. 1982) (finding system to elect members of county school board did not improperly dilute voting strength of county's black electorate); *Clark v. Marengo Cty.*, 469 F. Supp. 1150, 1161 (S.D. Ala. 1979) (considering whether vote dilution determined by open political processes or minority success being elected once access had been obtained).

The VRA presupposes that its protection is to be afforded to those who are "otherwise qualified by law" to vote in any election. 52 U.S.C. § 10101(1). The

**Defs.' Resp. to**
**Pls.' Mot. to Dismiss**          10

Georgia legislature has enacted a statute that enables an eligible Georgia voter to challenge "the right of any other elector of the county or municipality. . . to vote in an election." O.C.G.A. § 21-2-230(a). But such a challenge is only the first step in a lawful process—a county board of elections then has to find the challenge is supported by probable cause. Any challenged voter has the lawful right to show he or she is, in fact, an eligible voter or to cast a provisional ballot until such a challenge can be resolved.

Counter-Defendants argue that the VRA cannot be used to protect one's "ability to disqualify or prevent others from voting." *Plaintiff Fair Fight, Inc., John Doe, Jane Doe, and Counter-Defendant Fair Fight Action, Inc.'s Motion to Dismiss Defendants' Counterclaim*, ECF No. 48-1, 20. The scope of Georgia's election law and federal voting rights draws a huge distinction between precluding ineligible voters from voting and wrongfully precluding eligible voters from doing so. Defendants in this case followed a lawful procedure created by the Georgia legislature to preclude ineligible voters from casting votes they are not "otherwise qualified by law" to cast, after those challenged voters are afforded every due process required under law. Defendants did not ever assert that those eligible to

**Defs.' Resp. to**
**Pls.' Mot. to Dismiss**             11

vote should somehow be precluded from exercising this fundamental right.

Of course the VRA cannot be used to protect someone's attempt to illegally or wrongfully prevent someone from voting. History is replete with examples of people illegally and wrongfully intimidating voters. *See, e.g.*, *United States v. McLeod*, 385 F.2d 734, 737 (5th Cir. 1967) (holding sheriff's officers who took down license plate numbers of cars outside voter registration meetings to be unlawfully intimidating). Counter-Defendants equate an organization that *wrongfully* publicized the names of allegedly ineligible voters, *see* Pls.' Mot. to Dismiss at 20, to Counter-Plaintiffs' lawful voter challenges to county election boards, which have the authority to consider such challenges with due process protections firmly in place.

If the *lawful* right to protect one's vote from dilution is a protected right, as precedent shows it is, then the VRA can be used to protect that right as surely as it can be used to protect other elements encompassed in the right to vote. Counter-Plaintiffs' reading of the VRA would not give "would-be intimidators license to engage in aggressive 'anti-fraud' measures." *Id.* at 21. It would, however, ensure that voters who engage in a lawful challenge process to protect their right to vote

**Defs.' Resp. to**
**Pls.' Mot. to Dismiss**          12

are afforded the same protection from intimidation when they do so.

The VRA's plain language and court precedent surrounding claims of vote dilution support Counter-Plaintiffs' Section 11(b) counterclaim against Counter-Defendants Fair Fight, Inc. and Fair Fight Action, Inc.

## II. Counter-Plaintiffs Have Plausibly Alleged Counter-Defendants Have Engaged in Conduct that Could Be Considered Intimidating Under Section 11(b).

A "claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Counter-Plaintiffs' counterclaims allege factual content sufficient to meet the *Iqbal* standard here.

Counter-Defendants' allegations rest upon the premise that bringing voter challenges allowed under Georgia law and supported by NCOA data, is "entirely frivolous" and "created an atmosphere of intimidation." Complaint, ¶¶ 2, 9. But the State of Georgia itself is part of the Electronic Registration Information Center ("ERIC"), an organization that assists states in improving the accuracy of their voter rolls. *See* https://ericstates.org/. In part, ERIC utilizes NCOA data to help states accomplish that mission. *Id.*

**Defs.' Resp. to**
**Pls.' Mot. to Dismiss**                        13

Both Plaintiffs and this Court acknowledge that Plaintiffs did not bring a direct National Voter Registration Act ("NVRA") challenge. Order at 11. However, this Court analyzed provisions of the NVRA in combination with Section 230 in order to conclude that such analysis "lends support" to Plaintiffs' argument that Defendants' Section 230 challenges are "frivolous." *Id.* at 11-15. But since Plaintiffs, Counter-Plaintiffs, and this Court agree that no NVRA claims is at issue here, the analysis of NCOA data as it relates to Georgia law is the start, not the end, of whether Counter-Plaintiffs claims are "frivolous."

Counter-Plaintiffs did not offer NCOA as conclusive proof that anyone should be prevented from voting in the Runoff election, let alone that anyone should be removed from Georgia's voter rolls on the sole basis of NCOA data. The NCOA data provided a starting point, but certainly not the end point, of the data relied upon for the challenges. Commercial databases and proprietary methods were used to "scrub" the data in an attempt to further verify identity and eliminate those unlikely to be ineligible to vote in Georgia. For instance, zip codes surrounding military bases were removed because the Georgia voters living in those places were very likely to still be eligible to vote. Other considerations, such

as proximity to a college or university were also taken into account. This research was done before any Georgia voter presented it to a county board of elections for a challenge. These challenges were not "frivolous," and were made according to the requirements detailed in O.C.G.A. § 21-2-230.

