**United States District Court**
**Northern District of Georgia**
**Gainesville Division**

| | |
|---|---|
| **Fair Fight, Inc., Scott Berson, Jocelyn Heredia,** and **Jane Doe**, | |
| *Plaintiffs and Counter-Defendants*, | **Civ. No. 2:20-cv-00302-SCJ** |
| *v.* | |
| **True the Vote, Inc., Catherine Engelbrecht, Derek Somerville, Mark Davis, Mark Williams, Ron Johnson, James Cooper,** and **John Does 1-10**, | **Hon: Steve C. Jones** |
| *Defendants*, | |
| **Fair Fight Action, Inc.,**and **Ms. Stacey Abrams**, | |
| *Defendants to Counterclaim.* | |

**Defendants' Answer to Plaintiffs' First Amended Complaint for Declaratory and Injunctive Relief, Affirmative Defenses, and Verified Counterclaim Against Plaintiffs and Defendants Fair Fight Action, Inc. and Ms. Stacey Abrams**

Defendants True the Vote, Inc., Catherine Engelbrecht, Derek Somerville,

Mark Davis, Mark Williams, Ron Johnson, and James Cooper (collectively,

"Defendants") through undersigned counsel, respond as follows to the First

Amended Complaint for Declaratory and Injunctive Relief. Everything not

responded to in a specific response is denied.

**Defendant's Answer, Defenses
and Counterclaim to Am. Compl.**         1

1.    Defendants deny the averments and allegations in paragraph 1.

2.    Defendants deny the averments and allegations in paragraph 2.

3.    Defendants deny the averments and allegations in paragraph 3.

4.    Defendants deny the averments and allegations in paragraph 4.

5.    Defendants deny the averments and allegations in paragraph 5.

6.    Defendants deny the averments and allegations in paragraph 6.

7.    Defendants deny the averments and allegations in paragraph 7.

8.    Defendants deny the averments and allegations in paragraph 8.

9.    Defendants deny the averments and allegations in paragraph 9.

10.    Defendants deny the averments and allegations in paragraph 10.

11.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments and allegations in the first sentence of paragraph 11. Defendants deny the remaining averments and allegations in paragraph 11.

12.    Defendants deny the averments and allegations in paragraph 12.

13.    Defendants deny the averments and allegations in paragraph 13.

14.    Defendants deny the averments and allegations in paragraph 14.

15.    Defendants are without knowledge or information sufficient to form a

**Defendant's Answer, Defenses
and Counterclaim to Am. Compl.**        2

belief as to the truth of the averments and allegations in paragraph 15.

16.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments and allegations in paragraph 16.

17.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments and allegations in paragraph 17.

18.     Defendants admit that Defendant True the Vote, Inc. is a 501(c)(3) organization and is incorporated in Texas. Defendants deny the remaining averments and allegations in paragraph 18.

19.     Defendants admit that Catherine Engelbrecht is a resident of Texas. Defendants deny the remaining averments and allegations in paragraph 19.

20.     Defendants admit that Derek Somerville is a resident of Forsyth County, Georgia. Defendants deny the remaining averments and allegations in paragraph 20.

21.     Defendants admit that Mark Davis is a resident of Gwinnett County, Georgia.  Defendants deny the remaining averments and allegations in paragraph 21.

22.     Defendants admit that Mark Williams is a resident of Gwinnett County, Georgia. Defendants deny the remaining averments and allegations in

**Defendant's Answer, Defenses**
**and Counterclaim to Am. Compl.**     3

paragraph 22.

23.     Defendants admit that Ron Johnson is a resident of Jackson County, Georgia. Defendants deny the remaining averments and allegations in paragraph 23.

24.     Defendants admit that Defendant James Cooper is a resident of Walton County, Georgia. Defendants deny the remaining averments and allegations in paragraph 24.

25.     Defendants deny the averments and allegations in paragraph 25.

26.     Defendants admit that the Court has subject matter jurisdiction over this action.

27.     Defendants admit that this court has personal jurisdiction over Defendants in this matter, but deny that Defendants have caused tortious injury in this state. Defendants deny the remaining averments and allegations in paragraph 27.

