IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

FAIR FIGHT, INC., SCOTT BERSON,
JOCELYN HEREDIA, and JANE DOE,

   Plaintiffs,

v.

TRUE THE VOTE, INC., CATHERINE
ENGELBRECHT, DEREK
SOMERVILLE, MARK DAVIS, MARK
WILLIAMS, RON JOHNSON, JAMES
COOPER, and JOHN DOES 1-10,

   Defendants,

v.

TRUE THE VOTE, INC., MARK
WILLIAMS, AND RON JOHNSON,

   Counter-Plaintiffs,

v.

FAIR FIGHT, INC., JOHN DOE, JANE
DOE, FAIR FIGHT ACTION, INC.,
   Counter-Defendants.

CIVIL ACTION FILE

No. 2:20-CV-0302-SCJ

## ORDER

This matter appears before the Court on the Motion to Dismiss Defendants' Counterclaims filed by Fair Fight, Inc., Fair Fight Action, Inc., John Doe, and Jane Doe (Doc. No. [48]) and the Motion for Leave to File an Amended Counterclaim filed by True the Vote, Inc. ("TTV"), Catherine Engelbrecht, Derek Somerville, Mark Williams, Ron Johnson, and James Cooper (Doc. No. [89]).[1]

## I.    BACKGROUND

On January 8, 2021, True the Vote, Inc., Mark Williams, and Ron Johnson (hereinafter Counter-Plaintiffs) filed four counterclaims against Fair Fight, Inc., John Doe, and Jane Doe. Doc. No. [40], ¶ 101. Counter-Plaintiffs filed a fifth counterclaim against Fair Fight, Inc. and Fair Fight Action, Inc. (hereinafter "Fair Fight").[2] Doc. No. [40], ¶ 102. The five counterclaims are listed as follows:

> Count 1:   Counter-Plaintiffs' Lawful Section 230 Challenges Do Not Violate the National Voter Registration Act;

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

[2] In their briefing, Fair Fight, Inc. and Fair Fight Action, Inc. refer to themselves collectively as "Fair Fight." Doc. No. [48-1], 8. The Court utilizes this same naming convention for purposes of this Order.

> Count 2: Judicial Enforcement of Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b), as Sought to Be Applied by Counter-Defendants, Is Unconstitutional Under the First Amendment;

> Count 3: Judicial Enforcement of Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b), as Sought to Be Applied by Counter-Defendants, Unconstitutionally Violates Counter-Plaintiffs' Right to Vote via Vote Dilution;

> Count 4: Judicial Enforcement of Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b), as Sought to Be Applied by Counter-Defendants, Is Unconstitutionally Vague; and

> Count 5: Counter-Defendant Fair Fight, Inc.'s and Defendant Fair Fight Action, Inc.'s Violation of Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b).

Doc. No. [40].

On January 29, 2021, Fair Fight, Inc., Fair Fight Action, Inc., John Doe, and Jane Doe (hereinafter "Counter-Defendants") filed a Motion to Dismiss the Counterclaims. Doc. No. [48]. In their Motion, Counter-Defendants assert that Counts 1–4 of the Counterclaim should be dismissed because they are defenses or denials that have been improperly asserted as counterclaims and do not state a claim for relief or articulate cognizable injuries. Id. at 14. Counter-Defendants

3

assert that Count 5 of the Counterclaim fails to state a claim that Fair Fight has violated § 11(b) of the Voting Rights Act ("VRA"). Id. at 24.

In response to the Motion to Dismiss, Counter-Plaintiffs agreed that Counts 1–4 are more properly considered as affirmative defenses and request that this Court dismiss Counts 1–4. Doc. No. [64], 7. Counter-Plaintiffs do not agree that Count 5 should be dismissed. Id. They assert that they have plausibly alleged facts that show that Fair Fight has engaged in conduct that could be considered intimidating under Section 11(b) of the VRA. Id. at 8.

On March 18, 2021, Counter-Defendants filed a reply brief in which they reassert that all of the counterclaims should be dismissed.

