**PERKINSCOie**

700 13th Street, NW
Suite 800
Washington, D.C. 20005-3960

T. +1.202.654.6200
F. +1.202.654.6211
PerkinsCoie.com

December 18, 2020

Marc Erik Elias
MElias@perkinscoie.com
D. +1.202.434.1609
F. +1.202.654.9126

Kristi L. Royston
Gwinnett County Voter Registration and Elections Office
75 Langley Drive
Lawrenceville, GA 30046
voterregistration@gwinnettcounty.com

Dear Gwinnett County Elections Officials:

In recent days voter challenges under O.C.G.A. § 21-2-230 have been filed in counties across Georgia demanding that officials in your position take action against the voting rights of thousands of registered individuals (the "Targeted Voters"). These purported challenges are not well founded. Should a similar challenge be filed in this County, any action your office might take to impede the casting of regular ballots by any Targeted Voter would be in violation of both Georgia and federal law. Should the County deny Targeted Voters their right to cast regular ballots, we will not hesitate to initiate legal action against you to protect lawful Georgia voters against these partisan attacks.

Probable cause does not exist to support these challenges under O.C.G.A. § 21-2-230 because the challenges are based on purported analysis of the United States Postal Service's National Change of Address ("NCOA") database. NCOA "matching" is notoriously unreliable, and on its own cannot provide the basis for a lawful challenge to a voter's eligibility under Georgia law. Moreover, under federal law, the County is prohibited from invalidating voter registration on the basis of this type of broad challenge to residency at this point in the election cycle. This was the conclusion of a Georgia court that addressed a similar challenge to the eligibility of voters in Fulton County in October, a mere month before the November general election. *See Schmitz v. Fulton Cnty. Bd. of Registration & Elections*, 2020CV339337 (Super. Ct. Ga. Oct. 1, 2020). The present challenges come after voters have already begun to cast ballots in the runoff election. Any entertainment of them would be incredibly inappropriate and, indeed, unlawful.

NCOA data is not an accurate measure of an individual's eligibility to vote. In fact, a federal judge recently recognized that Georgia's prior reliance on this data to remove individuals from the voter rolls likely resulted in mistaken cancellations of lawful, eligible voters. *See* Order, *Black Voters Matter Fund v. Raffensperger*, No. 1:20-CV-04869-SCJ (N.D. Ga. Dec. 16, 2020), ECF 63 at 30. But even if the NCOA database accurately tracked which individuals have moved—and it does not—the information still would fail to reliably determine whether individuals are eligible to vote at the address where they are registered.

December 18, 2020
Page 2

While the place that a person receives significant mail, such as personal bills, may be evidence of the person's residency for voter registration purposes, O.C.G.A. § 21-2-217(15), both the Election Code and federal law enumerate legitimate reasons that individuals may change their mail address, even out of state, without forfeiting their eligibility to vote. These reasons include: moving for temporary purposes, § 21-2-217(a)(2); moving to engage in government service, § 21-2-217(a)(11); and intending to move without actually moving, § 21-2-217(a)(9). *See also* 52 U.S.C. § 20302(a)(1) (providing for voting by absent uniformed voters and overseas voters); O.C.G.A. § 21-2-216(e) (permitting a citizen who begins residence in another state within 30 days of an election to vote in Georgia if the person is not admitted to vote in the new state).

Thus, any voters who temporarily relocated during the pandemic to be closer to family or care for someone ill, or who moved for a few months to take college classes, or to work a summer job, or for any other number of perfectly valid reasons, may request to receive mail at an address other than where they registered to vote without forfeiting their right to vote the county where they are registered. NCOA data makes no mention of why any individual requested a change of address, which would be critical for any threshold determination of the voter's eligibility. There is simply nothing irregular or unusual about voting while outside of one's voting jurisdiction; indeed, the availability of absentee voting accommodates exactly that. *See* O.C.G.A. § 21-2-380(b).

