United States District Court
Northern District of Georgia
Gainesville Division

| | |
|---|---|
| **Fair Fight, Inc., John Doe,** and **Jane Doe**, <br><br> *Plaintiffs* and *Counter-Defendants*, <br> v. <br><br> **True the Vote, Inc., Catherine Engelbrecht, Derek Somerville, Mark Davis, Mark Williams, Ron Johnson, True the Vote, Inc.,** and **John Does 1-10**, <br><br> *Defendants* and *Counter-Plaintiffs*, <br><br> **Fair Fight Action, Inc.,** <br> *Counter-Defendants*. | Civ. No. 2:20-cv-00302-SCJ <br><br> Hon: Steve C. Jones |

**Defendant True the Vote, Inc.'s Amended Responses to Plaintiffs' Second Requests for Production**

Pursuant to Federal Rule of Civil Procedure 34, Defendant True the Vote, Inc. ("TTV") responds to Plaintiffs' Second Requests for Production.

# General Objections

1. Defendant TTV objects to these requests to the extent that they purport to

**Def. TTV Am. Resp. to 2d RFP.**                    1

Ex. H to Defs.' Statement of Facts

call for the production of documents/information that: (a) contain privileged attorney-client communications; (b) constitute attorney work product; (c) disclose the mental impressions, conclusions, opinions, or legal theories of any attorneys or other representatives of the Plaintiffs; (d) were prepared in anticipation of litigation; or (e) are otherwise protected from disclosure under applicable privileges, immunities, laws, or rules.

2. Defendant TTV objects to these requests to the extent that they are vague, not limited in scope, unreasonably broad and burdensome, or beyond the scope of either category of permissible discovery under Fed. R. Civ. P. 26(b)(1).

3. Defendant TTV objects to the instructions accompanying the requests to the extent that they purport to impose obligations beyond those imposed by the Federal Rules of Civil Procedure, or any order promulgated by this Court.

4. Defendant TTV objects to discovery requests that are not proportional to the needs of the case and that are not "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

5. Defendant TTV objects to requests for information the benefit of which is outweighed by its lack of importance in resolving the issues at stake in this case,

**Def. TTV Am.
Resp. to 2d RFP.**                                    2

the amount in controversy, the parties' relative access to relevant information, the parties' resources, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1). Consistent with this rule, Defendant TTV does not produce multiple copies of a communication, e.g., where one email chain has multiple communications, earlier included ones are not produced as separate documents.

6. By responding to these requests, Defendant TTV does not concede that any of the documents requested are relevant to a claim or defense or the subject matter of this action, or are admissible at the trial thereof, or that any person identified in the responses has documents relevant to this action. Defendant TTV reserves any and all objections as to competency, relevance, materiality, privilege, admissibility, or any other grounds on which an objection may be made. Defendant TTV expressly reserves the right to object to further discovery into the subject of these requests. Any response to a request that inadvertently discloses privileged documents/information is not intended to and shall not be deemed or construed to constitute a waiver of any privilege or right of Defendant TTV. Insofar as a response to a request may be deemed to be a waiver of any privilege

or right, such waiver shall be deemed to be a waiver limited to that particular response only.

7.     Defendant TTV objects to Plaintiffs' discovery requests to the extent that they seek to require him to produce documents or information not in its care, custody, or control or to answer on behalf of other parties.

8.     Defendant TTV states that trial preparation and factual investigation are ongoing. Defendant TTV's responses to Plaintiffs' discovery requests are based on information known to Defendant TTV at this time, and Defendant TTV will supplement its responses appropriately if more documents are deemed responsive. Defendant TTV reserves the right to make reference at trial or any proceeding in this or any other action to facts or documents not identified in these responses, the existence or relevance of which is later discovered by Defendant TTV or its counsel.

