United States District Court
Northern District of Georgia
Gainesville Division

| | |
|---|---|
| Fair Fight, Inc., John Doe, and Jane Doe,<br><br>*Plaintiffs,*<br><br>v.<br><br>True the Vote, Inc., Catherine Engelbrecht, Derek Somerville, Mark Davis, Mark Williams, Ron Johnson, James Cooper, and John Does 1-10,<br><br>*Defendants.* | Civ. No. 2:20-cv-00302-SCJ<br><br>Hon: Steve C. Jones |

**Defendant Derek Somerville's Responses and Objections to Plaintiffs' Interrogatories Pursuant to Court Order**

Pursuant to Federal Rule of Civil Procedure 33 and the Court's Order (ECF No. 133), Defendant Derek Somerville responds herein to Plaintiffs' Interrogatories Nos. 1–4; 6–8.

## General Objections

1.     Defendant Somerville objects to these requests to the extent that they

**Def. Somerville**
**Resp. and Obj.**
**to Rog. Ct. Order**                1

purport to call for the production of documents/information that: (a) contain privileged attorney-client communications; (b) constitute attorney work product; (c) disclose the mental impressions, conclusions, opinions, or legal theories of any attorneys or other representatives of the Plaintiffs; (d) were prepared in anticipation of litigation; or (e) are otherwise protected from disclosure under applicable privileges, immunities, laws, or rules.

2. Defendant Somerville objects to these requests to the extent that they are vague, not limited in scope, unreasonably broad and burdensome, or beyond the scope of either category of permissible discovery under Fed. R. Civ. P. 26(b)(1).

3. Defendant Somerville objects to the instructions accompanying the requests to the extent that they purport to impose obligations beyond those imposed by the Federal Rules of Civil Procedure, or any order promulgated by this Court.

4. Defendant Somerville objects to discovery requests that are not proportional to the needs of the case and that are not "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

5. Defendant Somerville objects to requests for information the benefit of which is outweighed by its lack of importance in resolving the issues at stake in

this case, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1). Consistent with this rule, Defendant Somerville does not produce multiple copies of a communication, e.g., where one email chain has multiple communications, earlier included ones are not produced as separate documents.

6. Subject to and without waiving any of the foregoing General Objections, which are hereby incorporated into each specific response, Defendant Somerville (a) makes further objections in response to individual requests and (b) makes the required good-faith attempt to fulfill the duty to provide all responsive information readily available without undue labor and expense.

7. Defendant Somerville objects to producing individuals' personal information, including emails and phone numbers, based upon privacy and relevancy.

## DEFINITIONS

Except as specifically defined below, the terms used in these requests shall be construed and defined in accordance with the Federal Rules of Civil Procedure,

**Def. Somerville
Resp. and Obj.
to Rog. Ct. Order**               3

wherever applicable. Any terms not defined shall be given their ordinary meaning.

1. "Communication" means any transfer of information, whether written, oral, electronic, or otherwise, and includes transfers of information via email, report, letter, text message, voicemail message, written memorandum, note, summary, and other means. It includes communications entirely internal to True the Vote, as well as communications that include or are with entities and individuals outside of that organization.

2. "County" means any county in Georgia, as well as all employees, staff, agents, and representatives of the county, including the county boards of registrar's offices, county registrars, or any other person with a responsibility for conducting or supervising elections in the county.

3. "Date" means the exact day, month, and year, if ascertainable, or, if not, the est available approximation (including relationship to other events).

4. "Describe" means explain with particularity.

5. "Georgia Elector Challenges" means the challenges to voter eligibility of registered Georgia voters in advance of the Run-off Election in which you and True the Vote have been and are involved and which are described, among other

places, in True the Vote's December 18, 2020 Press Release.

**Response/Modification:** Pursuant to this Court's Order, Defendant Somerville has included responses which consider challenges to voter eligibility in advance of the Run-off Election he was involved with independent from True the Vote, Inc.

6. "December 18, 2020 Press Release" means the press release posted on the True the Vote Website on that date, attached hereto as Exhibit A.

7. "Identify," when used in reference to a communication, means to state when and where the communication was made; each of the makers and recipients thereof, in addition to all others present; the medium of communication; and its substance.

8. "Identify," when used in reference to a government agency, firm, partnership, corporation, proprietorship, association, other entity, or person, means to state its, his, or her full name and present or last-known address.

9. "Identify," when used in reference to processes or steps taken by you or others with whom you have worked on the matters at issue in this litigation, means to chronologically detail each and every action taken by any and all entities or

persons, to identify the actor, and to detail how and when that action was or will be taken and for how long.

10. "Including" means "including but not limited to."

