United States District Court
Northern District of Georgia
Gainesville Division

| | |
|---|---|
| **Fair Fight, Inc., John Doe,** and **Jane Doe**, *Plaintiffs,* v. **True the Vote, Inc., Catherine Engelbrecht, Derek Somerville, Mark Davis, Mark Williams, Ron Johnson, James Cooper,** and **John Does 1-10**, *Defendants.* | Civ. No. 2:20-cv-00302-SCJ<br><br>Hon: Steve C. Jones |

**Defendant Mark Davis' Responses and Objections to Plaintiffs' Interrogatories Pursuant to Court Order**

Pursuant to Federal Rule of Civil Procedure 33 and the Court's Order (ECF No. 133), Defendant Mark Davis responds herein to Plaintiffs' Interrogatories Nos. 1–4; 6–8.

# General Objections

1. Defendant Davis objects to these requests to the extent that they purport to

call for the production of documents/information that: (a) contain privileged attorney-client communications; (b) constitute attorney work product; (c) disclose the mental impressions, conclusions, opinions, or legal theories of any attorneys or other representatives of the Plaintiffs; (d) were prepared in anticipation of litigation; or (e) are otherwise protected from disclosure under applicable privileges, immunities, laws, or rules.

2.   Defendant Davis objects to these requests to the extent that they are vague, not limited in scope, unreasonably broad and burdensome, or beyond the scope of either category of permissible discovery under Fed. R. Civ. P. 26(b)(1).

3.   Defendant Davis objects to the instructions accompanying the requests to the extent that they purport to impose obligations beyond those imposed by the Federal Rules of Civil Procedure, or any order promulgated by this Court.

4.   Defendant Davis objects to discovery requests that are not proportional to the needs of the case and that are not "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

5.   Defendant Davis objects to requests for information the benefit of which is outweighed by its lack of importance in resolving the issues at stake in this case,

**Def. Davis
Resp. and Obj.
to Rog. Ct. Order**                                2

the amount in controversy, the parties' relative access to relevant information, the parties' resources, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1). Consistent with this rule, Defendant Davis does not produce multiple copies of a communication, e.g., where one email chain has multiple communications, earlier included ones are not produced as separate documents.

6. Subject to and without waiving any of the foregoing General Objections, which are hereby incorporated into each specific response, Defendant Davis (a) makes further objections in response to individual requests and (b) makes the required good-faith attempt to fulfill the duty to provide all responsive information readily available without undue labor and expense.

7. Defendant Davis objects to producing individuals' personal information, including emails and phone numbers, based upon privacy and relevancy.

## DEFINITIONS

Except as specifically defined below, the terms used in these requests shall be construed and defined in accordance with the Federal Rules of Civil Procedure, wherever applicable. Any terms not defined shall be given their ordinary meaning.

**Def. Davis
Resp. and Obj.
to Rog. Ct. Order**                     3

Ex. O to Defs.' Statement of Facts

1.	"Communication" means any transfer of information, whether written, oral, electronic, or otherwise, and includes transfers of information via email, report, letter, text message, voicemail message, written memorandum, note, summary, and other means. It includes communications entirely internal to True the Vote, as well as communications that include or are with entities and individuals outside of that organization.

2.	"County" means any county in Georgia, as well as all employees, staff, agents, and representatives of the county, including the county boards of registrar's offices, county registrars, or any other person with a responsibility for conducting or supervising elections in the county.

3.	"Date" means the exact day, month, and year, if ascertainable, or, if not, the est available approximation (including relationship to other events).

4.	"Describe" means explain with particularity.

5.	"Georgia Elector Challenges" means the challenges to voter eligibility of registered Georgia voters in advance of the Run-off Election in which you and True the Vote have been and are involved and which are described, among other places, in True the Vote's December 18, 2020 Press Release.

**Def. Davis**
**Resp. and Obj.**
**to Rog. Ct. Order**                              4

**Response/Modification:** Pursuant to this Court's Order, Defendant Davis has included responses which consider challenges to voter eligibility in advance of the Run-off Election he was involved with independent from True the Vote, Inc.

6. "December 18, 2020 Press Release" means the press release posted on the True the Vote Website on that date, attached hereto as <u>Exhibit A</u>.

7. "Identify," when used in reference to a communication, means to state when and where the communication was made; each of the makers and recipients thereof, in addition to all others present; the medium of communication; and its substance.

8. "Identify," when used in reference to a government agency, firm, partnership, corporation, proprietorship, association, other entity, or person, means to state its, his, or her full name and present or last-known address.

9. "Identify," when used in reference to processes or steps taken by you or others with whom you have worked on the matters at issue in this litigation, means to chronologically detail each and every action taken by any and all entities or persons, to identify the actor, and to detail how and when that action was or will be taken and for how long.

**Def. Davis**
**Resp. and Obj.**
**to Rog. Ct. Order** 5

10. "Including" means "including but not limited to."

11. "Person" means not only natural persons, but also firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, trust groups, and organizations; federal, state, or local governments or government agencies, offices, bureaus, departments, or entities; other legal, business, or government entities; and all subsidiaries, affiliates, divisions, departments, branches, and other units thereof or any combination thereof.

