Page 1

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF GEORGIA

GAINESVILLE DIVISION

-----------------------------------)
FAIR FIGHT, INC., SCOTT BERSON,     )
JOCELYN HEREDIA, and JANE DOE,      )
                                    )
                 Plaintiffs,        )
v.                                  ) Case No.
                                    ) 2:20-CV-00302-SCJ
                                    )
TRUE THE VOTE, INC.,                )
CATHERINE ENGELBRECHT,              )
DEREK SOMERVILLE, MARK DAVIS,       )
MARK WILLIAMS, RON JOHNSON,         )
JAMES COOPER, and JOHN DOES 1-10,   )
          Defendants.               )
-----------------------------------)

DEPOSITION OF MARK WILLIAMS

APPEARING REMOTELY

September 23rd, 2021

9:00 a.m.


Reported by: Eileen Mulvenna, CSR/RMR/CRR


_____

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

Ex. P to Defs.' Statement of Facts

Page 2

1             REMOTE VIDEOTAPED DEPOSITION of

2   MARK WILLIAMS, a witness on behalf of Defendant in

3   the above-titled action, held on Thursday, September

4   23, 2021, commencing at approximately 9:00 a.m.

5   (Eastern Time), before Eileen Mulvenna, CSR/RMR/CRR,

6   Certified Shorthand Reporter, Registered Merit

7   Reporter, Certified Realtime Reporter, and Notary

8   Public of the State of New York.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Ex. P to Defs.' Statement of Facts

Page 3

```
 1   A P P E A R A N C E S:
 2
 3   JACOB SHELLY, ESQUIRE
     Attorneys for Plaintiff
 4   ELIAS LAW GROUP
     10 G Street, NE, Suite 600
 5   Washington, DC  20002
     202.968.4490
 6   jshelly@elias.law
 7   -and-
 8   TORRYN TAYLOR RODGERS, ESQUIRE
     PERKINS COIE LLP
 9   505 Howard Street, Suite 1000
     San Francisco, California 94105-3204
10   415.344.7000
11   -and-
12   MICHELLE L. McCLAFFERTY, ESQUIRE
     LAWRENCE & BUNDY LLC
13   1180 West Peachtree Street, Suite 1650
     Atlanta, Georgia 30309
14   404.400.3350
15
16   COURTNEY KRAMER, ESQUIRE
     Attorneys for Defendants
17   THE BOPP LAW FIRM
     1 South Sixth Street
18   Terre Haute, Indiana 47807-3510
     812.232.2434
19   ckramer@bopplaw.com
20
21   ALSO PRESENT:
22   Kenzie Guerrero, Videographer
```

Ex. P to Defs.' Statement of Facts

9/23/2021                Fair Fight, Inc. et al. v. True the Vote, et al.                Mark Williams

                                                                            Page 4

 1                        I N D E X
 2    WITNESS            EXAMINATION BY                    PAGE
 3    MARK WILLIAMS
 4                        MS. TAYLOR                        7
 5
 6                      E X H I B I T S         PAGE
 7    Exhibit 1    Bates Nos. OPSEC 0054,        16
                   E-mail Chain
 8    Exhibit 2    Bates Nos. Def Williams       25
                   0759-780, E-mail Chain
 9    Exhibit 3    No Bates numbers, Responses   27
                   Interrogatories
10    Exhibit 4    Bates Nos. Def. Coooper       29
                   0160-161, Text Messages
11    Exhibit 5    Bates Nos. Def Williams       39
                   0613, Invoice
12    Exhibit 6    Bates Nos. Def Williams       43
                   0745-749, E-mail Chain
13    Exhibit 7    Bates Nos. OPSEC 0043-44,     54
                   E-mail Chain
14    Exhibit 8    Bates Nos. Def William        58
                   0708-709, E-mail Chain
15    Exhibit 9    Bates Nos. OPSEC 0055-56,     68
                   E-mail Chain
16    Exhibit 10   Bates Nos. Def Williams       71
                   0878, E-mail Chain
17    Exhibit 11   Bates Nos. Def Williams       72
                   0926-927, E-mail Chain
18    Exhibit 12   Bates Nos. OPSEC 0001-8,      76
                   12/21/20 Letter
19    Exhibit 13   Bates Nos. OPSEC 0038-40,     84
                   E-mail Chain
20    Exhibit 14   Bates Nos. Def Williams       86
                   0298-300, E-mail Chain
21    Exhibit 15   Bates Nos. Def Williams       93
22                 0907, E-mail Chain

