Page 1

1                 UNITED STATES DISTRICT COURT

2                 NORTHERN DISTRICT OF GEORGIA

3                    GAINESVILLE DIVISION

4     _____

5     FAIR FIGHT, INC., SCOTT BERSON,

6     JOCELYN HEREDIA, AND JANE DOE,

7          Plaintiffs,

8        v.                              Civ. No.

9     TRUE THE VOTE, INC., CATHERINE     2:20-cv-00302-

10    ENGELBRECHT, DEREK SOMERVILLE,     SCJ

11    MARK DAVIS, MARK WILLIAMS, RON

12    JOHNSON, JAMES COOPER, AND

13    JOHN DOES 1-10,

14         Defendants.

15    _____

16              VIDEOTAPED DEPOSITION OF

17                  JOCELYN HEREDIA

18    DATE:       Friday, October 15, 2021

19    TIME:       2:00 p.m.

20    LOCATION:   Remote Proceeding

21                871 Third Street, Apartment 1545

22                Atlanta, GA 30318

23    REPORTED BY:  Deidra Musick Nash, Notary Public

24    JOB No.:     4845630

25

Ex. U to Defs.' Statement of Facts

Page 2

1                    A P P E A R A N C E S

2        ON BEHALF OF PLAINTIFFS FAIR FIGHT, INC., ET AL:

3              CHRISTINA FORD, ESQUIRE (by videoconference)

4              Elias Law Group

5              10 G Street Northeast, Suite 600

6              Washington, DC 20002

7              cford@elias.law

8

9              UZOMA NKWONTA, ESQUIRE (by videoconference)

10             Elias Law Group

11             10 G Street Northeast, Suite 600

12             Washington, DC 20002

13             unkwonta@elias.law

14

15       ON BEHALF OF DEFENDANT TRUE THE VOTE, INC., ET AL:

16             COURTNEY KRAMER, ESQUIRE (by videoconference)

17             Bopp Law Firm

18             104 Marietta Street Northwest, Suite 100

19             Atlanta, GA 30303

20             ckramer@bopplaw.com

21

22       ALSO PRESENT:

23             Todd Davis, Videographer (by videoconference)

24             Bailey Neher, Tech Concierge (by videoconference)

25

Ex. U to Defs.' Statement of Facts

Jocelyn Heredia                                    October 15, 2021
Fair Fight, Inc., Et Al. Vs. True The Vote, Et Al

Page 3

1                        I N D E X

2      EXAMINATION:                                    PAGE

3          By Ms. Kramer                               6

4

5                      E X H I B I T S

6      NO.             DESCRIPTION                     PAGE

7      Exhibit A       Notice of Deposition            10

8      Exhibit B       Responses to Defendants' First

9                      Set of Interrogatories          37

10     Exhibit E       Banks County Election Website   32

11     Exhibit F       Georgia Voter File Excerpt      15

12     Exhibit H       Jocelyn Heredia LinkedIn Profile 39

13     Exhibit J       Georgia Election Code Excerpt

14                     (O.C.G.A. § 21-2-230)           26

15     Exhibit L       U.S.P.S. Change of Address

16                     Confirmation                    42

17     Exhibit N       Georgia Voter Registration Data 51

18

19                    (Exhibits attached.)

20

21           QUESTIONS INSTRUCTED NOT TO ANSWER

22                    PAGE          LINE

23                     63            15

24                     72            15

25                     72            20

Ex. U to Defs.' Statement of Facts

Page 4

1                    P R O C E E D I N G S

2                    REPORTER:  Good afternoon.  My name is

3      Deidra Nash; I am the reporter assigned by Veritext to

4      take the Zoom record of this proceeding.  We are now

5      on the record at 2:00 p.m.  This is the deposition of

6      Jocelyn -- I can't say your last name; I'm sorry --

7      H-E-R-D-I-A [sic] taken in the matter of Fair Fight,

8      Inc., Scott Berson, et al vs. True the Vote, Inc., et

9      al.  This deposition is being digitally recorded on

10     October 15, 2021, at 871 Third Street, Apartment 1545,

11     Atlanta, Georgia 30318.

12                    I am a notary authorized to take

13     acknowledgements and administer oaths in the state of

14     Georgia.  Parties agree that I will swear in the

15     witness remotely, outside of her presence.

