Page 1

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

-------------------------------x
FAIR FIGHT, INC., SCOTT BERSON,:
JOCELYN HEREDIA, and JANE DOE, :
                               :
            Plaintiffs,        :
                               :
        vs.                    :
                               :          Case No.
TRUE THE VOTE, CATHERINE       :
ENGELBRECHT, DEREK SOMERVILLE, : 2:20-cv-00302-SCJ
MARK DAVIS, MARK WILLIAMS,     :
RON JOHNSON, JAMES COOPER, and :
JOHN DOES 1-10,                :
                               :
            Defendants.        :
                               :
FAIR FIGHT ACTION, INC.,       :
                               :
            Counter-Defendant. :
-------------------------------x


VIRTUAL VIDEOTAPED DEPOSITION OF JAMES COOPER
Wednesday, September 22, 2021
9:02 a.m. Eastern Standard Time

REPORTER:  Dawn A. Jaques, CSR, CLR

_____
DIGITAL EVIDENCE GROUP
1730 M Street, NW, Suite 812
Washington, D.C. 20036
(202) 232-0646

9/22/2021              Fair Fight, Inc. et al. v. True the Vote, et al.              James Cooper

```
                                                        Page 2
 1    APPEARANCES:
 2    On behalf of the Plaintiffs:
           JOEL J. RAMIREZ, ESQ.
 3         JACOB SHELLY, ESQ.
           Elias Law Group LLP
 4         10 G Street, NE
           Suite 600
 5         Washington, D.C.  20002
           PHONE:   (202) 968-4490
 6         EMAIL:   jramirez@elias.law
 7
 8    Also on behalf of Plaintiffs:
           TORRYN TAYLOR RODGERS, ESQ.
 9         Perkins Coie LLP
           505 Howard Street
10         Suite 1000
           San Francisco, California  94105-3204
11         PHONE:  (415) 344-7000
12         EMAIL:  trodgers@perkinscoie.com
13
14    On behalf of the Defendants:
           LESLIE J. BRYAN, ESQ.
15         Lawrence & Bundy LLC
           1180 West Peachtree Street
16         Suite 1650
           Atlanta, Georgia  30309
17         PHONE:   (404) 400-3350
18         EMAIL:   leslie.bryan@lawrencebundy.com
19
20
21
22
```

Case 2:20-cv-00302-SCJ   Document 173-4   Filed 06/06/22   Page 3 of 21

9/22/2021          Fair Fight, Inc. et al. v. True the Vote, et al.          James Cooper

Page 3

1   APPEARANCES (Continued):

2   Also on behalf of the Defendants:

3          JAMES BOPP, JR., ESQ.

4          COURTNEY KRAMER, ESQ.

5          The Bopp Law Firm

6          1 South Sixth Street

7          Terre Haute, Indiana  47807-3510

8          PHONE:  (812) 232-2434   (Mr. Bopp)

9                  (470) 669-0403   (Ms. Kramer)

10         EMAIL:  jboppjr@aol.com

11                 ckramer@bopplaw.com

12

13  VIDEOGRAPHER AND EXHIBIT TECHNICIAN:

14         Kenzie Guerrero, Digital Evidence Group

15

16

17

18

19

20

21

22

```
                                                    Page  4
   1                      I-N-D-E-X
   2   WITNESS:                                  PAGE:
   3   JAMES COOPER
   4        Examination by Mr. Ramirez              8
   5
   6                   E-X-H-I-B-I-T-S
   7   COOPER DEPOSITION EXHIBIT:                 PAGE:
   8   Exhibit 1   December 16-18, 2020, email
                   chain between Caesar Gonzales
   9               and James Cooper, SUBJECT:
                   True the Vote
  10               Def. Cooper 0138 -  0139          34
  11   Exhibit 2   December 15, 2020 - March 29,
                   2021, email chain, SUBJECT:
  12               Draft challenge numbers by
                   county | Tranche One | 407,000
  13               Def Williams 0745 - 0749          56
  14   Exhibit 3   December 16, 2020, email chain
                   SUBJECT: Questions I keep getting
  15               OPSEC 0052 - 0053                 73
  16   Exhibit 4   December 17, 2020, email to
                   James Cooper from Joe Martin
  17               SUBJECT: CHALLENGE to Taliaferro
                   County Registrar VOTERS WHO MOVED
  18               Def. Cooper 0180                  80
  19   Exhibit 5   December 17-20, 2020, email chain
                   SUBJECT: Taliaferro County Missing
  20               voters
  21               Def. Cooper 0183 - 0184           82
  22
```

