# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA GAINESVILLE DIVISION

| | |
|---|---|
| FAIR FIGHT, INC., SCOTT BERSON, JOCELYN HEREDIA, and JANE DOE,<br><br>Plaintiffs,<br><br>v.<br><br>TRUE THE VOTE, INC., CATHERINE ENGELBRECHT, DEREK SOMERVILLE, MARK DAVIS, MARK WILLIAMS, RON JOHNSON, JAMES COOPER, and JOHN DOES 1-10,<br><br>Defendants. | Civil Action No. 2:20-cv-00302-SCJ |

**PLAINTIFFS' STATEMENT OF ADDITIONAL FACTS**

Pursuant to L.R. 56.1(B)(2)(b), Plaintiffs submit the following statement of additional facts in support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment.

1. Plaintiffs incorporate by reference all facts in their Corrected Statement of Undisputed Material Facts filed with their Motion for Summary Judgment. *See* ECF No. 171.

**Mark Davis and Derek Somerville**

2. Defendants Somerville and Davis prepared challenge lists of roughly 40,000 voters, and organized the submission of those challenge lists in advance of the January 2021 runoff election with full knowledge that the processes under the National Voter Registration Act ("NVRA") precluded the state from removing voters in advance of the election. Ex. 45, Second Excerpt of Derek Somerville First Deposition Transcript ("Somerville I Tr.") 72:19-73:5; 119:12-122:2.

3. Mr. Davis previously recognized an "obvious conflict" between his preferred administration of Georgia's residency requirements and the NVRA, and noted that "existing Georgia case law" cuts against his preferred approach of cleaning the voter rolls by purging voters. Ex. 51, Mark Davis Affidavit ¶ 14.

4. Mr. Davis has also referred to the NVRA as "antiquated," *id.* ¶ 36, and, from his perspective, at odds with ensuring clean voter rolls. Ex. 47, Second Excerpt of Mark Davis First Deposition Transcript ("Davis Tr. I") 112:19-22, 114:10-18.

5. At the time they filed the challenges, Mr. Davis and Mr. Somerville did not know whether it was "possible or feasible" to verify voters' eligibility before the runoff election. Somerville Tr. I at 132:22-133:4; *see also* Davis I Tr. 151:11-13 (admitting that the larger the number of voter challenges, the harder it is for counties to deal with them).

6. And as Mr. Somerville described, "[w]hether or not the challenges were submitted, whether or not they were heard, and whether they were consequential at the county level was tertiary to trying to demonstrate that there are laws in the state that empower citizens to be involved; that our voter file is managed by state officials, and potentially not very well." Somerville Tr. I at 107:7-14.

7. Mr. Somerville stated that he and Mr. Davis believed that "election officials were paying attention to what we were doing, and that our effort might influence discussions," and "the effort was to go straight to the source of the matter and try to draw attention to the voter file." *Id.* at 109:9-12, 109:19-21.

8. After Mr. Davis provided his spreadsheet of alleged non-resident voters to the Secretary of State's office, Ryan Germany, the Secretary of State's General

Counsel, provided a factual and legal "analysis of the issue Mark Davis is pushing regarding in-state moves." Ex. 61, July 13, 2021 R. Germany Email at 1.[1]

9. SOS Counsel Germany explained in his email that "determining whether someone who moved from one county to another should have been eligible to vote" requires applying federal and state law "to each individual's factual scenario. A spreadsheet listing voters' names doesn't come close to meeting that standard." *Id.*

10. SOS Counsel Germany further explained: "The NVRA requires individualized inquiry into each voter's situation. Calling these voters 'illegal voters' without doing that individualized inquiry is a disservice." *Id.*

11. Additionally, 100% of the voters on Mr. Davis's list verified their residency before voting, with specifically (1) 86% of the voters identified by Mr. Davis showed up in person at the location where they were registered, showed their photo ID, executed a voter certificate saying they resided where they are registered, and then were allowed to vote, and (2) the other 14% voted absentee by mail,

---

[1] This evidence is admissible under the government records exception to the hearsay rule because it represents "factual findings that are based upon the knowledge or observations of the preparer of the report" and are based on "a legally authorized investigation." *Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1348 (11th Cir. 2020).

submitting an absentee ballot application saying that they still resided where they were registered. *Id.*

12. In addition to the approximately 40,000 voter challenges that they coordinated, Defendants Somerville and Davis also engaged in the following actions: (1) participated in strategy discussions with Defendants Engelbrecht and OPSEC's Gregg Phillips before True the Vote ("TTV") filed its challenges, Somerville Tr. I 19:5-23:2; Davis Tr. I at 35:3-38:19; 49:12-50:21; (2) attended meetings with TTV and its analyst, Phillips, Somerville Tr. I 29:10-34:17; (3) Mr. Somerville spoke at TTV's challenger meeting to offer "encouragement" to the elector challenge volunteers, Somerville Tr. I at 115:2-117:9; (4) Mr. Somerville edited TTV's public communications about the challenges before they were released, voluntarily including himself and Mr. Davis on TTV's press release announcing the challenges, Somerville Tr. I 37:7-40:7; Ex. 52, Dec. 17, 2020 D. Somerville Text; and (5) when TTV announced its mass challenge program, Mr. Somerville publicly praised the effort, explained that he "collaborated on methodology," and touted that he was "honor[ed] to be a part of the fight." Ex. 53, Dec. 18, 2020 Somerville Facebook Post. Mr. Somerville was also noted as a "fellow . . . challenger" by Ms. Engelbrecht in TTV emails. Ex. 54, Dec. 19, 2020 C. Engelbrecht Email.

