# Exhibit 51

AFFIDAVIT OF MARK DAVIS

Comes now, MARK DAVIS, and after being duly sworn makes the following statement under oath:

1. My name is MARK DAVIS.

2. I am over the age of 21 years, and I am under no legal disability which would prevent me from giving this declaration. If called to testify, I would testify under oath to these facts.

3. I am a resident of the State of Georgia

4. I am the President of Data Productions, Inc. I have been working with Georgia voter data for more than thirty (30) years.

5. I create an enhanced version of the Georgia Voter Database which has been used by numerous campaigns and other organizations over the years, primarily for demographic analysis and voter contact efforts.

6. Because of that experience, I have become aware of numerous issues regarding residency and redistricting issues, among other concerns relating to absentee balloting. That awareness has caused me to become an advocate for election integrity for the past twenty (20) years.

7. I have been brought in as an expert witness in a total of five (5) election disputes. New elections were ordered in four (4) of those cases, and thus far there has been no judgment issued in the fifth (5th) case, which was a recent dispute in a Long County case where I discovered double voting in the primary election. That double voting resulted in an investigation conducted by the Secretary of State's office that revealed approximately one thousand (1,000) double votes in approximately 120 counties.

8. When I processed an update to my copy of the Georgia Voter Database I received in August, I saw hundreds of thousands of voters who have name and address records which matched against USPS National Change of Address (NCOA) records. I have been seeing similar numbers for many years.

9. My understanding of the core issue is that every Secretary of State in the union is required to address those issues in accordance with provisions of the 1993 National Voter Registration Act.

10. For more information regarding the provisions of the act, specifically regarding NCOA and changes of address please visit the DOJ website for a summary which can be found at: https://www.justice.gov/.../national-voter-registration...

11. The act permits a Secretary of State to mail a voter with an NCOA match at both their old and new addresses to obtain confirmation of the change of address, but as a practical matter, when that happens that request is often ignored.

12. The only other remedy available to a Secretary of State is to allow the voter's registration to age out of the system for inactivity, also as a proscribed by the act, which can often take years.

13. The relevant state laws governing residency requirements in Georgia can be found in OCGA 21-2-217 and 21-2-218.

14. Although our state laws on residency appear to be clear, there is obvious conflict between the effective implementation and administration of those laws and the 1993 National Voter Registration Act, as well as some existing Georgia case law which has only made the situation worse.

15. It is often argued in Georgia cases that evidence indicating a voter has in fact moved, even many years ago, is insufficient to prove that they intended to establish a new residence.

16. I have only seen judges act on those residency issues when we have succeeded in bringing people into court, have them put on the witness stand under oath, and they have admitted that they did in fact move with the intention of establishing a new residence.

17. The net effect of all that is our Georgia database always contains hundreds of thousands of people who have filed changes of address with the USPS, stating they have moved away from the addresses shown on their voter registration records, and that opens up a "Pandora's box" of potential issues.

18. I have just recently completed the NCOA processing on another copy of the voter database I obtained just this week.

19. It shows two hundred sixty-seven thousand two hundred and fifty- five (267,255) voters who have told the USPS they were moving to an address out of state.

20. Some of those no doubt will be students and people serving in the military who intend to return to Georgia, and they are of course lawfully permitted to vote.

21. I show fourteen thousand nine hundred and eighty (14,980) of those out of state movers voted in our November 3, 2020 General election.

22. The NCOA processing also revealed three hundred twelve thousand nine hundred and seventy-one voters (312,971) who moved within the state of Georgia.

23. Those who moved within a county can still vote in the county and update their registration as required.

24. However, of those who moved within the state, I am showing one hundred twenty-two thousand two hundred and thirty-one (122,231) voters who moved across county lines.

25. Of those I show forty thousand two hundred and seventy-nine who moved across county lines more than thirty (30) days before the election but then cast a ballot in their old county of residence.

26. Again, if those were all temporary relocations, they are eligible, but I think it highly likely the vast majority are not temporary.

27. Georgia law says if these voters moved within thirty (30) days of the election, they were still eligible to vote in their previous county, so I am not counting any records with "Move Effective Dates" provided to the USPS past September 2020.

28. The law also states that if a voter moves more than thirty (30) days before the election, he or she may not lawfully cast a ballot in the county they previously resided in, which makes a great deal of sense.

29. If we think objectively about the reason for the law, a person who moves from county A to county B, but returns to county A to vote will then receive a ballot with election contests on it they have no lawful reason to cast a vote in.

30. So, outside of that thirty day grace period, or a temporary change of address, a person who does not permanently live in a county they cast a vote in has no legal or moral right to cast a vote for sheriff, district attorney, county commission, school board, or in a legislative, congressional, or other district they no longer reside in.

31. In other words, it does not matter if the statewide races are the same, because the others are not, so a person who moves across county lines more than thirty (30) days from the election, and fails to update their registration as required by law, finds themselves in a very untenable position of their own making.

32. They are no longer legally allowed to cast a vote in their previous county, and at the same time are not properly registered to vote in their new county.

33. This unfortunately leaves them in a position where they cannot lawfully cast a ballot at all.

34. It appears to me we probably had tens of thousands of illegal votes cast in our last election. Worse, that has probably been happening for many, many years. I can only imagine how many close election contests have been affected by these issues.

35. It is my hope that, if nothing else comes from the uproar surrounding our recent general election, we might all agree there is an obvious need for reform.

36. First, the antiquated 1993 Voter Registration Act should be amended to create a National Voter Data Clearinghouse, which all states are required to participate in.

37. If a person is a New York snowbird, who spends their winters in Florida, they should still be permitted to vote in their home state.

38. However, the moment they declare Florida as their residence, and register to vote there, they should immediately be removed as a voter in New York.

39. Second, that Clearinghouse should be used to identify voters who are registered or voting in more than one state.

40. Third, I would also suggest we change the way the USPS gathers National Change of Address data and how that is used. If we simply allow them to ask people filing those notices to indicate if their address change is temporary or permanent, and then allow a Secretary of State to act on that information, it would go a long way towards keeping our voter rolls clean.

41. Finally, I suggest we take steps before each election to notify voters with potential residency issues of the need to address any they legitimately may have so all eligible voters are casting lawful ballots for the elected officials who seek to represent them as public servants.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___ day of November, 2020.

_____
Mark Davis



Both voting by mail and voting in person have a long history of trustworthiness in the US. Voter fraud is extremely rare across voting methods.

Source: Bipartisan Policy Center

**Get Accurate Election Info**

