# Exhibit 59

For a statement of your obligations in producing documents under this subpoena see Rules 45(d), (e) and (f) of the Federal Rules of Civil Procedure, which appear on the final page of the subpoena. Documents should be produced within twenty-one (21) days of receiving this subpoena. To make arrangements for electronic production, contact Jacob Shelly at jshelly@perkinscoie.com. Anything that cannot be produced electronically should be produced to ARC, 3104 4th Ave, South, Birmingham, Alabama 35233. The production should be made pursuant to the Definitions and Instructions below.

## DEFINITIONS

Except as specifically defined below, the terms used in these requests shall be construed and defined in accordance with the Federal Rules of Civil Procedure, wherever applicable. Any terms not defined shall be given their ordinary meaning.

1.      "Challenge List" means any list of Targeted Voters submitted in connection with an Elector Challenge.

2.      "Communication" means any transfer of information, whether written, oral, electronic, or otherwise, and includes transfers of information via email, report, letter, text message, voicemail message, written memorandum, note, summary, and other means.

3.      "County" means any county in Georgia, as well as all employees, staff, agents, and representatives of the county, including the county boards of elections

offices, county registrars, or any other person with a responsibility for conducting or supervising elections in the county.

4.      "Date" means the exact day, month, and year, if ascertainable, or, if not, the best available approximation (including relationship to other events).

5.      "December 18, 2020 Press Release" means the press release posted on True the Vote's Website on that date, attached hereto as <u>Exhibit B</u>.

6.      "Document" is synonymous in meaning and scope to the term "document" as used under Federal Rule of Civil Procedure 34 and the definitions for "writings and recordings" as set forth in Federal Rule of Evidence 1001, and it includes records, reports, lists, data, statistics, summaries, analyses, communications (as defined above), any computer discs, tapes, printouts, emails, databases, and any handwritten, typewritten, printed, electronically recorded, taped, graphic, machine-readable, or other material, of whatever nature and in whatever form, including all non-identical copies and drafts thereof, and all copies bearing any notation or mark not found on the original.

7.      "Election" means any special or regularly scheduled general election or run-off election held in the State of Georgia for any publicly elected office.

8.      "Elector Challenges" means the challenges to the eligibility of registered Georgia voters in advance of the Run-off Election.

9.   "Identify," when used in reference to a communication, means to state when and where the communication was made; each of the makers and recipients thereof, in addition to all others present; the medium of communication; and its substance.

10.   "Identify," when used in reference to a government agency, firm, partnership, corporation, proprietorship, association, other entity, or person, means to state its, his, or her full name and present or last-known address.

11.   "Identify," when used in reference to processes or steps taken by you or others with whom you have worked on the matters at issue in this litigation, means to chronologically detail each and every action taken by any and all entities or persons, to identify the actor, and to detail how and when that action was or will be taken and for how long.

12.   "Including" means "including but not limited to."

13.   "November Election" means the most recent election that was held in Georgia that culminated on Election Day on November 3, 2020, to include the general election and the special election.

14.   "Person" means not only natural persons, but also firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, trust groups, and organizations; federal, state, or local governments or government agencies, offices, bureaus, departments, or entities;

other legal, business, or government entities; and all subsidiaries, affiliates, divisions, departments, branches, and other units thereof or any combination thereof.

15.   "Relating to," "regarding," and their cognates are to be understood in their broadest sense and shall be construed to include pertaining to, commenting on, memorializing, reflecting, recording, setting forth, describing, evidencing, or constituting.

16.   "Run-off Election" means the January 5, 2021 Senate Run-off election held in Georgia.

17.   "Targeted Voter" or "Targeted Voters" means the registered Georgia voters who are the subject of the Elector Challenges.

18.   "True the Vote" means the organization that goes by the name of True the Vote, Inc., and includes its officers, directors, partners, members, managers, employees, representatives, agents, consultants, or anyone acting on its behalf.

19.   "True the Vote Website" or "Website" means the website maintained by True the Vote at https://truethevote.org.

20.   "Voter" means any registered voter in Georgia and all persons who may properly register to vote in the state by the close of discovery in this case.

21.   "You" and "your" means OpSec Group LLC and any of its officers, directors, partners, members, managers, employees, representatives, agents, consultants, or anyone acting on its behalf.

## INSTRUCTIONS

You are to follow the instructions set forth below in responding to these requests.

1.      Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B), if you object to any part of a request, set forth the basis of your objection and respond to all parts of the request to which you do not object. Any ground not stated in a timely objection is waived.

2.      If, in responding to these requests, you encounter any ambiguities when construing a request or definition, set forth in your response what you find ambiguous and the construction you used in responding. Where you, in good faith, doubt the meaning or intended scope of a request, and the sole objection would be to its vagueness, overbreadth, or ambiguity, please contact Plaintiffs' counsel for clarification in advance of asserting an objection.

