**United States District Court**
**Northern District of Georgia**
**Gainesville Division**

| | |
|---|---|
| **Fair Fight, Inc., Scott Berson, Jocelyn Heredia,** and **Jane Doe**, <br><br> *Plaintiffs,* <br><br> v. <br><br> **True the Vote, Inc., Catherine Engelbrecht, Derek Somerville, Mark Davis, Mark Williams, Ron Johnson, James Cooper,** and **John Does 1-10**, <br><br> *Defendants.* | <br><br><br><br><br><br> Civ. No. 2:20-cv-00302-SCJ <br><br> Hon: Steve C. Jones |

**Defendants' Reply in Support of Their Motion for Summary Judgment**

**Defs.' Reply**
**ISO Mot. for Summ. J.**

# Table of Contents

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Defendants' conduct did not violate § 11(b). . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.    Conduct which is objectively intimidating and directed specifically toward voters is required for a violation of § 11(b). . . . . . . . . . . . . 1
    B.    Defendants' § 230 Challenges did not urge election officials to violate state and federal law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    C.    Defendants' § 230 Challenges were not frivolous. . . . . . . . . . . . . . . . 7
        1.    TTV's § 230 Challenges were not frivolous. . . . . . . . . . . . . . . 7
        2.    Defendants Davis and Somerville's § 230 Challenges were not frivolous. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II. Judicial Enforcement of § 11(b) as sought to be applied by Plaintiffs, would be unconstitutional. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    A.    Judicial enforcement of § 11(b), as sought to be applied by Plaintiffs, would violate their right to free speech and right to petition the government under the First Amendment. . . . . . . . . . . . . . . . . . . . 10
    B.    Judicial enforcement of § 11(b), as sought to be applied by Plaintiffs, unconstitutionally violates defendants' right to vote via vote dilution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    C.    Judicial Enforcement of § 11(b), as sought to be applied by Plaintiffs, is unconstitutionally vague. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# Table of Authorities

**Cases**

*Freeman v. Quicken Loans, Inc.*, 566 U.S. 624 (2012) .................... 6

*Georgia Pac. Corp. v. Occupational Safety & Health Review Comm'n*, 25 F.3d 999 (11th Cir. 1994) .................................. 14

*Georgia Pac. Corp. v. Occupational Safety & Health Review Comm'n*, 25 F.3d 999 (11th Cir. 1994)åàáåßÑ .................................. 14

*Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457 (S.D.N.Y. 2020) .................................. 2

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .......................... 13

*Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020), *cert. denied,* 141 S. Ct. 1379 (2021). .................................. 13

**Statutes**

52 U.S.C. §10307(c). .................................. 7

O.C.G.A. § 21-2-386 .................................. 12

O.C.G.A. § 21-2-230 .................................. 6, 11

O.C.G.A. § 21-2-571 .................................. 7

## Introduction

Plaintiffs have not met their burden of proof that Defendants True the Vote, Inc. ("**TTV**"), Catherine Engelbrecht, Derek Somerville, Mark Davis, Mark Williams, Ron Johnson, and James Cooper (collectively, "**Named Defendants**") violated Section 11(b) of the Voting Rights Act of 1965 ("**§ 11(b)**"). They have not shown that Named Defendants' conduct was objectively intimidating to any voter or subset of voters. They have not shown that Named Defendants' Challenges encouraged any state official to violate state or federal law or were frivolous. In addition, judicial enforcement of § 11(b) in this context would be unconstitutional in several ways. Named Defendants' Motion for Summary Judgment should be granted and Plaintiffs' Motion for Summary Judgment should be denied.

## Argument

### I. Defendants' conduct did not violate § 11(b).

**A.   Conduct which is objectively intimidating and directed specifically toward voters is required for a violation of § 11(b).**

Plaintiffs assert that direct contact between the Named Defendants and the challenged voters is not required to establish voter intimidation. Pls.' Opp. to

**Defs.' Reply
ISO Mot. for Summ. J.**                              1

Defs.' Mot. for Summ. J., ECF No. 174, at 3-4. ("**Pls.' Resp.**") (citing cases where § 11(b) liability imposed against defendants acting through third parties). This argument misconstrues these cases.

Named Defendants do not assert that § 11(b) violations cannot occur by communications through third parties. *See Nat'l Coal. on Black Civic Participation v. Wohl* ("**Wohl I**"), 498 F. Supp. 3d 457, 477 (S.D.N.Y. 2020) (finding defendants who used third party to place robocalls liable under § 11(b)).[1] But virtually all of the precedent finding § 11(b) liability require that the defendant direct intimidating communication to specific populations of voters or the people helping voters, and that the communication contain elements that are objectively intimidating to that specific population of voters. All of the examples of cases cited to by both Named Defendants and by Plaintiffs involved this sort of communication. *See* Defs.' Br. at 4-7.

