IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| FAIR FIGHT, INC., SCOTT BERSON, JOCELYN HEREDIA, and JANE DOE,<br><br>  Plaintiffs,<br><br>  v.<br><br>TRUE THE VOTE, INC., CATHERINE ENGELBRECHT, DEREK SOMERVILLE, MARK DAVIS, MARK WILLIAMS, RON JOHNSON, JAMES COOPER, and JOHN DOES 1-10,<br><br>  Defendants. | Civil Action No.<br>2:20-cv-00302-SCJ |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION IN LIMINE**

Defendants concede that Gregg Phillips, Mark Davis, and Derek Somerville seek to offer opinion testimony. *See, e.g.*, Defs.' Resp. to Pls.' Mot. in Lim. at 3-4 ("Defs.' Resp."), ECF No. 175. They acknowledge that these witnesses "testified beyond what [they] may have easily inferred based on the evidence[.]" *Id.* at 3. They characterize the processes described by the testimony as "sophisticated" and "complex." *See, e.g.*, Defs.' Resp. to Pls.' Statement of Undisputed Material Facts ¶¶ 89-91, ECF No. 173-1; Defs.' Statement of Undisputed Material Facts ("Defs.'

1

SUMF") ¶ 56, ECF No. 155-2. These admissions confirm that the challenged testimony was "based on scientific, technical, or other specialized knowledge within the scope of Rule 702," Fed. R. Evid. 701(c), and therefore falls outside the realm of permissible lay testimony and should be excluded.

Defendants' only response to Plaintiffs' motion in limine is to repeat, again and again, that the challenged opinion testimony was based on the witnesses' perception, which satisfies *one* of the three limitations imposed by Rule 701. *See id.* 701(a). But Defendants ignore that they must also comply with Rule 701(c), which was added "to eliminate the risk that the reliability requirements set forth in Rule 702 [governing expert testimony] will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 advisory committee's note to 2000 amendment. Because the challenged testimony attempts precisely that evasion, it should be excluded.

## I. Defendants seek to undermine important safeguards that preclude unreliable opinion testimony.

The Federal Rules of Evidence recognize that, in many cases, "[a]n intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge. The most common source of this knowledge is the expert witness[.]" Fed. R. Evid. 702 advisory committee's note

to 1972 proposed rules. But precisely because expert testimony is based on and filtered through expertise that the judicial factfinder usually lacks, the Federal Rules governing civil litigation impose a series of rigorous checks to ensure that any inferences offered by experts in litigation are reliable. These include Federal Rule of Civil Procedure 26(a)(2), which promotes vigorous adversarial testing by requiring experts to disclose their opinions before questioning by opposing counsel. *See* Fed. R. Civ. P. 26(a)(2). They also include the "gatekeeping requirement" imposed on trial courts by Federal Rules of Evidence 701 and 702, which are intended "to ensure the reliability and relevancy of expert testimony" by "mak[ing] certain that an expert, whether basing testimony upon professional studies *or personal experience*, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (emphasis added).

Defendants seek to skirt these requirements and smuggle in undisclosed and unvetted expert testimony by recharacterizing their witnesses' opinions as lay testimony. They complain that, whenever witnesses have personal knowledge of facts relevant to a case, it would be unfair and unnecessary to subject the witnesses' technical testimony to any reliability screening. *See* Defs.' Resp. at 2. This response reflects a fundamental misunderstanding of the Federal Rules. The issue is not

whether "Defendants would need to hire their own experts," simply because Plaintiffs "retained experts to attack the basis and process of matching voter records to the NCOA." *Id.* It is whether a litigant may offer specialized testimony—from *any* witness—without satisfying the prescribed tests for relevance and reliability. *See* Fed. R. Civ. P. 701, 702. The Rules are clear: they cannot.

Notably, the Federal Rules contemplate that expert testimony *may* be provided by fact witnesses. *See* Fed. R. Civ. P. 26(a)(2)(C) and advisory committee's note to 2010 amendment; *see also* Fed. R. Evid. 701 advisory committee's note to 2000 amendment (noting the Rules "do[] not distinguish between expert and lay witnesses, but rather between expert and lay testimony"). Thus, Defendants could have proffered Phillips, Davis, and Somerville to attempt to rebut the conclusions of Plaintiffs' expert, Dr. Kenneth Mayer, themselves, without hiring an outside expert—but only if they satisfied expert disclosure and reliability requirements. They did neither.[1]

