UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

<table>
<tr><td>

**Fair Fight, Inc., Scott Berson, Jocelyn Heredia, and Jane Doe**,

*Plaintiffs,*

*v.*

**True the Vote, Inc., Catherine Engelbrecht, Derek Somerville, Mark Davis, Mark Williams, Ron Johnson, James Cooper, and John Does 1-10**,

*Defendants.*

</td><td>

**Civ. No. 2:20-cv-00302-SCJ**

**Hon: Steve C. Jones**

</td></tr>
</table>

## <u>DEFENDANTS' RESPONSE IN OPPOSITION TO AMICUS BRIEF</u>

Defendants True the Vote, Inc., Cathering Engelbrecht, Derek Somerville, Mark Davis, Mark Williams, Ron Johnson, James Cooper, and John Does 1-10 submit this Response in Opposition to Amicus Brief, respectively showing the Court as follows:

## <u>ARGUMENT</u>

To retain the delicate Constitutional balance Congress struck in the Voting Rights Act, before otherwise free speech may be restricted under Section 11(b), a

plaintiff must as a threshold matter show the alleged intimidation, threat, or coercion was *directed to an individual or group of individuals.*

Amicus would rewrite the statute, as it has come to be understood, by eliminating the requirement that the alleged intimidation, threat, or coercion be directed by someone to someone else. Such an exception would swallow the rule. Ironically, while Amicus urges the Court to consider the challenged speech in context, the reading that Amicus would have the Court adopt would also eliminate certain context.

As discussed below, prior courts considering this clash of principles, which we have grown accustomed to calling "rights," have required that there be some utterance of some kind passing from Person or Group "A" to Person or Group "B." That is simply not the case here. The reading Amicus would have the Court adopt is unconstitutional as applied, and if it would become law on the construction of the statute, it would render Section 11(b) unconstitutional on its face.

## I. This is Not a Torts Case Where Reasonable Foreseeability Might be a Touchstone to Demarcate Liability.

The Amicus Brief (at p.11) suggests that a "routine proximate cause analysis" should apply in determining whether a defendant caused a voter to be intimidated under Section 11(b), saying, "Defendants can fairly be held liable for the unlawful

intimidation that they set in motion." (Citing a tort case and the Restatement (Second) of Torts § 442).

Plaintiffs have similarly sought to base Defendants' liability on Defendants' creation of *atmospheres* unknown to the Individual Plaintiffs: "Defendants' conduct has *created an atmosphere* of intimidation." Compl. ¶ 9 (emphasis added). Plaintiffs liked the idea of imposing liability-by-atmosphere so much that they repeated it in their Brief on Summary Judgment three times. Pls.' Brf. ISO Mot. Summ. J. at 23-24. There, Plaintiffs urged the Court to consider an exhaustive historical "context of actions"[1] – even if no Plaintiff was aware of them:

> . . . actors are "presumed to have intended the natural consequences of [their] deeds" because "[f]requently the most probative evidence" of *what an actor intended to do* is "objective evidence of what actually happened." . . . Thus, as to voter intimidation, courts will consider "[d]efendants' prior conduct and expressed goals," taken together with the context of those actions, to identify whether the natural outcome of those actions is voter intimidation . . .

*Id*. at 10 (emphasis added) (citations omitted).

Language from cases like *Nat'l Coal. on Black Civic Participation v. Wohl*, 512 F. Supp. 3d 500, 509 (S.D.N.Y. 2021) (emphasis added), in which the District

---

[1] In short, Plaintiffs and Amicus want to have their cake, in which Defendants' intent is irrelevant – "Section 11(b) does not require an intent to intimidate" – and eat it too, marshalling voluminous research into Defendants' historical conduct so as to imply an intent to "create[] an *atmosphere* of intimidation." Compl. ¶ 9 (emphasis added).

