IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| FAIR FIGHT, INC., SCOTT BERSON, JOCELYN HEREDIA, and JANE DOE,<br><br>    Plaintiffs,<br><br>v.<br><br>TRUE THE VOTE, INC., CATHERINE ENGELBRECHT, DEREK SOMERVILLE, MARK DAVIS, MARK WILLIAMS, RON JOHNSON, JAMES COOPER, and JOHN DOES 1-10,<br><br>    Defendants. | Civil Action No.<br>2:20-cv-00302-SCJ |

**PLAINTIFFS' ATTACHMENT C (STATEMENT OF THE CASE)**

### I.  Outline of the Case

In the weeks before Georgia's 2021 Senate runoff elections, Defendants True the Vote, Inc., Catherine Engelbrecht, Derek Somerville, Mark Davis, Mark Williams, Ron Johnson, and James Cooper violated Section 11(b) of the Voting Rights Act by intimidating, threatening, or coercing individuals for voting, and, independently, by attempting to intimidate, threaten, or coerce individuals for voting.

The centerpiece of Defendants' scheme was a series of mass challenges to

1

the eligibility of hundreds of thousands of registered Georgia voters. These challenges could not have achieved any lawful purpose. Defendants' sloppy and wildly overinclusive challenge lists guaranteed that innocent and unsuspecting eligible voters would be snared in bureaucratic nets over the winter holidays during a critical election. Moreover, as Defendants knew, the federal National Voter Registration Act prohibited county election officials from upholding Defendants' voter challenges. Thus, there was only one possible result: voter intimidation. Scott Berson, Jocelyn Heredia, Jane Doe, Gamaliel Turner, Stephanie Stinetorf, and thousands of other eligible Georgia voters targeted by Defendants suffered the confusion, anxiety, frustration, and fear that naturally results when one is told by a government official that their right to vote is in jeopardy and that they must overcome the implication that they would be committing a crime by casting a ballot.

This intimidation was compounded by other elements of Defendants' pre-election campaign. While local officials feared for their lives and false cries of a stolen presidential election whipped across Georgia like a wildfire, Defendants kept lighting matches. True the Vote recruited "citizen watchdogs" to encourage further uproar about reportedly suspicious election activity. Catherine Engelbrecht broadcast that she would be sending Navy SEALs to polling places to show voters

and elections officials "how we're going to play the show." And Defendants publicized a million-dollar bounty to further incentivize rumors of wrongdoing.

Defendants' scheme satisfies the three elements the Court has identified for a Section 11(b) claim. **First**, Defendants directed their actions and the actions of third parties toward voters. Defendants challenged Georgia voters; they shared lists of challenged voters with other Georgia residents and with county officials; and they did so in ways that would and did lead to further public dissemination. Defendants also broadcast and publicized their watchdog, bounty, and poll-monitoring plans in a manner calculated and likely to reach Georgia voters.

**Second**, Defendants' conduct generated the possibility that voters would feel threatened, intimidated, or coerced. Defendants' voter challenges directly caused the intimidation of Mr. Berson, Ms. Heredia, Ms. Doe, Mr. Turner, and Ms. Stinetorf. And these individuals' experiences are representative of what was and would have been suffered by the thousands of other Georgia registrants that Defendants challenged. Further, Defendants' corollary watchdog, bounty, and poll-monitoring plans generated the possibility that voters would feel intimidated in the enflamed context between the November 2020 general election and January 2021 runoff elections when the tensions that would crescendo with the January 6 assault on the U.S. Capitol were escalating with every demagogic press release and

conspiratorial provocation.

**Third**, it was objectively reasonable for voters to experience intimidation as a result of Defendants' attempted and completed conduct. The mass challenges were guaranteed to sweep in eligible voters, who, under Defendants' scheme, would be forced to prove their qualifications to government officials on short notice over the winter holidays while an election was underway. That ordeal is inherently intimidating, and for many targeted registrants it further threatened their very right to vote. Any eligible voters who failed to overcome the challenge because they were too intimidated to navigate the bureaucratic process, or because they were unable to furnish the necessary credentials in time, or because of an inevitable mistake as counties short-staffed from the pandemic sought to resolve thousands of challenges while simultaneously administering a high-turnout election would necessarily be prohibited—or coerced—from voting. Similarly, the watchdog, bounty, and poll-monitoring efforts were reasonably likely to result in voter intimidation given the political context and their close analogy to similar conduct that courts have found to violate Section 11(b).

## II.   Legal Authority

Relevant rules, regulations, statutes, and ordinances include:

1. Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b)

2. 42 U.S.C. § 1983

3. National Voter Registration Act, 52 U.S.C. § 20507

4. O.C.G.A. §§ 21-2-229, 21-2-230

Illustrative case law includes:

1. *Nat'l Coal. on Black Civic Participation v. Wohl*, No. 20 Civ. 8668 (VM), 2023 WL 2403012 (Mar. 8, 2023).

2. *Nat'l Coal. on Black Civic Participation v. Wohl*, 512 F. Supp. 3d 500 (S.D.N.Y. 2021).

3. *Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457 (S.D.N.Y. 2020).

4. *Council on Am.-Islamic Rels.-Minn. v. Atlas Aegis, LLC*, 497 F. Supp. 3d 371 (D. Minn. 2020).

5. *League of United Latin Am. Citizens - Richmond Region Council 4614 v. Pub. Int. Legal Found.*, No. 1:18-CV-00423, 2018 WL 3848404 (E.D. Va. Aug. 13, 2018).

6. *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 671 F. Supp. 2d 575 (D.N.J. 2009).

7. *Mont. Democratic Party v. Eaton*, 581 F. Supp. 2d 1077 (D. Mont. 2008).

8. *United States v. Clark*, 249 F. Supp. 720 (S.D. Ala. 1965).

These citations are merely illustrative and Plaintiffs incorporate by reference all of the authorities cited in their summary judgment briefs, ECF 156, 174, 177, and their supplemental briefs in support of their motion for summary judgment, ECF 193, 216.