**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

FAIR FIGHT, INC., SCOTT BERSON,
JOCELYN HEREDIA, and JANE
DOE,

     Plaintiffs,

     v.

TRUE THE VOTE, INC., CATHERINE
ENGELBRECHT, DEREK
SOMERVILLE, MARK DAVIS,
MARK WILLIAMS, RON JOHNSON,
JAMES COOPER, and JOHN DOES 1-
10,

     Defendants.

Civil Action No.
2:20-cv-00302-SCJ

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR JURY TRIAL**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

BACKGROUND ................................................................................1

LEGAL STANDARD.........................................................................3

ARGUMENT .....................................................................................3

  I.   There is no federal right to a jury trial in this case...........................3

    A.  The VRA does not create a right to a jury trial. ...........................4

    B.  The Seventh Amendment does not create a right to a jury trial in this case.6

  II.  Defendants waived any right to a jury trial. ....................................7

    A.  The case does not involve issues best tried to a jury. ...................9

    B.  Granting a jury trial would disrupt the trial schedule. ..................9

    C.  Granting a jury trial would prejudice Plaintiffs. ........................11

    D.  Defendants delayed 31 months past the deadline to request a jury trial.....11

    E.  Defendants have failed to justify their delay in requesting a jury trial.......12

CONCLUSION ................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CBS Broad., Inc. v. EchoStar Commc'ns Corp.*,
450 F.3d 505 (11th Cir. 2006) ...............................................................7

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
526 U.S. 687 (1999)...............................................................4, 5, 7

*Daniel Int'l Corp. v. Fischbach & Moore, Inc.*,
916 F.2d 1061 (5th Cir. 1990) ...........................................................10

*FN Herstal SA v. Clyde Armory, Inc.*,
838 F.3d 1071 (11th Cir. 2016) ...........................................................7

*Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33 (1989)...............................................................6

*Guajardo v. Estelle*,
580 F.2d 748 (5th Cir. 1978) ...............................................................8

*Herrera v. 7R Charter Limited*,
No. 21-11766, 2022 WL 42751 (11th Cir. Jan. 5, 2022) ...................................8

*Herrera v. 7R Charter Ltd.*,
No. 1:16-cv-24031-KMW, 2020 WL 8768451 (S.D. Fla. Oct. 23,
2020) ...............................................................12

*Lorillard v. Pons*,
434 U.S. 575 (1978)...............................................................5

*Navarro v. Proctor & Gamble Co.*,
529 F. Supp. 3d 742 (S.D. Ohio 2021) ...........................................................4, 5

*Parrot v. Wilson*,
707 F.2d 1262 (11th Cir. 1983) ...........................................................15

*Polak v. Koninklijke,*
    19 F.R.D. 87 (S.D.N.Y. 1956) ...........................................................14

*Rowlett v. Anheuser-Busch, Inc.,*
    832 F.2d 194 (1st Cir. 1987)...............................................................6

*Scrinko v. Reading Co.,*
    117 F. Supp. 603 (D.N.J. 1954) .........................................................14

*Sullivan v. Sch. Bd. of Pinellas Cnty.,*
    773 F.2d 1182 (11th Cir. 1985) ........................................................11

*The Bopp Law Firm, PC v. True the Vote, Inc.,*
    No. 2:23-cv-120 (S.D. Ind. 2023) .....................................................13

## Statutes

28 U.S.C. § 2072(b) ...............................................................................3

42 U.S.C. § 1983 ....................................................................................5

52 U.S.C. § 10101 ............................................................................*passim*

52 U.S.C. § 10310(a) .............................................................................9

## Other Authorities

Fed. R. Civ. P. 38(b)(1)......................................................................7, 16

Fed. R. Civ. P. 39(a)(2)...........................................................................3

Fed. R. of Civ. P. 39(b) ...........................................................................3

U.S. Const., amend. VII ..............................................................1, 3, 6, 7

## INTRODUCTION

Defendants move for a jury trial two-and-a-half years too late in a case that federal law requires to be tried to the Court. The sole cause of action is brought under Section 11(b) of the Voting Rights Act ("VRA"), which does not authorize jury trials, and Plaintiffs seek purely equitable relief, which is well outside the limited jury right secured by the Seventh Amendment. Quickly abandoning the search for any legal authority supporting their jury demand—the absence of which here is dispositive and requires Defendants' motion to be denied—Defendants instead focus their energies on seeking to excuse the tardiness of their filing. That tardiness, to be sure, is egregious. And while Defendants primarily seek to blame their prior counsel for this belated motion, they now have been represented for at least six months by their current counsel, who waited until the eve of trial to alert the Court of their jury request—despite *signing a proposed pretrial order in May that stipulated to a bench trial* and despite the Court's explicit invitation in July for the parties to flag scheduling considerations for the bench trial. Defendants waived their opportunity to request something they were never entitled to in the first place. The motion for jury trial should be denied.

