IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| FAIR FIGHT, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> TRUE THE VOTE, INC., *et al.*, <br><br> Defendants. | Case No. 2:20-cv-0302-SCJ |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JURY TRIAL**

Defendants do not have a right to a jury in this case. The right to a jury in a civil trial can be conferred either by statute or by the Seventh Amendment to the Constitution. *See* Fed. R. Civ. P. 38(a). But neither Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b), nor the Seventh Amendment provide a right to a jury where, as here, Plaintiffs seek only equitable relief. *See* Am. Compl. at 29–30, ECF No. 73. Because Defendants do not have a right to a jury trial, they could not have timely made a jury demand under Fed. R. Civ. P. 38 and cannot seek relief now under Fed. R. Civ. P. 39(b).

1

## ARGUMENT

### I. Section 11(b) of the Voting Rights Act Does Not Provide a Statutory Right to a Jury.

The text, statutory context, and history of Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b), make clear that the statute does not create a right to a jury.

Parties have a statutory right to a jury only if their claim is brought under a statute that affirmatively provides such a right. If the statute and its legislative history are silent, however, a Seventh Amendment analysis is required. *See Waldrop v. S. Co. Servs.*, 24 F.3d 152, 155 (11th Cir. 1994); *see also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 40 n.3 (1989) (explaining that the parties "appear correct in concluding that 'absent any specific legislation in force providing jury trials . . . [the parties'] right to jury trial in this proceeding must necessarily be predicated entirely on the Seventh Amendment'"); *Lehman v. Nakshian*, 453 U.S. 156, 165 (1981) (explaining that a right to a jury trial "requires an affirmative statutory grant of the right where [] the Seventh Amendment does not apply").

Section 11(b) neither expressly provides a right to a jury nor employs language authorizing "legal relief," compensation, or other terms that might create

2

a right to a jury. *See* 52 U.S.C. § 10307(b); *see also Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 347 (1998) (declining to find a statutory right where the statute "does not use the word 'legal' or other language denoting legal relief or rights"). The structure and context of Section 11(b) also reflect no evidence of congressional intent to confer a statutory right to a jury, such as discussing compensatory damages or expressly incorporating procedures of a different statute that guarantees trial by jury. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 708 (1999) (explaining that the finding of an implied statutory right was based on the statute's authorizing "legal … relief" in addition to "explicit incorporation of the procedures of the Fair Labor Standards Act, which had been interpreted to guarantee trial by jury"); *see also Feltner*, 523 U.S. at 347; *Tamosaitis v. URS Inc.*, 781 F.3d 468, 485 (9th Cir. 2015). The only civil monetary awards the Act expressly authorizes are attorneys' fees and costs, *see* 52 U.S.C. § 10310(e), which have long been recognized as forms of equitable relief not reserved for juries, *see Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1355 (11th Cir. 2019).

The legislative history of Section 11(b) bolsters this textual analysis and indicates that the lack of an express right to a jury in the Voting Rights Act reflects

Congress's deliberate choice to take these claims out of the hands of juries. Congress enacted Section 11(b) "against the backdrop" of its predecessor statute, Section 131(b) of the Civil Rights Act of 1957, 52 U.S.C. § 10101(b). *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019). When Congress was considering the Civil Rights Act of 1957 and the question of how to address the "lack of effective sanctions against private persons interfering with a citizen's exercise of a civil right," the issues of equitable remedies and the right to a jury became points of controversy. *United States v. Original Knights of the Ku Klux Klan*, 250 F. Supp. 330, 344–46 (E.D. La. 1965); *see also* Congressional Quarterly, *Congress Approves Civil Rights Act of 1957*, CQ Almanac 1957 (13th ed. 1958) (republished CQ Online ed., last accessed Aug. 18, 2023). Congress was aware that "[e]nforcement of civil rights through the use of an injunction and the contempt power of the courts would by-pass the jury system," but determined that "injunctive relief may be the most effective method of enforcing civil rights," especially "in communities hostile to civil rights and resentful against 'outside', that is, federal interference." *Original Knights of the Ku Klux Klan*, 250 F. Supp. at 345; *see also* H.R. Rep. No. 85-291, Minority Rep., at 46–49 (Apr. 1, 1957).

