**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | |
|---|---|
| FAIR FIGHT, INC., SCOTT BERSON, JOCELYN HEREDIA, and JANE DOE, | |
| Plaintiffs, | Civil Action No. 2:20-cv-00302-SCJ |
| v. | |
| TRUE THE VOTE, INC., CATHERINE ENGELBRECHT, DEREK SOMERVILLE, MARK DAVIS, MARK WILLIAMS, RON JOHNSON, JAMES COOPER, and JOHN DOES 1-10, | |
| Defendants. | |

**PLAINTIFFS' BRIEF IN SUPPORT OF
MOTION FOR DISCOVERY SANCTIONS**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

BACKGROUND ..................................................................................2

   I.   Initial Discovery Dispute.............................................................2

   II.   OpSec Deposition........................................................................4

   III.   TTV Deposition............................................................................6

   IV.   Summary Judgment Briefing .....................................................8

LEGAL STANDARD..........................................................................9

ARGUMENT .......................................................................................9

   I.   Defendants sabotaged the OpSec and TTV depositions in violation of the federal rules. ......................................................................................9

      A.   The witnesses wrongfully refused to answer deposition questions. ........10

      B.   Defense counsel and the witnesses wrongfully conferred during the depositions...................................................................................14

      C.   Defense counsel wrongfully coached deposition witnesses through speaking objections. ....................................................................15

   II.   The Court should enter adverse inferences to prevent Defendants from enjoying a strategic windfall from their misbehavior. .........................................18

CONCLUSION ....................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adolph Coors Co. v. Movement Against Racism & the Klan*,
  777 F.2d 1538 (11th Cir. 1985) ...........................................................................19

*Atta v. Cisco Sys., Inc.*,
  No. 1:18-cv-1558-CC-JKL, 2019 WL 12383117 (N.D. Ga. Apr.
  26, 2019) ....................................................................................................................14

*Brincko v. Rio Props., Inc.*,
  278 F.R.D. 576 (D. Nev. 2011) .........................................................................13

*Hickman v. Taylor*,
  329 U.S. 495 (1947)...............................................................................................23

*Higgs v. Costa Crociere S.P.A. Co.*,
  969 F.3d 1295 (11th Cir. 2020) ...................................................................9, 19

*Mitnor Corp. v. Club Condominiums*,
  339 F.R.D. 312 (N.D. Fla. 2021) ...............................................................*passim*

*Plaintiff B. v. Francis*,
  No. 5:08cv79–RS/AK, 2009 WL 455392 (N.D. Fla. Feb. 23, 2009).................18

*Redwood v. Dobson*,
  476 F.3d 462 (7th Cir. 2007) ................................................................................9

*Sagax Dev. Corp. v. ITrust S.A.*,
  No. 19-CV-3386 (RA)(KNF), 2021 WL 5360121 (S.D.N.Y. Nov.
  17, 2021) ....................................................................................................................21

*SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*,
  250 F. Supp. 3d 244 (W.D. Ky. 2017)........................................................19, 21

*Schuh v. Clayton*,
  No. 20-10468, 2022 WL 4553042 (E.D. Mich. Sept. 28, 2022) .......................21

*United States v. A Single Fam. Residence & Real Prop. Located at*
  *900 Rio Vista Blvd.*,
  803 F.2d 625 (11th Cir. 1986) ...........................................................20

*United States v. Proctor & Gamble Co.*,
  356 U.S. 677 (1958)..........................................................................23

*VirnetXInc. V. Cisco Syst., Inc.*,
  No. 6:10-CV-417, 2012 WL 7997962 (E.D. Tex. Aug. 8, 2012)......................20

**Other Authorities**

Fed. R. Civ. P. 30(c)(2)...........................................................10, 13, 14, 15

Fed. R. Civ. P. 30(d)(2)...................................................................19, 22

Fed. R. Civ. P. 37(b)(2)(A) ...................................................................19

# INTRODUCTION

In response to this Court's invitation in its summary judgment order, *see* Order at 47 n.34, ECF No. 222, Plaintiffs hereby request the entry of adverse inferences to remedy Defendants' successful sabotage of the final and most important two depositions in this case: those of Mr. Gregg Phillips, the founder and managing partner of OpSec Group LLC, and Ms. Catherine Engelbrecht, a named defendant herself and the founder and president of Defendant True the Vote, Inc. ("TTV"). Because Plaintiffs claim that TTV and Ms. Engelbrecht violated the Voting Rights Act by filing hundreds of thousands of obviously meritless voter challenges— challenges that were generated by Mr. Phillips and OpSec—it was clear that these two witnesses (and likely these two witnesses alone) possessed the full details about how and why this scheme was perpetrated. Regrettably, the witnesses and Defendants' lead counsel, Mr. James Bopp, Jr., ensured that several of this plot's most damning details would not be revealed in deposition, no matter how many federal rules or orders from this Court demanded otherwise.

