# Exhibit A

ELIAS LAW GROUP

10 G Street NE, Suite 600 | Washington, DC 20002

**Re: *Fair Fight, Inc., et al. v. True the Vote, Inc.*, *et al.*, Civil Action No. 2:20-CV-00302-SCJ**

Plaintiffs seek this Court's intervention to resolve disputes over the scope of upcoming depositions. Counsel for Defendants have indicated that they will instruct individual and Rule 30(b)(6) witnesses not to answer questions regarding: (1) True the Vote's (TTV) challenges to election results and voter fraud allegations around the country; (2) activities involving King Street Patriots—a TTV affiliate also led by Defendant Engelbrecht; (3) activities occurring before 2016; (4) conduct that occurred after, rather than before, an election; and (5) OpSec's work with TTV outside of the January 2021 runoff. These objections lack merit for several reasons:

**First**, Plaintiffs allege that TTV created an atmosphere of intimidation by, for example, advancing frivolous accusations of voter fraud. *See, e.g.*, ECF 73, ¶¶ 2–10, 32–38, 53–57, 62–63, 69–71, 79. So questions about TTV's investigation of voter fraud and the evidence (or lack thereof) supporting their claims are highly relevant to this lawsuit. TTV's attempt to re-define the scope of this case by cherry-picking language in Count 1 ignores other elements of Plaintiffs' claim and the factual allegations that support them. For instance, frivolous accusations of voter fraud are probative to establish TTV's motive, prior knowledge, and intent, among other factors that Defendants have put in dispute. **Second**, TTV has publicly described itself as a spinoff of King Street Patriots, and both organizations were founded and led by Defendant Engelbrecht—TTV's Rule 30(b)(6) witness. They are separate entities in name only and their collective activities are appropriate grounds for discovery. **Third**, TTV's date restriction unreasonably limits discovery. TTV and King Street Patriots have a long history of advancing baseless voter challenges and intimidating voters, dating back to at least 2010, and *even TTV admits that this information is relevant*. *See* TTV Obj. #2. As a compromise, Plaintiffs have agreed to limit their questions to events that transpired from 2012 onward. No further restrictions are warranted. **Fourth**, Defendants are simply wrong to suggest that Section 11(b) violations are limited to conduct that occurs before an election. Voter intimidation does not occur in a vacuum, nor does its impact disappear after an election. And Defendants cite no authority that supports limiting discovery to pre-election activities. **Fifth**, TTV has already acknowledged that prior voter challenges are relevant and has agreed to allow inquiry into TTV's activities in prior elections; thus, OpSec has no basis to foreclose questions regarding its work in those same elections or its voter analysis research, which TTV has relied on to defend the accuracy of its challenge lists.

**Finally**, even if these objections had any merit, they do not give counsel license to instruct witnesses not to answer questions related to these topics. *See* Fed. R. Civ. P. 30(c)(2). Defendants do not assert any privilege, nor have they moved for a protective order. *See id*. While TTV and OpSec may seek relief from their obligations to prepare a witness on topics to which they have properly objected, Defendants must allow all witnesses (especially those testifying in their individual capacities) to answer questions to the best of their recollection.

For these reasons, Plaintiffs ask this Court to compel TTV and OpSec to present a witness that is adequately prepared to answer questions relating to the topics listed in their respective Rule 30(b)(6) deposition notices, and to preclude counsel from instructing witnesses not to answer questions absent a claim of privilege.

Respectfully Submitted,

Uzoma Nkwonta
*Counsel for Plaintiffs*