# Exhibit A

# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| FAIR FIGHT INC., JOHN DOE, and JANE DOE, | |
| Plaintiffs, | **Case No. 2:20-cv-00302-SCJ** |
| v. | |
| TRUE THE VOTE, INC., CATHERINE ENGELBRECHT, DEREK SOMERVILLE, MARK DAVIS, MARK WILLIAMS, RON JOHNSON, JAMES COOPER, and JOHN DOES 1-10, | |
| Defendants. | |

## PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION TO DEFENDANT TRUE THE VOTE, INC.

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs Fair Fight, Inc., John Doe, and Jane Doe hereby serve the following requests for production upon Defendant True the Vote. Responses to these requests should be produced in accordance with the timelines set forth in the Federal Rules of Civil Procedure. They should be produced electronically, if at all possible (contact Christina Ford at christinaford@perkinscoie.com to arrange for electronic production). Anything that cannot be produced electronically should be produced to Christina Ford, Perkins

Coie, 700 Thirteenth Street NW, Suite 800, Washington, D.C. 20005.  Each request

for production is subject to the Definitions and Instructions set forth below.

## DEFINITIONS

Except as specifically defined below, the terms used in these requests shall be

construed and defined in accordance with the Federal Rules of Civil Procedure,

wherever applicable. Any terms not defined shall be given their ordinary meaning.

1.      "Communication" means any transfer of information, whether written,

oral, electronic, or otherwise, and includes transfers of information via email, report,

letter, text message, voicemail message, written memorandum, note, summary, and

other means. It includes communications entirely internal to True the Vote, as well

as communications that include or are with entities and individuals outside of your

organization.

2.      "County" means any county in Georgia, including all county employees,

staff, agents, representatives, county boards of registrar's offices, county registrars,

or any other person responsible for conducting or supervising elections in the county.

3.      "Date" means the exact day, month, and year, if ascertainable, or, if not,

the best available approximation (including relationship to other events).

4.      "December 18, 2020 Press Release" means the press release posted on

your Website on that date, attached hereto as Exhibit A.

2

5.      "December 14, 2020 Press Release" means the press release posted on your Website on that date, attached hereto as <u>Exhibit B</u>.

6.      "December 22, 2020 Press Release" means the press release posted on your Website on that date, attached hereto as <u>Exhibit D</u>.

7.      "Document" is synonymous in meaning and scope to the term "document" as used under Federal Rule of Civil Procedure 34 and the definitions for "writings and recordings" as set forth in Federal Rule of Evidence 1001, and it includes records, reports, lists, data, statistics, summaries, analyses, communications (as defined above), any computer discs, tapes, printouts, emails, databases, and any handwritten, typewritten, printed, electronically recorded, taped, graphic, machine-readable, or other material, of whatever nature and in whatever form, including all non-identical copies and drafts thereof, and all copies bearing any notation or mark not found on the original.

8.      "Election" means any special or regularly-scheduled general election or run-off election held in the State of Georgia for any publicly elected office.

9.      "Georgia Elector Challenge" means any challenge to the eligibility of an individual registered to vote in Georgia in advance of the Run-off Election, including the challenges described, among other places, in your December 18, 2020 Press Release.

10.   "Georgia Republican Party" means the state and/or county committees of the Republican Party, which works to elect Republican candidates to elected office, and their former, current, and/or future employees, staff, agents, consultants, and representatives. This term specifically encompasses the Georgia Republican Party with which you entered a "partnership" as stated in your December 14, 2020 Press Release.

11.   "Identify," when used in reference to a communication, means to state when and where the communication was made; each of the makers and recipients thereof, in addition to all others present; the medium of communication; and its substance.

12.   "Identify," when used in reference to a government agency, firm, partnership, corporation, proprietorship, association, other entity, or person, means to state their full name and present or last-known address.

13.   "Identify," when used in reference to processes or steps taken by you or others with whom you have worked on the matters at issue in this litigation, means to chronologically detail each and every action taken by any and all entities or persons, to identify the actor, and to detail how and when that action was or will be taken and for how long.

14.   "Including" means "including but not limited to."

