# Exhibit B

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| FAIR FIGHT INC., JOHN DOE, and JANE DOE,<br><br>            Plaintiffs,<br><br>   v.<br><br>TRUE THE VOTE, INC., CATHERINE ENGELBRECHT, DEREK SOMERVILLE, MARK DAVIS, MARK WILLIAMS, RON JOHNSON, JAMES COOPER, and JOHN DOES 1-10,<br><br>            Defendants. | **Case No. 2:20-cv-00302-SCJ** |

## PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION TO DEFENDANT DEREK SOMERVILLE

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs Fair Fight, Inc., John Doe, and Jane Doe hereby serve the following requests for production upon Defendant Derek Somerville. Responses to these requests should be produced in accordance with the timelines set forth in the Federal Rules of Civil Procedure. They should be produced electronically, if at all possible (contact Christina Ford at christinaford@perkinscoie.com to arrange for electronic production). Anything that cannot be produced electronically should be produced to Christina Ford, Perkins

Coie, 700 Thirteenth Street NW, Suite 800, Washington, D.C. 20005. Each request for production is subject to the Definitions and Instructions set forth below.

## DEFINITIONS

Except as specifically defined below, the terms used in these requests shall be construed and defined in accordance with the Federal Rules of Civil Procedure, wherever applicable. Any terms not defined shall be given their ordinary meaning.

1. "Communication" means any transfer of information, whether written, oral, electronic, or otherwise, and includes transfers of information via email, report, letter, text message, voicemail message, written memorandum, note, summary, and other means. It includes communications entirely internal to True the Vote, as well as communications that include or are with entities and individuals outside of your organization.

2. "County" means any county in Georgia, as well as all employees, staff, agents, and representatives of the county, including the county boards of registrar's offices, county registrars, or any other person with a responsibility for conducting or supervising elections in the county.

3. "Date" means the exact day, month, and year, if ascertainable, or, if not, the best available approximation (including relationship to other events).

4. "December 18, 2020 Press Release" means the press release posted on the True the Vote Website on that date, attached hereto as <u>Exhibit A</u>.

5. "Document" is synonymous in meaning and scope to the term "document" as used under Federal Rule of Civil Procedure 34 and the definitions for "writings and recordings" as set forth in Federal Rule of Evidence 1001, and it includes records, reports, lists, data, statistics, summaries, analyses, communications (as defined above), any computer discs, tapes, printouts, emails, databases, and any handwritten, typewritten, printed, electronically recorded, taped, graphic, machine-readable, or other material, of whatever nature and in whatever form, including all non-identical copies and drafts thereof, and all copies bearing any notation or mark not found on the original.

6. "Election" means any special or regularly-scheduled general election or run-off election held in the State of Georgia for any publicly elected office.

7. "Georgia Elector Challenges" means the challenges to voter eligibility of registered Georgia voters in advance of the Run-off Election in which you and True the Vote have been and are involved and which are described, among other places, in True the Vote's December 18, 2020 Press Release.

8. "Identify," when used in reference to a communication, means to state when and where the communication was made; each of the makers and recipients

thereof, in addition to all others present; the medium of communication; and its substance.

9. "Identify," when used in reference to a government agency, firm, partnership, corporation, proprietorship, association, other entity, or person, means to state its, his, or her full name and present or last-known address.

10. "Identify," when used in reference to processes or steps taken by you or others with whom you have worked on the matters at issue in this litigation, means to chronologically detail each and every action taken by any and all entities or persons, to identify the actor, and to detail how and when that action was or will be taken and for how long.

11. "Including" means "including but not limited to."

12. "November Election" means the most recent election that was held in Georgia that culminated on Election Day on November 3, 2020, to include the general election and the special election.

13. "Person" means not only natural persons, but also firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, trust groups, and organizations; federal, state, or local governments or government agencies, offices, bureaus, departments, or entities;

other legal, business, or government entities; and all subsidiaries, affiliates, divisions, departments, branches, and other units thereof or any combination thereof.

14. "Relating to," "regarding," and their cognates are to be understood in their broadest sense and shall be construed to include pertaining to, commenting on, memorializing, reflecting, recording, setting forth, describing, evidencing, or constituting.

