## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

|  |  |
|---|---|
| FAIR FIGHT, INC., SCOTT BERSON, JOCELYN HEREDIA, and JANE DOE, <br><br> *Plaintiffs*, <br><br> v. <br><br> TRUE THE VOTE, INC., CATHERINE ENGELBRECHT, DEREK SOMERVILLE, MARK DAVIS, MARK WILLIAMS, RON JOHNSON, and JAMES COOPER, <br><br> *Defendants*. | CIVIL ACTION FILE <br><br> NO. 2:20-cv-00302-SCJ |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON PARTIAL FINDINGS

Defendants True the Vote, Inc., Catherine Engelbrecht, Derek Somerville, Mark Davis, Mark Williams, Ron Johnson and James Cooper submit this memorandum of law in support of their motion for judgment on partial findings, respectfully showing the Court as follows:

### INTRODUCTION

Defendants True the Vote (hereinafter "TTV"), Inc. Catherine Engelbrecht, Derek Somerville, Mark Davis, Mark Williams, Ron Johnson and James Cooper ("Defendants") move this Court for judgment on partial findings in accordance with

Federal Rule of Civil Procedure 52(c) on Plaintiffs Fair Fight, Inc., Scott Berson, Jocelyn Heredia, and Jane Doe's ("Plaintiffs") claims for violation of § 11(b) of the Voting Rights Act of 1965 with regards to challenges to registered voters' eligibility under Georgia law, O.C.G.A. § 21-2-230 (hereinafter, "Section 230 challenges"). Plaintiffs have the burden of proving their case by a preponderance of the evidence. The Court has heard the complete presentation of Plaintiffs' case and Plaintiffs failed to present sufficient evidence to establish their burden that (1) Defendants' actions directly or through means of a third-party in which they directed with recklessness, (2) caused, or could have caused, (3) any person to be reasonably be intimidated, threatened, or coerced from voting or attempting to vote. Accordingly, Defendants move this Court for judgment on all of Plaintiffs' claims.

## I.    RELEVANT PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint on December 23, 2020, followed by their First Amended Complaint on March 22, 2021. Plaintiffs' sole claim is violation of Section 11(b) of the Voting Rights Act of 1965 ("VRA"), 52 U.S.C. § 10307(b).

On October 26, 2023, trial commenced. On November 3, 2023, Plaintiffs rested their case and thereafter Defendants timely filed this motion. As made evidently clear during Plaintiffs' case, the evidence presented to this Court fails to

ACTIVE 691330598v1

sufficiently establish that Plaintiffs met their burden for their VRA § 11(b) claims in Count I.

## II.  <u>LEGAL STANDARD FOR A MOTION FOR JUDGEMENT ON PARTIAL FINDINGS</u>

Rule 52(c) provides that "if a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." FRCP 52(C). Accordingly, Judgment on Partial Findings is appropriate where a plaintiff fails to produce evidence of a prima facie case in a bench trial, because without establishment of a prima facie case, the case should not be submitted to a verdict. *Bowen v. Celotex Corp.*, 292 F.3d 565, 566 (8th Cir. 2002).

The rule further provides that "judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a)." In making these findings of fact and conclusions of law, the district court may make findings in accordance with its own view of the evidence. *Ritchie v. U.S.*, 451 F.3d 1019, 1023 (9th Cir. 2006) (citations omitted). The district court is not required to draw any inferences in favor of the non-moving party and is entitled to weigh the credibility of the witnesses. *Dai v. Barr*, 916 F.3d 731, 734 (9th Cir. 2018). Put plainly, if it is apparent that the plaintiff has failed to carry their essential burden of

ACTIVE 691330598v1

proof, then the court should grant the motion. *Price v. U.S. Navy*, 818 F. Supp. 1323, 1324 (S.D. Cal. 1992).

