1

2                    UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF GEORGIA
3                          ATLANTA DIVISION

      FAIR FIGHT, INC., JOHN DOE,     )
4     AND JANE DOE                    )VOLUME 5 - A.M. SESSION
                        PLAINTIFFS,   )
5                                     )DOCKET NO. 2:20-CV-0302-SCJ
            -VS-                      )
6                                     )
      TRUE THE VOTE, INC., CATHERINE  )
7     ENGELBRECHT, DEREK SOMERVILLE,  )
      MARK DAVIS, MARK WILLIAMS, RON  )
8     JOHNSON, JAMES COOPER, AND      )
      JOHN DOES 1-10,                 )
9                        DEFENDANTS.  )
      _____

10                TRANSCRIPT OF SUMMARY JUDGMENT PROCEEDINGS
11              BEFORE THE HONORABLE STEVE C. JONES
                   UNITED STATES DISTRICT JUDGE
12                   THURSDAY, NOVEMBER 2, 2023

13

14    APPEARANCES:

15    ON BEHALF OF THE PLAINTIFFS:

16       ALLEGRA J. LAWRENCE-HARDY, ESQ.
         CHRISTINA ASHLEY FORD, ESQ.
17       LESLIE J. BRYAN, ESQ.
         MARCOS MOCINE-MC QUEEN, ESQ.
18       UZOMA NKWONTA, ESQ.
         TINA MENG MORRISON, ESQ.
19       JACOB SHELLY, ESQ.
         MICHELLE L. MC CLAFFERTY, ESQ.
20

21    ON BEHALF OF THE DEFENDANTS:

22       CAMERON POWELL, ESQ.
         MICHAEL JOHN WYNNE, ESQ.
23       JAMES CULLEN EVANS, ESQ.

24

25

1  APPEARANCES (CONTINUED):

2

ON BEHALF OF INTERVENOR (USA):

3

   DANA PAIKOWSKY, ESQ.
4    JENNIFER J. YUN, ESQ.
     TIM MELLETT, ESQ.
5    AILEEN BELL HUGHES, ESQ.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21
              VIOLA S. ZBOROWSKI, RDR, FAPR, CMR, CRR, RPR, CRC
22       OFFICIAL COURT REPORTER TO THE HONORABLE STEVE C. JONES
                    UNITED STATES DISTRICT COURT
23                       ATLANTA, GEORGIA
                          404-215-1479
24             VIOLA_ZBOROWSKI@GAND.USCOURTS.GOV

25

1    (HELD IN OPEN COURT AT 9 A.M.)

2    THE COURT:  Good morning.  You-all can be seated.

3    Anything I need -- we need to deal with before we

4  start with the next witness?

5    MS. LAWRENCE-HARDY:  Yes.  Good morning, Your Honor.

6    THE COURT:  Good morning.

7    MS. LAWRENCE-HARDY:  We have an issue that has come

8  to our attention that we think the Court might want to

9  address -- us to address in chambers, if that is permissible

10  to Your Honor and opposing counsel.

11    THE COURT:  Okay.  Yeah, yeah.

12    Ms. Conklin, take them to my conference room in my

13  office, the conference room.

14    MR. WYNNE:  Could I say one thing, so I don't --

15    THE COURT:  Yes.

16    MR. WYNNE:  Ron Johnson, a defendant in this case, is

17  in New York City.  He has a tight work schedule.  And so I was

18  going to ask leave to allow him to appear by Zoom when we get

19  to him probably tomorrow.

20    MR. NKWONTA:  No objection.

21    THE COURT:  Okay.

22    MR. WYNNE:  Thank you.

23    THE COURT:  All right.  Just whoever for the

24  plaintiffs you bring and whoever from the defendants,

25  Ms. Conklin will lead you-all in there and Ms. Wright will be

1  be in there with you-all.

2        MS. LAWRENCE-HARDY:  Thank you, Your Honor.

3        THE COURT:  Is this something for the record?

4        MS. LAWRENCE-HARDY:  Your Honor, you may want to when

5  we return.  We just want to get some direction from the Court.

6        THE COURT:  All right.

7        (Recess from 9:05 a.m. to 11:00 a.m.)

8        THE COURT:  Please be seated.

9        I need everyone that's not an attorney in this case

10 or a party to this case to step out in the hall briefly.

11       If you're with the Department of Justice and you're

12 on their staff, you can stay in.  But if you're not an

13 attorney in this case, or a paralegal in this case, or a

14 party, you need to step out into the hall.

15       (Audience left the courtroom.)

16       THE COURT:  Ms. Engelbrecht, I ask you please come to

17 the stand, please.

18       Ms. Engelbrecht, you can be seated.  I remind you,

19 you're still under oath.  You took an oath yesterday.  I gave

20 you an oath.

21       THE WITNESS:  Yes, sir.

22       THE COURT:  You're still under oath.

23       I have a couple of questions to ask you, and before

24 you answer any of them, please think about what I'm asking

25 you.

1        THE WITNESS:  Okay.

2        THE COURT:  It's very important.

3        Were you -- was it explained to you by your

4   attorneys, or one of your attorneys, that you were not

5   supposed to talk to anyone about what's happening in this

6   courtroom or tell anybody what you testified about or what

7   anybody else testified about?

