IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

|  |  |
|---|---|
| FAIR FIGHT, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TRUE THE VOTE, INC., *et al.*,<br><br>Defendants. | Case No. 2:20-cv-0302-SCJ |

**UNITED STATES' POST-TRIAL BRIEF**

## TABLE OF CONTENTS

I.  The National Voter Registration Act ....................................................................1

    A.  The NVRA's 90-Day "Quiet Period" ...................................................2
    B.  Residency-based Removals Under the NVRA .................................3
    C.  The NVRA's "Safe Harbor" Provision ..............................................5

II.  The NVRA's Potential Relevance to This Case ....................................................7

The United States is not addressing the constitutionality of Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b), because Defendants waived their constitutional defenses at the conclusion of trial. *See* Trial Tr. vol. 8 at 2015:12-2016:14 ("No, we are not challenging the constitutionality of Section 11(b). Something, in fact, we're very proud of and we honor. We're not challenging it in any respect."). For additional discussion of the constitutionality of Section 11(b), the United States refers the Court to the United States' Proposed Conclusions of Law at 12-25, ECF No. 289.

During trial, this Court asked questions of both the United States and Parties about the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq.*, and its relevance to the present case. *See, e.g.*, Trial Tr. vol. 6 A.M. Session at 1420:1–24. The NVRA is a statute enforced by the Attorney General. 52 U.S.C. § 20510(a). The United States offers this supplemental brief for the limited purpose of aiding the Court in addressing those questions.

## I.    The National Voter Registration Act

Congress enacted the NVRA to "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office" and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. §§ 20501(b)(1), (4). To that end, Section 8 requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible

1

voters" from voter rolls.  52 U.S.C. § 20507(a)(4); *see also Bellitto v. Snipes*, 935

F.3d 1192, 1194 (11th Cir. 2019).  Any such program must be "uniform,

nondiscriminatory, and in compliance with the Voting Rights Act of 1965."  52

U.S.C. § 20507(b)(1).

Although the NVRA provides states with significant discretion to conduct

list maintenance, it also provides certain guideposts to ensure those programs

appropriately balance the need to update the rolls with the need to safeguard voters

against erroneous disenfranchisement.  *See Arcia v. Fla. Sec'y of State*, 772 F.3d

1335, 1346 (11th Cir. 2014).  Three such provisions are relevant here: the 90-day

"quiet period," the regulation of removals based on a change in residence, and the

"safe harbor" provision using National Change of Address ("NCOA") information.

*See* 52 U.S.C. §§ 20507(c), (d).

   A. *The NVRA's 90-Day "Quiet Period"*

Under the NVRA, any program with the purpose of "systematically

remov[ing] the names of the ineligible voters from the official lists of eligible

voters" must be completed no later than "90 days prior to the date of a primary or

general election for Federal office."  52 U.S.C § 20507(c)(2)(A).  This 90-day

deadline, also known as the NVRA's "quiet period," does not apply to the removal

of names at the request of voters themselves, by reason of criminal conviction or

mental incapacity as provided by state law, or by reason of a voter's death.  *Id.*
§ 20507(c)(2)(B)(i).

As the Eleventh Circuit noted, the 90-day quiet period reflects Congress's decision "to be more cautious" about programs that systematically remove voters in the final days before an election.  *Arcia*, 772 F.3d at 1346.  This is because systematic removal programs based on second-hand information are more error-prone, and "[e]ligible voters removed days or weeks before Election Day will likely not be able to correct the State's error in time to vote."  *Id.*  The 90-day quiet period thus "strikes a careful balance: It permits systematic removal programs at any time *except* for the 90 days before an election because that is when the risk of disfranchising eligible voters is the greatest."  *Id.* (original emphasis).

