IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| **FAIR FIGHT INC., SCOTT BERSON, JOCELYN HEREDIA, and JANE DOE,**<br><br>  Plaintiffs,<br><br>v.<br><br>**TRUE THE VOTE, CATHERINE ENGELBRECHT, DEREK SOMERVILLE, MARK DAVIS, MARK WILLIAMS, RON JOHNSON, and JAMES COOPER,**<br><br>**Defendants.** | **CIVIL ACTION FILE**<br><br>**No. 2:20-CV-00302-SCJ** |

### ORDER

This matter appears before the Court on Plaintiffs' Motion for Discovery Sanctions.[1] Doc. No. [242]. For the following reasons, the Court **GRANTS** Plaintiffs' motion for sanctions and enters the following adverse

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

inferences—modified from Plaintiffs' proposed inferences—for purposes of its final order in this case.

## I. BACKGROUND

Plaintiffs filed this motion for discovery sanctions, contending that numerous discovery violations occurred in the depositions of Defendant Catherine Engelbrecht and non-Party Gregg Phillips.[2] Doc. No. [242-1]. Plaintiffs took these depositions on January 25, 2022, and January 26, 2022. [3] Doc. Nos. [167-1] (hereinafter, OpSec Dep. Tr.); [168-1] (hereinafter, TTV Dep. Tr.).

Prior to these depositions, the Court entered an order limiting the scope of the deposition inquiries. Doc. No. [142]. Specifically, the Court ordered that "Defense Counsel shall not instruct individual and Rule 30(b)(6) witnesses to not answer questions absent compliance with applicable discovery rules and law." Id. at 2. The Court, moreover, narrowed the scope of relevant topics in the

---

[2] Plaintiffs first objected to this discovery conduct in their motion for summary judgment. Doc. No. [156-1], 28 n. 7. Because the Court denied summary judgment, however, it deferred ruling on these objections and permitted Plaintiffs to reraise their objections in a pre-trial motion. Doc. No. [222], 47 n.24.

[3] Engelbrecht testified in a personal capacity and as the representative from TTV. TTV Dep. Tr. 10:21–11:3. Phillips testified as the representative of OpSec Group, LLC. OpSec Dep. Tr. 13:1–4.

2

deposition to True the Vote's and OpSec's activities from "2012 onward" and in six specific states. Id.

Defendants responded in opposition to Plaintiffs' motion for sanctions and Plaintiffs replied. Doc. Nos. [245]; [255]. The Court indicated that it would resolve this motion at trial and reserved ruling until then. Doc. No. [279], 2 n.2.

The Court held a bench trial in this case from October 26, 2023, through November 7, 2023. The Court intends to issue its final findings of fact and conclusions of law in a forthcoming order. Before issuing its final order, however, the Court must resolve this motion to determine the full universe of applicable facts. See Optowave Co. v. Nikitin, No. 605CV1083ORL22DAB, 2007 WL 129009, at *16 (M.D. Fla. Jan. 13, 2007) (stating that adverse inferences entered as a sanction for discovery violations essentially operate as findings of fact in bench trials).

## II.   LEGAL STANDARD

"The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). Rule 37(b) further provides for sanctions if a party fails to comply

3

with a court order. "Sanctions . . . for violation of an order are only appropriate if the order stated in specific and clear terms what acts were required or prohibited." Consumer Fin. Prot. Bureau v. Brown, 69 F.4th 1321, 1330 (11th Cir. 2023) (internal quotations omitted) (quoting In re Se. Banking Corp., 204 F.3d 1322, 1332 (11th Cir. 2000)).

District courts are afforded wide discretion in determining if a discovery violation has occurred and fashioning a remedy for such violation under Rule 30 and Rule 37. Id. (declaring Rule 37(b) "gives district judges broad discretion to fashion appropriate sanctions for violation of discovery orders[.]" (alteration in original) (quoting Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1542 (11th Cir. 1993))); Cunningham v. Fulton Cnty., 785 F. App'x 798, 804 (11th Cir. 2019) (applying an abuse of discretion standard of review to Rule 30 sanction decisions). Adverse inferences are an appropriate discovery sanction in certain cases of severe misconduct. See, e.g., Higgs v. Costa Crociere S.P.A. Co., 969 F.3d 1295, 1307 (11th Cir. 2020) (affirming an adverse inference as a discovery sanction).