Section 230 does not limit the number of challenges that may be brought—the risk of vote dilution is higher if more, not fewer, ineligible voters are able to cast ballots. Section 230 challenges are not prohibited within 90 days of an election. Nor does Section 230 exclude certain types of data from the evidence that may be used, *as a starting point*, to provide probable cause for the challenge.

Counter-Plaintiffs don't have the power to determine whether anyone registered to vote in Georgia is actually eligible to vote—that power rests solely with the election officials at the county and state levels who are authorized under law to do so. But the Georgia state legislature has invested eligible Georgia voters with an important tool that can be used to protect their own right to vote from vote dilution by ineligible voters—a Section 230 challenge. It cannot be that a Section 230 challenge equates to a Section 229 process to remove an ineligible voter from the registration rolls—otherwise, Section 230 is superfluous. It cannot be that a

Section 230 challenge is subject to the 90-day provision in the NVRA since Section 230 applies to an individual's right under Georgia law and the NVRA applies to the government's responsibilities under federal law. It cannot be that data that is used across this country, including by states like Georgia that are maintaining their voter rolls, cannot ever be used to provide probable cause for a Section 230 challenge. It cannot be that such challenges are automatically suspect or "frivolous."

Counter-Defendants accuse Counter-Plaintiffs of using "frivolous" methods to support an action they were legally authorized to pursue under Georgia law. By doing so, Counter-Defendants did not rightfully employ a lawful procedure since the Complaint is baseless, and such wrongful conduct can support a Section 11(b) counterclaim.

Moreover, Counter-Plaintiffs alleged that both Fair Fight, Inc. and Fair Fight Action, Inc. worked in concert with one another to threaten, harass, and otherwise intimidate Counter-Plaintiffs by their scurrilous and baseless allegations in public communications that Counter-Plaintiffs have and are engaged in vote suppression and voter intimidation. Defs.' Answer, ECF No. 40, ¶ 173. Ms.

**Defs.' Resp. to**
**Pls.' Mot. to Dismiss**              16

Abrams, who is associated with both Fair Fight, Inc. and Fair Fight Action, Inc. stated on CNN that the Section 230 challenges were a "pretext," were "untrue and unfounded," and that TTV had a "long history of voter intimidation and voter suppression." *Id.* at ¶ 164. These statements are false, and therefore, wrongful. The day after Ms. Abrams' statements, Section 230 challengers received threatening and harassing emails. *Id.* at ¶ 167.

It is objectively reasonable that Counter-Plaintiffs are and will be intimidated from protecting their right to vote under Section 230, or by other means, and from advocating for the protection of their right to vote by preventing voter fraud, as a result of Counter-Defendants' lawsuit as well as the public statements made by representatives of both Fair Fight, Inc. and Fair Fight Action, Inc.

Counter-Plaintiffs have plausibly alleged Counter-Defendants Fair Fight, Inc. and Fair Fight Action, Inc. have engaged in conduct that could be considered intimidating under Section 11(b).

## Conclusion

Counter-Plaintiffs agree that Counterclaims 1-4 are more properly

**Defs.' Resp. to
Pls.' Mot. to Dismiss**                17

considered as affirmative defenses. Therefore, Counter-Plaintiffs request that this Court dismiss Counterclaims 1-4 and consider them as affirmative defenses in future briefings and proceedings.

The VRA's plain language and court precedent surrounding claims of vote dilution support Counter-Plaintiffs' Section 11(b) counterclaim against Counter-Defendants Fair Fight, Inc. and Fair Fight Action, Inc. Counter-Plaintiffs have plausibly alleged Counter-Defendants Fair Fight, Inc. and Fair Fight Action, Inc. have engaged in conduct that could be considered intimidating under Section 11(b).

For the reasons discussed above, Plaintiffs' motion to dismiss as to Counterclaim 5 should be denied.

Dated: March 5, 2021

/s/ Ray Smith, III
Ray Smith, III, GA # 662555
rsmith@smithliss.com

SMITH & LISS, LLC
Five Concourse Parkway
Suite 2600
Atlanta, GA 30328
Telephone: (404) 760-6000
Facsimile: (404) 760-0225
*Local Counsel for Defendants*

Respectfully Submitted,

James Bopp, Jr.,* IN # 2838-84
 jboppjr@aol.com
Jeffrey P. Gallant,* VA # 46876
 jgallant@bopplaw.com
Courtney Turner Milbank,* IN#
32178-29
 cmilbank@bopplaw.com
Melena Siebert,* IN # 35061-15
 msiebert@bopplaw.com
THE BOPP LAW FIRM, PC
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434
Facsimile: (812) 235-3685
*Lead Counsel for Defendants*
**Admitted Pro hac vice*

**Defs.' Resp. to
Pls.' Mot. to Dismiss**            19

# Certificate of Compliance

The undersigned counsel certifies that the foregoing has been prepared in

Times New Roman (14 point) font, as required by the Court in Local Rule 5.1(B).

Respectfully submitted on March 5, 2021

**SMITH & LISS, LLC**
*/s/ Ray S. Smith, III*
Ray S. Smith, III
Georgia Bar No. 662555
*Local Counsel for Defendants*

**Defs.' Resp. to**
**Pls.' Mot. to Dismiss**                 20

# Certificate of Service

I hereby certify that the foregoing document was served electronically on March 5, 2021, upon all counsel of record via the United States District Court for the Northern District of Georgia, electronic filing system.

*/s/ Ray S. Smith, III*
Ray S. Smith, III
Georgia Bar No. 662555
*Local Counsel for Defendants*