28.     Defendants admit that venue is proper in the Northern District of Georgia.

29.     Defendants deny the averments and allegations in paragraph 29.

30.     Defendants deny the averments and allegations in paragraph 30.

**Defendant's Answer, Defenses
and Counterclaim to Am. Compl.**     4

31.     Defendants deny the averments and allegations in paragraph 31.

32.     Defendants deny the averments and allegations in paragraph 32.

33.     Defendants deny the averments and allegations in paragraph 33.

34.     Defendants deny the averments and allegations in paragraph 34.

35.     Defendants deny the averments and allegations in paragraph 35.

36.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments and allegations in paragraph 36.

37.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments and allegations in paragraph 37.

38.     Defendants deny the averments and allegations in paragraph 38.

39.     Defendants deny the averments and allegations in paragraph 39.

40.     Defendants deny the averments and allegations in paragraph 40.

41.     Defendants deny the averments and allegations in paragraph 41.

42.     Defendants admit that Defendants Ron Johnson and Mark Williams brought challenges under Georgia's Elector Challenge provision in the county in which they reside. Defendants deny the remaining averments and allegations in paragraph 42.

43.     Defendants admit that, in Defendant True the Vote, Inc.'s press

**Defendant's Answer, Defenses
and Counterclaim to Am. Compl.**          5

release that Defendant True the Vote, Inc. described the Elector Challenges brought throughout Georgia as a "landmark" effort, and said that 364,000 Georgians were "potentially ineligible" to vote in the runoff election by, in part, comparing Georgia's voter registration database to United States Postal Service's National Change of Address (NCOA) registry.

44.     Defendants deny the averments and allegations in the first sentence of paragraph 44. The remaining allegations state legal conclusions to which no response is required. To the extent that a response is required, Defendants deny the remaining averments and allegations in paragraph 44.

45.     Paragraph 45 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the averments and allegations in paragraph 45.

46.     Paragraph 46 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the averments and allegations in paragraph 46.

47.     Paragraph 47 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the averments and allegations in paragraph 47.

**Defendant's Answer, Defenses
and Counterclaim to Am. Compl.**     6

48.     Paragraph 48 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the averments and allegations in paragraph 48.

49.     Defendants deny the averments and allegations in paragraph 49.

50.     Defendants deny the averments and allegations in paragraph 50.

51.     Defendants deny the averments and allegations in paragraph 51.

52.     The first sentence of Paragraph 52 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the averments and allegations in the first sentence of paragraph 52. Defendants deny the remaining averments and allegations in paragraph 52.

53.     Defendants deny the averments and allegations in paragraph 53.

54.     Paragraph 54 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the averments and allegations in paragraph 54.

55.     Paragraph 55 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the averments and allegations in paragraph 55.

56.     Defendants deny the averments and allegations in paragraph 56.

57.     Defendants deny the averments and allegations in paragraph 57.

58.     Defendants deny the averments and allegations in paragraph 58.

59.     Defendants deny the averments and allegations in paragraph 59.

60.     Defendants deny the averments and allegations in paragraph 60.

61.     Defendants deny the averments and allegations in paragraph 61.

62.     Defendants deny the averments and allegations in paragraph 62.

63.     Defendants deny the averments and allegations in paragraph 63.

64.     Defendants deny the averments and allegations in paragraph 64.

65.     Defendants deny the averments and allegations in paragraph 65.

66.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments and allegations in paragraph 66.

67.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments and allegations in paragraph 67.

68.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments and allegations in paragraph 68.

69.     Defendants deny the averments and allegations in paragraph 69.

70.     Defendants deny the averments and allegations in paragraph 70.

71.     Defendants deny the averments and allegations in paragraph 71.

**Defendant's Answer, Defenses
and Counterclaim to Am. Compl.**     8

72.     Paragraph 72 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the averments and allegations in paragraph 72.

73.     Paragraph 73 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the averments and allegations in paragraph 73.

74.     Defendants deny the averments and allegations in paragraph 74.

75.     Paragraph 75 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the averments and allegations in paragraph 75.

76.     Paragraph 76 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the averments and allegations in paragraph 76.

77.     Paragraph 77 realleges and reincorporates Plaintiffs allegations in paragraphs 1-76, to which Defendants maintain all previous responses thereto.