On April 2, 2021, Counter-Plaintiffs filed a Suggestion of Mootness as to the pending Motion to Dismiss, based upon the amendment of the original Complaint in this civil action and the filing of an amended answer and counterclaim by Counter-Defendants on March 31, 2021. Doc. Nos. [81]; [82]. As indicated at an April 9, 2021 discovery dispute hearing, the Court is not convinced of the procedural propriety of the counterclaim amendment (or deeming the pending Motion to Dismiss moot). Doc. No. [95]. Following said

4

hearing, Counter-Defendants filed a formal Motion for Leave to File an Amended Counterclaim. Doc. No. [89].[3]

The Motion to Dismiss and Motion for Leave to File an Amended Counterclaim have been fully briefed and are now ripe for review.

## II.    LEGAL STANDARD

### A.    <u>Motion to Dismiss</u>

Federal Rule of Civil Procedure 8(a) requires a counterclaim to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pleadings do not require any particular technical form. Fed. R. Civ. P. (8)(d)(1). However, labels, conclusions, and formulaic recitations of the elements of the case of action "will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

_____

[3] The Court notes that there is some discussion in the briefing as to whether Counter-Plaintiffs seek to file an original counterclaim or an amended counterclaim. The Court deems it proper to refer to the pending motion as one to file an *amended* counterclaim. In addition, in their briefing on the proposed amended counterclaim, Counter-Plaintiffs appear to withdraw their mootness arguments (concerning the pending Motion to Dismiss Counterclaims). <u>See e.g.</u>, Doc. No. [98], 2. Accordingly, the Court gives no additional consideration to the mootness issue.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a counter-defendant may move to dismiss a counterclaim for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

"To decide whether a complaint[4] survives a motion to dismiss, [courts] use a two-step framework." McCullough v. Finley, 907 F.3d 1324, 1333 (11th Cir. 2018). First, the court identifies "the allegations that are 'no more than conclusions," [as] [c]onclusory allegations are not entitled to the assumption of truth. Id. (citations omitted). "Second, after disregarding conclusory allegations, [the Court] assume[s] any remaining factual allegations are true, [identifies the elements that the counterclaimant must plead to state a claim] and determine[s] whether those factual allegations 'plausibly give rise to an entitlement to relief.'" Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (beginning the 12(b)(6) analysis "by taking note of the elements a plaintiff must plead to state a claim . . . .") and Speaker v. U.S. Dep't. of Health & Human Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010) ("In ruling on a 12(b)(6)

---

[4] Where the applicable legal authority utilizes the word "complaint," the Court equally applies the standard to the pending counterclaim for purposes of this Order. Similarly, where the applicable legal authority utilizes the word "plaintiff," the Court applies the principle to the counterclaimant/counter-plaintiff herein.

6

motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.") and Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

A counterclaim will be dismissed for failure to state a claim only if the facts as pled do not state a claim that is plausible on its face. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555–56. In order to state a plausible claim, a counterclaimant need only plead "factual content that allows the court to draw the reasonable inference" that the counter-defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the claim. Twombly, 550 U.S. at 556.

"[W]hile notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007) (quotations omitted).

B.    **Leave to File a Counterclaim**

The standard for amending a pleading is as follows:

> The thrust of [Federal Rule of Civil Procedure] 15(a) is to allow parties to have their claims heard on the merits, and accordingly, district courts should liberally grant leave to amend when "the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief." Foman v. Davis, 371 U.S. 178, 182 (1962). Nevertheless, a motion for leave to amend may appropriately be denied "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." Bryant v. Dupree, 252 F.3d 1161,1163 (11th Cir. 2001).

In re Engle Cases, 767 F.3d 1082, 1108–09 (11th Cir. 2014). An amendment is futile "'when the complaint as amended is still subject to dismissal' because, for example, it fails to state a claim for relief." Chang v. JPMorgan Chase Bank, N.A., 845 F.3d 1087, 1094 (11th Cir. 2017). As indicated above, "[t]o state a claim for relief, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citations and quotations omitted).

8

## III.    DISCUSSION

The Court begins by considering the Motion to Dismiss the Counterclaim. Doc. No. [48]. The Court will thereafter consider the Motion to Amend the Counterclaim. Doc. No. [89].

### A.    Motion to Dismiss the Counterclaims

#### 1.    Counts 1–4

In their Motion, Counter-Defendants assert that Counts 1–4 of the Counterclaim should be dismissed because they are defenses or denials that have been improperly asserted as counterclaims and do not state a claim for relief or articulate cognizable injuries. Doc. No. [48], 14. In response, Counter-Plaintiffs agree that Counterclaims 1-4 are more properly considered as affirmative defenses. Doc. No. [64], 7. Therefore, Counter-Plaintiffs request that this Court dismiss Counterclaims 1-4 and consider them as affirmative defenses in future briefings and proceedings. Id.