Precisely because NCOA data is so often unreliable and inaccurate, federal law ***prohibits*** the removal of individuals from voter registration lists unless strict precautions are followed. And what is forbidden in the registration context—restricting the right to vote based on alleged change-of-address information alone—certainly cannot supply probable cause for a challenge under O.C.G.A. § 21-2-230. Section 8(d) of the National Voter Registration Act ("NVRA") expressly provides that "[a] State ***shall not remove*** the name of a registrant from the official list of eligible voters in elections for Federal office on the ground that the registrant changed residence ***unless***" it follows the procedures set out therein, which require that: (1) the State receive written confirmation from the voter of change of address, or (2) the voter fails to respond to a postcard notice, and also fails to vote in at least two subsequent federal general election cycles. 52 U.S.C.A. § 20507(d) (emphasis added). Because these challenges have not identified a single voter who has confirmed a change of address in writing to the State or received official notice from the State and failed to vote in two subsequent general elections, there is no basis for impeding their right to vote.

Section 8(c) of the NVRA provides an additional, independent prohibition on restricting the voting rights of Targeted Voters this close to the January 5 run-off elections for U.S. Senate. Section 8(c) requires that "[a] State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C.A. § 20507(c)(2)(A). This section of the NVRA has been interpreted to apply not just to regular voter list maintenance programs, but also to voter challenges like those sought here. For example, a North Carolina federal court recently reviewed voter challenges across four counties and found that, where a county's removal of voters "lack[s] individualized inquiry," rests on "generic

December 18, 2020
Page 3

evidence" such as mass mailings, and occurs within 90 days of a federal election, it violates Section 8(c) of the NVRA. *N.C. State Conf. of NAACP v. Bipartisan Bd. of Elections & Ethics Enf't*, 1:16CV1274, 2018 WL 3748172, at *6-*7 (M.D.N.C. Aug. 7, 2018).

A Georgia court has already reached an identical conclusion. *See Schmitz* (denying as not required by Georgia law and prohibited by the NVRA a request for immediate hearings on mass registration and voter challenges brought on the basis of alleged change-of-residency data). So have other federal courts. *See Mont. Democratic Party v. Eaton*, 581 F. Supp. 2d 1077, 1082 (D. Mont. 2008) ("Because the federal [NVRA] makes it illegal to deny an elector his or her vote based on a change of address, subject to limited exceptions not implicated here, if Montana county election officials are required, or even allowed, to compel an elector challenged on the basis of change-of-address information to prove anything, there is a violation of federal law."). For this very reason, rather than litigate a challenge case, Hancock County recently entered into a consent decree acknowledging that the NVRA governed its removal of several voters from the voter rolls pursuant to a challenge. *Ga. State Conf. of NAACP v. Hancock Cnty. Bd. of Elections & Registration*, 5:15-CV-00414 (CAR), 2018 WL 1583160, at *1 (M.D. Ga. Mar. 30, 2018) (granting joint consent decree requiring Hancock County to follow NVRA procedures for residency-based voter removal and establishing five-year monitoring).

Because elections officials are prohibited by the NVRA from preventing Targeted Voters from voting, the recent challenge efforts amount to a flagrant attempt at voter intimidation that is itself precluded by federal law. *See* 18 U.S.C. § 594 (criminalizing acts intended to intimidate voters and dissuade them from voting in a federal election); 52 U.S.C. § 20511(1) (criminalizing acts intended to intimidate any person for attempting to register to vote in a federal election); 52 U.S.C. § 10307(b) (prohibiting any person from intimidating voters in participating in election, whether or not such intimidation was intended). County elections officials must not be complicit in this effort.

To avoid costly and unnecessary litigation, I respectfully request that you immediately reject any challenge to registered voters on the basis of alleged change-of-residency and, should such a challenge be filed in your County, permit Targeted Voters to cast a regular ballot in the upcoming run-off elections.

Very truly yours,

Marc Erik Elias

MEE

Perkins Coie LLP

Confidential                                                                                                    Def TTV 1457

Ex. B to Defs.' Statement of Facts