6.     Subject to and without waiving any of the foregoing General Objections, which are hereby incorporated into each specific response, Defendant TTV (a) makes further objections in response to individual requests and (b) makes the required good-faith attempt to fulfill the duty to provide all responsive information

**Def. TTV Am. Resp. to 2d RFP.**                4

readily available without undue labor and expense.

7.     Defendant TTV objects to producing individuals' personal information, including emails and phone numbers, based upon privacy and relevancy.

## Requests for Production

**Request for Production No. 11:** All documents you consulted or referred to, or that otherwise relate to, your Answers to Plaintiffs' Second Set of Interrogatories to Defendant True the Vote, Inc.

**Response:** Produced.

**Request for Production No. 12:** All communications with any Targeted Voters.

**Response:** True the Vote had no communications with any Targeted Voters and therefore has no responsive communications in its care, custody, or control.

**Request for Production No. 13:** All communications with the Taliaferro County challenger, Joe Martin, including but not limited to all communications with or involving the email address joe@dancingpines.org.

**Response:** Emails previously produced. On December 21, 2020 sent a letter to Taliaferro County officials withdrawing Mr. Martin's challenge. This letter is

produced here as Def. TTV 1833 in case it cannot easily be retrieved in TTV's previous production. *See also* Defendant True the Vote's Response to Second Set of Interrogatories, Response No. 11. Otherwise, True the Vote has no responsive communications in its care, custody, or control.

**Request for Production No. 14:** All communications regarding the accuracy of the challenge lists.

**Response:** Previously produced. Defendant True the Vote notes that the communications with Mr. Martin were the only communications with any challenger regarding the accuracy of the challenge lists. Otherwise, True the Vote has no responsive communications in its care, custody, or control.

**Request for Production No. 15:** All communications regarding Targeted Voters who had not changed their residence, had moved temporarily, or were otherwise still eligible to vote in Georgia.

**Response:** Produced, to the extent True the Vote communicated with or about Mr. Martin's challenges he separately submitted to Taliaferro County. See Defendant True the Vote's Response to Second Set of Interrogatories, Response No. 11. Otherwise, True the Vote had no communications regarding challenged

voters who had not changed their residence, had moved temporarily, or were otherwise still eligible to vote in Georgia and therefore has no further responsive communications in its care, custody, or control.

**Request for Production No. 16**: All documents relating to instances of voter fraud or attempted voter fraud identified as a result of the Georgia Elector Challenges.

**Response:** Defendant True the Vote does not make any determination of voter fraud. As noted in Response No. 11 to Plaintiff's Second Set of Interrogatories, Mr. Martin communicated with James Cooper and True the Vote after he separately submitted his three challenges. As a result of his submission, Taliaferro County officials determined that Ms. Melba Ann Carmichael did not live in Taliaferro County but had submitted an absentee ballot there.

As noted in Response No. 12 to Plaintiff's Second Set of Interrogatories, True the Vote would not expect to, and did not, receive results of challenges from any county who chose to pursue the challenges submitted. Therefore, True the Vote does not have any responsive documents in its care, custody, or control.

**Request for Production No. 17:** All documents relating to any other elector challenges that you were involved in that were filed in Georgia in the six months leading up to the November Election, including lists of challenged voters, correspondence with individual challengers, and correspondence to and from County officials regarding the challenges.

**Response:** True the Vote was not involved in any other elector challenges in Georgia in the six months leading up to the November election and therefore has no responsive documents in its care, custody, or control.

**Request for Production No. 18:** All documents and communications relating to True the Vote's "Election Integrity Hotline" as described in your responses to Interrogatory Nos. 2 and 3, including but not limited to all documents and communications surrounding the launch of the hotline, follow-up with users of the hotline, "vetted reports," and follow-up with "the appropriate authorities charged with investigating such claims" as described in your response to Interrogatory No. 3.