11. "Person" means not only natural persons, but also firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, trust groups, and organizations; federal, state, or local governments or government agencies, offices, bureaus, departments, or entities; other legal, business, or government entities; and all subsidiaries, affiliates, divisions, departments, branches, and other units thereof or any combination thereof.

12. "Relating to," "regarding," and their cognates are to be understood in their broadest sense and shall be construed to include pertaining to, commenting on, memorializing, reflecting, recording, setting forth, describing, evidencing, or constituting.

13. "Run-off Election" means the January 5, 2021 Senate Run-off election held in Georgia.

14. "Targeted Voter" or "Targeted Voters" means the registered Georgia voters

who are the subject of the Georgia Elector Challenges.

15. "True the Vote" means the organization that goes by the name of True the Vote, its officers, directors, partners, members, managers, employees, representatives, agents, consultants, or anyone acting on its behalf.

16. "Voter" means any registered voter in Georgia and all persons who may properly register to vote in the state by the close of discovery in this case.

17. "You" and "your" means Defendant Derek Somerville and any of his representatives, agents, or anyone acting on his behalf.

# Interrogatories

**Interrogatory No. 1:** Describe in detail your role or involvement in compiling any list of Targeted Voters for purposes of the Georgia Elector Challenges.

**Response No. 1:** I did not participate in any aspect of compiling True the Vote's list of "Targeted Voters" for their "Georgia Elector Challenges."

Mark Davis and I worked together to compile our own independent challenge lists for the Run-off Election ("**Independent Run-off List(s)**") of voters for volunteers to challenge in the counties in which that volunteer lived. Mark Davis took the primary lead in analyzing the data to include in the Independent Run-off List, but I did review and discuss Mr. Davis' analysis.

I took the lead in finding Georgia voters who were interested in volunteering to serve as challengers in the county in which they lived. I posted some information on Facebook about what Mr. Davis and I were doing with the Independent Run-off Lists and asked people who were interested in serving as challengers to contact me via a private message on Facebook. Once I received a message from a person who was interested in volunteering as a challenger, I would

generally follow up via email with more information and/or with the Independent Run-off List relevant to that voter's county.

**Interrogatory No. 2:** Describe in detail what research, if any, you conducted for purposes of identifying voters to include in the Georgia Elector Challenges.

**Response No. 2:**

As discussed in Response No. 1, Mark Davis took the lead in researching and identifying voters to include on the Independent Run-off Lists. Based upon my review of this research and my discussions with Mr. Davis, I understood the research and identification process to be as follows:

1. Split the input voter data into 3 parts for processing so the databases would not exceed the dbase file size limitation of 2.14 gigabytes.

2. Imported the data into 3 dbase structures with processing fields appended (added) to the structure.

3. Copied the residence addresses into the "COA" (Change of address) fields created for CASS (Coding Accuracy Support System) and NCOA (National Change of Address) processing.

4. Ran CASS & NCOA processing & saved the processing certifications.

5. Created an empty table called "Moved" and imported the records that received an updated address during NCOA processing.

**Def. Somerville**
**Resp. and Obj.**
**to Rog. Ct. Order**            9

6.   Set a relation on the voter registration number into the vote history trailer data and flagged the voters in the "Moved" table who voted in the general election.

7.   Geocoded (assigned latitude & longitude) & digitally mapped the "Moved" table to assign the county of the new address.

8.   Copied out a file of voters who cast ballots in the General Election with changes of address to a new state or to a new county in Georgia more than 30 days before the general and/or the runoff elections. This yielded a file of voters with a change of address to another state, as well as in state voters who, based on the month of their "Move Effective Dates", appeared to have had residency issues when they voted in the General Election, along with voters who voted in the General who appeared to have similar residency issues heading into the Runoff Election.

9.   Removed changes of address to PO Boxes.

10.   Eliminated UOCAVA (Military) voters by matching against the absentee voter data.

11.   Mark Davis sent me a copy of the file so that I could remove as many voters at military bases as possible.

12.   I sent the semi-final challenge list to Mark Davis.

13.   Output a "Final" challenge list removing voters with changes of address prior to June of 2019 as we believed they would have already been through the Secretary of State's NCOA processing, subsequent verification inquiries, and associated list maintenance activities.

14.   Created a report format for printed lists of challenged voters.

15. Output a PDF list for each county.

16. Output an Excel file for each county.

17. Did an SQL query to get a count by county. The final count was 39,141 voters and the average number of challenged voters per county was 246.

18. Mark Davis uploaded the Independent Challenge Lists to Google drive for me to distribute to challengers.

**Interrogatory No. 3:** For any list of Targeted Voters that you had any involvement in compiling, describe the efforts, if any, you made to assess the accuracy of the list.