12. "Relating to," "regarding," and their cognates are to be understood in their broadest sense and shall be construed to include pertaining to, commenting on, memorializing, reflecting, recording, setting forth, describing, evidencing, or constituting.

13. "Run-off Election" means the January 5, 2021 Senate Run-off election held in Georgia.

14. "Targeted Voter" or "Targeted Voters" means the registered Georgia voters who are the subject of the Georgia Elector Challenges.

15. "True the Vote" means the organization that goes by the name of True the

**Def. Davis
Resp. and Obj.
to Rog. Ct. Order**                                   6

Vote, its officers, directors, partners, members, managers, employees, representatives, agents, consultants, or anyone acting on its behalf.

16. "Voter" means any registered voter in Georgia and all persons who may properly register to vote in the state by the close of discovery in this case.

17. "You" and "your" means Defendant Mark Davis and any of his representatives, agents, or anyone acting on his behalf.

# Interrogatories

**Interrogatory No. 1:** Describe in detail your role or involvement in compiling any list of Targeted Voters for purposes of the Georgia Elector Challenges.

**Response No. 1:** I did not participate in any aspect of compiling True the Vote's list of "Targeted Voters" for their "Georgia Elector Challenges."

Derek Somerville and I compiled our own independent challenge lists for the Run-off Election ("**Independent Run-off List(s)**") of voters for volunteers to challenge in the counties in which that volunteer lived. The process and research used to compile the Independent List is described in Response No. 2. After I compiled the Independent Run-off List, it was subdivided by county and uploaded to a Google drive, and my understanding was that the Georgia voters, who volunteered to serve as challengers in the county in which they lived, were given access to the Independent List for their county.

**Interrogatory No. 2:** Describe in detail what research, if any, you conducted for purposes of identifying voters to include in the Georgia Elector Challenges.

**Response No. 2:**

1.      Split the input voter data into 3 parts for processing so the databases would not exceed the dbase file size limitation of 2.14 gigabytes.

2.      Imported the data into 3 dbase structures with processing fields appended (added) to the structure.

3.      Copied the residence addresses into the "COA" (Change of address) fields created for CASS (Coding Accuracy Support System) and NCOA (National Change of Address) processing.

4.      Ran CASS & NCOA processing & saved the processing certifications.

5.      Created an empty table called "Moved" and imported the records that received an updated address during NCOA processing.

6.      Set a relation on the voter registration number into the vote history trailer data and flagged the voters in the "Moved" table who voted in the general election.

7.      Geocoded (assigned latitude & longitude) & digitally mapped the "Moved" table to assign the county of the new address.

8.      Copied out a file of voters who cast ballots in the General Election with changes of address to a new state or to a new county in Georgia more than 30 days before the general and/or the runoff elections. This yielded a file of voters with a change of address to another state, as well as in state voters who, based on the month of their "Move Effective Dates", appeared to have had residency issues when they voted in the General Election, along with voters who voted in the General who appeared to have similar residency issues heading into the Runoff Election.

9. Removed changes of address to PO Boxes.

10. Eliminated UOCAVA (Military) voters by matching against the absentee voter data.

11. Sent a copy of the file to Derek Somerville so he could remove as many voters at military bases as he could.

12. Received back the semi-final challenge list from Derek Somerville.

13. Output a "Final" challenge list removing voters with changes of address prior to June of 2019 as we believed they would have already been through the Secretary of State's NCOA processing, subsequent verification inquiries, and associated list maintenance activities.

14. Created a report format for printed lists of challenged voters.

15. Output a PDF list for each county.

16. Output an Excel file for each county.

17. Did an SQL query to get a count by county. The final count was 39,141 voters and the average number of challenged voters per county was 246.

18. Uploaded the challenge data to Google drive for Derek Somerville to distribute to challengers.

**Interrogatory No. 3:** For any list of Targeted Voters that you had any involvement in compiling, describe the efforts, if any, you made to assess the accuracy of the list.

**Def. Davis
Resp. and Obj.
to Rog. Ct. Order**           10

**Response No. 3:** I, along with Derek Somerville, limited the Independent Run-off List to people who had already cast ballots in the general election with residency issues, and/or had voted in the General Election and were in a position to cast ballots in the Run-off Election with residency issues.  As my response to Interrogatory No. 2 details, we took steps to remove voters whose changes of address data would more than likely have already been evaluated by the SOS prior to June of 2019, UOCAVA voters, and as many records in the area of military bases as we could.

As a quality control measure, Derek Somerville arranged for a company called "Surebill" to attempt to replicate the NCOA results I got on the voter file in November, but we ran into a fairly major obstacle.  There are two different kinds of NCOA processing. One processes changes of address from the preceding 18 months, and one processes changes of address from the preceding 48 months.  I always use the 48 month, but Surebill uses a different software and NCOA data provider, and only has the capability of doing the 18 month version of NCOA. That obviously means there were about 30 months of NCOA changes they could not have replicated. I recall we had some back and forth comparing numbers

for changes that did occur within 18 months, and although those numbers did appear similar, I would have preferred to have had someone else with the 48 month capability attempt to replicate our processing.