Page 5

```
 1                   E X H I B I T S, CON'T        PAGE
 2    Exhibit 16    Bates Nos. Def. Cooper          99
                    0181-182, E-mail Chain
 3    Exhibit 17    Bates Nos. OPSEC 0052-53,      103
                    E-mail Chain
 4    Exhibit 18    Bates Nos. Def Williams        108
                    0718, E-mail Chain
 5    Exhibit 19    Bates Nos. Def Williams        113
                    0855, 12/17/20 Letter
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
```

Ex. P to Defs.' Statement of Facts

Case 2:20-cv-00302-SCJ   Document 155-19   Filed 05/16/22   Page 6 of 19

9/23/2021          Fair Fight, Inc. et al. v. True the Vote, et al.          Mark Williams

Page 6

1          THE VIDEOGRAPHER:  This is Tape No. 1

2      in the videotaped deposition of Mark Williams

3      in the matter of Fair Fight, Inc., et al.,

4      Plaintiffs, v. True the Vote, et al.,

5      Defendants, and Fair Fight Action, Inc.,

6      Counterdefendants, in the United States

7      District Court for the Northern District of

8      Georgia, Gainseville Division.  Case

9      No. 2:20-cv-00302-SCJ.

10          This deposition is being held remotely

11      by Zoom videoconferencing, physical recording

12      in Culpeper, Virginia, on September 23, 2021.

13      The time is 9:08 a.m., Eastern Time.

14          My name is Kenzie Guerrero.  I'm the

15      legal videographer from Digital Evidence

16      Group.  The court reporter is Eileen Mulvenna

17      in association with Digital Evidence Group.

18          Will counsel please introduce

19      themselves for the record.

20          MS. TAYLOR:  Torryn Taylor with

21      Perkins Coie on behalf of the plaintiffs.

22          MS. McCLAFFERTY:  Michelle McClafferty

Ex. P to Defs.' Statement of Facts

Page 7

1          with Lawrence & Bundy, also on behalf of

2          plaintiffs.

3                    MR. SHELLY:  Jacob Shelly with Elias

4          Law Group with plaintiffs.

5                    MS. KRAMER:  Courtney Kramer with Bopp

6          Law Firm on behalf of the defendants.

7                    THE VIDEOGRAPHER:  Will the court

8          reporter please swear in the witness.

9     MARK WILLIAMS,

10       having been duly sworn by Eileen Mulvenna,

11       a Notary Public of the State of New York,

12       was examined and testified as follows:

13    EXAMINATION

14    BY MS. TAYLOR:

15         Q.     Good morning, Mr. Williams.

16         A.     Good morning.

17         Q.     My name is Torryn Taylor, as I

18    mentioned, and I'm an attorney with the plaintiff in

19    this case today.

20                Can you please state your address for

21    the record.

22         A.     3312 Canary Trail, Duluth, Georgia

Page 8

```
 1   30096.

 2          Q.     Have you ever been deposed before?

 3          A.     Yes.

 4          Q.     When were you last deposed?

 5          A.     It's been many years.  I don't even

 6   recall when or what.  It was probably a divorce case

 7   or something.

 8          Q.     And just the one time?

 9          A.     A couple of times.

10          Q.     A couple of times.  Okay.

11                 Before we get started today, I'm just

12   going to go over some ground rules, if that's okay

13   with you, just to make sure that we're on the same

14   page because each deposition runs a little

15   differently.

16          A.     Absolutely.

17          Q.     Great.

18                 Just a reminder, as you probably know

19   from your previous deposition, all your testimony

20   you give today is under oath, just as if you were to

21   be testifying in court.

22                 For the benefit of everyone and the
```

Ex. P to Defs.' Statement of Facts

Case 2:20-cv-00302-SCJ   Document 155-19   Filed 05/16/22   Page 9 of 19

9/23/2021            Fair Fight, Inc. et al. v. True the Vote, et al.            Mark Williams

Page 9

```
 1   court reporter, especially since we're all remote,

 2   if you could make your answers audible so that the

 3   court reporter can transcribe it.  Head nods and

 4   shakes and stuff won't show up on the transcript.

 5              Does that make sense?

 6        A.    Yes.

 7        Q.    Okay.  Great.

 8              If you could allow me to finish my

 9   question before answering just so there's no

10   interruptions, that will also be for the benefit of

11   the court reporter and allow us to have a clean

12   transcript, that would be great.

13              And then from time to time, your

14   attorney may make an objection, which is totally

15   allowed.  And you are to answer the question

16   regardless, unless she specifically instructs you

17   not to answer.

18              Does that make sense?

19        A.    Yes.

20        Q.    Great.

21              And if at any point you don't

22   understand a question that I'm asking, please just
```

9/23/2021          Fair Fight, Inc. et al. v. True the Vote, et al.          Mark Williams