16                    Additionally, absent of an objection on

17     the record before the witness is sworn, all parties

18     and the witness understand and agree that any

19     certified transcript produced from the recording,

20     virtually, of this proceeding:

21                         - is intended for all uses permitted

22                         under applicable procedural and

23                         evidentiary rules and laws in the same

24                         manner as a deposition recorded by

25                         stenographer means; and

Ex. U to Defs.' Statement of Facts

                                                          Page 5

1                    - shall constitute written stipulation

2                    of such.

3                    And I also want to say that Todd Davis

4       is our videographer, and Ms. Bailey Neher is the

5       concierge.

6                    And at this time will everyone in

7       attendance, beginning with the taking attorney, please

8       identify yourself for the record.

9                    MS. KRAMER: Courtney Kramer with Bopp

10      Law Firm, representing the defendants.

11                   MS. FORD:  Christina Ford with Elias

12      Law Group, representing the plaintiffs and Ms. Heredia

13      today.

14                   MR. NKWONTA:  Uzoma Nkwonta from Elias

15      Law Group, representing the plaintiffs.

16                   REPORTER:  And Ms. Jocelyn, if you

17      could please identify yourself.

18                   MS. HEREDIA:  Jocelyn Heredia.  I'm a

19      plaintiff.

20                   REPORTER:  Thank you.  Hearing no

21      objections, I will now swear the witness.  Ms.

22      Jocelyn, if you would please raise your right hand.

23      //

24      //

25      //

                                    Ex. U to Defs.' Statement of Facts

Jocelyn Heredia                          October 15, 2021
Fair Fight, Inc., Et Al. Vs. True The Vote, Et Al

Page 6

1      WHEREUPON,

2                          JOCELYN HEREDIA,

3      called as a witness, and having been first duly sworn

4      to tell the truth, the whole truth and nothing but the

5      truth, was examined and testified as follows:

6                          REPORTER:  Thank you so much.  Ms.

7      Kramer, please begin when you're ready.

8                          EXAMINATION

9      BY MS. KRAMER:

10          Q    Thank you for being here today, Ms. Heredia.

11     Did I get your last name -- pronounce that right?

12          A    Yes, you did, actually.

13          Q    Great.  Well, as you know, my name is

14     Courtney Kramer, and I represent the defendants in

15     this case.  I first want to go over a few rules for

16     this deposition, particularly because it's a remote

17     deposition.  Have you ever testified in a deposition

18     before?

19          A    No.

20          Q    Okay.  So this is your first time?

21          A    Yeah.

22          Q    Okay.  Perfect.  So I'll just go over a

23     couple rules, just so you understand how things will

24     work today.  Do you understand that you are under oath

25     today, as if you were in court?

                                   Ex. U to Defs.' Statement of Facts

Jocelyn Heredia                                    October 15, 2021
Fair Fight, Inc., Et Al. Vs. True The Vote, Et Al

Page 7

```
 1          A    Yes.

 2          Q    And during my questions, the court reporter

 3     is going to be taking down what we are saying.  And to

 4     make sure we don't confuse her, let me fully finish a

 5     question, and then in turn, I'll let you fully finish

 6     your answer, just so we don't talk over each other.

 7     Is that fair?

 8          A    That's fair.

 9          Q    Okay.

10          A    That's good.

11          Q    And if at any point, you don't understand a

12     question I'm asking, just let me know, and I can do my

13     best to clarify.  And if you answer a question, I will

14     assume that you understand what I'm asking.  Is that

15     fair?

16          A    That's fair.

17          Q    Okay.  And I received documents from your

18     attorneys prior to today, and I'll be referring to

19     some of them as exhibits.  I will always show them to

20     you before I ask any questions about them.

21               And since the court reporter is here and

22     appearing remotely, please answer audibly to all

23     questions, as the court reporter cannot record head

24     nods or gestures.  Does that sound good?

25          A    Sounds good.
```

Ex. U to Defs.' Statement of Facts

Jocelyn Heredia                           October 15, 2021
Fair Fight, Inc., Et Al. Vs. True The Vote, Et Al

                                                    Page 8

1          Q    Okay.  And are you viewing this deposition

2     by laptop?

3          A    Yes.

4          Q    And did you prepare for this deposition?

5          A    I did prepare.  I spoke to my lawyer

6     yesterday, and I looked over the documents for this

7     case.

8          Q    Okay.  And did you discuss this deposition

9     with anyone other than your attorneys?

10         A    I discussed it with a friend.

11         Q    Okay.  And what did you discuss about this

12    with your friend?