Page 5

 1                       INDEX (Continued)

 2                       E-X-H-I-B-I-T-S

 3   COOPER DEPOSITION EXHIBIT:                      PAGE:

 4   Exhibit 6    December 20, 2020, email chain
                  SUBJECT: Please Hold on Clair

 5                J Martin challenge letters to
                  Taliaferro County

 6                Def. Cooper 0181 - 0182          90

 7   Exhibit 7    December 18-20, 2020, email chain
                  SUBJECT: URGENT: For Elector

 8                Challenge Project
                  Def. Cooper 0187 - 0188          119

 9   Exhibit 8    December 16, 2020 - March 29,
                  2021, email chain, SUBJECT:

10                Gordon Rhoden (True the Vote)
                  Clarke County

11                Def Williams 0854               124

12   Exhibit 9    December 18-20, 2020, email
                  chain, SUBJECT: List of counties

13                needing signatures

14                OPSEC 0045 - 0047               131

15

16

17

18

19

20

21

22

Page 6

1                    P R O C E E D I N G S

2              THE VIDEOGRAPHER:   This is Tape No. 1

3    in the videotaped deposition of James Cooper, in

4    the matter of Fair Fight, Inc., et al.,

5    Plaintiffs, v. True the Vote, et al., Defendants,

6    and Fair Fight Action, Inc., Counter-Defendants,

7    in the United States District Court for the

8    Northern District of Georgia, Gainesville

9    Division, Case No. 2:20-cv-00302-SCJ.

10             This deposition is being held remotely

11   by Zoom videoconferencing, physical recording in

12   Culpeper, Virginia, on September 22nd, 2021.  The

13   time is 9:02 a.m. Eastern Time.

14             My name is Kenzie Guerrero; I'm a

15   legal videographer from Digital Evidence Group.

16   The court reporter is Dawn Jaques, in association

17   with Digital Evidence Group.

18             Will counsel please introduce

19   themselves for the record?

20             MR. RAMIREZ:   Joel Ramirez for the

21   Plaintiffs.

22             MS. BRYAN:   Leslie Bryan for

9/22/2021          Fair Fight, Inc. et al. v. True the Vote, et al.          James Cooper

Page 7

1   Plaintiffs.

2              MR. BOPP:  Jim Bopp for Defendants.

3              MS. KRAMER:  Courtney Kramer for

4   Defendants.

5              MR. SHELLY:  Jacob Shelly for

6   Plaintiffs.

7              MS. RODGERS:  Torryn Taylor for the

8   Plaintiff.

9              THE REPORTER:  Okay, Mr. Cooper, if

10  you'll raise your right hand to be sworn, please.

11      (The witness was administered the oath.)

12             MR. BOPP:  Joel, do you mind if I ask

13  a procedural question?  You've got 12

14  depositions -- or 12 exhibits.  Did you send those

15  to us, or are we just going to see them?

16             MR. RAMIREZ:  You'll see them here,

17  and they've all been produced by Defendants.