**OPSEC and True the Vote Challenge**

13.     Despite multiple requests to OPSEC to produce or explain the underlying data or analysis underpinning its challenge lists, OPSEC refused to do so, both during written discovery and depositions. Specifically, Plaintiffs subpoenaed OPSEC to produce "All documents and communications relating to the methodology you relied upon in producing the Challenge List or any other list of Targeted Voters prepared in connection with the Elector Challenges, and the basis for identifying any of the Targeted Voters," Ex. 59, OPSEC RFP Response No. 3, and "All documents and communications that you reviewed to assess or ensure the reliability or accuracy of the Challenge List or any other list of Targeted Voters that were submitted with the Elector Challenges," Ex. 59, OPSEC RFP Response No. 4. But OPSEC failed to produce documents reflecting the design of its proprietary process. *See* Ex. 11, OPSEC Tr. 114:4-7, ECF No. 156-14 (refusing to produce the algorithm used to create the Challenge List).

14.     Mr. Phillips also refused to describe in any meaningful detail the kind of accuracy that could be expected based on his proprietary process. *See id.* 140:14-141:7.

## Additional SOS Investigation

15. After the November 2020 election, Frances Watson, the Georgia Secretary of State's Chief Investigator, mailed surveys to "voters that had filed a National Change of Address form (NCOA) and also requested an Absentee Ballot emailed to [an] out of state address[.]" Ex. 60, Apr. 6, 2021 F. Watson Email at 1.[2]

16. Ms. Watson received 1,066 responses to the questionnaire. *Id.*

17. From those surveys, 99% of the individuals she identified on the NCOA list remained eligible to vote in Georgia. *Id.*

18. Only 13 voters (1.2195%) reported relocating in the months before the November 2020 elections. *Id.*[3]

19. Most of the surveyed voters forwarded their mail because they were active military, visiting family, temporarily traveling for a job assignment, or for other innocuous reasons, but had not moved. *Id.*

---

[2] This evidence is also admissible under the government records exception to the hearsay rule. *See supra* note 1.

[3] And among those few individuals, "[m]any reported that due to COVID they were having difficulty getting appointments to obtain their driver's license in the new state and believed they needed the new driver's license in order to complete their registration in the new state." Ex. 60, Apr. 6, 2021 F. Watson Email at 1.

Respectfully submitted, this 6th day of June, 2022.

| | |
|---|---|
| Allegra J. Lawrence<br>Georgia Bar No. 439797<br>Leslie J. Bryan<br>Georgia Bar No. 091175<br>Maia Cogen<br>Georgia Bar No. 832438<br>**LAWRENCE & BUNDY LLC**<br>1180 West Peachtree Street, Suite 1650<br>Atlanta, GA 30309<br>Telephone: (404) 400-3350<br>Fax: (404) 609-2504<br>allegra.lawrence-hardy@lawrencebundy.com<br>leslie.bryan@lawrencebundy.com<br>maia.cogen@lawrencebundy.com<br><br>Dara Lindenbaum<br>Georgia Bar No. 980780<br>**SANDLER REIFF LAMB ROSENSTEIN & BIRKENSTOCK, P.C.**<br>1090 Vermont Avenue, NW, Suite 750<br>Washington, DC 20005<br>Telephone: (202) 479-1111<br>Fax: 202-479-1115<br>lindenbaum@sandlerreiff.com | */s/ Uzoma N. Nkwonta*<br>Marc E. Elias\*<br>Uzoma N. Nkwonta\*<br>Christina A. Ford\*<br>Tina Meng\*<br>Marcos Mocine-McQueen\*<br>Joel J. Ramirez\*<br>Jacob Shelly\*<br>**ELIAS LAW GROUP LLP**<br>10 G Street NE, Suite 600<br>Washington, D.C. 20002<br>Telephone: (202) 968-4490<br>melias@elias.law<br>unkwonta@elias.law<br>cford@elias.law<br>tmeng@elias.law<br>mmcqueen@elias.law<br>jramirez@elias.law<br>jshelly@elias.law<br><br><br>*Counsel for Plaintiffs*<br>\*Admitted *pro hac vice* |

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the within and foregoing ***Plaintiffs' Statement of Additional Facts*** with the Clerk of Court using the CM/ECF system, which will automatically send-e-mail notification to all counsel of record.

This 6th day of June, 2022.

*/s/ Uzoma Nkwonta*

Uzoma Nkwonta
*Counsel for Plaintiffs*