3.      With respect to any document withheld on a claim of privilege or work-product protection, provide a written privilege log identifying each document individually and containing all information required by Federal Rule of Civil Procedure 45(e)(2), including a description of the basis of the claimed privilege and all information necessary for Plaintiffs to assess the claim of privilege.

4.      You should produce all documents available to you or subject to your access or control that are responsive to the requests. This includes documents in your

actual or constructive possession or control, as well as that of your investigators, experts, representatives, agents, and any other persons acting on your behalf.

5.     Documents are to be produced as they are kept in the ordinary course of business. Accordingly, documents should be produced in their entirety, without abbreviation, redaction, or expurgation; file folders with tabs or labels identifying documents responsive to this request should be produced intact with the documents; and documents attached to each other should not be separated.

6.     All documents are to be produced in electronic form and meet the following criteria:

> Printed Materials. All printed materials should be scanned and produced in electronic form. The printed materials shall be converted to a single page TIFF images and produced as follows: (i) images of all file labels, file headings, and file folders associated with any hard copy document will be produced with the images of the hard copy documents; (ii) document breaks for paper documents shall be based on Logical Document Determination (or "LDD"), rather than on physical document breaks; and (iii) the database load file shall include the following fields: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, CONFIDENTIALITY, REDACTED, and CDVOLUME.

> Metadata Fields and Processing. The following metadata and coding fields should be produced along with each produced document: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH; CUSTODIAN, CONFIDENTIALITY, REDACTED, OTHER_CUSTODIAN, and CDVOLUME. The OTHER_CUSTODIAN field should be populated to identify other custodians in possession of the document before deduplication was applied to the data set.

> TIFFS. Single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi). Single page TIFF images should be named according to the unique bates number, followed by the extension ".TIF". Original document

orientation should be maintained (i.e., portrait to portrait and landscape to landscape).

<u>Text Files.</u> For each document originating in electronic format, a text file containing the full text of each document should be provided with the image files and metadata. Text of native files should be extracted directly from the native file. The text file should be named according to the unique bates number, followed by the extension ".TXT." The full text and/or OCR of any document should not be contained within a database load file, but rather as a standalone file with each text file containing an entire document as they are defined.

<u>Database Load Files.</u> An ASCII delimited data file (.txt, .dat, or .csv) that can be loaded into commercially acceptable database software (e.g., Concordance) should be provided. The first line of each text file must contain a header identifying each data field name (i.e., header row). Each document within the database load file must contain the same number of fields as defined in the header row.

<u>Cross-Reference Image File Registration.</u> An image load file that can be loaded into commercially acceptable production software (e.g., Opticon, iPro) should be provided. Each TIFF in a production must be referenced in the corresponding image load file. An exemplar load file format is below.

<u>Bates Numbering.</u> All images must be assigned a unique and sequential Bates number.

<u>Native File Productions.</u> If a native file is produced, it should include a TIFF image as a placeholder for the file to represent the file in the production set. The TIFF image placeholder for a native file should be branded with a unique Bates number and state "See Native Document" on the TIFF image. The native file should then be renamed to match the Bates number assigned to the document with its original file extension. The filename field produced in the production load file that reflects the original metadata should maintain the original file name.

<u>Microsoft Office files, WordPerfect, other standard documents (e.g. Google Docs and PDF documents).</u> MS Office files, WordPerfect, other standard documents, such as PDF documents and Google Docs, should be converted to single-page TIFF images and produced consistent with the specifications

herein. If the document contains comments or tracked changes, the TIFF images must be generated to include the comments or track changes in the file.

Email and attachments. E-mail and attachments should be converted to single-page TIFF images and produced consistent with the specifications provided herein. Attachments shall be processed as separate documents, and the text database load file shall include a field identifying the production range of all attachments of each e-mail.

Embedded Files. Embedded files shall be treated as separate files. The load file shall include a field identifying, for each document containing an embedded file, the production range of any such embedded file. This production range may be identified in the same field as the production range of an e-mail attachment.

Color Documents. Except as otherwise specifically provided herein or agreed to by the Parties, documents originally in color need not be produced in color unless the production in black and white alters or obscures the substance of the document. Documents produced in color must be produced with agreed compression.

Redactions. If a document requires redaction, native files, full text and/or OCR, and specified metadata fields will be excluded. The TIFF image should show the caption [Redacted, Redacted-Privileged, Redacted-PII, etc.] where applicable and a production load file field should be populated to indicate the document contains a redaction.

Encryption. Industry-standard encryption tools and practices must be used when transferring data. Passwords must be at least 8 characters with a mix of character sets and sent in a separate communication from the encrypted data.