Plaintiffs assert that Named Defendants "co-opted county election boards to complete their scheme by filing mass challenges to voters' registration, knowing

---

[1] Named Defendants never asserted the defendants in *Wohl I*, for instance, actually dialed voters' phones (by definition, robocalls are not made by people). 498 F. Supp. 3d at 464.

**Defs.' Reply
ISO Mot. for Summ. J.**                                    2

that those challenges would be conveyed by the local officials to voters," and that TTV's press releases, "directed at all Georgians and beyond," were sufficient to create § 11(b) liability because it "contributed to a climate" that was intimidating. Pls.' Resp. at 4-5. But those actions fail to meet the elements required under precedent: (1) that the action or communication be directed toward specific voters; and (2) that the action or communication be objectively intimidating. Named Defendants' conduct does not satisfy either element.

Lawfully petitioning the government is not "co-opting" the government to intimidate and is constitutionally protected. *See* Part II.A; *see also* Defs. MSJ Br., ECF No. 155-1 at 9-13. The § 230 Challenges were not directed at any specific subset of voters.[2] No Contact Citations. Press releases reaching "all Georgians and

---

[2] In order to provide greater readability for the Court and in order to avoid needless repetition, Named Defendants use the following string citation designations in this brief to refer to several of their undisputed, material positions: **(1)** Named Defendants did not contact any Plaintiff, "**No Contact Citations**"; *see* TTV Resp. to First Rogs. No. 5; Somerville Am. Resp. and Obj. 2d Interrogs., Resp. No. 7; First Davis Tr. 171:4-21; Williams Tr. 63:2-64:1; Johnson Resp. to First Interrogs. Resp. No. 5; Cooper Resp. to First Interrogs. Resp. No. 5; Cooper Tr. 45:1-9; 50:13-22; **(2)** Named Defendants did not publish any Challenge list, "**No Publication Citations**"; TTV Tr. 257:11-14; Second Somerville Tr. 71:16-72:19; 72:21-73:14; Second Davis Tr. 46:3-14; 80:7-10; **(3)** TTV did not create a "bounty" in order to incentivize Challenges or accusations of voter fraud; "**No**

beyond" cannot possibly meet the definition of the types of targeted communications which can support § 11(b) liability.

Named Defendants' § 230 Challenges do not meet the requirements for objective intimidation under § 11(b). Some of the voters who were challenged stated they felt intimidated, although all of the voters who offered evidence in this matter voted and were not prevented from doing so. *See* Pls.' SUMF ¶¶ 155-174. Subjective feelings of intimidation are simply not enough to impart liability. This is especially true when these subjective feelings of intimidation are linked to a general atmosphere, rather than to Named Defendants' actions not specifically directed toward those voters. *See*, *e.g.*, Heredia Tr. 49:4-50:2; 31:22-32:3;48:16-

---

**Bounty Citations**"; TTV Tr. 71:11-19, 71:22-72:1, 74:8-17, 75:5-18, 76:15-19; TTV Tr. 316:3-12; TTV Tr. 316:19-317:5; First Somerville Tr. 150:15-152:4; **(4)** TTV did not create a hotline in order to intimidate voters—it turned over any credible accusation of voter irregularities to the proper government authorities; ("**No Hotline Intimidation**"); TTV Tr. 81:16-21; TTV Tr. 85:21-86:9;TTV Tr. 82:18-21; TTV Tr. 68:16-69:7; *id.* 81:22-82:4; TTV Tr. 85:13-20; TTV Tr. 93:17-95:3; TTV Am. Resp. 2d RFP Resp. No. 18; First Somerville Tr. 150:15-152:4; **(5)** TTV did not advocate or recruit for anyone to "patrol" polling places; "**No Patrol Citations**"; TTV Tr. 59:9-12; 59:19-60:17; 62:13-64:7; **(6)** Named Defendants did not target any subset of voters, particularly by race or other demographic; "**No Demographic Consideration Citations**"; OpSec Tr. 163:13-164:8; 149:14-17; Second Somerville Tr. 30:6-32:14; 188:4-22; First Davis Tr. 166:5-168:22; Second Davis Tr. 40:19-41:5; 185:15-188:4.

**Defs.' Reply**
**ISO Mot. for Summ. J.**                                  4

49:;48:1-9.