---

[1] The fact that Plaintiffs later subpoenaed OPSEC and deposed Phillips was not grounds to skip this requirement: "[A] party cannot excuse its failure to make the disclosures when they are due simply by arguing that the other side can depose the person and ask about the disclosure topics at that time." Steven S. Gensler & Lumen N. Mulligan, *Rule 26,* in 1 Federal Rules of Civil Procedure, Rules & Commentary (2022 ed.) (footnote collecting cases omitted). "To permit that result would be to defeat the reason for requiring the disclosures in the first place." *Id.*

It is telling that Defendants initially identified Phillips as a person who may provide expert testimony, describing his potential testimony as addressing "the process used to compare various counties' voter registration lists to the NCOA and other data, and that the comparison produced accurate results." ECF No. 53-1 at 2. At that time, Defendants correctly perceived that testimony regarding the accuracy of the matching methodology would fall under the expert testimony rules. But rather than disclose a full summary of Phillips's opinions as required by Federal Rule of Civil Procedure 26(a)(2)(C)(ii) or defend Phillips's qualifications under Federal Rule of Evidence 702, Defendants made the strategic choice not to subject Phillips to the scrutiny that accompanies expert testimony. *See* Pls.' Mem. in Support of Mot. in Lim. at 4, ECF No. 172-1 (reviewing Defendants' explicit confirmation that they would not offer any expert testimony). That is their prerogative, but it comes at a price: the Rules require that Defendants now be foreclosed from using Phillips (or Davis or Somerville) to offer any opinions based on scientific, technical, or other specialized knowledge.

Even if Defendants had disclosed Phillips, Davis, and Somerville as experts, they would then have had to carry their "burden of showing, by a preponderance of the evidence, that the testimony satisfies each prong" of a "rigorous three-part inquiry." *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010).

Namely, Defendants would have had to show "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable . . . ; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise." *Id.* A party can support the reliability of its expert's methodology by showing that the technique "can be (and has been) tested"; that the technique "has been subjected to peer review and publication"; "the known or potential rate of error"; and that the "technique is generally accepted by the relevant scientific community." *Id.* (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-94 (1993)).

Even if timely disclosed, none of Defendants' witnesses could have cleared this bar. Phillips, for example, admitted that the accuracy of his methodology has never been independently verified. Phillips Tr. 109:1-3, ECF No. 167-1. His description of the potential error rate was gibberish. *Id.* at 140:19-141:7 (testifying that a reasonable error rate was "[m]aybe a standard deviation" of the expected error rate, and the expected error rate was "[l]ess than one standard deviation").[2] He went to extraordinary lengths to avoid answering questions about his professional

---

[2] For more of this variety, see Defs.' Resp. at 10-11 ("It is not necessary to know how OpSec's algorithm works in order to sufficiently understand how the process worked to determine the question at issue here[.]).

qualifications and experience with election data analysis. *See, e.g.*, *id.* at 31:13-36:13; 41:6-44:19; 176:11-179:3. He refused to disclose his algorithm. *Id.* at 113:20-114:7. And Dr. Mayer provided unrebutted testimony about generally accepted standards in the field of data analysis and the unreliability of Phillips's methodology. Expert Rep. of Kenneth R. Mayer, ECF No. 156-16. Independent analysis by the Secretary of State's office determined that Davis and Somerville's methodology, in turn, "doesn't come close to meeting [the applicable] standard." *See* Pls.' Statement of Add'l Facts ¶¶ 8-11, ECF No. 174-2. Because the challenged witnesses' opinions would have been inadmissible as undisclosed and unreliable if they were properly offered as expert testimony, they cannot be admissible when improperly offered as lay testimony.

## II. Phillips, Davis, and Somerville seek to offer testimony based on scientific, technical, or other specialized knowledge.

Contrary to Defendants' insinuations, opinion testimony does not fall outside the scope of Rule 702 whenever it "proceeds from personal knowledge." Defs.' Resp. at 3. As the Eleventh Circuit has explained, while a "lay witnesses may testify about their own immediate perceptions [under Rule 701], testimony that blurs into supposition and extrapolation crosses the line into expertise." *Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*, 772 F.3d 1352, 1372 (11th Cir. 2014). That is, "[l]ay

opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *United States v. An Easement & Right-of-way Over 6.09 Acres of Land, More or Less, in Madison Cnty.*, 140 F. Supp. 3d 1218, 1242 (N.D. Ala. 2015) (quoting *United States v. Conn,* 297 F.3d 548, 554 (7th Cir. 2002), and *United States v. Peoples,* 250 F.3d 630, 641 (8th Cir. 2001)).