Court held that "intimidation includes messages that a reasonable recipient, *familiar with the context of the message*, would interpret as a threat of injury," has inspired Plaintiffs' lawyers here, and elsewhere, to try to shoehorn into their pleadings a boundless range of events and circumstances out of any one individual or group's control. Indeed, Plaintiffs' pleadings devote a great deal of space presenting to the Court the fruits of their lawyers' laborious research into Defendants' alleged historical acts, many of which remain unproven, notwithstanding that the Individual Plaintiffs are not alleged to have known anything about them:

1. various alleged actions of True the Vote between 2012 to 2016[2]
2. alleged third-party harassment of elections workers in 2020[3]
3. announcements of the 2020 Georgia Elector Challenge[4]
4. alleged bounties for reporting fraudulent voting and a watchdog hotline[5]
5. the decades-old history of "voter intimidation tactics"[6]
6. an alleged call for SEALs to help elections officials[7]
7. 2020 election litigation[8]
8. the allegation "Defendants encouraged and amplified threats of election-related vigilantism on social media"[9]

---

[2] FAC ¶¶ 30-34.
[3] *Id.* ¶¶ 8, 34-37.
[4] *Id.* ¶¶ 4, 39-57; Plfs' Brief on SummJ at 26-28.
[5] *Id.* ¶¶ 5-6 and 58-63; Plfs' Brief on SummJ at 23-26.
[6] *Id.* ¶¶ 64-70, 72-76; Plfs' Mot. SummJ at 7.
[7] Plfs' Brief on SummJ at 24-25.
[8] FAC ¶¶ 1-3, 35-38, 69; Plfs' Mot. SummJ at 1-4, 11-14.
[9] *See* Plfs. Brief on SummJ at 28-31.

Because there is no evidence Plaintiffs themselves knew of any of this "context," Defendants will refer to it as the Lawyers' Historical Research.[10] However, neither Plaintiffs nor Amicus have cited any statute, legislative history record, case law, or other authority to support imposing liability for alleged intimidation *plaintiffs were not aware of*. That is, even if the Court were to indulge the possibility that defendants in a Section 11(b) case could have proximate-cause liability, Plaintiffs, in all their pleadings, have failed to make and cannot justly make the requisite allegation that any Plaintiff even *knew* about the contextual factors – the supposed bounty, the call for SEAL volunteers, TTV's election litigation, etc. – that would supposedly serve to objectively intimidate Plaintiffs from voting.

Specifically, Plaintiffs cannot articulate *any* reason to believe *any* Individual Plaintiff knew of the Lawyers' Historical Research *at the time they received notice of the Challenges*, as opposed to, say, when Plaintiffs' lawyers may have presented

---

[10] *See* also Plfs' Suppl. Brf. at 14:

"Such public voter intimidation campaigns are akin to True the Vote campaigning for Georgians to report fellow voters for engaging in voter fraud in exchange for a $1 million bounty, Pls.' Mot. Summ. J. at 24–25, recruiting former combat-trained veterans to patrol polling places precisely because of their intimidating presence, *id.* at 25–26, issuing press releases promoting the filing of hundreds of thousands of frivolous voter challenges, *id.* at 26–27, and publicly promoting and encouraging threats of election-related vigilantism on social media, *id.* at 28–31."

their research to Plaintiffs, long after the fact, perhaps as late as the delivery to Plaintiffs of the draft Complaint itself. Plaintiffs do not allege that Plaintiffs Scott Berson or Jocelyn Heredia ever knew of any of the events recounted in the Lawyers' Historical Research. *Cf.* FAC ¶¶ 15-16. They do not allege Plaintiff Jane Doe ever knew about any of the activities collected in the Lawyers' Historical Research. *Cf. id*. ¶ 17. At this juncture, except to the extent the Lawyers' Historical Research might hypothetically be useful in confirming the existence of material fact issues defeating Plaintiffs' own motion for summary judgment, it must be set aside. If this case were to proceed to trial, anticipating *Daubert* and other challenges, the Lawyers' Historical Research might be useful in considering the admissibility and weight to be given expert testimony. Here, however, it has no place. Plaintiffs cannot surmount summary adjudication based on the undisputed facts.