## BACKGROUND

On December 23, 2020, Plaintiffs Fair Fight, Inc., John Doe, and Jane Doe

1

filed a Complaint for Declaratory and Injunctive Relief, alleging that True the Vote, Inc., and individuals affiliated with that organization violated Section 11(b). ECF No. 1. The Complaint did not include a jury demand. *Id.* Defendants answered and filed counterclaims on January 8, 2021—those also did not include a jury demand. ECF No. 40-1. Plaintiffs amended their complaint on March 22, 2021, substituting individual plaintiffs and making minor updates to the factual allegations. ECF No. 73. Defendants answered on March 31. ECF No. 80. Again, neither filing requested a jury trial.

Two years passed. On February 9, 2023, new counsel appeared on behalf of Defendants. *See* ECF No. 211–15. On April 4, 2023, the Court set the case for trial to begin on October 30, 2023. ECF No. 234. On May 25, 2023, Defendants' new counsel signed a proposed consolidated pretrial order recognizing that "This case will not be tried before a jury." ECF No. 236 ¶ 6; *see also id.* ¶ 7 (indicating that neither party disputed the case would be tried to the court without a jury); *id.* ¶¶ 8, 9, 10, 11, 12, 22, 23 (indicating parties agreed to a bench trial). On July 28, 2023, after seeking further input from the parties on a bench trial date—during which neither party expressed any desire for a jury trial, *see* Ex. A—the Court rescheduled the bench trial to begin on October 26, 2023. Docket Text Entry, July 28, 2023.

## LEGAL STANDARD

The Court may grant a demand for a jury trial unless it finds "there is no federal right to a jury trial," Fed. R. Civ. P. 39(a)(2), or if the right to a jury trial has been waived, *see id.* 38(d).

## ARGUMENT

## I.     There is no federal right to a jury trial in this case.

Defendants' motion ignores a critical and dispositive threshold question: whether federal law confers a right to a jury trial in claims seeking to enforce Section 11(b) of the Voting Rights Act. While their arguments focus on excusing their two-year delay (sprinkled with a few passing references to the Seventh Amendment), their motion fails to cite a single authority establishing a federal right to a jury in a Section 11(b) case, and instead simply assumes that jury trials are available to all who request them under Rule 39(b) of the Federal Rules of Civil Procedure. *See* Defs.' Mot. for Jury Trial ("Mot.") 1. Not so. Rule 39 does not create a freestanding right to a jury, but rather establishes procedures that parties must follow in cases *where the right has been expressly created* by Congress or otherwise guaranteed by the Seventh Amendment. *See* 28 U.S.C. § 2072(b) (providing the Federal Rules of Appellate Procedure "shall not abridge, enlarge or modify any substantive right"). Since no source of federal law creates a right to a jury trial for claims seeking

3

injunctive relief under the Voting Rights Act, Defendants' request lacks merit whether asserted on day one, or in this case, day 964.

**A.     The VRA does not create a right to a jury trial.**

To determine whether a jury right exists under federal law, courts first examine whether Congress created such a right on the issue in question. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). "Generally speaking," a federal court recently explained, "Congress exercises that power expressly." *Navarro v. Proctor & Gamble Co.*, 529 F. Supp. 3d 742, 747 (S.D. Ohio 2021) (citing as illustrative examples 31 U.S.C. § 5323(g)(3)(B)(i) ("A party to an action brought under paragraph (2)(B) shall be entitled to a trial by jury."); 28 U.S.C. § 2402 ("any action against the United States under section 1346(a)(1) shall, at the request of either party to such action, be tried by the court with a jury"); 42 U.S.C. § 1981a(c) ("If a complaining party seeks compensatory or punitive damages under this section . . . any party may demand a trial by jury"); 21 U.S.C. § 467b(a)(4) (similar)).