After extensive negotiations on the issue of access to jury trials in the Civil

4

Rights Act of 1957, Congress passed a compromise bill. This legislation deviated from the historical rule—which did not provide a right to a jury trial in cases of civil or criminal contempt, *see Muniz v. Hoffman*, 422 U.S. 454, 462 (1975)—and granted a limited right to a jury trial in only *criminal* contempt proceedings where the penalties assessed would be in excess of $300 or forty-five days of incarceration. *Compare* Civil Rights Act of 1957, H.R. 6127, 85th Cong. Part IV–V (as enacted Sept. 9, 1957) *with* H.R. 6127, 85th Cong. Part IV–V (as printed with Senate Amendments Aug. 7, 1957) *and* H.R. 6127 85th Cong. Part IV (as introduced Mar. 19, 1957); *see also Original Knights of the Ku Klux Klan*, 250 F. Supp. at 345 n.14. But Congress provided no such exception to the general rule of non-jury trials in cases seeking equitable relief under Section 131(b). As the court in *Original Knights of the Ku Klux Klan* observed:

> Congress considered the pros and cons of these and many other issues when the Administration submitted an omnibus civil rights bill in 1956. The focal issues—the contempt power, the jury system, and the relationship of the States with the Nation—produced one of the great debates in American parliamentary history. By the time the bill was cut down to a voting rights law, as the Civil Rights Act of 1957, 71 Stat. 634, Congress and the country thoroughly understood the significance of the legislation. Congress had opened the door, then nearly shut, to national responsibility for protecting civil rights—created or guaranteed by the Nation—by injunction proceedings against private persons.

*Id*. at 345–46.

Section 11(b) was enacted just eight years later, closely tracking the text of Section 131(b) but deleting the "purpose" clause to remove the intent requirement. *See Voting Rights Act of 1965: Hearing Before the H. Comm. on the Judiciary*, 89th Cong. 12 (statement of Att'y Gen. Nicholas Katzenbach), https://perma.cc/N9S4-KH2P (explaining that Section 131(b) had been rendered "largely ineffective" because of "the practice of some district courts to require the Government to carry a very onerous burden of proof of 'purpose'"). But the core enforcement mechanism of the statute remained the same, including Congress's chosen remedial scheme of non-jury trials for individuals in civil proceedings accused of voter intimidation, threats, or coercion. *See Muniz*, 422 U.S. at 470 ("To read a substantial change in accepted practice into a revision of the [law] without any support in the legislative history of that revision is insupportable.").

Section 11(b)'s text, context, and history make clear that it does not confer a statutory right to trial by jury.

## II. The Seventh Amendment Does Not Provide a Constitutional Right to a Jury in This Context.

Because Section 11(b) does not confer a statutory right to a jury, the Court

must consider the constitutional question. Defendants assume, largely without argument, that they have a Seventh Amendment right to a jury in this case. *See* Mot. at 3, ECF No. 237. They do not.

"Determining whether a right to a jury trial exists turns on whether the claims were historically cognizable at law or considered equitable. . . . For those claims which traditionally were cognizable at law, the right to a jury is generally preserved; for those claims which historically were considered equitable, no jury trial is mandated." *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1088 (11th Cir. 2016) (citing *Phillips v. Kaplus*, 764 F.2d 807, 813 (11th Cir. 1985)). "In particular, a right to a jury trial does not exist for suits seeking only injunctive relief, which is purely equitable in nature." *Id.* (citing *City of Monterey*, 526 U.S. at 719); *see also CBS Broad., Inc. v. EchoStar Commc'ns Corp.*, 450 F.3d 505, 517–19 n.25 (11th Cir. 2006) ("There is no right to a jury trial [] when the plaintiffs seek purely equitable relief such as an injunction."); *Ford v. Citizens & S. Nat'l. Bank*, 928 F.2d 1118, 1122 (11th Cir. 1991) ("Purely equitable claims, even those involving factual disputes, are matters to be resolved by the court rather than a jury.").