The deposition transcripts read like a case study in ethical lapses. Defense counsel repeatedly interrupted to confer with the witnesses about how to answer pending questions. He interjected with objections, not to the style or substance of questions, but to his own witnesses' answers when he sensed an opportunity to

interpose additional coaching. He instructed Mr. Phillips not to answer questions, without any claim of privilege, *over forty times*. And all of this was committed with condescension and belligerence unbefitting the Northern District of Georgia.

Plaintiffs request that the Court impose an appropriate sanction to mitigate the prejudice inflicted by this systematic obstruction. While much of the deposition misbehavior cannot be undone, the Court should enter three adverse inferences related to specific lines of inquiry where defense counsel's interruptions and the witnesses' refusal to answer clearly prevented Plaintiffs' counsel from eliciting honest testimony. Specifically, the Court should find (1) that Mr. Phillips considered Mark Davis's challenge process to be invalid and unreliable; (2) that TTV was responsible for @Crusade4Freedom tweets about Georgia voter challenges in 2020; and (3) that Mr. Phillips coordinated with TTV to publicize allegations of illegal voting that lacked foundation after the 2016 presidential election. The Court should also require Defendants to pay attorney fees and costs associated with the filing of this motion.

## BACKGROUND

### I.    Initial Discovery Dispute

On December 3, 2021, Plaintiffs shared with the Court their concerns with defense counsel's representations that counsel would instruct Ms. Engelbrecht and

Mr. Phillips not to answer questions about various topics during the Rule 30(b)(6) depositions of TTV and OpSec. *See* Ex. A at 1. Specifically, defense counsel had indicated their intention to prevent Plaintiffs from eliciting answers about, for example, TTV's activities in states other than Georgia; activities occurring between 2012 and 2016; conduct that occurred after, rather than before, an election; and OpSec's work with TTV outside of the January 2021 runoff. *Id.* After holding a discovery conference on December 17, 2021, the Court largely adopted Plaintiffs' position in the dispute. *See* Order (Dec. 2, 2021), ECF No. 142 ("2021 Order").

First, the Court admonished that "Defense Counsel *shall not instruct individual and Rule 30(b)(6) witnesses to not answer questions* absent compliance with applicable discovery rules and law." *Id.* at 2 (emphasis added).  Next, the Court ordered TTV and OpSec to produce witnesses adequately prepared to answer questions related to topics listed in Plaintiffs' respective deposition notices, which the Court explicitly permitted to include pre- and post-election activities from 2012 onward, so long as questions about activities in other states were limited to states that Plaintiffs had represented were their primary focus: Texas, Ohio, Pennsylvania, Michigan, and Wisconsin. *Id.* at 2. The Court concluded, "No other limitations on discovery are warranted at this time." *Id.* at 3.

3

## II.     OpSec Deposition

On January 7, 2022, Plaintiffs served notice of their intention to depose OpSec, through its designated agent Gregg Phillips, on January 25, 2023, about nine topics. *See* OpSec Dep. Notice, Ex. B. At the outset of this remote deposition, Mr. Phillips agreed that it would not be appropriate to break while a question was pending or to receive advice from counsel about how to answer a question. OpSec/Phillips Tr. 11:1–4; *id.* 11:13–12:4. Because Mr. Phillips was appearing both in his individual capacity and as OpSec's Rule 30(b)(6) representative, he also agreed that all questions would be asked, and therefore all answers would be attributed, both to Mr. Phillips individually and to OpSec, unless specified otherwise. *Id.* 15:2–8. The deposition then quickly deteriorated, as defense counsel instructed the witness not to answer no fewer than 42 questions that defense counsel deemed "irrelevant" or "beyond the scope of the subject matters."[1] Mr. Phillips took this advice and refused to answer any of these questions.

---

[1] *See, e.g., id.* 18:6–11; 20:9–13; 21:5–9; 21:11–15; 22:3–12; 24:19–25:8; 27:18–28:20; 29:4–9; 29:21–30:4; 31:13–20; 35:11–16; 36:2–37:12; 37:14–38:3; 42:3–10; 43:5–17; 43:19–22; 44:2–4; 44:6–8; 44:10–13; 44:15–19; 47:19–48:3; 48:19–49:5; 49:7–10; 62:21–63:9; 65:14–17; 65:19–21; 66:21–67:8; 68:5–10; 68:18–21; 69:6–8; 70:9–11; 72:11–73:8; 74:4–13; 155:11–15; 155:20–156:2; 156:6–10; 157:15–158:5; 173:7–12; 173:14–17; 174:1–11; 175:18–22; 176:2–5; 176:22–177:6; 177:8–13; 178:5–9.