15.   "November 10, 2020 Press Release" means the press release posted on your Website on that date, attached hereto as Exhibit C.

16.   "November Election" means the election held in Georgia, which culminated on November 3, 2020, and includes the 2020 general election and special election.

17.   "Person" means not only natural persons, but also firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, trust groups, and organizations; federal, state, or local governments or government agencies, offices, bureaus, departments, or entities; other legal, business, or government entities; and all subsidiaries, affiliates, divisions, departments, branches, and other units thereof or any combination thereof.

18.   "Relating to," "regarding," and their cognates are to be understood in their broadest sense and shall be construed to include pertaining to, commenting on, memorializing, reflecting, recording, setting forth, describing, evidencing, or constituting.

19.   "Run-off Election" means the election held in Georgia, which culminated on January 5, 2021, and in which voters elected both of Georgia's U.S. Senators.

20.   "Targeted Voter" or "Targeted Voters" means the registered Georgia voters who are the subject of the Georgia Elector Challenges.

21.   "True the Vote Website" or "Website" means any website maintained or controlled by you.

22.   "Validate the Vote" Program refers to the initiative announced in your November 10, 2020 Press Release which you claim "establishes a whistleblower fund in excess of $1 million to support those who come forward with credible evidence of criminal malfeasance, takes the steps to resolve illegal actions through litigation, and ensures the final vote tally is valid to maintain public confidence in the U.S. election system."

23.   "Voter" means any registered voter in Georgia and all persons who may properly register to vote in the state by the close of discovery in this case.

24.   "Voter Challenge Lawsuit" means the action filed in the U.S. District Court for the Middle District of Georgia, captioned *Majority Forward, et al. v. Ben Hill County Board of Elections, et al*., Case No. 1:20-CV-266 (LAG).

25.   "You" and "your" means the organization that goes by the name of True the Vote, its officers, directors, partners, members, managers, employees, representatives, agents, consultants, or anyone acting on its behalf.

## INSTRUCTIONS

You are to follow the instructions set forth below in responding to these requests.

1.      Pursuant to Federal Rule of Civil Procedure 34(b)(2)(B) & (C), if you object to any part of a request, set forth the basis of your objection and respond to all parts of the request to which you do not object. Any ground not stated in a timely objection is waived.

2.      If, in responding to these requests, you encounter any ambiguities when construing a request or definition, set forth in your response what you find ambiguous and the construction you used in responding. Where you, in good faith, doubt the meaning or intended scope of a request, and the sole objection would be to its vagueness, overbreadth, or ambiguity, please contact Plaintiffs' counsel for clarification in advance of asserting an objection.

3.      With respect to any document withheld on a claim of privilege or work-product protection, provide a written privilege log identifying each document individually and containing all information required by Federal Rule of Civil Procedure 26(b)(5), including a description of the basis of the claimed privilege and all information necessary for Plaintiffs to assess the claim of privilege.

4.     You should produce all documents available to you or subject to your access or control that are responsive to the requests. This includes documents in your actual or constructive possession or control, as well as that of your investigators, experts, representatives, agents, and any other persons acting on your behalf.

5.     Documents are to be produced as they are kept in the ordinary course of business. Accordingly, documents should be produced in their entirety, without abbreviation, redaction, or expurgation; file folders with tabs or labels identifying documents responsive to this request should be produced intact with the documents; and documents attached to each other should not be separated.

6.     Consistent with Federal Rule of Civil Procedure 34(b)(C), all documents are to be produced in electronic form and meet the following criteria:

Printed Materials. All printed materials should be scanned and produced in electronic form. The printed materials shall be converted to a single page TIFF images and produced as follows: (i) images of all file labels, file headings, and file folders associated with any hard copy document will be produced with the images of the hard copy documents; (ii) document breaks for paper documents shall be based on Logical Document Determination (or "LDD"), rather than on physical document breaks; and (iii) the database load file shall include the following fields: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, CONFIDENTIALITY, REDACTED, and CDVOLUME.

Metadata Fields and Processing. The following metadata and coding fields should be produced along with each produced document: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH; CUSTODIAN, CONFIDENTIALITY, REDACTED, OTHER_CUSTODIAN, and CDVOLUME. The OTHER_CUSTODIAN field should be populated to

identify other custodians in possession of the document before deduplication was applied to the data set.