15. "Run-off Election" means the January 5, 2021 Senate Run-off election held in Georgia.

16. "Targeted Voter" or "Targeted Voters" means the registered Georgia voters who are the subject of the Georgia Elector Challenges.

17. "True the Vote" means the organization that goes by the name of True the Vote, its officers, directors, partners, members, managers, employees, representatives, agents, consultants, or anyone acting on its behalf.

18. "True the Vote Website" or "Website" means the website maintained by True the Vote at https://truethevote.org.

19. "Voter" means any registered voter in Georgia and all persons who may properly register to vote in the state by the close of discovery in this case.

20. "You" and "your" means Defendant Derek Somerville and any of his representatives, agents, or anyone acting on his behalf.

## INSTRUCTIONS

You are to follow the instructions set forth below in responding to these requests.

1. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(B)&(C), if you object to any part of a request, set forth the basis of your objection and respond to all parts of the request to which you do not object. Any ground not stated in a timely objection is waived.

2. If, in responding to these requests, you encounter any ambiguities when construing a request or definition, set forth in your response what you find ambiguous and the construction you used in responding. Where you, in good faith, doubt the meaning or intended scope of a request, and the sole objection would be to its vagueness, overbreadth, or ambiguity, please contact Plaintiffs' counsel for clarification in advance of asserting an objection.

3. With respect to any document withheld on a claim of privilege or work-product protection, provide a written privilege log identifying each document individually and containing all information required by Federal Rule of Civil Procedure 26(b)(5), including a description of the basis of the claimed privilege and all information necessary for Plaintiffs to assess the claim of privilege.

4. You should produce all documents available to you or subject to your access or control that are responsive to the requests. This includes documents in your actual or constructive possession or control, as well as that of your investigators, experts, representatives, agents, and any other persons acting on your behalf.

5. Documents are to be produced as they are kept in the ordinary course of business. Accordingly, documents should be produced in their entirety, without abbreviation, redaction, or expurgation; file folders with tabs or labels identifying documents responsive to this request should be produced intact with the documents; and documents attached to each other should not be separated.

6. Consistent with Federal Rule of Civil Procedure 34(b)(C), all documents are to be produced in electronic form and meet the following criteria:

Printed Materials. All printed materials should be scanned and produced in electronic form. The printed materials shall be converted to a single page TIFF images and produced as follows: (i) images of all file labels, file headings, and file folders associated with any hard copy document will be produced with the images of the hard copy documents; (ii) document breaks for paper documents shall be based on Logical Document Determination (or "LDD"), rather than on physical document breaks; and (iii) the database load file shall include the following fields: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, CONFIDENTIALITY, REDACTED, and CDVOLUME.

Metadata Fields and Processing. The following metadata and coding fields should be produced along with each produced document: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH; CUSTODIAN, CONFIDENTIALITY, REDACTED, OTHER_CUSTODIAN, and CDVOLUME. The OTHER_CUSTODIAN field should be populated to

identify other custodians in possession of the document before deduplication was applied to the data set.

<u>TIFFS.</u> Single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi). Single page TIFF images should be named according to the unique bates number, followed by the extension ".TIF". Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).

<u>Text Files.</u> For each document originating in electronic format, a text file containing the full text of each document should be provided with the image files and metadata. Text of native files should be extracted directly from the native file. The text file should be named according to the unique bates number, followed by the extension ".TXT." The full text and/or OCR of any document should not be contained within a database load file, but rather as a standalone file with each text file containing an entire document as they are defined.

<u>Database Load Files.</u> An ASCII delimited data file (.txt, .dat, or .csv) that can be loaded into commercially acceptable database software (e.g., Concordance) should be provided. The first line of each text file must contain a header identifying each data field name (i.e., header row). Each document within the database load file must contain the same number of fields as defined in the header row.

<u>Cross-Reference Image File Registration.</u> An image load file that can be loaded into commercially acceptable production software (e.g., Opticon, iPro) should be provided. Each TIFF in a production must be referenced in the corresponding image load file. An exemplar load file format is below.