If a plaintiff fails to produce evidence of a *prima facie* case or pretext in a bench trial, the case cannot be submitted for decision in the first place. Instead, the district court must enter judgment on partial findings for the defendant under Fed.R.Civ.P. 52(c). Cf. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). On a Rule 52(c) motion, the Court, as the trier of fact, is authorized "to enter judgment at any time that it can appropriately make a dispositive finding of fact on the evidence." *See Martinez v. U.S. Sugar Corp.*, 880 F. Supp. 773, 775 (M.D. Fla. 1995) (citing Fed.R.Civ.P. 52(c) and advisory committee notes, 1991 amendment).

Judgment on partial findings "streamlines bench trials by authorizing the judge, having heard all the evidence the plaintiff has to offer, to make findings of fact adverse to the plaintiff, including determinations of credibility, without waiting for the defense to put on its case." *Wsol v.Fiduciary Mgmt. Assocs., Inc.*, 266 F.3d 654, 656 (7th Cir. 2001). Because the district court "is acting in the capacity of a finder of fact" on a Fed. R. Civ. P. 52(c) motion, *Pinkston v. Madry*, 440 F.3d 879, 890 (7th Cir. 2006), the plaintiff is not entitled to any favorable inferences nor is the court to view the evidence in a light most favorable to the plaintiff. *Ortloff v. U.S.*, 335 F.3d 652, 660 (7th Cir. 2003); *see also Neopost Industrie B.V. v. PFE Int'l, Inc.*,

4

403 F. Supp.2d 669, 675 (N.D. Ill. 2005) (explaining that under Rule 52(c), "the court is within its prerogative to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies" (citations omitted)). "Thus, the court resolves the disputed issues on the basis of the preponderance of the evidence, *without drawing any special inferences in favor of the plaintiff*."

When ruling on a motion for judgment on partial findings, the  court must weigh the evidence and may consider the witnesses' credibility, treating the motion as if it were a final adjudication at the end of trial; thus, the court resolves the disputed issues on the basis of the preponderance of the evidence, without drawing any special inferences in favor of the plaintiff. *Harrington v. RoundPoint Mortgage Servicing Corporation,* United States District Court, M.D. Florida, Fort Myers Division. November 30, 2017 290 F.Supp.3d 1306.

### III.   <u>ARGUMENT</u>

### A. Legal Standard for 11(b) Voter Intimidation

Section 11(b) of the Voting Rights Act prohibits any person, "whether acting under the color of law or otherwise," from acts which "intimidate, threaten, or coerce . . . any person for voting or attempting to vote," or any attempted acts to do so. 52 U.S.C. § 10307(b). In its ruling on the Motion for Summary Judgment, the Court concluded that for Plaintiffs to succeed in their Section 11(b) claims against Defendants, they must show that (1) Defendants' actions directly or through means

of a third-party in which they directed, (2) caused, or could have caused, (3) any person to be reasonably intimidated, threatened, or coerced from voting or attempting to vote. Most importantly, per this Order, "Plaintiffs must show direct action towards voters that caused or could have caused voters to feel reasonably intimidated." (Order on Summ. J. at 12-13).

The Court explained that to make a finding of intimidation, the Court will consider the totality of circumstances. "Accordingly, the Court will consider non-violent conduct and third-party actions that have been directed by the Defendants. To alleviate any concern about all-encompassing or unforeseeable liability, the Court further determines that the intimidation felt or threatened must also be objectively reasonable." *Id.* at 16.

The Court will consider the following factors in determining the reasonableness of alleged voters' intimidation: (1) the relevance of the proximity of Defendants' challenges to the run-off election, (2) the frivolity of the challenges made, (3) the intent to target specific voters or demographics of voters, (4) the bounty (or legal defense fund) created to incentivize challengers, (5) the recruitment of Navy SEALS to guard (or work) polling places, and (6) the publication of challenged voter's names. (*Id.* at 18).