8        THE WITNESS:  Yes, sir.  My understanding was the

9   particulars of what was happening in this courtroom, yes.

10        THE COURT:  Okay.  And I'm not going to ask you,

11   because I don't know what attorney explained it to you, but

12   one of your attorneys did explain that to you?

13        THE WITNESS:  Yes, sir.

14        THE COURT:  Okay.  And you have been here in the

15   courtroom since it started last Thursday; correct?

16        THE WITNESS:  Yes.

17        THE COURT:  One week ago from today.

18        At any point in time have you discussed with anybody,

19   anyone, about what the testimony was in this case?  What

20   anyone did in this case?  Or what's happening in this

21   courtroom?

22        THE WITNESS:  Other than my attorneys, no, sir.  I

23   mean, I was asked -- you know, a long day, you know, who's --

24   that kind of thing, but that was -- that was it.

25        THE COURT:  You participated in a podcast I think

1  Monday night.

2          THE WITNESS:  Yes, sir.

3          THE COURT:  Before that podcast, did you discuss

4  anything in particular about this case with anyone?

5          THE WITNESS:  No.  Just that I had not testified that

6  day.

7          THE COURT:  After the podcast, did you get into any

8  particulars about this case with anyone?

9          THE WITNESS:  No, sir.

10         THE COURT:  It's my understanding you're testifying

11 to me today here under oath that you have not -- you have

12 followed the rules, you have not discussed this case with

13 anyone other than your lawyers, you have not told anyone about

14 what's occurring in this case, what any witness testified to

15 in this case, or what even happened here in the courtroom?

16         THE WITNESS:  No, sir.  Other than to say like a long

17 day or going long or whatever.

18         THE COURT:  Yeah, that's understandable.

19         Okay.  Thank you.

20         THE WITNESS:  Thank you.

21         THE COURT:  You can step down.

22         THE WITNESS:  Sir, I'm sorry for the

23 misunderstanding.

24         THE COURT:  No.  You don't owe me any apology.

25         THE WITNESS:  I just -- I'm sorry for that.

1    THE COURT:  No, no apology needed.

2    Ms. Lawrence-Hardy, Mr. Wynne, at this point in time

3  I'm going to just take this under advertisement until

4  Mr. Gregg Phillips testifies tomorrow.  File your brief, it'll

5  be under seal.  You will also file your brief as well.

6    Can both of you-all have your briefs filed by noon

7  tomorrow?

8    MS. LAWRENCE-HARDY:  Yes, Your Honor.

9    MR. WYNNE:  And just for clarification, Your Honor,

10  if we decide in consultation with our client that Mr. Phillips

11  for other reasons will not be called as a witness, we don't

12  have too much to brief.  And so I'm asking if there's anything

13  else?

14    THE COURT:  You don't have to file a brief at all.

15  You have the option.

16    MR. WYNNE:  Okay.

17    THE COURT:  Ms. Lawrence-Hardy asked me if I still

18  want her to file a brief and I told her yes.  I give you the

19  same opportunity.

20    Now, one thing I will say, I prefer that you-all have

21  no further conversation with Gregg Phillips.  When he gets

22  here tomorrow, just have him stay outside.  As of right now, I

23  don't want you-all, neither side, to have any conversation

24  with Gregg Phillips.  I understand if you know Mr. Phillips,

25  if he contacts you, just say, the judge says I can't talk to

1  you about even the weather just right now, okay?

2      MR. WYNNE:  I may, Your Honor, have to talk to him

3  about a little logistics, make sure he has a suit and things

4  like that, so just logistics.

5      THE COURT:  I thought you told me he already said

6  he's going to put his suit on to come.

7      MR. WYNNE:  Well, that was a little unclear.  I

8  actually offered to -- he could borrow mine, but he's a little

9  too muscular, so...

10      THE COURT:  I don't need him in a suit and tie.

11      MR. WYNNE:  Okay.

12      THE COURT:  He can come here in a warmup suit as far

13  as I'm concerned.  As long as he has clothes on, all right?

14      MR. WYNNE:  Okay.  I'll let my legal assistant handle

15  logistics.

16      THE COURT:  Yeah, yeah.

17      MS. LAWRENCE-HARDY:  Your Honor, if we might ask, if

18  they know Mr. Phillips is not going to testify, there's no

19  need for us to expend the resources of dealing with that

20  issue.  It feels a little unfair that they are -- it seems

21  like they decided that sometime time ago and now we're back

22  and forth on that.

23      Is there a time today they can let us know?

24      MR. WYNNE:  We can decide after lunch after I talk

25  with my client.  I want to make sure the landscape has not

1  changed.

2          THE COURT:  Can you tell them by 2 o'clock this

3  afternoon?

4          MR. WYNNE:  Oh, yes, certainly, Your Honor.

5          MS. LAWRENCE-HARDY:  Thank you Your Honor.

6          THE COURT:  Okay.  All right.  Is there anything else

7  from the plaintiffs?