B.  *Residency-based Removals Under the NVRA*

Section 8(d) specifies the process that states must follow to give a voter the opportunity to confirm or rebut evidence of a possible change of residence that would render the voter ineligible to vote in the jurisdiction.  States must send the voter a Section 8(d)(2)-compliant notice by forwardable mail, designed to reach the voter wherever they may be, asking the voter to confirm whether they have moved outside the registrar's jurisdiction.  52 U.S.C. § 20507(d).  The voter may affirmatively confirm ineligibility in writing and may then be removed.  *Id.* § 20507(d)(1)(A).  Alternatively, the voter may rebut the

3

evidence of ineligibility either by declaring that they still reside within the jurisdiction or by appearing to vote. *Id.* § 20507(d)(2)(A). If the voter fails to respond to the notice and fails to vote during or before the second federal general election following mailing of the notice, only then may the state properly remove that voter from the voter rolls based on change of residence. *Id.* § 20507(d)(1)(B).

This procedure recognizes that second-hand evidence, such as NCOA information, may not reflect a change of residence impacting a citizen's eligibility to vote in the jurisdiction. The NVRA contemplates that change-of-address information may be probative but does not consider such second-hand information dispositive for removing voters from voter rolls without also following the confirming procedure specified by Section 8(d). Further, as a general matter, Section 8 does not prohibit a state from acting on an individualized determination of a voter's change of residence when presented with reliable first-hand evidence specific to that voter, provided the state is otherwise complying with the NVRA's requirements. *See N.C. State Conf. of the NAACP v. N.C. State Bd. of Elections*, No. 1:16CV1274, 2016 WL 6581284, at *6 (M.D.N.C. Nov. 4, 2016) ("Section 8 does not prohibit individualized determinations of a voter's change of residence based on reliable first-hand evidence specific to that voter." (internal quotation marks omitted)). But a state may not remove voters based solely on systematically procured second-hand evidence of a possible move without following Section 8(d)

notice procedures—whether that evidence is procured by the state or submitted

through a challenge process. *See Majority Forward v. Ben Hill Cnty. Bd. of*

*Elections*, 512 F. Supp. 3d 1354, 1369-70, 1375 (M.D. Ga. 2021) (granting a

preliminary injunction because, in part, defendant likely violated the NVRA by

accepting mass challenges to voters without an individualized inquiry); *see also*

*N.C. State Conf. of the NAACP*, 2016 WL 6581284, at \*5-7 (finding a likelihood of

success on the merits because there was no evidence of individualized information

regarding challenged voters and "there is little question that the County Boards'

process of allowing third parties to challenge … thousands of voters within 90 days

before the 2016 General Election constitutes the type of 'systematic' removal

prohibited by the NVRA.").

   C.  *The NVRA's "Safe Harbor" Provision*

       The NVRA also provides states with a safe harbor for conducting a general

program of list maintenance that makes a reasonable effort to remove voters who

become ineligible because of a change of address. *See* 52 U.S.C. § 20507(c)(2);

*see also* U.S. Dep't of Just., The National Voter Registration Act of 1993 ¶ 35,

https://www.justice.gov/crt/national-voter-registration-act-1993-nvra,

[https://perma.cc/4RZX-M8KT] (last updated July 20, 2022) (explaining the

NVRA's safe harbor procedure); *Bellitto*, 935 F.3d at 1203 (describing the safe

harbor provision and defining "safe harbor" as "a statutory provision that affords

protection from liability or penalty" (internal quotation marks and citation

omitted)).  Under this safe harbor provision, states may use NCOA change-of-

address information provided by the United States Postal Service to identify voters

who may have changed residences and do one of two things: either update their

voter file or begin the notice process required to remove the voter from the rolls.

52 U.S.C. § 20507(c)(1).  But states must take additional steps, including the

notice procedures described above, before removing voters based on such

information.  *See id.* §§ 20507(c), (d); *U.S. Student Ass'n Found. v. Land*, 546 F.3d

373, 381 (6th Cir. 2008) (holding that "States may not remove 'registrants' from an

official list of eligible voters based on a change in residence unless . . . the

specified criteria of [Section 8(d)] are met").