4

**III.   ANALYSIS**

The Court concludes that Plaintiffs' motion for sanctions is to be granted and enters the following modified adverse inferences. The Court proceeds by (A) recounting the discovery conduct giving rise to this motion, (B) addressing the Parties' arguments pertaining to Plaintiffs' inferences, (C) determining the proper inferences to be drawn, and (D) granting Plaintiffs' request for attorneys' fees.

**A.   The Discovery Conduct at Issue**

Plaintiffs contend that defense counsel's conduct during Engelbrecht's and Phillips's depositions violated the Federal Rules and contravened the Court's discovery order. Plaintiffs specifically assert that defense counsel[4] instructed Phillips to not answer forty-two questions because they were "irrelevant" or "beyond the scope of the subject matters." Doc. No. [242-1], 8. Twice Defense

---

[4] Defense counsel who defended Engelbrecht and Phillips' depositions withdrew from the case and different counsel tried the case before the Court. See Doc. Nos. [223]–[228]. The Court understands that current defense counsel had nothing to do with the deposition behavior. Cf., e.g., Trial Tr. 980:9–11 (acknowledging that "Mr. Bopp was handling the case" at the time of the depositions and that trial counsel may have handled the depositions differently). Other than the determinations made to resolve this motion, the Court makes no further comment on the conduct or representation of former defense counsel in this case.

counsel improperly conferred with Phillips off the record during his deposition testimony. Id. 9–10. In four other instances, defense counsel "interrupted to coach" Phillips on his answers to questions. Id. at 10.

In Defendant Engelbrecht's deposition, Plaintiffs contend that defense counsel again twice interrupted to confer with Engelbrecht. Id. at 10–11. Defense counsel further instructed Engelbrecht to not answer questions and made objections that coached the witness. Id. at 11–12.

The conduct that occurred in these depositions is problematic. Deposition testimony is supposed to "proceed as [it] would at trial," where coaching witnesses, breaking to confer with witnesses about the testimony, and making speaking objections would not be allowed. Fed R. Civ. P. 30(c)(1); see also Fed. R. Civ. P. 30(c)(2) ("An objection must be stated concisely in a nonargumentative and nonsuggestive manner."). In a deposition, moreover, the Federal Rules only stop a deponent from answering a question "to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion [to terminate a deposition for bad faith.]" Id. Objections typically are "noted on the record, but the examination still proceeds[.]" Id. Furthermore, the Court's prior order governing these depositions expressly disallowed defense counsel from instructing

6

witnesses to not answer questions, unless the Federal Rules permitted such instruction. Doc. No. [142], 2.

For their part, Defendants essentially admit that defense counsel's conduct in these depositions was improper. Doc. No. [245], 1 ("[N]either Defendants nor the undersigned condone the conduct of Defendants' prior counsel during the depositions of Defendants Engelbrecht and Phillips[.]"), 2 ("Plaintiff[s'] grievances over the conduct of prior counsel may be understandable. Their citations may be well-taken. It's only in the final pages that Plaintiffs' Motion goes off the rails . . . ."). Defendants instead oppose Plaintiffs' motion on the substance of the adverse inferences requested (i.e., the evidence from the depositions is irrelevant, would prejudice Defendants who were uninvolved in the depositions at issue, lack corroboration, are speculative and illogical, and would violate the First Amendment by forcing a witness's particular testimony). See generally id.