78.     Paragraph 78 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the averments and allegations in paragraph 78.

**Defendant's Answer, Defenses
and Counterclaim to Am. Compl.**      9

79.   Defendants deny the averments and allegations in paragraph 79.

80.   Defendants deny that Plaintiffs are entitled to the relief requested in paragraph 80.

81.   Defendants deny that Plaintiffs are entitled to the relief requested in the Prayer for Relief on pages 29-30.

**Defendants' Affirmative Defenses to Plaintiffs' First Amended Complaint**

82.   Plaintiffs fail to state a claim upon which relief can be granted.

83.   Plaintiffs lack Article III standing to bring their claims against Defendants.

84.   Defendants' conduct lawfully employed a lawful procedure without any racial animus, intent to intimidate, or wrongful conduct, and thus, did not violate Section 11(b) of the Voting Rights Act.

85.   Defendants did not engage in, nor directed any person to engage in, voter intimidation as under Section 11(b) of the Voting Rights Act.

86.   Defendants' activities are constitutionally protected under the First Amendment's right of free speech, to petition the government and to vote.

87.   Defendant Catherine Engelbrecht is an individual and is therefore not personally liable for the corporate actions of True the Vote, Inc., and is therefore

**Defendant's Answer, Defenses**
**and Counterclaim to Am. Compl.**      10

improperly named as a Defendant.

88.     Defendant Derek Somerville is not connected in any way with Defendant True the Vote, Inc. or its activities or any other parties or actions alleged by Plaintiffs, and is improperly named as a Defendant.

89.     Defendant Mark Davis is not connected in any way with Defendant True the Vote, Inc. or its activities or any other parties or actions alleged by Plaintiffs, and is improperly named as a Defendant.

90.     Defendants' lawful Section 230 challenges do not violate the National Voter Registration Act.

91.     Judicial enforcement of Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b), as sought to be applied by Plaintiffs, is unconstitutional under the First Amendment.

92.     Judicial enforcement of Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b), as sought to be applied by Plaintiffs, unconstitutionally violates Defendants' right to vote via vote dilution.

93.     Judicial enforcement of Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b), as sought to be applied by Plaintiffs, is unconstitutionally vague.

**Defendant's Answer, Defenses**
**and Counterclaim to Am. Compl.**     11

94.    Defendants do not waive any of the affirmative defenses delineated in the court rules and expressly reserve their right to assert any of these defenses to the extent further factual investigation discloses their applicability.

95.    Defendants reserve the right to add any additional affirmative defenses that may become known to them during the course of discovery or otherwise.

## Defendants' Verified Counterclaim Against Counter-Defendants and Verified Claim Against Additional Defendants

Counter-Plaintiffs True the Vote, Inc., Mark Williams, and Ron Johnson, and James Cooper complain as follows:

### Jurisdiction and Venue

96.    This action arises under the First and Fifth Amendments to the U.S. Constitution, and Section 11(b) of the Voting Rights Act.

97.    This Court has subject matter jurisdiction over the Counter-Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (federal question). It also has jurisdiction pursuant to the Declaratory Judgment Act as codified at 28 U.S.C. §§ 2201 and 2202.

98.    Venue is proper under Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391, because the events giving rise to the claim

**Defendant's Answer, Defenses**
**and Counterclaim to Am. Compl.**    12

occurred within this district and division.

99.     This Court has the authority to enter declaratory relief under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

# Parties

100.   Counter-Plaintiff True the Vote, Inc. is a non-profit corporation incorporated under the laws of Texas.

101.   Counter-Plaintiff Mark Williams is an eligible and registered voter, who was qualified to and did vote for a Senate candidate in the January 5, 2021, runoff election in this State. Mr. Williams is a resident of Gwinnett County, Georgia.

102.   Counter-Plaintiff Ron Johnson is an eligible and registered voter, who was qualified to and did vote for a Senate candidate in the January 5, 2021 runoff election in this State. Mr. Johnson is a resident of Jackson County, Georgia.

103.   Counter-Plaintiff James Cooper is an eligible and registered voter, who was qualified to and did vote for a Senate candidate in the January 5, 2021 runoff election in this State. Mr. Cooper is a resident of Walton County, Georgia.