In the absence of an amended counterclaim, Counts 1—4 are not eliminated by the language in the response brief. Cf. Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1106 (11th Cir. 2004) ("A plaintiff wishing to eliminate particular claims or issues from the action should amend the complaint under

Rule 15(a) . . . . ") (internal quotation omitted). However, as indicated below, the Court deems it proper to grant the pending Motion to Amend the Counterclaim to remove the first four counterclaims previously pled in Doc. No. [40] and to reassert them as part of the Amended Answer's defenses. Doc. No. [89].

To this regard, the Motion to Dismiss Counts 1–4 of the Counterclaim is moot and to the extent not moot, granted as the Court agrees that Count 1–4 are subject to dismissal because as correctly noted by Counter-Defendants, they are defenses/denials (not counterclaims) and do not state a claim for relief or articulate cognizable injuries by the Counter-Defendants. Doc. No. [48-1], 14.

### 2.     *Count 5*

As stated above, in Count 5 of their Counterclaim, Counter-Plaintiffs allege that Fair Fight has violated Section 11(b) of the VRA. Doc. No. [40], 30. More specifically, Counter-Plaintiffs allege that by the filing of "baseless litigation" against Counter-Plaintiffs, Fair Fight violated Section 11(b) of the VRA in an attempt to intimidate Counter-Plaintiffs "from protecting their right to vote under" O.C.G.A. § 21-2-230 (hereinafter "Section 230 challenges") and

"advocating for the protection of their right to vote by preventing voter fraud."

Id. ¶ 168.[5]

O.C.G.A. § 21-2-230 provides that "any elector of the county or municipality may challenge the right of any other elector of the county or municipality, whose name appears on the list of electors, to vote in an election." The challenge must "be in writing and specify distinctly the grounds of such challenge." O.C.G.A. § 21-2-230(a). "Upon the filing of such challenge, the [county] board of registrars shall immediately consider such challenge and

---

[5] In their Counterclaim, Counter-Plaintiffs set forth the following allegations from Fair Fight's litigation as follows:

> Counter-Defendant Fair Fight, Inc. allege that Counter-Plaintiffs have: "attempt[ed] voter suppression and intimidation," Complaint, ECF 1, ¶1; "spearheaded a coordinated attack on Georgia's electoral system, threatening voters with entirely frivolous claims . . . ," Id., ¶ 2; committed "repeated attempts at voter suppression" by their Section 230 challenges, Id. at ¶ 7; "created an atmosphere of intimidation," Id., ¶ 9; and "will expose lawful Georgia voters to the threat of harassment from Defendants' supporters." ¶ 62.

Doc. No. [40], ¶ 162.

determine whether probable cause exists to sustain such challenge." O.C.G.A. § 21-2-230(b).[6]

Counter-Plaintiffs state that they "brought the Section 230 challenges to protect their right to vote from vote dilution" and to ensure that the challenged electors are eligible voters in Georgia Id. ¶¶ 141, 160.

Counter-Plaintiffs further allege that Fair Fight has made "scurrilous and baseless allegations in public communications that Counter-Plaintiffs have and are engaged in vote suppression and voter intimidation." Id. ¶ 172. Counter-Plaintiffs allege that such "scurrilous and baseless allegations in publication communications" were "intended to intimidate Counter-Plaintiffs from protecting their right to vote" in violation of Section 11(b) of the Voting Rights Act. Id.[7]

_____

[6] The Court recognizes that there have been recent amendments to the State of Georgia's election code. For purposes of this Order, the Court considers the same version of O.C.G.A. § 21-2-230 that it considered for purposes of its January 1, 2021 order (Doc. No. [29]) concerning the request for injunctive relief.

[7] Counter-Defendants describe Count 5 as based on a "theory of reverse intimidation." Doc. No. [91], 3. It appears to the Court that such a description is debatable; however, it is clear to the Court that both parties have accused each of other of Section 11(b) violations through intimidation.