**Response:** Produced. Def. TTV 1835 (Redacted portions were tests of the system and not responsive). Defendant True the Vote has produced the record of

**Def. TTV Am.
Resp. to 2d RFP.**                                    8

all hotline contacts relevant to Georgia during the timeframe of the Run-off Election. The Election Integrity Hotline was launched nationwide before the November general election and simply continued during the Run-off Election in Georgia. Defendant True the Vote's Responses to Interrogatory Nos. 2 and 3 did not make that timeline clear. Defendant True the Vote objects to the production of documents relative to the Election Integrity Hotline's launch on the grounds such production is beyond the scope of this litigation.

None of these contacts resulted in the need for True the Vote to follow up or report the contact information to the appropriate authorities. Some of the contacts were general or vague complaints regarding receiving non-solicited absentee ballots. *See, e.g.*, Contact from Walter Bryant. Other contacts had more specific information, but made no allegation that the person in question had attempted to vote improperly in Georgia. *See, e.g.*, Contact from Cameron Day. Other contacts were obviously false contacts. *See, e.g.*, Contact from "Donald Trump" (to be clear, Defendant True the Vote never thought President Trump called the Election Integrity Hotline).

The purpose of the Challenges at issue in this case was to ensure that the

**Def. TTV Am.
Resp. to 2d RFP.**                                9

people who were casting ballots in the Run-off election were legally entitled to do so. To that extent the Challenges were trying to prevent "voter fraud" before it happened by working through the process allowed under Georgia law (i.e., presenting challenges to appropriate boards of elections for review, so that board could then follow its own process under Georgia law regarding the challenged voters). The Election Integrity Hotline had a different purpose—gathering information regarding potential voter fraud that had already occurred (e.g., a specific report that an individual personally knew of a person not authorized to vote in Georgia who had submitted an illegal absentee ballot) and reporting verifiable incidents to the appropriate authorities. While True the Vote did report some incidents of alleged voter fraud to authorities, none of those reports involved Georgia voters during the Run-off Election and therefore are beyond the scope of discovery in this matter.

**Request for Production No. 19:** All documents promoting Validate the Vote from your "website, social media, YouTube, radio, online news publications, and Fox News" as described in your response to Request for Production No. 11.

**Response:** True the Vote's website and social media accounts on various

platforms can be found at the following addresses:

https://truethevote.org/

https://www.youtube.com/user/TrueTheVote

https://www.facebook.com/TrueTheVote

https://www.instagram.com/realtruethevote/

The accounts referenced above contain videos and podcasts. Otherwise, True the Vote has produced a spreadsheet with active links to the various online news publications, per counsel's agreement. *See* Def. TTV 1834.

**Def. TTV Am. Resp. to 2d RFP.**         11

Ex. H to Defs.' Statement of Facts

Dated: June 18, 2021

/s/ Courtney Kramer
Courtney Kramer, GA No. 483608
ckramer@bopplaw.com

Courtney Kramer, Of Counsel
THE BOPP LAW FIRM, PC
821 Atlanta St.
Roswell, GA 30075
Telephone: (770) 715-2646
Facsimile: (812) 235-3685
*Local Counsel for Defendants*

Respectfully Submitted,

James Bopp, Jr.,* IN # 2838-84
 jboppjr@aol.com
Jeffrey P. Gallant,* VA # 46876
 jgallant@bopplaw.com
Courtney Turner Milbank,* IN# 32178-29
 cmilbank@bopplaw.com
Melena Siebert,* IN # 35061-15
 msiebert@bopplaw.com
THE BOPP LAW FIRM, PC
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434
Facsimile: (812) 235-3685
*Lead Counsel for Defendants*
**Admitted Pro hac vice*

**Def. TTV Am. Resp. to 2d RFP.**     12

## Certificate of Service

I hereby certify that the foregoing document was served electronically on June 18, 2021, upon all counsel of record via email.

*/s/ Melena S. Siebert*
Melena S. Siebert*
Indiana Bar No. 35061-15
*Counsel for Defendants*
*Admitted Pro hac vice