**Response No. 3:** I, along with Mark Davis, limited the Independent Run-off List to people who had already cast ballots in the general election with residency issues, and/or had voted in the General Election and were in a position to cast ballots in the Run-off Election with residency issues. As my response to Interrogatory No. 2 details, we took steps to remove voters whose changes of address data would more than likely have already been evaluated by the SOS prior to June of 2019, UOCAVA voters, and as many records in the area of military bases as we could.

**Def. Somerville
Resp. and Obj.
to Rog. Ct. Order**　　　　　　　　11

Ex. J Defs.' Statement of Facts

As a quality control measure, I arranged for a company called "Surebill" to independently process the voter file through their NCOA software so that Mr. Davis and I could compare our NCOA processing with theirs. There are two different kinds of NCOA processing. One processes changes of address from the preceding 18 months, and one processes changes of address from the preceding 48 months. Mark Davis always uses the 48 month, but Surebill uses a different software and NCOA data provider, and only has the capability of doing the 18 month version of NCOA. That obviously means there were about 30 months of NCOA changes they could not have replicated. Mark Davis and I communicated back and forth, primarily via email, comparing numbers for changes that did occur within 18 months, and although those numbers did appear similar, we would have preferred to have had someone else with the 48 month capability attempt to replicate our processing.

**Interrogatory No. 4:** Describe in detail any and all assistance provided to you by True the Vote in preparing the Georgia Elector Challenges.

**Response No. 4:** I received no assistance from True the Vote in preparing any challenges.

**Def. Somerville**
**Resp. and Obj.**
**to Rog. Ct. Order**                                12

Ex. J Defs.' Statement of Facts

**Interrogatory No. 6:** Identify and describe in detail all communications you had regarding the accuracy of the Georgia Elector Challenges.

**Response No. 6:** Mark Davis and I had telephone, email, and text communications regarding the steps we took to increase the accuracy of our Independent Run-off List (as described in Response No. 2). As a matter of routine and before litigation was contemplated, I generally deleted emails that contained large excel attachments. I disclosed some of the steps we took to improve the accuracy of the Independent Run-off List on social media and on other communication platforms, like email. When people who were interested in volunteering as challengers responded to my social media posts with questions, I would communicate with them, via private Facebook messages or via email.

Prior to the initiation of this litigation, I deleted some of the communications that would be responsive to this Interrogatory and its related Request for Production. I have produced the responsive documents of communications I still have in my care, custody, or control.

**Interrogatory No. 7:** Identify and describe in detail all communications you had regarding Targeted Voters who were ultimately determined to be residents of

the counties in which they were registered.

**Response No. 7:** I do not recall any communications with any voters on any challenge lists who were ultimately determined to be residents of the counties in which they were registered.

**Interrogatory No. 8:** Identify and describe in detail all communications you had with challengers who withdrew or attempted to withdraw Georgia Elector Challenges submitted in their names, and describe in detail the reasons why those individuals sought to withdraw the challenges.

**Response No. 8:** I do not recall any communications with any challengers who withdrew or attempted to withdraw Georgia Elector Challenges submitted in their names.

I, the undersigned, affirm under the penalties for perjury that the foregoing answers to Plaintiff's Interrogatories are true and correct.

Date: 12/17/21

Derek Somerville

**Def. Somerville
Resp. and Obj.
to Rog. Ct. Order**                14

Ex. J Defs.' Statement of Facts

| | |
|---|---|
| Dated: December 17, 2021 | Respectfully Submitted, |
| /s/ Courtney Kramer<br>Courtney Kramer, GA No. 483608<br>ckramer@bopplaw.com<br><br>Courtney Kramer, of Counsel<br>THE BOPP LAW FIRM, PC<br>821 Atlanta St.<br>Roswell, GA<br>Telephone: (770) 715-2646<br>Facsimile: (812) 235-3685<br>*Local Counsel for Defendants* | James Bopp, Jr.,* IN No. 2838-84<br>  jboppjr@aol.com<br>Jeffrey P. Gallant,* VA No. 46876<br>  jgallant@bopplaw.com<br>Courtney Turner Milbank,* IN No. 32178-29<br>  cmilbank@bopplaw.com<br>Melena Siebert,* IN No. 35061-15<br>  msiebert@bopplaw.com<br>THE BOPP LAW FIRM, PC<br>1 South 6th Street<br>Terre Haute, Indiana 47807<br>Telephone: (812) 232-2434<br>Facsimile: (812) 235-3685<br>*Lead Counsel for Defendants*<br>*Admitted Pro hac vice |

## Certificate of Service

I hereby certify that the foregoing document was served electronically on December 17, 2021, upon all counsel of record via email.

/s/ *Courtney Kramer*
Courtney Kramer
Georgia Bar No. 483608
*Local Counsel for Defendants*