Since the Run-off Election, I have continued to analyze data related to Georgia voters. This data indicates that some voters who appeared to have residency issues (i.e., moved to another county more than 30 days before the election) voted in the General Election. I provided this data analysis to the Georgia Secretary of State in May of 2021 ("**SOS Analysis**").

Out of the 39,141 voters on our Independent Run-off List, 26,854 had changes of address within the state of Georgia, and so far since the runoff, 9,950 voters (37.05%) have updated their voter registration addresses to the same addresses shown in the NCOA data provided to the USPS when they moved originally. These voters have provided post-election, self-confirmation to the Secretary of State or their county's board of elections that the information on the Independent List was accurate at the time I compiled it.

In addition, 18,202 voters of the 26,854 voters (67.8%) who submitted a change of address within the State of Georgia voted in the Run-off election. Of

those 67.8% of voters, the data indicates 3,556 voters (19.5%) cast ballots for the Run-off Election in their old county, but have since updated their registration addresses to the same address they gave the USPS when they moved, which is in a different county than the one in which they voted.

Since the Run-off Election, the Georgia Secretary of State has removed 1,486 of the voters on the Independent Run-off List. Of those, 403 (27%) voted in the Run-off Election.

Justin Gray, an investigative reporter for Channel 2 (WSBTV) in Atlanta filed an open records request for the SOS Analysis I provided to the Georgia Secretary of State. On that SOS Analysis were two names of Georgia voters who filled out an NCOA card indicating they had moved to a Georgia county different than the one in which they were registered to vote in. The first, Mark Buerkle, admitted he moved from Gwinnett County to Fulton County but asserted he turned in a Fulton County ballot in Fulton County. However, the vote history and absentee voter data show the ballot he returned was actually a Gwinnett County ballot he had mailed to him at his home in Fulton County. The second, Jon Stout, admitted that he had moved and voted in his former county.

https://www.wsbtv.com/news/local/voter-analyst-claims-thousands-georgians-voted-wrong-county/N6LQWGPDOZAJFN34H7BGTPONEU/

**Interrogatory No. 4:** Describe in detail any and all assistance provided to you by True the Vote in preparing the Georgia Elector Challenges.

**Response No. 4:** I received no assistance from True the Vote in preparing any challenges.

**Interrogatory No. 6:** Identify and describe in detail all communications you had regarding the accuracy of the Georgia Elector Challenges.

**Response No. 6:** Derek Somerville and I had telephone, email, and text communications regarding the steps we took to increase the accuracy of our Independent List (as described in Response No. 2) and disclosed some of the steps we took to improve the accuracy of the Independent List on social media and on other communication platforms, like email.

Prior to the initiation of this litigation, I deleted some of the communications that would be responsive to this Interrogatory and its related Request for Production. I have produced the responsive documents of communications I still have.

**Def. Davis**
**Resp. and Obj.**
**to Rog. Ct. Order** 14

**Interrogatory No. 7:** Identify and describe in detail all communications you had regarding Targeted Voters who were ultimately determined to be residents of the counties in which they were registered.

**Response No. 7:** I do not recall any communications with any voters on any challenge lists who were ultimately determined to be residents of the counties in which they were registered.

**Interrogatory No. 8:** Identify and describe in detail all communications you had with challengers who withdrew or attempted to withdraw Georgia Elector Challenges submitted in their names, and describe in detail the reasons why those individuals sought to withdraw the challenges.

**Response No. 8:** I do not recall any communications with any challengers who withdrew or attempted to withdraw Georgia Elector Challenges submitted in their names.

I, the undersigned, affirm under the penalties for perjury that the foregoing answers to Plaintiff's Interrogatories are true and correct.

Date: 12/14/2021

*Mark Davis* (signature)

Mark Davis

Dated: December 14, 2021

/s/ Courtney Kramer
Courtney Kramer, GA No. 483608
ckramer@bopplaw.com

Courtney Kramer, of Counsel
THE BOPP LAW FIRM, PC
821 Atlanta St.
Roswell, GA
Telephone: (770) 715-2646
Facsimile: (812) 235-3685
*Local Counsel for Defendants*

Respectfully Submitted,

James Bopp, Jr.,* IN No. 2838-84
  jboppjr@aol.com
Jeffrey P. Gallant,* VA No. 46876
  jgallant@bopplaw.com
Courtney Turner Milbank,* IN No. 32178-29
  cmilbank@bopplaw.com
Melena Siebert,* IN No. 35061-15
  msiebert@bopplaw.com
THE BOPP LAW FIRM, PC
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434
Facsimile: (812) 235-3685
*Lead Counsel for Defendants*
**Admitted Pro hac vice*

## Certificate of Service

I hereby certify that the foregoing document was served electronically on December 14, 2021, upon all counsel of record via email.

*/s/ Courtney Kramer*
Courtney Kramer
Georgia Bar No. 483608
*Local Counsel for Defendants*