Page 10

```
 1    let me know and I'll try and rephrase it so that it

 2    makes sense, so that it's clear to you.  And if you

 3    do answer the question, I'll assume that you've

 4    understood the question; is that fair?

 5          A.    Yes.

 6          Q.    And then, lastly, if at any time you

 7    want to take a break -- we'll try and take semi

 8    regular breaks throughout, but if there's any point

 9    you need to take a break, just let me know and I can

10    find a place to stop and happy to take one.  The

11    only request I have is if there's a question

12    currently pending, that you answer the question

13    first before we go on to break, but after that, any

14    time is fine.

15                Is that cool?

16          A.    Yep, very good.

17          Q.    Great.  So let's get started.

18                Did you prepare at all to testify

19    today?

20          A.    No.

21          Q.    Okay.  And are you on any medication

22    of any sort that might affect your ability to
```

Ex. P to Defs.' Statement of Facts

Page 11

1    testify today?

2          A.      Blood pressure and stuff like that,

3    but nothing that should affect me in any way.

4          Q.      Nothing that affects your memory or

5    anything like that?

6          A.      No.

7          Q.      Great.

8                  So you mentioned you live in Duluth,

9    Georgia; is that correct?

10         A.      Yes.

11         Q.      Is that in Gwinnett County, Georgia?

12         A.      Yes.

13         Q.      How long have you lived there?

14         A.      Gwinnett County, almost all my life.

15         Q.      And what do you do for a living?

16         A.      Printing.

17         Q.      And in what capacity?  Can you

18   elaborate on that a little.

19         A.      It's a family-owned business, Printing

20   Trade Company.  We do printing.

21         Q.      And Printing Trade Company is the name

22   of the business?

9/23/2021                Fair Fight, Inc. et al. v. True the Vote, et al.                Mark Williams

Page 19

```
 1   little bit more a little later on, but can you just

 2   describe for me at a very high level your

 3   involvement with True the Vote after this e-mail.

 4        A.     I met with Gregg.  And he explained

 5   that they were trying to -- they needed to print the

 6   letters and explained the job to me.  And I told him

 7   what we can do and things along those lines.  So

 8   they were bringing that to me.

 9        Q.     When you say "letters," are you

10   referring to the challenge letters that True the

11   Vote issued in the January runoff election?

12        A.     Correct.

13        Q.     And who did you generally

14   communicate -- during the scope of this printing

15   project that you were doing with True the Vote, who

16   did you communicate with?

17        A.     I believe it was almost always Gregg.

18   I believe that's correct.

19        Q.     Did you have any other interactions

20   with Catherine Engelbrecht?

21        A.     I spoke with her on the phone a few

22   times, but I think that's about it.
```

Ex. P to Defs.' Statement of Facts

9/23/2021          Fair Fight, Inc. et al. v. True the Vote, et al.          Mark Williams

Page 21

1          A.          Met Mark [inaudible] Derek Somerville,

2    I think.

3          Q.          Do you recall working with anyone else

4    at True the Vote during this time?

5          A.          Not -- no, I don't.

6          Q.          How about anyone else at OPSEC?

7          A.          At where?

8          Q.          OPSEC, which was Gregg Phillips'

9    company.

10         A.          No.  No, not at all.

11         Q.          When you were generally communicating

12   with these people, you said mostly you were

13   interacting with Gregg Phillips for this project,

14   was that mostly over e-mail?  Or how were you

15   communicating?

16         A.          It was almost all phone calls just

17   about.  And we didn't have a lot of interaction,

18   just -- it was basically just a customer/vendor

19   relationship.

20         Q.          Okay.  What -- can you broadly

21   describe what those -- what types of customer/vendor

22   interactions you're talking about?

Ex. P to Defs.' Statement of Facts

Page 22

 1          A.       Well, they brought the project here

 2   and we discussed it.   And then once we did, then we

 3   produced the job and got it to them.

 4          Q.       So what did True the Vote ask you to

 5   do with regard to compiling these challenge lists?

 6          A.       They sent us lists and we printed

 7   them.   They sent us the list -- well, they sent us

 8   the individual letters, is what they sent us, files

 9   with the individual letters, and we printed them and

10   gave them the copies.

11          Q.       So you printed the letters and then

12   gave them back to True the Vote?