13         A    That I had a deposition today.

14         Q    Was any substance of the nature of the

15    deposition discussed?

16         A    No.

17         Q    Okay.  Thanks for clarifying that.  And do

18    you have any documents with you today or in front of

19    you?

20         A    No.

21         Q    Okay.  Perfect.  And is anyone else in the

22    room with you?

23         A    Yes.

24         Q    Who else is in the room with you today?

25         A    A friend.

                              Ex. U to Defs.' Statement of Facts

Page 9

```
 1                    MS. KRAMER:  Counsel, I would ask that
 2        we have the witness be in a room by herself, just for
 3        the purposes of the deposition --
 4                    THE WITNESS:  Okay.
 5                    MS. KRAMER:  -- if possible.
 6                    MS. FORD:  Jocelyn, is it easy enough
 7        to ask your friend to go to a different room?
 8                    THE WITNESS:  Yeah; they can go to a
 9        different room.
10                    MS. FORD:  Okay.
11                    THE WITNESS:  They're working from
12        home, so give me one second.
13                    REPORTER:  Did we want to go off the
14        record, or just stand by for a second?
15                    MS. KRAMER:  I would just stand by for
16        a second, unless it takes longer than, you know, 30
17        seconds.
18                    REPORTER:  Okay.
19                    THE WITNESS:  Okay.
20        BY MS. KRAMER:
21            Q    Thank you.  And since I'm not in the actual
22        room with you, I'm not able to see what you have in
23        front of you or if someone else enters the room.  Can
24        you let me know if someone does enter the room at any
25        point during this deposition?
```

Ex. U to Defs.' Statement of Facts

Jocelyn Heredia                                          October 15, 2021
Fair Fight, Inc., Et Al. Vs. True The Vote, Et Al

                                                              Page 10

 1          A    Yes.  I can.

 2          Q    Thank you.  And then, Ms. Heredia, do you

 3     understand that you cannot ask your attorney's help to

 4     respond to a particular question that's asked?

 5          A    I understand.

 6          Q    Okay.  And your attorney may object to a

 7     question that I ask, but you should still respond

 8     unless your attorney instructs you not to respond.

 9     Does that make sense?

10          A    That makes sense.

11          Q    Okay.  And finally, if at any time you need

12     a break, just let me know, and we can go off the

13     record for five or ten minutes if that's needed.

14     Hopefully it won't take too long, so that won't be

15     necessary, but if you need a break, just let me know.

16          A    Sounds good.

17          Q    Okay.

18               MS. KRAMER:  And at this time, can we

19     please put up what is marked as Exhibit A?

20               TECH CONCIERGE:  Please stand by.  This

21     is Exhibit A.

22               (Exhibit A was marked for

23               identification.)

24     BY MS. KRAMER:

25          Q    Ms. Heredia, can you see this document?

                                    Ex. U to Defs.' Statement of Facts

Jocelyn Heredia                          October 15, 2021
Fair Fight, Inc., Et Al. Vs. True The Vote, Et Al

                                                    Page 11

1          A    Yes.

2          Q    Do you recognize this document?

3          A    Yes, I do.

4          Q    Okay.  I just want to confirm that you

5     understand that you're appearing today pursuant to

6     this Notice.

7          A    I understand.

8          Q    Great.  Okay.  So I just have some

9     background questions I want to start with.

10               MS. KRAMER:  Bailey, you can take the

11     exhibit off.  Thank you.

12          Q    Ms. Heredia, where is your current address

13     in Georgia?

14          A    It is in Banks County.  It is -- the actual

15     address is 304 Borders Road, Commerce, Georgia 30530.

16          Q    And how long have you resided there for?

17          A    That's a tough question.  Approximately four

18     years.

19          Q    And are you registered to vote from this

20     address?

21          A    Yes.

22          Q    How long have you voted from that address?

23          A    So I can't recall, but I did vote from that

24     address for the presidential election and the -- the

25     special election.

Ex. U to Defs.' Statement of Facts

Page 13

1      Q    Okay.  And when you moved there for your

2   job, did you change your mailing address to reflect

3   where you lived in Atlanta for that job?

4      A    I did.

5      Q    And it was just a temporary job?

6      A    Yes.  At the time it was.

7      Q    So you changed your address with the Postal

8   Service.  And did you change it back once you moved

9   from Atlanta?

10      A    I did not.  Because I still had access to

11   the apartment, so, you know, if I needed the mail, I

12   could get it.  And to be honest, I don't even get that

13   much mail.