18             MR. BOPP:  Okay, fair enough.

19  Thank you.  You can go ahead, I'm sorry.

20

21

22

Page 8

```
 1   Whereupon,

 2                  JAMES COOPER,

 3        was called as a witness, after having been

 4        first duly sworn by the Notary Public,

 5        was examined and testified as follows:

 6     EXAMINATION BY COUNSEL FOR THE PLAINTIFFS

 7             BY MR. RAMIREZ:

 8        Q    Right, okay.  Okay, let's get started.

 9             Mr. Cooper, as we begin, I just want

10    to go over a few things about this deposition

11    before we dive into the questions.

12             Does that sound fair?

13        A    Yes.

14        Q    And you can hear me okay?

15        A    Yes.

16        Q    Awesome.  Okay, so first, if I ask a

17    question at any point that you don't understand,

18    if you could let me know, and then I'll do my best

19    to clarify the question so that we have a full

20    understanding.  Does that sound good?

21        A    Yes.

22        Q    Okay.  And correlatively, if you
```

Page 9

1    answer the question, I will assume that you

2    understand it.  Does that sound good?

3         A    Yes.

4         Q    Okay.  If at any point you want to

5    take a break, let me know.  I'll try to find a

6    good place to stop.

7              The one exception is that if I'm

8    asking a question, then we have to finish

9    answering that question before we can take the

10   break.  Does that sound good?

11        A    Unless I need advice from the counsel.

12        Q    Sounds good, okay.  And as you know,

13   today a court reporter will be recording this

14   session.  The court reporter can only record

15   audible responses, so I will ask that you answer

16   with an audible yes or no.

17             A head shake, for instance, won't come

18   out on the transcript, so we need audible

19   responses.  Does that sound good?

20        A    Yes, sir.

21        Q    Okay.  And finally, if you could

22   please wait until I'm finished asking a question,

Page 10

1    that would be great, because otherwise we'll be

2    talking over each other; that way we have a clear

3    record for the Court.  Does that sound good?

4          A    Yes.

5          Q    Okay, great.  All right, so let's dive

6    right in.  So first, what did you do to prepare

7    for today's deposition?

8          A    Nothing.

9          Q    Nothing.  Did you meet with anyone

10   regarding this deposition?

11         A    Counsel yesterday.

12         Q    Okay, yesterday.  And have you

13   discussed this deposition with anyone other than

14   your attorneys?

15         A    No.

16         Q    Okay.  All right, so first I want to

17   get a little personal background.

18              How long have you been a resident of

19   Walton County?

20         A    1998.

21         Q    Since '98.  And are you a registered

22   voter in Walton County?

9/22/2021            Fair Fight, Inc. et al. v. True the Vote, et al.            James Cooper

Page 42

1          A     Georgia is an open primary state.  I

2     don't know if they're registered Republican or

3     not.

4          Q     Okay.  Helpful, thank you.

5                People not on the list that you knew

6     through personal connections, I want to clarify

7     that's the case.

8                If you sent an email to someone -- if

9     you sent this email to someone, and that person's

10    name wasn't on this state county list, you knew

11    about that person because you knew them

12    personally; is that correct?

13         A     Yes, unless this was forwarded to

14    someone from someone else.

15         Q     Right, right.  So anyone to whom you

16    sent this email that wasn't on the list, did you

17    know whether those people were registered

18    Republican voters in Georgia?

19         A     I couldn't confirm that, no.

20         Q     Okay.  This email that you sent -- and

21    I'm sure you can see it, it's the bottom of this

22    chain of emails in this exhibit.

Page 43

1        A     Mm-hmm.

2        Q     Is that the first contact you had with

3    each of the prospective challengers that you

4    recruited or attempted to recruit?

5        A     The initial email -- that would be the

6    initial email that I would send, yes.

7        Q     Any person to whom you sent the email,

8    did you have any prior contact with them about the

9    Georgia elector challenges?

10       A     There were some that I only had a

11   phone number for that I had to call to get an

12   email address.

13       Q     Okay.  And in those conversations, did

14   you discuss the elector challenges at all?

15       A     Basically I would outline what we was

16   doing, just like this initial email, and then get

17   the email address and send them the email.

18       Q     Okay.  Did you have a script for any

19   of these calls?