Notwithstanding the foregoing, the parties may negotiate a separate production format when necessary.

7.        If any otherwise-responsive document was, but is no longer, in existence or in your possession, custody, or control, identify the type of information

contained in the document, its current or last known custodian, the location/address of such document, and the identity of all persons having knowledge or who had knowledge of the document, as well as describe in full the circumstances surrounding its destruction, loss, or other disposition from your possession or control.

8.      Materials sought by these requests for production that become available after you serve your responses must be disclosed to counsel for Plaintiffs by supplementary response or responses.

9.      If you contend that it would be unreasonably burdensome to obtain and provide any or all of the documents called for in response to any request, then in response to the appropriate request: (a) produce all such documents as are available to you without undertaking what you contend to be an unreasonably burdensome effort; (b) describe the efforts you made to obtain the documents you can produce, identifying who you consulted, describing the files, records and documents you reviewed, and identifying each person who participated in the gathering the documents, specifying the amount of time spent and the nature of work done by that person; and (c) state why the additional efforts to produce other responsive documents would be unreasonably burdensome.

10. A reference to an entity shall be construed to include its officers, directors, partners, members, managers, employees, representatives, agents, consultants, or anyone acting on its behalf.

11. To the extent that you do not have any documents reflecting the information requested, and/or any means of recording the information requested, please so indicate in your response to the specific request.

## REQUESTS FOR PRODUCTION

**Request for Production No. 1:** All communications between you and True the Vote regarding any "voter registry research" as referenced in True the Vote's December 18, 2020 press release, including but not limited to communications with other persons involved in preparing the Challenge List or any other lists of Targeted Voters.

**Response:** Produced, to the extent in OPSEC's care, custody, and control, subject to the objections detailed below. Most of the communications between OPSEC and True the Vote were conducted via verbal communications. OPSEC (or Gregg Phillips) and True the Vote have worked together on many similar data and voter analysis projects over the past eight years, so they did not need to communicate regarding this specific project via written communications to a great extent.

OPSEC objects to the production of methodology materials to the extent the Request asks for documents and communications subject to trade secrets,

proprietary information, or to which OPSEC is subject to contractual confidentiality agreements.

**Request for Production No. 2:** All contracts, instructions, requests, and guidance between you and True the Vote regarding the production of the Challenge List or any other list of Targeted Voters prepared in connection with the Elector Challenges.

**Response:** Produced, to the extent in OPSEC's care, custody, and control, subject to the objections detailed below.

OPSEC objects to the production of methodology materials to the extent the Request asks for documents and communications subject to trade secrets, proprietary information, or to which OPSEC is subject to contractual confidentiality agreements.

**Request for Production No. 3:** All documents and communications relating to the methodology you relied upon in producing the Challenge List or any other list of Targeted Voters prepared in connection with the Elector Challenges, and the basis for identifying any of the Targeted Voters.

**Response:** Produced, subject to the objections detailed below.

OPSEC combines 30 years of experience and expertise with public, commercial and private data sources in a single repository for evaluation.

We deploy commercially available software tools such as JMP, DataWalk and Minitab to execute proprietary algorithms, queries and various regression techniques to ensure accurate resolution of voter eligibility criteria such as identity, residency, citizenship, age, and felon status.

Our analysts use scoring, similarity, dissimilarity and other accepted techniques to allow machine learning to take the place of human error and slow speeds to arrive at fast, accurate conclusions.

OPSEC objects to the production of methodology materials to the extent the Request asks for documents and communications subject to trade secrets, proprietary information, or to which OPSEC is subject to contractual confidentiality agreements.

**<u>Request for Production No. 4:</u>** All documents and communications that you reviewed to assess or ensure the reliability or accuracy of the Challenge List or any other list of Targeted Voters that were submitted with the Elector Challenges.

**Response:** Produced, to the extent in OPSEC's care, custody, and control, subject to the objections detailed below.

OPSEC objects to the production of methodology materials to the extent the Request asks for documents and communications subject to trade secrets, proprietary information, or to which OPSEC is subject to contractual confidentiality agreements.

**Request for Production No. 5:** All communications regarding the reliability or accuracy of any Challenge Lists or lists of Targeted Voters that were submitted with the Elector Challenges, or any databases you relied upon in creating such lists.

**Response:** Produced, to the extent in OPSEC's care, custody, and control, subject to the objections detailed below.

OPSEC objects to the production of methodology materials to the extent the Request asks for documents and communications subject to trade secrets, proprietary information, or to which OPSEC is subject to contractual confidentiality agreements.

**Request for Production No. 6:** All billings, invoices, and payment records relating to your preparation of the Challenge List or any other lists of Targeted Voters.

**Response:** Produced, to the extent in OPSEC's care, custody, and control.