All of the case law cited found actions and communications directed toward specific voters that were objectively intimidating to that specific subset of voters. *See* Defs.' Br. at 4-8; Pls.' Resp. at 3-5. Here, the undisputed evidence shows that Named Defendants' conduct was not directed toward any specific voter, or subset of voters. The objective, undisputed facts show that Named Defendants did not contact any Plaintiff, or for that matter, any challenged voter. No Contact Citations. They did not target any subset of voters, particularly by race or other demographic. No Demographic Consideration Citations. They did not offer a "bounty" for reports of voter fraud. No Bounty Citations. They did not "patrol" polling places, nor did they advocate for anyone to do so.[3] No Patrol Citations. They did not publish the list of challenged voters. No Publication Citations.

Named Defendants did not direct actions or communications toward a specific group of voters and did not act in a manner that was objectively intimidating. Therefore, Named Defendants cannot be liable under § 11(b).

---

[3]Plaintiffs' allegations that TTV advocated for Navy SEALs to be unlawfully placed at polling locations is not rooted in truth or evidence. *See* Defs.' Resp. at 17-18.

**Defs.' Reply**
**ISO Mot. for Summ. J.**                           5

B.  **Defendants' § 230 Challenges did not urge election officials to violate state and federal law.**

Plaintiffs allege that Named Defendants attempted to induce county boards to disenfranchise voters in contravention of the "purpose and plain language of the statutory safeguards Congress included in the NVRA." Pls.' Resp. at 14 (quoting TRO Order at 12). The plain language of the Georgia Challenge Statute shows that Plaintiffs' allegations are without merit.

When a § 230 Challenge is made, the Challenger has to "specify distinctly the grounds of such challenge." O.C.G.A. § 21-2-230(a). The Challenge Statute distinguishes in several places the actions required if a challenge is based upon "grounds *other than the qualifications of the elector to remain on the list of electors*." *Id.* at (d)(e)(f)(g)(h)(i) (emphasis added). There would be no reason for the statute to make such a distinction if it did not allow for a challenge based upon other grounds (i.e., a challenge that challenges an elector's eligibility to cast a ballot in a particular election, but which does not challenge the ability of that voter to remain on the list of electors). *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012) (noting the general canon against surplusage).

The NVRA itself provides for penalties for providing a false "address or

period of residence in the voting district for the purpose of establishing his ability to register to vote." 52 U.S.C. §10307(c). Georgia law prohibits the same. O.C.G.A. § 21-2-571.

The undisputed evidence shows that the Named Defendants' § 230 Challenges were not based upon the grounds of the qualification of any elector to remain on the list of electors. Rather, the § 230 Challenges were based upon the grounds that certain electors may not have been eligible to vote in the runoff election because of residency issues. TTV Tr. 342:15-343:1:18; TTV Resp. to First Interrogs. Resp. No. 5; First Somerville Tr. First Somerville Tr. 48:15-21; 78:6-9; Second Somerville Tr. 189:4-191:1; 56:18-57:11; 78:6-9;189:4-191:1. Therefore, Named Defendants did not attempt to induce county boards to violate state or federal law, including the NVRA.

**C.   Defendants' § 230 Challenges were not frivolous.**

  **1.   TTV's § 230 Challenges were not frivolous.**

Plaintiffs assert that TTV has "fail[ed] to offer any coherent justification for the staggering number of errors in [TTV's] challenge file." Pls.' Resp. at 9. Plaintiffs characterize Gregg Phillips' testimony as to OpSec's process as

"obfuscation, not explanation." *Id.* at 10. None of Plaintiffs' assertions have merit.

OpSec has testified that its proprietary process used a sophisticated algorithm to draw in information from other databases, used regression modeling to substantially cut the risk of a mismatch, and reviewed the results of matching names to ensure that it was reasonable with respect to false positives and false negative to within one standard deviation of the potential error that might be expected. OpSec Tr. 108:8-11 113:6-17, 118:11-119:22, 140:8-141:7 141:11-20.