Because Phillips, Davis, and Somerville were not disclosed and qualified as experts, Federal Rule of Evidence 701 limits their opinion testimony to matters that are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). Here, Defendants "attempt[] to disguise as lay testimony what is really expert testimony," *United States v. Easements and Right-Of-Way Over a Total of 15.66 Acres of Land, More or Less, in Gordon Cnty.* ("*15.66 Acres*"), 315 F. Supp. 3d 1353, 1372 (N.D. Ga. 2018), by emphasizing the "extensive experience of Messrs. Phillips, Davis, and Somerville working with the NCOA and related data," Defs.' Resp. at 5. Defendants argue that because the witnesses "hold[] positions in which they gained particularized knowledge, [they] testified as lay witnesses when they testified on the basis of that particularized knowledge." *Id*. at 9-10. But virtually every expert owes their expertise to positions

in which they gained particularized knowledge, and so Defendants' position would turn all opinion testimony into lay testimony.

*15.66 Acres* illustrates the line that lay testimony based on personal experience may not cross. There, the defendant landowner intended to "testify that his property was suitable for residential use, that his [development] plans were practical and probable, [and] that there were no barriers to immediate implementation of his plan (including zoning)." 315 F. Supp. 3d at 1370. This testimony was offered as lay opinions grounded in the defendant's many years of personal experience in the farming and residential real estate business and in a city building code department, as well as his intimate familiarity with his land. *Id.* at 1369. But as the court recognized, merely grounding testimony in personal experience does not transform it from expert testimony to lay testimony. *Id.* at 1371-72. Where the proffered testimony is based upon technical or specialized knowledge—like here—it is not authorized by Rule 701. *Id.*; *see also James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1213-16 (10th Cir. 2011) (holding district court abused its discretion in allowing landowner to testify to building's value under Rule 701 where opinion relied upon technical depreciation calculations, professional experience as a real estate broker, and a detailed technical report created by a retained appraisal company); *LifeWise Master Funding v. Telebank*, 374 F.3d

917, 929-30 (10th Cir. 2004) (CEO's testimony about lost profits was not lay opinion because testimony was based on sophisticated economic models about "moving averages, compounded growth rates, and S-curves"); 5 Handbook of Fed. Evid. § 701:1 (7th ed. 2022) (hypothesizing that "if Bill Gates were to testify that divestiture of a segment of Microsoft's business would result in a loss of one billion dollars over five years," he would be testifying as an expert because "projecting such loss is not based upon the types of experiences common to human beings").

Defendants identify no cases where lay witnesses were permitted to offer testimony about technical processes merely because they had personal knowledge about other issues in the case. In *United States v. Hamaker*, 455 F.3d 1316 (11th Cir. 2006), for example, an FBI agent was permitted to offer lay testimony that a construction company (MCC) billed a client (Community Bank) for labor performed for someone else. *Id.* at 1331. To do this, the agent "simply reviewed and summarized" MCC's financial documents, which included identifying MCC's employee time-sheet entries for non-Community Bank work billed to Community Bank. *Id.* The agent then added the hours of misattributed labor to calculate the extent of the fraud. *Id.* Contrary to Defendants' representations, this testimony was not admissible because it was rooted in personal experience; as the Eleventh Circuit explained, it was admissible because the agent "simply added and subtracted

numbers" and "then compared those numbers in a straightforward fashion." *Id.* As the court remarked, these calculations were "within the capacity of any reasonable lay person." *Id.* at 1331-32.[3]

Here, in contrast, Defendants purported to perform much more than elementary arithmetic; Phillips claimed to have developed True the Vote's challenge list by using an undisclosed "4000-row algorithm" that involved "a complex series" of other algorithms. Defs.' SUMF ¶ 56, ECF No. 155-2. Davis and Somerville, meanwhile, used "3 dbase structures," "[r]an CASS and NCOA processing," "[s]et a relation on the voter registration number into the vote history trailer data," and "[g]eocoded" data outputs, among other highly technical procedures. *Id.* ¶ 78. While these witnesses were free to relay factual testimony about the discrete steps they performed, the rules simply do not permit them to offer testimony, or invite the Court to make inferences, about the expected outcome and reliability of these steps, which would require scientific, technical, or other specialized knowledge. Fed. R. Evid. 701, 702.

---

[3] Similarly, the FBI agent's lay testimony was admitted in *United States v. Jayyousi*, 657 F.3d 1085, 1104 (11th Cir. 2011), because the agent "limited his testimony to what he learned during this particular investigation[.]" Defendants cite this case as support for their witnesses' testimony "squarely fit[ting] under Rule 701(a)." Defs.' Resp. at 4. But Plaintiffs do not challenge the testimony under Rule 701(a); they seek to exclude it under Rule 701(c).