Amicus, like the Government, tries to minimize the distinction between direct and indirect contact. *See* Amicus at 10 ("*LULAC* … involved no direct contact with intimidated voters"). But both briefs ignore the more crucial distinction between what plaintiffs were or were not aware of – direct or indirect – and therefore what they can reasonably be said to have been intimidated by. In *LULAC*, for example, the individual voter-plaintiffs were aware of the defendants' activities alleged to have been intimidating, including the published report disclosing their personally

6

identifying information and wrongly identifying them as potential felons. *See* 2018 WL 3848404 at *1, 4.

Plaintiffs advance a theory of liability without any guardrails or boundaries. How far back in a defendant's life may a plaintiff dig up liability-inducing "context?" How far afield, geographically, may an "atmosphere" be from the locus of the alleged intimidation? Plaintiffs would establish precedent in which lawyers for Section 11(b) plaintiffs hire private investigators and scour the Internet to create dossiers of defendants' actions throughout time, and then argue those dossiers create *atmospheres supporting liability*. In any event, here, Plaintiffs must contend with the factual and legal consequences of having learned of so much allegedly "intimidating" context only from their lawyers.

## II.    Plaintiffs Fail to Allege that Third Parties were Acting as Agents of any Defendant.

Plaintiffs, the United States, and Amicus argue that defendants may be held liable for the actions of third parties. For example, the United States argues violations of Section 11(b) have been found "in cases where defendants *relied on third parties* to fully effectuate their conduct." U.S Brief at 12 (emphasis added). That is a misconstruction of the cases. The cases they cite do not involve a court imposing liability for actions of third parties who are not agents of defendants. Here,

Plaintiffs do not allege and cannot plausibly allege the parties, who took the alleged actions complained of, were acting as agents of the Named Defendants.

Amicus itself makes this clear in describing *Arizona Alliance for Retired Americans v. Clean Elections USA*, No. 22-1823, 2022 WL 17088041, at *1-2 (D. Ariz. Nov. 1, 2022). Amicus explains, "a federal district court issued a temporary restraining order enjoining the defendants *and their agents"* from engaging in various activities. Amicus at 7 (emphasis added). *See Arizona All. for Retired Americans v. Clean Elections USA*, No. CV-22-01823-PHX-MTL, 2022 WL 15678694, at *4 (D. Ariz. Oct. 28, 2022), opinion vacated, appeal dismissed, No. 22-16689, 2023 WL 1097766 (9th Cir. Jan. 26, 2023).[11]

Similarly, in *National Coalition on Black Civic Participation v. Wohl* ("*Wohl I*"), the district court entered a temporary restraining order halting defendants' *hired contractors* from engaging in robocalls falsely informing would-be mail-in voters that voting by mail would get them placed on lists for warrant checks, credit checks, and mandatory vaccinations. 498 F. Supp. 3d 457, 465 (S.D.N.Y. 2020). Similarly, in *Daschle v. Thune*, as Amicus explains, "a federal court enjoined individuals *acting on behalf of* a Senate candidate" from following voters from a polling place and copying their license plates." Amicus Brf. at 8 (emphasis added). In *Council on Am.-*

---

[11] Defendants, here, refute this finding in the Arizona case and have contested it.

*Islamic Rels.–Minn. v. Atlas Aegis, LLC*, 497 F. Supp. 3d 371, 379, 381 (D. Minn. 2020), the defendants enjoined by the court there, in the words of Amicus, had "deploy[ed] armed guards at polls." Amicus at 9. And in *Democratic Nat. Comm. v. Republican Nat. Comm*., 673 F.3d 192, 196 (3d Cir. 2012), the RNC was alleged to have "enlisted the help of off-duty sheriffs and police officers to intimidate voters."

This Court has already rejected Plaintiffs' attempts to plead agency without pleading a factual agency relationship. Referring to third-party social media postings, the Court pointed out that those postings did not show that "*Defendants* have intimidated or threatened voters in violation of Section 11(b)." Order of Jan. 1, 2021, at 27 (emphasis in original). The Court explained that "without clearer connections borne out by evidence," "[h]ow third-party actors react to Defendants' actions is not directly attributable to Defendants." *Id.* Plaintiffs have not supplied evidence sufficient to establish any agency relationships with the third parties here.