To find an implied jury right in a statute, "there must be a solid basis for inferring a 'congressional intent to grant'" that right. *Navarro*, 529 F. Supp. 3d at 747 (quoting *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 345 (1998)). That solid basis might be supplied where, for example, the statute directly

incorporates procedures from another statute that guarantees a right to trial by jury. *See Lorillard v. Pons*, 434 U.S. 575, 580 (1978) (identifying jury right in Age Discrimination and Employment Act due to statute's incorporation of Fair Labor Standards Act procedures). Short of that, jury demands based on implicit statutory authority are regularly rejected. *See Navarro*, 529 F. Supp. 3d at 749 (finding there is no implicit statutory right to a jury under the Copyright Act). Indeed, the U.S. Supreme Court has explained, not even a statute's direct authorization for an "action at law," which were commonly tried to juries at common law, is sufficient to imply a jury trial right. *See City of Monterey*, 526 U.S. at 707–08 (holding parties litigating civil rights suit under 42 U.S.C. § 1983 did not enjoy statutory right to jury trial). In light of this precedent, "courts should exercise caution in interpreting statutes to find an implied jury trial right." *Navarro*, 529 F. Supp. 3d at 747.

The only claim in this case is brought under Section 11(b) of the VRA. *See* Am. Compl., ECF No. 73. Nothing in the VRA's text provides—expressly or implicitly—that Congress intended alleged violations to be tried to a jury. Defendants do not argue otherwise, nor do they cite a single Section 11(b) case that has been tried to a jury. At most, Defendants quote from the general statement in the *Civil Rights Act of 1964* (an entirely different statute than the *Voting Rights Act of 1965*, the source of Plaintiffs' claim) that qualified citizens "shall be entitled and

allowed to vote at all such elections," 52 U.S.C. § 10101(a)(1), and share *their* view that a jury is best equipped to protect this right. Mot. 6–7.  This statutory language is drawn from the wrong statute, has nothing to do with the appropriate factfinder, and, besides, party preferences are no substitute for congressional intent.[1]

**B.**   **The Seventh Amendment does not create a right to a jury trial in this case.**

Defendants occasionally allude to the Seventh Amendment's provision for jury trials, *see* Mot. 3, 4, 14, 15, but they never quote its text and seem unaware of its scope. The Seventh Amendment preserves the right of trial by jury "[i]n Suits at common law." U.S. Const., amend. VII. As the Supreme Court has explained, the phrase "Suits at common law" refers to "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989) (quoting *Parsons v. Bedford*, 3 Pet. 433, 447 (1830)). Thus, "[i]t is settled law that the Seventh Amendment does not apply" in "suits seeking only injunctive relief." *City of Monterey*, 526 U.S. at 719; *see also*

---

[1] Defendants describe a First Circuit case where a pro se litigant's untimely jury demand was granted as "similarly" involving VRA claims. Mot. 9 (discussing *Rowlett v. Anheuser-Busch, Inc.*, 832 F.2d 194 (1st Cir. 1987)). *Rowlett*, however, was an employment discrimination case that had nothing to do with the VRA or voting rights. *See* 832 F.2d at 195–96.

*FN Herstal SA v. Clyde Armory, Inc.*, 838 F.3d 1071, 1088 (11th Cir. 2016) ("In particular, a right to a jury trial does not exist for suits seeking only injunctive relief, which is purely equitable in nature.").

Plaintiffs do not seek money damages or other legal remedies—they simply pray for a declaration and injunction prohibiting Defendants from further engaging in the activities that they abused in violation of Section 11(b). *See* Am. Compl., ECF No. 73. The Seventh Amendment does not reach cases requesting this purely equitable relief.[2] Because no source of federal law authorizes a jury trial in this action, Defendants' motion should be denied.

## II.   Defendants waived any right to a jury trial.

In addition to being meritless, Defendants' motion arrives inexcusably late. Rule 38(b) requires parties to serve a written demand for trial by jury "no later than 14 days after the last pleading" that provides the basis for the jury trial. Fed. R. Civ. P. 38(b)(1). "A party waives a jury trial unless its demand is properly served and filed." *Id.* 38(d). Because a "complaint 'raises an issue' [triable to a jury] only once within Rule 38(b)'s meaning—when it introduces it for the first time[—

---

[2] Plaintiffs' request for attorney's fees is not sufficient to render an equitable suit eligible for a jury trial. *See CBS Broad., Inc. v. EchoStar Commc'ns Corp.*, 450 F.3d 505, 517 n.25 (11th Cir. 2006) ("There is no right to a jury trial . . . when the plaintiffs seek purely equitable relief such as an injunction," and "[a] request for attorney's fees does not change that result.").

a]mendments not introducing new issues will not give rise to a demand for a jury trial." *Guajardo v. Estelle*, 580 F.2d 748, 752-53 (5th Cir. 1978), *overruled in part on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). Plaintiffs' amended complaint did not raise any new issues that were not present in the original complaint, *compare* ECF No. 73, *with* ECF No. 1, and therefore Defendants' jury demand was due in January 2021, within two weeks of Plaintiffs filing and serving their original complaint over the final days of December 2020. Even if Defendants mistakenly counted the deadline from the amended complaint, their jury demand would have been due in early April 2021.