Plaintiffs here request three forms of relief—injunctive, declaratory, and

7

attorney's fees and costs.  *See* Am. Compl. at 29–30.  None creates a constitutional right to a jury.

*First*, "[i]t is settled law that the Seventh Amendment does not apply" to "suits seeking only injunctive relief."  *City of Monterey*, 526 U.S. at 719; *see also FN Herstal SA*, 838 F.3d at 1088 ("[A] right to a jury trial does not exist for suits seeking only injunctive relief, which is purely equitable in nature."); *A.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1290 (11th Cir. 2018) ("Because only injunctive relief is available, a plaintiff is not entitled to a jury trial.").

*Second*, Plaintiffs' requests for attorneys' fees and costs are squarely equitable in nature.  *See Hard Candy*, 921 F.3d at 1355 ("[I]t is undisputed that a plaintiff seeking only injunctive relief, costs, and fees would not be entitled to a jury trial."); *see also CBS Broad., Inc.*, 450 F.3d at 517–19 n.25 (explaining that attorneys' fees do not create a right to a jury trial).

*Finally*, Plaintiffs' request for declaratory relief does not change the outcome of this analysis.  The Supreme Court has long considered the Declaratory Judgment Act to be a purely "procedural" mechanism that leaves "substantive rights unchanged."  *Medtronic, Inc. v. Mirowski Fam. Ventures*, 571 U.S. 191, 199 (2014).  Thus, declaratory judgment actions "are neither legal nor equitable" in

nature, and "the right to a jury trial in a declaratory judgment action depends on whether there would have been a right to a jury trial had the action proceeded without the declaratory judgment vehicle." *St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1198 (11th Cir. 2009) (Wilson, J., concurring); *see also Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 284 (1988) ("Actions for declaratory judgments are neither legal nor equitable, and courts have therefore had to look to the kind of action that would have been brought had Congress not provided the declaratory judgment remedy."). Here, even in the absence of a declaratory judgment vehicle, Plaintiffs would have been able to seek injunctive—i.e. equitable—relief under Section 11(b). And because this case would have been brought in equity regardless of the availability of declaratory relief, no Seventh Amendment right attaches. *Cf. Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520, 1523 (11th Cir. 1987); *see also Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 649 (7th Cir. 2002) ( "[A] plaintiff who is seeking equitable relief and not damages cannot wrest an entitlement to a jury trial by the facile expedient of attaching a claim for

declaratory judgment.").[1]

Ignoring this clear precedent, Defendants argue—without any support in case law or historical evidence—that Plaintiffs' claims, "sounding in tort and alleged civil rights violations, are the sort traditionally assigned to juries of one's peers." Mot. at 3.  But courts have routinely found no constitutional right to a jury in analogous civil rights actions where plaintiffs seek only declaratory and injunctive relief. *See, e.g.*, *Wilson v. Bailey*, 934 F.2d 301, 305 n.4 (11th Cir. 1991) (explaining "section 1983 injunctive and declaratory relief is not triable by jury"); *City of Monterey*, 526 U.S. at 751–52 (Souter, J., concurring in part and dissenting in part) (explaining that § 1983 claims for injunctive and declaratory relief do not implicate a right to a jury trial); *Doe v. Barrow Cnty., Ga.*, No. 2:03-CV-156-WCO, 2005 WL 6033020, at *3 (N.D. Ga. Mar. 3, 2005) (finding a First Amendment "action seeking injunctive and declaratory relief is equitable in nature and not entitled to a jury trial").

---

[1] The Declaratory Judgment Act also does not create an independent statutory right to a jury.  *See* Fed. R. Civ. P. 57; *see also Sunshine Co. Food Distrib., Inc. v. U.S. Citizenship & Immigr. Servs.*, 362 F. App'x 1, 4 (11th Cir. 2010) (explaining that the Declaratory Judgment Act "'preserves the right to jury trial for both parties,' but does not create a right to a jury trial"); *Marseilles Hydro Power*, 299 F.3d at 649.