In addition to these obstreperous instructions not to answer questions, without any suggestion that the answers would be privileged, defense counsel and Mr. Phillips twice conferred while a question was pending. The first time was in response to a question inquiring whether Mr. Phillips performed any work for TTV before the November 2020 general election. Mr. Phillips asked his attorney to confer "about how to answer that"; though Plaintiffs' counsel insisted on an answer to the question, defense counsel declared, "We will click off both our video and audio and I will consult with my client." *Id.* 50:11–22. They proceeded to do just that.

The second time was in response to questions about a document co-Defendant Mark Davis produced related to his attempted matching of the voter file to NCOA data, which showed counts for "insufficient data," "address not found," and "multiple responses." *Id.* 103:2–8. Plaintiffs' counsel asked, "Am I understanding correctly that you did not develop any similar counts for your analysis?" *Id.* 103:9–11. Mr. Phillips answered, "No, my guess is he didn't use either CASS or DPV. And I would suggest that he didn't clean the rolls as it relates to identity verification first or he wouldn't have had this. This is bad process." *Id.* 103:12–16. After Plaintiffs' counsel attempted to clarify, "Okay. What should Mr. Davis have done?", defense counsel interjected, "Excuse me. I need to talk to my client for a second, so we will

go off." *Id.* 103:17–19. When the proceedings resumed, Mr. Phillips refused to elaborate on his criticism of Mr. Davis's process. *Id.* 104:4–16.

An additional four times, defense counsel interrupted to coach Mr. Phillips not to elaborate in his answers or otherwise to stop speaking mid-answer. *See id.* 71:19–20; 77:8–9; 122:11–12; 133:21–22. And rather than clarify the nature of his objections so that Plaintiffs' counsel could ascertain "if there's a way the question needs to be rephrased," defense counsel responded, "The way this works, I don't have to answer your questions." *Id.* 66:4–11.

### III.   TTV Deposition

The next day, Plaintiffs took the deposition of Ms. Engelbrecht, who appeared in her personal capacity and as the representative of TTV. *See* TTV/Engelbrecht Tr. 10:21–11:3. Just as Mr. Phillips had agreed in the OpSec deposition, Ms. Engelbrecht confirmed that it would be inappropriate to interrupt the deposition while a question was pending, *id.* 13:10–15, and that it would be inappropriate for her attorney to instruct her how to answer a specific question, *id.* 15:4–12. Yet, once again, that is precisely what happened.

After Plaintiffs' counsel asked Ms. Engelbrecht to explain the role of an individual she identified as having directed social media posts for the Time for a Hero organization—which Ms. Engelbrecht oversaw, *id.* 41:10–12, and which used

the same taglines as a @Crusade4Freedom Twitter account that posted about Georgia voter challenges, *id.* 263:8–14—defense counsel interjected, "I have to unmute myself. I would like to talk to my client for one minute here. So, if Catherine, you would turn off your video and audio, I will do the same and I will call you." *Id.* 45:2–8. While Plaintiffs' counsel was in the process of objecting to this mid-question conferral, defense counsel interrupted, "You can purport to instruct me however you wish. Good-bye." *Id.* 45:11–17.

Defense counsel repeated this behavior after a discussion about TTV's volunteer training, interrupting the deposition and demanding a private conferral with Ms. Engelbrecht. *Id.* 103:7–9. Afterwards, when Plaintiffs' counsel asked Ms. Engelbrecht to describe the nature of the conferral, defense counsel instructed her not to answer. *Id.* 104:15–22. Plaintiffs' counsel objected to these repeated conferrals, and noted that their subject matter was not protected by attorney-client privilege unless the purpose of the conferral was to ascertain whether a privilege applied. *Id.* 105:1–11. Defense counsel responded that he would continue to confer with his client whenever he wanted to, and concluded, "but you can make your objection. It doesn't matter. Go ahead." *Id.* 105:17–18.

As in the OpSec deposition, defense counsel instructed Ms. Engelbrecht not to answer questions without asserting any claim of privilege. *See id.* 113:7–115:4.