TIFFS. Single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi). Single page TIFF images should be named according to the unique bates number, followed by the extension ".TIF". Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).

Text Files. For each document originating in electronic format, a text file containing the full text of each document should be provided with the image files and metadata. Text of native files should be extracted directly from the native file. The text file should be named according to the unique bates number, followed by the extension ".TXT." The full text and/or OCR of any document should not be contained within a database load file, but rather as a standalone file with each text file containing an entire document as they are defined.

Database Load Files. An ASCII delimited data file (.txt, .dat, or .csv) that can be loaded into commercially acceptable database software (e.g., Concordance) should be provided. The first line of each text file must contain a header identifying each data field name (i.e., header row). Each document within the database load file must contain the same number of fields as defined in the header row.

Cross-Reference Image File Registration. An image load file that can be loaded into commercially acceptable production software (e.g., Opticon, iPro) should be provided. Each TIFF in a production must be referenced in the corresponding image load file. An exemplar load file format is below.

Bates Numbering. All images must be assigned a unique and sequential Bates number.

Native File Productions. If a native file is produced, it should include a TIFF image as a placeholder for the file to represent the file in the production set. The TIFF image placeholder for a native file should be branded with a unique Bates number and state "See Native Document" on the TIFF image. The native file should then be renamed to match the Bates number assigned to the

document with its original file extension. The filename field produced in the production load file that reflects the original metadata should maintain the original file name.

Microsoft Office files, WordPerfect, other standard documents (e.g. Google Docs and PDF documents). MS Office files, WordPerfect, other standard documents, such as PDF documents and Google Docs, should be converted to single-page TIFF images and produced consistent with the specifications herein. If the document contains comments or tracked changes, the TIFF images must be generated to include the comments or track changes in the file.

Email and attachments. E-mail and attachments should be converted to single-page TIFF images and produced consistent with the specifications provided herein. Attachments shall be processed as separate documents, and the text database load file shall include a field identifying the production range of all attachments of each e-mail.

Embedded Files. Embedded files shall be treated as separate files. The load file shall include a field identifying, for each document containing an embedded file, the production range of any such embedded file. This production range may be identified in the same field as the production range of an e-mail attachment.

Color Documents. Except as otherwise specifically provided herein or agreed to by the Parties, documents originally in color need not be produced in color unless the production in black and white alters or obscures the substance of the document. Documents produced in color must be produced with agreed compression.

Redactions. If a document requires redaction, native files, full text and/or OCR, and specified metadata fields will be excluded. The TIFF image should show the caption [Redacted, Redacted-Privileged, Redacted-PII, etc.] where applicable and a production load file field should be populated to indicate the document contains a redaction.

Encryption. Industry-standard encryption tools and practices must be used when transferring data. Passwords must be at least 8 characters with a mix of character sets and sent in a separate communication from the encrypted data.

Notwithstanding the foregoing, the parties may negotiate a separate production format when necessary.

7.     If any otherwise-responsive document was, but is no longer, in existence or in your possession, custody, or control, identify the type of information contained in the document, its current or last known custodian, the location/address of such document, and the identity of all persons having knowledge or who had knowledge of the document, as well as describe in full the circumstances surrounding its destruction, loss, or other disposition from your possession or control.

8.     Materials sought by these requests for production that become available after you serve your responses must be disclosed to counsel for Plaintiffs by supplementary response or responses.

9.     Pursuant to Federal Rule of Civil Procedure 26(e), you are under a duty to promptly supplement or correct your responses to these requests for production if you learn that a response is in some material respect incomplete or incorrect. If you expect to obtain further information or expect the accuracy of a response given to change between the time responses are served and the time of trial, you are requested

to state this fact in each response. Such supplementary answers are to be served upon Plaintiffs' counsel as soon as practicable after you receive this new information, but, in any event, no later than 14 days after its receipt.