<u>Bates Numbering.</u> All images must be assigned a unique and sequential Bates number.

<u>Native File Productions.</u> If a native file is produced, it should include a TIFF image as a placeholder for the file to represent the file in the production set. The TIFF image placeholder for a native file should be branded with a unique Bates number and state "See Native Document" on the TIFF image. The native file should then be renamed to match the Bates number assigned to the

8

document with its original file extension. The filename field produced in the production load file that reflects the original metadata should maintain the original file name.

<u>Microsoft Office files, WordPerfect, other standard documents (e.g. Google Docs and PDF documents).</u> MS Office files, WordPerfect, other standard documents, such as PDF documents and Google Docs, should be converted to single-page TIFF images and produced consistent with the specifications herein. If the document contains comments or tracked changes, the TIFF images must be generated to include the comments or track changes in the file.

<u>Email and attachments.</u> E-mail and attachments should be converted to single-page TIFF images and produced consistent with the specifications provided herein. Attachments shall be processed as separate documents, and the text database load file shall include a field identifying the production range of all attachments of each e-mail.

<u>Embedded Files.</u> Embedded files shall be treated as separate files. The load file shall include a field identifying, for each document containing an embedded file, the production range of any such embedded file. This production range may be identified in the same field as the production range of an e-mail attachment.

<u>Color Documents.</u> Except as otherwise specifically provided herein or agreed to by the Parties, documents originally in color need not be produced in color unless the production in black and white alters or obscures the substance of the document. Documents produced in color must be produced with agreed compression.

<u>Redactions.</u> If a document requires redaction, native files, full text and/or OCR, and specified metadata fields will be excluded. The TIFF image should show the caption [Redacted, Redacted-Privileged, Redacted-PII, etc.] where applicable and a production load file field should be populated to indicate the document contains a redaction.

>   Encryption. Industry-standard encryption tools and practices must be used when transferring data. Passwords must be at least 8 characters with a mix of character sets and sent in a separate communication from the encrypted data.

Notwithstanding the foregoing, the parties may negotiate a separate production format when necessary.

7. If any otherwise-responsive document was, but is no longer, in existence or in your possession, custody, or control, identify the type of information contained in the document, its current or last known custodian, the location/address of such document, and the identity of all persons having knowledge or who had knowledge of the document, as well as describe in full the circumstances surrounding its destruction, loss, or other disposition from your possession or control.

8. Materials sought by these requests for production that become available after you serve your responses must be disclosed to counsel for Plaintiffs by supplementary response or responses.

9. Pursuant to Federal Rule of Civil Procedure 26(e), you are under a duty to promptly supplement or correct your responses to these requests for production if you learn that a response is in some material respect incomplete or incorrect. If you expect to obtain further information or expect the accuracy of a response given to change between the time responses are served and the time of trial, you are requested

to state this fact in each response. Such supplementary answers are to be served upon Plaintiffs' counsel as soon as practicable after you receive this new information, but, in any event, no later than 14 days after its receipt.

10. If you contend that it would be unreasonably burdensome to obtain and provide any or all of the documents called for in response to any request, then in response to the appropriate request: (a) produce all such documents as are available to you without undertaking what you contend to be an unreasonably burdensome effort; (b) describe the efforts you made to obtain the documents you can produce, identifying who you consulted, describing the files, records and documents you reviewed, and identifying each person who participated in the gathering the documents, specifying the amount of time spent and the nature of work done by that person; and (c) state why the additional efforts to produce other responsive documents would be unreasonably burdensome.

11. A reference to an entity shall be construed to include its officers, directors, partners, members, managers, employees, representatives, agents, consultants, or anyone acting on its behalf.

12. To the extent that you do not have any documents reflecting the information requested, and/or any means of recording the information requested, please so indicate in your response to the specific request.

11

## REQUESTS FOR PRODUCTION

**Request for Production No. 1:** All documents you consulted or referred to, or that otherwise relate to, your Answers to Plaintiffs' First Set of Interrogatories to Defendant Derek Somerville.