6

**B. Plaintiffs Failed to Meet Burden by a Preponderance of the Evidence that any Defendant Violated Section 11(b) of the VRA.**

1. *Plaintiffs Failed to Meet Burden by a Preponderance of the Evidence that any Defendant Directly or Directed a Third-Party to Communicate with a Plaintiff or Other voter.*

The evidence in the record shows that none of the Defendants directly or directed a third-party to communicate with a Plaintiff or other voter. Indeed, all the individuals that testified in the Plaintiff's case *expressly* admitted that, not only did no Defendant communicate with them, they did not even know the Defendants' names. Applying these facts to the applicable jurisprudence show that Plaintiffs have flatly not met their burden of proving by a preponderance of the evidence that any Defendant directly or directed a third-party to communicate with a voter. *See, e.g., Wohl*, 498 F. Supp. 3d at 485 (making robocalls to voters by means of a third party agent); *Daschle v. Thune,* No. 4:04-cv-04177 2004 WL 3650153 *5–6 (D.S.D. Nov. 1, 2004) (following Native American voters at polling places "ostentatiously making notes," tracking their license plate numbers, and having "loud conversation[s] in a polling place . . . about Native Americans who were prosecuted for voting illegally . . . ."), TRO granted *Daschle v. Thune*, No. 4:04-cv-04177, Doc. 6 (Nov. 2, 2004); *Willingham v. Cty. of Albany*, 593 F. Supp. 2d 446, 462–63 (N.D.N.Y. 2006) (going to voters' homes and disseminating false information about the absentee ballot process).

ACTIVE 691330598v1

a. Scott Berson Testified that No Defendant Communicated with him.

Mr. Berson testified that no Defendant communicated with him. In fact, he did not know the any of the individual Defendants' names. (Trial, 104:7-105:22).

b. Gamaliel Turner testified that no Defendant communicated with him.

Mr. Turner testified that no Defendant communicated with him and could not identify them in Court. (Trial, 234:22-236:6). He also testified that he that he did not know the individual Defendants' names. (Trial, 232:17-234:4).

c. Stepanie Stinetorf Testified that No Defendant Communicated with her.

Ms. Stinetorf testified that she did not know the names of any individual Defendants, that no Defendant communicated with her and no representatives from TTV communicated with her. (Trial, 464:5-465:24).

d. Jocelyn Heredia Testified that no Defendant Communicated with her.

Ms. Heredia Testified that no Defendant communicated with her. (Trial, 583:2-4). She also testified that did not know the Defendants' names. (Trial 584:5-7).

e. There is no evidence in Plaintiffs' case that any Defendant attempted to intimidate any alleged voter.

There is no evidence showing that any Defendant publicly circulated a communication in any form that showed any elector being challenged. There is further no evidence that any Defendant communicated with a Plaintiff or alleged

8

implicated voter, much less attempted to intimidate, coercive or threaten any alleged

elector. As such, the Plaintiff failed to show a direct or directed communication to a

third party alone warranting dismissal of their case.

    f. <u>Conclusion: the evidence in the record shows that Defendants' did not directly or direct any person to communicate with any voter in any way, thereby conclusively negating the first element of their claim.</u>

    Plaintiffs failed to show by a preponderance of the evidence that a Defendant

directly or directed any person to communicate with any voter. In fact, the evidence

in the record shows conclusively that no Defendant communicated with any Plaintiff

or allegedly intimidated voter. Further, the evidence does not show that any

Defendant submitted publicly a mass challenge or attempted to intimidate a voter.

The absence of evidence showing this factor conclusively negates Plaintiffs' claim.

    **2. Plaintiffs Failed to Meet Burden by a Preponderance of the Evidence that any Defendant Cause or Could Have Caused a voter to be Intimidated.**

    The Court emphasized in footnote 12 of the Order on Summary Judgment that

"it has significant questions regarding causation in this case." As such, the Court

encouraged Plaintiffs (who bear the burden) to particularly address this element at

trial. (Order on Summ. J. at 19). But Plaintiffs failed completely to show causation

between Defendants and any alleged intimidation suffered by any voter. In its MSJ

Order, the Court stated clearly "that Section 11(b) requires a causal link between

Defendants' action and whether voters' felt intimidation." (Order on Summ. J. at

9

23). As shown in the paragraphs that follow, Plaintiffs did not put forth in their case in chief any evidence that the Defendants caused or attempted to cause intimidation to voters in violation of Section 11(b).