8          MR. NKWONTA:  Your Honor, before the plaintiffs rest,

9  we have a decent amount of exhibit cleanup we need to do.

10         THE COURT:  Well, I'm talking about logistics

11 matters.

12         MS. LAWRENCE-HARDY:  This is all from us on this

13 particular issue, Your Honor.  Thank you.

14         THE COURT:  All right.  Anything along these logistic

15 matters from the defendants?

16         MR. WYNNE:  No.  Just one thing I want to make sure

17 didn't get lost in the discussion is we need to have the Zoom

18 set up for Mr. Ron Johnson if we get to him, you know, today.

19         THE COURT:  And they've already agreed to that and we

20 will definitely have -- Ms. Wright's back today so we can get

21 that done.

22         MR. WYNNE:  Thank you, Your Honor.

23         MS. LAWRENCE-HARDY:  Your Honor, do you want me to

24 invite --

25         THE COURT:  Yeah.  Somebody has to tell everybody

1  they can come back in.

2          (The audience comes back to the courtroom.)

3          THE COURT:  Okay.  You can go ahead, sir.

4          MR. NKWONTA:  Your Honor, we're finished with our

5  witnesses, but we have some exhibit cleanup and some exhibits

6  to move in.  I think it would be best if we tabled that for

7  tomorrow, and -- and have defendants proceed with their

8  witnesses and do the cleanup when we have a break, when we

9  have a little bit more clarity as to the witness lineup.

10         THE COURT:  Well, let me ask the defendants this,

11  because if you're resting, you just want to kind of get all

12  your exhibits in before you rest.  Is there any argument,

13  objection about any particular exhibits?

14         MR. NKWONTA:  There are.  I believe there may be some

15  objections.  We have not received any objections.  We've just

16  been told that there are.

17         THE COURT:  Which exhibits, sir, are you asking to

18  move in?

19         MR. NKWONTA:  I can read them into the record if that

20  would be helpful.

21         THE COURT:  Yeah.

22         MR. NKWONTA:  Okay.

23         MR. WYNNE:  Yeah, I can jot them down.

24         MR. NKWONTA:  Exhibits 2, 3, 4, 5, 6, and 7, 17, 19,

25  20, 21, 23.  My understanding is 22 and 45 are still under

1  advisement.

2          THE COURT:  22 is in.  45 is under advisement.  22 is

3  in over objection.

4          MR. NKWONTA:  29, 30, 31, 33, 34, 36, 38, 39, 40, 41,

5  42 -- sorry -- 42 is already in.

6          THE COURT:  42 is in.

7          MR. NKWONTA:  41, 43, 44, 46, 47, 51, 52, 53, 54, 55

8  through 70, all of those, 55 through 70.  71 and 72.  74, 75,

9  76, 77, 78, 79, 81 through 89.  93 is the full deposition

10  transcript of Mr. Joseph Martin.  I believe that was admitted

11  by the Court but wanted to get clarity.

12          THE COURT:  I think it was.

13          MR. NKWONTA:  I think the Court requested that to be

14  admitted after --

15          THE COURT:  Yeah, that's in.  That's in.

16          MR. NKWONTA:  94, which are the specific Joseph

17  Martin deposition designations.  95 --

18          THE COURT:  94 should be in as well.  I specifically

19  asked to put 94 -- the transcript.  And in Texas, any e-mails

20  that went along with Joseph Martin's testimony be put into

21  evidence.

22          MR. NKWONTA:  All right.  And so that's -- and 95.

23  And 95 is a -- and we have the binders here.  95 are the

24  excerpts, the impeachment experts from the testimony of

25  Ms. Catherine Engelbrecht, the deposition transcript

1  impeachment excerpts.

2          96, deposition designations for James Copper.

3          97, deposition designations for Mark Davis.

4          98, also deposition designations for Mark Davis'

5  second deposition.

6          99, Engelbrecht deposition designations.

7          100, Halsworth deposition designations.

8          101, Johnson deposition designations.

9          And we are also going to file those final

10 designations on the docket, not the actual transcript but the

11 list, along with the full Martin transcript we'll add as an

12 attachment, per the Court's instructions yesterday.

13         THE COURT:  Okay.

14         MR. NKWONTA:  And then 101, Ron Johnson deposition

15 designations.

16         102, Phillips' deposition designations.

17         103, Derek Somerville first transcript designations.

18         104, Derek Somerville's second transcript

19 designations.

20         And 105, Mark Williams' deposition designation.

21         THE COURT:  Okay.  Mr. Wynne, it's a lot, but if you

22 can tell me your position on some of them or all of them.

23         MR. WYNNE:  Your Honor, this -- going on with our

24 case today, allowing these in, painstaking as it would be,

25 would really handicap us, because rulings on these will have a

1  great bearing on the questions that we ask our witnesses,

2  Mr. Somerville, Mr. Davis.  And, you know, if they're not in

3  evidence, we don't want to inadvertently create a foundation

4  to admit them, nor do we want to waste time, you know,

5  refuting things that aren't even going to come up.

6          And that's -- I would ask them to do it in their

7  case-in-chief.  Moreover, we've got designations from Phillips

8  that complicates matters.  That's on the side.