Although there was testimony about the NVRA allowing use of NCOA data

to update the voter file (*see, e.g.,* Trial Tr. vol. 5 at 1248:5-1249:1), the NVRA

limits the ability to update the voter information.  If the NCOA information shows

the voter moved within the registrar's jurisdiction, then an election official may

update registration records to reflect the voter's new address and send the voter a

notice of the change with a prepaid and pre-addressed return form by which the

voter may verify the voter's correct address.  *Id*. § 20507(c)(1)(B)(i).  However,

although the state may correct the voter's address information, it cannot prohibit a

voter from voting based on a possible change of address unless the state meets the

6

requirements of Section 8(d).  *Id.* § 20507(f).  If the NCOA information shows that the voter moved to an address outside of the registrar's jurisdiction, then the information is not updated; rather, the state uses the notice procedure outlined in Section 8(d)(2) to confirm the voter's change of address, and again, can only remove the voter if the notice requirements are met or the voter confirms the move. *Id*. § 20507(c)(1)(B)(ii); *see also Common Cause Ind. v. Lawson*, 937 F.3d 944, 959 (7th Cir. 2019) ("The accuracy or lack thereof of the state's information concerning the voter's change in residence makes no difference under the NVRA. The statute does not set an accuracy threshold; it relies instead on follow-up with the individual voter.").

## II.     The NVRA's Potential Relevance to This Case

Although no NVRA violation is alleged here on the part of the state or local jurisdictions, the NVRA's protections and animating rationales may be informative in a Section 11(b) case involving allegations of bad-faith or reckless mass voter challenges.  *See* United States' Am. Br. at 15–17, ECF No. 198-1; *see also* United States' Proposed Conclusions of Law ¶ 18, ECF No. 289.  As discussed, the NVRA regulates change-of-address based removals and imposes a quiet period to prevent states from engaging in list maintenance programs that subject eligible voters to heightened risks of erroneous disenfranchisement.  *See supra* Part I(A)-(B).  And late-stage mass or systematic voter challenges that attempt to or do in

7

fact circumvent the terms of the NVRA, as well as those based on unreliable second-hand information, conjecture, or no information at all, risk erroneous disenfranchisement.  *See Mont. Democratic Party v. Eaton*, 581 F. Supp. 2d 1077, 1078-79 (D. Mont. 2008) (describing the harm arising from mass voter challenges).

In the context of a Section 11(b) claim concerning last-minute mass voter challenges, an individual's knowledge of the NVRA could also indicate the individual was aware or should have been aware that their activities could burden election officials by forcing them to divert resources from their other duties in the lead-up to an election, cause confusion among election officials and voters, or subject eligible voters to disenfranchisement.  Moreover, if an individual knew that their challenges could not be lawfully accepted because of the NVRA, this could provide evidence that the challenges were intended to create confusion or erroneous disenfranchisement, rather than to disqualify ineligible voters.  *See* United States' Am. Br. at 17 n.8, ECF No. 198-1; *see also Eaton*, 581 F. Supp. 2d at 1079 (discussing "the mischief" an individual "could inject into an election cycle" by using statutes "not for their intended purpose of protecting the integrity of the people's democracy").  Depending on the findings of fact, the NVRA's protections could therefore be a relevant factor to consider in the court's totality-of-circumstances inquiry under Section 11(b) of the Voting Rights Act.

8

Date:  November 15, 2023

Respectfully submitted,

RYAN K. BUCHANAN
United States Attorney
Northern District of Georgia

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

AILEEN BELL HUGHES
Georgia Bar No. 375505
Assistant U.S. Attorney
Office of the United States Attorney
600 U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303
Phone: (404) 581-6000
Fax: (404) 581-6181

*/s/  Judy J. Bao*
TIMOTHY F. MELLETT
DANA PAIKOWSKY
JENNIFER J. YUN
JUDY J. BAO
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.923
Washington, D.C. 20530
Phone: (800) 253-3931
Fax: (202) 307-3961
timothy.f.mellett@usdoj.gov
dana.paikowsky@usdoj.gov
jennifer.yun@usdoj.gov
judy.j.bao@usdoj.gov

9

# CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2023, I electronically filed the

foregoing with the clerk of the court using the CM/ECF system, which will send

notification of this filing to counsel of record.

> /s/ Judy J. Bao
> JUDY J. BAO
> Attorney, Voting Section
> Civil Rights Division
> U.S. Department of Justice

## CERTIFICATE OF COMPLAINCE

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing

motion has been prepared using Times New Roman size 14 font.

*/s/ Judy J. Bao*
JUDY J. BAO
Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice

11