Thus, the Court reads Defendants' opposition to the motion for sanctions as opposition to the requested relief sought by Plaintiffs, not as opposition to the underlying basis for the sanctions itself. Accordingly, the Court limits its

7

following discussion to the requested relief of the three adverse inferences propounded by Plaintiffs.[5]

## B. The Relief Requested and Objections Thereto

Plaintiffs acknowledge a wide range of potential discovery sanctions but argue that re-deposing Engelbrecht and Phillips would not be a proper remedy because "defense counsel succeeded in spoiling the questions." Doc. No. [242-1], 23. Plaintiffs instead contend that "defense counsel's behavior warrants the inference that he prevented Mr. Phillips and Ms. Engelbrecht from answering specific questions as they thought best—and the witnesses refused to answer the questions after Plaintiffs' counsel's insistence—because they understood those

---

[5] The Court has reviewed Plaintiffs' citations to the depositions where the improper conduct allegedly occurred. The Court is unconvinced that *every* citation clearly corresponds with sanctionable conduct. See, e.g., OpSec Dep. Tr. 24:19–25:9 (Plaintiffs' counsel admitting that it was "fair enough" that the question asked was outside scope of deposition). The Court nevertheless finds that defense counsel's frequent off the record conferral with the deponents and a number of instances where defense counsel improperly instructed a witness not to answer a question to be sufficiently egregious to support discovery sanctions in this case. See, e.g., OpSec Dep. Tr. 50:11–22 (interrupting to confer), 103:12–104:5 (interrupting to confer), 157:15–158:9 (refusing to let witness answer question about who he supported in Senate runoff election), 175:18–176:5 (refusing to let witness answer question about future efforts to make or help True the Vote with Georgia voter challenges); TTV Dep. Tr. 45:2–17 (interrupting to confer), 72:12–74:6 (coaching witness to not rephrase question). To reiterate, however, this conclusion is further reinforced by Defendants' failure to oppose Plaintiffs' allegations in their opposition response. Doc. No. [245], 1–2.

answers would damage Defendants' defenses in this action." Id. at 24. Thus, Plaintiffs seek three specific inferences: (1) Phillips thought Davis's challenge list was "invalid and unreliable," (2) TTV was responsible for tweets from a social media account (@Crusade4Freedom) about Georgia voter challenges, and (3) Phillips coordinated with TTV following the 2016 presidential election to make allegations of illegal voting lacking in foundation. Id. at 25–26. Plaintiffs also seek attorneys' fees and costs for the filing of the motion. Id. at 26.

Defendants first object that these inferences are irrelevant to Plaintiffs' voter intimidation case. Doc. No. [245], 5–7. Defendants' arguments in support of this irrelevance objection, however, are largely unclear. And, to the contrary, the Court finds that Plaintiffs' requested inferences are relevant in this case.

Next, Defendants argue that the inferences requested go beyond seeking an adverse factual finding, and instead seek specific statements that determine a witness's testimony. Id. at 8–9. The Court exercises its discretion and determines that based on the improper conduct giving rise to the need for sanctions, the exact inferences requested by Plaintiffs are not the proper inferences to draw. The Court instead derives its own inferences, specified *infra*, from the deposition testimony at issue and the improper conduct alleged. Thus, Defendants' concerns

9

about uncorroborated inferences and prejudice are evaded. Id. at 11–12, 19–25. These inferences also avoid Defendants' concerns about forcing speech and prejudicing the other parties in this case. Id. at 16–19, 26–29.

### C.     The Inferences to Be Made

The Court now turns to the substance of the adverse inferences requested. Plaintiffs seek three adverse inferences in this case. The Court addresses each in turn.

#### 1.     *Phillips's Opinion of Davis's Process*

Plaintiffs' first requested inference relates to Phillips's impression of Davis's processes of making his challenge file. Prior to defense counsel's interruption, Phillips testified that Davis's file had "some counts for insufficient data, address[es] not found, multiple responses," which led Phillips to "guess" that Davis did not use specific programs (i.e., CASS or DPV), or "clean the rolls as it relates to identity verification first" and that such omissions constituted "bad process." OpSec Dep. Tr. 103:5–16. Defense counsel then interrupted the follow-up question ("What should Mr. Davis have done?") and went off the record with Phillips. OpSec Dep. Tr. 103:17–19. When the testimony resumed, Plaintiffs' counsel asked what Phillips meant when he testified Davis "used a bad

process" and Phillips then qualified his prior testimony "I was just speculating. It was not appropriate. We don't do it this way." OpSec Dep. Tr. 104:7–12. He later refused to address what Davis could have done differently and instead affirmed that he thought Davis "is doing a good job." OpSec Dep. Tr. 104:15–20. From this exchange, Plaintiffs seek an inference that Phillips "considered" Davis's "challenge process to be invalid and unreliable." Doc. No. [242-1], 25.