104.   Counter-Defendant Fair Fight, Inc. is a domestic nonprofit corporation based in Georgia, is a federally-register political action committee,

shares a website with Defendant Fair Fight Action, Inc. and is a Plaintiff to this action. Counter-Defendant Fair Fight, Inc. has intimidated Counter-Plaintiffs, and their agents, in violation of § 11(b) of the Voting Rights Act.

105.   Defendant Fair Fight Action, Inc. is a domestic nonprofit corporation based in Georgia, is engaged in "voter mobilization and education activities and advocates for progressive issues," https://fairfight.com/about-fair-fight/, and shares a website with Counter-Defendant Fair Fight, Inc.

106.   Stacey Abrams is the founder of Counter-Defendant Fair Fight, Inc. and is listed as the Chair of Defendant Fair Fight Action, Inc., https://fairfight.com/our-team/, and, upon information and belief, speaks on behalf of Counter-Defendant Fair Fight, Inc. and Defendant Fair Fight Action, Inc., as well as individually on election-related issues.

107.   Defendants Fair Fight Action, Inc. and Stacey Abrams have intimidated Counter-Plaintiffs, and their agents, in violation of § 11(b) of the Voting Rights Act and, upon information and belief, have assisted and acted in concert with Counter-Defendant Fair Fight, Inc. in the intimidation of Counter-Plaintiffs, and their agents, in violation of § 11(b) of the Voting Rights Act.

**Defendant's Answer, Defenses and Counterclaim to Am. Compl.**      14

# Facts

### Georgia Eligibility Requirements

108.   A person may not vote in an Georgia election unless they are "[a] resident of this state and of the county or municipality in which he or she seeks to vote[.]" O.C.G.A. § 21-2-216(a). *See also* O.C.G.A. § 21-2-217 (detailing the rules for determining residency).

### Challenge of Right of Electors to Vote by Other Electors

109.   Accordingly, Georgia law sets out a process for challenging an elector's right to vote in an election, providing that:

> Any elector of the county or municipality may challenge the right of any other elector of the county or municipality, whose name appears on the list of electors, to vote in an election. Such challenge shall be in writing and specify distinctly the grounds of such challenge. Such challenge may be made at any time prior to the elector whose right to vote is being challenged voting at the elector's polling place or, if such elector cast an absentee ballot, prior to 5:00 P.M. on the day before the election; provided, however, that challenges to persons voting by absentee ballot in person at the office of the registrars or the absentee ballot clerk shall be made prior to such person's voting.

O.C.G.A. § 21-2-230(a).

110.   These challenges do not result in an automatic disqualification of the challenged elector, but triggers a statutory procedure where the county election board must take further steps to verify the challenged elector's current eligibility

**Defendant's Answer, Defenses
and Counterclaim to Am. Compl.**      15

to vote in the run-off election.

111.   Once such a challenge has been made, the law requires that "the board of registrars shall immediately consider such challenge and determine whether probable cause exists to sustain such challenge." O.C.G.A. § 21-2-230(b).

112.   A challenge may be denied if probable cause does not exist. O.C.G.A. § 21-2-230(b).

113.   On the other hand, "[i]f the registrars find probable cause, the registrars shall notify the poll officers of the challenged elector's precinct or, if the challenged elector voted by absentee ballot, notify the poll officers at the absentee ballot precinct and, if practical, notify the challenged elector and afford such elector an opportunity to answer." O.C.G.A. § 21-2-230(b).

114.   The law then makes clear the steps that should be taken with regards to a challenged elector. They are as follows:

    (a)    If the challenged elector appears at the polling place to vote, such elector shall be given the opportunity to appear before the registrars and answer the grounds of the challenge.

    (b)    If the challenged elector does not cast an absentee ballot and does not appear at the polling place to vote and if the challenge is based on grounds other than the qualifications of the elector to remain on the list of electors, no further action by the registrars shall be required.

    (c)    If the challenged elector cast an absentee ballot and it is not practical to conduct a hearing prior to the close of the polls and

**Defendant's Answer, Defenses**
**and Counterclaim to Am. Compl.**    16

the challenge is based upon grounds other than the qualifications of the elector to remain on the list of electors, the absentee ballot shall be treated as a challenged ballot pursuant to subsection (e) of Code Section 21-2-386. No further action by the registrars shall be required.