As an example of a "public communication," Counter-Plaintiffs cite a December 28, 2020 CNN interview given by Stacey Abrams as a "spokesman" for Fair Fight, in which she stated that "the Section 230 challenges were a 'pretext,' were 'untrue and unfounded,' and that [Counter-Defendant TTV] had a 'long history of voter intimidation and voter suppression.'" Id. ¶ 164.[8]

A second example of a "public communication" is a statement made by "[o]ne of Counter-Defendant's attorneys, Marc Elias," that hailed a court decision (in a different lawsuit that involved a challenge to the Section 230 procedure) as a "blow to GOP voter suppression." Id. ¶ 163.

Counter-Plaintiffs further state that they have "been subject to doxing, harassment, and threats as a result of [Fair Fight's] scrurrilous and baseless allegations in public communications." Id. ¶ 166. As an example, Counter-Plaintiffs set forth two emails received by Section 230 challenger/non-party, Tommy Roberts, the day after Ms. Abrams' CNN interview. Said emails were from non-parties and stated in relevant part:

"go f[&^%] yourself!!!" . . . .

_____

[8] Ms. Abrams is not named as a party in the original counterclaim. Counter-Plaintiffs seek to add her as a party in their proposed Amended Counterclaim. Doc. No. [89].

> "You f[&#$]ing lowlife racist worthless piece of s[&*%].
> You f[&#$]ing purge ONE legitimate vote, a[$$]hole,
> and we will f[&#$]ing string you up my your little
> 6 year old's short hairs. Comprende, d[^%)]head?
> You're a f[&#$]ing pathetic uneducated inbred d[^*]do.
> Worthless white garbage. YOU and your racist lowlife
> f[&#$]ing buddies are an embarrassment to the country
> and the human race. GO f[^&*] yourself, a[$$]hole.
> We are watching you[.]"

Id. ¶ 167 (redactions supplied by Counter-Plaintiffs, quotations in original).

Under Section 11(b) of the VRA,

> [n]o person, whether acting under color of law or
> otherwise, shall intimidate, threaten, or coerce, or
> attempt to intimidate, threaten, or coerce any person for
> voting or attempting to vote, or intimidate, threaten, or
> coerce, or attempt to intimidate, threaten, or coerce any
> person for urging or aiding any person to vote or
> attempt to vote, or intimidate, threaten, or coerce any
> person for exercising any powers or duties under
> [certain other provisions] of this title.

52 U.S.C. § 10307(b). Put another way, Section 11(b) prohibits intimidating or

threatening a person for voting or attempting to vote by, among other things,

frightening or promising reprisal against such a person for voting or attempting

to vote. See Nat'l Coal. on Black Civic Participation v. Wohl, 498 F. Supp. 3d 457,

477 (S.D.N.Y. 2020), reconsideration denied, No. 20 CIV. 8668 (VM), 2020 WL

6365336 (S.D.N.Y. Oct. 29, 2020). "[C]ourts have concluded that conduct putting

14

others 'in fear of harassment and interference with their right to vote' constitutes intimidation 'sufficient' to support a Section 11(b) claim." Id. at 480 (citations omitted); cf. Damon v. Hukowicz, 964 F. Supp. 2d 120, 149 (D. Mass. 2013) ("'Intimidation' means putting a person in fear for the purpose of compelling or deterring his or her conduct.") (citations omitted). Thus, "[t]o establish a claim under Section 11(b), a plaintiff must show that the defendant has intimidated, threatened, or coerced someone for voting or attempting to vote, or has attempted such intimidation, threat, or coercion." Wohl, 498 F. Supp. 3d at 477. For purposes of the VRA, the word "vote" is defined as "all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast with respect to candidates for public office and propositions for which votes are received in an election . . . ." 52 U.S.C. § 10101(e).

As stated above, Fair Fight asserts that Counter-Plaintiffs have failed to state a claim for violation of Section 11(b) of the VRA. Doc. No. [48-1], 24–25. Fair Fight argues that Section 11(b) "by its own terms, does not protect an individual who challenges another person's eligibility to vote or attempts to disqualify

another person from voting." Id. at 25–26. In the alternative, Fair Fight asserts

that "[e]ven if Defendants' efforts to disqualify others from voting were protected

by the VRA . . . Defendants have not plausibly alleged that Fair Fight engaged in

intimidating conduct under the statute." Id. at 27.

In their response in opposition, Counter-Plaintiffs assert that the plain

language and subsequent interpretations of the VRA support their Section 11(b)

Counterclaim and they have plausibly alleged that the Counter-Defendants have

engaged in conduct that could be considered intimidating under Section 11(b).