13          A.       Yes.

14          Q.       Did you do anything else?

15          A.       Not that I recall.

16          Q.       Okay.   Why did you agree to work with

17   True the Vote?

18          A.       Well, as I said, it was a

19   customer/vendor relationship.   And when they told me

20   that they were trying to -- that they had intentions

21   of working to challenge a lot of the votes and

22   things, I introduced them to a couple of people,

Case 2:20-cv-00302-SCJ   Document 155-19   Filed 05/16/22   Page 15 of 19

9/23/2021              Fair Fight, Inc. et al. v. True the Vote, et al.              Mark Williams

Page 23

```
 1   which was Ron Johnson and James Cooper.  And then it

 2   went from there, so that was it.

 3          Q.     Okay.  Did you reach out to anyone to

 4   ask them to become a challenger on behalf of True

 5   the Vote?

 6          A.     Not that I recall.

 7          Q.     Okay.  But you did reach out to James

 8   Cooper and to Ron Johnson?

 9          A.     Correct, to introduce them to Gregg

10   and his group.

11          Q.     Okay.  And do you know what Ron

12   Johnson and James Cooper did for True the Vote?

13          A.     I wasn't involved in that part, so not

14   really.

15          Q.     You have no idea?

16          A.     No idea.

17          Q.     When you introduced them, what were

18   you -- what did you think you were introducing them

19   for?

20          A.     For their connections to people all

21   across the state, that they might be able to help

22   them make connections across the state.
```

Ex. P to Defs.' Statement of Facts

Case 2:20-cv-00302-SCJ   Document 155-19   Filed 05/16/22   Page 16 of 19

9/23/2021          Fair Fight, Inc. et al. v. True the Vote, et al.          Mark Williams

Page 24

1          Q.     Connections for what?

2          A.     To -- I guess to do the challenges.  I

3    just knew that both of these guys were real big in

4    the party and stuff and held positions and things

5    like that.  So I just assumed that they would be

6    able to help them be introduced to people and

7    things.  So I introduced them to them.

8          Q.     Did True the Vote -- or did Gregg ask

9    you to reach out to anybody you might know who might

10   be able to do that?

11         A.     No.  He described what they were

12   doing.  And I thought there was a couple people that

13   might be able to help him, so I just introduced

14   them.

15         Q.     So how did you reach out to Mr. Cooper

16   and to Mr. Johnson in order to introduce them to

17   Mr. Phillips and True the Vote?

18         A.     To the best of my recollection, it was

19   phone calls.

20         Q.     What did you tell them?

21         A.     That I had somebody that they probably

22   should meet and have a discussion with.

Ex. P to Defs.' Statement of Facts

9/23/2021          Fair Fight, Inc. et al. v. True the Vote, et al.          Mark Williams

Page 35

1        Q.     Did you conduct any research yourself

2    to help identify voters for the challenge list?

3        A.     No, not that I recall.

4        Q.     Okay.  Did you participate at all in

5    preparing the challenge list?

6        A.     Not that I recall.

7        Q.     Other than printing them?

8        A.     Yes.  We were just the printer,

9    correct.

10       Q.     But you didn't help with compiling the

11   lists themselves that you were printing?

12       A.     Not that I recall.  Outside the

13   capacity of what you might have seen -- you were

14   just discussing, that text message, that kind of

15   thing.

16       Q.     Just so that I'm clear, we're talking

17   about lists and letters.

18              Were you printing like lists of names

19   in addition to actual challenge letters or one or

20   the other?

21       A.     No.  We were just printing the

22   letters.  And the data was the names that were going

Ex. P to Defs.' Statement of Facts

9/23/2021               Fair Fight, Inc. et al. v. True the Vote, et al.          Mark Williams

Page 63

```
 1   the Vote?

 2         A.      The Gwinnett County was challenged.

 3         Q.      You challenged in Gwinnett County?

 4         A.      Yes.

 5         Q.      Or, rather, you were the challenger

 6   for Gwinnett County?

 7         A.      I was the challenger for Gwinnett

 8   County.

 9         Q.      Okay.  How many voters did you

10   challenge?

11         A.      I believe the number was somewhere

12   around 32,000, if I'm not mistaken.

13         Q.      How many of those challenges were

14   successful?

15         A.      None.

16         Q.      What would you consider to have been

17   success?

18         A.      For them to be vetted.

19         Q.      So it's your understanding that none

20   of them were vetted?

21         A.      It was told to me by the elections

22   board that they had no intentions of vetting them at
```

Ex. P to Defs.' Statement of Facts

Page 64

1   all.

2          Q.     Do you -- strike that.

3                 How did True the Vote assist you in

4   preparing your challenge?

5          A.     They provided the data and then that

6   was basically it.  They prepared the data and we had

7   a discussion about that.  That was about it.

8          Q.     What was that discussion?

9          A.     Just that there would be the challenge

10  to the people that had moved and things along those

11  lines and running against NCOA lists, that that was

12  the challenges that we'd be making.

13         Q.     Can you elaborate on that for me.

14                What was your understanding of how the

15  list of challenged voters for Gwinnett County was

16  compiled?

17         A.     My understanding was that they matched

18  it with NCOA lists.  And I'm very familiar with

19  those, and that made a lot of sense to do it that

20  way.

21         Q.     Just so that we're clear for the

22  record, when you say "NCOA," you're referring to the

Ex. P to Defs.' Statement of Facts