14      Q    Did you have intentions of moving back to

15   that address, if you kept your mailing address in

16   Atlanta?

17      A    That's hard to say.  So in March, the

18   COVID-19 pandemic hit, and we were told that we would

19   be remote.  And we were told that we -- that they

20   weren't even sure when we would go back to the office.

21   So, you know, I would be remote until my job told me

22   that I had to be in person.

23      Q    Have you been in person with that job yet?

24      A    In February, yes.

25      Q    Of this year?

Ex. U to Defs.' Statement of Facts

Page 20

1      Q      Why do you think your ballot wasn't counted?

2      A      Oh; okay.

3      Q      Sorry.

4      A      So for the presidential election, I went to

5      vote in person, and I was able to log into the voter

6      registration website and check the status of my -- of

7      my vote, and it said that it was accepted.  And then

8      for the special election, I did the same thing, and I

9      went to the voter registration website, and I checked

10     to see if my vote was accepted, but it was blank.  So

11     I -- to this day, I don't know if it was accepted or

12     not.

13     Q      Okay.  So when you went to go vote, can you

14     tell me a little bit about what happened when you went

15     to go vote, since you're questioning whether your vote

16     was accepted or not?  Just so I can have a little

17     background on that.

18     A      Right.  So for the special election, I went

19     to vote.  I got in line.  And when it was my turn to

20     present my identification to vote, she -- the worker

21     there wrote my name down on a piece of paper, and she

22     said that my vote was being challenged.  And at that

23     point in time, I actually didn't even know what --

24     what my vote being challenged even meant.  And she

25     said that I would have to -- so I asked her for

Ex. U to Defs.' Statement of Facts

Jocelyn Heredia                           October 15, 2021
Fair Fight, Inc., Et Al. Vs. True The Vote, Et Al

Page 21

1    clarification -- "What does that mean?" -- and she

2    said that I would have to cast my vote on paper and

3    provide two forms of identification stating that --

4    two forms of identification with my mailing address

5    that's on my driver's license in order for my vote to

6    count.  So that is why I still don't know if my vote

7    was counted.

8         Q    Okay.  I understand that.  All right.

9              MS. KRAMER:  Bailey, can we please go

10   to the second tab, for the runoff?

11             TECH CONCIERGE:  Yes.  That's what I

12   have pulled up here.

13             MS. KRAMER:  Oh; perfect.

14             TECH CONCIERGE:  2021?

15             MS. KRAMER:  Yeah.  Thank you.

16             TECH CONCIERGE:  You're welcome.

17   BY MS. KRAMER:

18        Q    Okay.  So Ms. Heredia, this is from the

19   voter absentee files, like I said, from the Secretary

20   of State's website.  Just different -- same file,

21   just -- well, different file, just the information for

22   2021 for that runoff.  And if you look under column

23   N --

24        A    Yes.

25        Q    -- if we can expand that.  So your mailing

Ex. U to Defs.' Statement of Facts

Page 22

1    address under here looks as though it's in Decatur,

2    Georgia.  This is just the information that the

3    Secretary of State has on their files.  Did this

4    address match your driver's license at the time when

5    you went to go vote in January?

6         A    No.  That's not the address on my driver's

7    license.

8         Q    Okay.  Do you know why your mailing address

9    would be Decatur on the record for 2021 in January if

10   your registration address is in Banks County?

11        A    I actually don't know.

12        Q    Did you change your address between November

13   2020 and January 2021?  Did you file any change of

14   address forms or have your mailing address be changed

15   to Decatur, Georgia?

16        A    I submitted a change of address in February

17   of 2020.  And then from there, I did not submit any

18   other change of -- changes of address with the

19   U.S.P.S.

20        Q    Did you use this address with someone or an

21   organization different than the U.S.P.S., that would

22   explain why your address here is Decatur?

23        A    I don't recall.  I don't remember.

24        Q    Have you ever lived at this address before?

25        A    Have I lived in North Druid Hills Road?

Ex. U to Defs.' Statement of Facts

Jocelyn Heredia                                October 15, 2021
Fair Fight, Inc., Et Al. Vs. True The Vote, Et Al

Page 23

1       Q     Yes.

2       A     Yes.

3       Q     When?

4       A     In -- when I'm -- so I got the job with AT&T

5     and I moved to Atlanta; and then in March, I moved

6     back to Banks County.