20       A     Basically you're looking at the

21   script.

22       Q     Okay.  Other than the people who

Page 44

1    forwarded this email, and other than yourself, did

2    anyone else send this email to prospective

3    challengers?

4          A    I do not know the answer to that.

5          Q    How many people replied to your email?

6          A    I couldn't recall the answer to that.

7          Q    I'm sorry, just making sure you were

8    finished.

9               Is there a tracker or perhaps a

10   document that would help refresh your memory on

11   that topic?

12         A    I'm sorry?

13         Q    If you can't recall, is there a

14   tracker or is there a document that would help

15   refresh your memory on that topic, the number of

16   people that responded to this email?

17         A    I mean, I turned over all of the

18   emails that I had.

19         Q    Did anyone call or text you in

20   response to receiving this email?

21         A    I do not recall.  I mean, I don't -- I

22   simply just don't remember.

Page 45

1        Q     Okay.  Then maybe a more useful

2   question would be, after you sent this email, sort

3   of what happened next as part of your recruitment

4   process?

5        A     When I sent this email, if they

6   replied -- if they replied back that they wanted

7   to challenge, I would then forward the email to --

8   oh, my goodness, I can't recall all of the emails,

9   but it was a group of emails.  One was to

10  Mark Williams, one was -- I mean, I'd cc

11  Mark Williams in sending it.

12             Because what I'd do is, once they sent

13  in what True the Vote needed as far as their

14  voter ID, their signature, and statement that they

15  could -- you know, they would challenge the voters

16  or the electors in their county, I would then

17  forward that back to Mark Williams, Ron Johnson,

18  Catherine, there was two other gentlemen, and Amy,

19  a lady named Amy, and I believe that was it.

20             So if they replied back to it with

21  permission, I would forward or send their reply,

22  the whole chain, to that group of individuals.

Page 46

1          Q    Is that Amy Holsworth at

2    True the Vote?

3          A    Yes, sir.  Yes, sir, that's correct.

4          Q    How many -- and I know it's been a

5    while, so you may not remember the specific

6    numbers, but sort of generally.

7               When you got responses to this email,

8    how many people gave permission to be challengers

9    or refused?  Do you have a sense of those two

10   groups?

11         A    I honestly couldn't recall.

12         Q    Did more people agree to be

13   challengers than refused?

14         A    I really couldn't -- I really couldn't

15   recall that.  I just -- I didn't have anyone

16   straight out say no.  I had some that preferred

17   not to because of their position in the county.

18         Q    So no one you emailed -- you sent this

19   email -- let me rephrase that.

20              Anyone you sent this email to who

21   refused, did they give reasons for why?

22         A    No, not really, not that I recall.

Page 47

1          Q     Just the ones who said they couldn't

2     because they were -- because of their position in

3     the county?

4          A     Right.  Some county chairs passed it

5     on because they didn't want to do it themselves.

6          Q     Okay.  And why didn't they want to do

7     it themselves?

8          A     They felt like it -- some of them felt

9     like -- well, I mean, I would be assuming things

10    here.  I can't really answer that.

11         Q     Well, my question is did they tell

12    you?  Did they communicate with you in the emails

13    where they refused, did they say why?  Did they

14    tell you why they didn't want to?

15         A     I don't -- I don't recall the emails,

16    to be honest with you.  I mean, this was in

17    November and Dec- -- this was in December.  I

18    mean, this has been almost 10 months ago now or

19    so, so it would be -- I'm sorry, I don't recall.

20              MR. BOPP:  Joel, can we take a short

21    break?  I need one.  Say for five minutes?

22              MR. RAMIREZ:  Yeah, that sounds fine

Page 48

1    to me.

2              MR. BOPP:  Okay, thank you.

3    Appreciate you accommodating me.

4              MR. RAMIREZ:  Of course.

5              THE VIDEOGRAPHER:  Are we going off

6    the record?