OpSec provided a detailed description of its methodology both in response to interrogatories and in deposition. In Ex. 59, OpSec RFP Response No. 3, OpSec provided a detailed description, including the data consulted, and objected to the production of trade secrets, proprietary information, or information subject to confidentiality agreements. *Id.* In OpSec's deposition, some months later, Gregg Phillips answered all of Plaintiffs' questions about the methodology, divulging, among other things, that it is based on a proprietary process that uses a 4000-row algorithm, involving a complex series of mostly common algorithms, such as dissimilarity and similarity indexes and fuzzy logic. OpSec Tr. 107:13-108:4; 113:22-114:3. Plaintiffs neither complained that this was incoherent nor made any

motion to this Court to compel or otherwise order production of the information they allege was missing or wrongfully withheld. Moreover, the information that Plaintiffs claim to need is not material because it is not needed to demonstrate that the challenge was not frivolous and will not otherwise affect the outcome of the suit.[4]

### 2. Defendants Davis and Somerville's § 230 Challenges were not frivolous.

Plaintiffs assert that the Davis/Somerville Challenge List was frivolous based upon their supposition that Mr. Davis' research following the runoff election "likely reflects a significant exaggeration," and information from the Georgia Secretary of State office which they contend refutes this follow-up research. Pls.' Resp. 11-13. Again, Plaintiffs' assertions lack merit.

Mr. Germany's email does not contradict Mr. Davis' research following the election. Mr. Germany's email indicates that the 86% of the voters who Mr. Davis identified showed up to vote in the runoff and provided ID to do so. Germany

---

[4] Filed concurrently with this reply, Named Defendants respond to Plaintiffs' assertion that Messrs. Phillips', Davis', and Somerville's testimony is inadmissible under federal rules in their response to *Plaintiffs' Motion in Limine to Exclude Improper Expert Testimony from Gregg Phillips, Mark Davis, and Derek Somerville*.

email at 1. But the crux of Mr. Davis' research deals with what happened *after the runoff*—in short, the research shows that after voters filed a change of address, they cast ballots in the old counties and then, after the runoff, registered in a new county, many in the very county to which the Davis/Somerville Challenge List indicated they'd moved to. Davis Interrog. Resp. Ct. Order Resp. No. 3. Mr. Germany's statements do not counter this.

## II. Judicial Enforcement of § 11(b) as sought to be applied by Plaintiffs, would be unconstitutional.

This Court has not yet considered, let alone ruled on, any of Named Defendants' affirmative defenses. Plaintiffs' assertions otherwise lack merit. *See* Pls.' MSJ at 33-34. Named Defendants incorporate these defenses here, but seek to expand for clarity after evaluating Plaintiffs' arguments.

A. **Judicial enforcement of § 11(b), as sought to be applied by Plaintiffs, would violate their right to free speech and right to petition the government under the First Amendment.**

Plaintiffs assert that Named Defendants' § 230 Challenges, "in combination with all their other activities targeted at Georgia voters, were unlawful" because their actions were frivolous, they had no reasonable expectation their concerns could be addressed by election officials, and constituted intimidation. Pls.' Resp.,

**Defs.' Reply**
**ISO Mot. for Summ. J.**                    10

ECF No. 174 at 21-22. Plaintiffs' assertions are without merit.

First, Named Defendants' § 230 Challenges were not frivolous. Despite Plaintiffs' allegations otherwise, Named Defendants did not rely solely on the NCOA data for the § 230 Challenges—they compared this data to other data sources, and used these data sources, regression analysis, and proprietary algorithms to verify identity. *See* [Part I.C.](#)

Second, Named Defendants had reasonable expectations that their concerns could be addressed by election officials.[5] The total number of challenges were broken down and submitted to separate counties. If the County Boards found probable cause to proceed with the § 230 Challenges, it would notify the poll officers of the challenged elector's precinct (a further subdivision of the total number per county). O.C.G.A. § 21-2-230(b). Since the § 230 Challenges were not challenges to the qualifications of the electors to remain on the list of electors, the process any poll official would have to follow was not burdensome: (1) if the

---

[5]Addressed here are the reasonable expectations implicated in the § 230 Challenges themselves. In addition, Named Defendants expressed another reasonable expectation: that the § 230 Challenges would alert state election officials to a problem inherent in the system, in hopes they would address the issues before the next election. Second Somerville Tr. 187:5-13; First Somerville Tr. 153:1-12.

**Defs.' Reply
ISO Mot. for Summ. J.**                                    11

challenged voter did not show up to vote or did not cast an absentee ballot, the poll officers at the precinct did not have to do anything else, *id.* at (c); (2) if the challenged voter showed up to vote at the polling place, the voter simply had to be given the opportunity to answer the challenge (provide ID, proof of residency, etc.), *id.*; or (3) if the challenged voter cast an absentee ballot, and it wasn't "practical to conduct a hearing prior to the close of the polls," the absentee ballot was to be treated as a challenged ballot pursuant to O.C.G.A. § 21-2-386(e). *Id.* at (e). The Named Defendants' § 230 Challenges did not require a small group of election officials to handle multiple thousands of challenges. Poll officials simply had to follow the fairly minimal process required under statute for only those challenged voters who showed up to vote or who cast an absentee ballot.