Defendants' only other Eleventh Circuit citation is also far afield. *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213 (11th Cir. 2003), involved a contract dispute related to repair services for a damaged ship. The court affirmed the admissibility of testimony by employees of the defendant repair shop that the tasks they billed for were reasonable given the extent of the damage. *Id.* at 1217-20. This course-of-business testimony did not rely on any scientific or technical knowledge, but rather reflected the witnesses' personal experience in the industry. *Id.* at 1223. The analogy to this case might have held if the dispute centered on the reasonableness of the $400,000 sum that OPSEC billed True the Vote for Phillips's work. *See* Phillips Tr. 57:11-17, ECF No. 167-1. But the question here is entirely different—whether Phillips's and Davis's technical methodologies reliably identified ineligible voters requires sophisticated data acumen. Only an expert with technical proficiency can evaluate whether Defendants properly applied "fuzzy logic" and "CASS processing" to achieve quality results. *See, e.g.*, Defs.' SUMF ¶¶ 56, 78; *see also* Fed. R. Evid. 701 advisory committee's note to 2000 amendments (recognizing that the 2000 amendments incorporate the holding in *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992), that expert testimony "results from a process of reasoning which can be mastered only by specialists in the field").

"Courts are cautioned not to admit . . . inference[s] that cannot be supported

by sound scientific principles." *Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002). Here, Defendants seek to introduce inferences from Phillips, Davis, and Somerville about the reliability of what they term "complex" and "sophisticated" technical data analysis employed to generate challenge lists targeting Georgia registrants. Defendants have not sought to qualify any of these lay witnesses with the expertise required to justify these inferences. Accordingly, the Federal Rules render the testimony inadmissible.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion in limine should be granted and the opinion testimony of Gregg Phillips, Mark Davis, and Derek Somerville—including the testimony relayed in Defs.' SUMF ¶¶ 43-44, 47-62, 66-67, 78, 114-18—should be excluded.

Respectfully submitted, this 5th day of July, 2022.

| | |
|---|---|
| Allegra J. Lawrence<br>Georgia Bar No. 439797<br>Leslie J. Bryan<br>Georgia Bar No. 091175<br>Maia Cogen<br>Georgia Bar No. 832438<br>Michelle L. McClafferty<br>Georgia Bar No. 161970<br>**LAWRENCE & BUNDY LLC**<br>1180 West Peachtree Street, Suite 1650<br>Atlanta, GA 30309<br>Telephone: (404) 400-3350<br>Fax: (404) 609-2504<br>allegra.lawrence-hardy@lawrencebundy.com<br>leslie.bryan@lawrencebundy.com<br>maia.cogen@lawrencebundy.com<br>michelle.mcclafferty@lawrencebundy.com<br><br>Dara Lindenbaum<br>Georgia Bar No. 980780<br>**SANDLER REIFF LAMB ROSENSTEIN & BIRKENSTOCK, P.C.**<br>1090 Vermont Avenue, NW, Suite 750<br>Washington, DC 20005<br>Telephone: (202) 479-1111<br>Fax: 202-479-1115<br>lindenbaum@sandlerreiff.com | */s/ Uzoma N. Nkwonta*<br>Marc E. Elias\*<br>Uzoma N. Nkwonta\*<br>Christina A. Ford\*<br>Tina Meng\*<br>Marcos Mocine-McQueen\*<br>Joel J. Ramirez\*<br>Jacob D. Shelly\*<br>**ELIAS LAW GROUP LLP**<br>10 G Street NE, Suite 600<br>Washington, D.C. 20002<br>Telephone: (202) 968-4490<br>melias@elias.law<br>unkwonta@elias.law<br>cford@elias.law<br>tmeng@elias.law<br>mmcqueen@elias.law<br>jramirez@elias.law<br>jshelly@elias.law<br><br><br>*Counsel for Plaintiffs*<br>\*Admitted *pro hac vice* |

## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1(D), N.D. Ga., I hereby certify that the foregoing ***Plaintiffs' Reply in Support of Motion in Limine*** has been prepared in accordance with the font type and margin requirements of LR 5.1, N.D. Ga., using a font type of Times New Roman and a point size of 14.

This 5th day of July, 2022            /s/ Uzoma N. Nkwonta

Uzoma N. Nkwonta
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing ***Plaintiffs' Reply in Support of Motion in Limine*** with the Clerk of Court using the CM/ECF system, which will automatically send-e-mail notification to all counsel of record.

This 5th day of July, 2022.

/s/ Uzoma N. Nkwonta

Uzoma N. Nkwonta
*Counsel for Plaintiffs*