### III.    To sustain a threat under Section 11(b), the threat must be a "True Threat," which must contain a threat of violence.

Amicus argues that to be cognizable under Section 11(b), threats need not be true threats that contain a threat of violence. This is a misstatement and would expand the statute beyond cognizable bounds. Named Defendants fully briefed why V*irginia v. Black*, 538 U.S. 343, 359 (2003) precludes application of the true threat

9

exception when the alleged threatening behavior is non-violent. Defs.' Suppl. Br., ECF No. 191, at 11-27.

No basis can be found in the Eleventh Circuit for supposing that nonviolent threats can "qualify" as a "true threat" as described in *Black*. The Eleventh Circuit has never found *Black*'s "true threat" exception to First Amendment protection applicable to nonviolent threats. Where this Circuit has addressed *Black*, it has been to show the intent required to convict someone of crimes involving threats of violence or to analyze the behavior sufficient to show an intent to threaten *violence*.

Likewise, Amicus does not offer controlling precedent for their assertion that true threats can include threats of non-violence. Amicus cites a Ninth Circuit case in support of their argument, ignoring the fact that the holding in that case was based on California state law, not Section 11(b). *United States v. Nguyen*, 673 F.3d 1259, 1266 (9th Cir. 2022). The Ninth Circuit itself cut off a critical clause from its citation to *Black:* "Intimidation in the constitutionally proscribable sense of the word is a type of true threat, *where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death*." *Id*. (emphasized language not included in *Nguyen* citation to *Black*). So, *Nguyen* is based on law other than Section 11(b) and omits *Black*'s qualifying language regarding the threat of "fear of bodily harm or death."

Amicus also cites to two other non-controlling cases for its erroneous application of *Black*: *Wohl I*, 498 F. Supp. 3d at 479; and *United States v. Turner*, 720 F.3d 411, 420 (2d Cir. 2013). Named Defendants analyzed both *Wohl I* and *Turner* exhaustively in their briefing. Defs.' Suppl. Br. ISO MSJ at 14-16, ECF No. 191. In short, *Wohl I* is an outlier that aberrantly would extend the law regarding true threats far beyond Second Circuit precedent set in *Turner*. *Turner* itself involved explicit calls for violence, including death threats against judges. *Turner*, 720 F.3d at 413, 421. Neither case offers controlling authority for Amicus's assertions regarding *Black* – and *Turner* does not even address a threat of nonviolence.

The VRA prohibits threatening any person for voting or attempting to vote. Within the context of controlling precedent, threats are only proscribable if they are "true threats," which requires a threat of violence. Amicus's other assertions regarding conduct that constitutes unlawful voter intimidation are also erroneous.

## IV.    Allegedly False or Misleading Speech is Not Inherently Intimidating, Threatening, or Coercive.

Amicus serves up several categories of allegedly false or misleading speech that, were it to have its way, would violate Section 11(b), but none of them are inherently intimidating, threatening, or coercive. Associated speech must constitute intimidation, a threat (of violence), or coercion related to voting rights to violate

11(b). Amicus Br., 14-17 (asserting defamation, fraud, or false accusations of unlawful voting could support liability under Section 11(b)).[12]

Amicus states that "a defendant engaged in voter intimidation through defamation would have no First Amendment defense for their actions regardless of whether the defamation constituted a true threat." Amicus Br., 15. Amicus's assertions go far afield. First, Amicus tries to stretch the jurisprudence relating to *true threats* to include voter *intimidation*. They are not coextensive. Section 11(b) prohibits threats, intimidation, and coercion. Those words mean different things, and different legal standards apply to them. Second, defamation is not inherently intimidating – defamation is a cause of action that is meant to prevent reputational harm – it is not meant to prevent intimidation. *StopLoss Specialists, LLC v. VeriClaim, Inc.*, 340 F. Supp. 3d 1334, 1346 (N.D. Ga. 2018). Section 11(b) prohibits intimidation of a voter who is voting or attempting to vote. Third, and most importantly, Plaintiffs did not assert a defamation claim against Named Defendants. Named Defendants will not waste this Court's time by extensively analyzing a