By any measure, Defendants' motion is long past due. When deciding whether to grant an out-of-time jury demand, courts in the Eleventh Circuit consider five factors:

> (1) whether the case involves issues which are best tried to a jury; (2) whether granting the motion would result in a disruption of the court's schedule or that of the adverse party; (3) the degree of prejudice to the adverse party; (4) the length of the delay in having requested a jury trial; and (5) the reason for the movant's tardiness in requesting a jury trial.

*Herrera v. 7R Charter Limited*, No. 21-11766, 2022 WL 42751, *4 (11th Cir. Jan. 5, 2022) (quoting *Parrot v. Wilson*, 707 F.2d 1262, 1267 (11th Cir. 1983)). Each of these factors weighs strongly against excusing Defendants' two-and-a-half-year delay.

**A.      The case does not involve issues best tried to a jury.**

First, and most fundamentally, this case does not involve issues that are best tried to a jury. Quite to the contrary, as explained above, courts—not juries—are best suited to decide cases seeking equitable relief. *See supra* Part I.B. Congress could have chosen to subject alleged violations of Section 11(b) to trial by jury, as it did in the VRA for certain criminal contempt proceedings. *See* 52 U.S.C. § 10310(a). But in its judgment Congress chose in 1965 not to provide similar procedures for allegations of voter intimidation and instead entrusted courts with voting rights enforcement. Defendants' contrary policy preferences are not grounds to second-guess Congress's enacted decision.

**B.      Granting a jury trial would disrupt the trial schedule.**

Second, Defendants are blithely dismissive of the consequences their belated request could have for the Court's operations. The Court has already made multiple efforts to calendar the trial in this case, first scheduling it for October 30, then exploring availability for a December trial, before finally settling on the October 26 "Bench Trial" start date. Docket Text Entry (July 28, 2023). Defendants never indicated during this scheduling process that they would be requesting a jury trial.

This case is altogether unlike *Daniel International Corp. v. Fischbach & Moore, Inc.*, 916 F.2d 1061 (5th Cir. 1990), which Defendants offer as support for

9

their request. *See* Mot. 5. First, *Daniel International* was a contract dispute seeking primarily legal remedies that are typically within a jury's purview. *Daniel Int'l*, 916 F.2d at 1064. Second, that case had remained on the court's jury calendar for nearly seven months prior to the motion to strike the jury demand, *id.*; here, in contrast, the case has never appeared on the Court's jury calendar and is currently scheduled for a bench trial. Third, the opposing party in *Daniel International* could not claim prejudice from the jury demand because it had been on notice of the scheduled jury trial for so long, *id*; here, the entire case has been litigated under the understanding that the Court would serve as factfinder. And fourth, the opposing party there did not object to the jury demand until more than one year after the court had granted a jury trial, *id.* at 1064–65; here, Plaintiffs have promptly filed their opposition to Defendants' motion.

While the Court is best positioned to determine whether its schedule can accommodate Defendants' jury request at this late hour, Defendants needlessly made that scheduling more difficult by failing to raise this consideration weeks ago when the Court and the parties exchanged multiple communications in an effort to identify a suitable "bench trail" date. *See* Ex. A. Accordingly, this factor weighs against Defendants' motion.

**C.    Granting a jury trial would prejudice Plaintiffs.**

Third, Defendants' delay in requesting a jury until the eve of trial directly prejudices Plaintiffs' preparation. By the time Defendants' motion is resolved, Plaintiffs will be in the throes of preparing witness examination, researching anticipated legal questions, and developing opening and closing arguments directed at a Court that is already familiar with the issues presented by this case. If Defendants succeed in replacing the Court with a jury, Plaintiffs will have to slam the brakes on their regular preparation and immediately redirect their efforts to drafting voir dire questions, preparing strategy for peremptory strikes, crafting jury presentations, negotiating jury instructions, and so on. It is extremely prejudicial to upend Plaintiffs' preparation at the last minute when there is no longer time for the extensive planning that high-stakes jury trials like this one would require.