Further, as explained above, *even if* Plaintiffs' claim sounded in tort analogous to an 18th-century English claim at law—which it does not—the fact that Plaintiffs only seek equitable relief is dispositive here. As the Seventh Circuit explained, "the historical inquiry [is] not about unsettling the principle that there is no right to a jury trial when the plaintiff is seeking only equitable relief; that principle is firm." *Marseilles Hydro Power*, 299 F.3d at 648–49; *see also Bluegreen Vacations Unlimited, Inc. v. Timeshare Laws. P.A.*, No. 20-24681-Civ-Scola, 2023 WL 3510374, at *4 (S.D. Fla. May 17, 2023) ("The overwhelming authority on this issue holds that there is no right to a jury trial in suits seeking only injunctive relief, regardless of the nature of the underlying cause of action.").

## III. Defendants' Motion Under Rule 39(b) Is Improper and Should Be Denied.

A substantial portion of Defendants' brief seeks to justify their belated request for a jury trial under Rule 39(b). That, however, is a secondary problem. Because Defendants have no statutory or Seventh Amendment right to a jury, their request for a jury trial under Rule 39(b) is improper and should be denied. Rule 39(b) states that "the court may, on motion, order a jury trial on any issue for which a jury might have been demanded." Fed. R. Civ. P. 39(b). But a party can only make such a demand if they have been provided a right to a jury trial either by

11

the Seventh Amendment or a federal statute. *See* Fed. R. Civ. P. 38 & 39(a)(2); *see also Sullivan v. School Bd. of Pinellas Cnty.*, 773 F.2d 1182, 1187–88 (11th Cir. 1985) (analyzing in the first instance whether the appellant's claims were equitable in nature and the proper subject of a jury trial when considering a belated request for a jury trial); *FN Herstal SA*, 838 F.3d at 1088–89 (rejecting jury demand raised under the Federal Rules when "there is no federal right to a jury trial" provided by the Seventh Amendment or a federal statute). Because Defendants do not have a statutory or constitutional right to a jury in this case, there are no issues "for which a jury might have been demanded" and thus no relief is available to Defendants under Rule 39(b). Defendants' discussion of the *Parrott* test—which governs belated jury demands under Rule 39(b)—is therefore also inapt. *See* Mot. at 4–5; *see also Parrott v. Wilson*, 707 F.2d 1262, 1267 (11th Cir. 1983).

If Defendants had wanted a jury trial despite not having a right to one, they would need consent from the parties. *See* Fed. R. Civ. P. 39(c). But the parties have not consented. As discussed *supra* Part I, use of juries to adjudicate Section 11(b) claims contravenes the remedial scheme provided by Congress to protect voters from the intimidation, threats, and coercion they may encounter, often

within their own communities.

For the foregoing reasons, the United States respectfully requests this Court deny Defendants' motion for a jury trial and proceed to adjudicate this matter via bench trial.

Date: August 28, 2023

Respectfully submitted,

RYAN K. BUCHANAN
United States Attorney
Northern District of Georgia

KRISTEN CLARKE
Assistant Attorney General

*/s/ Aileen Bell Hughes*
AILEEN BELL HUGHES
Georgia Bar No. 375505
Assistant U.S. Attorney
Office of the United States Attorney
600 U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303
Phone: (404) 581-6000
Fax: (404) 581-6181

*/s/ Dana Paikowsky*
T. CHRISTIAN HERREN, JR.
TIMOTHY F. MELLETT
DANA PAIKOWSKY
JENNIFER J. YUN
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.923
Washington, D.C. 20530
Phone: (800) 253-3931
Fax: (202) 307-3961

13

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2023, I electronically filed the foregoing with the clerk of the court using the CM/ECF system, which will send notification of this filing to counsel of record.

*/s/ Dana Paikowsky*
DANA PAIKOWSKY
Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice

## CERTIFICATE OF COMPLAINCE

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing motion has been prepared using Times New Roman size 14 font.

*/s/ Dana Paikowsky*
DANA PAIKOWSKY
Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