Defense counsel also, once again, repeatedly "objected" to Ms. Engelbrecht's answers as an opportunity to coach her response. When Plaintiffs' counsel asked defense counsel to explain the nature of one such objection, defense counsel responded, "You are not entitled to ask questions of me." *Id.* 51:21–52:16. After Plaintiffs' counsel explained his right under the federal rules to cure any defect in his question, defense counsel responded, "I will accommodate you this time" and confirmed that his objection was to Ms. Engelbrecht rephrasing the question. *Id.* 52:17–53:6. When Plaintiffs' counsel asked, "So, you are objecting to your witness's answer?", defense counsel responded, "You have heard my objection." *Id.* 53:7–10.

A few minutes later, defense counsel began loudly speaking over Ms. Engelbrecht's answer to a question. *Id.* 72:15–22. When Plaintiffs' counsel asked whether defense counsel was asserting an objection, defense counsel replied, "If you stop talking, I will interpose my objection. My objection is, Catherine, you are not to rephrase the question. You are to answer the question. If you don't know the—if you can't answer the question because it is unclear or whatever, then ask him to rephrase the question. And that is my objection." *Id.* 73:1–12.

## IV.    Summary Judgment Briefing

Plaintiffs raised several of these incidents in their motion for summary judgment. *See, e.g.*, Pls.' Mot. Summ. J. ("MSJ Mot.") at 14 n.4 (noting defense

counsel instructed Mr. Phillips not to answer questions about his 2016 voter fraud claims), ECF No. 156-1; *id.* at 23 n.7 (noting defense counsel conferred with Mr. Phillips after Mr. Phillips testified that Mr. Davis used a "bad process"); *id.* at 30 n.9 (noting defense counsel conferred with Ms. Engelbrecht while question was pending about Time for a Hero social media posts). In its order resolving the cross-motions for summary judgment, the Court invited Plaintiffs to "reraise the issue in a pre-trial motion." Order at 47 n.34, ECF No. 222.

## LEGAL STANDARD

Whether imposed pursuant to the federal discovery rules or the court's inherent power, discovery sanctions are a matter of the district court's discretion. *See Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1304 (11th Cir. 2020).

## ARGUMENT

**I.    Defendants sabotaged the OpSec and TTV depositions in violation of the federal rules.**

"Because depositions take place in law offices rather than courtrooms, adherence to professional standards is vital." *Redwood v. Dobson*, 476 F.3d 462, 469–70 (7th Cir. 2007). These standards include strict prohibitions—with limited exceptions inapplicable here—against instructing witnesses not to answer questions, conferring with witnesses during the deposition, and coaching the witness through

speaking objections. Defense counsel and the witnesses violated each of these in a manner that severely prejudiced Plaintiffs' ability to obtain discovery and prosecute their case.

### A. The witnesses wrongfully refused to answer deposition questions.

Rule 30 is clear: "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3) [related to terminating a deposition conducted in bad faith]." Fed. R. Civ. P. 30(c)(2). Further eliminating any conceivable ambiguity, this Court ordered in advance of the OpSec and TTV depositions that "Defense Counsel shall not instruct individual and Rule 30(b)(6) witnesses to not answer questions absent compliance with applicable discovery rules and law." 2021 Order at 2.

None of defense counsel's objections during the OpSec deposition were made to preserve a privilege or present a Rule 30(d)(3) motion. Instead, counsel instructed Mr. Phillips not to answer questions that counsel perceived as "being beyond the scope of the subject matter." *See, e.g.*, OpSec/Phillips Tr. 18:8–11; 20:11–13; 21:7– 9; 21:13–15; 22:8–12; 24:21–25:1; 27:21–28:3; 31:16–20; 35:13–16; 36:6–13; 63:3–9; 65:15–17; 66:13–15; 65:20–21; 67:5–8; 68:7–10; 69:7–8; 70:10–11; 73:6– 8; 155:22–156:2; 156:8–10; 158:2–5; 173:16–17; 175:20–22; 176:4–5; 177:3–6;

177:12–13; 178:7–9. That is not acceptable grounds for an instruction not to answer questions in a deposition. "When the deponent is a designated corporate representative pursuant to Rule 30(b)(6), and the examining attorney poses questions that are outside the scope of the 30(b)(6) designation, counsel cannot instruct the witness not to answer the questions solely because they exceed the scope of the designation." *Mitnor Corp. v. Club Condominiums*, 339 F.R.D. 312, 321 (N.D. Fla. 2021). "If the corporate-representative deponent lacks sufficient knowledge to answer a question, he can simply state as much. [But] if the deponent knows from his personal knowledge the answer to the question—even though it is beyond the scope of the Rule 30(b)(6) designation—*he must answer the question*." *Id.* at 321 (emphasis added).[2]