10.    If you contend that it would be unreasonably burdensome to obtain and provide any or all of the documents called for in response to any request, then in response to the appropriate request: (a) produce all such documents as are available to you without undertaking what you contend to be an unreasonably burdensome effort; (b) describe the efforts you made to obtain the documents you can produce, identifying who you consulted, describing the files, records and documents you reviewed, and identifying each person who participated in the gathering the documents, specifying the amount of time spent and the nature of work done by that person; and (c) state why the additional efforts to produce other responsive documents would be unreasonably burdensome.

11.    A reference to an entity shall be construed to include its officers, directors, partners, members, managers, employees, representatives, agents, consultants, or anyone acting on its behalf.

12.    To the extent that you do not have any documents reflecting the information requested, and/or any means of recording the information requested, please so indicate in your response to the specific request.

# REQUESTS FOR PRODUCTION

**Request for Production No. 1:** All documents you consulted or referred to, or that otherwise relate to, your Answers to Plaintiffs' First Set of Interrogatories to Defendant True the Vote, Inc.

**Request for Production No. 2:** All documents or communications discussing, analyzing, referring to, or otherwise relating to or regarding the Georgia Elector Challenges, including but not limited to all communications with or involving the email address gaelectorchallenge@truethevote.org, copies of each of the challenges, including the lists of Targeted Voters submitted to each County, and the basis for any conclusion that any of the Targeted Voters are not eligible to vote under Georgia law.

**Request for Production No. 3:** All communications with each of the "Georgia voters" whom you worked with in connection with the Georgia Elector Challenges as referred to in your December 18, 2020 Press Release. This includes but is not limited to the "Georgia voters" referred to in the Press Release as "representing all 159 counties," as well as Derek Somerville, Mark Davis, Mark Williams, Ron Johnson, and James Cooper.

**Request for Production No. 4:** All communications regarding the Voter Challenge Lawsuit, including but not limited to the order in that case granting a

temporary restraining order and the Secretary of State's press release regarding the case and/or the order.

**Request for Production No. 5:** All communications regarding your offer to provide "legal support" to Counties in your December 22, 2020 Press Release.

**Request for Production No. 6:** All documents and communications related to your "partnership" with the Georgia Republican Party "to assist with the Senate runoff election process," as announced in your December 14, 2020 Press Release.

**Request for Production No. 7:** All communications related to your "offer" to the Georgia Democratic Party referenced in your December 14, 2020 Press Release.

**Request for Production No. 8:** All documents supporting your claim that voter fraud occurred in the November Election, that Georgia law was not upheld in that election, or that—to use the terminology on your Website—"law-abiding voters [did not] have their voices heard" in the November Election or in any prior election in Georgia over the last ten years.

**Request for Production No. 9:** All documents supporting the statement on your Website that "Election law experts have long held that the margin of election fraud is 3 – 5%."

14

**Request for Production No. 10:** All documents supporting the statement on your Website that Georgia elections have been or that the Run-off Election will be, "targeted for subversion," that "ineligible voters will be more likely to vote," or that "invalid votes will more likely be counted."

**Request for Production No. 11:** All documents or communications discussing, analyzing, referring to, or otherwise relating to your "Validate the Vote" Program, including but not limited to any and all information about where you have publicized the program, any documents or communications using the word "bounty," any communications with anyone in purported response to the program, and any "credible evidence of criminal malfeasance" that you have identified in connection with elections in response to your Validate the Vote Program, including but not limited to any documents or communications related thereto.

**Request for Production No. 12:** All documents or communications involving or relating to the Twitter account of "@Crusade4Freedom," including but not limited to any information regarding the identity or identities of the person or people who maintain, operate, or use that account and their association with or communications with True the Vote.

**Request for Production No. 13:** All communications regarding your "voter registry research" as referenced in your December 18, 2020 press release, including

but not limited to communications with persons involved in preparing lists of Targeted Voters or identifying registered voters whom you allege do not reside in their county of record or in the state of Georgia based on "filings with the United States Postal Service National Change of Address and other supporting commercial databases."

**Request for Production No. 14:** All documents and communications regarding the methodology used to conduct "voter registry research" as referenced in your December 18, 2020 press release, including but not limited to attempts to identify voters registered in Georgia whom you claim, based on "filings with the United States Postal Service National Change of Address and other supporting commercial databases," no longer reside in the county of record or the state of Georgia.