**Request for Production No. 2:** All documents or communications discussing, analyzing, referring to, or otherwise relating to or regarding the Georgia Elector Challenges, including but not limited to all communications with or involving the email address gaelectorchallenge@truethevote.org, copies of the challenge, including the list of Targeted Voters you submitted to Forsyth County, and the basis for any conclusion that any of the Targeted Voters are not eligible to vote under Georgia law.

**Request for Production No. 3:** All communications with any of the "Georgia voters" whom True the Vote partnered with in connection with the Georgia Elector Challenges as referred to in True the Vote's December 18, 2020 Press Release. This includes but is not limited to the "Georgia voters" referred to in the Press Release as "representing all 159 counties," as well as Mark Davis, Mark Williams, Ron Johnson, and James Cooper.

**Request for Production No. 4:** All communications regarding the Voter Challenge Lawsuit, including but not limited to the temporary restraining order

issued in that lawsuit and the Secretary of State's December 28, 2020 press release (https://sos.ga.gov/index.php/elections/obama_appointed_judge_strikes_blow_to_rule_of_law_in_georgia_elections) regarding the case and/or the order.

**Request for Production No. 5:** All communications between you and True the Vote regarding the "voter registry research" as referenced in True the Vote's December 18, 2020 press release, including but not limited to communications with persons involved in preparing lists of Targeted Voters.

**Request for Production No. 6:** All documents and communications relating to your "efforts to highlight issues in Georgia's voter rolls," as referenced in True the Vote's December 18, 2020 press release.

**Request for Production No. 7:** All documents and communications relating to the sources you relied upon in verifying any list of Targeted Voters that you submitted, or solicited volunteers to submit, in connection with the Georgia Elector Challenges.

**Request for Production No. 8:** All documents and communications relating to the methodology for creating any list of Targeted Voters that you submitted, or solicited volunteers to submit, in connection with the Georgia Elector Challenges.

**Request for Production No. 9:** All documents and communications that you reviewed to assess or determine the reliability or accuracy of the list of Targeted Voters that were submitted with Georgia Elector Challenges.

Dated this 8th day of February, 2021.

Respectfully Submitted,

*/s/ Uzoma N. Nkwonta*

Marc E. Elias*
Uzoma N. Nkwonta*
Aria Branch*
Christina A. Ford*
Joel Ramirez*
**PERKINS COIE LLP**
700 Thirteenth St., N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
unkwonta@perkinscoie.com
abranch@perkinscoie.com
christinaford@perkinscoie.com
jramirez@perkinscoie.com

Thomas J. Tobin*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000
ttobin@perkinscoie.com

Allegra J. Lawrence (GA Bar No. 439797)
Leslie J. Bryan (GA Bar No. 091175)
Maia Cogen (GA Bar No. 832438)
**LAWRENCE & BUNDY LLC**
1180 West Peachtree Street, Suite 1650
Atlanta, GA 30309
Telephone: (404) 400-3350
Fax: (404) 609-2504
allegra.lawrence-hardy@lawrencebundy.com
leslie.bryan@lawrencebundy.com
maia.cogen@lawrencebundy.com

Dara Lindenbaum (GA Bar No. 980780)
**SANDLER REIFF LAMB ROSENSTEIN & BIRKENSTOCK, P.C.**
1090 Vermont Avenue, NW, Suite 750
Washington, DC 20005

|  |  |
|---|---|
| Molly E. Mitchell* <br> **PERKINS COIE LLP** <br> 1111 West Jefferson Street, Suite 500 <br> Boise, ID  83702-5391 <br> Phone: (208) 343-3434 <br> Fax: (208) 343-3232 <br> mmitchell@perkinscoie.com | Telephone: (202) 479-1111 <br> Fax: 202-479-1115 <br> lindenbaum@sandlerreiff.com |

*Counsel for Plaintiffs*
*\*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served a copy of the foregoing by transmitting a copy to all counsel with an e-mail address of record.