     a. **Muscogee County Challenged Voters**

There is no evidence that any Defendant has any causal link to any of the Muscogee county voters – Scott Berson, Gamaliel Turner and Stephanie Stinetorf. Scott Berson left Muscogee County in January 2019 to attend graduate school at Auburn University in Alabama. (Trial, 87:14-21). Mr. Berson updated the mailing address for several of his personal accounts to reflect his residence in Alabama. For the 2021 runoff election, Mr. Berson was asked by a Muscogee County voting official to verify his residency. He was allowed to cast a provisional ballot. A poll worker asked him to provide other proof of residency at a later date so that his vote will be counted. Mr. Berson later provided a record reflecting an address in Muscogee County he located on his online Prudential car insurance account. He provided no evidence that any of the Defendants caused the Section 230 challenges to be filed in Muscogee County.

Gamaliel Turner has lived in California since 2019. During cross examination, Mr. Turner reviewed several examples of publicly available information including Facebook, LinkedIn, and public address records showing him residing in California. When asked if an outside person viewing this information and who does not know

him personally could reasonably assume Turner moved to California he said "yes." (Trial, 247:25-248:5).

During his testimony, Mr. Turner described complications with voting via an absentee ballot. He explained how, at times, he did not receive his absentee ballot at his residence in California. For each time he did not receive his absentee ballot, Mr. Turner called the Muscogee County voters registration office and explained that he was residing in California and had not received his ballot. After these calls, his ballot was sent to his residence in California, and he was able to cast his vote. Despite describing complications related to the mailing of his absentee ballot to California, Mr. Turner claimed he was able to get his vote submitted in 2021 runoff election by filing the lawsuit in Muscogee County. He provided no evidence that his difficulty casting his absentee ballot was due to an alleged Section 230 challenge made by any Defendant. He also provided no evidence that any of the Defendants caused Section 230 challenges to be filed in Muscogee County.

Stephanie Stinetorf and her husband work for the Department of Defense. Ms. Stinetorf moved to Germany in August, 2020 as a result of a military assignment. Due to this assignment, she was allowed to vote via an absentee ballot process. Ms. Stinetorf admitted that she received an email on December 23, 2020 that stated her

ACTIVE 691330598v1

ballot had been received and accepted on December 11, 2020.[1] (Trial, 474:7-8). She provided no evidence that any of the Defendants caused the Section 230 challenges to be filed in Muscogee County.

In conclusion, there is no evidence in the record that connects any Defendant to any of the Muscogee County voters. In fact, the evidence shows that the any Muscogee County voters were informed of any alleged challenged, although Mr. Turner does not say he was informed of a challenge and Ms. Stinetorf's testimony regarding being informed of a challenge is unclear and lacks credibility, because of an injunction Order in the *Majority Forward v. Ben Hill County Board of Elections*, action 509 F.Supp.3d 1348 (M.D. Ga. 2020). The Court initially granted Defendants motion for summary judgment as to the Muscogee County voters. Plaintiffs had the opportunity to present evidence to show a causal link by a preponderance of the evidence between a Defendant and an allegedly intimidated Muscogee County voter and patently failed to do so.

### b. Banks County Challenged Voter

Jocelyn Heredia gave testimony regarding her several moves before and after the January 2021 runoff election. Regarding her domicile, she admitted that unless

---

[1] Ms. Stinetorf acknowledged receiving the email, but stated the information was incorrect. (Trial, 474:7-10).

ACTIVE 691330598v1

someone knew her life circumstances, they would have to know her to understand where she considered to be her home. (Trial, 571:21-572:3).

Ms. Heredia offered no evidence that she was intimidated when she was asked to provide proof of residency when she voted in the January 2021 runoff election. On direct examination when asked how she felt once she found out she was challenged, Ms. Heredia's response was that she felt "confused." (Trial, 551: 1-3). Under cross examination, Ms. Heredia stated that she was already nervous when she went to vote because the voting location was in a "Republican County." She said she became more nervous when she found her vote was being challenged. (Trial, 584:10-585-18). With regards to Banks County publishing a list with her name on it, Ms. Heredia did not provide any evidence this list was created or published by any of the Defendants. Ms. Heredia admitted that she had never received a communication from any Defendant and that she did not know the names of any Defendant in the case. Plaintiffs failed to show by a preponderance of the evidence any causal link between any allegedly intimidated voter and a Defendant. This failure alone warrants granting this motion as to all Defendants.