9          THE COURT:  They're getting ready to rest.  And

10  that's why they're bringing it up now.

11          My understanding, you're getting ready to rest.

12          MR. NKWONTA:  Yes.  That's why I --

13          THE COURT:  That's why they're bringing it up now.

14  That's why I told them, let's address it now.

15          MR. WYNNE:  Yeah.

16          THE COURT:  Well, but my question is, what -- which

17  one if any of these you're objecting to, are you objecting to

18  all of them, some of them, none of them?

19          MR. WYNNE:  I'm objecting now to all of them,

20  because, you know, we had to defer.  I could not make

21  relevance or foundation until we started.

22          THE COURT:  Okay.  We'll go through them one by one

23  then.  We'll go through them one by one.

24          Let's start with No. 2.

25          MR. NKWONTA:  No. 2, Your Honor, that is the True the

1  Vote OpSec invoice, invoice prepared by Mr. Gregg Phillips for

2  the Georgia --

3          THE COURT:  Hold on.

4          All right.

5          MR. WYNNE:  No objection.

6          THE COURT:  First off, it's probably going to take us

7  an hour to hour and a half or more to go through each one of

8  these.  I'm prepared to do that.  I have nowhere to be.  I've

9  already told people I'm prepared to be here all week next

10 week.

11         Now, we can simplify this so you can start getting to

12 your case as quick as possible.  If you would just sit with

13 your co-counsel and look at the ones that you really have

14 objections to and we deal with those.

15         Let me say this to all of you-all.  None of you-all

16 are first-year people right out of law school.  I know the

17 history on every one of you-all.  You're experienced lawyers.

18 You've tried cases before.

19         But what we're doing now is something I would expect

20 of somebody that just graduated last year out of law school

21 trying their first case.

22         You don't have to get along.  You don't have to love

23 each other.  But as lawyers, you are professionals.  Let me

24 say that again.  As lawyers, you are professional.  And

25 lawyers as professionals, above all other professions, know

1  how to deal with matters that's in the law.  You don't have to

2  love each other.  You don't have to be friends.  But you're

3  professionals.

4         And if there is something here you know you're not

5  really going to object to or you're not really going to offer,

6  don't waste time and resources.  Get it done.  So we can get

7  to the meat of the matter.

8         I'm going to step out for 15 minutes.  When I come

9  back in, all the ones you-all are not agreed on we're going to

10  do one by one.

11         Now, when I became district court judge, one of my

12  colleagues told me, Ms. Lawrence-Hardy and Mr. Wynne, you

13  know, I really like to let the lawyers go home before

14  6 o'clock.  But when I was procedural court judge I had no

15  problem keeping lawyers in court until 10 or 11:00.  I can put

16  that hat back on very quickly and be here tonight.

17         I'll be back in this room at 11:30.

18         Does anybody not hear what I'm saying?

19         Thank you-all.

20         (A break was taken from 11:17 a.m. to 11:32 a.m.)

21         THE COURT:  You-all can be seated.

22         All right.  Where are we at?

23         MR. NKWONTA:  Your Honor, I think we've made

24  significant progress.

25         THE COURT:  All right.

1          MR. NKWONTA:  Right now as we sit where we left off,

2   the exhibits that defendants currently object to are 19, 20,

3   23, 54, 61 --

4          THE DEPUTY CLERK:  Could you slow down, please?

5          MR. NKWONTA:  Sure.  Do you want me to start --

6          THE COURT:  19, 20, 23, 54, 61.

7          MR. NKWONTA:  66, 86, 88, 89, and 90.

8          THE COURT:  Is that correct, Mr. Wynne, those are the

9   ones you have objections to?

10         MR. WYNNE:  A couple of clarifications.

11         On 29, no objection if for optional completeness the

12  rest of the string in that post is included.  I think we've

13  come to that understanding.

14         MR. NKWONTA:  Yes, that's correct.  So we'll have a

15  new version of 29 with the additional comments.

16         MR. WYNNE:  And 83 and 87, subject to the

17  representation -- we're fine -- of counsel of what they are.

18  Our clients are not sure that they are what they purport to

19  be, but for now we're not going to object, since I think that

20  goes to the weight.

21         THE COURT:  Okay.  All right.  So here's my

22  understanding of what is coming in without objection.  Please

23  listen closely.  I'm going to go through it slow.

24         No. 2 comes in without objection.

25         No. 3 comes in without objection.

1    4 comes in without objection.

2    5 without objection.

3    6 without objection.

4    No objections to No. 7.

5    No objections to No. 9.

6    11, 12, 13, 14, no objections.

7    17, 18, no objection.

8    There is an objection to 19 and 20.

9    22 I've already admitted in over objection.

10   23, there's an objection -- there is an objection to

11   23.

12   24, no objections.

13   29 and 30, no objections.

14   31, no objections.

15   33 and 34, no objections.

16   36, no objections.

17   38, 39, 40, 41, no objections.

18   And the Court owes you-all a ruling on 45.

19   43, 44, no objections.

20   46 and 47, no objections.

21   48, no objections.

22   51 and 52 and 53, no objections.