While the Court finds that an adverse inference is appropriate for the improper conferral, the Court concludes that the better adverse inference to draw from this exchange is that Phillips thought Davis's process was bad (as he testified to) and that he would have done the analysis differently, in a manner that he thought was better. This inference is better supported by the context of the testimony *and* avoids any improper expert conclusions on the "reliability" or "invalidity" of an empirical process. Indeed, Plaintiffs have been incredibly prophylactic in this case about limiting lay witnesses from testifying about the reliability of the data methods used to craft voter challenge lists. See, e.g., Doc. Nos. [172] (Plaintiffs' first motion to exclude improper expert testimony); [259] (Plaintiffs' second motion to exclude improper expert testimony). Phillips was not tendered as an expert in this case and making an adverse inference about his

11

impression of the "reliability" of a process would be part-and-parcel of the improper expert testimony that the Court has disallowed from Davis, Somerville, *and* Phillips himself. See Doc. No. [221].

Consequently, the Court determines that the adverse inference properly drawn is that Phillips thought Davis's process was bad and that Phillips would have undergone the analysis differently (in a way he thought better).

### 2. *Crusade for Freedom and Time for a Hero*

Next, the Court addresses the proposed inference relating to Crusade for Freedom. Plaintiffs seek an adverse inference that "TTV was responsible for @Crusade4Freedom tweets about Georgia voter challenges in 2020." Doc. No. [242-1], 26. The part of the deposition that Plaintiffs cite as support involves Engelbrecht's testimony about her oversight of communications (including press releases and social media pages) from Time for a Hero[6] and her understanding of the people who later oversaw the organization. TTV Dep. Tr. 43:18–45:1.

---

[6] Time for a Hero is an organization founded by Engelbrecht. TTV Dep. Tr. 36:21–38:14. Throughout this litigation, Plaintiffs have tried to connect certain social media posts by Time for a Hero to another social media account, Crusade for Freedom, which threatened to release challenged voters' names if counties did not act on the challenges made. See, e.g., Doc. No [156-1], 34–36 (Plaintiffs' argument in their motion for summary judgment).

12

Defense counsel again interrupted the deposition and conferred with Engelbrecht off the record. TTV Dep. Tr. 45:2–5. Once Engelbrecht resumed her testimony, Plaintiffs' counsel inquired about the content of the conferral, which Engelbrecht testified was unrelated to questions about Time for a Hero (TTV Dep. Tr. 47:3–19), and then proceeded to ask about Engelbrecht's connections with Time for a Hero during the 2019 tax year (TTV Dep. Tr. 48:3–49:5).

At trial, the Court received evidence regarding Engelbrecht's and Phillips's prior association with Time for a Hero, which had posted in 2020 "Crusade for Freedom coming soon." Trial Tr. 974:16–975:4; PX 99 at 36:21–37:6, 41:10–13; PX 23 at 2 (indicating Engelbrecht's and Phillips's association with Time for a Hero); PX 22 at 20 (posting that Crusade for Freedom was coming soon). A later tweet from an account named Cruusade for Freedom threatened to release the list of all challenged voters. PX 45; PX 99 at 263:8–264:1. The Court took the matter of admitting the documentary evidence of the social media post threatening to release the list of challenged voters (PX 45) under advisement. Trial Tr. 985:24–25.

The Court determines that the following sanction is appropriate for the improper conduct by defense counsel in this portion of Engelbrecht's deposition: the Court will make the adverse inference that Time for a Hero had connections

13

to Crusade for Freedom at the time of the social media post about releasing all challenged voters' names. Engelbrecht has testified to her prior connection to Time for a Hero (Trial Tr. 974:16–975:4), and so the Court, as a trier of fact, can properly weigh this testimony with the inference that Time for a Hero was connected Crusade for Freedom and its social media post, in making its factual findings on this matter.