(d)     If the challenged elector does not cast an absentee ballot and does not appear at the polling place to vote and the challenge is based on the grounds that the elector is not qualified to remain on the list of electors, the board of registrars shall proceed to hear the challenge pursuant to Code Section 21-2-229.

(e)     If the challenged elector cast an absentee ballot and the challenge is based upon grounds that the challenged elector is not qualified to remain on the list of electors, the board of registrars shall proceed to conduct a hearing on the challenge on an expedited basis prior to the certification of the consolidated returns of the election by the election superintendent. The election superintendent shall not certify such consolidated returns until such hearing is complete and the registrars have rendered their decision on the challenge. If the registrars deny the challenge, the superintendent shall proceed to certify the consolidated returns. If the registrars uphold the challenge, the name of the challenged elector shall be removed from the list of electors and the ballot of the challenged elector shall be rejected and not counted and, if necessary, the returns shall be adjusted to remove any votes cast by such elector. The elector making the challenge and the challenged elector may appeal the decision of the registrars in the same manner as provided in subsection (e) of Code Section 21-2-229.

(f)     If the challenged elector appears at the polls to vote and it is practical to conduct a hearing on the challenge prior to the close of the polls, the registrars shall conduct such hearing and determine the merits of the challenge. If the registrars deny the challenge, the elector shall be permitted to vote in the election notwithstanding the fact that the polls may have closed prior to the time the registrars render their decision and the elector can actually vote, provided that the elector proceeds to vote

**Defendant's Answer, Defenses**
**and Counterclaim to Am. Compl.**      17

immediately after the decision of the registrars. If the registrars uphold the challenge, the challenged elector shall not be permitted to vote and, if the challenge is based upon the grounds that the elector is not qualified to remain on the list of electors, the challenged elector's name shall be removed from the list of electors.

(g)     If the challenged elector appears at the polls to vote and it is not practical to conduct a hearing prior to the close of the polls or if the registrars begin a hearing and subsequently find that a decision on the challenge cannot be rendered within a reasonable time, the challenged elector shall be permitted to vote by casting a challenged ballot on the same type of ballot that is used by the county or municipality for provisional ballots. Such challenged ballot shall be sealed in double envelopes as provided in subsection (a) of Code Section 21-2-419 and, after having the word "Challenged," the elector's name, and the alleged cause of the challenge written across the back of the outer envelope, the ballot shall be deposited by the person casting such ballot in a secure, sealed ballot box notwithstanding the fact that the polls may have closed prior to the time the registrars make such a determination, provided that the elector proceeds to vote immediately after such determination of the registrars. In such cases, if the challenge is based upon the grounds that the challenged elector is not qualified to remain on the list of electors, the registrars shall proceed to finish the hearing prior to the certification of the consolidated returns of the election by the election superintendent. If the challenge is based on other grounds, no further action shall be required by the registrars. The election superintendent shall not certify such consolidated returns until such hearing is complete and the registrars have rendered their decision on the challenge. If the registrars deny the challenge, the superintendent shall proceed to certify the consolidated returns. If the registrars uphold the challenge, the name of the challenged elector shall be removed from the list of electors and the ballot of the challenged elector shall be rejected and not counted and, if necessary, the returns shall be adjusted to

remove any votes cast by such elector. The elector making the challenge and the challenged elector may appeal the decision of the registrars in the same manner as provided in subsection (e) of Code Section 21-2-229.

O.C.G.A. § 21-2-230(c)-(I).

115.   Georgia law permits two distinctly different challenges to the ability of an ineligible elector to vote. First, the presence of the elector on the list of electors (called under federal law "voter registration lists") can be challenged under O.C.G.A. § 21-2-229. No challenges were not brought under this section since the challenges did not question the challenged electors presence on the list of electors. Second, the eligibility of a registered elector to vote in a particular election can be challenged under O.C.G.A. § 21-2-230. The current challenges (discussed below) were brought under this section and only question the challenged elector's eligibility to vote in the run-off election and did not seek to have the elector removed from the registration list, which, as noted, is a separate and different challenge under Georgia law.

116.   O.C.G.A. § 21-2-230 does not trigger any National Voter Registration Act (NRVA) provisions because it does not involve "remov[ing] the names of ineligible voters from the official lists of eligible voters," but, instead, questions their right to vote in a particular election. 52 U.S.C.A. § 20507.