Doc. No. [64], 9–17.

In reply, Fair Fight notes that Counter-Plaintiffs identify no federal law and

no legal interpretation of Section 11(b) that confers on a litigant "a right to restrict

voting." Doc. No. [71], 5 (emphasis omitted).

Assuming without deciding that the Section 230 "vote dilution" challenges

fall within the voting rights protections of the VRA,[9] the Court is unable to

---

[9] Even if the Court were to consider this issue, the Court notes that while vote dilution can be the basis for a voting rights lawsuit and is a legal principle that is found in the case law, there appears to be an absence of authority that provides a direct example of a case proceeding to the merits in the manner in which Counter-Plaintiffs have framed their Section 11(b) cause of action. In addition, as correctly noted by Counter-Defendants, Counter-Plaintiff's theory of vote dilution is based upon a premise that the

conclude that Counter-Plaintiffs have plausibly alleged that Counter-Defendants have engaged in conduct that could be considered intimidating under Section 11(b). As correctly noted by Counter-Defendants, at bottom, Counter-Plaintiffs "claim Fair Fight itself has intimidated them simply by accusing [Counter-Plaintiffs] of engaging in voter suppression" and filing a lawsuit. Doc. No. [48-1], 27. The accusations cited in the Counterclaim are not plausibly intimidating or threatening (even if they are false, as alleged by

---

Eleventh Circuit and other courts have declined to uphold in other contexts on generalized grievance standing grounds. See Wood v. Raffensperger, 981 F.3d 1307, 1314–15 (11th Cir. 2020) ("To be sure, vote dilution can be a basis for standing. But it requires a point of comparison. For example, in the racial gerrymandering and malapportionment contexts, vote dilution occurs when voters are harmed compared to 'irrationally favored' voters from other districts. By contrast, 'no single voter is specifically disadvantaged' if a vote is counted improperly, even if the error might have a 'mathematical impact on the final tally and thus on the proportional effect of every vote.' Vote dilution in this context is a 'paradigmatic generalized grievance that cannot support standing.'") (citations omitted); see also Wood v. Raffensperger, No. 1:20-CV-5155-TCB, 2020 WL 7706833, at *3 (N.D. Ga. Dec. 28, 2020), aff'd, No. 20-14813, 2021 WL 3440690 (11th Cir. Aug. 6, 2021) (noting that "[c]ourts have consistently found that a plaintiff lacks standing where he claims that his vote will be diluted by unlawful or invalid ballots.") (citations omitted); cf. League of Women Voters of Va. v. Va. State Bd. of Elections, 458 F. Supp. 3d 460, 465–66 (W.D. Va. 2020) ("The fact remains, despite its 'personal' nature, the right to vote—and any interest in protecting that right from dilution or debasement—is no different as between any other eligible Virginian, and indeed, any other eligible American. It may be personal, but it is also universal to those that qualify for the franchise. Prospective Intervenors do nothing to identify how the removal of the witness signature requirement risks the dilution of their vote in any way that is different from the rest of this state's electorate.") (citations omitted).

17

Counter-Plaintiffs) and for the reasons stated in the Court's preliminary injunction order (Doc. No. [29]), the Court cannot say that Fair Fight's pending lawsuit (seeking to protect voters from alleged intimidation) lacks a reasonable basis as a matter of law. Cf. Bill Johnson's Rests., Inc. v. NLRB, 461 U.S. 731, 743 (1983) ("Although it is not unlawful . . . to prosecute a meritorious action, the same is not true of suits based on insubstantial claims—suits that lack . . . a 'reasonable basis.' Such suits are not within the scope of First Amendment protection . . . .").

Further, while the emails received by non-party Tommy Roberts (as referenced above), may plausibly be considered intimidating, there are no allegations that those emails were sent by (or otherwise connected to) Fair Fight.[10] The emails state on their face that they were sent by individuals named Steven Kearns and Phil Atio, non-parties to the pending lawsuit and individuals who are not alleged to have any association or relationship with Fair Fight.[11] Counter-Plaintiffs do not explain how the actions of these non-parties

---

[10] The implied temporal connection (in terms of the emails being sent one day after Ms. Abrams' CNN interview), without more, does not plausibly establish that Fair Fight engaged in intimidation of the named Counter-Plaintiffs.

[11] The unredacted versions of the emails are in the record at Doc. No. [40-1].