7       Q     Okay.  And this is where you lived for those

8     two months at the beginning of 2020?

9       A     Correct.

10      Q     Okay.  I understand that.  So let's see.  So

11    let me ask you a few questions about what happened

12    when you went to go vote in person.

13            MS. KRAMER:  We can take this exhibit

14    down for the time being, Bailey.  Thank you.

15      Q     So when the election worker told you that

16    your vote was being challenged, can you tell me a

17    little bit about that exchange?  What did he or she

18    give you?  What did they say to you?  And then exactly

19    what happened right after that?

20      A     So -- sorry; can you break that down into,

21    like, one question at a time?

22      Q     Sorry.  Yeah.  So what did the election

23    office say to you when they told you that you were

24    being challenged?

25      A     Okay.  She said to me that my vote was being

Ex. U to Defs.' Statement of Facts

Page 24

1    challenged.  And then I asked her what that meant.

2    And she said that -- I actually don't even know if --

3    I can't even remember if she explained it, but she

4    said that I would need to fill out a paper ballot and

5    provide two forms of identification that had the

6    address that's on my driver's license in order for my

7    vote to count.

8        Q    Okay.  And you provided those two forms of

9    documents?

10       A    Yes.  I did.

11       Q    Okay.  So based on what they told you, if

12   you provided those two forms, then your vote would

13   count.  Correct?

14              MS. FORD:  Objection.  Calls for some

15   speculation.

16              MS. KRAMER:  I'll rephrase.

17   BY MS. KRAMER:

18       Q    Based on what the election worker told you,

19   that you had to give her two forms of identification

20   in order for your vote to count, and then you gave her

21   those forms of identification, do you then believe

22   that your vote would be counted?

23       A    If I relied on what she was telling me, yes.

24   But I -- you know, I would like to see, like -- so for

25   the presidential election, I was able to see actual

Ex. U to Defs.' Statement of Facts

Jocelyn Heredia                              October 15, 2021
Fair Fight, Inc., Et Al. Vs. True The Vote, Et Al

1    I -- I don't -- I don't know.   I didn't overhear

2    anything.

3        Q    Okay.  So they talked to her individually.

4    So when the election worker told you that your vote

5    was being challenged, did they talk to you

6    individually about that as well?

7        A    Yes, they did.  And it wasn't, like,

8    individually, like, in a room or anything.  It was --

9    you know, people are around; there's people close by

10   submitting their ballot in -- on a machine; there's

11   people in line.  But she would keep her voice down

12   when she was speaking to -- to certain people.

13       Q    Okay.  So she didn't, like, raise her voice

14   when she was telling you that you were being

15   challenged.  It wasn't some announcement to the

16   polling location.

17       A    Right.  It wasn't an announcement.  But

18   whoever was voting by paper ballot, they would make --

19   you know, they made me and the other woman step aside

20   as other people were able to cast their ballot on the

21   machine.

22       Q    Okay.  But it was not public why people were

23   voting by paper ballot, based on your experience?

24       A    While I was there, it was not public.  But I

25   do know that my name, along with other challenged

Ex. U to Defs.' Statement of Facts

Jocelyn Heredia                                    October 15, 2021
Fair Fight, Inc., Et Al. Vs. True The Vote, Et Al

Page 32

1    voters' names, were published on the Banks County

2    website.  And it was public information for six

3    months.

4          Q    Okay.

5               MS. KRAMER:  Bailey, can we please pull

6    up Exhibit E?

7               TECH CONCIERGE:  This is Exhibit E.

8               (Exhibit E was marked for

9               identification.)

10   BY MS. KRAMER:

11         Q    Ms. Heredia, does this look familiar to

12   you -- this PDF of the website of Banks County?

13         A    Yes.  That's familiar.  That's what I was

14   referencing --

15         Q    Okay.

16         A    -- in my previous question.

17         Q    Okay, perfect.  So can you tell me who -- or

18   I guess can you clarify:  This is obviously the Banks

19   County website, and not another organization's website

20   that has, I guess, the challenge list that you're

21   referring to?

22         A    Correct.  This is the Banks County website.

23         Q    Okay.  And was this challenge list published

24   on any other website, to your knowledge?

25         A    To my knowledge, no.  But anything that's on

Ex. U to Defs.' Statement of Facts

Page 45

1     believe was also challenged -- well, she casted a

2     paper ballot -- was Asian.