7              MR. BOPP:  Yes, please.

8              THE VIDEOGRAPHER:  Okay.  The time is

9    9:52 a.m.  Off the record.

10             (A break was taken.)

11             THE VIDEOGRAPHER:  The time is

12   10:00 a.m.  Back on the record.

13             BY MR. RAMIREZ:

14       Q    Kenzie, can we pull the Exhibit 1 back

15   up, please?  Great, okay.

16             All right, Mr. Cooper, can you hear

17   me?  Can you see the exhibit?

18       A    Yes.

19       Q    Awesome.  All right.

20             Okay, so before we broke, we were

21   talking a little bit about this, and I want to

22   continue with this question.

Page 49

1          Did you maintain a list of the people

2    to whom you sent this email?

3          A    I did not maintain a list here.  There

4    was a shared -- a shared file with the other

5    individuals with True the Vote, Catherine and Amy

6    and Mark.  You know, everybody had a running total

7    of who was challenging in what county.

8          Q    Okay.  So did you maintain a list of

9    the people who responded to this email?

10         A    No, sir, I did not.

11         Q    And that information was not on this

12   shared document you referenced?

13         A    No, sir.  No, sir.

14         Q    Did you send either a list of the

15   names or each name as you sent this email to

16   Mark Williams?

17         A    All I would do is I would -- when I

18   got a response, I would forward the response back

19   to the individuals that I had referenced earlier

20   in the email chain.

21         Q    Got it.  And so you forwarded that to

22   Mark Williams?

Page 50

1         A     It was sent to Mark, Ron, Amy,

2    Catherine, and Ron Johnson.  And there were two

3    other names that I can't recall that I would cc

4    when we would get a response.

5         Q     Got it.  Do you have a sense of how

6    many challengers you recruited in total for the

7    elector challenges?

8         A     I don't recall how many I

9    challenged -- or recruited, no, sir.

10        Q     Were any challengers recruited by

11   someone other than you or Ron Johnson?

12        A     I do not know the answer to that.

13        Q     Okay.  So you mentioned that, after

14   you got a response, you would forward it.

15              Anything else -- did you do anything

16   else after you received a response to this email?

17        A     No, sir.

18        Q     So once you got their permission to be

19   a challenger, you forwarded that, and that was the

20   end of your involvement with the recruitment

21   process?

22        A     Yes, sir.

Page 51

1        Q    Okay.  Did you have any other

2    involvement with the people that you recruited?

3        A    I'm not sure that I understand what

4    you're asking.  Could you rephrase that?

5        Q    Sure.  After forwarding -- so someone

6    who gave permission to be a challenger, you would

7    then forward that permission to the people that

8    you mentioned.  After that, did you have any

9    subsequent communication with the challengers?

10       A    Not that I can recall, unless they

11   sent an email later.

12       Q    Okay.  None of them reached out to you

13   regarding their challenges, like the status of

14   their challenge?

15       A    If they did, I would forward it to Amy

16   and Catherine and them, so I really don't recall.

17       Q    Over what dates did you or

18   True the Vote submit the challenge letters

19   themselves?

20       A    I'm sorry, do what now?

21       Q    Submit the challenge letters

22   themselves.

Page 52

1                    I asked you before the date range for

2     the recruitment effort, when you were recruiting,

3     so I'm asking now the date range over which the

4     actual challenges were submitted.

5          A    I'm not sure what you're asking me

6     there.

7          Q    Okay.  How were the challenges

8     submitted for each of the people you recruited?

9          A    I didn't submit the challenges, so I

10    really -- I can't answer that.  I don't know.

11         Q    So what information did the

12    prospective challengers send you?

13         A    They would send me what was -- what I

14    asked for in that email there.  We would ask -- I

15    would ask for their signature, a statement from

16    them stating that True the Vote had their

17    permission to challenge voters in their county

18    using their name, their voter ID number, and their

19    address.

20         Q    Okay, give me one moment.

21                   Did you attach anything to this email

22    when you sent it to the people to whom you sent