Finally, Named Defendants' conduct did not constitute intimidation. It is not enough that some of the challenged voters felt subjectively intimidated. The law of this circuit requires this Court determine whether Named Defendants' conduct was objectively intimidating—and the case law on § 11(b) requires much more than citizens speaking and engaging broadly to the general population. *See* Part I.A.

Therefore, the speech surrounding the § 230 Challenges submitted by

Named Defendants does not lose the First Amendment protection of speech and petition, and penalizing such speech under § 11(b) would render § 11(b) unconstitutional as applied.

### B. Judicial enforcement of § 11(b), as sought to be applied by Plaintiffs, unconstitutionally violates defendants' right to vote via vote dilution.

Named Defendants' right to petition the government is implicated in their defense based on vote dilution as well. Named Defendants have not made a claim that rejecting their § 230 Challenges was a violation of their First Amendment rights via vote dilution. If they had, those claims might have been rejected for lack of standing. *See Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020), *cert. denied,* 141 S. Ct. 1379 (2021).

Article III standing is not at issue in Named Defendants' *defense*. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24, 2016) (finding plaintiff bears burden to establish standing). Named Defendants have not made a vote dilution claim—they have raised a defense that judicial enforcement of Plaintiffs' § 11(b) claim, based on Named Defendants' lawful petition to their state government to protect their right to vote from vote dilution, would be unconstitutional as applied because it would prohibit constitutionally-protected

activity without any of the narrowing required for such infringement.

## C. Judicial Enforcement of § 11(b), as sought to be applied by Plaintiffs, is unconstitutionally vague.

Plaintiffs seem to argue that Named Defendants' unconstitutional vagueness defense fails because "a plaintiff need not show animus or an intent to harass or intimidate" to succeed on an § 11(b) claim. Pls.' MSJ at 34 (citing Order at 23).

Named Defendants' unconstitutional vagueness defense had nothing to do with intent. A state statute or regulation is considered unconstitutionally vague under the due process clause of the Fourteenth Amendments if it "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Georgia Pac. Corp. v. Occupational Safety & Health Review Comm'n*, 25 F.3d 999, 1005 (11th Cir. 1994).

Named Defendants raised this defense because the undisputed facts show Named Defendants did not engage in any conduct that was objectively intimidating. *See* Part I.A. Therefore, the only possible reason this Court could find they violated § 11(b) was because they brought "mass" § 230 Challenges. If simply bringing "mass challenges" can form the basis of an § 11(b) violation, no

**Defs.' Reply
ISO Mot. for Summ. J.** 14

"man of common intelligence" in Georgia would know which, or how many, voter challenges—allowed under Georgia law—would be considered a violation of § 11(b). Such a finding by this Court would chill Georgians' First Amendment activity out of the fear of liability stemming from confusion over exactly what petitions to government would be permitted under such a holding. As a result, § 11(b) would be rendered unconstitutionally vague.

## Conclusion

For the foregoing reasons, this Court should grant Defendants' Motion for Summary Judgment and deny Plaintiffs' Motion for Summary Judgment.

Dated: June 21, 2022

*/s/ David F. Guldenschuh*
David F. Guldenschuh
GA Bar No. 315175
David F. Guldenschuh P.C.
P.O. Box 3
Rome, Georgia 30162-0333
Telephone: 706-295-0333
Email: dfg@guldenschuhlaw.com
*Local Counsel for Defendants*

Respectfully Submitted,

*/s/ James Bopp, Jr.*
James Bopp, Jr.,* IN # 2838-84
 jboppjr@aol.com
Jeffrey P. Gallant,* VA # 46876
 jgallant@bopplaw.com
Courtney Turner Milbank,* IN# 32178-29
 cmilbank@bopplaw.com
Melena Siebert,* IN # 35061-15
 msiebert@bopplaw.com
THE BOPP LAW FIRM, PC
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434
Facsimile: (812) 235-3685
*Lead Counsel for Defendants*
**Admitted Pro hac vice*

**Defs.' Reply
ISO Mot. for Summ. J.**            16

## Certificate of Compliance

The undersigned counsel certifies that the foregoing has been prepared in Times New Roman (14 point) font, as required by the Court in Local Rule 5.1(B).

Respectfully submitted on June 21, 2022.

>  */s/ James Bopp, Jr.*
> James Bopp, Jr.
> *Lead Counsel for Defendants*

**Defs.' Reply
ISO Mot. for Summ. J.**                    17