---

[12] Amicus also proposes that speech incidental to a course of independently proscribable or tortious conduct could violate Section 11(b). *Id*. at 15. Proscribable and tortious conduct is not inherently intimidating or threatening, so it likewise must be coupled with speech or conduct that objectively intimidates, threatens (violence), or coerces in relation to voting in order to potentially violate Section 11(b). Plaintiffs have not alleged any tortious conduct by any Named Defendant, so Named Defendants do not respond to this hypothetical assertion.

defense to a non-existent claim by a non-party, other than to point to the record showing Named Defendants never published any Challenged Voters' name to the public, and they never accused anyone of voting illegally. They simply filed lawful, non-frivolous petitions to the government, asking the appropriate government agencies to follow the lawful process for verifying voter eligibility for the election, based upon voter-reported notifications of moves and other valid data analysis. *See, e.g.*, Defs. Br., 27-41.

WHEREFORE, Defendants again ask that this case be summarily dismissed and that the Court grant such other and further relief to which they may be entitled.

Respectfully submitted,

Dated: February 13, 2023

 */s/ Jake Evans*
Jake Evans
GA Bar No. 797018
Mikayla Mobley
GA Bar No. 708760
HALL BOOTH SMITH, P.C.
2710 Old Milton Parkway, Suite 200
Alpharetta, GA 30009
Telephone: (470) 386-6900
Email: jevans@hallboothsmith.com
*Local Counsel for Defendants*

*/s/ David F. Guldenschuh*
David F. Guldenschuh
GA Bar No. 315175

David F. Guldenschuh P.C.
P.O. Box 3
Rome, Georgia 30162-0333
Telephone: 706-295-0333
Email: dfg@guldenschuhlaw.com
*Local Counsel for Defendants*

/s/ James Bopp, Jr.
James Bopp, Jr.,* IN # 2838-84
jboppjr@aol.com
Jeffrey P. Gallant,* VA # 46876
jgallant@bopplaw.com
Courtney Turner Milbank,* IN# 32178-29
cmilbank@bopplaw.com
Melena Siebert,* IN # 35061-15
msiebert@bopplaw.com
THE BOPP LAW FIRM, PC
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434
Facsimile: (812) 235-3685
*Lead Counsel for Defendants*

/s/ Michael J. Wynne*
Michael J. Wynne, TX Bar No. 785289
mwynne@gwafirm.com
Cameron Powell,* DC Bar No. 459020
cpowell@gwafirm.com
GREGOR WYNNE ARNEY, PLLC
909 Fannin Street, Suite 3800
Houston, TX 77010
Telephone: (281) 450-7403
*Counsel for Defendants*

*\*Pro hac vice pending*

14

# Local Rule 7.1D Certification

The undersigned counsel certifies that the foregoing is a computer-generated document prepared in 14-point Times New Roman font in accordance with Local Rule 5.1B and C.

Respectfully submitted on February 13, 2023

 */s/ Jake Evans*
Jake Evans
*Local Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| **Fair Fight, Inc., Scott Berson, Jocelyn Heredia, and Jane Doe**, <br><br> *Plaintiffs,* <br><br> *v.* <br><br> **True the Vote, Inc., Catherine Engelbrecht, Derek Somerville, Mark Davis, Mark Williams, Ron Johnson, James Cooper, and John Does 1-10**, <br><br> *Defendants.* | **Civ. No. 2:20-cv-00302-SCJ** <br><br> **Hon: Steve C. Jones** |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that on February 13, 2023, they electronically filed the foregoing **DEFENDANTS' RESPONSE IN OPPOSITION TO AMICUS BRIEF** with the Clerk of Court using the Court's electronic filing system, which will automatically send email notification of such filing to all counsel of record.

*/s/ Jake Evans*
Jake Evans
GA Bar No. 797018
Mikayla Mobley
GA Bar No. 708760
HALL BOOTH SMITH, P.C.

16

2710 Old Milton Parkway, Suite 200
Alpharetta, GA 30009
Telephone: (470) 386-6900
Email: jevans@hallboothsmith.com

*Local Counsel for Defendants*