**D.    Defendants delayed 31 months past the deadline to request a jury trial.**

Fourth, Defendants' delay in making their jury demand is significant. Although due in January 2021, the request was not filed until August 2023. For good reason, Defendants do not suggest that the 2.6-year length of their delay—more than 900 days after the deadline—weighs in favor of their motion. *Cf. Sullivan v. Sch. Bd. of Pinellas Cnty.*, 773 F.2d 1182, 1188 (11th Cir. 1985) (affirming denial of "very late" application for jury trial that was filed two years after deadline); *Herrera v. 7R*

*Charter Ltd.*, No. 1:16-cv-24031-KMW, 2020 WL 8768451, *4 (S.D. Fla. Oct. 23, 2020) (denying jury demand "filed over 500 days after the deadline"), *aff'd* No. 21-11766, 2022 WL 42751 (11th Cir. Jan. 5, 2022).

### E. Defendants have failed to justify their delay in requesting a jury trial.

Fifth, Defendants have failed to identify any compelling excuse for having missed the filing deadline so egregiously. Instead, Defendants float the bizarre—and false—possibility that Plaintiffs and Defendants chose not to include a jury demand in their initial filings as required by the Federal Rules because the Court had temporarily suspended jury trials due to the pandemic. Mot. 2. Had Defendants asked, Plaintiffs gladly would have explained that they did not request a jury trial because federal law requires this case to be tried to the Court. *See supra* Part I. Besides, the pandemic excuse is implausible. In 2020, the Northern District of Georgia was operating under a series of orders temporarily suspending jury trials for approximately one month at a time. *See* Gen. Order 20-01, Ninth Am., ECF No. 4. When Plaintiffs filed their original complaint on December 23, 2020—and in the subsequent weeks when Defendants' jury demand was due—jury trials were suspended only until February 28, 2021. *Id.* There was no reason for Defendants to have assumed in January 2021 that jury trials would remain suspended by the time this case was ready for trial. In fact, Defendants represented in the Joint Preliminary

Report and Discovery Plan that they believed an "[e]xtended discovery period is needed," ECF No. 54 at 5, furthering confirming that trial was unlikely to occur until well after court operations returned to normal. If Defendants believed they were entitled to a jury after Plaintiffs' pleadings were served—and they do not offer any evidence that they did—then they should have entered their demand within the timeframe prescribed by the Federal Rules, and any pandemic-related considerations could have been addressed at the appropriate time. No order from this Court ever suggested otherwise.

Defendants' only other excuse is to blame their contentious change in counsel earlier this year. Mot. 12. But the fact that Defendants' prior counsel quit (purportedly because of an alleged payment dispute, *see* Compl., *The Bopp Law Firm, PC v. True the Vote, Inc.*, No. 2:23-cv-120 (S.D. Ind. Mar. 16, 2023), ECF No. 1), does not give Defendants a new bite at every litigation decision that prior counsel made in the case. Allowing parties to reset filing deadlines—even deadlines from two years in the past—whenever they change lawyers would invite chaos and warp incentives.

It is no surprise, then, that courts routinely deny requests by new counsel to file a jury demand that was waived by prior counsel. In *Scrinko v. Reading Co.*, 117 F. Supp. 603 (D.N.J. 1954), for example, the district court rejected a belated jury

request where "[p]resent counsel merely voice[d] it as his opinion that his predecessor erred [by failing to timely file a jury demand] or was negligent in so doing." *Id.* at 606. Excusing the waiver in that circumstance, the court explained, would "countenance the rendering of the rules into impotency and an undermining of the very orderly procedures they are designed to effect." *Id.*; *see also Polak v. Koninklijke*, 19 F.R.D. 87, 88 (S.D.N.Y. 1956) ("The opinion of counsel that his predecessor erred or was negligent is not a compelling argument for [a belated transfer to the jury calendar].").