Defense counsel occasionally invoked the Court's 2021 Order as justification for his instructions not to answer, but these objections were substantively meritless and procedurally deficient. The 2021 Order defined the temporal and geographic scope of Plaintiffs' "questions regarding True the Vote, Inc.'s and OpSec Group, LLC's pre- and post-election activities," permitting questions on these topics dating

---

[2] Plaintiffs' counsel's questions were, to be sure, consistently within the scope of the noticed topics. But because the Rules required Mr. Phillips to answer questions even if they were outside the negotiated subject matters, Plaintiffs will not belabor this explanation for each of the dozens of contested questions.

back to 2012 (as Plaintiffs requested, rather than the 2016 limit Defendants had proposed, *see* Ex. A at 1), and limited questions about TTV's and OpSec's activities to the six states that Plaintiffs indicated were the focus of their inquiry to mitigate any burden on Defendants of having to prepare a witness about discrete election activities pursued across the country. 2021 Order at 2. None of Plaintiffs' questions to Mr. Phillips implicated either limitation.

Because OpSec was not founded until 2020, *see* OpSec/Phillips Tr. 36:15–19, all of Plaintiffs' counsel's questions about pre-2020 activities were necessarily directed to Mr. Phillips in his personal capacity.[3] Thus, these questions could not have been outside the scope of OpSec 30(b)(6) deposition topics or outside the scope of the Court's 2021 Order—which resolved disputes over the scope of OpSec 30(b)(6) deposition topics—because Mr. Phillips had no right in his individual capacity to notice of potential deposition subject matters. *Compare* Fed. R. Civ. P. 30(b)(6) (requiring "the serving party and the [deponent] organization [to] confer in good faith about the matters for examination"), *with id.* 30(b)(1) (requiring deposition notice to contain only "the time and place of the deposition and, if known,

---

[3] Plaintiffs' counsel made this point explicit during the deposition. *See* OpSec/Phillips Tr. 36:20–37:1 ("So for these questions that are before OpSec was created, these will be questions in your individual capacity without regard to the topics that were [attached to the Rule 30(b)(6) deposition notice]."

the deponent's name and address"). Moreover, the only questions Plaintiffs asked Mr. Phillips that concerned activities predating 2012 or outside of the six enumerated states and that drew objections were about Mr. Phillips' checkered employment history. *See* OpSec/Phillips Tr. 176:11–178:9. While defense counsel may have preferred to avoid testimony that would undermine Mr. Phillips's methods and reveal his motives to generate the lists of targeted Georgia voters in 2020, a desire to avoid embarrassment or damaging testimony cannot justify instructions not to answer. By repeating this instruction again and again for reasons disallowed by Rule 30(c)(2), defense counsel inexcusably obstructed Plaintiffs' right to take discovery.

In addition to being substantively meritless, defense counsel's objections were procedurally defective. "When an attorney instructs a deponent not to answer a question based on one of the reasons enumerated in Rule 30(c)(2), he must *immediately* seek a protective order from the relevant court, unless one was obtained prior to the deposition or the examining counsel *on the record* agrees to withdraw the objectionable question." *Mitnor Corp.*, 339 F.R.D. at 319 (emphases in original). "Unless the examining attorney agrees to withdraw the offending question or a party already has obtained a protective order, objecting counsel violates Rule 30(c)(2) when he instructs a deponent not to answer a question and fails to move for a protective order." *Id.* at 319–20; *see also Brincko v. Rio Props., Inc.*, 278 F.R.D.

13

576, 581 (D. Nev. 2011) ("The remedy for [improper] deposition questioning is not simply to instruct a witness not to answer. Rather, it requires suspending the deposition and filing a motion [to terminate or limit the deposition].""). Because defense counsel never moved for a protective order, his violation of Rule 30(c)(2) is incontrovertible.

### B.  Defense counsel and the witnesses wrongfully conferred during the depositions.

"[M]id-deposition conferences between witnesses and counsel are permissible solely for the purpose of determining whether to assert a privilege or similar protection." *Atta v. Cisco Sys., Inc.*, No. 1:18-cv-1558-CC-JKL, 2019 WL 12383117, at *3 (N.D. Ga. Apr. 26, 2019). "[W]hen such a conference occurs, the conferring attorney should place on the record the fact that the conference occurred, the subject of the conference, and the decision reached as to whether to assert a privilege or protection." *Id.* Any other conference is unprotected by the attorney-client privilege and the deposing attorney may inquire about its contents. *Id.*

Mr. Bopp never indicated that any of his four mid-deposition conferrals—twice with Mr. Phillips, and twice with Ms. Engelbrecht—were for the purpose of ascertaining whether a privilege applied. *See* OpSec/Phillips Tr. 50:11–22, 103:17–19; TTV/Engelbrecht Tr. 45:2–17; 103:7–9. In fact, he never disclosed any purpose for the conferrals, even after Plaintiffs' counsel requested an explanation. *See*