**Request for Production No. 15:** All communications with individuals or entities involved in identifying voters registered in Georgia whose names, as you claim, appear in "filings with the United States Postal Service National Change of Address and other supporting commercial databases."

Dated this 8th day of February, 2021.

Respectfully Submitted,

*/s/ Uzoma N. Nkwonta*

Marc E. Elias*
Uzoma N. Nkwonta*
Aria Branch*
Christina A. Ford*
Joel Ramirez*
**PERKINS COIE LLP**
700 Thirteenth St., N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
unkwonta@perkinscoie.com
abranch@perkinscoie.com
christinaford@perkinscoie.com
jramirez@perkinscoie.com

Thomas J. Tobin*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000
ttobin@perkinscoie.com

Molly E. Mitchell*
**PERKINS COIE LLP**
1111 West Jefferson Street, Suite 500
Boise, ID  83702-5391
Phone: (208) 343-3434
Fax: (208) 343-3232
mmitchell@perkinscoie.com

*Counsel for Plaintiffs*
*\*Admitted pro hac vice*

Allegra J. Lawrence (GA Bar No. 439797)
Leslie J. Bryan (GA Bar No. 091175)
Maia Cogen (GA Bar No. 832438)
**LAWRENCE & BUNDY LLC**
1180 West Peachtree Street, Suite 1650
Atlanta, GA 30309
Telephone: (404) 400-3350
Fax: (404) 609-2504
allegra.lawrence-hardy@lawrencebundy.com
leslie.bryan@lawrencebundy.com
maia.cogen@lawrencebundy.com

Dara Lindenbaum (GA Bar No. 980780)
**SANDLER REIFF LAMB ROSENSTEIN & BIRKENSTOCK, P.C.**
1090 Vermont Avenue, NW, Suite 750
Washington, DC 20005
Telephone: (202) 479-1111
Fax: 202-479-1115
lindenbaum@sandlerreiff.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I served a copy of the foregoing by transmitting a copy to all counsel with an e-mail address of record.

Dated: February 8, 2021

By: */s/ Uzoma N. Nkwonta*

# Exhibit A

# TRUE THE VOTE PARTNERS WITH GEORGIANS IN EVERY COUNTY TO PREEMPTIVELY CHALLENGE 364,541 POTENTIALLY INELIGIBLE VOTERS

**True the Vote Partners with Georgians in Every County to Preemptively Challenge 364,541 Potentially Ineligible Voters**

*Citizen-led Effort Seeks to Confirm All Votes Cast in U.S. Senate Runoff Elections are Legal, While Ensuring Any Voter Challenged Has Full Opportunity to Prove Their Voting Eligibility*

**ATLANTA, Georgia –** True the Vote announced today it is submitting 364,541 Elector Challenges on behalf of Georgia voters representing all 159 counties. An Elector Challenge is a unique feature in Georgia law (GA. CODE ANN. § 21-2-230). It allows a voter to challenge the eligibility of any other voters in his or her county if probable cause exists to show that the challenged voter does not meet the qualifications legally required to cast a ballot. It represents one of the few vehicles that states have to update voter rolls ahead of an election without compromising any legitimate voters' right to have their vote counted.

"Ongoing debates about the November election throughout the country have Americans focused intently on improving the integrity of our elections and restoring the faith of voters. Today we assisted concerned Georgia voters in taking a stand for the sanctity of every legal vote," **said Catherine Engelbrecht, the founder and president of True the Vote.** "It is our hope that this historic challenge marks the beginning of the great awakening of American voters to serve our democracy by getting involved in the process.

"We are proud to be working alongside patriots from across the Peach State; Derek Somerville of Forsyth county and Mark Davis of Gwinnett county who have been leading citizen efforts to highlight issues in Georgia's voter rolls, Mark Williams of Gwinnett County who coordinated among eight print shops to get written challenges printed and delivered within 48 hours, and Ron Johnson of Jackson County and James Cooper of Walton County, who led the charge in recruiting hundreds of volunteer challengers across the state," **Engelbrecht continued.** "Everyone pitched in. This is the power of citizen engagement and the core of what True the Vote exists to do in our pursuit of free, fair and secure elections."