Dated: February 8, 2021

By: <i>/s/ Uzoma N. Nkwonta</i>

# Exhibit A

# TRUE THE VOTE PARTNERS WITH GEORGIANS IN EVERY COUNTY TO PREEMPTIVELY CHALLENGE 364,541 POTENTIALLY INELIGIBLE VOTERS

**True the Vote Partners with Georgians in Every County to Preemptively Challenge 364,541 Potentially Ineligible Voters**

*Citizen-led Effort Seeks to Confirm All Votes Cast in U.S. Senate Runoff Elections are Legal, While Ensuring Any Voter Challenged Has Full Opportunity to Prove Their Voting Eligibility*

ATLANTA, Georgia – True the Vote announced today it is submitting 364,541 Elector Challenges on behalf of Georgia voters representing all 159 counties. An Elector Challenge is a unique feature in Georgia law (GA. CODE ANN. § 21-2-230). It allows a voter to challenge the eligibility of any other voters in his or her county if probable cause exists to show that the challenged voter does not meet the qualifications legally required to cast a ballot. It represents one of the few vehicles that states have to update voter rolls ahead of an election without compromising any legitimate voters' right to have their vote counted.

"Ongoing debates about the November election throughout the country have Americans focused intently on improving the integrity of our elections and restoring the faith of voters. Today we assisted concerned Georgia voters in taking a stand for the sanctity of every legal vote," **said Catherine Engelbrecht, the founder and president of True the Vote.** "It is our hope that this historic challenge marks the beginning of the great awakening of American voters to serve our democracy by getting involved in the process.

"We are proud to be working alongside patriots from across the Peach State; Derek Somerville of Forsyth county and Mark Davis of Gwinnett county who have been leading citizen efforts to highlight issues in Georgia's voter rolls, Mark Williams of Gwinnett County who coordinated among eight print shops to get written challenges printed and delivered within 48 hours, and Ron Johnson of Jackson County and James Cooper of Walton County, who led the charge in recruiting hundreds of volunteer challengers across the state," **Engelbrecht continued.** "Everyone pitched in. This is the power of citizen engagement and the core of what True the Vote exists to do in our pursuit of free, fair and secure elections."

Today's landmark coordinated challenge is the result of True the Vote's voter registry research, which identified 124,114 registered voters who no longer reside in the county of record and 240,427 voters who no longer reside in the state of Georgia, according to filings with the United States Postal Service National Change of Address (NCOA) and other supporting commercial databases. True the Vote's research was performed uniformly across all counties, without regard to any demographic or voting history.

"Filing the challenges preemptively, before absentee ballots are opened, will help ensure only legal, eligible votes are counted in Georgia's January 5 runoff elections," **Engelbrecht concluded.**

According to Georgia law, an Elector Challenge must be filed before a vote is cast. Once a vote has been cast, or in the case of absentee ballots, once the ballot has been removed from its signed envelope, there is no way to identify which ballot belongs to the ineligible party.

In fact, the best way to ensure only eligible voters are voting in the upcoming runoff elections is through Elector Challenges. States must comply with National Voter Registration Act standards in cleaning their voter rolls. Under Section 8 of the National Voter Registration Act, states are required to conduct a general voter registration list maintenance program that makes a reasonable effort to remove ineligible voters. The NVRA's standards limit removal of names only to very narrow conditions, with ineligible names remaining on the list over an extended period of time.

An Elector Challenge does not remove voter names from the registry. Voters who have been challenged will have the opportunity, via GA. CODE ANN. § 21-2-230 to prove eligibility and still have their vote counted in the upcoming runoff election.

"I've said since Election Day that I must follow the law in the execution of our elections, and I've also encouraged Georgians to report any suspected problems for my office to investigate," **said Georgia Secretary of State Brad Raffensperger.** "Though federal law restricts our ability to update our voter registration lists, the Elector Challenge is a vehicle under our law to ensure voter integrity. I support any effort that builds faith in our election system that follows the proper legal procedure."

# # #

*True the Vote* *(TTV) is an IRS-designated 501(c)3 voters' rights organization, founded to inspire and equip volunteers for involvement at every stage of our electoral process. TTV empowers organizations and individuals across the nation to actively protect the rights of legitimate voters, regardless of their political party affiliation. For more information, please visit* *www.truethevote.org*.

/