### 3.  Plaintiffs Failed to Produce any Evidence of Alleged Voter intimidation by the Defendants as it Relates to Section 230 Challenges

The Court's MSJ Order established "that the intimidation felt or threatened must . . be objectively reasonable." (Order on Summ. J. at 12-13). The Court

13

suggested six factors in determining whether a Defendants' actions might have or did cause reasonable intimidation, including:

(1) the proximity of the challenges to the election,

(2) the frivolity of challenges,

(3) Defendants' motivation in making the challenges,

(4) the bounty (or legal defense fund) to incentivize challengers,

(5) the recruitment of Navy SEALS to watch (or work) polling places, and

(6) the publication of challenged voters' names.

The evidence in Plaintiffs' case affirms that no alleged voter was objectively reasonable in being intimidated.

**a. The evidence regarding the proximity of the challenges to the election shows that the electors were not objectively reasonable in being intimidated.**

Because the underlying January 5, 2021 Senate Runoff election was on a shortened timeline (only approximately 60 days from the General Election until the Runoff Election), there was a limited time period for any eligibility challenges to be submitted. The Defendants, to the extent they submitted any challenges, did not have a large temporal window in submitting any eligibility challenges. Defendants' testimony additionally established that they were not seeking to remove any voters from the voter rolls or to deem them ineligible for the January 5, 2021 Senate Runoff.

ACTIVE 691330598v1

**b.  Plaintiffs Failed to Produce any Evidence that Any Alleged Challenge Was Frivolous.**

While there is no causal link between Defendants and Mr. Berson, Mr. Turner, Ms. Stinetorf and Ms. Heredia, even if a challenge were made, it was not frivolous. As is established above, Mr. Berson had moved to Alabama and multiple different states thereafter. (Trial, 103:8-14). Mr. Berson further admitted that a reasonable person would not know where he lived. Mr. Turner moved to California and had lived there for at least three years. (Trial, 240:22-241:19). Turner likewise testified that a reasonable would assume that he lived in California if they did not know him. (Trial, 247:5-248-5). Ms. Heredia moved to multiple different apartments in Atlanta and recently moved to Athens, Georgia—never returning to her voter registration address in Banks County. (Trial, 569:25-570:2). Finally, Ms. Stinetorf moved to Germany and never notified about a challenge to her eligibility. (Trial, 466-10:13). Plaintiffs failed to produce any evidence that any of these alleged challenges were frivolous.

**c. Plaintiffs have not put forth any evidence that Defendants allegedly took   any steps with the intention to dissuade eligible voters from exercising their  right  to vote nor intended to dissuade eligible voters due to the timing of any alleged activities by the Defendants.**

The evidence in the record affirms that Defendants were motivated to fight for safe and secure elections and clean voter rolls. There is no evidence showing by

a preponderance of the evidence that any Defendant was motivated to intimidate voters or dissuade persons from legally casting a ballot.

**e.  Plaintiffs have not entered any evidence that the alleged existence of a bounty (or legal defense fund) for the purpose of incentivizing challengers was used or that any of the Plaintiffs were even aware of this potential fund.**

The record is devoid of any evidence that a legal defense fund or bounty existed or lead to the reasonable intimidation of a voter. Plaintiffs' reference to a legal defense fund or bounty in their opening statement affirms a knowing misrepresentation of the facts to pursue a narrative that is not supported by the record.

**f. Plaintiffs did not put forth any evidence that the Plaintiff voters or any other voters heard, nor were intimidated by private statements allegedly made regarding the recruitment of Navy SEALS to guard (or work) polling places.**

The record is likewise devoid of any evidence that Navy SEALS were actually recruited or led to the reasonable intimidation of any alleged voter. Plaintiffs' reference to Navy SEAls intimidating alleged voters in their opening statement affirms a knowing misrepresentation of the facts to pursue a narrative that is not supported by the record.