23   And 50, no objections.

24   There is --

25   MR. WYNNE:  Your Honor, they did not offer -- they

1  did not list 50 as one of the ones that they were offering

2  earlier, and we certainly do have an objection to 50.

3       THE COURT:  All right.  50 is on the list.

4       Are you not offering 50?

5       MR. NKWONTA:  No.  And, Your Honor, maybe we can do

6  this after you go through the list, but --

7       THE COURT:  No.  Let's do it right now.  Let's do it

8  right now.

9       A simple question:  Are you offering 50 or not?

10       MR. NKWONTA:  I am not.  When I read off the list

11  initially, I left off a few exhibits.

12       THE COURT:  Okay.  50 is off.

13       51, 52 and 53, no objections.

14       54 there is an objection.

15       55, 56, 57, 58, 59, and 60 are no objections.

16       60, there is no objection, but there is an objection

17  to 61.

18       62, 63, 64, and 65, no objections.

19       Of course they have objections to 66.

20       There are no objections from 67 through 85; is that

21  correct?  Other than the ones I already have in over

22  objections, like 73 I admitted over objections.  But the ones

23  that I have not ruled on, I have no objection from 67 --

24       MR. WYNNE:  I have a statement.  There were some of

25  those numbers that he did not offer, so we didn't scrutinize

1    here.

2            THE COURT:  Okay.  Let's deal with those, which ones

3    you did not offer?  Let's just keep going.

4            67, I have no objections.

5            68, no objections.

6            69, no objections.

7            70, no objections.

8            If we get to one you're not offering, let me know.

9            71 and 72, no objections.

10           74, no objections.

11           75, no objections.

12           76, no objections.

13           77, no objections.

14           78, no objections.

15           79, no objections.

16           81, 82 and 83, no objections.

17           84 and 85, no objections.

18           There is an objection to 86.

19           No objections to 87.

20           But there is an objection to 88.

21           There is an objection to 89 and 90.

22           MR. WYNNE:  Your Honor, I'm sorry, but there was an

23   objection to 87.

24           THE COURT:  I have 87 down.  So 87 there is an

25   objection.

 1          MR. WYNNE:  We've resolved 83 for the moment.  Well,
 2  I guess for entirety.
 3          THE COURT:  All right.  Well, my understanding there
 4  are no objections to 91, 92, 93, 94, 95, 96, 97, 98, 99, 100,
 5  101, 102, 103, 104, and 105.
 6          MR. WYNNE:  Right.  I want to make clear that there
 7  is an objection to No. 90.
 8          THE COURT:  90 -- I had 90 down.  I have you down
 9  objecting to 89 and 90.
10          MR. WYNNE:  Okay.
11          THE COURT:  Okay.  So the ones that I have you down
12  for objections to:  19, 20, 23, 54, 61, 66, 86, 87, 88, 89,
13  and 90.
14          And that the plaintiffs are not offering No. 50.
15          MR. NKWONTA:  We're also not offering No. 48, Your
16  Honor.
17          THE COURT:  All right.  48 is not being offered.
18          MR. NKWONTA:  And we are also not offering Nos. 11 to
19  14.
20          And we're not offering No. 9.
21          MR. POWELL:  What about 8?
22          MR. NKWONTA:  8 is already admitted.
23          MR. POWELL:  And 15 and 16?
24          MR. NKWONTA:  15 and 16 are already admitted.
25          THE COURT:  So 9, 11, 12, 13, and 14 are not being

1  offered, along with No. 50.

2       MR. NKWONTA:  No. 18 is not being offered either.

3       THE COURT:  Anything else not being offered?

4       MR. NKWONTA:  No. 24.  And that's it.

5       THE COURT:  Okay.  Now I'm prepared to hear argument

6  starting with No. 19.

7       Why are you offering it?  Why should I allow you to

8  put it in?  And then the defendant can argue why it should not

9  be accepted.

10      MR. NKWONTA:  No. 19 is an article about alleged

11 votes by non-citizens in 2016, an allegation made by Mr. Gregg

12 Phillips.  We believe because of the article and because of

13 the public nature of it, the Court can take judicial notice

14 that that allegation was made and publicized.

15      THE COURT:  I don't have a copy of 19 up here.  Oh,

16 hold on.  I can look up.  I was looking at the white notebook.

17      I want to make sure I'm looking at the right 19.  It

18 starts off:  A silent fact-check:  Did 3 million undocumented

19 immigrants vote in this year's election?  Is that the one?

20      MR. NKWONTA:  Correct.  And we're not admitting it

21 for the purpose of the fact check.  We're admitting it for --

22 and request the Court to take judicial notice that the

23 statement was made and that the -- and that it was publicized.

24 It was made public.

25      THE COURT:  I don't see the value.  If it's not

1  offered for the truthfulness of the matter that the statement

2  was made, isn't that saying I'm accepting that it was made?

3          MR. NKWONTA:  So the truth of the matter would be to

4  accept it for -- to accept and agree that 3 million

5  non-citizens voted.  We're not asking the Court to accept it

6  for the truth of the statement.  We actually don't believe 3

7  million non-citizens voted.