Moreover, the connection between the two organizations and Engelbrecht's self-proclaimed connection to one of them renders PX 45 (the social media post about releasing all challenged voters' names) relevant trial evidence.[7] Any conclusions drawn therefrom are a matter for the Court to resolve as the trier of fact, not in the instant motion for discovery sanctions.

Accordingly, as a consequence for the sanctionable discovery conduct, the Court infers a connection between Time for a Hero and Crusade for Freedom at the time of the social media post about releasing the challenged voters' names.

---

[7] Plaintiffs argued PX 45 was not hearsay evidence because it was not admitted for the truth of the matter asserted, but instead was "evidence that the threat was made." Trial Tr. 1025:8–10; see also Trial Tr. 1025:11–13 ("Whether or not they actually were going to release the names of the 364,000 people is really irrelevant. What's relevant is the threat is what exacerbates the intimidation."). The Court will address the hearsay objection more appropriately in its final order.

### *3. Phillips's Statements About Non-Citizen Voting in 2016*

Plaintiffs seek one final inference: "Phillips coordinated with TTV after the 2016 presidential election to publicize allegations of illegal voting that lacked foundation." Doc. No. [242-1], 26. The line of testimony at issue involved social media posts, communications, and public interviews by Phillips about concerns of non-citizens voting in the November 2016 election. OpSec Dep. Tr. 27:18–44:19. Substantively, this questioning sought information about Phillips's analysis, data, and methods regarding his claims of non-citizen voters in the 2016 election.

One question specifically inquired about Phillips's coordination with TTV in these efforts. OpSec Dep. Tr. 38:14–20 (asking about Phillips "joining . . . TrueTheVote to initiate legal action"). On the whole, however, Plaintiffs' counsel successfully elicited testimony about Phillips' communications with TTV regarding non-citizens voting (to which he answered had "probably not" occurred) and the initiation of legal action (to which he testified had been discussed but never actually done). OpSec Dep. Tr. 39:22–40:21.

Given that Phillips gave answers to the questions regarding his communications with and the involvement of TTV in these efforts, most of the questions defense counsel instructed Phillips not to answer pertained to his own

15

analysis, data, and methods for determining the existence of non-citizen voting in 2016. Thus, the Court determines that Plaintiffs' proposed inference insufficiently captures the testimony implicated by the misconduct in the deposition. The inference the Court draws instead is that Phillips made public allegations about non-citizen voting in the 2016 election that were unfounded and unsupported by proper data and methods. The Court can determine the weight and relevance of these statements and their connections to TTV in the light of the record evidence at trial in its final order.

### D. Attorneys' Fees and Costs

Finally, Plaintiffs ask for attorneys' fees and costs relating to this motion under Rule 30(d)(2). See Fed. R. Civ. P. 30(d)(2) ("The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party . . . ."). Given that the Court has found (based in no small part on Defendants' own admission) that sanctionable discovery violations occurred in this matter, the Court grants Plaintiffs' request for reasonable attorneys' fees and costs.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Discovery Sanctions. Doc. No. [242]. The Court allows the following (as modified from Plaintiffs' motion) adverse inferences:

- Gregg Phillips thought Mark Davis's process was bad and Phillips would have undergone the analysis differently (in a way he thought was better).

- There existed a connection between Time for a Hero and Crusade for Freedom at the time of the social media post about releasing the challenged voters' names.

- Gregg Phillips made public allegations about non-citizen voting in the 2016 election that were unfounded and unsupported by proper data and methods.

Consequently, the Court will take these facts as established for purposes of its final order in this case.

The Court also **GRANTS** Plaintiffs' request for reasonable attorneys' fees and costs. Plaintiffs must submit the attorneys' fees and costs incurred from this motion, along with proper documentation, within **14-days** of the date of this Order. Defendants, if they wish to object to Plaintiffs' submissions and

documentation, may file objections within **7-days** of Plaintiffs' filing. No reply will be permitted, absent extraordinary circumstances.

**IT IS SO ORDERED** this ___2nd___ day of January, 2024.

                                            s/ Steve C. Jones
                                         **HONORABLE STEVE C. JONES**
                                          **UNITED STATES DISTRICT JUDGE**