**Defendant's Answer, Defenses and Counterclaim to Am. Compl.**     19

117.   The National Change of Address ("NCOA") Registry is legally sufficient basis for taking such action. *See Husted v. A. Philip Randolf Inst.*, 138 S. Ct. 1833 (2018).

### *Probable Cause Existed to Justify the Challenges*

118.   Prior to the January 5, 2021 election, valid and lawful individual challenges were made, pursuant to O.C.G.A. § 21-2-230, challenging an individual's right to vote in a particular election.

119.   For example, Counter-Plaintiff Ron Johnson brought valid and lawful individual elector challenges, challenging an individual elector's right to vote in the January 5, 2021, election, in Jackson County.

120.   Likewise, Counter-Plaintiff Mark Williams brought valid and lawful individual elector challenges, challenging an individual elector's right to vote in the January 5, 2021, election, in Gwinnett County.

121.   These challenges stemmed from detailed research identifying registered voters who no longer reside in the county of record and voters who no longer reside in the state of Georgia, according to filings with the United States Postal Service National Change of Address (NCOA) and other supporting commercial databases.

**Defendant's Answer, Defenses
and Counterclaim to Am. Compl.**   20

122.   The relied-upon research was performed uniformly across all counties, without regard to any demographic or voting history.

123.   These challenges were made according to the requirements detailed in O.C.G.A. § 21-2-230.

124.   Accordingly, probable cause existed here for such challenges and the relevant Boards of Election were required to fulfill their duties as detailed in O.C.G.A. § 21-2-230(c)-(i), determining whether each challenged elector was eligible to vote.

125.   None of the Counter-Plaintiffs have used these challenges as a way to harass, threaten, or intimidate any voters

126.   Other challenges, completely unrelated to Counter-Plaintiffs, were made throughout the State of Georgia. These other challenges are not connected to nor relevant to the challenges herein.

127.   Counter-Plaintiffs intend to engage in materially similar activity in the future.

128.   Counter-Plaintiffs have no adequate remedy at law and will suffer irreparable harm if relief is not granted.

**Defendant's Answer, Defenses**
**and Counterclaim to Am. Compl.**      21

**Count 1**
**Counter-Defendant Fair Fight, Inc. and Defendants Fair Fight Action, Inc.**
**and Stacey Abrams Violated**
**Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b).**

129.   Counter-Plaintiffs re-allege and incorporate by reference the preceding paragraphs 1 - 128.

130.   Section 11(b) of the Voting Rights Act prohibits any person, "whether acting under color of law or otherwise," from acts which "intimidate, threaten, or coerce . . . any person for voting or attempting to vote," or any attempted acts to do so. 52 U.S.C. § 10307(b).

131.   The Voting Rights Act gives "a broad interpretation to the right to vote, recognizing that voting includes 'all action necessary to make a vote effective.'" *Allen v. State Board of Elections*, 89 S.Ct. 817, 831-832 (1969) (citing 52 U.S.C. § 10310(c)(1)).

132.   Counter-Plaintiffs brought the Section 230 challenges to protect their right to vote from vote dilution. Since the right to vote can be denied by vote dilution, as well as by a prohibition on the right to vote, any intimidation or threat based upon a voter's attempt to protect his or her vote from dilution would violate Section 11(b).

133.   In this current political environment of doxing, harassment, and death

**Defendant's Answer, Defenses**
**and Counterclaim to Am. Compl.**      22

threats brought about, in part, by Counter-Defendant Fair Fight, Inc.'s and

Defendants Fair Fight Action, Inc.'s and Stacey Abrams's scurrilous and baseless

allegations in their Amended Complaint, press releases and other public

communications that Counter-Plaintiffs have and are engaged in vote suppression

and voter intimidation, it is objectively reasonable that Counter-Plaintiffs are and

will be intimidated from protecting their right to vote under Section 230, or by

other means, and from advocating for the protection of their right to vote by

preventing voter fraud.