18

intimidated True the Vote, Inc., Mark Williams, and Ron Johnson, the named Counter-Plaintiffs. As the Court noted in its prior order concerning injunctive relief, the 2020 election season fomented a "highly divided—and often outright dangerous—environment." Doc. No. [29], 26. Yet, how third-party actors may have reacted to Fair Fight's actions is not directly attributable to Fair Fight without clearer, plausible connections/allegations in the pleadings.

### B.   Motion to Amend the Counterclaim

In their Motion to Amend the Counterclaim, Counter-Plaintiffs seek to: (1) remove Counts 1–4 of the original counterclaim and assert them as defenses; (2) add James Cooper as a Counter-Plaintiff; and (3) add Stacey Abrams as a Defendant. Doc. No. [89], 2. Counter-Plaintiffs assert the absence of undue delay and the absence of bad faith, as well as the need to allow for the "justice" contemplated in Rule 15(a)(2). Id. at 3.

In opposition, Counter-Defendants assert that the pending Motion to Amend is untimely and futile. Doc. No. [91], 5.[12] More specifically, Counter-

---

[12] Counter-Defendants also assert prejudice arguments based upon the Suggestion of Mootness filed by Counter-Plaintiffs (Doc. No. [81]) and the potential for having file a new Motion to Dismiss and otherwise restart the briefing process. As indicated above, it appears to the Court that the mootness arguments have been withdrawn and the

Defendants assert that the pending motion is untimely based upon the fully briefed Motion to Dismiss. Id. at 6. Counter-Defendants state that there "is no good reason for [Counter-Plaintiff's] decision to wait until after briefing had closed on [the] motion to dismiss before seeking to amend their counterclaims." Id. Counter-Defendants further assert futility on the ground that the proposed counterclaim continues to fail to state a plausible claim for relief. Id. at 9.

In reply, Counter-Plaintiffs acknowledge that their proposed amended counterclaim is "only futile if this Court grants [Counter-Defendants'] motion to dismiss." Doc. No. [98], 3. Counter-Plaintiffs state: "[i]f this [C]ourt grants Plaintiffs' motion to dismiss, the amended counterclaim and additional Defendant to that counterclaim will be necessarily dismissed." Id.

As indicated above, the Court deems it proper to grant the Motion to Amend for the limited purpose of removing Counts 1 through 4. As to Count 5, the Motion to Amend rises and falls on the question of futility of amendment. Here, Counter-Plaintiffs have conceded futility of amendment in the event that

---

previously-filed Motion to Dismiss remains pending for a merits ruling. Accordingly, no additional consideration is given to the prejudice arguments asserted by Counter-Defendants.

the Motion to Dismiss the original counterclaim is due to be granted as to Count 5. As the Court has determined that the original Motion to Dismiss is due to be granted for failure to state a claim as to Count 5, the pending Motion to Amend Counterclaim is **DENIED** as it appears that even with the proposed amendment, the Section 11(b)/VRA claim would still be subject to dismissal for failure to state a claim upon which relief can be granted.

IV.    **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the Motion to Dismiss Defendants' Counterclaims (Doc. No. [48]) as to Count 5. The motion is **MOOT** as to Counts 1–4 due to amendment and **TO THE EXTENT NOT MOOT, GRANTED**. To this regard, no counterclaims remain pending in this civil action.

The Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Leave to File Counterclaim (Doc. No. [89]). More specifically, the Motion is **GRANTED** for the limited purpose of removing Counts 1–4 of the original counterclaim (Doc. No. [40]) and reasserting/relabeling said counts as affirmative defenses in an amended answer. For purposes of perfecting the record, **IT IS ORDERED** that Defendants shall revise and refile an Amended Answer that conforms to the above-stated rulings within **TEN DAYS** of the entry

of this Order. The Motion is **DENIED** on the ground of futility as to the Section 11(b)/VRA claim (previously referred to as Counterclaim/Count 5) and the proposed addition of new parties.

For purposes of perfecting the record, the Court **DIRECTS** the Clerk to strike the Amended Counterclaim at Doc. No. [82] as such was filed without leave of Court.[13]

**IT IS SO ORDERED** this 17th day of August, 2021.

_____
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**

---

[13] To be clear, the Answer at Doc. No. [82] stands subject to the revision instructions referenced herein. The Court only strikes the Counterclaim at Doc. No. [82].

22