3              I put it -- you know, I connected the two,

4     and I thought that they were -- people of color were

5     being challenged.  And that made me feel intimidated.

6     And like I said, I didn't know what that even was, and

7     I didn't even know if it was legal.  So that made me

8     feel intimidated.

9        Q    But to clarify what you testified earlier,

10    you don't know if the lady that was behind you -- the

11    Asian lady -- if she was being challenged or not.  You

12    just know that she was voting by provisional ballot.

13    Right?

14       A    That's correct.

15       Q    Okay.  And while you were at the polling

16    location, you said that you voted via provisional

17    ballot and this other lady.  About how long would you

18    say that you were at that polling location for?

19       A    Maybe three to four hours.  So I -- when I

20    went to vote, I think I voted early -- actually, I

21    can't remember.  But there was a line and, you know, I

22    got in line to vote; and then when I casted my vote

23    through the paper ballot, I was told that I would have

24    to provide two forms of identification saying that I

25    do live in Banks County.

Ex. U to Defs.' Statement of Facts

Page 48

1      Q    But you didn't feel intimidated or as if you

2   were being targeted until you were told that your vote

3   had been challenged?

4      A    I guess -- so this is a predominantly red

5   county; it's Republican.  I'm in line with non-colored

6   people.  So I felt intimidated from the get-go, as

7   soon as I was there.  Because -- I don't know,

8   like -- I'm the only Hispanic coming to vote at a

9   predominantly Republican county; I'm the only

10  non-white; so from there, I felt intimidated.  And

11  then when they told me my vote was being challenged,

12  that's when I really felt, like, okay, like, my vote

13  is being challenged.  That's when I felt it

14  stronger -- like, okay; you're trying to intimidate

15  me.

16     Q    Did someone intimidate you in line leading

17  up to that point, though?  Did someone say something

18  to you?

19     A    No one said anything to me, but I mean,

20  people can talk with their eyes -- like, can stare.

21  So no one said anything to me, but --

22     Q    So it was a feeling that you had.

23     A    Yeah; was --

24     Q    I'm just trying to understand the events

25  leading up to when you voted.  So no one said anything

Ex. U to Defs.' Statement of Facts

Page 49

1    to you in line that intimidated you or targeted you;

2    right?

3         A    That's correct.

4         Q    Okay.  And it wasn't until you got to go

5    give the election worker your license -- when she told

6    you that your vote was being challenged -- that you

7    felt intimidated, based on the challenge.  Correct?

8         A    Based on the challenge, yes.

9         Q    Okay.  And do you understand that your vote

10   was challenged before you got in line that day?  That

11   didn't occur when you got in line -- it didn't occur

12   when you came up to the election worker.  Right?

13             MS. FORD:  Objection.  It's kind of a

14   vague question.

15             MS. KRAMER:  I'll rephrase.  Sorry,

16   Counsel.

17   BY MS. KRAMER:

18        Q    Based on what you've learned thus far in

19   this citizen challenge process, as you know by the

20   complaint that you are a plaintiff on, are you aware

21   that your vote -- the challenge to the residency of

22   your vote had to have been done prior to you going to

23   vote that day?

24        A    So you're asking me if I understand that the

25   challenge occurred before I was in line?

Ex. U to Defs.' Statement of Facts

Jocelyn Heredia                                          October 15, 2021
Fair Fight, Inc., Et Al. Vs. True The Vote, Et Al

Page 50

1        Q      Yes.

2        A      Okay.  That makes sense.

3        Q      And do you know who challenged you?

4        A      I can't recall their names, but I believe it

5    was two men.

6        Q      Okay.  And do you know anybody else who has

7    been challenged?

8        A      So I don't know anyone by name who was

9    challenged, but after I was challenged, I did

10   research, and I found out that, you know, over 300,000

11   people were challenged.  But I don't know anyone's

12   name who was challenged.

13       Q      Okay.  And I'll get to those questions in a

14   minute, about what happened after that.  In Exhibit B

15   that we previously pulled up -- and we can pull it up

16   again, if you would like -- but you had stated that

17   you felt targeted by your race, and you testified that

18   here; right?  That you felt as if you were targeted by

19   your race, because you were the only Hispanic person

20   in that room that you saw that was being challenged?

21       A      Correct.

22       Q      Okay.

23              MS. KRAMER:  Can we please pull up

24   Exhibit F again?

25              TECH CONCIERGE:  Please stand by.  This

Ex. U to Defs.' Statement of Facts