Moreover, Defendants have failed to justify their new counsel's own *six-month delay* in requesting a jury trial. Defendants' current counsel of record noticed appearances or applied for *pro hac vice* admission on February 9, 2023. ECF Nos. 211–15; *cf.* Docket Orders (Feb. 28, 2023) (granting *pro hac vice* applications). Once this substitution was completed, Defendants made no mention of a jury request. On May 25, 2023, Defendants signed a proposed pretrial order confirming "[t]his case will not be tried before a jury." ECF No. 236 ¶ 6; *see also id.* ¶¶ 7, 8, 9, 10, 11, 12, 22, 23 (similar). On July 20, 2023, the Court emailed "to inquire if any party or counsel has an objection to the Court moving the October 30, 2023 specially set *bench trial*" to December. Ex. A (emphasis added). Defense counsel responded with

a possible scheduling conflict but indicated no surprise or opposition to the bench trial setting. *Id.*

Now—in the middle of August—Defendants indicate for the first time their preference for a jury trial. None of the justifications offered for new counsel's own delay is persuasive. First, Defendants contend that they "mistakenly believed" that the bench trial selection in the proposed pretrial order "indicated that the parties had, before counsel's arrival, purposely selected a bench trial." Mot. 10. But Defendants were not mistaken; that is exactly what happened. And while Defendants cite a 1980 Massachusetts case for the notion that courts may be reluctant "to permit the inadvertence of an attorney" to forfeit a jury right, *Id.* at 12 (citing *Pawlak v. Metro. Life Ins. Co.*, 87 F.R.D. 717, 718–19 (D. Mass. 1980)), the rule in the Eleventh Circuit is that a trial court generally will be affirmed where it denies a jury demand that is untimely "due to mere inadvertence on the movant's part." *Parrott*, 707 F.2d at 1267.

Second, Defendants blame a mistaken docket entry that could not have reasonably caused their delay. Their motion excerpts what is ostensibly a screenshot of the docket captured between May 25 and July 28 that erroneously reflects a "Jury Trial" event docketed on April 11, 2023. Mot. 11. But Defendants were represented in April by their current counsel, who must have known that the Court never

15

scheduled a jury trial, and, in any event, "new counsel clarified with the Clerk of the Court that the Jury Trial docketing was itself an error." *Id.* Thus, any possible confusion was immediately resolved.

Finally, Defendants represent that their "new counsel only began to receive discovery documents from prior counsel in May 2023, and reviewed that discovery through July and to the present, so that new counsel has only recently begun to apprehend" the desirability of a jury trial. *Id.* at 11–12. But the Federal Rules require jury demands to be made within 14 days of a triable issue appearing in *pleadings*, *see* Fed. R. Civ. P. 38(b)(1)—not after a strategic review of all discovery. Plaintiffs' pleadings have remained publicly available on the docket, easily accessible without the need for prior counsel's cooperation.

In sum, Defendants have been on notice since the original filing in December 2020 that this matter would be tried to the Court. Whatever tactical advantage they perceive now in attempting to change course, the matter has been waived.

## CONCLUSION

For the foregoing reasons, Defendants' motion for jury trial should be denied.

16

Respectfully submitted, this 28th day of August, 2023.

Allegra J. Lawrence
Georgia Bar No. 439797
Leslie J. Bryan
Georgia Bar No. 091175
Maia Cogen
Georgia Bar No. 832438
Michelle L. McClafferty
Georgia Bar No. 161970
**LAWRENCE & BUNDY LLC**
1180 West Peachtree Street, Suite 1650
Atlanta, GA 30309
Telephone: (404) 400-3350
Fax: (404) 609-2504
allegra.lawrence-hardy@lawrencebundy.com
leslie.bryan@lawrencebundy.com
maia.cogen@lawrencebundy.com
michelle.mcclafferty@lawrencebundy.com

*/s/ Uzoma N. Nkwonta*
Marc E. Elias*
Uzoma N. Nkwonta*
Christina A. Ford*
Tina Meng Morrison*
Marcos Mocine-McQueen*
Joel J. Ramirez*
Jacob D. Shelly*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave., Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
melias@elias.law
unkwonta@elias.law
cford@elias.law
tmengmorrison@elias.law
mmcqueen@elias.law
jramirez@elias.law
jshelly@elias.law

*Counsel for Plaintiffs*
*Admitted *pro hac vice*

17

## **CERTIFICATE OF COMPLIANCE**

Pursuant to LR 7.1(D), N.D. Ga., I hereby certify that the foregoing brief has been prepared in accordance with the font type and margin requirements of LR 5.1, N.D. Ga., using a font type of Times New Roman and a point size of 14.

This 28th day of August, 2023           */s/ Uzoma N. Nkwonta*
                                                            Uzoma N. Nkwonta

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the within and foregoing brief with the Clerk of Court using the CM/ECF system, which will automatically send-e-mail notification to all counsel of record.

This 28th day of August, 2023

                                                            */s/ Uzoma Nkwonta*
                                                            Uzoma Nkwonta
                                                            *Counsel for Plaintiffs*