14

TTV/Engelbrecht Tr. 104:15–16. After defense counsel suggested that the conferral was protected by attorney-client privilege, Plaintiffs' counsel explained that it "was not covered by a privilege unless you meet the requirements of the federal rules and unless the conferral is for the purposes of ascertaining whether the privilege applies." *Id.* 104:17–105:8. Besides the mocking suggesting that Plaintiffs' counsel's objection "doesn't matter," defense counsel's only substantive response was that "[t]here was no pending question" when this conferral was held. *Id.* 105:12–18. That detail, however, merely confirms that the conferral must have been about something other than whether a particular question implicated privileged information.

### C. Defense counsel wrongfully coached deposition witnesses through speaking objections.

The federal rules require deposition objections to "be stated concisely in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2). Courts have specifically condemned deposition objections that are "designed to prod the deponent to raise the same objection voiced by counsel," "used to alert the deponent that the examiner is eliciting information harmful to the party represented by the objecting counsel," "designed to catalyze reticence on the part of the deponent," or "designed to antagonize the examiner and interrupt the flow of the deposition." *Mitnor Corp.*, 339 F.R.D. at 317–18. "Regardless of their motivation and purpose in

a particular context, [these] speaking objections are impermissible because they inhibit the truth-seeking function of depositions." *Id.* at 318.

Defense counsel smashed through these critical guardrails, with a novel twist—he repeatedly offered speaking objections, not to Plaintiffs' counsel's questions, but to *his own witnesses' answers* when he sensed a need to redirect the conversation. During the OpSec/Phillips deposition, defense counsel interrupted Mr. Phillips several times when Mr. Phillips sought to correct or confirm the premise of a question. *See, e.g.*, OpSec/Phillips Tr. 71:10–20; 77:1-9; 122:1–12; 133:16–22. During the TTV/Engelbrecht deposition, defense counsel similarly "objected" when Ms. Engelbrecht began to clarify or explain her understanding of a question. *See, e.g.*, TTV/Engelbrecht Tr. 51:17–52:6; 72:15–22.

As one example, after Plaintiff's counsel probed Ms. Engelbrecht's familiarity with a woman named Mary Siegel, he asked, "Have you done any work with Mary Siegel?" *Id.* at 51:8–18. Ms. Engelbrecht began, "If in by work you mean did they participate in webinars –" when defense counsel interjected: "Catherine, Catherine, not proper for you to rephrase the question. If you don't understand the question, you tell him please rephrase it or clarify it. And that is his job, not your job. Because then, otherwise you are asking questions –." *Id.* at 51:19–52:6. At this point, Plaintiffs' counsel asked whether defense counsel was asserting an objection, and

16

defense counsel confirmed that he was. *Id.* at 52:7–12. Plaintiffs' counsel asked, "What is your objection?", to which defense counsel answered, "You are not entitled to ask questions of me." *Id.* at 52:13–16. Plaintiffs' counsel explained that the rules did permit him to cure his question, and again asked defense counsel to explain the objection. *Id.* at 17–21. Defense counsel answered, "I will accommodate you this time. My objection is that she is, rather than answering the question, she is rephrasing the question. And that is improper. As I said, it is improper for the witness to phrase questions herself to answer herself. That is your job. Not her job." *Id.* at 52:22–53:6.

Plaintiffs' counsel's original question—"Have you done any work with Mary Siegal?"—was clear and fair, and it did not draw any objection when asked. Likewise, the beginning of Ms. Engelbrecht's answer—noting that she was interpreting "work with" to include participating in webinars—was reasonable and well within the rules. If defense counsel considered Plaintiffs' counsel's question unclear, his objection should have stated as much. *See Mitnor Corp.*, 339 F.R.D. at 318. "The deposing counsel then [could] clarify his question—if he believe[d] that [were] necessary." *Id.* But "if the deponent does not ascertain any ambiguity, [s]he can answer the question and perhaps explain [her] understanding of the word or phrase that purportedly is ambiguous." *Id.* That is exactly what Ms. Engelbrecht did in this instance. Even if a witness's attorney objects to an ambiguity and the

examining attorney fails to clarify—which did not happen here—"the objecting counsel simply must wait for cross-examination to attempt to address the ambiguity." *Id.* at 319. In no circumstance do the rules permit a defending attorney to seek to muzzle a witness for explaining how she interpreted a question and intended to answer it.

## II.    The Court should enter adverse inferences to prevent Defendants from enjoying a strategic windfall from their misbehavior.