Today's landmark coordinated challenge is the result of True the Vote's voter registry research, which identified 124,114 registered voters who no longer reside in the county of record and 240,427 voters who no longer reside in the state of Georgia, according to filings with the United States Postal Service National Change of Address (NCOA) and other supporting commercial databases. True the Vote's research was performed uniformly across all counties, without regard to any demographic or voting history.

"Filing the challenges preemptively, before absentee ballots are opened, will help ensure only legal, eligible votes are counted in Georgia's January 5 runoff elections," **Engelbrecht concluded.**

According to Georgia law, an Elector Challenge must be filed before a vote is cast. Once a vote has been cast, or in the case of absentee ballots, once the ballot has been removed from its signed envelope, there is no way to identify which ballot belongs to the ineligible party.

In fact, the best way to ensure only eligible voters are voting in the upcoming runoff elections is through Elector Challenges. States must comply with National Voter Registration Act standards in cleaning their voter rolls. Under Section 8 of the National Voter Registration Act, states are required to conduct a general voter registration list maintenance program that makes a reasonable effort to remove ineligible voters. The NVRA's standards limit removal of names only to very narrow conditions, with ineligible names remaining on the list over an extended period of time.

An Elector Challenge does not remove voter names from the registry. Voters who have been challenged will have the opportunity, via GA. CODE ANN. § 21-2-230 to prove eligibility and still have their vote counted in the upcoming runoff election.

"I've said since Election Day that I must follow the law in the execution of our elections, and I've also encouraged Georgians to report any suspected problems for my office to investigate," **said Georgia Secretary of State Brad Raffensperger.** "Though federal law restricts our ability to update our voter registration lists, the Elector Challenge is a vehicle under our law to ensure voter integrity. I support any effort that builds faith in our election system that follows the proper legal procedure."

# # #

*True the Vote (TTV) is an IRS-designated 501(c)3 voters' rights organization, founded to inspire and equip volunteers for involvement at every stage of our electoral process. TTV empowers organizations and individuals across the nation to actively protect the rights of legitimate voters, regardless of their political party affiliation. For more information, please visit* ***www.truethevote.org****.*

# Exhibit B

# TRUE THE VOTE PARTNERS WITH GEORGIA GOP TO ENSURE TRANSPARENT, SECURE BALLOT EFFORT FOR SENATE RUNOFF ELECTIONS

By **True the Vote**  |  December 14, 2020

**True the Vote Partners With Georgia GOP to Ensure Transparent, Secure Ballot Effort for Senate Runoff Elections**

*True the Vote Reached Out to Both Parties to Offer Assistance With Critical Election Training and Resources*

**ATLANTA, Georgia** – True the Vote today announced its partnership with the Georgia Republican Party to



assist with the Senate runoff election process, including publicly available signature verification training, a statewide voter hotline, monitoring absentee ballot drop boxes, and other election integrity initiatives. Early in-person voting began today, December 14, for the January 5 runoff, and mail-in voting has already started.

"Georgia is Ground Zero in the fight to begin restoring integrity to America's election process. That's why True the Vote is working around the clock to engage volunteers from all across the state to participate in this important effort with the goal of preventing a repetition of the uncertainties that arose from the November general election," **said True the Vote Founder and President Catherine Engelbrecht.** "We have focused our 'Eyes On Georgia' in these critical final days before the runoff, and we are thrilled to partner with the Georgia Republican Party, Chairman Shafer, and his team to ensure the law is upheld and law-abiding voters have their voices heard. True the Vote is already on the ground and proud to be serving Georgia voters with a laser focus on the effort to ensure a free, fair, and secure election for all Georgia voters irrespective of political party."

"We are grateful for the help of the True the Vote team in the fight for election integrity," **said Georgia Republican Party Chairman David Shafer.** "We are calling on all Georgians who care about the future of our country and the integrity of our elections to sign up as election day volunteers. The resources of True the Vote will help us organize and implement the most comprehensive ballot security initiative in Georgia history."