ACTIVE 691330598v1

**g. Plaintiffs have not entered any evidence that the Defendants published nor caused the publication of challenged voter's names.**

There is no evidence in the record that a Defendant published a list of challenged voter's names. Plaintiffs failed to meet their burden beyond a preponderance of the evidence to show otherwise.

**h. Conclusion: Plaintiffs failed to meet their burden by a preponderance of the evidence to show any of the above factors support reasonable, objective intimidation.**

Voters every day are asked to confirm where they live. Confirming a residence by filling out a form or sending in a bill to confirm an address does not cause reasonable, objective intimidate. The above factors confirm that is the case. Plaintiffs failed to meet their burden in showing reasonable, objective intimidation. As a policy matter, finding reasonable, objective intimidation under these factors would be detached from existing jurisprudence, would discourage proper eligibility challenges and would create drastic implications for officials administering elections in Georgia. Both the facts and policy implications show that this case's record did not establish reasonable, objective intimidation.

**C.  Defendants Were Not Reckless in Making the Challenges and, thus, Defendants' first amendment rights cannot be infringed via section 11(b)**

One of the key elements the Court has been focused on is the question on if the Defendants were reckless in their actions. The Supreme Court held that in cases of speech alleged to be problematic, the appropriate *mens rea* is a recklessness

standard—*i.e.,* a showing that a person "consciously disregards a *substantial and unjustifiable risk* that the conduct will cause harm to another." *Id.* at 79 (citation omitted; cleaned up). "[R]ecklessness is morally culpable conduct, involving a 'deliberate decision to endanger another.'" *Counterman v. Colorado*, 600 U. S. 66 at 79 (2023). "In the threats context, it means that a speaker is aware 'that others could regard his statements as' threatening violence and 'delivers them anyway.'" *Id.* (citing *Elonis v. United States*, 575 U.S. 723 at 746 (2015) (Alito, J., concurring in part and dissenting in part)). In the voting intimidation context, it would mean that defendants accused of intimidating speech were aware at the time of each act of speech that relevant voters could regard the speech as intimidating with respect to voting and delivered it anyway.

The key to determining recklessness as described above is an examination of the individual's state of mind. Plaintiffs fell way short in their attempt to prove recklessness. They brought forth two expert witnesses in an attempt to make that stretch. These experts neither know the Defendants personally nor have any insight into the Defendants motivations. Testimonial evidence clearly indicates that the Defendants had nothing but the best of intentions. Their goal was to take legal steps under Section 230 to facilitate the submission of good faith challenges to individual county Board of Electors to allow them to follow the Georgia law and determine if the challenged voters were eligible to vote in the county where the challenge was

18

filed based on their residency. Defendants worked with volunteers in each of the counties who had a desire to make these challenges to make their local voter rolls more accurate. These efforts could help ensure that only voters who truly made that county their own could vote for candidates and other matters that impacted that county. It was not with the understanding that their actions would remove voters from the rolls. They could rely on their board of elections to conduct further investigation and make that determination. These actions would bring more accuracy into their local communities.[2]

Plaintiffs did not meet their burden in their attempt to demonstrate Defendants' carefully thought out, measured processes was allegedly reckless. In fact, the evidence revealed that the Defendants put forth their best effort by "funneling down" the large pool of voters they started with based on comparison of the registered Georgia voter registration file with the National Change of Address (hereinafter "NCOA") database. The outcome of these efforts are further

---

[2] At the time Defendants mounted these voter challenges, O.C.G.A. § 21-2-230(a) (2019) provided that "[a]ny elector of the county or municipality may challenge the right of any other elector of the county or municipality, whose name appears on the list of electors, to vote in an election." After a challenge had been filed, the board of registrars was required to "immediately consider such challenge and determine whether probable cause exists to sustain such challenge." Id. § 21-2-230(b). The statute furthermore affords a challenged voter opportunity to prove his or her voting eligibility, even in the face of a probable cause finding by the board of registrars. See, e.g., id. § 21-2-230(b), (c), (e). (Order on Summ. J. at 3)

ACTIVE 691330598v1

exemplified by testimony for one of the Plaintiffs in this matter. As discussed above, Ms. Heredia appeared to have relocated to Atlanta prior to the January 2021 runoff. She lived in multiple residences in the Atlanta area; she serviced her vehicle in the Atlanta area; and she purported to work in the Atlanta area. Although multiple election challengers may have included her on their challenge list and no evidence was provided to prove whether any of the challenges facilitated by the Defendants actually caused the requirement that she provide proof of residence when she went to vote, the fact that she was challenged based on her questionable residency would still be reasonable and far from reckless conduct.