8          But we do want the Court to take judicial notice that

9  this was in the news in 2016 and that it was -- it was a

10 statement put in the news by Mr. Gregg Phillips in 2016,

11 regardless of its truth.

12         THE COURT:  Well, I guess Gregg Phillips so far --

13 the only thing I know about Gregg Phillips I heard this

14 morning.  So he hasn't testified, he's not a defendant in this

15 case.  Why should I care what he says?

16         MR. NKWONTA:  If Mr. Phillips -- if it turns out --

17 and I have to admit I still don't have full clarity as to what

18 Mr. Phillips' status is, but if he does not testify or offer

19 any evidence in this case, then we would withdraw.

20         THE COURT:  Right now I'm not allowing it in.  Gregg

21 Phillips takes this stand and I allow him to testify, then

22 I'll allow you to question him about it.  And if he admits

23 that he said this, it comes in.  But right now it's not coming

24 in.

25         MR. NKWONTA:  Thank you, Your Honor.

1    MR. WYNNE:  For the record, do I say foundation,

2  relevance, hearsay, it's incomplete and you've got a bunch of

3  links we don't know what they are.

4    THE COURT:  All right.  Let's talk about No. 20.

5    MR. NKWONTA:  No. 20 is along the same lines.  It is

6  a transcript of an interview that Mr. Gregg Phillips gave to

7  CNN.

8    THE COURT:  Same ruling.  If he takes the stand and

9  he tells me about it, I might change my ruling.  But right now

10  that is not coming in.

11    23.

12    MR. NKWONTA:  23 is the IRS 990 form for Time For a

13  Hero.  And that IRS 99 form, the public version, identifies

14  the officers of Time For a Hero.  You may recall, that was the

15  organization behind Exhibit 22.

16    MR. WYNNE:  Objection, relevance.

17    THE COURT:  What's the relevancy of this document?

18    MR. NKWONTA:  Well, it establishes and draws a link

19  definitively between Ms. Engelbrecht and Mr. Phillips and Time

20  For a Hero.  It also does so with a particular time frame

21  because of the reporting required in the IRS 990 forms.

22    And the relevance of their connection to Time For a

23  Hero, you may recall, Your Honor, yesterday the questioning

24  about Exhibit 45, the tweet, and the similarities between the

25  slogans and the avatar image with what was posted on the Time

1  For a Hero Facebook page.

2          THE COURT:  What do you have to say?

3          MR. WYNNE:  Yeah, I think that --

4          THE COURT:  Ms. Engelbrecht is an officer on here.

5  It's listed.

6          MR. WYNNE:  And I think it's attenuated, including

7  how Time For a Hero ties in to the facts of this case.  I'm

8  also concerned that, to address it, it complicates the Gregg

9  Phillips issue.  So I'd ask this one, like the others, to be

10 tabled until that's resolved.

11         THE COURT:  It's in over objection.

12         54.

13         MR. NKWONTA:  54 is a -- is a table prepared by

14 Mr. Phillips who created that challenge list.  And it's a

15 table that sorts -- appears to sort voters by race and party.

16         MR. WYNNE:  Objection, hearsay.

17         THE COURT:  It's out unless Mr. Phillips testifies

18 tomorrow and I can see how it's relevant.

19         61.

20         MR. NKWONTA:  61 is a list of voters that were

21 challenged -- or not a list of individual voters, but a count.

22         THE COURT:  A counting.

23         MR. NKWONTA:  And this was produced by defendants, by

24 Mr. Mark Williams.  So this is within his files.

25         MR. WYNNE:  Objection, you know, relevance.

1  Mr. Williams I guess can testify about it, but right now it's

2  hearsay.

3          MR. NKWONTA:  It's highly relevant.  It's a party --

4          THE COURT:  I need a foundation -- I need a

5  foundation for No. 61.  All I have is a bunch of numbers and

6  names.

7          MR. NKWONTA:  Well, it's a party admission because --

8          THE COURT:  That may be so, but I need some kind of

9  foundation.  I can't just put 61 in -- all I have in front of

10  us is a list of 159 counties or 65 counties and numbers.  I

11  need somebody to identify, say that this is put together by

12  Mark Williams or Mark Williams, yeah, I put this together.

13  What you're asking me to do is put in 61 and it's just

14  numbers.  And you can't testify.

15          MR. NKWONTA:  I completely understand that.

16          I guess what I'm struggling with, Your Honor, just to

17  be candid, is that this document was produced and Bates

18  stamped with Mark Williams' Bates stamp.  It was produced with

19  the understanding that it came from his possession, custody

20  and control.  And, again, so that's what we put it on this

21  list and that's why we circuited this list in May and have

22  been trying to get agreement that at least the documents that

23  they've said are theirs, let us agree that they are theirs.

24          THE COURT:  Why didn't you just call Mark Williams

25  for purposes of cross-examination and you could have got it

1    in?

2            MR. NKWONTA:  Well, honestly, I did not believe it

3    would come to this.  I assumed Mark Williams would agree

4    that --

5            THE COURT:  Let me ask you something.  You're a very

6    intelligent attorney.  You do a good job.