134.   In their Amended Complaint, Counter-Defendant Fair Fight, Inc.

alleges that Counter-Plaintiffs have: "attempt[ed] voter suppression and

intimidation," Am. Compl., ECF 73, ¶1; "spearheaded a coordinated attack on

Georgia's electoral system, threatening voters with entirely frivolous claims . . . ,"

*Id.*, ¶ 2; committed "repeated attempts at voter suppression" by their Section 230

challenges, *Id.* at ¶ 7; "created an atmosphere of intimidation,"  *Id.*, ¶ 9; and "will

expose lawful Georgia voters to the threat of harassment from Defendants'

supporters." ¶ 63.

135.   One of Counter-Defendant's attorneys, Marc Elias, hailed an early

decision (later reversed in part) in the *Majority Forward* case, which involved a

**Defendant's Answer, Defenses**
**and Counterclaim to Am. Compl.**      23

challenge to the Section 230 procedure employed in certain counties, as a "blow to GOP voter suppression." Kyle Cheney, *Judge blocks voter purge in 2 Georgia counties*, POLITICO (Dec. 28, 2020, 11:08PM, updated Dec. 29, 2020, 10:00AM),

https://www.politico.com/news/2020/12/28/georgia-voter-rolls-senate-451820.

136.    Defendant Stacey Abrams is a spokesman for Counter-Defendant Fair Fight, Inc. and Defendant Fair Fight Action Inc. In a CNN interview with Jake Tapper, she stated that the Section 230 challenges were a "pretext," were "untrue and unfounded," and that TTV had a "long history of voter intimidation and voter suppression."

https://www.cnn.com/videos/politics/2021/01/03/sotu-abrams-full.cnn.

137.    Furthermore, Ms. Abrams appeared on CNN on December 28, 2020. During her interview, at 8:33 am, Ms. Abrams stated, "Republicans do not know how to win without voter suppression as one of their tools. That's why we see True the Vote down here in Georgia challenging 364,000 voters nine days, eight days before the election. Because voter suppression is their modus operandi." Source of CNN video link:

https://truethevote.org/stacey-abrams-says-voter-verification-is-voter-suppression-

attacks-true-the-vote/.

138.   Counter-Plaintiffs have been subject to doxing, harassment, and threats as a result of Counter-Defendant Fair Fight, Inc.'s and Defendants Fair Fight Action, Inc.'s and Stacey Abrams's scurrilous and baseless allegations in public communications that Counter-Plaintiffs have and are engaged in vote suppression and voter intimidation.

139.   For instance, Tommy Roberts, a Section 230 challenger in Ben Hill County, Georgia, received threatening and harassing emails where he was told to "go f[&^%] yourself!!!," Exhibit A, Email from Steven Kearns, December 29, 2020, (un-redacted version), and that "You f[&#$]ing lowlife racist worthless piece of s[&*%]. You f[&#$]ing purge ONE legitimate vote, a[$$]hole, and we will f[&#$]ing string you up my your little 6 year old's short hairs. Comprende, d[^%)]head? You're a f[&#$]ing pathetic uneducated inbred d[^*]do. Worthless white garbage. YOU and your racist lowlife f[&#$]ing buddies are an embarrassment to the country and the human race. GO f[^&*] yourself, a[$$]hole. We are watching you[.]" *Id*, Email from Phil Atio, December 29, 2020, (un-redacted version). These emails were received one day after Defendant Stacey Abrams's interview on CNN in which she accused True the Vote of voter

**Defendant's Answer, Defenses
and Counterclaim to Am. Compl.**       25

suppression. It is objectively reasonable to believe that Ms. Abrams's comments directly led to the harassing emails described in this paragraph.

140.   Furthermore, it is objectively reasonable that Counter-Plaintiffs are and will be intimidated from protecting their right to vote under Section 230, or by other means, and from advocating for the protection of their right to vote by preventing voter fraud, as a result of the Counter-Defendant Fair Fight, Inc.'s filing of the instant Amended Complaint.

141.   While filing a lawsuit is typically protected under the First Amendment as petitioning the government, *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 429 (1963), the First Amendment does not protect "baseless litigation," *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743 (1983), as here.

142.   In filing their Amended Complaint, Counter-Defendant Fair Fight, Inc. did not lawfully employ a lawful procedure since the Amended Complaint is baseless litigation and, therefore, wrongful conduct.