Defense counsel's and the witnesses' violations of the federal rules (not to mention this Court's explicit directives) are intolerable. They breached the standards for deposition conduct at least fifty times, and with all the bluster of a schoolyard bully, defense counsel made clear why he would not be deterred by Plaintiff's counsel's patient pleas to conform to the rules: "[Y]ou can make your objection.," he said. TTV/Englebrecht Tr. 105:17–18. "It doesn't matter. Go ahead." *Id.* It is imperative that the Court confirm that discovery rules do, in fact, matter, and that violations will be corrected with sanctions.[4]

---

[4] While Mr. Bopp has since withdrawn as counsel of record for Defendants, nothing in the Federal Rules permits a party to avoid sanctions by swapping in new counsel once the strategic advantage of prior violations has been secured. *Cf. Plaintiff B. v. Francis*, No. 5:08cv79–RS/AK, 2009 WL 455392, *1 (N.D. Fla. Feb. 23, 2009) (denying motion to reconsider sanctions "related to a previous discovery infraction by prior counsel" because "[t]o hold otherwise would wreak havoc on the judicial system and provide an incentive for a dilatory and obstructive party to change counsel simply to avoid the agreements and obligations made by prior counsel").

"The court may impose an appropriate sanction . . . on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). Similarly, where a Rule 30(b)(6) witness fails to obey a discovery order—such as the 2021 Order—the Court "may issue further just orders," including "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims," and "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A). "Moreover, the trial courts of the United States have the inherent authority to issue sanctions as a punishment for bad-faith behavior in the proceedings before them." *Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1304 (11th Cir. 2020).

Discovery sanctions can take many forms, from re-opening a deposition at the offending party's expense, *see, e.g.*, *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 250 F. Supp. 3d 244, 269 (W.D. Ky. 2017), to entering default judgment, *see, e.g.*, *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1543 (11th Cir. 1985). Here, Plaintiffs do not seek to re-depose Mr. Phillips or Ms. Engelbrecht because defense counsel succeeded in spoiling the questions. If a deponent's attorney could elicit all of his opponent's questions, instruct the witness not to answer, and then return for a reopened deposition with

rehearsed answers in tow, then any monetary sanctions that attach to the second deposition might well be worth the strategic advantage. In this way, attorneys could convert every oral deposition—where answers are candid, unrehearsed, and spontaneous—to something more resembling the hedged, calibrated, lawyered answers common to written discovery. This is the very subterfuge that our civil justice system prohibits. *See VirnetXInc. V. Cisco Syst., Inc.*, No. 6:10-CV-417, 2012 WL 7997962, at *4-6 (E.D. Tex. Aug. 8, 2012) (recognizing that merely awarding fees and expenses and re-opening the affected deposition is insufficient because the misbehaving party "w[ill] have accomplished what it conceivably wanted—disruption of the deposition and an opportunity to visit with the witness regarding his testimony," and "such a nominal sanction would conceivably encourage tactical violations of the Rules in this case and future cases").

Instead, defense counsel's behavior warrants the inference that he prevented Mr. Phillips and Ms. Engelbrecht from answering specific questions as they thought best—and the witnesses refused to answer the questions after Plaintiffs' counsel's insistence—because they understood those answers would damage Defendants' defenses in this action. The entry of adverse inferences is a typical sanction for this violation. *See, e.g., United States v. A Single Fam. Residence & Real Prop. Located at 900 Rio Vista Blvd.*, 803 F.2d 625, 630 n.4 (11th Cir. 1986) (concluding "[t]he

district court drew a permissible inference" from deponent's failure to testify "that [deponent's] testimony would not have been favorable to the claim"); *Sagax Dev. Corp. v. ITrust S.A.*, No. 19-CV-3386 (RA)(KNF), 2021 WL 5360121, at *10 (S.D.N.Y. Nov. 17, 2021) (entering adverse inferences "to satisfy the purposes of Rule 37 sanctions" by (i) ensuring that defendant "will not benefit from its own failure to comply"; (ii) serving as specific deterrent to defendant from continuing disobedience of Court's orders; and (iii) serving as "a general deterrent in this case and on other litigation"); *see also Schuh v. Clayton*, No. 20-10468, 2022 WL 4553042, at *6 (E.D. Mich. Sept. 28, 2022) (recognizing adverse inference jury instructions as possible sanction for refusing to participate in discovery). While the questions that defense counsel and the witnesses obstructed are almost too many to count, Plaintiffs request adverse inferences only for the three lines of inquiry highlighted in their summary judgment motion. *See* MSJ Mot. at 14 n.4, 23 n.7, 30 n.9.