An offer to extend the same support to the Georgia Democratic Party by partnering in the interest of non-partisan election integrity has not received a reply to date. The letter, addressed to the party and to party chair Senator Nikema Williams, **is available here [PDF]**.

# # #

*True the Vote* (TTV) is an IRS-designated 501(c)3 voters' rights organization, founded to inspire and equip volunteers for involvement at every stage of our electoral process. TTV empowers organizations and individuals across the nation to actively protect the rights of legitimate voters, regardless of their political party affiliation. For more information, please visit *www.truethevote.org*.

# Exhibit C

2/4/2021    True the Vote Laser Focused on Georgia Ballot Count; Calls on Army of Volunteers to Assist the Effort - True The Vote

Case 2:20-cv-00302-SCJ Document 263-2 Filed 10/13/23 Page 29 of 36

# TRUE THE VOTE LASER FOCUSED ON GEORGIA BALLOT COUNT; CALLS ON ARMY OF VOLUNTEERS TO ASSIST THE EFFORT

By **True the Vote** | November 10, 2020

**True the Vote Laser Focused on Georgia Ballot Count; Calls on Army of Volunteers to Assist the Effort**

**HOUSTON, Texas –** True the Vote Founder and President Catherine Engelbrecht released the following statement regarding the contested elections in Georgia:

"Yesterday, Georgia's two sitting Senators jointly called for the resignation of their state's Secretary of State – a member of their own party – due to the egregious mismanagement of the state's ballot counting efforts, which remain underway. The Office of Georgia's Governor followed up with a critical statement calling on the Secretary of State to take a serious look at numerous allegations of fraud and irregularities. While the media and others may be content to move on from our most recent

election, we cannot ignore the fact that votes are still being counted in numerous states and all states' elections have yet to be certified.

"True the Vote is committed to fact-checking credible allegations from start to finish, and our eyes are laser-focused on the state of Georgia. We are calling our entire network of volunteers to mobilize in key areas across Georgia, where they will be on the ground, serving election workers and observing the ballot count, ensuring that every legal vote is counted and every illegitimate vote is not.

"Never in our history has there been such blatant disregard for election integrity. During these pivotal times, we refuse to stand on the sidelines. True the Vote will keep fighting to ensure 2020 election returns reflect the principle of 'one vote for one voter' and to repair our broken elections once and for all."

True the Vote recently launched **Validate the Vote**, an initiative that establishes a whistleblower fund in excess of $1 million to support those who come forward with credible evidence of criminal malfeasance, takes the steps to resolve illegal actions through litigation, and ensures the final vote tally is valid to maintain public confidence in the U.S. election system. True the Vote has already received thousands of reports to our **Election Integrity Hotline** from citizens in Georgia and around the country.

The following is a timeline of key dates surrounding this contested election:

- **Dec. 8:** "Safe Harbor" – date by which states must certify results and assign electors. If an election is in dispute, state legislatures may assign electors.
- **Dec. 14:** Electors meet in their states to cast votes for the president and VP.
- **Jan. 3:** New Congress is sworn in; 117th session starts.
- **Jan. 6:** Electoral votes are counted in House chamber by members of House and Senate; if neither candidate has 270 electoral college votes, the election is in dispute.
- **Jan. 20:** Inauguration Day – new president takes oath of office. In a disputed election, the House will appoint the president and Senate will choose the VP.

# # #

# Exhibit D

# TRUE THE VOTE OFFERS LEGAL SUPPORT TO GEORGIA COUNTIES THAT STAND UP TO ACLU'S MISINFORMATION AND INTIMIDATION CAMPAIGN

**True the Vote Offers Legal Support to Georgia Counties That Stand Up to ACLU's Misinformation and Intimidation Campaign**
*Sends Letter to Georgia County Election Boards Clarifying Legal Grounds of Elector Challenges*

**ATLANTA, Georgia –** True the Vote, one of the nation's foremost citizen-run election integrity and voters' rights organizations, is offering to support legal efforts required of any Georgia county that chooses to stand up to the American Civil Liberty Union (ACLU) and its allies' lawsuit threats in the wake of elector challenges. It reaffirmed its commitment to protecting all legal voters' rights while working to challenge any invalid registrations.