Throughout the trial, Plaintiffs repeatedly emphasized a large list of challenged voters, yet they only produced four voter witnesses. Mr. Berson, Mr. Turner and Ms. Heredia admitted in their testimony it was reasonable for someone to assume they no longer lived in the counties they voted in. They stated that someone would have to know them personally to understand that any relocations during that time period and even presently were merely temporary.

### D.  Fair Fight Lacks Standing on their Diverted Funds Claim

In order for Fair Fight to prevail, they must show how the framework to prove intimidation applies to voters and how Defendants' actions injured Fair Fight. As described above, Plaintiffs have failed to provide evidence of voter intimidation caused by the Defendants. Without this meeting the test established by the Court,

20

Plaintiffs have failed to meet their burden and therefore, Fair Fight's claim should be dismissed.

## **CONCLUSION**

For all the foregoing reasons, Defendants True the Vote, Inc. Catherine Engelbrecht, Derek Somerville, Mark Davis, Mark Williams, Ron Johnson and James Cooper respectfully requests that this Court enter judgment on partial findings in their favor, pursuant to Federal Rule of Civil Procedure 52(c).

Respectfully submitted this 4th day of November, 2023.

By: */s/ Jake Evans*
Jake Evans, Esq.
GA Bar No. 797018
**GREENBERG TRAURIG, LLP**
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
P: (678) 553-2100
F: (678) 553-2212
Jake.Evans@gtlaw.com

*Local Counsel for Defendants*

By: /s/ Michael J. Wynne
Michael J. Wynne*
TX Bar No. 785289
Cameron Powell*
DC Bar No. 459020
**GREGOR WYNNE ARNEY, PLLC**
909 Fannin Street, Suite 3800
Houston, TX 77010
P: (281) 450-7403
mwynne@gwafirm.com

21

cpowell@gwafirm.com
*Admitted Pro Hac Vice*

*Counsel for Defendants*

ACTIVE 691330598v1

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

FAIR FIGHT, INC., SCOTT BERSON,
JOCELYN HEREDIA, and JANE DOE,

     *Plaintiffs*,

v.

TRUE THE VOTE, INC., CATHERINE
ENGELBRECHT, DEREK
SOMERVILLE, MARK DAVIS, MARK
WILLIAMS, RON JOHNSON, JAMES
COOPER, and JOHN DOES 1-10,

     *Defendants*.

CIVIL ACTION FILE

NO. 2:20-cv-00302-SCJ

## <u>LOCAL RULE 7.1D CERTIFICATION</u>

The foregoing **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGEMENT ON PARTIAL FINDINGS** is a computer-generated document prepared in 14-point Times New Roman font in accordance with Local Rule 5.1B and C.

This 4th day of November, 2023.

                    */s/ Jake Evans*
                    Jake Evans

ACTIVE 691330598v1

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

FAIR FIGHT, INC., SCOTT BERSON,
JOCELYN HEREDIA, and JANE DOE,

    *Plaintiffs*,

v.

TRUE THE VOTE, INC., CATHERINE
ENGELBRECHT, DEREK
SOMERVILLE, MARK DAVIS, MARK
WILLIAMS, RON JOHNSON, JAMES
COOPER, and JOHN DOES 1-10,

    *Defendants*.

CIVIL ACTION FILE

NO. 2:20-cv-00302-SCJ

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day served a copy of the within and foregoing **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR ON PARTIAL FINDINGS** upon all parties to this matter by filing said document electronically through this Court's CM/ECF system, which will automatically send electronic notification of such filing to counsel of record.

This 4th day of November, 2023.

                                   */s/ Jake Evans*
                                   Jake Evans

ACTIVE 691330598v1