7            When you recognized that you were having problems in

8    discovery in this case, doesn't it kind of tip you off like,

9    well, I better be prepared for all aspects of this case?

10           MR. NKWONTA:  We are prepared, Your Honor, so I --

11   just to caveat that, if there are documents here that

12   defendants will not agree come from their own, you know, their

13   own custody or control, then we just won't rest our case and

14   we'll just continue to call witnesses to lay a foundation,

15   kind of like what we had to do with Francis Watson, who waited

16   out through the whole afternoon on Friday and had to go home

17   because, you know -- because we found out at the last minute

18   there was no objection.

19           THE COURT:  What I'm trying to say to you, I think

20   you should realize by now that -- and this is nothing

21   personal.  They're doing what they think is best in the best

22   interest of their client.  Whether you agree or disagree.

23   You're doing what you think is in the best interest of your

24   client.

25           To the best interest of your client, you may

1  sometimes have to inconvenience a witness, or make you have to

2  jump an extra jump that you have to jump, but that's what you

3  have to be prepared to do.  I'm not allowing 61 in as is.

4          And if you do not want to rest and you want to call

5  Mark Williams, that's up to you.  But right now all I have in

6  front of me is a list of 159 counties and numbers.  And that

7  tells me nothing.

8          MR. NKWONTA:  Understood, Your Honor.

9          May I make another request --

10         THE COURT:  Well, we're going to go through this list

11  first.

12         66.

13         MR. WYNNE:  Same objection, Your Honor, no

14  foundation.  At this point, it's hearsay.  And, you know, if

15  some -- if a witness or a party produces something, you know,

16  Mr. Cooper may have something that Mr. Williams produced and

17  it could be all messed up.  I mean, who knows whose list is

18  whose?  If we can get a foundation, I imagine we'll withdraw

19  the question (sic), but right now it's real confusing.

20         MR. NKWONTA:  It's the same issue, Your Honor.

21         THE COURT:  It is.

22         MR. NKWONTA:  We can just sort of -- we can pull the

23  documents with their own Bates and we can, you know, lay the

24  foundation.

25         THE COURT:  All right.  Right now I'm not allowing 66

1  in.

2  86?  I think we've got the same situation with 86

3  that we have with 61 and 66.

4  MR. WYNNE:  It's a complication, too, Your Honor,

5  because some of the lines are cut off.

6  MR. NKWONTA:  86 has been admitted.

7  MR. WYNNE:  I don't think that's so.

8  MR. NKWONTA:  I'm sorry, I'm sorry, 86 has not been

9  admitted.  I'm sorry.

10  MR. WYNNE:  I don't think I let that one in.

11  MR. NKWONTA:  86, same --

12  MR. WYNNE:  It is cut off.

13  MR. NKWONTA:  -- same boat.  We -- their witnesses

14  produced it.

15  THE COURT:  I'm not allowing it in.  And, again, I'm

16  not trying to be difficult but all I have in front of me,

17  again, is a list of counties.

18  MR. NKWONTA:  I understand.  I thought we could

19  streamline this trial.  So what I will propose --

20  THE COURT:  Well, all trials that I try a case like

21  this, this is -- I don't even get into this discussion because

22  lawyers work it out ahead of time, but, listen, I'm not

23  blaming anybody.  One more time.

24  You're doing what you're supposed to do to represent

25  your client and they're doing what they're supposed to do to

1  represent their client.  And you got to kind of -- I'm not

2  telling you to be hard ball or not try to work with folks, but

3  you've got to see where you're at, okay?

4          MR. NKWONTA:  Understood.  I think --

5          THE COURT:  88.

6          MR. NKWONTA:  88.

7          MR. WYNNE:  I think we had 87 on the list, too.

8          THE COURT:  I'm going to come back to 87, but let's

9  say 88 right now.

10         MR. WYNNE:  Okay.

11         THE COURT:  I think you've got the same problem with

12  88 that you've got with 61 and 66 and 86.

13         MR. NKWONTA:  88, same issue.

14         THE COURT:  And 87.  I think you've got the same

15  issue with 87 as well.

16         At this time, I'm not allowing 87 or 88 in, but if

17  you can lay a foundation for these, we'll revisit it.

18         89?

19         MR. NKWONTA:  89, same issue.

20         THE COURT:  All right.  I'm not allowing 89 in.  Same

21  thing.  If you can lay it, we'll come back to it.

22         And 90.

23         MR. NKWONTA:  90 is -- 90 I believe --

24         THE COURT:  90's a little bit different.

25         MR. NKWONTA:  Yes.  Now, I believe it was my

1   understanding 90 was admitted, but if it was not --

2          THE COURT:  I didn't have it on my list.  And you-all

3   told me that -- I think 90 is in.

4          MR. WYNNE:  I'd have been --

5          THE COURT:  No, no, 90 is not in.  91's in.  90 is

6   not in.

7          MR. NKWONTA:  We move to admit 90.  90 consists of

8   the communications between Ms. Engelbrecht and Mr. Eshelman

9   specifically regarding Ms. Engelbrecht's validated data on

10  fraud and whistleblower information.