143.   Counter-Defendant Fair Fight, Inc. and Defendants Fair Fight Action, Inc.'s and Stacey Abrams's scurrilous and baseless allegations in public communications that Counter-Plaintiffs have and are engaged in vote suppression

**Defendant's Answer, Defenses
and Counterclaim to Am. Compl.**     26

and voter intimidation were false and, therefore, wrongful conduct.

144.    Counter-Defendant Fair Fight, Inc. and Defendants Fair Fight Action, Inc. and Stacey Abrams intended to intimidate Counter-Plaintiffs from protecting their right to vote through their scurrilous and baseless allegations in public communications that Counter-Plaintiffs have and are engaged in vote suppression and voter intimidation, and Counter-Defendant Fair Fight, Inc. intended to intimidate Counter-Plaintiffs from protecting their right to vote by filing their Amended Complaint.

145.    Upon information and belief, Defendants Fair Fight Action, Inc. and Stacey Abrams have assisted and acted in concert with Counter-Defendant Fair Fight, Inc. to threaten, harass, and otherwise intimidate Counter-Plaintiffs by their scurrilous and baseless allegations in public communications that Counter-Plaintiffs have and are engaged in vote suppression and voter intimidation.

146.    If Section 11(b) were interpreted, as Counter-Defendants contend, to not require any discriminatory or racial animus, Counter-Defendant Fair Fight, Inc. and Defendants Fair Fight Action, Inc. and Stacey Abrams have intimidated or have attempted to intimidate Counter-Plaintiffs from protecting their right to vote in violation of Section 11(b) of the Voting Rights Act.

**Defendant's Answer, Defenses
and Counterclaim to Am. Compl.**    27

# Prayer for Relief

**WHEREFORE**, Counter-Plaintiffs respectfully request that this Court enter judgment in their favor and against Counter-Defendants and Defendants Fair Fight Action, Inc., as follows:

A. Enter a declaratory judgment in Counter-Plaintiffs' favor that Counter-Defendant Fair Fight, Inc. and  Defendants Fair Fight Action, Inc. and Ms. Stacey Abrams have violated Section 11(b) of the Voting Rights Act.

B. Enter a permanent injunction against Counter-Defendant Fair Fight, Inc. and Defendants Fair Fight Action, Inc. and Ms. Stacey Abrams from violating Section 11(b) of the Voting Rights Act.

C. Award Counter-Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing the action pursuant to 52 U.S.C. § 10310.

D. Grant such other and further relief as the Court deems just and proper.

Dated: March 26, 2021

Respectfully Submitted,

/s/ Ray Smith, III
Ray Smith, III, GA # 662555
rsmith@smithliss.com

James Bopp, Jr.,* IN # 2838-84
  jboppjr@aol.com
Jeffrey P. Gallant,* VA # 46876
  jgallant@bopplaw.com
Courtney Turner Milbank,* IN# 32178-29
  cmilbank@bopplaw.com
Melena Siebert,* IN # 35061-15
  msiebert@bopplaw.com
Rob Citak,* KY # 98023
  rcitak@bopplaw.com
THE BOPP LAW FIRM, PC
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434
Facsimile: (812) 235-3685
*Lead Counsel for Defendants*
*\*Admitted Pro hac vice*

SMITH & LISS, LLC
Five Concourse Parkway
Suite 2600
Atlanta, GA 30328
Telephone: (404) 760-6000
Facsimile: (404) 760-0225
*Local Counsel for Defendants*

**Defendant's Answer, Defenses
and Counterclaim to Am. Compl.**   29

# Certificate of Compliance

The undersigned counsel certifies that the foregoing has been prepared in Times New Roman (14 point) font, as required by the Court in Local Rule 5.1(B).

Respectfully submitted March 26, 2021.

**SMITH & LISS, LLC**
<u>*/s/ Ray S. Smith, III*</u>
Ray S. Smith, III
Georgia Bar No. 662555
*Local Counsel for Defendants*

## Certificate of Service

I hereby certify that the foregoing document was served electronically on March 26, 2021, upon all counsel of record via the United States District Court for the Northern District of Georgia, electronic filing system.

<u>*/s/ Ray S. Smith, III*</u>
Ray S. Smith, III
Georgia Bar No. 662555
*Local Counsel for Defendants*

**Defendant's Answer, Defenses
and Counterclaim to Am. Compl.**      31