*First*, because defense counsel prevented Mr. Phillips from elaborating on his criticism that Mr. Davis's challenge file was generated through "bad process," OpSec/Phillips Tr. 103:12–104:16, the Court should find that Mr. Phillips considered Mr. Davis's challenge process to be invalid and unreliable.

*Second*, because defense counsel prevented Ms. Engelbrecht from answering questions about social media posts by Time for a Hero, an organization that Engelbrecht ran and that used the same taglines as the @Crusade4Freedom Twitter account, TTV/Engelbrecht Tr. 43:18–45:17, the Court should find that TTV was responsible for @Crusade4Freedom tweets about Georgia voter challenges in 2020.

*Third*, because defense counsel prevented Plaintiffs from questioning Mr. Phillips about the inflammatory, unfounded allegations he publicized about illegal voting in the 2016 presidential election—including questions about how Mr. Phillips conducted his analysis, why he resisted calls to release his methodology and raw data, and to what extent these allegations were made in conjunction with TTV, *see* OpSec/Phillips Tr. 27:18–44:19—the Court should find that Mr. Phillips coordinated with TTV after the 2016 presidential election to publicize allegations of illegal voting that lacked foundation.

 The Court should also require Defendants to pay attorney fees and costs associated with the filing of this motion. *See* Fed. R. Civ. P. 30(d)(2) (authorizing "reasonable expenses and attorney's fees" as sanction); *id.* 37(b)(2)(C) (requiring, where party unjustly violates discovery order, "the court must order the disobedient party, the attorney advising the party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure").

22

## CONCLUSION

Over 75 years ago, the Supreme Court celebrated the "pre-trial deposition-discovery mechanism" as "one of the most significant innovations of the Federal Rules of Civil Procedure." *Hickman v. Taylor*, 329 U.S. 495, 500 (1947). "Modern instruments of discovery" the Court emphasized a decade later, "make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958). Over the ensuing decades, as millions of civil suits have cycled through the federal courts, this celebration has been vindicated. Because there is no other tool for eliciting candid and unrehearsed explanations from key witnesses with contemporaneous follow-up, the oral deposition is uniquely capable of blasting truth out of what can otherwise appear as impenetrable rock. When that tool is maliciously jammed—as it was here, repeatedly and egregiously—the entire project of civil justice can be sabotaged. Plaintiffs respectfully request that the Court grant the motion for sanctions.

Respectfully submitted, this 30th day of August, 2023.

| | |
|---|---|
| Allegra J. Lawrence | */s/ Uzoma N. Nkwonta* |
| Georgia Bar No. 439797 | Marc E. Elias* |
| Leslie J. Bryan | Uzoma N. Nkwonta* |
| Georgia Bar No. 091175 | Christina A. Ford* |
| Maia Cogen | Tina Meng Morrison* |
| Georgia Bar No. 832438 | Marcos Mocine-McQueen* |
| Michelle L. McClafferty | Joel J. Ramirez* |
| Georgia Bar No. 161970 | Jacob D. Shelly* |
| **LAWRENCE & BUNDY LLC** | **ELIAS LAW GROUP LLP** |
| 1180 West Peachtree Street, Suite 1650 | 250 Massachusetts Ave., Suite 400 |
| Atlanta, GA 30309 | Washington, D.C. 20001 |
| Telephone: (404) 400-3350 | Telephone: (202) 968-4490 |
| Fax: (404) 609-2504 | melias@elias.law |
| allegra.lawrence-hardy@lawrencebundy.com | unkwonta@elias.law |
| leslie.bryan@lawrencebundy.com | cford@elias.law |
| maia.cogen@lawrencebundy.com | tmengmorrison@elias.law |
| michelle.mcclafferty@lawrencebundy.com | mmcqueen@elias.law |
| | jramirez@elias.law |
| | jshelly@elias.law |
| | |
| | *Counsel for Plaintiffs* |
| | *Admitted pro hac vice |

24

## **CERTIFICATE OF COMPLIANCE**

Pursuant to LR 7.1(D), N.D. Ga., I hereby certify that the foregoing brief has been prepared in accordance with the font type and margin requirements of LR 5.1, N.D. Ga., using a font type of Times New Roman and a point size of 14.

This 30th day of August, 2023          */s/ Uzoma N. Nkwonta*
                                         Uzoma N. Nkwonta


## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the within and foregoing brief with the Clerk of Court using the CM/ECF system, which will automatically send-e-mail notification to all counsel of record.

This 30th day of August, 2023

                                         */s/ Uzoma Nkwonta*
                                         Uzoma Nkwonta
                                         *Counsel for Plaintiffs*