In a letter to every County Election Board in the Peach State, True the Vote called out misinformation

being spread ACLU representatives and leftist election lawyer Marc Elias, and condemned their threats of lawsuits against Georgia County Election Boards that follow the law to protect the integrity of the upcoming runoff elections. In the letter, True the Vote clearly explains the legal grounds of its elector challenges and urges counties to move forward with steps necessary to identify invalid votes that could impact the integrity of the election.

"Thank you for the ongoing work you're doing toward our shared goal of carrying out the Senate runoff election in a way that complies with Georgia law and promotes faith in the outcome," True the Vote founder, Catherine Engelbrecht wrote in the letter. "Our organization, True the Vote, has worked in all 159 counties in the state to ensure that every legal vote counts and every illegal vote is discovered."

The letter continued, "As our attorneys confirm through this correspondence, the elector challenges apply solely to eligibility to vote in the Jan. 5 runoff election. This process will not result in any voters being removed from the rolls, and will not deny the right to vote of any legal voter. A challenged voter can vote a challenged ballot, with that vote counted once eligibility is confirmed."

The full letter along with a legal summary from True the Vote General Counsel James Bopp, Jr. can be found **here** and below. The letter sent to Georgia counties from the Perkins-Coie Law Firm in an attempt to intimidate counties from carrying out the elector challenges is available **here**.

Last week, True the Vote initiated an historic elector **challenge** in all 159 Georgia counties in an effort to uphold the integrity of the upcoming U.S. Senate runoff elections and ensure that any illegal or invalid votes are not counted in the final results. True the Vote has also **partnered** with the Georgia Republican Party to hold signature verification training, run a statewide voter hotline, monitor absentee ballot drop boxes, and other election integrity initiatives. True the Vote offered similar assistance to the **Georgia Democratic Party**, but has not received a reply.

December 21, 2020

VIA EMAIL

To Georgia County Election Boards:

Thank you for the ongoing work you're doing toward our shared goal of carrying out the Senate runoff election in a way that complies with Georgia law and promotes faith in the outcome. Our organization, True the Vote, has worked in all 159 counties in the state to ensure that every legal vote counts and every illegal vote is discovered. Using databases including the U.S. Postal Service's National Change of Address file, we have assisted Georgia citizens with voter challenges in cases where there is probable cause to believe that the person has moved out of the county where they are registered.

We are aware that the ACLU and the Perkins-Coie law firm have provided several counties with misleading information about the voter challenges, and we want to correct the record, as well as assure that we will support the legal efforts of any county that follows Georgia law by reviewing the status of challenged voters. Attached is a **letter** we requested from our General Counsel, Jim Bopp, with The Bopp Law Firm, to more
fully detail the legal grounds support the elector challenges.

As our attorneys confirm through this correspondence, the elector challenges apply solely to eligibility to vote in the Jan. 5 runoff election. This process will not result in any voters being removed from the rolls, and will not deny the right to vote of any legal voter. A challenged voter can vote a challenged ballot, with that vote counted once eligibility is confirmed.

The challenges provided used the National Change of Address database, and were further refined through the use of other commercially available sources, to identify records that indicated a permanent change in residence. The challenges do demonstrate probable cause that a voter has moved away from the address at which they are registered to vote. Georgia hasn't crosschecked its rolls with the National Change of Address database since 2019. Given estimates that 11 percent of Americans move every year, there's high probability that many people are registered in Georgia at addresses where they no longer live. These elector challenges are a method provided for under Georgia to protect the integrity of the voter rolls.

It's prudent to carry out these challenges now. The failure of county election boards to comply with Georgia law and accept the challenges before them risks invalidating the runoff election, which would

2/4/2021        True the Vote – True the Vote Offers Legal Support to Georgia Counties that Stand-Up to ACLU's Misinformation and Intimidation Campaign - True The V…

Case 2:20-cv-00302-SCJ   Document 263-2   Filed 10/12/23   Page 36 of 36

require another. We look forward to working with you to complete a successful election where every Georgian can have faith in the system and believe the outcome reflects the will of legal voters.

For America –

Catherine Engelbrecht

True the Vote, Founder