11         THE COURT:  All right.  Let me say this to you:  If

12  you put Ms. Engelbrecht back on the stand and she identifies

13  it, I'll probably let 90 in.  Right now, it hasn't been

14  identified.

15         MR. NKWONTA:  She did identify it.

16         THE COURT:  Did she identify this?

17         MR. NKWONTA:  She identified it yesterday.  And we

18  talked about it at length.

19         MR. WYNNE:  Your Honor, there's a number -- no.  Wait

20  a minute.

21         There is a number of pages in here, including a

22  letter from the Venable law firm, which is clearly not her

23  statement.  And, furthermore, we object based on -- based on

24  relevance and a lack of foundation.  There are a lot of

25  e-mails in here, including I suspect ones that -- and texts

1  that have not been -- ones between D and TC, and neither of

2  those is her.  And so as presented, you know, this is hearsay.

3            MR. NKWONTA:  Well, Your Honor, the Court --

4            THE COURT:  90 is in over objection.

5       Okay.

6            MR. WYNNE:  I'm sorry?

7            THE COURT:  90 is in over objection.

8       Okay.  I need you to prepare an amended updated

9  plaintiffs' exhibit list, because from 91 to 105 is -- the

10 list you gave us, does not includes 91 to 105.  So I need you

11 to give us an amended updated plaintiffs' exhibit list.

12           MR. NKWONTA:  Yes.  We will do that, Your Honor.

13           THE COURT:  Okay.  Now, do you want to rest your case

14 or do you want to call some other witnesses?

15           MR. NKWONTA:  Can I propose, Your Honor, for the sake

16 of efficiency, that you hold the record open while they put on

17 some of their witnesses so that we can complete this process

18 of authenticating the documents that they produced and then

19 close out after we --

20           THE COURT:  The problem is, is that I'm anticipating

21 a motion as soon as you rest your case.  And in order for me

22 to rule on the motions, plaintiffs' case has to be done, in.

23 I'm willing to take a lunch break and let you come back and

24 tell me something, but either you're resting or you're not

25 resting.

1        MR. NKWONTA:  Well, since we are close to noon, can

2    we take a lunch break and discuss it?

3        THE COURT:  I have no problem with that.

4        We'll come back at 1:15.  Now, here is what we need

5    to know.  One more time.

6        You know why I'm so proud to be a lawyer?  You all --

7    I'm so proud to be a lawyer, because lawyers, as I say, are

8    professionals.  We get things done.  We understand that the

9    law is bigger than we are.  It's not about us.  It's about the

10   whole aspect -- the foundation for America, Ms. Engelbrecht,

11   and you'll probably agree with me, is the law.

12       MS. ENGELBRECHT:  Yes, sir.

13       THE COURT:  And the first time the law cracks,

14   Ms. Lawrence-Hardy, we've got a problem.

15       Now, who are the builders?  You, you, you.  You guys

16   and ladies -- I don't want to get in trouble again -- and

17   ladies make sure that -- in this case you disagree strongly,

18   no problem.  But let's make sure we just get the things to the

19   point where we're just not slowing down the process either way

20   and get it done.

21       So we can come back -- now, the reason why I'm giving

22   this little mini speech, you-all can probably settle most of

23   this in 15 minutes.  If they're objecting, then you need to

24   have your witnesses.

25       But you also be able to say to defendants, well, this

1   is what I'm going to put up this afternoon so the defendants

2   will know, okay, I need to have my first witness to be ready

3   to go at such-and-such time.  Lawyers do that all the time.

4   They do it all the time.  They say, hey, plaintiffs presenting

5   their case, they say, when do you think you're going to rest

6   so I can have my first witness ready.  That's all I'm asking

7   you-all to do.  I'm not asking you to go out to a movie

8   together or have dinner together.  Just talk so we can get

9   this done.

10          MR. WYNNE:  I'll take him up on the dinner offer.

11          THE COURT:  That's between the two of you-all.  As

12   long as you don't ask me to pay.  That's on you-all.

13          You talk to your people.  And once you make a

14   decision whether you want to rest or not, let defense know so

15   they can be prepared and have their first witness.  I don't

16   want to stay here past 6 o'clock.  My wife is already upset.

17   So let's get it done, okay?

18          That's the last sermon I'm going to give you-all in

19   this trial, okay?  Have a good lunch.  See you at 1:15.

20          (Hearing concluded for lunch at 12 noon.)

21          (Change of reporters.)

22

23

24

25

1    C E R T I F I C A T E

2

3    UNITED STATES DISTRICT COURT

4    NORTHERN DISTRICT OF GEORGIA

5

6        I do hereby certify that the foregoing pages are a true
     and correct transcript of the proceedings taken down by me in
7    the case aforesaid.

8
         This the 2nd day of November, 2023.
9

10

11

12

13                    /s/Viola S. Zborowski _____
                      VIOLA S. ZBOROWSKI,
14                    RDR, FAPR, CMR, CRR, RPR, CRC
                      OFFICIAL COURT REPORTER TO
15                    THE HONORABLE STEVE C. JONES

16

17

18

19

20

21

22

23

24

25