4months,APPEAL,CLOSED

# U.S. District Court
# Northern District of Georgia (Gainesville)
# CIVIL DOCKET FOR CASE #: <u>2:20−cv−00302−SCJ</u>

Fair Fight, Inc. et al v. Engelbrecht et al
Assigned to: Judge Steve C. Jones
Cause: 52:20501 National Voter Registration Act

Date Filed: 12/23/2020
Date Terminated: 01/02/2024
Jury Demand: None
Nature of Suit: 441 Civil Rights: Voting
Jurisdiction: Federal Question

**Plaintiff**

**Fair Fight, Inc.**                    represented by **Allegra J. Lawrence**
Lawrence & Bundy, LLC−Atl
Suite 1650
1180 West Peachtree St., NW
Atlanta, GA 30309
404−400−3350
Fax: 404−609−2504
Email: allegra.lawrence−hardy@lawrencebundy.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aria Christine Branch**
Elias Law Group LLP
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001
202−968−4518
Email: abranch@elias.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Ashley Ford**
Elias Law Group LLP
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001
202−968−4558
Email: cford@elias.law
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Dara Lindenbaum**
Sandler Reiff Lamb Rosenstein &
Birkenstock, P.C.
Suite 750
1090 Vermont Avenue, NW
Washington, DC 20005

516–298–8914
Email: lindenbaum@sandlerreiff.com
*TERMINATED: 09/02/2022*
*LEAD ATTORNEY*

**Jacob D Shelly**
Elias Law Group LLP
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001
202–968–4496
Email: jshelly@elias.law
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joel J. Ramirez**
Elias Law Group LLP
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001
202–968–4499
Email: jramirez@elias.law
*TERMINATED: 12/29/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**John M. Devaney**
Perkins Coie–DC
Suite 800
700 Thirteenth St., N.W.
Washington, DC 20005–2011
202–654–6200
*TERMINATED: 12/01/2021*
*LEAD ATTORNEY*

**Leslie J. Bryan**
Lawrence & Bundy, LLC–Atl
Suite 1650
1180 West Peachtree St., NW
Atlanta, GA 30309
404–400–3350
Email: leslie.bryan@lawrencebundy.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maia J. Cogen**
Lawrence & Bundy, LLC–Atl
Suite 1650
1180 West Peachtree St., NW
Atlanta, GA 30309
404–400–3346

Email: maia.cogen@lawrencebundy.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc E. Elias**
Elias Law Group LLP
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001
202–968–4510
Email: melias@elias.law
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marcos Mocine–McQueen**
Elias Law Group LLP
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001
202–968–4492
Email: mmcqueen@elias.law
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Elizabeth Mitchell**
Perkins Coie LLP –ID
Suite 500
1111 West Jefferson Street
Boise, ID 83702
208–343–3434
Email: mmitchell@perkinscoie.com
*TERMINATED: 10/07/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Thomas Tobin**
Perkins Coie–WA
1201 Third Avenue
Suite 4900
Seattle, WA 98101–3099
206–359–8000
*TERMINATED: 10/07/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Tina Meng Morrison**
Elias Law Group LLP
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001

718–909–8665
Email: tmengmorrison@elias.law
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Uzoma Nkwonta**
Elias Law Group LLP
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001
202–968–4517
Email: unkwonta@elias.law
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michelle L McClafferty**
Burr & Forman, LLP–ATL
Suite 1100
171 17th St., N.W.
Atlanta, GA 30363
404–400–3350
Email: michelle.mcclafferty@lawrencebundy.com
*ATTORNEY TO BE NOTICED*

**Torryn Taylor Rodgers**
Perkins Coie LLP
505 Howard Street
Suite 1000
San Francisco, CA 94105
415–344–7000
Email: trodgers@perkinscoie.com
*TERMINATED: 12/01/2021*

**Plaintiff**

**John Doe**
*TERMINATED: 03/22/2021*

represented by **Allegra J. Lawrence**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aria Christine Branch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Ashley Ford**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Dara Lindenbaum**
(See above for address)
*TERMINATED: 09/02/2022*
*LEAD ATTORNEY*

**Jacob D Shelly**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leslie J. Bryan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maia J. Cogen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc E. Elias**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Elizabeth Mitchell**
(See above for address)
*TERMINATED: 10/07/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Thomas Tobin**
(See above for address)
*TERMINATED: 10/07/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Uzoma Nkwonta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Torryn Taylor Rodgers**
(See above for address)
*TERMINATED: 12/01/2021*

**Plaintiff**

**Jane Doe**                    represented by   **Allegra J. Lawrence**
                                                 (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aria Christine Branch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Ashley Ford**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Dara Lindenbaum**
(See above for address)
*TERMINATED: 09/02/2022*
*LEAD ATTORNEY*

**Jacob D Shelly**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John M. Devaney**
(See above for address)
*TERMINATED: 12/01/2021*
*LEAD ATTORNEY*

**Leslie J. Bryan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maia J. Cogen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc E. Elias**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marcos Mocine–McQueen**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Elizabeth Mitchell**
(See above for address)
*TERMINATED: 10/07/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Thomas Tobin**
(See above for address)
*TERMINATED: 10/07/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Tina Meng Morrison**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Uzoma Nkwonta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michelle L McClafferty**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Torryn Taylor Rodgers**
(See above for address)
*TERMINATED: 12/01/2021*

**Plaintiff**

Scott Berson                    represented by   **Jacob D Shelly**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John M. Devaney**
(See above for address)
*TERMINATED: 12/01/2021*
*LEAD ATTORNEY*

**Marcos Mocine–McQueen**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tina Meng Morrison**
(See above for address)

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Allegra J. Lawrence**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michelle L McClafferty**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Uzoma Nkwonta**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jocelyn Heredia**                     represented by **Jacob D Shelly**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John M. Devaney**
(See above for address)
*TERMINATED: 12/01/2021*
*LEAD ATTORNEY*

**Marcos Mocine–McQueen**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tina Meng Morrison**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Allegra J. Lawrence**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michelle L McClafferty**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Uzoma Nkwonta**
(See above for address)
*PRO HAC VICE*

8

*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**True the Vote**                          represented by   **Cameron Powell**
*TERMINATED: 01/01/2021*                                  Gregor Wynne Arney, PLLC
                                                          909 Fannin Street
                                                          Houston, TX 77010
                                                          832–390–2644
                                                          Email: cpowell@gwafirm.com
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **James Bopp , Jr.**
                                                          The Bopp Law Firm, PC
                                                          1 South Sixth Street
                                                          Terre Haute, IN 47807
                                                          812–232–2434
                                                          Email: jboppjr@aol.com
                                                          *TERMINATED: 04/03/2023*
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*

                                                          **Joseph R. Larsen**
                                                          Gregor Wynee Arney, PLLC
                                                          909 Fannin Street
                                                          Suite 3800
                                                          Houston, TX 77010
                                                          713–306–1937
                                                          Email: jlarsen@grfirm.com
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Michael John Wynne**
                                                          Gregor Wynne Arney PLLC
                                                          4265 San Felipe Street
                                                          Suite 700
                                                          Houston, TX 77027
                                                          281–450–7403
                                                          Email: mwynne@gwafirm.com
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Ansley Mikayla Mobley**
                                                          Greenberg Traurig, LLP
                                                          Terminus 200, Suite 2500
                                                          3333 Piedmont Road NE

Atlanta, GA 30305
678–553–2165
Email: Mikayla.Mobley@gtlaw.com
*ATTORNEY TO BE NOTICED*

**Courtney Kramer**
Kramer Law LLC
136 Canton Street
Alpharetta, GA 30004
470–669–0403
Email: ckramer@bopplaw.com
*TERMINATED: 05/12/2022*

**James Cullen Evans**
Greenberg Traurig, LLP
3333 Piedmont Road NE
Suite 2500
Atlanta, GA 30305
678–553–2342
Email: jake.evans@gtlaw.com
*ATTORNEY TO BE NOTICED*

**Ray Stallings Smith , III**
Smith & Liss, LLC
Suite 2600
Five Concourse Parkway
Atlanta, GA 30328
404–760–6006
Fax: 404–760–0225
Email: rsmith@smithliss.com
*TERMINATED: 06/28/2021*

**Defendant**

**Catherine Engelbrecht**                    represented by   **Ansley Mikayla Mobley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Powell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Courtney Turner Milbank**
The Bopp Law Firm, PC
1 South Sixth Street
Terre Haute, IN 47807
812–232–2434
Email: cmilbank@bopplaw.com
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*

*PRO HAC VICE*

**James Bopp , Jr.**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Jeffrey P. Gallant**
The Bopp Law Firm, PC
1 South Sixth Street
Terre Haute, IN 47807
812−232−2434
Email: jgallant@bopplaw.com
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Joseph R. Larsen**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Melena Siebert**
The Bopp Law Firm, PC
1 South Sixth Street
Terre Haute, IN 47807
513−237−6707
Fax: 812−235−3685
Email: msiebert@bopplaw.com
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Michael John Wynne**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**James Cullen Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ray Stallings Smith , III**
(See above for address)
*TERMINATED: 06/28/2021*

**Defendant**

**Derek Somerville**                          represented by  **Ansley Mikayla Mobley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Powell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Courtney Turner Milbank**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**James Bopp , Jr.**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Jeffrey P. Gallant**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Joseph R. Larsen**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Melena Siebert**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Michael John Wynne**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**James Cullen Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ray Stallings Smith , III**
(See above for address)
*TERMINATED: 06/28/2021*

**Defendant**

Mark Davis         represented by    **Ansley Mikayla Mobley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Powell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Courtney Turner Milbank**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**James Bopp , Jr.**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Jeffrey P. Gallant**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Joseph R. Larsen**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Melena Siebert**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Michael John Wynne**

13

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**James Cullen Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ray Stallings Smith , III**
(See above for address)
*TERMINATED: 06/28/2021*

**Defendant**

**Mark Williams**                                  represented by   **Ansley Mikayla Mobley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Powell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Courtney Turner Milbank**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**James Bopp , Jr.**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Jeffrey P. Gallant**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Joseph R. Larsen**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Melena Siebert**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Michael John Wynne**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**James Cullen Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ray Stallings Smith , III**
(See above for address)
*TERMINATED: 06/28/2021*

**Defendant**

**Ron Johnson**                              represented by   **Ansley Mikayla Mobley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Powell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Courtney Turner Milbank**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**James Bopp , Jr.**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Jeffrey P. Gallant**
(See above for address)
*TERMINATED: 04/03/2023*

*LEAD ATTORNEY*
*PRO HAC VICE*

**Joseph R. Larsen**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Melena Siebert**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Michael John Wynne**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**James Cullen Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ray Stallings Smith , III**
(See above for address)
*TERMINATED: 06/28/2021*

**Defendant**

**James Cooper**                    represented by    **Ansley Mikayla Mobley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Powell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Courtney Turner Milbank**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**James Bopp , Jr.**

(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Jeffrey P. Gallant**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Joseph R. Larsen**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Melena Siebert**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Michael John Wynne**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**James Cullen Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ray Stallings Smith , III**
(See above for address)
*TERMINATED: 06/28/2021*

**Defendant**

**John Does 1–10**                    represented by   **Ansley Mikayla Mobley**
*TERMINATED: 09/20/2023*                                (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Cameron Powell**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

**Joseph R. Larsen**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael John Wynne**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James Cullen Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**True the Vote, Inc.**                    represented by   **Ansley Mikayla Mobley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Powell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Courtney Turner Milbank**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**James Bopp , Jr.**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Jeffrey P. Gallant**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Melena Siebert**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**David F. Guldenschuh**
David F. Guldenschuh, P.C.
P.O. Box 3
512 East First Street
Rome, GA 30162–0003
706–295–0333
Fax: 706–295–5550
Email: dfg@guldenschuhlaw.com
*TERMINATED: 03/17/2023*

**James Cullen Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael John Wynne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ray Stallings Smith , III**
(See above for address)
*TERMINATED: 06/28/2021*

**Amicus**

Protect Democracy Project       represented by    **Benjamin L. Berwick**
Protect Democracy – W. MA
Suite 312
15 Main Street
Watertown, MA 02472
202–579–4582
Email: ben.berwick@protectdemocracy.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cameron O. Kistler**
Protect Democracy Project – DC
2020 Pennsylvania Avenue, NW
Suite 163
Washington, DC 20006
202–997–0379
Email: cameron.kistler@protectdemocracy.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric John Galvez Paredes**
Protect Democracy Project

82 Nassau Street, #601
New York, NY 10038
202–579–4582
Email: john.paredes@protectdemocracy.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Adam Martin Sparks**
Krevolin & Horst, LLC
One Atlantic Center
1201 West Peachtree St., NW
Suite 3250
Atlanta, GA 30309
404–888–9700
Fax: 404–888–9577
Email: sparks@khlawfirm.com
*ATTORNEY TO BE NOTICED*

**Intervenor**

**United States of America**                represented by **Timothy Mellett**
United States Depart of Justice– DC
4CON
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
202–307–6262
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aileen Bell Hughes**
Office of the United States
Attorney–ATL600
Northern District of Georgia
600 United States Courthouse
75 Ted Turner Dr., S.W.
Atlanta, GA 30303
404–581–6000
Email: aileen.bell.hughes@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Dana Paikowsky**
DOJ–Crt
Civil Rights Division
4 Constitution Square 150 M Street NE
Washington, DC 20503
202–353–5225
Email: dana.paikowsky@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Jennifer J. Yun**
United States Department of Justice
150 M Street NE

Washington, DC 20002
202–305–5533
Email: Jennifer.Yun@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Judy Bao**
DOJ–Crt
150 M St. NE
Washington, DC 20002
202–598–1409
Email: judy.j.bao@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Movant**

**Brad Raffensperger**                    represented by  **Joshua Barrett Belinfante**
Robbins Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, GA 30318
678–701–9381
Fax: 404–856–3250
Email: jbelinfante@robbinsfirm.com
*ATTORNEY TO BE NOTICED*

**Objector**

**B.J. Van Gundy**                        represented by  **Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**Objector**

**Cindy Morley**                          represented by  **Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**Objector**

**David Clark**                           represented by  **Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**Objector**

**Jason Shepherd**                        represented by  **Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**Objector**

**Larry Reynolds**                        represented by  **Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**Objector**

**Seanie Zappendorf**                    represented by    **Courtney Kramer**
                                                           (See above for address)
                                                           *TERMINATED: 05/12/2022*

**Objector**

**Alice O'Lenick**

**unknown**

**OpSec LLC**                            represented by    **Courtney Kramer**
                                                           (See above for address)
                                                           *TERMINATED: 05/12/2022*

**Counter Claimant**

**True the Vote, Inc.**                  represented by    **Courtney Turner Milbank**
*TERMINATED: 08/17/2021*                                   (See above for address)
                                                           *TERMINATED: 04/03/2023*
                                                           *LEAD ATTORNEY*
                                                           *PRO HAC VICE*

                                                           **James Bopp , Jr.**
                                                           (See above for address)
                                                           *TERMINATED: 04/03/2023*
                                                           *LEAD ATTORNEY*
                                                           *PRO HAC VICE*

                                                           **Jeffrey P. Gallant**
                                                           (See above for address)
                                                           *TERMINATED: 04/03/2023*
                                                           *LEAD ATTORNEY*
                                                           *PRO HAC VICE*

                                                           **Melena Siebert**
                                                           (See above for address)
                                                           *TERMINATED: 04/03/2023*
                                                           *LEAD ATTORNEY*
                                                           *PRO HAC VICE*

                                                           **Ansley Mikayla Mobley**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Courtney Kramer**
                                                           (See above for address)
                                                           *TERMINATED: 05/12/2022*

                                                           **James Cullen Evans**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Ray Stallings Smith , III**
                                                           (See above for address)

*TERMINATED: 06/28/2021*

**Counter Claimant**

**Ron Johnson**
*TERMINATED: 08/17/2021*

represented by **Courtney Turner Milbank**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**James Bopp , Jr.**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Jeffrey P. Gallant**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Melena Siebert**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Ansley Mikayla Mobley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**James Cullen Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ray Stallings Smith , III**
(See above for address)
*TERMINATED: 06/28/2021*

**Counter Claimant**

**Catherine Engelbrecht**
*TERMINATED: 08/17/2021*

represented by **Courtney Turner Milbank**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**James Bopp , Jr.**

(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Jeffrey P. Gallant**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Melena Siebert**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Ansley Mikayla Mobley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**James Cullen Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ray Stallings Smith , III**
(See above for address)
*TERMINATED: 06/28/2021*

**Counter Claimant**

**Mark Williams**
*TERMINATED: 08/17/2021*

represented by **Courtney Turner Milbank**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**James Bopp , Jr.**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Jeffrey P. Gallant**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Melena Siebert**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Ansley Mikayla Mobley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**James Cullen Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ray Stallings Smith , III**
(See above for address)
*TERMINATED: 06/28/2021*

**Counter Claimant**

**James Cooper**
*TERMINATED: 08/17/2021*

represented by **Courtney Turner Milbank**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**James Bopp , Jr.**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Jeffrey P. Gallant**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Melena Siebert**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Ansley Mikayla Mobley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Courtney Kramer**

(See above for address)
*TERMINATED: 05/12/2022*

**James Cullen Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ray Stallings Smith , III**
(See above for address)
*TERMINATED: 06/28/2021*

**Counter Claimant**

**Derek Somerville**                              represented by   **Courtney Turner Milbank**
*TERMINATED: 08/17/2021*                                          (See above for address)
                                                                  *TERMINATED: 04/03/2023*
                                                                  *LEAD ATTORNEY*
                                                                  *PRO HAC VICE*

                                                                  **James Bopp , Jr.**
                                                                  (See above for address)
                                                                  *TERMINATED: 04/03/2023*
                                                                  *LEAD ATTORNEY*
                                                                  *PRO HAC VICE*

                                                                  **Jeffrey P. Gallant**
                                                                  (See above for address)
                                                                  *TERMINATED: 04/03/2023*
                                                                  *LEAD ATTORNEY*
                                                                  *PRO HAC VICE*

                                                                  **Melena Siebert**
                                                                  (See above for address)
                                                                  *TERMINATED: 04/03/2023*
                                                                  *LEAD ATTORNEY*
                                                                  *PRO HAC VICE*

                                                                  **Ansley Mikayla Mobley**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Courtney Kramer**
                                                                  (See above for address)
                                                                  *TERMINATED: 05/12/2022*

                                                                  **James Cullen Evans**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Ray Stallings Smith , III**
                                                                  (See above for address)
                                                                  *TERMINATED: 06/28/2021*

**Counter Claimant**

**Mark Davis**
*TERMINATED: 08/17/2021*

represented by **Courtney Turner Milbank**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**James Bopp , Jr.**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Jeffrey P. Gallant**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Melena Siebert**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Ansley Mikayla Mobley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**James Cullen Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ray Stallings Smith , III**
(See above for address)
*TERMINATED: 06/28/2021*

V.

**Counter Defendant**

**Fair Fight, Inc.**
*TERMINATED: 08/17/2021*

represented by **Allegra J. Lawrence**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aria Christine Branch**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Ashley Ford**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dara Lindenbaum**
(See above for address)
*TERMINATED: 09/02/2022*
*LEAD ATTORNEY*

**Joel J. Ramirez**
(See above for address)
*TERMINATED: 12/29/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Leslie J. Bryan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maia J. Cogen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc E. Elias**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Molly Elizabeth Mitchell**
(See above for address)
*TERMINATED: 10/07/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Thomas Tobin**
(See above for address)
*TERMINATED: 10/07/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Uzoma Nkwonta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

|  | | **Torryn Taylor Rodgers** |
|--|--|--|
|  | | (See above for address) |
|  | | *TERMINATED: 12/01/2021* |

**Counter Defendant**

| **Fair Fight Action, Inc.** | represented by | **Allegra J. Lawrence** |
|--|--|--|
| *TERMINATED: 08/17/2021* | | (See above for address) |
|  | | *ATTORNEY TO BE NOTICED* |
|  | | |
|  | | **Uzoma Nkwonta** |
|  | | (See above for address) |
|  | | *PRO HAC VICE* |
|  | | *ATTORNEY TO BE NOTICED* |

**Counter Defendant**

| **Jane Doe** | represented by | **Allegra J. Lawrence** |
|--|--|--|
| *TERMINATED: 08/17/2021* | | (See above for address) |
|  | | *LEAD ATTORNEY* |
|  | | *ATTORNEY TO BE NOTICED* |

                                 **Aria Christine Branch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

                                 **Christina Ashley Ford**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

                                 **Dara Lindenbaum**
(See above for address)
*TERMINATED: 09/02/2022*
*LEAD ATTORNEY*

                                 **Leslie J. Bryan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

                                 **Maia J. Cogen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

                                 **Marc E. Elias**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Molly Elizabeth Mitchell**
(See above for address)
*TERMINATED: 10/07/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Thomas Tobin**
(See above for address)
*TERMINATED: 10/07/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Uzoma Nkwonta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Torryn Taylor Rodgers**
(See above for address)
*TERMINATED: 12/01/2021*

**Counter Defendant**

**Jocelyn Heredia**                              represented by   **Christina Ashley Ford**
*TERMINATED: 08/17/2021*                                          (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *PRO HAC VICE*
                                                                 *ATTORNEY TO BE NOTICED*

**Dara Lindenbaum**
(See above for address)
*TERMINATED: 09/02/2022*
*LEAD ATTORNEY*

**Joel J. Ramirez**
(See above for address)
*TERMINATED: 12/29/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Leslie J. Bryan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maia J. Cogen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc E. Elias**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Elizabeth Mitchell**
(See above for address)
*TERMINATED: 10/07/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Thomas Tobin**
(See above for address)
*TERMINATED: 10/07/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Allegra J. Lawrence**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Uzoma Nkwonta**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Scott Berson**                        represented by   **Aria Christine Branch**
*TERMINATED: 08/17/2021*                                  (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Christina Ashley Ford**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Dara Lindenbaum**
                                                          (See above for address)
                                                          *TERMINATED: 09/02/2022*
                                                          *LEAD ATTORNEY*

                                                          **Joel J. Ramirez**
                                                          (See above for address)
                                                          *TERMINATED: 12/29/2023*
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*

                                                          **Leslie J. Bryan**
                                                          (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maia J. Cogen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc E. Elias**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Elizabeth Mitchell**
(See above for address)
*TERMINATED: 10/07/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Thomas Tobin**
(See above for address)
*TERMINATED: 10/07/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Allegra J. Lawrence**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Uzoma Nkwonta**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Ms. Stacey Abrams**
*TERMINATED: 08/17/2021*

**Counter Claimant**

**True the Vote, Inc.**          represented by   **Courtney Turner Milbank**
*TERMINATED: 08/17/2021*                          (See above for address)
                                                  *TERMINATED: 04/03/2023*
                                                  *LEAD ATTORNEY*
                                                  *PRO HAC VICE*

                                                  **James Bopp , Jr.**
                                                  (See above for address)
                                                  *TERMINATED: 04/03/2023*
                                                  *LEAD ATTORNEY*
                                                  *PRO HAC VICE*

**Jeffrey P. Gallant**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Melena Siebert**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Ansley Mikayla Mobley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**James Cullen Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ray Stallings Smith , III**
(See above for address)
*TERMINATED: 06/28/2021*

**Counter Claimant**

**Ron Johnson**
*TERMINATED: 08/17/2021*

represented by **Courtney Turner Milbank**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**James Bopp , Jr.**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Jeffrey P. Gallant**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Melena Siebert**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*

*PRO HAC VICE*

**Ansley Mikayla Mobley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**James Cullen Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ray Stallings Smith , III**
(See above for address)
*TERMINATED: 06/28/2021*

**Counter Claimant**

**Catherine Engelbrecht**
*TERMINATED: 08/17/2021*

represented by **Courtney Turner Milbank**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**James Bopp , Jr.**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Jeffrey P. Gallant**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Melena Siebert**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Ansley Mikayla Mobley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**James Cullen Evans**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Ray Stallings Smith , III**
(See above for address)
*TERMINATED: 06/28/2021*

**Counter Claimant**

**Derek Somerville**                    represented by    **Courtney Turner Milbank**
*TERMINATED: 08/17/2021*                                  (See above for address)
                                                          *TERMINATED: 04/03/2023*
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*

                                                          **James Bopp , Jr.**
                                                          (See above for address)
                                                          *TERMINATED: 04/03/2023*
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*

                                                          **Jeffrey P. Gallant**
                                                          (See above for address)
                                                          *TERMINATED: 04/03/2023*
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*

                                                          **Melena Siebert**
                                                          (See above for address)
                                                          *TERMINATED: 04/03/2023*
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*

                                                          **Ansley Mikayla Mobley**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Courtney Kramer**
                                                          (See above for address)
                                                          *TERMINATED: 05/12/2022*

                                                          **James Cullen Evans**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Ray Stallings Smith , III**
                                                          (See above for address)
                                                          *TERMINATED: 06/28/2021*

**Counter Claimant**

**Mark Williams**                       represented by    **Courtney Turner Milbank**
*TERMINATED: 08/17/2021*                                  (See above for address)

*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**James Bopp , Jr.**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Jeffrey P. Gallant**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Melena Siebert**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Ansley Mikayla Mobley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**James Cullen Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ray Stallings Smith , III**
(See above for address)
*TERMINATED: 06/28/2021*

**Counter Claimant**

**James Cooper**                     represented by  **Courtney Turner Milbank**
*TERMINATED: 08/17/2021*                             (See above for address)
                                                     *TERMINATED: 04/03/2023*
                                                     *LEAD ATTORNEY*
                                                     *PRO HAC VICE*

**James Bopp , Jr.**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Jeffrey P. Gallant**

(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Melena Siebert**
(See above for address)
*TERMINATED: 04/03/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Ansley Mikayla Mobley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**James Cullen Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ray Stallings Smith , III**
(See above for address)
*TERMINATED: 06/28/2021*

**Counter Claimant**

**Mark Davis**                    represented by    **Courtney Turner Milbank**
*TERMINATED: 08/17/2021*                           (See above for address)
                                                   *TERMINATED: 04/03/2023*
                                                   *LEAD ATTORNEY*
                                                   *PRO HAC VICE*

                                                   **James Bopp , Jr.**
                                                   (See above for address)
                                                   *TERMINATED: 04/03/2023*
                                                   *LEAD ATTORNEY*
                                                   *PRO HAC VICE*

                                                   **Jeffrey P. Gallant**
                                                   (See above for address)
                                                   *TERMINATED: 04/03/2023*
                                                   *LEAD ATTORNEY*
                                                   *PRO HAC VICE*

                                                   **Melena Siebert**
                                                   (See above for address)
                                                   *TERMINATED: 04/03/2023*
                                                   *LEAD ATTORNEY*
                                                   *PRO HAC VICE*

**Ansley Mikayla Mobley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Courtney Kramer**
(See above for address)
*TERMINATED: 05/12/2022*

**James Cullen Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ray Stallings Smith , III**
(See above for address)
*TERMINATED: 06/28/2021*

V.

**Counter Defendant**

**Ms. Stacey Abrams**
*TERMINATED: 08/17/2021*

**Counter Defendant**

**Scott Berson**                    represented by   **Jacob D Shelly**
*TERMINATED: 08/17/2021*                             (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Allegra J. Lawrence**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Uzoma Nkwonta**
                                                     (See above for address)
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Fair Fight Action, Inc.**          represented by   **Allegra J. Lawrence**
*TERMINATED: 08/17/2021*                             (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Uzoma Nkwonta**
                                                     (See above for address)
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*

**Counter Defendant**

                                     represented by

**Fair Fight, Inc.**
*TERMINATED: 08/17/2021*

**Allegra J. Lawrence**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aria Christine Branch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Ashley Ford**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dara Lindenbaum**
(See above for address)
*TERMINATED: 09/02/2022*
*LEAD ATTORNEY*

**Jacob D Shelly**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joel J. Ramirez**
(See above for address)
*TERMINATED: 12/29/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Leslie J. Bryan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maia J. Cogen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc E. Elias**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Molly Elizabeth Mitchell**
(See above for address)
*TERMINATED: 10/07/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Thomas Tobin**
(See above for address)
*TERMINATED: 10/07/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Uzoma Nkwonta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Torryn Taylor Rodgers**
(See above for address)
*TERMINATED: 12/01/2021*

**Counter Defendant**

**Jocelyn Heredia**                    represented by    **Jacob D Shelly**
*TERMINATED: 08/17/2021*                                (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Allegra J. Lawrence**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Uzoma Nkwonta**
                                                         (See above for address)
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Jane Doe**                           represented by    **Allegra J. Lawrence**
*TERMINATED: 08/17/2021*                                (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Aria Christine Branch**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Christina Ashley Ford**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Dara Lindenbaum**
                                                         (See above for address)

*TERMINATED: 09/02/2022*
*LEAD ATTORNEY*

**Jacob D Shelly**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leslie J. Bryan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maia J. Cogen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc E. Elias**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Molly Elizabeth Mitchell**
(See above for address)
*TERMINATED: 10/07/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Thomas Tobin**
(See above for address)
*TERMINATED: 10/07/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Uzoma Nkwonta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Torryn Taylor Rodgers**
(See above for address)
*TERMINATED: 12/01/2021*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 02/02/2024 | 341 | | USCA Appeal Transmission Letter to USCA– 11th Circuit re: 340 Notice of Appeal, filed by Fair Fight, Inc.. (rsg) (Entered: 02/02/2024) |
| 02/01/2024 | 340 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE OF APPEAL as to 336 Clerk's Judgment, by Fair Fight, Inc.. Case Appealed to USCA − 11th Circuit. Filing fee $ 605, receipt number BGANDC−13198166. Transcript Order Form due on 2/15/2024 (Attachments: # 1 Exhibit 1−Judgment)(Nkwonta, Uzoma) (Entered: 02/01/2024) |
| 02/01/2024 | 339 | | BILL OF COSTS by True the Vote, Inc.. (Attachments: # 1 Exhibit Exhibits)(Evans, James) (Entered: 02/01/2024) |
| 01/17/2024 | 338 | | ORDER scheduling a hearing on Plaintiffs' Notice of Fee Request (Doc. No. 337 ) on February 26, 2024 at 2:30 p.m. (Courtroom No. 303, Sidney O. Smith Federal Building & United States Courthouse, 121 Spring Street SE Gainesville, GA 30501). Signed by Judge Steve C. Jones on 01/17/2024. (ddm) (Entered: 01/17/2024) |
| 01/16/2024 | 337 | | NOTICE by Scott Berson, Fair Fight, Inc., Jocelyn Heredia *of Plaintiffs' Fee Request* (Attachments: # 1 Exhibit Declaration of Uzoma Nkwonta, # 2 Exhibit Declaration of Leslie Bryan)(Nkwonta, Uzoma) (Entered: 01/16/2024) |
| 01/02/2024 | | | Civil Case Terminated. (ddm) (Entered: 01/02/2024) |
| 01/02/2024 | 336 | | CLERK'S JUDGMENT entered in favor of Defendants and against Plaintiffs in accordance with this Court's Order of January 2, 2024 335 . Defendants shall recover the costs of this action, and the action be, and the same hereby is dismissed. (ddm)−−Please refer to http://www.ca11.uscourts.gov to obtain an appeals jurisdiction checklist−− (Entered: 01/02/2024) |
| 01/02/2024 | 335 | | OPINION AND MEMORANDUM OF DECISION finding that there has not been any violation of Section 11(b) of the Voting Rights Act by any of the named Defendants in this case and DIRECTING the Clerk to enter judgment in favor of Defendants and against Plaintiffs. Signed by Judge Steve C. Jones on 01/02/2024. (ddm) (Entered: 01/02/2024) |
| 01/02/2024 | 334 | | ORDER GRANTING Plaintiffs' motion for judicial notice (Doc. No. 294 ) and both of Defendants' motions for judicial notice (Doc. Nos. 304 ; 307 ) subject to its prior oral determinations and modifications at trial. Signed by Judge Steve C. Jones on 01/02/2024. (ddm) (Entered: 01/02/2024) |
| 01/02/2024 | 333 | | ORDER GRANTING Plaintiffs' Motion for Discovery Sanctions. Doc. No. 242 . The Court also GRANTS Plaintiffs' request for reasonable attorneys' fees and costs. Plaintiffs must submit the attorneys' fees and costs incurred from this motion, along with proper documentation, within 14−days of the date of this Order. Defendants, if they wish to object to Plaintiffs' submissions and documentation, may file objections within 7−days of Plaintiffs' filing. No reply will be permitted, absent extraordinary circumstances. Signed by Judge Steve C. Jones on 01/02/2024. (ddm) (Entered: 01/02/2024) |
| 12/29/2023 | 332 | | NOTICE by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe *of Certificate of Consent to Withdraw Joel J. Ramirez as Counsel of Record* (Attachments: # 1 Text of Proposed Order)(Nkwonta, Uzoma) (Entered: 12/29/2023) |
| 12/01/2023 | | | Submission of 307 MOTION Motion for Judicial Notice , to District Judge Steve C. Jones. (pdw) (Entered: 12/01/2023) |
| 11/27/2023 | 331 | | Defendant's Witness List from bench trial held 10/26/2023 − 11/07/2023. (pdw) (Entered: 11/27/2023) |

| 11/27/2023 | 330 | | Plaintiffs' Witness List from bench trial held 10/26/2023 – 11/07/2023. (pdw) (Entered: 11/27/2023) |
|---|---|---|---|
| 11/27/2023 | 329 | | Defendants' Exhibit List from bench trial held 10/26/2023 – 11/07/2023. (pdw) (Entered: 11/27/2023) |
| 11/27/2023 | 328 | | Plaintiffs' Exhibit List from bench trial held 10/26/2023 – 11/07/2023. (pdw) (Entered: 11/27/2023) |
| 11/21/2023 | | | Submission of 304 Motion to Take Judicial Notice, to District Judge Steve C. Jones. (pdw) (Entered: 11/21/2023) |
| 11/21/2023 | | | Submission of 294 MOTION For Judicial Notice , to District Judge Steve C. Jones. (pdw) (Entered: 11/21/2023) |
| 11/20/2023 | 327 | | TRANSCRIPT of Bench Trial Proceedings held on 11/6/2023, before Judge Steve C. Jones. Court Reporter/Transcriber Shannon R. Welch, RMR, CRR. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/11/2023. Redacted Transcript Deadline set for 12/21/2023. Release of Transcript Restriction set for 2/20/2024. (Attachments: # 1 Notice of Filing) (srw) (Entered: 11/20/2023) |
| 11/20/2023 | 326 | | TRANSCRIPT of Bench Trial Proceedings held on 11/6/2023, before Judge Steve C. Jones. Court Reporter/Transcriber Shannon R. Welch, RMR, CRR. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/11/2023. Redacted Transcript Deadline set for 12/21/2023. Release of Transcript Restriction set for 2/20/2024. (Attachments: # 1 Notice of Filing) (srw) (Entered: 11/20/2023) |
| 11/20/2023 | 325 | | TRANSCRIPT of Bench Trial Proceedings held on 11/3/2023, before Judge Steve C. Jones. Court Reporter/Transcriber Shannon R. Welch, RMR, CRR. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/11/2023. Redacted Transcript Deadline set for 12/21/2023. Release of Transcript Restriction set for 2/20/2024. (Attachments: # 1 Notice of Filing) (srw) (Entered: 11/20/2023) |
| 11/20/2023 | 324 | | TRANSCRIPT of Bench Trial Proceedings held on 11/2/2023, before Judge Steve C. Jones. Court Reporter/Transcriber Shannon R. Welch, RMR, CRR. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due |

| | | | 12/11/2023. Redacted Transcript Deadline set for 12/21/2023. Release of Transcript Restriction set for 2/20/2024. (Attachments: # 1 Notice of Filing) (srw) (Entered: 11/20/2023) |
|---|---|---|---|
| 11/20/2023 | 323 | | TRANSCRIPT of Bench Trial Proceedings held on 11/1/2023, before Judge Steve C. Jones. Court Reporter/Transcriber Shannon R. Welch, RMR, CRR. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/11/2023. Redacted Transcript Deadline set for 12/21/2023. Release of Transcript Restriction set for 2/20/2024. (Attachments: # 1 Notice of Filing) (srw) (Entered: 11/20/2023) |
| 11/20/2023 | 322 | | TRANSCRIPT of Bench Trial Proceedings held on 10/30/2023, before Judge Steve C. Jones. Court Reporter/Transcriber Shannon R. Welch, RMR, CRR. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/11/2023. Redacted Transcript Deadline set for 12/21/2023. Release of Transcript Restriction set for 2/20/2024. (Attachments: # 1 Notice of Filing) (srw) (Entered: 11/20/2023) |
| 11/20/2023 | 321 | | TRANSCRIPT of Bench Trial Proceedings held on 10/27/2023, before Judge Steve C. Jones. Court Reporter/Transcriber Shannon R. Welch, RMR, CRR. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/11/2023. Redacted Transcript Deadline set for 12/21/2023. Release of Transcript Restriction set for 2/20/2024. (Attachments: # 1 Notice of Filing) (srw) (Entered: 11/20/2023) |
| 11/20/2023 | 320 | | TRANSCRIPT of Bench Trial Proceedings held on 10/26/2023, before Judge Steve C. Jones. Court Reporter/Transcriber Shannon R. Welch, RMR, CRR. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/11/2023. Redacted Transcript Deadline set for 12/21/2023. Release of Transcript Restriction set for 2/20/2024. (Attachments: # 1 Notice of Filing) (srw) (Entered: 11/20/2023) |
| 11/15/2023 | 319 | | NOTICE Of Filing by United States of America *Post–Trial Brief* (Bao, Judy) (Entered: 11/15/2023) |
| 11/15/2023 | 318 | | Proposed Findings of Fact by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Nkwonta, Uzoma) (Entered: 11/15/2023) |

| 11/15/2023 | 317 | | Proposed Findings of Fact by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Wynne, Michael) (Entered: 11/15/2023) |
|---|---|---|---|
| 11/13/2023 | 316 | | TRANSCRIPT of Bench Trial Proceedings held on 11/7/2023, before Judge Steve C. Jones. Court Reporter/Transcriber Viola S. Zborowski. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Tape Number: 8 – Full Day. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/4/2023. Redacted Transcript Deadline set for 12/14/2023. Release of Transcript Restriction set for 2/12/2024. (Attachments: # 1 Appendix Notice of Filing Transcript) (Entered: 11/13/2023) |
| 11/13/2023 | 315 | | TRANSCRIPT of Bench Trial Proceedings held on 11/3/2023, before Judge Steve C. Jones. Court Reporter/Transcriber Viola S. Zborowski. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Tape Number: 6 – A.M. SESSION. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/4/2023. Redacted Transcript Deadline set for 12/14/2023. Release of Transcript Restriction set for 2/12/2024. (Attachments: # 1 Appendix Notice of Filing Transcript) (Entered: 11/13/2023) |
| 11/13/2023 | 314 | | TRANSCRIPT of Bench Trial Proceedings held on 11/2/2023, before Judge Steve C. Jones. Court Reporter/Transcriber Viola S. Zborowski. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Tape Number: 5 – A.M. SESSION. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/4/2023. Redacted Transcript Deadline set for 12/14/2023. Release of Transcript Restriction set for 2/12/2024. (Attachments: # 1 Appendix Notice of Filing Transcript) (Entered: 11/13/2023) |
| 11/13/2023 | 313 | | TRANSCRIPT of Bench Trial Proceedings held on 11/1/2023, before Judge Steve C. Jones. Court Reporter/Transcriber Viola S. Zborowski. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Tape Number: 4 – A.M. SESSION. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/4/2023. Redacted Transcript Deadline set for 12/14/2023. Release of Transcript Restriction set for 2/12/2024. (Attachments: # 1 Appendix Notice of Filing Transcript) (Entered: 11/13/2023) |
| 11/13/2023 | 312 | | TRANSCRIPT of Bench Trial Proceedings held on 10/30/2023, before Judge Steve C. Jones. Court Reporter/Transcriber Viola S. Zborowski. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Tape Number: 3 – A.M. SESSION. Transcript may be viewed at the court public terminal or purchased |

| | | | |
|---|---|---|---|
| | | | through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/4/2023. Redacted Transcript Deadline set for 12/14/2023. Release of Transcript Restriction set for 2/12/2024. (Attachments: # 1 Appendix Notice of Filing Transcript) (Entered: 11/13/2023) |
| 11/13/2023 | 311 | | TRANSCRIPT of Bench Trial Proceedings held on 10/27/2023, before Judge Steve C. Jones. Court Reporter/Transcriber Viola S. Zborowski. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Tape Number: 2 – A.M. SESSION. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/4/2023. Redacted Transcript Deadline set for 12/14/2023. Release of Transcript Restriction set for 2/12/2024. (Attachments: # 1 Appendix Notice of Filing Transcript) (Entered: 11/13/2023) |
| 11/13/2023 | 310 | | TRANSCRIPT of Bench Trial Proceedings held on 10/26/2023, before Judge Steve C. Jones. Court Reporter/Transcriber Viola S. Zborowski. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Tape Number: 1 – A.M. SESSION. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/4/2023. Redacted Transcript Deadline set for 12/14/2023. Release of Transcript Restriction set for 2/12/2024. (Attachments: # 1 Appendix Notice of Filing Transcript) (Entered: 11/13/2023) |
| 11/07/2023 | 309 | | Minute Entry for proceedings held before District Judge Steve C. Jones: Bench Trial concluded on 11/7/2023. Testimony of Catherine Englebrecht concluded. Defendants' exhibit 64 admitted. Defendants' exhibits 127–129, 278, 276, 277, 280, 275, 297–302 tendered, admission denied. Defendants rested. The Court issued a verbal order denying Defendants' 303 Motion for Judgment on Partial Findings. The Court further directed the parties to submit Proposed Findings of Fact and Conclusions of Law no later than 5:00 PM on November 15, 2023. Closing arguments heard. The Court took the matter under advisement, with ruling to follow in due course. (Court Reporter Viola Zborowski)(ddm) Modified on 11/7/2023 to edit entry (ddm). (Entered: 11/07/2023) |
| 11/06/2023 | 308 | | Minute Entry for proceedings held before Judge Steve C. Jones: Bench Trial continued on 11/6/2023. [The Court conducted an in–chambers conference with counsel from 9:05 AM to 9:25 AM.) Defendants' witness Mark Davis sworn and testified via Zoom. Mark Williams recalled by Defendants for direct examination. Catherine Englebrecht recalled by Defendants for direct examination; testimony not concluded. Hearing not concluded. Court adjourned and will reconvene at 9:00 AM on 11/07/2023. (Court Reporter Shannon Welch)(ddm) (Entered: 11/07/2023) |
| 11/06/2023 | 307 | | MOTION Motion for Judicial Notice by James Cooper, Mark Davis, Catherine Englebrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Attachments: # 1 Exhibit Attachment A)(Wynne, Michael) (Entered: 11/06/2023) |
| 11/06/2023 | 306 | | |

| | | | |
|---|---|---|---|
| | | | RESPONSE in Opposition re 304 Motion to Take Judicial Notice filed by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Attachments: # 1 Exhibit 1 – Stinetorf Email)(Nkwonta, Uzoma) (Entered: 11/06/2023) |
| 11/05/2023 | 304 | | *Motion for Judicial Notice* filed by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Attachments: # 1 Exhibit Attachment A, # 2 Exhibit Attachment B, # 3 Exhibit Attachment C, # 4 Exhibit Attachment D, # 5 Exhibit Attachment E, # 6 Exhibit Attachment F, # 7 Exhibit Attachment G) (Wynne, Michael) Modified on 11/6/2023 to edit docket entry (ddm). (Entered: 11/06/2023) |
| 11/04/2023 | 303 | | MOTION for Judgment on Partial Findings with Brief In Support by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Attachments: # 1 Brief)(Wynne, Michael) (Entered: 11/04/2023) |
| 11/03/2023 | 305 | | Minute Entry for proceedings held before Judge Steve C. Jones: Bench Trial continued on 11/3/2023. Greg Phillips called by the Court; sworn and testified regarding possible sequestration violation. Plaintiffs called Mark Williams; witness sworn and testified. Witness also examined by USA. Amy Holzworth called by Plaintiffs as adverse witness; witness sworn and testified. Plaintiffs rested. Oral motion by Defendants for judgment on partial findings pursuant to F.R.C.P. 52(c) (motion filed on record at doc. 303 ). The Court heard oral argument and reserved ruling. Defendants' case began. Derek Somerville recalled by Defendants. Defendants' exhibit 38 admitted. Testimony concluded. (Court Reporter V. Zborowski & S. Welch)(ddm) (Entered: 11/06/2023) |
| 11/03/2023 | 302 | | ORDER granting 301 Plaintiffs' Motion for Leave to File Matters Under Seal. Signed by Judge Steve C. Jones on 11/03/2023. (ddm) (Entered: 11/03/2023) |
| 11/03/2023 | 301 | | MOTION for Leave to File Matters Under Seal re: 300 Notice of Filing *Letter Brief* with Brief In Support by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Attachments: # 1 Text of Proposed Order)(Lawrence, Allegra) (Entered: 11/03/2023) |
| 11/03/2023 | 300 | | SEALED NOTICE Of Filing Letter Brief by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe (Attachments: # 1 Attachment to Letter Brief)(Lawrence, Allegra) Modified on 11/3/2023 to remove the word Provisionally from the entry (ddm). (Entered: 11/03/2023) |
| 11/02/2023 | 299 | | Minute Entry for proceedings held before Judge Steve C. Jones: Bench Trial continued on 11/2/2023. from 9:05 AM – 9:30 AM and 10:45 AM – 11:00 AM. Catherine Englebrecht recalled. Plaintiffs' exhibits admitted: 2–7, 17, 21, 23, 29, 30, 31, 33, 34, 36, 38 – 41, 43, 44, 46, 47, 51, 52, 53, 55–72, 74, 75–88, 94–105. Plaintiffs' exhibits denied admission: 19, 20, 54, 61, 66, 86, 87. Derek Somerville called by plaintiffs as adverse witness, sworn and testified. Plaintiffs' exhibit 89 admitted. Mark Williams called by Plaintiffs as adverse witness; witness not present. Derek Somerville called by Defendants for direct examination. Hearing not concluded. Court adjourned and will reconvene at 9:00 AM on 11/03/223. (Court Reporter V. Zborowski & S. Welch)(ddm) (Entered: 11/03/2023) |
| 11/02/2023 | 298 | | TRIAL BRIEF *Bench Brief* by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Wynne, Michael) (Entered: 11/02/2023) |

| 11/02/2023 | 297 | | NOTICE Of Filing Deposition Designations by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe (Attachments: # 1 Exhibit 1 – Martin Deposition Transcript)(Nkwonta, Uzoma) (Entered: 11/02/2023) |
|---|---|---|---|
| 11/01/2023 | 295 | | Minute Entry for proceedings held before Judge Steve C. Jones: Bench Trial continued on 11/1/2023. Catherine Engelbrecht sworn and testified for purposes of cross–examination. Intervenor USA also examined witness. Defendants' reserved questioning for case–in–chief. Plaintiffs' exhibits 10, 1, 28, 32, 27, 73, 80, 22, 92, 90, 26, and 93 admitted. Admission of Plaintiffs' exhibit 45 taken under advisement. Video deposition of Clair Joseph Martin submitted. Hearing not concluded. Court adjourned and will reconvene at 9:00 AM on 11/02/2023. (Court Reporter V. Zborowski & S. Welch)(ddm) (Entered: 11/02/2023) |
| 11/01/2023 | 294 | | MOTION For Judicial Notice by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Attachments: # 1 Exhibit A – Pls' Ex. 27, # 2 Exhibit B – GA SOS Active Voter Data, # 3 Exhibit C – Subpoena for Cortland Viridian and Attachment, # 4 Exhibit D – Subpoena for Live 8 West and Attachment, # 5 Exhibit E – Subpoena for Marietta Toyota and Attachment)(Nkwonta, Uzoma) (Entered: 11/01/2023) |
| 10/30/2023 | 296 | | Minute Entry for proceedings held before Judge Steve C. Jones: Bench Trial continued on 10/30/2023. Plaintiffs' case continued. Jocelyn Heredia sworn and testified. Plaintiffs' exhibit 49 admitted. Dr. Orville Burton sworn and testified. Plaintiffs' exhibits 16, 25, 37 admitted. Hearing not concluded. Court adjourned and will reconvene at 9:00 AM on 11/01/2023. (Court Reporter V. Zborowski & S. Welch)(ddm) (Entered: 11/02/2023) |
| 10/27/2023 | 293 | | Minute Entry for proceedings held before Judge Steve C. Jones: Bench Trial continued on 10/27/2023. Testimony of Gamaliel Turner continued and concluded. Dr. Kenneth Mayer sworn and testified. Plaintiffs' exhibits 15 and 91 admitted. Stephanie Stinetorf sworn and testified via Zoom. Ryan German sworn and testified. Plaintiffs' exhibit 8 admitted. Hearing not concluded. Court adjourned and will reconvene at 9:00 AM on 10/30/2023. (Court Reporter V. Zborowski & S. Welch)(ddm) (Entered: 10/30/2023) |
| 10/27/2023 | 292 | | ORDER The Court hereby provides notice to the Parties that the trial of the above captioned case will be in recess on Tuesday, October 31, 2023 in order to allow the Court to address a matter in the Atlanta division. Court will resume at 9:00 a.m., on Wednesday, November 1, 2023. (*Court will be in session on Monday, October 30, 2023.)Signed by Judge Steve C. Jones on 10/27/2023. (abh) (Entered: 10/27/2023) |
| 10/26/2023 | 291 | | Minute Entry for proceedings held before Judge Steve C. Jones: Bench Trial begun on 10/26/2023. Opening arguments heard. Plaintiffs' case began. Cianti Stewart–Reid sworn and testified. Plaintiffs' exhibits 35 and 42 admitted. Scott Berson sworn and testified. Gamaliel Turner sworn and testified; testimony to continue 10/27/2023. Hearing not concluded. Court adjourned and will reconvene at 9:00 AM on 10/27/2023. (Court Reporter V. Zborowski & S. Welch)(ddm) (Entered: 10/27/2023) |
| 10/26/2023 | 290 | | ORDER GRANTING 287 Georgia Secretary of State Brad Raffensperger's Emergency Motion to Quash the Subpoena address to him. Signed by Judge Steve C. Jones on 10/26/2023. (ddm) (Entered: 10/26/2023) |

| | | | |
|---|---|---|---|
| 10/26/2023 | 289 | | NOTICE Of Filing by United States of America *Proposed Conclusions of Law* (Yun, Jennifer) (Entered: 10/26/2023) |
| 10/25/2023 | 288 | | ORDER re 287 informing Secretary Raffensperger that he doesnot have to report to court tomorrow, October 26, 2023. The Court will make a final ruling on the Motion to Quash in a forthcoming order. Signed by Judge Steve C. Jones on 10/25/2023. (sif) (Entered: 10/25/2023) |
| 10/25/2023 | 287 | | Emergency MOTION to Quash Subpoena *Addressed to Nonparty Brad Raffensperger, Secretary of State of the State of Georgia* with Brief In Support by Brad Raffensperger. (Attachments: # 1 Exhibit Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action – Brad Raffensperger)(Belinfante, Joshua) (Entered: 10/25/2023) |
| 10/25/2023 | 286 | | ORDER DENYING Plaintiffs' Motion to Strike Defendants' Final Witness List 285 , but giving Plaintiffs express permission to reraise their objections at the proper time during the course of trial. Signed by Judge Steve C. Jones on 10/25/2023. (ddm) (Entered: 10/25/2023) |
| 10/25/2023 | 285 | | MOTION to Strike 282 Witness List with Brief In Support by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Lawrence, Allegra) (Entered: 10/25/2023) |
| 10/24/2023 | 284 | | Exhibit List by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams.. (Wynne, Michael) (Entered: 10/24/2023) |
| 10/24/2023 | 283 | | ORDER directing the Parties to bring two (2) printed copies of the depositions to be used as trial evidence for the Court. The specific deposition designations to be entered as evidence should be highlighted. A paper copy of the deposition designation is sufficient for trial presentationthe Court does not require the depositions be read into the record or to be played by video. At the proper time, the Parties may move to admit the desired deposition designations and the opposite Party may object. The Court will rule on the objections at that time. Signed by Judge Steve C. Jones on 10/24/2023. (ddm) (Entered: 10/24/2023) |
| 10/24/2023 | 282 | | Witness List by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Wynne, Michael) (Entered: 10/24/2023) |
| 10/23/2023 | 281 | | TRIAL BRIEF *AMENDED* by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Wynne, Michael) (Entered: 10/23/2023) |
| 10/23/2023 | 280 | | TRIAL BRIEF by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Wynne, Michael) (Entered: 10/23/2023) |
| 10/20/2023 | 279 | | ORDER GRANTING Plaintiffs' Motions to Exclude Evidence Concerning Don Gasaway's 2018 Election Contest (Doc. No. 260 ) and to Exclude Undisclosed Exhibits (Doc. No. 263 ). The following exhibits as named in the proposed pretrial order (Doc. No. [236–7]) are EXCLUDED from trial: Exhibits 74, 81, 87, 90, 91, 92, 93, and 124. The Court DENIES Plaintiffs' Renewed Motion to Exclude Improper Expert Testimony (Doc. No. 259 ) and Motion to Exclude Irrelevant Personal Information (Doc. No. 262 ). The Court |

| | | | |
|---|---|---|---|
| | | | denies these Motions with the understanding that Plaintiffs may reraise the substantive objections at trial when specific evidence is at issue. Signed by Judge Steve C. Jones on 10/20/2023. (ddm) (Entered: 10/20/2023) |
| 10/20/2023 | 278 | | ORDER granting 277 Plaintiffs' Motion to add Jocelyn Heredia as a Plaintiff in this action. Signed by Judge Steve C. Jones on 10/20/2023. (ddm) (Entered: 10/20/2023) |
| 10/20/2023 | 277 | | Unopposed MOTION for Order *Adding Jocelyn Heredia as a Party* by Scott Berson, Fair Fight, Inc., Jane Doe. (Attachments: # 1 Text of Proposed Order)(Nkwonta, Uzoma) (Entered: 10/20/2023) |
| 10/20/2023 | 276 | | ORDER allowing counsel for the Plaintiffs and their staff to bring electronic equipment into the Courthouse for the duration of the trial beginning at 9:00 a.m. on Thursday, October 26, 2023. Signed by Judge Steve C. Jones on 10/20/2023. (ddm) (Entered: 10/20/2023) |
| 10/20/2023 | 275 | | ORDER allowing counsel for the Plaintiffs and their staff to bring electronic equipment into the Courthouse on Wednesday, October 25, 2023, for the purposes of testing the technology to be used during the trial beginning on Thursday, October 26, 2023. Signed by Judge Steve C. Jones on 10/20/2023. (ddm) (Entered: 10/20/2023) |
| 10/20/2023 | 274 | | ORDER allowing counsel for the Defendants and their staff, as well as Defendants, to bring electronic equipment into the Courthouse for trial beginning at 9:00 a.m. Thursday, October 26, 2023. Signed by Judge Steve C. Jones on 10/20/2023. (ddm) (Entered: 10/20/2023) |
| 10/20/2023 | 273 | | ORDER allowing counsel for the United States and staff to bring electronic equipment into the Courthouse for trial beginning at 9:00 a.m. Thursday, October 26, 2023. Signed by Judge Steve C. Jones on 10/20/2023. (ddm) (Entered: 10/20/2023) |
| 10/19/2023 | 272 | | ORDER DENYING Defendants' Motion for Leave to File Excess Pages 267 . The Court ORDERS that any trial brief submitted in this case by either Party, or the Government, be no longer than 25–pages. Signed by Judge Steve C. Jones on 10/19/2023. (ddm) (Entered: 10/20/2023) |
| 10/19/2023 | 271 | | RESPONSE re 260 MOTION in Limine *to Exclude Evidence Concerning Don Gasaway's 2018 Election Contest*, 263 MOTION in Limine *to Exclude Undisclosed Exhibits*, 262 MOTION in Limine *to Exclude Irrelevant Personal Information* filed by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Wynne, Michael) (Entered: 10/19/2023) |
| 10/19/2023 | 270 | | Motion to Bring Audio/Visual/Electronic Equipment in the Courtroom by Scott Berson, Fair Fight, Inc., Jane Doe. (Attachments: # 1 Text of Proposed Order)(Lawrence, Allegra) (Entered: 10/19/2023) |
| 10/19/2023 | 269 | | Motion to Bring Audio/Visual/Electronic Equipment in the Courtroom by Scott Berson, Fair Fight, Inc., Jane Doe. (Attachments: # 1 Text of Proposed Order)(Lawrence, Allegra) (Entered: 10/19/2023) |
| 10/19/2023 | 268 | | NOTICE Of Filing by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams re 267 MOTION for Leave to File Excess Pages *Amended Certificate of Conference* |

| | | | |
|---|---|---|---|
| | | | (Wynne, Michael) (Entered: 10/19/2023) |
| 10/19/2023 | 266 | | TRANSCRIPT of Proceedings held on 9–19–2023, before Judge Steve C. Jones. Court Reporter/Transcriber Keisha M. Crump RCR, RMR. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Tape Number: 1. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/9/2023. Redacted Transcript Deadline set for 11/20/2023. Release of Transcript Restriction set for 1/17/2024. (Attachments: # 1 Notice of filing transcript) (kmc) (Entered: 10/19/2023) |
| 10/18/2023 | 267 | | MOTION for Leave to File Excess Pages with Brief In Support by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Attachments: # 1 Brief, # 2 Text of Proposed Order)(Wynne, Michael) (Entered: 10/19/2023) |
| 10/18/2023 | 265 | | Motion to Bring Audio/Visual/Electronic Equipment in the Courtroom by United States of America. (Attachments: # 1 Text of Proposed Order)(Bao, Judy) (Entered: 10/18/2023) |
| 10/17/2023 | 264 | | Motion to Bring Audio/Visual/Electronic Equipment in the Courtroom with Brief In Support by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Attachments: # 1 Exhibit A)(Evans, James) (Entered: 10/17/2023) |
| 10/12/2023 | 263 | | MOTION in Limine *to Exclude Undisclosed Exhibits* with Brief In Support by Scott Berson, Fair Fight, Inc., Jane Doe. (Attachments: # 1 Brief in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I)(Nkwonta, Uzoma) (Entered: 10/12/2023) |
| 10/12/2023 | 262 | | MOTION in Limine *to Exclude Irrelevant Personal Information* with Brief In Support by Scott Berson, Fair Fight, Inc., Jane Doe. (Attachments: # 1 Brief in Support)(Nkwonta, Uzoma) (Entered: 10/12/2023) |
| 10/12/2023 | 261 | | NOTICE Of Filing Defendants' Designations For Optional Completeness by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams (Wynne, Michael) (Entered: 10/12/2023) |
| 10/12/2023 | 260 | | MOTION in Limine *to Exclude Evidence Concerning Don Gasaway's 2018 Election Contest* with Brief In Support by Scott Berson, Fair Fight, Inc., Jane Doe. (Attachments: # 1 Brief in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D)(Nkwonta, Uzoma) (Entered: 10/12/2023) |
| 10/12/2023 | 259 | | Second MOTION in Limine *to Exclude Improper Expert Testimony* with Brief In Support by Scott Berson, Fair Fight, Inc., Jane Doe. (Attachments: # 1 Brief in Support)(Nkwonta, Uzoma) (Entered: 10/12/2023) |
| 10/12/2023 | 258 | | NOTICE Of Filing by Scott Berson, Fair Fight, Inc., Jane Doe re 236 Proposed Pretrial Order,, *Plaintiffs' Objections to Defendants' Deposition Designations* (Nkwonta, Uzoma) (Entered: 10/12/2023) |
| 10/11/2023 | 257 | | |

|  |  |  | |
|---|---|---|---|
|  |  |  | NOTICE by James Cooper, Mark Davis, Catherine Engelbrecht, John Does 1–10, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams *of Withdrawal of Subpoenas* (Evans, James) (Entered: 10/11/2023) |
| 10/11/2023 | 256 |  | NOTICE of Appearance by Judy Bao on behalf of United States of America (Bao, Judy) (Entered: 10/11/2023) |
| 09/28/2023 |  |  | Submission of 242 MOTION for Order *Assessing Discovery Sanctions in the Form of Adverse Inferences*, to District Judge Steve C. Jones. (rsg) (Entered: 09/28/2023) |
| 09/27/2023 | 255 |  | REPLY BRIEF re 242 MOTION for Order *Assessing Discovery Sanctions in the Form of Adverse Inferences* filed by Scott Berson, Fair Fight, Inc., Jane Doe. (Nkwonta, Uzoma) (Entered: 09/27/2023) |
| 09/20/2023 | 254 |  | ORDER granting the 243 Motion to Voluntarily Dismiss Plaintiff Jocelyn Heredia and Defendants John Does 1–10. Signed by Judge Steve C. Jones on 09/20/2023. (ddm) (Entered: 09/20/2023) |
| 09/19/2023 | 253 |  | CONSOLIDATED PRETRIAL ORDER. Signed by Judge Steve C. Jones on 09/19/2023. (ddm) (Entered: 09/19/2023) |
| 09/19/2023 | 252 |  | Minute Entry for proceedings held before Judge Steve C. Jones: Pretrial Conference held on 9/19/2023. Bench trial to commence 10/26/2023 at 9:00 AM. (Court Reporter Keisha Crump)(ddm) (Entered: 09/19/2023) |
| 09/18/2023 | 251 |  | ORDER allowing counsel for Defendants to bring electronic equipment into the Federal Courthouse in Gainesville, Georgia for the pretrial conference beginning at 10:30 a.m. Tuesday, September 19, 2023. Signed by Judge Steve C. Jones on 09/18/2023. (ddm) (Entered: 09/18/2023) |
| 09/18/2023 | 250 |  | Motion to Bring Audio/Visual/Electronic Equipment in the Courtroom by James Cooper, Mark Davis, Catherine Engelbrecht, John Does 1–10, Ron Johnson, Derek Somerville, True the Vote, Mark Williams. (Attachments: # 1 Text of Proposed Order)(Evans, James) (Entered: 09/18/2023) |
| 09/18/2023 |  |  | Submission of 243 MOTION for Order *Dismissing Plaintiff Heredia and John Doe Defendants 1–10*, to District Judge Steve C. Jones. (pdw) (Entered: 09/18/2023) |
| 09/18/2023 | 249 |  | ORDER allowing counsel the United States to bring electronic equipment into the Federal Courthouse in Gainesville, Georgia for the pretrial conference beginning at 10:30 a.m. Tuesday, September 19, 2023. Signed by Judge Steve C. Jones on 09/18/2023. (ddm) (Entered: 09/18/2023) |
| 09/18/2023 | 248 |  | ORDER allowing Plaintiffs' counsel to bring electronic equipment into the Federal Courthouse in Gainesville, Georgia for the pretrial conference beginning at 10:30 a.m. Tuesday, September 19, 2023. Signed by Judge Steve C. Jones on 09/18/2023. (ddm) (Entered: 09/18/2023) |
| 09/18/2023 | 247 |  | MOTION for Order *Permitting the United States to Bring Electronic Equipment into the Courtroom* by United States of America. (Attachments: # 1 Text of Proposed Order)(Paikowsky, Dana) (Entered: 09/18/2023) |
| 09/14/2023 | 246 |  | Motion to Bring Audio/Visual/Electronic Equipment in the Courtroom by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Attachments: # 1 Text of |

| | | | Proposed Order)(Lawrence, Allegra) (Entered: 09/14/2023) |
|---|---|---|---|
| 09/13/2023 | 245 | | RESPONSE in Opposition re 242 MOTION for Order *Assessing Discovery Sanctions in the Form of Adverse Inferences* filed by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Attachments: # 1 Exhibit, # 2 Exhibit)(Wynne, Michael) (Entered: 09/13/2023) |
| 09/13/2023 | 244 | | ORDER DENYING Defendants' Motion for a Jury Trial 237 . Signed by Judge Steve C. Jones on 09/13/2023. (ddm) (Entered: 09/13/2023) |
| 09/12/2023 | | | Submission of 237 MOTION for Jury Trial , to District Judge Steve C. Jones. (pdw) (Entered: 09/12/2023) |
| 08/31/2023 | 243 | | MOTION for Order *Dismissing Plaintiff Heredia and John Doe Defendants 1–10* by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Attachments: # 1 Text of Proposed Order)(Nkwonta, Uzoma) (Entered: 08/31/2023) |
| 08/30/2023 | 242 | | MOTION for *Discovery Sanctions in the Form of Adverse Inferences* with Brief In Support by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Attachments: # 1 Brief in Support, # 2 Exhibit A – Position Statement, # 3 Exhibit B – Deposition Notice) (Nkwonta, Uzoma) Modified on 8/31/2023 to edit docket text (ddm). (Entered: 08/30/2023) |
| 08/30/2023 | 241 | | NOTICE of Withdrawal of 240 Motion for Sanctions filed by Scott Berson, Jocelyn Heredia, Jane Doe. (Nkwonta, Uzoma) Modified on 8/31/2023 to edit docket entry (ddm). (Entered: 08/30/2023) |
| 08/30/2023 | 240 | | MOTION for Discovery Sanctions with Brief In Support by Scott Berson, Fair Fight, Inc., Jane Doe. (Attachments: # 1 Brief in Support, # 2 Exhibit A – Position Statement, # 3 Exhibit B – Deposition Notice) (Nkwonta, Uzoma) Modified on 8/30/2023 to edit docket text (ddm). (Entered: 08/30/2023) |
| 08/28/2023 | 239 | | RESPONSE in Opposition re 237 MOTION for Jury Trial filed by United States of America. (Paikowsky, Dana) (Entered: 08/28/2023) |
| 08/28/2023 | 238 | | RESPONSE in Opposition re 237 MOTION for Jury Trial filed by Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Attachments: # 1 Exhibit A – Email)(Nkwonta, Uzoma) (Entered: 08/28/2023) |
| 08/14/2023 | 237 | | MOTION for Jury Trial by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Wynne, Michael) Modified on 8/14/2023 to edit docket text (ddm). (Entered: 08/14/2023) |
| 07/28/2023 | | | AMENDED NOTICE setting Trial: Bench Trial will commence on 10/26/2023 at 09:00 AM in GAIN Courtroom 303 before Judge Steve C. Jones. (pdw) (Entered: 07/28/2023) |
| 05/25/2023 | 236 | | Proposed Pretrial Order by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Attachments: # 1 Exhibit C – Plaintiffs' Statement of the Case, # 2 Exhibit D – Defendants' Statement of the Case, # 3 Exhibit E – Plaintiffs' Proposed Stipulated Facts, # 4 Exhibit F–1 – Plaintiffs' Witness List, # 5 Exhibit F–2 – Defendants' Preliminary Witness List, # 6 Exhibit G–1 – Plaintiffs' Exhibit List, # 7 Exhibit G–2 – Defendants' Exhibit List and |

| | | | |
|---|---|---|---|
| | | | Plaintiffs' Objections, # <u>8</u> Exhibit I–1 – Plaintiffs' Deposition Designations, # <u>9</u> Exhibit I–2 – Defendants' Initial Designation of Deposition Excerpts)(Nkwonta, Uzoma) (Entered: 05/25/2023) |
| 05/03/2023 | <u>235</u> | | ORDER GRANTING <u>232</u> Plaintiffs' Motion to Reconsider the Partial Grant of Summary Judgment to Defendants <u>232</u> and accordingly AMENDING its summary judgment order. The Court VACATES IN PART pages 29–31 of its summary judgment order, specifically Section (III)(A)(2)(b)(3)(b), as it relates to partially granting summary judgment for the True the Vote Defendants on the Section 230 voter challenges in Muscogee County. The Court hereby AMENDS this portion of the summary judgment order to GRANT IN PART summary judgment for Defendants Mark Davis and Derek Somerville on the Section 230 challenges to the Muscogee County voters to support voter intimidation (as articulated in the March 9, 2023 summary judgment order, Doc. No. <u>222</u> ) but otherwise DENIES summary judgment for the True the Vote Defendants. Signed by Judge Steve C. Jones on 05/03/2023. (ddm) (Entered: 05/03/2023) |
| 04/25/2023 | | | Submission of <u>232</u> MOTION for Reconsideration re <u>222</u> Order on Motion for Summary Judgment to District Judge Steve C. Jones. (pdw) (Entered: 04/25/2023) |
| 04/14/2023 | | | NOTICE of Hearing: Final Pretrial Conference set for 9/19/2023 at 10:30 AM in GAIN Courtroom 303 before Judge Steve C. Jones. (pdw) (Entered: 04/14/2023) |
| 04/11/2023 | <u>234</u> | | ORDER specially setting this case for trial to begin on October 30, 2023. All proceedings will be in person and held in Courtroom No. 303, in the Sidney 0. Smith Federal Building & United States Courthouse (121 Spring Street SE Gainesville, GA 30501). Unless otherwise notified, all proceedings will begin at 9:00 AM. The Court will not permit counsel to argue or witnesses to offer live testimony remotely – i.e., via Zoom. The Court will permit a witness to testify via video deposition, per a prior agreement between the Parties. Signed by Judge Steve C. Jones on 04/11/2023. (ddm) (Entered: 04/11/2023) |
| 04/07/2023 | <u>233</u> | | ORDER granting <u>231</u> Consent MOTION for Extension of Time File Joint Pretrial Order. It is therefore, ORDERED the deadline for the Joint Pretrial Order is extended to May 25, 2023. Signed by Judge Steve C. Jones on 04/07/2023. (rsg) (Entered: 04/07/2023) |
| 04/06/2023 | <u>232</u> | | MOTION for Reconsideration re <u>222</u> Order on Motion for Summary Judgment,,,,,,, with Brief In Support by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Nkwonta, Uzoma) (Entered: 04/06/2023) |
| 04/06/2023 | <u>231</u> | | Consent MOTION for Extension of Time File Joint Pretrial Order re: <u>222</u> Order on Motion for Summary Judgment,,,,,,, by James Cooper, Mark Davis, Catherine Engelbrecht, John Does 1–10, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Attachments: # <u>1</u> Text of Proposed Order)(Wynne, Michael) (Entered: 04/06/2023) |
| 04/04/2023 | <u>230</u> | | ORDER denying <u>229</u> Joint MOTION for Extension of Time File Joint Pretrial Order. If the Parties refile their motion explaining their request, the Court will reconsider whether an extension is appropriate or not. Signed by Judge Steve C. Jones on 04/04/2023. (rsg) (Entered: 04/04/2023) |

| 04/04/2023 | | | DOCKET ORDER granting 228 Application for Admission Pro Hac Vice of Cameron Powell. Entered by Judge Steve C. Jones on 4/4/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(pdw) (Entered: 04/04/2023) |
|---|---|---|---|
| 04/04/2023 | | | APPROVAL by Clerks Office re: 228 APPLICATION for Admission of Cameron Powell Pro Hac Vice.. Attorney Cameron Powell added appearing on behalf of James Cooper, Mark Davis, Catherine Engelbrecht, John Does 1–10, Ron Johnson, Derek Somerville, True the Vote, True the Vote, Inc., Mark Williams (kkh) (Entered: 04/04/2023) |
| 04/04/2023 | 229 | | Joint MOTION for Extension of Time File Joint Pretrial Order by Mark Davis, Catherine Engelbrecht, John Does 1–10, Ron Johnson, Derek Somerville, True the Vote, True the Vote, Inc., Mark Williams. (Attachments: # 1 Text of Proposed Order)(Wynne, Michael) (Entered: 04/04/2023) |
| 04/03/2023 | | | DOCKET ORDER granting 226 Motion to Withdraw as Attorney. Attorney Jeffrey P. Gallant terminated as counsel for Defendants. Entered by Judge Steve C. Jones on 4/3/2023. (pdw) (Entered: 04/03/2023) |
| 04/03/2023 | | | DOCKET ORDER granting 225 Motion to Withdraw as Attorney. Attorney Courtney Turner Milbank terminated as counsel for defendants. Entered by Judge Steve C. Jones on 4/3/2023. (pdw) (Entered: 04/03/2023) |
| 04/03/2023 | | | DOCKET ORDER granting 224 Motion to Withdraw as Attorney. Attorney Melena Siebert terminated as counsel for Defendants. Entered by Judge Steve C. Jones on 4/3/2023. (pdw) (Entered: 04/03/2023) |
| 04/03/2023 | | | DOCKET ORDER granting 223 Motion to Withdraw as Attorney. Attorney James Bopp, Jr. terminated as counsel for defendants. Entered by Judge Steve C. Jones on 4/3/2023. (pdw) (Entered: 04/03/2023) |
| 03/28/2023 | 228 | | APPLICATION for Admission of Cameron Powell Pro Hac Vice.by James Cooper, James Cooper, James Cooper, Mark Davis, Mark Davis, Mark Davis, Catherine Engelbrecht, Catherine Engelbrecht, Catherine Engelbrecht, John Does 1–10, Ron Johnson, Ron Johnson, Ron Johnson, Derek Somerville, Derek Somerville, Derek Somerville, True the Vote, True the Vote, Inc., True the Vote, Inc., True the Vote, Inc., Mark Williams, Mark Williams, Mark Williams. (Evans, James) Documents for this entry are not available for viewing outside the courthouse. (Entered: 03/28/2023) |
| 03/16/2023 | 227 | | *Certificate of Consent for Withdrawal of David Guldenschuh* by True the Vote, Inc., Catherine Engelbrecht, Derek Somerville, Mark Davis, Mark Williams,Ron Johnson, and James Cooper. (Guldenschuh, David) Modified on 3/17/2023to edit docket entry (ddm). (Entered: 03/16/2023) |
| 03/16/2023 | 226 | | Consent MOTION to Withdraw Jeffrey P. Gallant as Attorneyby James Cooper, Mark Davis, Catherine Engelbrecht, John Does 1–10, Ron Johnson, Derek Somerville, True the Vote, True the Vote, Inc., Mark Williams. (Gallant, Jeffrey) (Entered: 03/16/2023) |
| 03/16/2023 | 225 | | Consent MOTION to Withdraw Courtney Turner Milbank as Attorneyby James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Milbank, Courtney) (Entered: |

| | | | |
|---|---|---|---|
| | | | 03/16/2023) |
| 03/16/2023 | 224 | | Consent MOTION to Withdraw Melena Siebert as Attorneyby James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Siebert, Melena) (Entered: 03/16/2023) |
| 03/16/2023 | 223 | | Consent MOTION to Withdraw James Bopp, Jr as Attorneyby James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Bopp, James) (Entered: 03/16/2023) |
| 03/09/2023 | 222 | | ORDER GRANTING IN PART and DENYING IN PART both Plaintiffs' and Defendants' Motions for Summary Judgment (Doc. Nos. [155−1]; [156−1]). The Court GRANTS Plaintiffs' summary judgment on Defendants' vote dilution and unconstitutional vagueness defenses. The Court GRANTS Defendants' summary judgment on the narrow issue of Section 11(b) liability for Muscogee County voters as it pertains to the Section 230 voter challenges onlythe undisputed facts show there is no causation evidence between the voter challenges in Muscogee County and Defendants. On all other issues raised by both Parties, the Court DENIES summary judgment. Pursuant to Local Rule 16.4, NDGa, the consolidated pretrial order shall be filed within THIRTY DAYS of the entry of this Order. Signed by Judge Steve C. Jones on 03/09/2023. (ddm) (Entered: 03/09/2023) |
| 03/06/2023 | 221 | | ORDER granting 172 Plaintiffs' Motion in Limine. Signed by Judge Steve C. Jones on 03/06/2023. (ddm) (Entered: 03/06/2023) |
| 02/28/2023 | | | DOCKET ORDER granting 220 Application for Admission Pro Hac Vice of Joseph Larsen. Entered by Judge Steve C. Jones on 2/28/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(pdw) (Entered: 02/28/2023) |
| 02/28/2023 | | | DOCKET ORDER granting 219 Application for Admission Pro Hac Vice of Michael Wynne. Entered by Judge Steve C. Jones on 2/28/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(pdw) (Entered: 02/28/2023) |
| 02/28/2023 | | | APPROVAL by Clerks Office re: 219 APPLICATION for Admission of Michael Wynne Pro Hac Vice.. Attorney Michael John Wynne added appearing on behalf of James Cooper, Mark Davis, Catherine Engelbrecht, John Does 1−10, Ron Johnson, Derek Somerville, True the Vote, Mark Williams (kkh) (Entered: 02/28/2023) |
| 02/28/2023 | | | APPROVAL by Clerks Office re: 220 APPLICATION for Admission of Joseph Larsen Pro Hac Vice.. Attorney Joseph R. Larsen added appearing on behalf of James Cooper, Mark Davis, Catherine Engelbrecht, John Does 1−10, Ron Johnson, Derek Somerville, True the Vote, Mark Williams (kkh) (Entered: 02/28/2023) |
| 02/17/2023 | 220 | | APPLICATION for Admission of Joseph Larsen Pro Hac Vice.by James Cooper, James Cooper, James Cooper, Mark Davis, Mark Davis, Mark Davis, Catherine Engelbrecht, Catherine Engelbrecht, Catherine Engelbrecht, John Does 1−10, Ron Johnson, Ron Johnson, Ron Johnson, Derek Somerville, |

| | | | |
|---|---|---|---|
| | | | Derek Somerville, Derek Somerville, True the Vote, True the Vote, Inc., True the Vote, Inc., True the Vote, Inc., Mark Williams, Mark Williams, Mark Williams. (Evans, James) Documents for this entry are not available for viewing outside the courthouse. (Entered: 02/17/2023) |
| 02/17/2023 | 219 | | APPLICATION for Admission of Michael Wynne Pro Hac Vice.by James Cooper, James Cooper, James Cooper, Mark Davis, Mark Davis, Mark Davis, Catherine Engelbrecht, Catherine Engelbrecht, Catherine Engelbrecht, John Does 1−10, Ron Johnson, Ron Johnson, Ron Johnson, Derek Somerville, Derek Somerville, Derek Somerville, True the Vote, True the Vote, Inc., True the Vote, Inc., True the Vote, Inc., Mark Williams, Mark Williams, Mark Williams. (Evans, James) Documents for this entry are not available for viewing outside the courthouse. (Entered: 02/17/2023) |
| 02/17/2023 | | | RETURN of 215 APPLICATION for Admission of Michael Wynne Pro Hac Vice (Application fee $ 150, receipt number AGANDC−12378746). to attorney for correction re: Local counsel's address must match our database. (cdg) (Entered: 02/17/2023) |
| 02/17/2023 | | | RETURN of 214 APPLICATION for Admission of Joseph Larsen Pro Hac Vice (Application fee $ 150, receipt number AGANDC−12378716). to attorney for correction re: Local counsel's name must match our database. (cdg) (Entered: 02/17/2023) |
| 02/17/2023 | | | RETURN of 213 APPLICATION for Admission of Cameron Powell Pro Hac Vice (Application fee $ 150, receipt number AGANDC−12378682). to attorney for correction re: Courts to which admitted and Local counsel on application must file the PHV. (cdg) (Entered: 02/17/2023) |
| 02/13/2023 | 218 | | Amended RESPONSE in Opposition re 208 AMICUS BRIEF in support of Plaintiffs' Motion for Summary Judgment filed by James Cooper, James Cooper, James Cooper, Mark Davis, Mark Davis, Mark Davis, Catherine Engelbrecht, Catherine Engelbrecht, Catherine Engelbrecht, John Does 1−10, Ron Johnson, Ron Johnson, Ron Johnson, Derek Somerville, Derek Somerville, Derek Somerville, True the Vote, True the Vote, Inc., True the Vote, Inc., True the Vote, Inc., Mark Williams, Mark Williams, Mark Williams. (Evans, James) Modified on 2/14/2023 to correct docket text (nmb). (Entered: 02/13/2023) |
| 02/13/2023 | 217 | | RESPONSE in Opposition re 208 AMICUS BRIEF in support of Plaintiffs' Motion for Summary Judgment filed by James Cooper, James Cooper, James Cooper, Mark Davis, Mark Davis, Mark Davis, Catherine Engelbrecht, Catherine Engelbrecht, Catherine Engelbrecht, John Does 1−10, Ron Johnson, Ron Johnson, Ron Johnson, Derek Somerville, Derek Somerville, Derek Somerville, True the Vote, True the Vote, Inc., True the Vote, Inc., True the Vote, Inc., Mark Williams, Mark Williams, Mark Williams. (Evans, James) Modified on 2/14/2023 to correct docket (nmb). (Entered: 02/13/2023) |
| 02/13/2023 | 216 | | RESPONSE re 208 Response to Motion filed by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Nkwonta, Uzoma) (Entered: 02/13/2023) |
| 02/09/2023 | 215 | | APPLICATION for Admission of Michael Wynne Pro Hac Vice (Application fee $ 150, receipt number AGANDC−12378746).by James Cooper, James Cooper, James Cooper, Mark Davis, Mark Davis, Mark Davis, Catherine Engelbrecht, Catherine Engelbrecht, Catherine Engelbrecht, John Does 1−10, |

| | | |
|---|---|---|
| | | Ron Johnson, Ron Johnson, Ron Johnson, Derek Somerville, Derek Somerville, Derek Somerville, True the Vote, True the Vote, Inc., True the Vote, Inc., True the Vote, Inc., Mark Williams, Mark Williams, Mark Williams. (Evans, James) Documents for this entry are not available for viewing outside the courthouse. (Entered: 02/09/2023) |
| 02/09/2023 | 214 | APPLICATION for Admission of Joseph Larsen Pro Hac Vice (Application fee $ 150, receipt number AGANDC–12378716).by James Cooper, James Cooper, James Cooper, Mark Davis, Mark Davis, Mark Davis, Catherine Engelbrecht, Catherine Engelbrecht, Catherine Engelbrecht, John Does 1–10, Ron Johnson, Ron Johnson, Ron Johnson, Derek Somerville, Derek Somerville, Derek Somerville, True the Vote, True the Vote, Inc., True the Vote, Inc., True the Vote, Inc., Mark Williams, Mark Williams, Mark Williams. (Evans, James) Documents for this entry are not available for viewing outside the courthouse. (Entered: 02/09/2023) |
| 02/09/2023 | 213 | APPLICATION for Admission of Cameron Powell Pro Hac Vice (Application fee $ 150, receipt number AGANDC–12378682).by James Cooper, James Cooper, James Cooper, Mark Davis, Mark Davis, Mark Davis, Catherine Engelbrecht, Catherine Engelbrecht, Catherine Engelbrecht, John Does 1–10, Ron Johnson, Ron Johnson, Ron Johnson, Derek Somerville, Derek Somerville, True the Vote, True the Vote, Inc., True the Vote, Inc., True the Vote, Inc., Mark Williams, Mark Williams, Mark Williams. (Mobley, Ansley) Documents for this entry are not available for viewing outside the courthouse. (Entered: 02/09/2023) |
| 02/09/2023 | 212 | NOTICE of Appearance by Mikayla Mobley on behalf of James Cooper, Mark Davis, Catherine Engelbrecht, John Does 1–10, Ron Johnson, Derek Somerville, True the Vote, True the Vote, Inc., Mark Williams (Evans, James) Modified on 2/9/2023 to change attorney (tas). (Entered: 02/09/2023) |
| 02/09/2023 | 211 | NOTICE of Appearance by James Cullen Evans on behalf of James Cooper, Mark Davis, Catherine Engelbrecht, John Does 1–10, Ron Johnson, Derek Somerville, True the Vote, True the Vote, Inc., Mark Williams (Evans, James) (Entered: 02/09/2023) |
| 02/08/2023 | 210 | TRANSCRIPT of Proceedings held on 2/1/2023, before Judge Steve C. Jones. Court Reporter/Transcriber Viola S. Zborowski. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Tape Number: 1. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/1/2023. Redacted Transcript Deadline set for 3/13/2023. Release of Transcript Restriction set for 5/9/2023. (Attachments: # 1 Appendix Notice of Filing Transcript) (Entered: 02/08/2023) |
| 02/01/2023 | 209 | Minute Entry for proceedings held before Judge Steve C. Jones: Motion Hearing held on 2/1/2023 re 155 First MOTION for Summary Judgment *for Defendants* and 156 MOTION for Summary Judgment filed by Plaintiffs. The Court heard oral argument from counsel and took the matter under advisement. (Court Reporter Viola Zborowski)(pdw) (Entered: 02/06/2023) |
| 02/01/2023 | 208 | |

| | | | |
|---|---|---|---|
| | | | AMICUS BRIEF in support of Plaintiffs' Motion for Summary Judgment 156 and Plaintiff's Opposition to Defendants' Motion for Summary Judgment 174 filed by Protect Democracy Project. (ddm) (Entered: 02/01/2023) |
| 02/01/2023 | 207 | | ORDER GRANTING 194 Protect Democracy Project's Motion for Leave to File an Amicus Brief. Because the Amicus Brief was filed after the Plaintiffs and Defendants fully briefed their motions for summary judgment, and at the close of the period for supplemental briefing, the Court GRANTS Defendants leave to respond to the amicus brief. Defendants may file a brief responding to the amicus brief within TEN (10) DAYS of the entry of this Order. The response brief SHALL NOT EXCEED FIFTEEN PAGES in length. Signed by Judge Steve C. Jones on 02/01/2023. (ddm) (Entered: 02/01/2023) |
| 01/31/2023 | 206 | | ORDER directing that Timothy Mellett, Dana Paikowsky and Jennifer Yun, attorneys appearing on behalf of the United States be allowed to bring laptop computers and mobile phones into Courtroom 303 on February 1, 2023. Signed by Judge Steve C. Jones on 01/31/2023. (ddm) (Entered: 01/31/2023) |
| 01/31/2023 | 205 | | Motion to Bring Audio/Visual/Electronic Equipment in the Courtroom by United States of America. (Attachments: # 1 Text of Proposed Order)(Hughes, Aileen) (Entered: 01/31/2023) |
| 01/31/2023 | 204 | | RESPONSE in Opposition re 194 Motion for Leave to File *Amicus Curiae Brief In Support of Plaintiffs' Motion for Summary Judgment and Plaintiffs' Opposition to Defendants' Motion for Summary Judgment* filed by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Bopp, James) (Entered: 01/31/2023) |
| 01/31/2023 | | | DOCKET ORDER denying 203 USA's Motion to Bring Audio/Visual/Electronic Equipment in the Courtroom, as the attached proposed order identifies neither the equipment for which entry is sought, nor the names of the attorney's seeking entry. Counsel may refile the motion. Entered by Judge Steve C. Jones on 1/31/2023. (pdw) (Entered: 01/31/2023) |
| 01/30/2023 | 203 | | Motion to Bring Audio/Visual/Electronic Equipment in the Courtroom by United States of America. (Attachments: # 1 Text of Proposed Order)(Paikowsky, Dana) (Entered: 01/30/2023) |
| 01/30/2023 | 202 | | NOTICE of Appearance by Timothy Mellett on behalf of United States of America. (Paikowsky, Dana) Modified on 1/31/2023 to edit docket entry (ddm). (Entered: 01/30/2023) |
| 01/30/2023 | 201 | | ORDER AMENDING its October 26, 2022 Order regarding the hearing on the Parties' cross–motions for summary judgment (Doc. No. 184 ). The Court will hear oral argument on the Plaintiffs' Motion for Summary Judgment (Doc. No. 156 ), Defendants' Motion for Summary Judgment (Doc. No. 155 ), and the United States' Brief on the Constitutionality and Interpretation of Section 11(b) of the Voting Rights Act (Doc. No. 198 ) on February 1, 2023, at 10:00 AM in the Sidney O. Smith Federal Building & United States Courthouse (121 Spring Street SE Gainesville, GA 30501, Courtroom 303). See Order for specific timeline of hearing. The Court reserves the right to amend the schedule of the argument. Signed by Judge Steve C. Jones on 01/30/2023. (ddm) (Entered: 01/30/2023) |
| 01/30/2023 | 200 | | |

| | | | |
|---|---|---|---|
| | | | ORDER ALLOWING AUDIO/VISUAL EQUIPMENT IN THE COURTROOM. Plaintiffs' counsel and representative (Uzoma N. Nkwonta, Christina A. Ford, Jacob Shelly and Cianti Stewart–Reid) may bring electronic equipment into the Federal Courthouse in Gainesville, Georgia for the summary judgment hearing beginning at 10:00 a.m. Wednesday, February 1, 2023, and continuing for the duration of the hearing. All equipment will be subject to inspection. Signed by Judge Steve C. Jones on 01/30/2023. (ddm) (Entered: 01/30/2023) |
| 01/27/2023 | 199 | | Motion to Bring Audio/Visual/Electronic Equipment in the Courtroom by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Attachments: # 1 Text of Proposed Order)(Lawrence, Allegra) (Entered: 01/27/2023) |
| 01/27/2023 | | | DOCKET ORDER granting 197 Application for Admission Pro Hac Vice of Benjamin L. Berwick. Entered by Judge Steve C. Jones on 1/27/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(pdw) (Entered: 01/27/2023) |
| 01/27/2023 | | | DOCKET ORDER granting 196 Application for Admission Pro Hac Vice of Eric John G. Paredes. Entered by Judge Steve C. Jones on 1/27/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(pdw) (Entered: 01/27/2023) |
| 01/27/2023 | | | DOCKET ORDER granting 195 Application for Admission Pro Hac Vice of Cameron O. Kistler. Entered by Judge Steve C. Jones on 1/27/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(pdw) (Entered: 01/27/2023) |
| 01/26/2023 | | | APPROVAL by Clerks Office re: 195 APPLICATION for Admission of Cameron O. Kistler Pro Hac Vice (Application fee $ 150, receipt number AGANDC–12333029). Attorney Cameron O. Kistler added appearing on behalf of Protect Democracy Project (cdg) (Entered: 01/26/2023) |
| 01/26/2023 | | | APPROVAL by Clerks Office re: 196 APPLICATION for Admission of Eric John G. Paredes Pro Hac Vice (Application fee $ 150, receipt number AGANDC–12333038). Attorney Eric John Galvez Paredes added appearing on behalf of Protect Democracy Project (cdg) (Entered: 01/26/2023) |
| 01/26/2023 | | | APPROVAL by Clerks Office re: 197 APPLICATION for Admission of Benjamin L. Berwick Pro Hac Vice (Application fee $ 150, receipt number AGANDC–12333058). Attorney Benjamin L. Berwick added appearing on behalf of Protect Democracy Project (cdg) (Entered: 01/26/2023) |
| 01/25/2023 | 198 | | Notice *of Filing Amended Brief* by United States of America re 192 Response. (Attachments: # 1 Exhibit A – Amended Brief) (Paikowsky, Dana) Modified on 1/25/2023 to edit docket text (ddm). (Entered: 01/25/2023) |
| 01/20/2023 | 197 | | APPLICATION for Admission of Benjamin L. Berwick Pro Hac Vice (Application fee $ 150, receipt number AGANDC–12333058). with Brief In |

| | | | |
|---|---|---|---|
| | | | Support by Protect Democracy Project. (Sparks, Adam) Documents for this entry are not available for viewing outside the courthouse. (Entered: 01/20/2023) |
| 01/20/2023 | 196 | | APPLICATION for Admission of Eric John G. Paredes Pro Hac Vice (Application fee $ 150, receipt number AGANDC−12333038). with Brief In Support by Protect Democracy Project. (Sparks, Adam) Documents for this entry are not available for viewing outside the courthouse. (Entered: 01/20/2023) |
| 01/20/2023 | 195 | | APPLICATION for Admission of Cameron O. Kistler Pro Hac Vice (Application fee $ 150, receipt number AGANDC−12333029). with Brief In Support by Protect Democracy Project. (Sparks, Adam) Documents for this entry are not available for viewing outside the courthouse. (Entered: 01/20/2023) |
| 01/17/2023 | 194 | | MOTION for Leave to File Amicus Curiae Brief in Support of Plaintiffs' Motion for Summary Judgment and Plaintiffs' Opposition to Defendants' Motion for Summary Judgment filed on behalf of Protect Democracy Project. (Attachments: # 1 Brief of Amicus Curiae Protect Democracy Project, # 2 Text of Proposed Order, # 3 Certificate of Interested Persons)(Sparks, Adam) Modified on 1/30/2023 to edit docket entry (ddm). (Entered: 01/17/2023) |
| 01/17/2023 | 193 | | RESPONSE in Support re 156 MOTION for Summary Judgment filed by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Nkwonta, Uzoma) (Entered: 01/17/2023) |
| 01/17/2023 | 192 | | RESPONSE re 182 Order,,, Set Submission Deadline,, *Brief of the United States on the Constitutionality and Interpretation of Section 11(B) of the Voting Rights Act* filed by United States of America. (Yun, Jennifer) (Entered: 01/17/2023) |
| 01/17/2023 | 191 | | RESPONSE in Support re 155 First MOTION for Summary Judgment *for Defendants* filed by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Attachments: # 1 Exhibit A Banks County Challenge)(Bopp, James) (Entered: 01/17/2023) |
| 01/05/2023 | 190 | | NOTICE of Appearance by Aileen Bell Hughes on behalf of United States of America (Hughes, Aileen) (Entered: 01/05/2023) |
| 12/27/2022 | 189 | | NOTICE of Appearance by Dana Paikowsky on behalf of United States of America (Paikowsky, Dana) (Entered: 12/27/2022) |
| 12/22/2022 | 188 | | NOTICE of Appearance by Jennifer J. Yun on behalf of United States of America (Yun, Jennifer) (Entered: 12/22/2022) |
| 12/19/2022 | 187 | | NOTICE by United States of America re 182 Order,,, Set Submission Deadline,, *Notice of Intervention Pursuant to 28 U.S.C. 2403(a)* (Hughes, Aileen) (Entered: 12/19/2022) |
| 11/07/2022 | | | Reset Hearing as to MOTIONS for Summary Judgment. Motion Hearing set for 2/1/2023 at 10:00 AM in GAIN Courtroom 303 before Judge Steve C. Jones. (rsg) (Entered: 11/07/2022) |
| 11/07/2022 | 186 | | ORDER granting in part and denying in part 185 Joint MOTION for Extension of Time For Supplemental Briefing and Summary Judgement Hearing. The |

| | | | |
|---|---|---|---|
| | | | Court extends the deadline for supplemental briefing until January 17, 2023. The Court also reschedules the summary judgment hearing for February 1, 2023, at 10 a.m. at the Sidney 0. Smith Federal Building & United States Courthouse (121 Spring Street SE Gainesville, GA 30501, Courtroom 303). The allotment of time for argument and supplemental briefing page limits remain unchanged from the Court's prior order. See Doc. No. 184 . Signed by Judge Steve C. Jones on 11/7/22. (rsg) (Entered: 11/07/2022) |
| 11/04/2022 | 185 | | Joint MOTION for Extension of Time For Supplemental Briefing and Summary Judgement Hearing re: 184 Order Setting Hearing on Motion,, with Brief In Support by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Attachments: # 1 Text of Proposed Order)(Nkwonta, Uzoma) (Entered: 11/04/2022) |
| 10/26/2022 | 184 | | ORDER Setting Hearing on 155 156 MOTIONS for Summary Judgment: Motion Hearing set for 12/6/2022 at 10:00 AM in GAIN Courtroom 303 before Judge Steve C. Jones. Each side will have 45 minutes to present its position. If the parties submit supplemental briefing on the Court's questions, such briefing shall be submitted no later than 7 days before the hearing and shall be no more than 45 pages. The Court does not require response briefing at this time. For purposes of perfecting the record' the Court notes that this Order renders Defendants' request for oral argument (Doc. No. 155 , 3) moot. Signed by Judge Steve C. Jones on 10/26/2022. (rsg) (Entered: 10/26/2022) |
| 10/21/2022 | 183 | | NOTICE by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams re 181 Order, Set Submission Deadline (Attachments: # 1 Exhibit A Attny. Gen. Garland Notice)(Bopp, James) (Entered: 10/21/2022) |
| 10/20/2022 | | | Clerk's Certificate of Mailing to the Honorable Merrick Garland re 182 Order. (ddm) (Entered: 10/20/2022) |
| 10/20/2022 | 182 | | CERTIFICATION ORDER certifying to the United States Attorney General the constitutionality of Section ll(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b), which has been called into question in the above–stated litigation as an affirmative defense in Defendants' Motion for Summary Judgment. Doc. No. 155 . The Attorney General is requested to submit his position as to intervention in reference to this issue no later than 60 DAYS of the date of this Certification Order. Signed by Judge Steve C. Jones on 10/20/2022. (ddm) (Entered: 10/20/2022) |
| 10/20/2022 | 181 | | ORDER directing Defendants to promptly comply with requirements of Rule 5.1. Defendants shall file proof of compliance with Rule 5.1 (on CM/ECF) on or before Monday, October 24, 2022. Signed by Judge Steve C. Jones on 10/20/2022. (ddm) (Entered: 10/20/2022) |
| 09/02/2022 | 180 | | ORDER granting 179 Motion to Withdraw Dara Lindenbaum as counsel for Plaintiffs. Signed by Judge Steve C. Jones on 09/02/2022. (ddm) (Entered: 09/02/2022) |
| 09/02/2022 | | | Submission of 156 MOTION for Summary Judgment , 172 MOTION in Limine To Exclude Improper Expert Testimony, 155 First MOTION for Summary Judgment *for Defendants*, to District Judge Steve C. Jones. (pdw) (Entered: 09/02/2022) |

| 08/12/2022 | 179 | MOTION for Permission to Withdraw Dara Lindenbaum as Counsel of Record by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Attachments: # 1 Text of Proposed Order)(Lawrence, Allegra) (Entered: 08/12/2022) |
|---|---|---|
| 07/05/2022 | 178 | REPLY to Response to Motion re 172 MOTION in Limine To Exclude Improper Expert Testimony filed by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Nkwonta, Uzoma) (Entered: 07/05/2022) |
| 06/21/2022 | 177 | REPLY to Response to Motion re 156 MOTION for Summary Judgment filed by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Nkwonta, Uzoma) (Entered: 06/21/2022) |
| 06/21/2022 | 176 | REPLY to Response to Motion re 155 First MOTION for Summary Judgment *for Defendants* filed by James Cooper, Mark Davis, Catherine Engelbrecht, John Does 1–10, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Attachments: # 1 Statement of Material Facts Response to Pls.' Additional Facts)(Bopp, James) (Entered: 06/21/2022) |
| 06/21/2022 | 175 | RESPONSE in Opposition re 172 MOTION in Limine To Exclude Improper Expert Testimony filed by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, OpSec LLC, Derek Somerville, True the Vote, Inc., Mark Williams. (Bopp, James) (Entered: 06/21/2022) |
| 06/06/2022 | 174 | RESPONSE in Opposition re 155 First MOTION for Summary Judgment *for Defendants* filed by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Attachments: # 1 Statement of Material Facts Response to Defendants' Statement of Undisputed Material Facts, # 2 Statement of Material Facts Statement of Additional Facts, # 3 Exhibit Index, # 4 Exhibit 45–Second Excerpt of Derek Somerville First Deposition Transcript, # 5 Exhibit 46–Second Excerpt of Derek Somerville Reopened Deposition Transcript, # 6 Exhibit 47–Second Excerpt of Mark Davis First Deposition Transcript, # 7 Exhibit 48–Second Excerpt of Jocelyn Heredia Deposition Transcript, # 8 Exhibit 49–Second Excerpt of Joseph Martin Deposition Transcript, # 9 Exhibit 50–Second Excerpt of True the Vote / Catherine Engelbrecht Deposition Transcript, # 10 Exhibit 51–Mark Davis Affidavit, # 11 Exhibit 52–D. Somerville Text, # 12 Exhibit 53–Dec. 18, 2020 D. Somerville Facebook Post, # 13 Exhibit 54–C. Engelbrecht Email, # 14 Exhibit 55–D. Somerville Facebook Post, # 15 Exhibit 56–D. Somerville Email, # 16 Exhibit 57–M. Williams Email, # 17 Exhibit 58–TrueAppend Report, # 18 Exhibit 59–OPSEC Responses to Plaintiffs Request for Production, # 19 Exhibit 60–F. Watson Email, # 20 Exhibit 61–R. Germany Email, # 21 Exhibit 62–Atlanta Journal Constitution Article, # 22 Exhibit 63–Politico Article, # 23 Affidavit Declaration of Uzoma Nkwonta)(Nkwonta, Uzoma) (Entered: 06/06/2022) |
| 06/06/2022 | 173 | RESPONSE in Opposition re 156 MOTION for Summary Judgment filed by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Attachments: # 1 Statement of Material Facts Defs.' Response to Pls' Corrected Statement of Undisputed Material Facts, # 2 Exhibit Defs.' Exhibit Index, # 3 Exhibit Ex. Y TTV Tr., # 4 Exhibit Ex. Z Cooper Tr., # 5 Exhibit Ex. AA Def TTV 1497)(Bopp, James) (Entered: 06/06/2022) |
| 06/06/2022 | 172 | MOTION in Limine To Exclude Improper Expert Testimony with Brief In Support by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. |

| | | | |
|---|---|---|---|
| | | | (Attachments: # <u>1</u> Brief in Support of Motion in Limine, # <u>2</u> Exhibit 1 to Brief in Support of Motion in Limine)(Nkwonta, Uzoma) (Entered: 06/06/2022) |
| 05/24/2022 | <u>171</u> | | *Corrected* Statement of Material Facts re <u>156</u> MOTION for Summary Judgment filed by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Attachments: # <u>1</u> Exhibit 11)(Nkwonta, Uzoma) Modified on 5/24/2022 to edit docket text (ddm). (Entered: 05/24/2022) |
| 05/24/2022 | <u>170</u> | | NOTICE *of Errata* filed by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Nkwonta, Uzoma) Modified on 5/24/2022 to edit docket text (ddm). (Entered: 05/24/2022) |
| 05/17/2022 | <u>169</u> | | NOTICE Of Filing Deposition transcript of Plaintiff Jocelyn Heredia, taken on October 15, 2021 re <u>155</u> First MOTION for Summary Judgment *for Defendants* (Attachments: # <u>1</u> Exhibit Jocelyn Heredia Deposition)(Bopp, James) Modified text on 5/17/2022 (rsg). (Entered: 05/17/2022) |
| 05/17/2022 | <u>168</u> | | NOTICE Of Filing Deposition of True the Vote and Catherine Engelbrecht Taken on January 26, 2022 by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe, John Doe re <u>156</u> MOTION for Summary Judgment (Attachments: # <u>1</u> Exhibit True the Vote and Catherine Engelbrecht Deposition)(Nkwonta, Uzoma) (Entered: 05/17/2022) |
| 05/17/2022 | <u>167</u> | | NOTICE Of Filing Deposition of OPSEC Group, LLC and Greg Phillips Taken on January 25, 2022 by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe, John Doe re <u>156</u> MOTION for Summary Judgment (Attachments: # <u>1</u> Exhibit OPSEC Group, LLC and Greg Phillips Deposition)(Nkwonta, Uzoma) (Entered: 05/17/2022) |
| 05/17/2022 | <u>166</u> | | NOTICE Of Filing Deposition of Derek Somerville Taken on January 20, 2022 by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe, John Doe re <u>156</u> MOTION for Summary Judgment (Attachments: # <u>1</u> Exhibit Derek Somerville Deposition)(Nkwonta, Uzoma) (Entered: 05/17/2022) |
| 05/17/2022 | <u>165</u> | | NOTICE Of Filing Deposition of Mark Davis Taken on January 19, 2022 by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe, John Doe re <u>156</u> MOTION for Summary Judgment (Attachments: # <u>1</u> Exhibit Mark Davis Deposition)(Nkwonta, Uzoma) (Entered: 05/17/2022) |
| 05/17/2022 | <u>164</u> | | NOTICE Of Filing Deposition of Amy Holsworth Taken on January 12, 2022 by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe, John Doe re <u>156</u> MOTION for Summary Judgment (Attachments: # <u>1</u> Exhibit Amy Holsworth Deposition)(Nkwonta, Uzoma) (Entered: 05/17/2022) |
| 05/17/2022 | <u>163</u> | | NOTICE Of Filing Deposition of Jocelyn Heredia Taken on October 15, 2021. by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe, John Doe re <u>156</u> MOTION for Summary Judgment (Attachments: # <u>1</u> Exhibit Jocelyn Heredia Deposition)(Nkwonta, Uzoma) (Entered: 05/17/2022) |
| 05/17/2022 | <u>162</u> | | NOTICE Of Filing Deposition of Derek Somerville Taken on October 6, 2021 by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe, John Doe re <u>156</u> MOTION for Summary Judgment (Attachments: # <u>1</u> Exhibit Derek Somerville Deposition)(Nkwonta, Uzoma) (Entered: 05/17/2022) |
| 05/17/2022 | <u>161</u> | | NOTICE Of Filing Deposition of Mark Davis Taken on October 4, 2021 by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe, John Doe re <u>156</u> |

| | | | |
|---|---|---|---|
| | | | MOTION for Summary Judgment (Attachments: # 1 Exhibit Mark Davis Deposition)(Nkwonta, Uzoma) (Entered: 05/17/2022) |
| 05/17/2022 | 160 | | NOTICE Of Filing Deposition of Ron Johnson Taken on September 29, 2021 by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe, John Doe re 156 MOTION for Summary Judgment (Attachments: # 1 Exhibit Ron Johnson Deposition)(Nkwonta, Uzoma) (Entered: 05/17/2022) |
| 05/17/2022 | 159 | | NOTICE Of Filing Deposition of Joseph Martin Taken on September 28, 2021 by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe, John Doe re 156 MOTION for Summary Judgment (Attachments: # 1 Exhibit Joseph Martin Deposition)(Nkwonta, Uzoma) (Entered: 05/17/2022) |
| 05/17/2022 | 158 | | NOTICE Of Filing Deposition of Mark Williams Taken on September 23, 2021 by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe, John Doe re 156 MOTION for Summary Judgment (Attachments: # 1 Exhibit Mark Williams Deposition)(Nkwonta, Uzoma) (Entered: 05/17/2022) |
| 05/17/2022 | 157 | | NOTICE Of Filing Deposition of James Cooper Taken on September 22, 2021 by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe, John Doe (Attachments: # 1 Exhibit James Cooper Deposition)(Nkwonta, Uzoma) (Entered: 05/17/2022) |
| 05/16/2022 | 156 | | MOTION for Summary Judgment with Brief In Support by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Attachments: # 1 Brief Brief in Support of Motion for Summary Judgment, # 2 Statement of Material Facts Statement of Material Facts, # 3 Exhibit Index of Exhibits, # 4 Exhibit Exhibit 1 – Validate the Vote, # 5 Exhibit Exhibit 2 – J. Cooper Deposition Excerpts, # 6 Exhibit Exhibit 3 – M. Williams Deposition Excerpts, # 7 Exhibit Exhibit 4 – R. Johnson Deposition Excerpts, # 8 Exhibit Exhibit 5 – J. Martin Deposition Excerpts, # 9 Exhibit Exhibit 6 – M. Davis Deposition I Excerpt, # 10 Exhibit Exhibit 7 – D. Somerville Deposition I Excerpts, # 11 Exhibit Exhibit 8 – J. Heredia Deposition Excerpts, # 12 Exhibit Exhibit 9 – M. Davis II Deposition Excerpts, # 13 Exhibit Exhibit 10 – D. Somerville II Deposition Excerpts, # 14 Exhibit Exhibit 11 – G. Phillips Deposition Excerpts, # 15 Exhibit Exhibit 12 – C. Engelbrecht Deposition Excerpts, # 16 Exhibit Exhibit 13 – K. Mayer Expert Report, # 17 Exhibit Exhibit 14 – V. Burton Expert Report, # 18 Exhibit Exhibit 15 – E. Osa Declaration, # 19 Exhibit Exhibit 16 – Jane Doe Declaration, # 20 Exhibit Exhibit 17 – S. Stinetorf Declaration, # 21 Exhibit Exhibit 18 – W. Turner Declaration, # 22 Exhibit Exhibit 19 – True the Vote Interrog. Resp., # 23 Exhibit Exhibit 20 – True the Vote RFA Responses, # 24 Exhibit Exhibit 21 – True the Vote Dec. 14 Press Release, # 25 Exhibit Exhibit 22 – True the Vote December 18 Press Release, # 26 Exhibit Exhibit 23 – Crusade for Freedom Tweets, # 27 Exhibit Exhibit 24 – Seals at the Polls Transcript, # 28 Exhibit Exhibit 25 – Nov. 30 M. Davis Facebook Post, # 29 Exhibit Exhibit 26 – Dec. 4 Davis and Somerville Facebook Post, # 30 Exhibit Exhibit 27 – Dec. 5 Davis and Somerville Facebook Post, # 31 Exhibit Exhibit 28 – Email from M. Williams to A. Holsworth, # 32 Exhibit Exhibit 29 – G. Phillips CNN Interview Transcript, # 33 Exhibit Exhibit 30 – Banks County Challenge List, # 34 Exhibit Exhibit 31 – True the Vote Challengers List, # 35 Exhibit Exhibit 32 – Davis and Somerville Challenger List, # 36 Exhibit Exhibit 33 – Elijah Cummings Ltr, # 37 Exhibit Exhibit 34 – Dec. 12 M. Williams Email, # 38 Exhibit Exhibit 35 – Dodge County Challenger Email, # |

| | | | |
|---|---|---|---|
| | | | <u>39</u> Exhibit Exhibit 36 – Jones County Challenger Email, # <u>40</u> Exhibit Exhibit 37 – Barrow County Challenger Email, # <u>41</u> Exhibit Exhibit 38 – Calhoun County Challenger Email, # <u>42</u> Exhibit Exhibit 39 – Email from N. Howard, # <u>43</u> Exhibit Exhibit 40 – Email from C. Engelbrecht, # <u>44</u> Exhibit Exhibit 41 – Email from F. Eshelman, # <u>45</u> Exhibit Exhibit 42 – Eshelman Verified App. for Temp. Injunction, # <u>46</u> Exhibit Exhibit 43 – C. Engelbrecht Podcast Transcript, # <u>47</u> Exhibit Exhibit 44 – G Phillips Deposition Notice)(Nkwonta, Uzoma) ––Please refer to http://www.gand.uscourts.gov to obtain the Notice to Respond to Summary Judgment Motion form contained on the Court's website.–– (Entered: 05/16/2022) |
| 05/16/2022 | <u>155</u> | | First MOTION for Summary Judgment *for Defendants* with Brief In Support by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Attachments: # <u>1</u> Brief in Support of Defendants' Motion for Summary Judgment, # <u>2</u> Statement of Material Facts for Defendants, # <u>3</u> Exhibit Statement of Material Facts Exhibit Index, # <u>4</u> Exhibit Ex. A TTV Resp 2d Interrog., # <u>5</u> Exhibit Ex. B Elias Letter, # <u>6</u> Exhibit Ex. C TTV Am Resp. First RFP, # <u>7</u> Exhibit Ex. D TTV Tr., # <u>8</u> Exhibit Ex. E TTV Resp. to First Interrogs., # <u>9</u> Exhibit Ex. F OpSec Tr., # <u>10</u> Exhibit Ex. G OpSec Tr. Exhibit 10, # <u>11</u> Exhibit Ex. H TTV Am. Resp. 2d RFP, # <u>12</u> Exhibit Ex. I First Somerville Tr., # <u>13</u> Exhibit Ex. J Somerville Interrog. Resp. Ct. Order, # <u>14</u> Exhibit Ex. K Second Somerville Tr., # <u>15</u> Exhibit Ex. L Somerville Am. Resp. 2d Interrog., # <u>16</u> Exhibit Ex. M First Davis Tr., # <u>17</u> Exhibit Ex. N Second Davis Tr., # <u>18</u> Exhibit Ex. O Davis Interrog. Resp. Ct. Order, # <u>19</u> Exhibit Ex. P Williams Tr., # <u>20</u> Exhibit Ex. Q Williams Resp. to First Interrogs., # <u>21</u> Exhibit Ex. R Johnson Resp. to First Interrogs., # <u>22</u> Exhibit Ex. S Cooper Resp. to First Interrogs., # <u>23</u> Exhibit Ex. T Berson Resp. to Interrogs., # <u>24</u> Exhibit Ex. U Heredia Tr., # <u>25</u> Exhibit Ex. V Banks County ORR, # <u>26</u> Exhibit Ex. W Banks County Board Minutes, # <u>27</u> Exhibit Ex. X Heredia Tr. Full)(Bopp, James) ––Please refer to http://www.gand.uscourts.gov to obtain the Notice to Respond to Summary Judgment Motion form contained on the Court's website.–– (Entered: 05/16/2022) |
| 05/12/2022 | <u>154</u> | | ORDER granting the <u>152</u> Joint Motion for Leave to File Excess Pages. Plaintiffs may file a brief not to exceed 35 pages in support of their forthcoming motion for summary judgment, and Defendants may file a brief not to exceed 35 pages in support of their forthcoming motion for summary judgment. Signed by Judge Steve C. Jones on 05/12/2022. (ddm) (Entered: 05/12/2022) |
| 05/12/2022 | | | DOCKET ORDER granting <u>153</u> Consent Motion to Withdraw as Attorney. Attorney Courtney Kramer terminated as counsel for Defendants. Entered by Judge Steve C. Jones on 5/12/2022. (pdw) (Entered: 05/12/2022) |
| 05/10/2022 | <u>153</u> | | Consent MOTION to Withdraw Courtney Kramer as Attorneyby Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, True the Vote, Inc., Mark Williams. (Kramer, Courtney) (Entered: 05/10/2022) |
| 05/10/2022 | <u>152</u> | | Joint MOTION for Leave to File Excess Pages by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe, John Doe. (Attachments: # <u>1</u> Exhibit Proposed Order Granting Joint Motion)(Nkwonta, Uzoma) (Entered: 05/10/2022) |
| 05/10/2022 | <u>151</u> | | |

| | | | |
|---|---|---|---|
| | | | NOTICE of Appearance by David F. Guldenschuh on behalf of True the Vote, Inc. (Guldenschuh, David) (Entered: 05/10/2022) |
| 03/16/2022 | 150 | | ORDER granting 149 Defendants' Unopposed Motion to Modify Scheduling Order. Defendants and Plaintiffs shall file any motions for summary judgment on or before May 16, 2022. Signed by Judge Steve C. Jones on 03/16/2022. (ddm) (Entered: 03/16/2022) |
| 03/16/2022 | 149 | | Unopposed MOTION for Extension of Time re: 148 Order on Motion for Extension of Time *for Motions for Summary Judgment* by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Attachments: # 1 Text of Proposed Order)(Kramer, Courtney) (Entered: 03/16/2022) |
| 02/04/2022 | 148 | | ORDER granting 147 Motion for Extension of Time. Pursuant to this order, Defendants' and Plaintiffs' shall file any motions for summary judgment on or before April 1, 2022. Signed by Judge Steve C. Jones on 02/04/2022. (rsg) (Entered: 02/04/2022) |
| 02/03/2022 | 147 | | Unopposed MOTION for Extension of Time file Motions for Summary Judgment re: 136 Order on Motion to Amend *Scheduling Order* by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Attachments: # 1 Text of Proposed Order for Modified Scheduling Order)(Kramer, Courtney) (Entered: 02/03/2022) |
| 01/10/2022 | 146 | | ORDER granting 144 Application for Admission Pro Hac Vice of Marcos Mocine–McQueen. Signed by Judge Steve C. Jones on 1/10/2022. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(pdw) (Entered: 01/10/2022) |
| 01/10/2022 | 145 | | ORDER granting 143 Application for Admission Pro Hac Vice of Tina Yazhuo Meng. Signed by Judge Steve C. Jones on 1/10/2022. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(pdw) (Entered: 01/10/2022) |
| 12/30/2021 | | | APPROVAL by Clerks Office re: 144 APPLICATION for Admission of Marcos Mocine–McQueen Pro Hac Vice (Application fee $ 150, receipt number AGANDC–11478968).. Attorney Marcos Mocine–McQueen added appearing on behalf of Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe (nmb) (Entered: 12/30/2021) |
| 12/30/2021 | | | APPROVAL by Clerks Office re: 143 APPLICATION for Admission of Tina Yazhuo Meng Pro Hac Vice (Application fee $ 150, receipt number BGANDC–11478952).. Attorney Tina Yazhou Meng added appearing on behalf of Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe (nmb) (Entered: 12/30/2021) |
| 12/23/2021 | 144 | | APPLICATION for Admission of Marcos Mocine–McQueen Pro Hac Vice (Application fee $ 150, receipt number AGANDC–11478968).by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe, John Doe. (Lawrence, Allegra) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/23/2021) |

| 12/23/2021 | 143 | APPLICATION for Admission of Tina Yazhuo Meng Pro Hac Vice (Application fee $ 150, receipt number BGANDC−11478952).by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe, John Doe. (Lawrence, Allegra) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/23/2021) |
|---|---|---|
| 12/22/2021 | 142 | ORDER on the parties' discovery disputes concerning the scope of the upcoming depositions, for which the Court held an informal discovery dispute resolution conference on December 17, 2021. Signed by Judge Steve C. Jones on 12/22/2021. (ddm) (Entered: 12/22/2021) |
| 12/21/2021 | 141 | CERTIFICATE OF SERVICE *of Discovery Materials* by Derek Somerville, True the Vote, Inc..(Kramer, Courtney) (Entered: 12/21/2021) |
| 12/21/2021 | 140 | CERTIFICATE OF SERVICE *of Discovery Materials* by Mark Davis, Derek Somerville.(Kramer, Courtney) (Entered: 12/21/2021) |
| 12/17/2021 | 139 | Minute Entry for proceedings held before Judge Steve C. Jones: Discovery Hearing held via Zoom upon request of Plaintiffs on 12/17/2021. The Court heard oral argument from counsel. Order to follow. (Court Reporter Geraldine Glover)(rsg) (Entered: 12/17/2021) |
| 12/14/2021 | 138 | ORDER granting 137 Motion for Extension of Time to Provide Court−Ordered Discovery. Defendants' and Plaintiffs' time to complete discovery is due on or before December 14, 2021. Signed by Judge Steve C. Jones on 12/14/2021. (rsg) (Entered: 12/14/2021) |
| 12/08/2021 | 137 | Unopposed MOTION for Extension of Time to Provide Court−Ordered Discovery re: 136 Order on Motion to Amend *Scheduling Order* by Mark Davis, Derek Somerville. (Attachments: # 1 Text of Proposed Order Proposed Order)(Kramer, Courtney) (Entered: 12/08/2021) |
| 12/01/2021 | | DOCKET ORDER granting 131 Motion to Withdraw as Attorney. Attorneys John M. Devaney and Torryn Taylor terminated as counsel. Entered by Judge Steve C. Jones on 12/01/2021. (pdw) (Entered: 12/01/2021) |
| 12/01/2021 | | Submission of 131 MOTION to Withdraw Torryn Taylor and John Devaney as Attorneys for Plaintiffs, to District Judge Steve C. Jones. (ddm) (Entered: 12/01/2021) |
| 11/23/2021 | 136 | ORDER granting 134 Plaintiffs' Unopposed Motion to Modify the Scheduling Order. (See Order for new deadlines.) Signed by Judge Steve C. Jones on 11/23/2021. (ddm) (Entered: 11/23/2021) |
| 11/23/2021 | 135 | ORDER granting 122 Application for Admission of John Devaney Pro Hac Vice. Signed by Judge Steve C. Jones on 11/23/2021. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(rsg) (Entered: 11/23/2021) |
| 11/22/2021 | 134 | Unopposed MOTION to Amend 127 Order on Motion to Amend, by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Attachments: # 1 Text of Proposed Order)(Nkwonta, Uzoma) (Entered: 11/22/2021) |
| 11/19/2021 | 133 | ORDER directing that Defendants Davis and Somerville fully respond to the discovery requests at issue. The Court further orders that the November 1, 2021 |

| | | | discovery requests are not proper and no response to said requests is required. Signed by Judge Steve C. Jones on 11/19/2021. (ddm) (Entered: 11/19/2021) |
|---|---|---|---|
| 11/17/2021 | 132 | | Minute Entry for proceedings held before Judge Steve C. Jones: Discovery Hearing held on 11/17/2021 via Zoom. Oral argument heard; order to follow. (Court Reporter Geraldine Glover)(ddm) (Entered: 11/17/2021) |
| 11/12/2021 | 131 | | MOTION to Withdraw Torryn Taylor and John Devaney as Attorneys for Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Taylor, Torryn) (Entered: 11/12/2021) |
| 11/08/2021 | 130 | | CERTIFICATE OF SERVICE *of Discovery Materials* by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams.(Kramer, Courtney) (Entered: 11/08/2021) |
| 11/02/2021 | 129 | | CERTIFICATE OF SERVICE *of Discovery Materials* by True the Vote, Inc..(Kramer, Courtney) (Entered: 11/02/2021) |
| 10/29/2021 | 128 | | CERTIFICATE OF SERVICE *of Discovery Materials* by Mark Davis, Derek Somerville.(Kramer, Courtney) (Entered: 10/29/2021) |
| 10/14/2021 | 127 | | ORDER granting 126 Defendant True the Vote, Inc.'s Motion for Permission to Withdraw and Amend its Response to Plaintiffs' First Set of Requests for Admissions, 30–Day Extension of Discovery Deadlines for Limited Purposes, and Corresponding Extension to Deadline for Summary Judgment Motions. Signed by Judge Steve C. Jones on 10/14/2021. (ddm) (Entered: 10/14/2021) |
| 10/12/2021 | 126 | | Unopposed MOTION to Amend *True the Vote, Inc.'s Responses to First RFAs* with Brief In Support by True the Vote, Inc.. (Attachments: # 1 Brief Memo in Support of Motion to Withdraw or Amend RFAs, # 2 Exhibit Ex. A Siebert Declaration, # 3 Exhibit Ex. B Proposed Am. Resp. to First RFAs, # 4 Text of Proposed Order)(Kramer, Courtney) (Entered: 10/12/2021) |
| 10/11/2021 | 125 | | OBJECTION *of Non–Party to Plaintiff's Subpoena for Production of Documents* by Alice O'Lenick. (Wilson, Melanie) (Entered: 10/11/2021) |
| 10/08/2021 | | | APPROVAL by Clerks Office re: 122 APPLICATION for Admission of John Devaney Pro Hac Vice (Application fee $ 150, receipt number AGANDC–11309511). Attorney John M. Devaney added appearing on behalf of Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe (cdg) (Entered: 10/08/2021) |
| 10/07/2021 | 124 | | NOTICE by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe *of Certificate of Consent to Withdraw of Thomas J. Tobin as Counsel of Record* (Attachments: # 1 Text of Proposed Order)(Nkwonta, Uzoma) (Entered: 10/07/2021) |
| 10/07/2021 | 123 | | NOTICE by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe *of Certificate of Consent to Withdraw of Molly E. Mitchell as Counsel of Record* (Attachments: # 1 Text of Proposed Order)(Nkwonta, Uzoma) (Entered: 10/07/2021) |
| 10/06/2021 | 122 | | APPLICATION for Admission of John Devaney Pro Hac Vice (Application fee $ 150, receipt number AGANDC–11309511).by Fair Fight, Inc.. (Lawrence, Allegra) Documents for this entry are not available for viewing outside the courthouse. (Entered: 10/06/2021) |

| 09/23/2021 | | | DOCKET ORDER: Plaintiffs' Emergency Motion for Order that the Deposition of Defendant Ron Johnson be Taken by Remote Means 119 is hereby DEEMED MOOT by Defendant Johnson's withdrawal of his objection to the remote deposition 121 . To the extent not moot, the motion is GRANTED. Defendant Johnson shall submit to a deposition by remote means on the date and time agreed upon by the parties and their counsel prior to the close of discovery. Entered by Judge Steve C. Jones on 9/23/2021. (pdw) (Entered: 09/23/2021) |
|---|---|---|---|
| 09/23/2021 | 121 | | RESPONSE re 119 Emergency MOTION for Order *that the Deposition of Defendant Ron Johnson Be Taken By Remote Means* filed by Ron Johnson. (Kramer, Courtney) (Entered: 09/23/2021) |
| 09/22/2021 | 120 | | CERTIFICATE OF SERVICE *of Discovery Materials* by Catherine Engelbrecht, True the Vote, Inc..(Kramer, Courtney) (Entered: 09/22/2021) |
| 09/22/2021 | | | DOCKET ORDER: Defendant Ron Johnson is ORDERED to file a response to Plaintiffs' 119 Emergency MOTION for Order *that the Deposition of Defendant Ron Johnson Be Taken By Remote Means* no later than 12:00 PM on Thursday, September 23, 2021. Entered by Judge Steve C. Jones on 9/22/2021. (pdw) (Entered: 09/22/2021) |
| 09/22/2021 | 119 | | Emergency MOTION for Order *that the Deposition of Defendant Ron Johnson Be Taken By Remote Means* with Brief In Support by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Text of Proposed Order)(Lawrence, Allegra) (Entered: 09/22/2021) |
| 09/20/2021 | 118 | | ORDER granting 116 Motion for Extension of Time to Complete Discovery. Discovery ends on 10/31/2021 with any motions for summary judgment or the proposed consolidated pretrial order to be filed by December 1, 2021. Signed by Judge Steve C. Jones on 09/20/2021. (rsg) (Entered: 09/20/2021) |
| 09/20/2021 | 117 | | NOTICE of Appearance by Michelle L McClafferty on behalf of Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe (McClafferty, Michelle) (Entered: 09/20/2021) |
| 09/17/2021 | 116 | | Unopposed MOTION for Extension of Time to Complete Discovery *(Amended)* by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Attachments: # 1 Text of Proposed Order)(Kramer, Courtney) (Entered: 09/17/2021) |
| 09/17/2021 | 115 | | Unopposed MOTION for Extension of Time to Complete Discovery by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Attachments: # 1 Text of Proposed Order)(Kramer, Courtney) (Entered: 09/17/2021) |
| 09/03/2021 | 114 | | NOTICE of Substitution of Counsel by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe (Nkwonta, Uzoma) Modified on 9/7/2021 to edit docket entry (ddm). (Entered: 09/03/2021) |
| 08/30/2021 | 113 | | CERTIFICATE OF SERVICE *of Discovery Materials* by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe.(Nkwonta, Uzoma) (Entered: 08/30/2021) |
| 08/23/2021 | 112 | | |

| | | | |
|---|---|---|---|
| | | | AMENDED ANSWER to <u>73</u> *Plaintiffs' First Amended Complaint* by James Cooper, Mark Davis, Catherine Engelbrecht, John Does 1–10, Ron Johnson, Derek Somerville, True the Vote, True the Vote, Inc., Mark Williams. (Kramer, Courtney) Modified on 8/24/2021 to edit docket entry (ddm). (Entered: 08/23/2021) |
| 08/17/2021 | <u>111</u> | | ORDER granting the Motion to Dismiss Defendants' Counterclaims <u>48</u> as to Count 5. The motion is moot as to Counts 1–4 due to amendment and to the extent not moot, granted. To this regard, no counterclaims remain pending in this civil action. Defendants' Motion for Leave to File Counterclaim <u>89</u> is granted in part and denied in part. More specifically, the Motion is granted for the limited purpose of removing Counts 1–4 of the original counterclaim <u>40</u> and reasserting/relabeling said counts as affirmative defenses in an amended answer. For purposes of perfecting the record, it is ordered that Defendants shall revise and refile an Amended Answer that conforms to the above–stated rulings within ten days of the entry of this Order. The Motion is denied on the ground of futility as to the Section 11(b)/VRA claim (previously referred to as Counterclaim/Count 5) and the proposed addition of new parties. The Clerk is directed to strike the Amended Counterclaim <u>82</u> as such was filed without leave of Court. Signed by Judge Steve C. Jones on 8/17/2021. (ddm) (Entered: 08/17/2021) |
| 08/16/2021 | | | DOCKET ORDER granting <u>110</u> Joint Motion to Amend scheduling order to extend discovery deadline by 30 days to October 1, 2021, with any motions for summary judgment or the proposed consolidated pretrial order to be filed November 1, 2021. The parties are cautioned that any future joint/consent motions must be accompanied by a proposed order. Entered by Judge Steve C. Jones on 8/16/2021. (pdw) (Entered: 08/16/2021) |
| 08/16/2021 | | | Submission of <u>110</u> Joint MOTION to Amend <u>105</u> Scheduling Order, to District Judge Steve C. Jones. (ddm) (Entered: 08/16/2021) |
| 07/29/2021 | <u>110</u> | | Joint MOTION to Amend <u>105</u> Scheduling Order,,,, by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Nkwonta, Uzoma) (Entered: 07/29/2021) |
| 06/25/2021 | <u>109</u> | | NOTICE of Consent to Withdraw as counsel for James Cooper, Mark Davis, Catherine Engelbrecht, John Does 1–10, Derek Somerville, True the Vote, Inc. Courtney Kramer will be replacing Ray Smith III and the law firm of Smith & Liss, LLC. (Smith, Ray) Modified on 6/28/2021 to edit docket entry (ddm). (Entered: 06/25/2021) |
| 06/25/2021 | <u>108</u> | | CERTIFICATE OF SERVICE *of Discovery Materials* by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe.(Nkwonta, Uzoma) (Entered: 06/25/2021) |
| 06/18/2021 | <u>107</u> | | CERTIFICATE OF SERVICE *of Discovery Materials* by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, OpSec LLC, Derek Somerville, True the Vote, Inc., Mark Williams.(Kramer, Courtney) (Entered: 06/18/2021) |
| 06/08/2021 | <u>106</u> | | CERTIFICATE OF SERVICE *of Discovery Materials* by James Cooper, Mark Davis, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams.(Kramer, Courtney) (Entered: 06/08/2021) |
| 06/03/2021 | <u>105</u> | | SCHEDULING ORDER approving the parties' <u>54</u> Joint Preliminary Report and Discovery Plan. The Court adopts the Plaintiffs'/Counter–Defendants' |

| | | |
|---|---|---|
| | | position: discovery will not proceed against Counter–Defendants until the Court decides Counter–Defendants' Motion to Dismiss Defendants' counterclaims [Doc. 58]. Discovery will proceed for four (4) months in accordance with the Local Rules on Plaintiffs claim as set forth in the Amended Complaint [Doc. 73] and conclude on September 1, 2021. Any motions for summary judgment or the proposed consolidated pretrial order must be filed on or before October 1, 2021. If a motion for summary judgment is filed, the proposed consolidated pretrial order must be filed within 30 days after this Court's ruling thereon. If neither motion(s) for summary judgment nor the proposed pretrial order are timely filed, the Clerk is directed to submit this matter for the Court for consideration. Signed by Judge Steve C. Jones on 6/3/2021. (ddm) (Entered: 06/03/2021) |
| 06/03/2021 | 104 | NOTICE of Appearance by Courtney Kramer on behalf of David Clark, James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Cindy Morley, OpSec LLC, Larry Reynolds, Jason Shepherd, Derek Somerville, True the Vote, True the Vote, Inc., B.J. Van Gundy, Mark Williams, Seanie Zappendorf (Kramer, Courtney) (Entered: 06/03/2021) |
| 06/01/2021 | 103 | CERTIFICATE OF SERVICE *of Discovery Materials* by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe.(Nkwonta, Uzoma) (Entered: 06/01/2021) |
| 05/26/2021 | 102 | CERTIFICATE OF SERVICE *of Discovery Materials* by James Cooper, Mark Davis, Catherine Engelbrecht, John Does 1–10, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams.(Smith, Ray) (Entered: 05/26/2021) |
| 05/13/2021 | 101 | CERTIFICATE OF SERVICE filed by OpSec LLC, True the Vote, Inc. (Smith, Ray) (Entered: 05/13/2021) |
| 05/10/2021 | 100 | CERTIFICATE OF SERVICE *of Discovery Materials* by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe.(Nkwonta, Uzoma) (Entered: 05/10/2021) |
| 05/03/2021 | 99 | ORDER granting 75 Motion for Protective Order. Signed by Judge Steve C. Jones on 5/3/2021. (rjc) (Entered: 05/03/2021) |
| 04/28/2021 | | Submission of 89 MOTION for Leave to File to File Counterclaim to District Judge Steve C. Jones. (rjc) (Entered: 04/28/2021) |
| 04/26/2021 | | Submission of 75 MOTION for Protective Order to District Judge Steve C. Jones. (rjc) (Entered: 04/26/2021) |
| 04/23/2021 | 98 | REPLY to Response to Motion re 89 MOTION for Leave to File to File Counterclaim filed by James Cooper, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Smith, Ray) (Entered: 04/23/2021) |
| 04/19/2021 | 97 | ORDER granting 90 Application for Admission Pro Hac Vice for Torryn Taylor. Signed by Judge Steve C. Jones on 4/19/2021. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(rjc) (Entered: 04/19/2021) |
| 04/19/2021 | 96 | |

| | | | |
|---|---|---|---|
| | | | PROTECTIVE ORDER granting 94 Motion for Protective Order. Signed by Judge Steve C. Jones on 4/19/2021. (rjc) (Entered: 04/19/2021) |
| 04/16/2021 | 94 | | Joint MOTION for Protective Order by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Attachments: # 1 Exhibit A – Proposed Protective Order)(Nkwonta, Uzoma) (Entered: 04/16/2021) |
| 04/15/2021 | 93 | | CERTIFICATE OF SERVICE *of Discovery Materials* by James Cooper, Mark Davis, True the Vote, Inc..(Smith, Ray) (Entered: 04/15/2021) |
| 04/15/2021 | 92 | | CERTIFICATE OF SERVICE *of Discovery Materials* by OpSec LLC.(Smith, Ray) (Entered: 04/15/2021) |
| 04/13/2021 | 91 | | RESPONSE in Opposition re 89 MOTION for Leave to File to File Counterclaim filed by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Attachments: # 1 Exhibit A – Email)(Nkwonta, Uzoma) (Entered: 04/13/2021) |
| 04/12/2021 | | | APPROVAL by Clerks Office re: 90 APPLICATION for Admission of Torryn Taylor Pro Hac Vice (Application fee $ 150, receipt number AGANDC–10890209). Attorney Torryn Taylor added appearing on behalf of Fair Fight, Inc., Jane Doe, John Doe (cdg) (Entered: 04/12/2021) |
| 04/09/2021 | 95 | | Minute Entry for proceedings held before Judge Steve C. Jones: Hearing held via Zoom upon request of parties regarding a discovery dispute. (Court Reporter David Ritchie)(pdw) (Entered: 04/16/2021) |
| 04/09/2021 | 90 | | APPLICATION for Admission of Torryn Taylor Pro Hac Vice (Application fee $ 150, receipt number AGANDC–10890209).by Scott Berson, David Clark, Fair Fight Action, Inc., Fair Fight Action, Inc., Fair Fight, Inc., Fair Fight, Inc., Fair Fight, Inc., Jocelyn Heredia, Jocelyn Heredia, Jocelyn Heredia, Jane Doe, Jane Doe, Jane Doe, John Doe. (Lawrence, Allegra) Documents for this entry are not available for viewing outside the courthouse. (Entered: 04/09/2021) |
| 04/09/2021 | 89 | | MOTION for Leave to File to File Counterclaim with Brief In Support by James Cooper, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Smith, Ray) (Entered: 04/09/2021) |
| 04/09/2021 | | | RETURN of 87 APPLICATION for Admission of Torryn Taylor Pro Hac Vice (Application fee $ 150, receipt number AGANDC–10887426). to attorney for correction re: Local counsel needs to file PHV application. (cdg) (Entered: 04/09/2021) |
| 04/08/2021 | 88 | | RESPONSE re 75 MOTION for Protective Order filed by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Smith, Ray) (Entered: 04/08/2021) |
| 04/08/2021 | 87 | | APPLICATION for Admission of Torryn Taylor Pro Hac Vice (Application fee $ 150, receipt number AGANDC–10887426).by Fair Fight, Inc., Jane Doe, John Doe. (Taylor, Torryn) Documents for this entry are not available for viewing outside the courthouse. (Entered: 04/08/2021) |
| 04/06/2021 | 86 | | ORDER granting 85 Motion for Extension of Time and extends Plaintiffs' deadline for expert disclosures to 30 days after OpSec Group, LLC produces |

|  |  |  | the requested information to Plaintiffs. Defendants shall thereafter have 30 days to respond to Plaintiffs' expert disclosures and Plaintiffs shall have 14 days to submit a rebuttal report, as already contemplated in the parties' proposed scheduling order. Signed by Judge Steve C. Jones on 4/6/2021. (rjc) (Entered: 04/06/2021) |
|---|---|---|---|
| 04/05/2021 | 85 |  | Unopposed MOTION for Extension of Time Deadline for Expert Witness Disclosures by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Nkwonta, Uzoma) (Entered: 04/05/2021) |
| 04/05/2021 | 84 |  | RESPONSE re 81 Suggestion of Mootness filed by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Nkwonta, Uzoma) Modified on 4/6/2021 (rjc). (Entered: 04/05/2021) |
| 04/02/2021 |  |  | Clerk's Certificate of Mailing to Jacob Shelly re 83 Order on Application for Admission PHV. (rjc) (Entered: 04/02/2021) |
| 04/02/2021 | 83 |  | ORDER granting 78 Application for Admission Pro Hac Vice for Jacob Shelly. Signed by Judge Steve C. Jones on 4/2/2021. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(rjc) (Entered: 04/02/2021) |
| 04/02/2021 | 81 |  | RESPONSE re 48 MOTION to Dismiss *Suggestion of Mootness* filed by James Cooper, James Cooper, Mark Davis, Mark Davis, Catherine Engelbrecht, Catherine Engelbrecht, Ron Johnson, Ron Johnson, Derek Somerville, Derek Somerville, True the Vote, Inc., True the Vote, Inc., Mark Williams, Mark Williams. (Smith, Ray) (Entered: 04/02/2021) |
| 03/31/2021 | 82 |  | AMENDED COUNTERCLAIM STRICKEN PER 60 ORDER –– ANSWER to 73 Amended Complaint, COUNTERCLAIM against Stacey Abrams, Scott Berson, Fair Fight Action, Inc., Fair Fight, Inc., Jocelyn Heredia, Jane Doe filed by True the Vote, Inc., Ron Johnson, Catherine Engelbrecht, Derek Somerville, Mark Williams, James Cooper, Mark Davis.(ddm) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions. Modified on 4/2/2021 to edit docket link (ddm). Modified on 8/17/2021 (ddm). (Entered: 04/02/2021) |
| 03/31/2021 | 80 |  | **DOCUMENT FILED INCORRECTLY. CORRECTLY FILED AT DOC. 82** ANSWER to 73 Amended Complaint , COUNTERCLAIM *Plaintiffs, Fair Fight Action, Inc., and Stacey Abrams* against James Cooper, Ron Johnson, True the Vote, Inc., Mark Williams by True the Vote, Inc., Ron Johnson, James Cooper, Catherine Engelbrecht, Derek Somerville, Mark Williams, Mark Davis.(Smith, Ray) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions. Modified on 4/2/2021 (rjc). (Entered: 03/31/2021) |
| 03/30/2021 |  |  | APPROVAL by Clerks Office re: 78 APPLICATION for Admission of Jacob Shelly Pro Hac Vice (Application fee $ 150, receipt number AGANDC–10862152).Attorney Jacob Shelly added appearing on behalf of Scott Berson, Fair Fight, Jocelyn Heredia, Jane Doe, John Doe (cdg) (Entered: 03/30/2021) |
| 03/30/2021 | 79 |  | CERTIFICATE OF SERVICE *of Discovery Materials* by True the Vote, Inc., Mark Williams.(Smith, Ray) (Entered: 03/30/2021) |

| 03/29/2021 | 78 | | APPLICATION for Admission of Jacob Shelly Pro Hac Vice (Application fee $ 150, receipt number AGANDC−10862152).by Scott Berson, John Doe, Fair Fight Action, Inc., Fair Fight, Inc., Fair Fight, Inc., Jocelyn Heredia, Jane Doe, Jane Doe. (Lawrence, Allegra) Documents for this entry are not available for viewing outside the courthouse. (Entered: 03/29/2021) |
| 03/29/2021 | 77 | | CERTIFICATE OF SERVICE *of Discovery Materials* by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe.(Nkwonta, Uzoma) (Entered: 03/29/2021) |
| 03/26/2021 | 76 | | CERTIFICATE OF SERVICE *of Discovery Materials* by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe.(Nkwonta, Uzoma) (Entered: 03/26/2021) |
| 03/26/2021 | 75 | | MOTION for Protective Order by Scott Berson, Fair Fight, Inc., Jocelyn Heredia, Jane Doe. (Attachments: # 1 Exhibit A to Motion for Protective Order)(Nkwonta, Uzoma) (Entered: 03/26/2021) |
| 03/24/2021 | | | Submission of 48 MOTION to Dismiss to District Judge Steve C. Jones. (rjs) (Entered: 03/24/2021) |
| 03/24/2021 | 74 | | CERTIFICATE OF SERVICE *of Defendants' Mark Williams and True the Vote, Inc.'s Discovery Materials* by Mark Davis, True the Vote, Inc..(Smith, Ray) (Entered: 03/24/2021) |
| 03/22/2021 | 73 | | First AMENDED COMPLAINT against James Cooper, Mark Davis, Catherine Engelbrecht, John Does 1−10, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams filed by Jane Doe, Fair Fight, Inc., Scott Berson, Jocelyn Heredia. (Attachments: # 1 Exhibit 1 to First Amended Complaint, # 2 Exhibit 2 to First Amended Complaint, # 3 Exhibit 3 to First Amended Complaint, # 4 Exhibit 4 to First Amended Complaint, # 5 Exhibit 5 to First Amended Complaint, # 6 Exhibit 6 to First Amended Complaint, # 7 Exhibit 7 to First Amended Complaint, # 8 Exhibit 8 to First Amended Complaint)(Nkwonta, Uzoma) Please visit our website at http://www.gand.uscourts.gov/commonly−used−forms to obtain Pretrial Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 03/22/2021) |
| 03/22/2021 | 72 | | ORDER granting 66 Motion for Leave to File. Counsel for Plaintiffs shall file the Amended Complaint within five (5) calendar days of the entry of this Order. Signed by Judge Steve C. Jones on 3/22/2021. (rjs) (Entered: 03/22/2021) |
| 03/18/2021 | 71 | | REPLY to Response to Motion re 48 MOTION to Dismiss filed by Fair Fight, Inc., Jane Doe, John Doe. (Nkwonta, Uzoma) (Entered: 03/18/2021) |
| 03/16/2021 | 70 | | CERTIFICATE OF SERVICE *of Defendants' Discovery Materials* by James Cooper, Mark Davis, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams.(Smith, Ray) (Entered: 03/16/2021) |
| 03/15/2021 | 69 | | CERTIFICATE OF SERVICE *of Discovery Materials by Non−Parties* by B.J. Van Gundy, Cindy Morley, David Clark, Jason Shepherd, Larry Reynolds, Seanie Zappendorf.(Smith, Ray) (Entered: 03/15/2021) |
| 03/11/2021 | 68 | | CERTIFICATE OF SERVICE *of Discovery Materials by Non−Party Carloline Jefferds* by Carloline Jefferds.(Smith, Ray) (Entered: 03/11/2021) |

| 03/10/2021 | 67 | | ELEVENTH AMENDMENT TO GENERAL ORDER 20–01 RE: COURT OPERATIONS UNDER THE EXIGENT CIRCUMSTANCES CREATED BY COVID–19 AND RELATED CORONAVIRUS. Signed by Judge Thomas W. Thrash, Jr. on 03/09/2021 (dgs) (ADI) (Entered: 03/10/2021) |
|---|---|---|---|
| 03/10/2021 | 66 | | Consent MOTION for Leave to File First Amended Complaint by Fair Fight, Inc., Jane Doe, John Doe. (Attachments: # 1 Exhibit A – First Amended Complaint, # 2 Exhibit 1 to First Amended Complaint, # 3 Exhibit 2 to First Amended Complaint, # 4 Exhibit 3 to First Amended Complaint, # 5 Exhibit 4 to First Amended Complaint, # 6 Exhibit 5 to First Amended Complaint, # 7 Exhibit 6 to First Amended Complaint, # 8 Exhibit 7 to First Amended Complaint, # 9 Exhibit 8 to First Amended Complaint, # 10 Text of Proposed Order)(Nkwonta, Uzoma) (Entered: 03/10/2021) |
| 03/09/2021 | 65 | | CERTIFICATE OF SERVICE *of Discovery Materials* by Fair Fight, Inc., Jane Doe, John Doe.(Nkwonta, Uzoma) (Entered: 03/09/2021) |
| 03/05/2021 | 64 | | RESPONSE in Opposition re 48 MOTION to Dismiss *Defendants' Counterclaims* filed by James Cooper, James Cooper, Mark Davis, Mark Davis, Catherine Engelbrecht, Catherine Engelbrecht, Ron Johnson, Ron Johnson, Derek Somerville, Derek Somerville, True the Vote, True the Vote, Inc., True the Vote, Inc., Mark Williams, Mark Williams. (Smith, Ray) (Entered: 03/05/2021) |
| 03/04/2021 | 63 | | CERTIFICATE OF SERVICE *of Discovery Materials* by Fair Fight, Inc., Jane Doe, John Doe.(Nkwonta, Uzoma) (Entered: 03/04/2021) |
| 03/02/2021 | 62 | | CERTIFICATE OF SERVICE *of Discovery Materials* by Fair Fight, Inc., Jane Doe, John Doe.(Nkwonta, Uzoma) (Entered: 03/02/2021) |
| 02/23/2021 | 61 | | NOTICE by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, True the Vote, Inc., Mark Williams (Attachments: # 1 Exhibit 1)(Smith, Ray) (Entered: 02/23/2021) |
| 02/23/2021 | 60 | | NOTICE by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, True the Vote, Inc., Mark Williams (Attachments: # 1 Exhibit 1)(Smith, Ray) (Entered: 02/23/2021) |
| 02/19/2021 | 59 | | CERTIFICATE OF SERVICE *of Discovery Materials* by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams.(Smith, Ray) (Entered: 02/19/2021) |
| 02/10/2021 | 58 | | CERTIFICATE OF SERVICE *of Discovery Materials* by Fair Fight, Inc., Jane Doe, John Doe.(Nkwonta, Uzoma) (Entered: 02/10/2021) |
| 02/10/2021 | 57 | | ORDER granting in part 56 Motion for Extension of Time. Defendants' Response in Opposition to the Motion to Dismiss Defendants' Counterclaims is due on or before March 5, 2021. Signed by Judge Steve C. Jones on 2/10/2021. (rjs) (Entered: 02/10/2021) |
| 02/09/2021 | 56 | | MOTION for Extension of Time re: 48 MOTION to Dismiss by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Attachments: # 1 Text of Proposed Order)(Smith, Ray) (Entered: 02/09/2021) |
| 02/08/2021 | 55 | | |

| | | | |
|---|---|---|---|
| | | | Initial Disclosures by Fair Fight, Inc., Jane Doe, John Doe.(Nkwonta, Uzoma) (Entered: 02/08/2021) |
| 02/08/2021 | 54 | | JOINT PRELIMINARY REPORT AND DISCOVERY PLAN filed by Fair Fight, Inc., Jane Doe, John Doe. (Attachments: # 1 Exhibit Rule 26(f) Jurisdictional Statement)(Nkwonta, Uzoma) (Entered: 02/08/2021) |
| 02/08/2021 | 53 | | Initial Disclosures by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Attachments: # 1 Exhibit)(Smith, Ray) (Entered: 02/08/2021) |
| 02/08/2021 | 52 | | NOTICE by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, True the Vote, Inc., Mark Williams *of Withdrawal of Counsel Robert Citak Only* (Smith, Ray) (Entered: 02/08/2021) |
| 02/05/2021 | | | Clerk's Certificate of Mailing to Joel J. Ramirez re 51 Order on Application for Admission PHV. (rjs) (Entered: 02/05/2021) |
| 02/05/2021 | 51 | | ORDER granting 50 Application for Admission Pro Hac Vice for Joel J. Ramirez. Signed by Judge Steve C. Jones on 2/5/2021. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(rjs) (Entered: 02/05/2021) |
| 02/05/2021 | | | APPROVAL by Clerks Office re: 50 APPLICATION for Admission of Joel J. Ramirez Pro Hac Vice (Application fee $ 150, receipt number AGANDC–10680088). Attorney Joel J. Ramirez added appearing on behalf of Fair Fight, Inc., Fair Fight, Inc. (cdg) (Entered: 02/05/2021) |
| 02/02/2021 | 50 | | APPLICATION for Admission of Joel J. Ramirez Pro Hac Vice (Application fee $ 150, receipt number AGANDC–10680088).by Fair Fight, Inc., Jane Doe, John Doe. (Lawrence, Allegra) Documents for this entry are not available for viewing outside the courthouse. (Entered: 02/02/2021) |
| 01/29/2021 | 49 | | Certificate of Interested Persons by Fair Fight Action, Inc.. (Nkwonta, Uzoma) (Entered: 01/29/2021) |
| 01/29/2021 | 48 | | MOTION to Dismiss with Brief In Support by Fair Fight Action, Inc., Fair Fight, Inc., Jane Doe, John Doe. (Attachments: # 1 Brief in Support)(Nkwonta, Uzoma) (Entered: 01/29/2021) |
| 01/28/2021 | 47 | | TENTH AMENDMENT TO GENERAL ORDER 20–01 RE: COURT OPERATIONS UNDER THE EXIGENT CIRCUMSTANCES CREATED BY COVID–19 AND RELATED CORONAVIRUS. Signed by Judge Thomas W. Thrash, Jr. on 01/27/2021. (dgs) (ADI) (Entered: 01/28/2021) |
| 01/26/2021 | 46 | | TRANSCRIPT of Proceedings held on 12/31/2020, before Judge Steve C. Jones. Court Reporter/Transcriber Jana B. Colter, FAPR, RMR, CRR, CRC. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory–court–reporters. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/16/2021. Redacted Transcript Deadline set for 2/26/2021. Release of Transcript Restriction set for 4/26/2021. (Attachments: # 1 Notice of Filing Transcript) (jbc) (Entered: 01/26/2021) |

| 01/25/2021 | 45 | | WAIVER OF SERVICE Returned Executed by Fair Fight Action, Inc.. Fair Fight Action, Inc. waiver mailed on 1/8/2021, answer due 3/9/2021. (Lawrence, Allegra) (Entered: 01/25/2021) |
|---|---|---|---|
| 01/22/2021 | 44 | | Certificate of Interested Persons by Fair Fight, Inc., Jane Doe, John Doe. (Lawrence, Allegra) (Entered: 01/22/2021) |
| 01/22/2021 | 43 | | Amended Certificate of Interested Persons by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Smith, Ray) (Entered: 01/22/2021) |
| 01/22/2021 | 42 | | Certificate of Interested Persons by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Inc., Mark Williams. (Smith, Ray) (Entered: 01/22/2021) |
| 01/08/2021 | 41 | | REQUEST FOR WAIVER of Service mailed to Glen Paul Freedman on 1/8/2021. (Smith, Ray) (Entered: 01/08/2021) |
| 01/08/2021 | 40 | | ANSWER to 1 COMPLAINT ( Discovery ends on 6/7/2021.), COUNTERCLAIM against Fair Fight, Inc., Fair Fight Action, Inc, John Doe, and Jane Doe by True the Vote, Inc., Ron Johnson, Catherine Engelbrecht, Mark Williams, James Cooper, Derek Somerville, Mark Davis. (Attachments: # 1 Exhibit A, # 2 Affidavit Verification of Ron Johnson, # 3 Affidavit Verification of C. Engelbrecht, # 4 Affidavit Verification of Mark Williams)(Smith, Ray) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions. Modified on 1/11/2021 (rjs). (Entered: 01/08/2021) |
| 01/05/2021 | | | Clerk's Certificate of Mailing to Jeffrey P. Gallant re 39 Order on Application for Admission PHV. (rjs) (Entered: 01/05/2021) |
| 01/05/2021 | 39 | | ORDER granting 19 Application for Admission Pro Hac Vice for Jeffrey P. Gallant. Signed by Judge Steve C. Jones on 1/5/2021. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(rjs) (Entered: 01/05/2021) |
| 01/05/2021 | | | Clerk's Certificate of Mailing to Courtney Turner Milbank re 38 Order on Application for Admission PHV. (rjs) (Entered: 01/05/2021) |
| 01/05/2021 | 38 | | ORDER granting 18 Application for Admission Pro Hac Vice for Courtney Turner Milbank. Signed by Judge Steve C. Jones on 1/5/2021. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(rjs) (Entered: 01/05/2021) |
| 01/05/2021 | | | Clerk's Certificate of Mailing to Melena Siebert re 37 Order on Application for Admission PHV. (rjs) (Entered: 01/05/2021) |
| 01/05/2021 | 37 | | ORDER granting 17 Application for Admission Pro Hac Vice for Melena Siebert. Signed by Judge Steve C. Jones on 1/5/2021. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(rjs) (Entered: 01/05/2021) |
| 01/05/2021 | | | |

| | | | |
|---|---|---|---|
| | | | Clerk's Certificate of Mailing to James Bopp, Jr. re <u>36</u> Order on Application for Admission PHV. (rjs) (Entered: 01/05/2021) |
| 01/05/2021 | <u>36</u> | | ORDER granting <u>16</u> Application for Admission Pro Hac Vice for James Bopp, Jr. Signed by Judge Steve C. Jones on 1/5/2021. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(rjs) (Entered: 01/05/2021) |
| 01/05/2021 | | | Clerk's Certificate of Mailing to Thomas Tobin re <u>35</u> Order on Application for Admission PHV. (rjs) (Entered: 01/05/2021) |
| 01/05/2021 | <u>35</u> | | ORDER granting <u>14</u> Application for Admission Pro Hac Vice for Thomas Tobin. Signed by Judge Steve C. Jones on 1/5/2021. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(rjs) (Entered: 01/05/2021) |
| 01/05/2021 | <u>34</u> | | ORDER granting <u>10</u> Application for Admission Pro Hac Vice for Marc E Elias. Signed by Judge Steve C. Jones on 1/5/2021. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(rjs) (Entered: 01/05/2021) |
| 01/05/2021 | | | APPROVAL by Clerks Office re: <u>19</u> APPLICATION for Admission of Jeffrey P. Gallant Pro Hac Vice (Application fee $ 150, receipt number AGANDC–10548045). Attorney Jeffrey P. Gallant added appearing on behalf of Fair Fight, Inc., Jane Doe, John Doe (cdg) (Entered: 01/05/2021) |
| 01/05/2021 | | | APPROVAL by Clerks Office re: <u>18</u> APPLICATION for Admission of Courtney Turner Milbank Pro Hac Vice (Application fee $ 150, receipt number AGANDC–10548012). Attorney Courtney Turner Milbank added appearing on behalf of Fair Fight, Inc., Jane Doe, John Doe (cdg) (Entered: 01/05/2021) |
| 01/05/2021 | | | APPROVAL by Clerks Office re: <u>16</u> APPLICATION for Admission of James Bopp, Jr. Pro Hac Vice (Application fee $ 150, receipt number AGANDC–10547965). Attorney James Bopp, Jr. added appearing on behalf of Fair Fight, Inc., Jane Doe, John Doe (cdg) (Entered: 01/05/2021) |
| 01/05/2021 | | | APPROVAL by Clerks Office re: <u>17</u> APPLICATION for Admission of Melena Siebert Pro Hac Vice (Application fee $ 150, receipt number AGANDC–10547995). Attorney Melena Siebert added appearing on behalf of Fair Fight, Inc., Jane Doe, John Doe (cdg) (Entered: 01/05/2021) |
| 01/05/2021 | | | RETURN of <u>20</u> APPLICATION for Admission of Rob Citak Pro Hac Vice (Application fee $ 150, receipt number AGANDC–10548060). to attorney for correction re: Petitioner's name. (cdg) (Entered: 01/05/2021) |
| 01/05/2021 | | | APPROVAL by Clerks Office re: <u>10</u> APPLICATION for Admission of Marc Elias Pro Hac Vice (Application fee $ 150, receipt number AGANDC–10542544). Attorney Marc E. Elias added appearing on behalf of Fair Fight, Inc., Jane Doe, John Doe (cdg) (Entered: 01/05/2021) |
| 01/04/2021 | | | APPROVAL by Clerks Office re: <u>14</u> APPLICATION for Admission of Thomas Tobin Pro Hac Vice (Application fee $ 150, receipt number AGANDC–10544180). Attorney Thomas Tobin added appearing on behalf of |

| | | | |
|---|---|---|---|
| | | | Fair Fight, Inc., Jane Doe, John Doe (cdg) (Entered: 01/04/2021) |
| 01/04/2021 | 33 | | ORDER granting 13 Application for Admission Pro Hac Vice for Molly Mitchell. Signed by Judge Steve C. Jones on 1/4/2021. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(rjs) (Entered: 01/04/2021) |
| 01/04/2021 | 32 | | ORDER granting 12 Application for Admission Pro Hac Vice for Aria C. Branch. Signed by Judge Steve C. Jones on 1/4/2021. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(rjs) (Entered: 01/04/2021) |
| 01/04/2021 | | | Clerk's Certificate of Mailing to Christina Ashley Ford re 31 Order on Application for Admission PHV. (rjs) (Entered: 01/04/2021) |
| 01/04/2021 | 31 | | ORDER granting 9 Application for Admission Pro Hac Vice for Christina Ashley Ford. Signed by Judge Steve C. Jones on 1/4/2021. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(rjs) (Entered: 01/04/2021) |
| 01/04/2021 | 30 | | ORDER granting 8 Application for Admission Pro Hac Vice fopr Uzoma N Nkwonta. Signed by Judge Steve C. Jones on 1/4/2021. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(rjs) (Entered: 01/04/2021) |
| 01/04/2021 | | | APPROVAL by Clerks Office re: 13 APPLICATION for Admission of Molly Mitchell Pro Hac Vice (Application fee $ 150, receipt number AGANDC−10544176). Attorney Molly Elizabeth Mitchell added appearing on behalf of Fair Fight, Inc., Jane Doe, John Doe (cdg) (Entered: 01/04/2021) |
| 01/04/2021 | | | APPROVAL by Clerks Office re: 12 APPLICATION for Admission of Aria Branch Pro Hac Vice (Application fee $ 150, receipt number AGANDC−10544170). Attorney Aria Christine Branch added appearing on behalf of Fair Fight, Inc., Jane Doe, John Doe (cdg) (Entered: 01/04/2021) |
| 01/04/2021 | | | APPROVAL by Clerks Office re: 9 APPLICATION for Admission of Christina Ford Pro Hac Vice (Application fee $ 150, receipt number AGANDC−10542514).. Attorney Aria Christine Branch added appearing on behalf of Fair Fight, Inc., Jane Doe, John Doe (cdg) (Entered: 01/04/2021) |
| 01/04/2021 | | | APPROVAL by Clerks Office re: 8 APPLICATION for Admission of Uzoma N Nkwonta Pro Hac Vice (Application fee $ 150, receipt number AGANDC−10542404). Attorney Uzoma Nkwonta added appearing on behalf of Fair Fight, Inc., Jane Doe, John Doe (cdg) (Entered: 01/04/2021) |
| 01/01/2021 | 29 | | ORDER: the Court GRANTS Plaintiffs' Motion to Proceed Anonymously 2 and DENIES Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction 11 . While this Court denies Plaintiffs' motion for injunctive relief, this case is not yet over. As this Court has expressed clearly, an eleventh−hour challenge to the franchise of more than 360,000 Georgians is suspect. So too is the manner in which Defendants mounted their challenges. |

| | | | |
|---|---|---|---|
| | | | The Court will not abide attempts to sidestep federal law to disenfranchise voters. Nor will it tolerate actors brandishing these voter challenges to intimidate and diminish the franchise, for such acts diminish democracy itself. But the Court must rely on proper evidence and facts to determine whether these acts have in fact run afoul of federal law. The Court looks forward to seeing what evidence the Parties bring to bear. Signed by Judge Steve C. Jones on 1/01/2021. (pdw) (Entered: 01/01/2021) |
| 01/01/2021 | 28 | | ORDER: Pursuant to Federal Rule of Civil Procedure 21, the Court adds True the Vote, Inc. as a named party−defendant to this case and drops (or otherwise terminates) True the Vote as a named party−defendant.In light of such, the Motion to Dismiss for Insufficient Process under Rule 12(b)(4) 23 is DEEMED MOOT. Signed by Judge Steve C. Jones on 1/01/2021. (pdw) (Entered: 01/01/2021) |
| 01/01/2021 | 27 | | COURT'S NOTICE Of Filing Defendants' response to 26 Plaintiffs' court−redacted Declarations. (pdw) (Entered: 01/01/2021) |
| 01/01/2021 | 26 | | COURT'S NOTICE Of Filing Plaintiffs' court−redacted Declarations dated 12/31/2020. (pdw) (Entered: 01/01/2021) |
| 12/31/2020 | 25 | | Minute Entry for proceedings held before Judge Steve C. Jones: Motion Hearing held on 12/31/2020 via Zoom. Oral argument heard. Motions taken under advisement by the Court, with order to follow. (Court Reporter Jana Colter)(rjs) (Entered: 12/31/2020) |
| 12/31/2020 | 24 | | NOTICE Of Filing Supplemental Authority in Support of 21 Response in Opposition to the 11 MOTION for Temporary Restraining Order by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Mark Williams. (Attachments: # 1 Exhibit A)(Smith, Ray) Modified on 12/31/2020 (rjs). (Entered: 12/31/2020) |
| 12/30/2020 | 23 | | MOTION to Dismiss *for Insufficient Process Under Rule 12(b)(4)* with Brief In Support by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Mark Williams. (Smith, Ray) (Entered: 12/30/2020) |
| 12/30/2020 | 22 | | RESPONSE in Opposition re 2 MOTION to Proceed Anonymously filed by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Mark Williams. (Smith, Ray) (Entered: 12/30/2020) |
| 12/30/2020 | 21 | | RESPONSE in Opposition re 11 MOTION for Temporary Restraining Order IMMEDIATE HEARING REQUESTED filed by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Mark Williams. (Smith, Ray) (Entered: 12/30/2020) |
| 12/30/2020 | 20 | | APPLICATION for Admission of Rob Citak Pro Hac Vice (Application fee $ 150, receipt number AGANDC−10548060).by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Mark Williams. (Smith, Ray) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/30/2020) |
| 12/30/2020 | 19 | | APPLICATION for Admission of Jeffrey P. Gallant Pro Hac Vice (Application fee $ 150, receipt number AGANDC−10548045).by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, |

| | | | |
|---|---|---|---|
| | | | Mark Williams. (Smith, Ray) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/30/2020) |
| 12/30/2020 | 18 | | APPLICATION for Admission of Courtney Turner Milbank Pro Hac Vice (Application fee $ 150, receipt number AGANDC−10548012).by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Mark Williams. (Smith, Ray) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/30/2020) |
| 12/30/2020 | 17 | | APPLICATION for Admission of Melena Siebert Pro Hac Vice (Application fee $ 150, receipt number AGANDC−10547995).by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Mark Williams. (Smith, Ray) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/30/2020) |
| 12/30/2020 | 16 | | APPLICATION for Admission of James Bopp, Jr. Pro Hac Vice (Application fee $ 150, receipt number AGANDC−10547965).by James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Mark Williams. (Smith, Ray) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/30/2020) |
| 12/29/2020 | 15 | | NOTICE of Appearance by Ray Stallings Smith, III on behalf of James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Mark Williams (Smith, Ray) (Entered: 12/29/2020) |
| 12/29/2020 | 14 | | APPLICATION for Admission of Thomas Tobin Pro Hac Vice (Application fee $ 150, receipt number AGANDC−10544180).by Fair Fight, Inc., Jane Doe, John Doe. (Lawrence, Allegra) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/29/2020) |
| 12/29/2020 | 13 | | APPLICATION for Admission of Molly Mitchell Pro Hac Vice (Application fee $ 150, receipt number AGANDC−10544176).by Fair Fight, Inc., Jane Doe, John Doe. (Lawrence, Allegra) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/29/2020) |
| 12/29/2020 | 12 | | APPLICATION for Admission of Aria Branch Pro Hac Vice (Application fee $ 150, receipt number AGANDC−10544170).by Fair Fight, Inc., Jane Doe, John Doe. (Lawrence, Allegra) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/29/2020) |
| 12/29/2020 | 11 | | MOTION for Temporary Restraining Order IMMEDIATE HEARING REQUESTED with Brief In Support by Fair Fight, Inc., Jane Doe, John Doe. (Attachments: # 1 Brief, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit, # 25 Exhibit, # 26 Exhibit, # 27 Text of Proposed Order)(Lawrence, Allegra) (Entered: 12/29/2020) |
| 12/29/2020 | 10 | | APPLICATION for Admission of Marc Elias Pro Hac Vice (Application fee $ 150, receipt number AGANDC−10542544).by Fair Fight, Inc., Jane Doe, John Doe. (Lawrence, Allegra) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/29/2020) |
| 12/29/2020 | 9 | | |

| | | |
|---|---|---|
| | | APPLICATION for Admission of Christina Ford Pro Hac Vice (Application fee $ 150, receipt number AGANDC−10542514).by Fair Fight, Inc., Jane Doe, John Doe. (Lawrence, Allegra) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/29/2020) |
| 12/29/2020 | | NOTICE OF VIDEO PROCEEDING re: 2 Plaintiffs' MOTION to Proceed Anonymously and motion for emergency injunctive relief (if filed.) Motion Hearing set for 12/31/2020 at 10:00 AM via Zoom Webinar before Judge Steve C. Jones. Connection Instructions: Please click the link below to join the webinar: https://ganduscourts.zoomgov.com/j/1618852308 Passcode: 247251 Or iPhone one−tap : US: +16692545252,,1618852308#,,,,,,0#,,247251# or +16468287666,,1618852308#,,,,,,0#,,247251# Or Telephone: Dial(for higher quality, dial a number based on your current location): US: +1 669 254 5252 or +1 646 828 7666 Webinar ID: 161 885 2308 Passcode: 247251 International numbers available: https://ganduscourts.zoomgov.com/u/aZ8FmjOeo Or an H.323/SIP room system: H.323: 161.199.138.10 (US West) or 161.199.136.10 (US East) Meeting ID: 161 885 2308 Passcode: 247251 SIP: 1618852308@sip.zoomgov.com Passcode: 247251 You must follow the instructions of the Court for remote proceedings available here. The procedure for filing documentary exhibits admitted during the proceeding is available here. *Photographing, recording, or broadcasting of any judicial proceedings, including proceedings held by video teleconferencing or telephone conferencing, is strictly and absolutely prohibited.* (pdw) (Entered: 12/29/2020) |
| 12/29/2020 | 8 | APPLICATION for Admission of Uzoma N Nkwonta Pro Hac Vice (Application fee $ 150, receipt number AGANDC−10542404).by Fair Fight, Inc., Jane Doe, John Doe. (Lawrence, Allegra) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/29/2020) |
| 12/29/2020 | 7 | ORDER: The Court will hold a virtual/Zoom hearing on Plaintiffs' Motion to Proceed Anonymously (Doc. No. 2 ) on THURSDAY, DECEMBER 31, 2020 at 10:00 A.M. Plaintiffs shall immediately serve a copy of their motion, this Order, and Zoom log in information upon Defendants. Signed by Judge Steve C. Jones on 12/29/2020. (rjs) (Entered: 12/29/2020) |
| 12/29/2020 | 6 | ORDER: In the event that a formal motion to seek emergency injunctive relief is immediately filed by Plaintiffs, the following briefing and hearing schedule shall govern: Plaintiffs shall immediately serve their motion for preliminary injunction and complaint upon Defendants. Defendants shall file a written response brief to the motion for preliminary injunction by 5:00 P.M., WEDNESDAY, DECEMBER 30, 2020. The Court will hold a virtual/Zoom hearing on THURSDAY, DECEMBER 31, 2020 at 10:00 A.M. The Zoom log in information will issue by separate docket entry. Plaintiffs shall immediately serve a copy of this Order and Zoom log in information upon Defendants. Signed by Judge Steve C. Jones on 12/29/2020. (rjs) (Entered: 12/29/2020) |
| 12/29/2020 | | Submission of 2 MOTION to Proceed Anonymously, to District Judge Steve C. Jones. (dgr) (Entered: 12/29/2020) |
| 12/29/2020 | 5 | ORDER REASSIGNING CASE. Case reassigned to Judge Steve C. Jones for all further proceedings. Judge Richard W. Story no longer assigned to case. NOTICE TO ALL COUNSEL OF RECORD: The Judge designation in the civil action number assigned to this case has been changed to |

| | | | |
|---|---|---|---|
| | | | 2:20–cv–302–SCJ. Please make note of this change in order to facilitate the docketing of pleadings in this case. Signed by Judge Richard W. Story on 12/28/2020. (dgr) (Entered: 12/29/2020) |
| 12/28/2020 | | | Submission of 2 MOTION to Proceed Anonymously, to District Judge Richard W. Story. (aar) (Entered: 12/28/2020) |
| 12/28/2020 | 4 | | NINTH AMENDMENT TO THE GENERAL ORDER 20–01 IN RE: COURT OPERATIONS UNDER THE EXIGENT CIRCUMSTANCES CREATED BY COVID–19 AND RELATED CORONAVIRUS. Signed by Judge Thomas W. Thrash, Jr. on 12/8/2020. (dgr) (Entered: 12/28/2020) |
| 12/28/2020 | 3 | | Electronic Summons Issued as to James Cooper, Mark Davis, Catherine Engelbrecht, Ron Johnson, Derek Somerville, True the Vote, Mark Williams. (Attachments: # 1 Summons Derek Somerville, # 2 Summons James Cooper, # 3 Summons Mark Davis, # 4 Summons Mark Williams, # 5 Summons Ron Johnson, # 6 Summons True the Vote)(dgr) (Entered: 12/28/2020) |
| 12/23/2020 | 2 | | MOTION to Proceed Anonymously with Brief In Support by Fair Fight, Inc., Jane Doe, John Doe. (Attachments: # 1 Brief in Support, # 2 Text of Proposed Order)(dgr) (Entered: 12/28/2020) |
| 12/23/2020 | 1 | | COMPLAINT filed by John Doe, Jane Doe, Fair Fight, Inc. (Filing fee $402, receipt number AGANDC–10527552) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Civil Cover Sheet)(dgr) Please visit our website at http://www.gand.uscourts.gov/commonly–used–forms to obtain Pretrial Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 12/28/2020) |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

FAIR FIGHT INC., SCOTT BERSON,
JOCELYN HEREDIA, and JANE DOE,

   Plaintiffs,

v.

TRUE THE VOTE, CATHERINE
ENGELBRECHT, DEREK
SOMERVILLE, MARK DAVIS, MARK
WILLIAMS, RON JOHNSON, and
JAMES COOPER,

Defendants.

CIVIL ACTION FILE

No. 2:20-CV-00302-SCJ

## OPINION AND MEMORANDUM OF DECISION

The Court enters the following findings of fact and conclusions of law after

conducting a bench trial on Plaintiffs' claim against Defendants brought under

Section 11(b) of the Voting Rights Act. Having heard the evidence presented and

the arguments made by the Parties, the Court maintains its prior concerns about

the manner Defendants utilized O.C.G.A. § 21-2-230 to challenge individual

voters. [1] The Court, however, ultimately concludes that, as a legal matter, Plaintiffs have not carried their burden to show a violation of Section 11(b). Accordingly, the Court enters judgment in favor Defendants.

## I.    BACKGROUND

Plaintiffs filed their initial complaint on December 23, 2020. Doc. No. [1]. Plaintiffs sought an emergency temporary restraining order on December 29, 2020. Doc. No. [11]. The Court denied Plaintiffs' TRO request, but expressed concerns over Defendants' alleged actions. Doc. No. [29]. The case proceeded through discovery and eventually the Parties filed cross-motions for summary judgment. Doc. Nos. [155]; [156]. On March 9, 2023, the Court largely denied both motions for summary judgment. [2] Doc. No. [222]. The Court thereafter granted a partial motion for reconsideration on the summary judgment granted—specifically, vacating the judgment as it related to Defendant True the

---

[1] "[A]n eleventh-hour challenge to the franchise of more than 360,000 Georgians is suspect." Doc. No. [29], 29. All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

[2] While the Court was deciding the motions for summary judgment, the United States was notified pursuant to 28 U.S.C. § 2403(a) of the constitutional challenge to Section 11(b). Doc. No. [182]. The United States exercised its right to intervene in the case (Doc. No. [187]) and participated in a limited manner at the bench trial to ensure its defense of the statute.

2

Vote's voter challenges in Muscogee County. Doc. No. [235]. The Court specially set the case for a bench trial beginning on October 26, 2023, and the trial concluded on November 7, 2023. The Court took the matter under advisement and now issues this Order containing its findings of fact and conclusions of law, and its judgment in favor of Defendants.

## II.    FINDINGS OF FACT

The Court makes the following findings of fact based on the approximately 7-days of testimony and evidence adduced at the bench trial on this matter. The factual findings account for the dozens of exhibits entered in the record, primarily by Plaintiffs, which include documentary evidence, expert reports, and deposition designations of Party and non-party witnesses. See Doc. Nos. [328]; [329]. The record in this case is extensive. The Court intends to be as thorough as necessary. If evidence is excluded from the Court's discussion, however, the Court has determined that it is irrelevant or duplicative of other evidence.

The Court's findings of fact proceed as follows: (A) the Court first situates the context of this case, specifically Georgia's Senate runoff election following the 2020 general election; it then (B) makes its factual findings and credibility determinations regarding the Plaintiffs, Defendants, and witnesses in this case;

3

and finally (c) the Court summarizes and weighs its findings of fact in reference to the Defendants' actions.

### A.    Context: Georgia Prior to Senate Runoff Election in 2020

Before delving into more specific factual findings regarding the trial evidence presented, the Court first makes some general observations and findings regarding the context of Georgia's electoral landscape in the 2020 period leading to the Senate runoff election. Following the 2020 general election, neither Senate race obtained a majority of the votes. Thus, both Senate seats went to a runoff, scheduled for January 5, 2021. Not only would this election determine both of Georgia's senators, but the results would also determine which political party controlled the Senate.

As indicated in greater detail *infra*, a number of groups commenced efforts to make voter challenges under Georgia law based on a concern over the accuracy of the voter rolls. At the time of the Senate runoff election, O.C.G.A. 21-2-230(a) provided that "[a]ny elector" in a county "may challenge the right of any other elector" to vote in that county.[3]  The challenge itself must "specify distinctly the

_____

[3] The Georgia General Assembly has since amended O.C.G.A. § 21-2-230(a) (2021) to clarify the temporal limitations on voter challenges and to further indicate that there is

grounds of such challenge." <u>O.C.G.A. § 21-2-230(a)</u>. Once a challenge had been made, then the county Board of Elections must "immediately consider such challenge and determine whether probable cause exists to sustain such challenge." <u>O.C.G.A. § 21-2-230(b)</u>. Depending on the probable cause finding, the statute then further dictates how county Boards of Elections are to proceed under various voting scenarios. <u>See generally</u> <u>O.C.G.A. § 21-230(b)–(i)</u>.

Georgia's Section 230 voter challenges are one way in which voter rolls may be scrutinized[4] close to an election. Tr.[5] 513:5–8. The National Voter Registration Act (NVRA) regulates states' voter rolls maintenance programs,

---

no numerical limitation on voter challenges that can be submitted. The Court takes judicial notice that a number of lawsuits have been filed challenging the new Georgia law (S.B. 202), and that Section 230 itself (as amended) has been challenged as unconstitutional. <u>See</u>, <u>e.g.</u>, <u>The New Ga. Project et al. v. Raffensperger et al.</u>, 1:21-cv-01229-JPB (N.D. Ga.), ECF No. [39], ¶¶ 106–107 (consolidated <u>In re: Georgia Senate Bill 202</u>, 1:21-mi-55555-JPB). This other case has not yet been resolved and the instant case does not challenge the constitutionality of Section 230. Thus the Court avoids opining on any constitutional questions in this Order as they are not necessary for the case's resolution.

[4]  A Section 230 challenge does not have the effect of *removing* any voter from a voter roll. <u>Cf.</u>, <u>e.g.</u>, Tr. 506:6–13 (indicating that if no probable cause is found for the Section 230 challenge, then no further action is taken on the challenge).

[5]  The Court refers to the trial transcript with a "Tr." citation. The trial transcripts may be found at Doc. Nos. [310]–[316] & [320]–[327]. Plaintiffs' proposed findings of fact and conclusions of law include a helpful chart organizing the different transcript filings. Doc. No. [318], 6 n.1.

5

generally and specifically for this case, in the 90-day period before an election. In this 90-day "quiet period," states cannot "systematically remove the names of ineligible voters." 52 U.S.C § 20507(c)(2)(A). The quiet period reflects a concern to be "more cautious" of systematic removals immediately before an election because they are inherently more erroneous and there is less time to correct errors. Arcia v. Fla. Sec'y of State, 772 F.3d 1335, 1346 (11th Cir. 2014). The NVRA also outlines the process that states must use to remove a voter based on residency information (such as that obtained from secondary sources, like the United States Postal Service's National Change of Address (NCOA) data). 52 U.S.C. § 20507(d).

**B.    Factual Findings on the Relevant Parties and Witnesses**

The Court now makes its factual findings and credibility determinations on (1) the Parties in this case: (a) Plaintiffs, specifically (1) Fair Fight, Inc., (2) Scott Berson, (3) Jocelyn Heredia, and (4) Jane Doe, and (b) Defendants, (1) True the Vote, Inc., (2) Catherine Engelbrecht, (3) Derek Somerville, (4) Mark Davis, (5) Mark Williams, (6) Ron Johnson, and (7) James Cooper.

The Court then makes its factual findings and credibility determinations of (2) the fact witnesses who testified at trial: (a) Gamaliel Turner, (b) Stephanie

6

Stinetorf, (c) Ryan Germany, (d) Clair Joseph Martin (submitted by video deposition), and (e) Amy Holsworth.

Next the Court makes its determinations and credibility findings as to (3) Plaintiffs' expert witnesses: (a) Dr. Kenneth Mayer and (b) Dr. Orville Burton.

### 1. Parties in the Case

The Court now makes its factual findings as to the Parties in this case, discussing Plaintiffs first and then Defendants.

### a) Plaintiffs

The named Plaintiffs in this case include Fair Fight, Inc., Scott Berson, Jocelyn Heredia, and Jane Doe. All but Jane Doe testified at trial. For Jane Doe, Plaintiffs submitted deposition designations and other evidentiary evidence—a decision which the Court addresses in greater depth *infra*.

### (1) Fair Fight, Inc.

Plaintiff Fair Fight, Inc. is a national organization that focuses its voter empowerment work primarily in Georgia. Tr 43:14-44:8. At trial, Fair Fight had its current executive director (and prior managing director), Cianti Stewart-Reid, testify as its representative, largely for purposes of establishing the organization's standing in this case. Tr. 43:7–13. The Court makes the following factual

7

determinations with regard to Fair Fight, Inc.'s activities, perceptions, and responses to Defendants—namely True the Vote—in this case.

In the 2020 general election, Fair Fight engaged in its typical voter empowerment work. Tr. 47:16–48:1. When Georgia's Senate races went to a runoff, Fair Fight sought to continue its efforts leading up to the Senate runoff election. Tr. 48:2–25. However, Fair Fight instead redirected its actions to responding to TTV's anticipated actions (which it discovered through TTV's online press releases) of offering of a "bounty" for reports of voter fraud, establishing a voter fraud hotline, monitoring absentee drop off ballot boxes, and announcing "hundreds of thousands of voter challenges" to be made under Georgia law, Section 230. Tr. 49:1–15; PX 35, PX 42. Fair Fight perceived these activities to be "frightening and threatening." Tr. 51:5.

In particular reference to the Section 230 voter challenges, Fair Fight's concern centered on the proximity of the challenges to the election and the "vast number" of challenges made. Tr. 52:10–17. Fair Fight received calls from challenged voters who "felt this activity was threatening." Tr. 52:20–22. In response, Fair Fight sought to obtain the lists of challenged voters and contact

8

these voters to provide resources and support.[6] Tr. 52:25–54:25. In the period between the 2020 general and Senate runoff elections, Fair Fight continued to monitor True the Vote's activities (Tr. 53:21–25) and provided support to county Boards of Elections for the mass challenges (Tr. 59:5–10).

Fair Fight utilized several existing teams and volunteers who otherwise would have been doing voter empowerment work, conducting election research, and contacting voters. Tr. 55:1–58:24. As a consequence, Fair Fight was not able to engage in its ordinary work leading to the Senate runoff election in the way it intended. Tr. 57:23–58:2.

Since the 2020 runoff election, Fair Fight has "formalized" its response to TTV in a program named "Democracy Watch," which sends volunteers to counties to advocate for increased voting opportunities and to be able to anticipate voter challenges. Tr. 62:16–17. It also has been monitoring True the Vote's activities, in particular a program named "IV3" which Fair Fight expects to facilitate more voter challenges in the future. Tr. 63:11–64:1.

---

[6] Stewart-Reid testified that she did not know of any lists obtained from sources outside the county Boards of Elections and did not know of any challenge lists coming from groups or individuals other than True the Vote. Tr. 53:5–19, 78:15–21.

9

As a factual matter, the Court found Stewart-Reid's testimony on behalf of Fair Fight to be credible. The Court considers and will weigh her testimony accordingly in rendering its legal conclusions.

### (2)   Scott Berson

In 2020, Plaintiff Scott Berson was a Muscogee County voter who was challenged in the Georgia Senate runoff election.[7] Tr. 97:1–2. Berson had lived in Georgia since 1999 (Tr. 82:7–8) but, at the time of the Senate runoff election, he was attending graduate school at Auburn University in Alabama. Tr. 87:14–21. Part of the reason he chose to attend Auburn University was its proximity to his home in Georgia, which he frequently visited while attending Auburn. Tr. 88:9–13, 91:18–21. While at Auburn, Berson maintained his Georgia driver license, car registration, and voter registration. Tr. 89:1–23; see also Tr. 90:23–25 ("[I]t never crossed my mind. I always considered myself a Georgian, and a Columbusite is how they say it. I never intended to become an Alabama resident."). He did change his mailing address to his apartments in Alabama (Tr.

---

[7] Since 2020, Berson has moved out of the State of Georgia for personal reasons unrelated to this litigation. Tr. 81:20–23. Berson admits that he has moved a lot in the past decade. Tr. 120:10–18.

10

89:24–90:1), but always intended to return to Muscogee County once he completed his studies (Tr. 93:2–6).

Berson voted in the 2020 primary and general elections without incident. Tr. 92:9–16. He planned to and eventually attempted to vote in-person for the Senate runoff election. Tr. 95:13–17. Prior to voting in the Senate runoff election, Berson read a news article about voter challenges for people with out-of-state mailing addresses. Tr. 95:21–96:23. He later received a phone call from a "community organizing group" informing him that he had been challenged as a Muscogee County voter. Tr. 97:4–15. Learning that he was a challenged voter "overwhelmed" and "discouraged" him. Tr. 97:20–21. In his words, "it was intimidating to me to be told that somebody had accused me of doing something wrong." Tr. 97:24–25. Berson was unable to remember who called him and cannot connect this phone call to any Defendant. Tr. 116:5–21. Nor could he connect Alton Russell, who submitted the Section 230 challenge against him, to Defendants. Tr. 112:9–15.

He subsequently went to vote in-person for the runoff election. While he typically voted in-person, he also thought that it would be easier to deal with his voter challenge face-to-face. Tr. 98:17–99:8. When Berson went to vote, he was

11

pulled out of line and taken aside to fill out a provisional ballot because of the voter challenge. Tr. 99:11–15. This treatment made him feel "othered" and "isolate[ed]." [8] Tr. 99:21–22. He then had to submit several pieces of documentation in support of his Muscogee County residency, which was "actually quite difficult to find" given that he was temporarily living in Alabama. Tr. 100:14–101:13. He eventually submitted his driver's license and an insurance bill to officially cast his ballot. [9] Tr. 100:11–13. The whole process of finding additional documentation took "several hours." Tr. 128:3–10. Berson testified that his chaotic personal circumstances only amplified the frustrations and difficulty of the experience. Tr. 93:5–8, 102:1–4.

---

[8]  The Court notes that Berson described his experience of being challenged as "intimidating." Tr. 97:24–25. Berson had not previously used the term "intimidating" to describe his experience in discovery. Tr. 117:5–7. The Court does not weigh heavily Berson's specific use of the term "intimidating." It otherwise credits Berson's testimony that being challenged was frustrating, inconvenient, and discouraging. The Court also accepts Berson's feeling that he had been accused of doing something wrong by being challenged, even if no one specifically or directly accused him of wrongdoing. Tr. 119:8–21, 130:3–4 ("[T]he challenge was—was an accusation that I had done something wrong in my eyes.").

[9]  The Court notes that Berson's driver's license at the time of the voter challenge listed his Muscogee County address that matched his address on his voting registration. Tr. 108:4–20. The Muscogee County polling location, however, did not accept his driver's license as sufficient proof to vote. Tr. 108:16–20; but see O.C.G.A. § 21-2-417(a)(1) (requiring a voter "present proper identification to a poll worker" when attempting to vote and deeming a valid Georgia driver's license to be such "proper identification").

12

The Court accepts Berson's testimony regarding the difficulty of finding additional documentation to show his residency in Muscogee County. Berson credibly testified that he had moved his mailing address for many reoccurring payments to Alabama. Tr. 174:15–20 ("Over the years, many of [the accounts' (e.g., car loan, bank accounts, cell phone)] [mailing addresses] had been changed to Alabama. The mailing address is on the official documents that were being sent so that I could receive them. It did originate in Muscogee County, yes.").

Throughout the "ordeal of being challenged, no Defendant contacted Berson, nor did he speak knowingly with any of them. Tr. 104:6–105:22. The only Defendant that Berson could name was True the Vote. Tr. 104:13–17. Berson suggested that he thought his voter challenge was the reason he had to submit additional proof of his residency (beyond his driver's license), but he did not "have further information [that] [any Defendant] directly in that way caused anything." Tr. 110:4–11. The Court finds it to be significant that Berson candidly admitted that he would not have sued anyone had someone not approached him about it. Tr. 137:18–23, 138:1–7, 139:14–20.

13

The Court ultimately finds Berson's testimony to be credible in recounting his experience as a challenged Georgia voter. Berson's testimony was largely consistent and his perceptions were reasonable.

### (3)    Jocelyn Heredia

Plaintiff Jocelyn Heredia grew up in Banks County. Tr. 540:16–21 Her family is originally from El Salvador, and both of her parents have become citizens since coming to the United States. Tr. 541:3–9. She has a younger brother who she has helped care for over the course of his adolescence and her adult life. Tr. 541:10–17.

Heredia graduated from University of Georgia in 2019 and took an internship in Atlanta following graduation. Tr. 543:7–12. During this internship, Heredia lived in Alpharetta, Georgia, and commuted to Atlanta for work. Tr. 543:13–22. She would frequently return to Banks County on weekends and holidays to be with her family. Tr. 543:23–544:1. This internship eventually led to a one-year contract of employment, and so she obtained an apartment in Decatur, Georgia, with a lease beginning in February 2020. Tr. 544:2–545:23. Heredia filed a National Change of Address when she moved to her Decatur apartment, but did not update her car registration, her driver's license, or her voter registration

14

because she "still considered Commerce or Banks County to be [her] home." Tr. 545:16–546:11. Heredia continued to travel frequently between Decatur and Banks County. Tr. 546:9–10. Her doctors and other appointments also largely remained in Banks County. Tr. 573:18–20. Once the Covid-19 pandemic arose, Heredia spent even more time in Banks County and, in 2020, would have considered it to have been her permanent residence. Tr. 547:5–14.

Heredia eventually obtained a full contract of employment and signed a new lease in Atlanta, Georgia. Tr. 567:3–25. The following year she moved to another unit in the same apartment building. Tr. 568:20–23. Heredia "understand[s]" that these moves may make it confusing for someone to determine her residency and that someone may even reasonably assume she lived in Atlanta. Tr. 571:21–3, 591:19–592:7. She maintains that even as of the date of her trial testimony she is "still back and forth with Banks County" and spends "weeks at a time" in Banks County. Tr. 572:7–9. Nevertheless, there is no documentation of her submitting a change of address back to Banks County after February 2020. Tr. 574:5–19.

Heredia considers voting to be "very important" to her. Tr. 547:18. She consistently voted in elections from 2016 to 2020. Tr. 547:25–548:5. When voting

15

in the Senate runoff election, however Heredia waited in line for 30-45 minutes before being told that she had been challenged as a voter. Tr. 548:16–549:7. A poll worker was unable to explain what the challenge meant but indicated that Heredia was required to provide additional papers confirming her address in Banks County. Tr. 549:2–7. Heredia had this documentation in her car and was able to provide it to the poll worker after waiting in line again. Tr. 549:13–550:7. While waiting to vote the second time, Heredia experienced stress and nervousness about whether her mail would be accepted. Tr. 549:18–23. The poll workers made a copy of her additional documentation and allowed her to vote via paper ballot. Tr. 550:1–7. A poll worker stood next to Heredia while she voted and she did not "feel[ ] like it was a private experience." Tr. 550:8–11. It took Heredia several hours to vote in the Senate runoff election and required her to later "recollect[ ]" herself. Tr. 550:20–25. She has not voted in an election since. Tr. 555:13–18.

No one screamed, threatened, or coerced Heredia while she was at the polling place. Tr. 588:9–14. Heredia does admit that she had been uncomfortable in the polling place *prior* to discovering that she had been challenged. Tr. 584:10–25. She specifically describes her reaction to discovering she was a

16

challenged voter as "confused." Tr. 551:1–9. She did not know if she was being accused of committing a crime and was not given information about the basis or substance of the challenge against her. Tr. 551:1–9. She attributes her nervousness to having "jump through the hoops" to vote while others did not. Tr. 585:21–24. She also testified that the poll watcher standing close to her while she cast her ballot increased her stress and that she kept wondering if she was "going to get in trouble for voting." Tr. 586:16–20. Plaintiffs elicited no testimony about who this poll worker was or why the poll worker reacted in this manner.

Heredia also learned after she had voted that her name had been published on the Banks County website as a challenged voter. Tr. 552:1–7. In fact, her name appeared twice, as she had been being challenged once by Jerry Boling[10] and once by Dan Gasaway, neither of whom she has any familiarity with or has ever met. Tr. 554:10–555:1, 587:24–588:2. She furthermore cannot connect either Boling or Gasaway to any of the Defendants.[11] Tr. 588:3–8. She describes her reaction to her

---

[10] The transcript inadvertently misspells Mr. Boling's name "Bowman." Tr. 554:19, 587:22.

[11] Defendant Catherine Engelbrecht testified that True the Vote worked with Boling to submit challenges in Banks County and thus, the Court finds Boling's challenge to Heredia in Banks County came from True the Vote's lists of potentially ineligible voters. Tr. 1026:23–1027:1, 1042:19–1043:6. Defendant Somerville also testified that Gasaway

17

name being published as "kind of . . . scared" because she was, again, afraid of being in trouble for trying to vote. Tr. 555:4–12. In sum, she was "scared, nervous, and [ ] wanted to know more about why [her] name was on the list." Tr. 555:11–12.

Heredia could not name any of the Defendants in this case. Tr. 582:15–23. She has not spoken with or had any direct communication with any Defendant. Tr 582:24–583:4. She nevertheless believes that Defendants are the reason that she was challenged as a voter. Tr. 582:22–23.

In sum, the Court generally finds Heredia's testimony to be credible and that she was testifying truthfully about her experience and perceptions as a challenged voter.[12] The Court thus considers her testimony in reaching its legal conclusions *infra*.

---

served as their volunteer challenger for Banks County and did not challenge that Heredia was on Davis's and Somerville's Banks County challenger list. Tr. 1172:7–15. The Court addresses these admissions and their implications in the Court's Section 11(b) analysis in greater detail *infra*.

[12] The Court also notes, but does not find it to be of any relevance to Plaintiffs' Section 11(b) case, that Defendant Somerville engaged in a post-litigation investigation of Heredia. Tr. 1566:19–1568:2; see also Doc. No. [334] (taking notice of various subpoenas pertaining to Heredia (Doc. Nos. [294-3]; [294-4]; [294-5])). The Court, however, credits Somerville's explanation of this investigation—that is, it was not intentionally malicious, but rather arose "[a]s a consequence of defending [himself] in this matter." Tr. 1568:1.

18

### (4)   Jane Doe

In a declaration, Plaintiff Jane Doe recounts her history of being a challenged voter in Clarke County by True the Vote in 2020 prior to the Senate runoff election. PX 78, ¶¶ 2, 5. Jane Doe supposedly learned of the challenge to her voter eligibility by reading a newspaper story about the challenges and finding her name on a list of the challenged voters, which was hyperlinked on the newspaper's webpage. PX 78, ¶ 5 & Ex. 1. Jane Doe further submitted that Clarke County did not act on the TTV challenges and did not prevent her from voting in the Senate runoff election. PX 78, ¶ 8. Nevertheless, given her concern over being challenged, Jane Doe shifted her plans to vote and voted in-person instead of voting absentee as she initially planned. PX 78, ¶ 8.

Plaintiff Jane Doe did not testify at trial. Instead, at the end of their case-in-chief, Plaintiffs submitted a number of exhibits as evidence. See generally Tr. 1093:4–1104:4. Many, if not most, of these exhibits had not been referred to during Plaintiffs' case. One of these exhibits was Jane Doe's declaration made on May 15, 2022. PX 78. Defendants did not object to the admission of Jane Doe's declaration. Tr. 1099:1–20, 1102:14.

19

As the trier of fact, the Court is concerned about the reliability of Jane Doe's declaration, its attached exhibit of the newspaper article discussing TTV challenges in Clarke County, and the hyperlink in the article with the challenged voters' names. Not only is Jane Doe's affidavit self-serving and made without the benefit of cross examination, but her statements (and the newspaper article/hyperlink referenced therein) are all out of court statements offered for the truth of the matter asserted, and thus would ordinarily constitute hearsay evidence. Fed. R. Evid. 801(c); see also Hope For Fams. & Cmty. Serv., Inc. v. Warren, 721 F. Supp. 2d 1079, 1178 n.114 (M.D. Ala. 2010) ("Newspaper articles generally are considered hearsay under Rule 801(c) when offered for the truth of the matter asserted . . . [and] [i]ndeed, statements in newspapers often present hearsay within hearsay problems." (citing United States v. Baker, 432 F.3d 1189, 1211 & n.23 (11th Cir. 2005)). Defendants however did not object to this evidence being admitted, and thus the hearsay objection has been waived. Cf. Offshore Aviation v. Transcon Lines, Inc., 831 F.2d 1013, 1016 (11th Cir. 1987); Hope For Fams., 721 F. Supp. 2d at 1178 n.114 (considering hearsay evidence on a motion for summary judgment, in part because of a lack of objection thereto).

20

Even though Jane Doe's affidavit and its exhibits are record evidence in this case, the Court still sits as a trier of fact making factual determinations. And with Jane Doe's evidence, the Court has severe concerns about the reliability of Jane Doe's attestations. Indeed, the hearsay exclusion is based on a concern about the general "untrustworthiness of hearsay statements." ADT LLC v. Vivint, Inc., No. 17-CV-80432, 2017 WL 11632866, at *1 (S.D. Fla. Dec. 8, 2017) (quoting T. Harris Young & Assoc, Inc. v. Marquette Elec., Inc., 931 F.2d 816, 826 (11th Cir. 1991)). "Hearsay presents substantial risks of insincerity and faulty narration, memory and perception." Id. (quoting T. Harris Young & Assoc, Inc. v. Marquette Elec., Inc., 931 F.2d 816, 826 (11th Cir. 1991)).

As the trier of fact, the Court must weigh evidence and make credibility determinations. Jane Doe was not subject to cross examination and never had to defend her assertions. Moreover, given that Jane Doe is proceeding anonymously, there is no way for the Court to determine (nor have Plaintiffs even attempted to make information available in the trial record for the Court to independently verify) that Jane Doe indeed was published as a challenged voter in Clarke County. Given the hearsay nature of this evidence, the clearly self-serving nature of the declaration, and the inability for the Court to

21

independently verify the information contained in the declaration, the Court only considers Jane Doe's declaration and its attachments with very little weight in reaching its legal conclusions. It is Plaintiffs' burden to prove voter intimidation under Section 11(b). The Court cannot say that the evidence submitted in support of Plaintiff Jane Doe's case for voter intimidation helps them carry this burden. Accordingly, the Court finds this evidence to be so inconsequential in its decision that it need not discuss it independently in its conclusions of law *infra*.[13]

### b) <u>Defendants</u>

Turning to Defendants, Plaintiffs named the following as Defendants in this case: True the Vote, Inc., Catherine Engelbrecht, Derek Somerville, Mark Davis, Mark Williams, Ron Johnson, and James Cooper. Defendants Engelbrecht (individually and as a representative for True the Vote), Somerville, Davis, and Williams testified at trial, and Plaintiffs submitted deposition designations for Defendants Johnson and Cooper. Numerous pieces of documentary evidence

---

[13] Even if the Court were to afford Jane Doe's evidence more weight, the circumstances attested to by Jane Doe illustrate the causation issues in this case (i.e., that the County Boards determined what to do with the Section 230 challenges). Thus Jane Doe's affidavit does not alter (and even provides additional support) for the Court's legal conclusions regarding causation. <u>See</u> Section (III)(C)(1)(a) *infra*.

22

were admitted in relation to these Defendants as well. The Court now makes its factual and credibility determinations pertaining to Defendants.

### (1)    *True the Vote, Inc.*

Catherine Engelbrecht founded True the Vote, Inc. in 2010. Tr. 827:21–25. Engelbrecht serves as TTV's current president and testified both in an individual capacity and as a representative for the organization at trial.[14] Tr. 827:21–23. Plaintiffs called TTV/Engelbrecht to testify in their case-in-chief as an adverse witness for purposes of cross examination. Defendants subsequently recalled TTV/Engelbrecht in their case for direct examination and Plaintiffs briefly cross examined her.

Engelbrecht founded True the Vote in Texas to recruit and facilitate volunteer workers for elections. Tr 1752:13–1753:16. In short, TTV's mission is "[s]upport of voters' rights and empowering citizens to serve." Tr. 1754:16–19; see also Tr. 1760:12–14 ("[E]mpowering citizens to have a voice" is "an important mission of True the Vote[.]"). Since its founding, TTV has conducted trainings to

---

[14]   While the Court discusses TTV and Engelbrecht separately, to the extent that particular findings of fact would apply to both Engelbrecht as an individual defendant and TTV as an organizational defendant, the Court intends for its findings to apply to both Defendants.

23

encourage volunteers and citizen service beyond voting, specifically encouraging people to "go and work on behalf of the party or the county or the candidate of their choice." Tr. 1757:18–20. It has hosted voter registration drives, reviewed absentee ballots, and trained volunteers on signature verification. Tr. 1757:21–1758:8. It also has encouraged voters to look at voter rolls and educate themselves on election procedures. Tr. 1758:9–13. While election integrity was not a prevalent issue at the time Engelbrecht founded TTV, over the years it has become of greater consequence to the organization because it is "fundamental to the [election] process." Tr. 1762:4–5.

TTV initiated a campaign following the 2020 presidential election called Validate the Vote. Tr. 830:15–31:4. The proposal drafted for the Validate the Vote initiative indicated that the "problem" to be address was "illegal ballots being cast and counted in the 2020 general election." [15] PX 1; Tr. 851:15–852:6. The

_____

[15] Engelbrecht testified that neither she nor TTV actually drafted the Validate the Vote proposal (PX 1) and that former counsel actually drafted the proposal. She testified to "recogniz[ing]" the document itself, but not some of the language in it. Tr. 848:15–18. The Court generally credits Engelbrecht's testimony that TTV and Engelbrecht did not have a direct role in writing the Validate the Vote proposal (PX 1). However, Engelbrecht also independently testified regarding TTV's efforts in the aftermath of the 2020 election and these actions are consistent with the "plan" articulated in the Validate the Vote proposal. Thus, while the Court will not find that TTV and Engelbrecht drafted the Validate the Vote proposal (PX 1), the Court considers the initiatives described in

24

actions specified in this initiative include building public momentum through publicity (Tr. 864:9–865:1, 865:20–866:3), targeting key areas (including Georgia as a "key state") (Tr. 866:9–20), coordinating with GOP political leadership (Tr. 881:25–883:14), and filing federal lawsuits[16] (Tr. 890:2–13). See also generally PX 1.

TTV's efforts, as outlined in the Validate the Vote proposal for example, arose from changes to the electoral system following the national health crisis posed by the Covid-19 pandemic. Tr. 1765:23–1766:10. Examples of changes include a "massive push to mail-in ballots," changes to signature verification standards and the use of drop boxes and chain of custody issues. Tr. 1767:4–18, 1768:13–1769:6. TTV perceived this environment to present a unique "responsibility" for the organization to ensure greater election integrity. Tr. 1770:21–25. This responsibility was felt specifically in Georgia given the close

_____

the proposal to be consistent with TTV's efforts in the 2020 election period and thus weighs them in its analysis of TTV's actions.

[16] Similar to note 15, *supra*, TTV maintained that it did not file lawsuits, but that their former counsel initiated the filing of the lawsuits while TTV merely paid the legal bills. Tr. 902:9–15, 1021:9–13. The Court finds TTV's role in these lawsuits to be sufficient for the Court to attribute their filings to TTV. TTV paid legal counsel and provided information obtained from their election integrity hotline for former counsel to go out and "recruit[ ] the[ ] plaintiffs" involved in the suits filed. Tr. 1023:1–17.

25

election results and the political importance of the runoff elections. Tr. 1774:22–1775:15. Plaintiffs elicited testimony that TTV took many actions in Georgia around the 2020 elections, specifically relating to the Validate the Vote campaign.[17] See, e.g., Tr. 866:9–20, 881:5–883:14, 889:13–890:13.

As a result, TTV engaged in an effort in Georgia to facilitate challenges to potentially ineligible voters pursuant to O.C.G.A. § 21-2-230. Tr. 906:3–908:12. TTV worked with the organization OpSec Group, LLC[18] to compile the list of potentially ineligible voters to be challenged. Tr. 913:24-914:2. This list was based on NCOA data—that is, data obtained from requests for changes in address with the United States Postal Service. Tr. 917:11–18. Engelbrecht maintains that there

---

[17] While founded in Texas, TTV's efforts are nationwide. Tr. 1761:9–12 (asserting TTV does not have a "particular geographic [focus] area" because "elections are important everywhere").

[18] TTV's primary contact at OpSec Group was Gregg Phillips. Tr. 850:9–21. Phillips is not a named defendant in this case, but was a potential witness, even though he was not called at trial. Plaintiffs instead submitted portions of his deposition without objection from Defendant. See PX 102 (Phillips/OpSec Group Deposition Designations); Tr. 1103:3–6 (admitting PX 102 without objection).

Phillips did testify before the Court regarding sequestration issues raised mid-trial. Tr. 1309:11–1331:4. The substance of this testimony had little, if anything, to do with this case and the Court does not consider it in its findings of fact or conclusions of law. Through this testimony, the Court did have the opportunity to assess Phillips's demeanor, however, and found him, on the whole, to be an unreliable witness lacking credibility.

26

was "comprehensive quality effort" and "absolute quality control" over the master list of potentially ineligible voters. Tr. 916:14-917:18. She also acknowledged that "[h]umans are complicated" and that there could be a variety of reasons someone might make a change of address request without having permanently moved for purposes of their voting residency. Tr. 968:13–16; see also Tr. 969:10–970:21 (discussing members of the military and college students as examples of people who would submit a NCOA request without having altered their residency), 1813:8–1815:9 (discussing international addresses, military addresses, and college addresses).

On December 18, 2020, TTV announced its intent to challenge 364,541 Georgia voters before the Senate runoff election. PX 42; Tr. 914:14–915:8. TTV indicated that it was working with co-Defendants Derek Somerville, Mark Davis, Mark Williams, Ron Johnson, and James Cooper, and that "[e]veryone pitched in." PX 42. This announcement indicated that these elector challenges were "the best way to ensure only eligible voters are voting in the upcoming runoff elections" and that the challenges did "not remove voter names from the registry [but that] [v]oters who have been challenged will have the opportunity . . . to

prove eligibility and still have their vote counted in the upcoming runoff election." PX 42.

These challenges were an effort to ensure the Georgia voter roll was accurate. Tr. 912:9–913:3. To make the Section 230 challenges, TTV had to recruit potential challengers in the counties where the challenges would be made. Tr. 918:14–25; see also PX 42 (indicating that James Cooper and Ron Johnson "led the charge in recruiting hundreds of volunteer challengers across the state"). Once a challenge was made, then it was up to the counties to determine what to do with the information. Cf. O.C.G.A. 21-2-230(b) (2019); see also 1783:9–12 (affirming the Board of Elections conducted further review of Section 230 challenges). If a county credited the challenge, then the county might have required the challenged voter to show further evidence of residency in the county to prove eligibility to vote. Tr. 907:23–908:5.

Before facilitating any Section 230 challenges, TTV (through Engelbrecht) met with legal counsel, the Secretary of State's office, [19] and others with

---

[19]  For the reasons explained *infra*, the Court largely does not credit Defendants' testimony regarding this meeting with the Secretary of State's office, because it contradicts Ryan Germany's testimony, which the Court finds to be more credible given his impartiality in this case and experience with Georgia election regulations and procedures. See Section (II)(B)(2)(c) *infra*.

28

specialized knowledge of the process to discuss making Section 230 challenges the way TTV intended. Tr. 974:2–7, 1777:3–20, 1793:2–1795:8. TTV also observed the developments in another federal lawsuit involving Section 230 challenges. Tr. 1788:4–1789:16. It was TTV's impression that the counties could (and ultimately would) handle the Section 230 challenges made. Tr. 933:3–934:9, 1782:18–1784:13.

TTV also announced a partnership with Georgia Republican leaders. PX 35; Tr. 880:10–21. Engelbrecht testified that TTV reached out to Georgia's leaders in the Democratic Party weeks later and did not receive any response. Tr. 885:19–23, 1843:19–22. TTV, however, disclaims having given any preference to either political party. Tr. 1843:14–17.

In addition to the challenges, Plaintiffs submitted evidence that TTV created a whistleblower fund—a "bounty"—for individuals who reported fraudulent election activities. PX 28; PX 52. At trial, Engelbrecht explained the fund and her use of the term "bounty" specifically. Tr. 869:9–22. Engelbrecht testified that she carelessly called the fund a "bounty" because a donor had used the term previously. Tr. 870:1–7. She emphasized that the fund was to protect people who were coming forward with "legitimate concerns" and ensure that those who reported voting fraud would have compensation. Tr. 870:14–871:8.

29

Engelbrecht affirmed that TTV offered one whistleblower a $50,000 "bounty," but further explained that this award was given to a man who had been physically injured after reporting on voter fraud. Tr. 874:23–876:3; <u>see also</u> PX 28. Engelbrecht indicated in an email to the donor that TTV "offered $50,000 [to a Georgia whistleblower] *if his evidence leads to prosecution*." PX 28. Engelbrecht disclaimed that the funds were actually contingent on prosecution and reaffirmed that the "hope was to preserve $50,000 for legal bills at Grady [Hospital.]" Tr. 878:11–889:7. In sum, Engelbrecht testified that her use of the word "bounty" had been taken out of context and that TTV was responding to "concern[ ] about what was happening with [a particular] informant." Tr. 1836:17–24.

When it comes to the whistleblower fund, the Court finds TTV made available a fund to compensate people who reported election and voter fraud. The Court certainly accepts Engelbrecht's testimony that an occasional use of the term "bounty" does not fully capture TTV's intent with the fund. However, whatever one calls it, the Court finds the evidence to show that this fund was part of the TTV effort to ensure election integrity and had been utilized in Georgia (i.e., through at least one whistleblower being offered $50,000).

Plaintiffs also submit evidence that TTV recruited military veterans, specifically Navy SEALS, to intimidate voters at polls. PX 51. TTV testified that this initiative was not to intimidate any voters, but rather to encourage veterans to serve as poll workers because they have shown a prior commitment to service and are "good at following process and upholding the law." Tr. 1837:15–1839:5. The Court credits TTV's explanation of any public communications involving Navy SEALs. Thereby, the Court finds that TTV's and Engelbrecht's statements about Navy SEALs were made to facilitate election workers, not to intimidate voters. Tr. 1838:22–1839:5 (disclaiming any intent to intimidate, threaten, or coerce a voter in the recruitment of Navy SEALs).

Engelbrecht disclaimed ever having made any effort on behalf of True the Vote that resulted in speaking with, communicating to, or making a social media post about any specific challenged voter or Plaintiff in this case. Tr. 1830:22–1833:15. The Plaintiffs and voters who testified further affirmed that they were not contacted and did not have any direct communications with TTV or any of its representatives. Tr. 104:6–105:22; Tr. 582:24–583:4; Tr. 464:5–465:24; Tr. 235:3–236:10.

31

Since its 2020 election initiatives, TTV has created a platform called "IV3" which enables web users to search a database for potentially ineligible voters in order to facilitate voter eligibility challenges in the states that allow such challenges. Tr. 1035:10-1036:22, 1912:13–25.

Besides the factual determinations contained herein, the Court incorporates its overall credibility finding of Engelbrecht's testimony in weighing its consideration of the evidence.

### (2)    Catherine Engelbrecht

As an individual Defendant, Catherine Engelbrecht testified as the founder and president of TTV. Tr. 827:21–23. She thereby has "visibility into all the organization's operations and activities," "oversee[s] the organization's strategy[,] finances[,] [and] communications." Tr. 828:16–829:13.

Engelbrecht grew up in Texas. Tr. 1749:23–24. She began her career at her family's manufacturing business and eventually started TTV in 2009. Tr. 1750:18–1752:14. Engelbrecht established TTV for the purpose of facilitating citizen service, especially in election related activities. Tr. 1752:15–1753:16, 1757:13–1758:13.

32

Engelbrecht was actively involved in TTV's activities discussed *supra*, including working with OpSec to create the list of potentially ineligible voters and garnering public support for voter integrity efforts through podcasts and other written communications. See, e.g., PX 42 (citing Engelbrecht extensively in the announcement of the Georgia voter challenges); PX 51 (indicating Engelbrecht hosted a podcast discussing the recruitment of military veterans to be election volunteers); PX 52 (announcing the whistleblower fund on a podcast hosted by Engelbrecht). She also discussed voter challenges in Georgia with co-Defendants Derek Somerville and Mark Davis in the weeks leading up to the Senate runoff election. Tr. 987:12–20. To the extent it is relevant, the Court incorporates its findings of fact from TTV's efforts into its findings for Engelbrecht as an individual Defendant.

Engelbrecht has some experience working with large data, and the NCOA specifically, through her association with a FinTech healthcare company. Tr. 1764:17–19. While Engelbrecht's experience may give her some understanding of the data and processes used in this case, Engelbrecht is not an expert witness. The Court does not give any weight to her testimony on data analytics or the accuracy and reliability of NCOA datasets beyond it being Engelbrecht's own personal

33

understanding of the data and processes. Moreover, to the extent that Engelbrecht equated *authorizing* OpSec's analysis of the NCOA data and voter registration list with conducting an actual analysis, the Court finds this testimony to be of little weight. <u>See</u>, <u>e.g.</u>, Tr. 1900:9–1901:23. In fact, no evidence besides Engelbrecht's own trial testimony connects Engelbrecht to OpSec's data procedures or statistical processes.

The Court concludes by acknowledging Engelbrecht was impeached a number of times at trial. <u>See</u>, <u>e.g.</u>, Tr. 855:19–860:20 (indicating an inconsistency between Engelbrecht's trial and deposition testimonies regarding whether TTV had evidence of illegal voting), 934:17–936:4 (showing an inconsistency in Engelbrecht's trial and deposition testimonies regarding whether TTV should have made a statement that their voter challenge list was "99.9 percent" accurate). Even in the instances where the Court does not find Engelbrecht's prior testimony to be blatantly inconsistent with her trial testimony, the Court cannot ignore that many of Engelbrecht's skillful answers were obviously self-serving—and to the detriment of her overall candor. Thus, the Court considers Engelbrecht's testimony, but also closely scrutinizes the documentary

34

evidence and Engelbrecht's prior testimony to best make factual findings *infra* about the Section 230 challenges and other intimidating behaviors alleged.

### (3)   *Derek Somerville*

During the relevant events in 2020 giving rise to this lawsuit, Defendant Derek Somerville lived in Georgia.[20] Tr. 1212:12–18. Previously, he served in the Marine Corps for 4-years and on the FBI's public corruption and white-collar squad. Tr. 1217:21–22, 1222:6–10. At the time of the 2020 elections, he was well-known in his "general county region" and it was not uncommon for people to reach out to him and discuss issues in Georgia. Tr. 1123:11–20.

Somerville had concerns about election integrity in November 2020, specifically to the State's process of handling voter rolls and absentee ballots. Tr. 1472:24–1476:19. Given the State's decision to facilitate mass absentee mail-in ballots (because of the Covid-19 pandemic), Somerville was concerned that "people [could] have inadvertently voted because of the best intention of the Secretary of State sending all these absentee ballot request forms out." Tr. 1476:13–16.

---

[20] Somerville has since moved to Kentucky. Tr. 1123:8–10.

35

In November 2020, Somerville met and partnered with Defendant Mark Davis to create a list of potentially ineligible Georgian voters and then to facilitate challenges to these voters under O.C.G.A. § 21-2-230. Tr. 1237:21–1239:3. They met in the midst of conversations following the general election involving the Georgia voter file. Tr. 1237:21–1239:3. Davis asked Somerville to scrutinize his preliminary work on the voter file, and after having done so, Somerville became more convinced of an issue with potentially ineligible voters voting. Tr. 1629:13–1630:10. They were concerned about these issues repeating in the Senate runoff election, and so they discussed coordinating voter challenges under Section 230. Tr. 1635:15–1636:3. In this "true collaboration," Davis handled the computation of large data files, whereas Somerville recruited and communicated with the individual volunteer challengers. Tr. 1508:7–22.

In late November 2020, before taking any action, Somerville and Davis sought guidance on the Section 230 process from a Georgia General Assembly Representative and legislative counsel. Tr. 1246:8–23. They ultimately determined that this was "viable way to engage" with issues and people on election integrity. Tr. 1258:13–23. The process of challenging voters under Section 230 was, in Somerville's words, "benign" and to "help[ ] ensure that

[voters] actually vote in the right place." Tr. 1257:7–25. Somerville and Davis did not seek to change the voting behavior of any person. Tr. 1514:6–11. No contact or communication was had with any voter on the challenger list crafted. Tr. 1472:19–23. They never intended for anyone to be or feel intimidated or targeted, and Somerville testified that they never "would have engaged in this if we thought it would have resulted in any amount of harm" (Tr. 1257:23–25), though Somerville acknowledges that participating in a hearing following one of these challenges may have been intimidating (Tr. 1203:5–14).

Davis and Somerville were "relatively obsessive" about working on the list from late November until the list's completion in December. Tr. 1477:2–7. Somerville and Davis's Section 230 challenge list contained over 39,000 potentially ineligible voters across Georgia's 159 counties. Tr. 1165:16–21. However, Somerville only remembered challenges from his and Davis's list being made in around 40 counties. Tr. 1171:12–23.

As far as the list of potentially ineligible voters themselves, Somerville described the process as a "funnel," starting with the large population contained in the NCOA dataset. Tr. 1159:4–12. From there "it was an exhaustive effort of pare down, pare down, pare down, pare down." Tr. 1159:4–12, 1509:11–1510:14

37

(testifying that there was a lot of "exclusionary logic" to the funnel, including the removal of inactive voters, limiting the time period of NCOA applications, and removing intra-county moves). Their sources of data included the NCOA dataset, the Georgia's voter file, the absentee voter file, and geospatial data. Tr. 1540:5–23. No part of their effort was partisan, despite efforts by others to make it so. Tr. 1504:19–1505:4. They did not consider gender, race, party affiliation, or other demographic factors in making their list of potentially ineligible voters, though afterward they reviewed the list and found it to be "on par" with Georgia's overall demographics. Tr. 1521:25–1522:22, 1527:3–19; see also Tr. 1657:1–24 (Davis affirming no demographic factors were considered in making the voter files).

They removed voters eligible to vote under the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) and attempted to exclude those who had relocated for military service. Tr. 1545:1–25. They also removed duplicates. Tr. 1546:1–5. Somerville and Davis both admitted that removing student voters was a challenge.[21] Tr. 1551:21–1552:22, 1669:1–9. The Court credits Somerville's

_____

[21] While he did not assess the Davis and Somerville list, Dr. Mayer's testimony confirmed that someone would need more information than the NCOA change of

38

trial testimony regarding the efforts to exclude these groups of people from the Somerville and Davis' list. The Court, however, weighs this testimony in the light of the fact that Somerville failed to fully describe every step of the exclusion process during discovery. Tr. 1546:6–1547:1.

Somerville and Davis also attempted to get volunteer challengers from each county in Georgia. To establish negligence in handling their list of challenged voters' names, Plaintiffs submitted a social media post by Somerville describing the volunteer process as a "15 minute" effort. PX 41. The Court, however, credits Somerville's testimony that this statement was "not [ ] very articulate" and not intended to mean volunteers would spend literally 15-minutes on the challenge, but that the effort itself would not be onerous. Tr. 1533:11–23. Overall, the Court finds that Somerville and Davis adequately engaged with their volunteers under the circumstances. See, e.g., Tr. 1534:14–23 (Plaintiffs' counsel admittedly describing the document transmitted to volunteers to "include[ ] a large number of instructions").

---

address application to know about a voter's permanent move to another voting location. See Tr. 358:7–19. Specifically, Mayer was not aware of any database of college or university addresses, and even then most students do not live in an on-campus address at a college or university. Tr. 361:22–362:7.

39

Once Somerville and Davis's list was compiled and they had a volunteer challenger for a county, Somerville and Davis gave the volunteer the lists of potentially ineligible voters either via email or by giving the challenger access to the Google Drive and Dropbox.[22] Tr. 1169:23–1170:7. This Dropbox was never made public, nor was it referenced in any public postings by Somerville. Tr. 1479:3–13. They also gave a document to the challenger with a disclaimer, their communication policy, and instructions. Tr. 1481:13–1482:14; DX 38. Admittedly, this document did not include instructions to "scrutinize" or "investigat[e]" the list. Tr. 1535:3–17.

From there, they "didn't control [the challenger's] process" and the challenger "had the ability to manipulate what . . . they ultimately submitted." Tr. 1168:8–15. While there is no documentary evidence of the challenger's ability to manipulate the challenges submitted, Somerville persuasively testified that this understanding occurred largely from conversations with the volunteers because he knew them personally. Tr. 1168:18–1169:15. Somerville also admitted

---

[22] After Plaintiffs filed this lawsuit, Davis removed the Google Drive "because of the lawsuit [and he] thought people were done accessing the lists," but upon request from Somerville, Davis uploaded the challenge file once again. PX 85.

to some "process breakdown" once the lists were distributed. Tr. 1171:7–11 ("[T]hose are probably some of the weaker parts of our process . . . making sure we kept track of who received one and certainly happened after that."). They received confirmation about submitted challenges from four to five volunteers but did not follow-up with every volunteer. Tr. 1262:2–15. He knows that Dan Gasaway was a volunteer challenger in Banks County, and that Plaintiff Heredia was on the Davis and Somerville list for Banks County. Tr. 1172:7–15; see also Tr. 1648:21–1649:19 (Davis testifying that he connected Gasaway with Somerville to talk about voter challenges). He disclaims any challenges being made in Muscogee County.[23] Tr. 1173:22–1175:15, 1177:2–8. Somerville himself did not make any challenges because there was a volunteer who camet forward from Forsyth County (where Somerville lived) and his preference was for other citizens to submit the challenges to engage with the political process in "a constructive way[.]" Tr. 1189:1–1190:11.

---

[23] The Court, in fact, already ruled on the Davis and Somerville challenges in Muscogee County, granting summary judgment in Davis and Somerville's favor on the Muscogee County voters and reaffirming that decision even after granting the limited motion to reconsider on the Muscogee County voters on TTV's challenge file. See Doc. Nos. [222], 29–31; [235], 4 ("The Court . . . **GRANT[S] IN PART** summary judgment for Defendants Mark Davis and Derek Somerville on the Section 230 challenges to the Muscogee County voters . . . .").

41

The hope of these challenges was that "the individual Board of Elections would review the material and do what the Government does." Tr. 1185:22–24. Somerville's understanding was that the Board of Elections for each county would review the challenges submitted and then make a probable cause determination. Tr. 1497:3–8. Somerville did not understand the law to require the challenger to have probable cause when making the challenge (because such was a determination for the Board of Elections) but that it was nonetheless "important to [Davis and himself] to be as certain as [they] could" about the challenges facilitated. Tr. 1563:23–1564:9.

Ultimately, no Board of Election accepted Somerville's and Davis's challenges. Tr. 1467:2–13. This result did not necessarily surprise Somerville because he never quite knew how the Boards would respond. Tr. 1467:2–13. Even though the challenges themselves had no immediate impact, Somerville still maintains that "a lot of good[ ] came" from the experience, including "highlight[ing] a significant issue that is imperially demonstrable." Tr. 1501:11–14; see also Tr. 1502:2–1505:4 (recounting the effort's positive impact in relation to the rampant "conspiracy theories" and general political climate at the time).

42

As far as Somerville and Davis's connection to TTV's Section 230 voter challenge effort, Somerville was particularly "sensitive to groups that were coming in from out of the state," because he wanted to ensure that the organization had the people of Georgia's best interest in mind. Tr. 1484:4–15. Defendant Ron Johnson initiated the contact between Somerville and Engelbrecht and the two met for dinner on December 15, 2020. Tr. 1122:9–14. Somerville indicated that while they had "cursory" discussions about the voter challenges at dinner, the communications were more introductory in nature. Tr. 1122:18–20. Somerville also attended a meeting for "Elector Challenge Alignment" with Engelbrecht, Gregg Phillips, and Davis. Tr. 1124:2–24; PX 6. Somerville and Engelbrecht specifically spoke about suing counties who did not act on the submitted Section 230 challenges. PX 92, 11–12. The documentary evidence submitted further indicates a significant amount of communication between Engelbrecht and Somerville in the period between their introduction and the Senate runoff election. See, e.g., PX 70; PX 92.

Also on December 18, 2020, TTV announced its intent to file over 360,000 Section 230 challenges in Georgia. This announcement included Somerville's and Davis's names as part of the effort. PX 42 (indicating that Somerville and Davis

43

"have been leading citizen efforts to highlight issues in Georgia's voter rolls"); Tr. 1135:22–25. Somerville reviewed this announcement prior to its release and had even made the suggestion to include Davis as part of the announcement. Tr. 1135: 2–8, 1489:6–1490:15. Somerville also publicly shared the announcement, indicating a "collaborat[ion] on methodology" with TTV. Tr 1137:24–1138:1; see also PX 76. Somerville at trial indicated that using the word "collaborated" was an exaggeration, yet did affirm that he "offer[ed] encouragement" for TTV's efforts in recruiting volunteers. Tr. 1138:2–25, 1142:1–5. Nine or ten days after meeting Engelbrecht and TTV, Plaintiffs filed the instant suit, naming Somerville and Davis as Defendants. Tr. 1486:11–12.

Overall, the Court finds Somerville to have testified with candor and consistency. The Court credits his testimony and accordingly weighs it in reaching its legal conclusions.

### (4)    *Mark Davis*

Defendant Mark Davis is a resident of Gwinnett County. Tr. 1601:13–16. He is the president of a data processing and project management company, and serves clients in the political, commercial, and nonprofit spheres. Tr. 1603:7–14.

44

He personally handles data processing in his business, often using NCOA data. Tr. 1603:13–1606:22.

Davis began working with Georgia voter data in 1986. He has built a Georgia voter database. Tr. 1603:21–23. Davis has continually updated his work with the voter data, adjusting to technological advances and federal regulations governing states' records. Tr. 1607:1–1609:25. While he is familiar with the NVRA's limitations on the Georgia's maintenance of the voter rolls, he understands that he is not regulated by the NVRA and often uses NCOA data to best serve his client's needs. Tr. 1611:9–1612:8. In his experience, Davis has not seen the NCOA data produce a false match. Tr. 1613:12–16.

Over time, Davis has identified issues with the Georgia voter rolls. Tr. 1618:2–22. Particularly, he notes that there are "a lot of voters who no longer live[ ] where they were registered." Tr. 1618:24–25. He has met with the Secretary of State's office to express his concerns over the voter lists (Tr. 1620:10–1621:3, 1687:12–21) and testified in the Georgia General Assembly on similar topics (Tr. 1621:11–24).

In 2020 specifically, Davis used available voter data and determined that there were likely thousands of voters in Georgia who voted outside their county

45

in the elections leading to the Senate runoff election. Tr. 1622:20-25. Understanding that the Secretary of State's office could not do much to stop these voters from improperly voting in the runoff election—given the NVRA's restraints on purging voting rolls—Davis turned to the avenue he believed best to resolve the issue: voter challenges under O.C.G.A. § 21-2-230. Tr. 1623:11–24.

During this period, Davis met Defendant Somerville.[24] Tr. 1629:2–1630:2. He encouraged Somerville to review his voter registration data. Tr. 1629:13–1630:2. Following this review, Somerville and Davis crafted a challenger list of potentially ineligible voters based on NCOA data for all 159 counties in Georgia. Tr. 1635:21–1636:11. Davis believes the NCOA data is good evidence of someone's intent to permanently move and would be a basis of probable cause for a county Board of Elections to further inquire into a voter's residency. Tr. 1649:20–1650:17, 1652:2–10; but see Tr. 502:15–17 (Ryan Germany testifying that he "didn't believe" that NCOA "was sufficient probable cause" for further inquiry but ultimately "that was [the county Boards'] determination to make").

---

[24] Many of the Court's factual findings in relation to Defendant Somerville apply to Defendant Davis. The two Defendants testified consistently and so the Court hereby incorporates any relevant factual findings shared between the two Defendants.

46

Davis acknowledged that filing a NCOA change of address application itself may not necessarily mean a person has permanently moved, especially in the case of students or members of the military. Tr. 1683:18–1684:16. Davis thereby never considered using only NCOA data to make a list of potentially ineligible voters. Tr. 1650:18–1651:6.

The primary purpose of Davis's and Somerville's list was to garner attention from decision-makers about the residency issues in the voter list file. Tr. 1637:12–20. Thus, Davis and Somerville wanted to "challenge as few people as possible," and did not want to "burden . . . voters or county boards of election any more than [they] thought was necessary." Tr. 1650:18–1651:6. They tried to make extensive cuts to the NCOA list, as discussed in greater detail *supra*, including the elimination of UOCAVA voters, inactive voters, and voters who did not cast a ballot in the 2020 general election. Tr. 1653:1–1654:25. They also attempted to remove students from the voter file, but such process is complex and difficult to ensure complete accuracy. Tr. 1669:1–9, 1671:13–1672:1. In fact, for student voters, Davis thought the final inquiry was best done by the county Board of Elections. Tr. 1669:1–9, 1671:24–1672:1. Davis's and Somerville's list ultimately included over 39,000 voters, and did not consider party affiliation,

47

race, or gender. Tr. 1673:4–5, 1657:15–24. Davis and Somerville completed their list on December 15, 2020.[25] Tr. 1637:8–11.

Davis and Somerville then sought to recruit challengers and facilitate challenges in each county. Tr. 1647:22–1648:4 (indicating that Somerville took the lead in the recruitment efforts). They kept their voter file on a Google Drive Dropbox, and Davis did not know how many people could access these lists. Tr. 1678:24–1679:20. He knew access was controlled, though and did not know of any unauthorized access. Tr. 1679:5–20.

Somerville's and Davis's list eventually was sent to the Secretary of State's office (Tr. 1633:11–15), but the goal was not to actually remove any voters with these challenges (Tr. 1641:2–4). When a volunteer made a challenge Davis expected the county Boards of Elections to determine if probable cause existed to make a voter show proof of residency in the county. Tr. 1641:25–1642:7. If a challenged voter tried to vote, Davis believed the challenged voter would merely

---

[25] In its order resolving Plaintiffs' motion for sanctions, the Court allowed an adverse inference that Gregg Phillips from OpSec Group thought Davis's process was bad and that Phillips would have undergone the analysis differently (i.e., better). Doc. No. [333], 17.

48

have to provide further documentation of his or her residency—a process Davis did not personally perceive to be intimidating. Tr. 1646:17–22, 1681:8–17.

Davis trusted the Section 230 process and hence did not make any attempts to contact voters. Tr. 1643:25–1644:5. Davis was not concerned about the county Boards of Elections being overwhelmed by these challenges either because the challenges largely scaled according to the size of the county (i.e., large counties had more potentially ineligible voters but also more resources, and vice versa for small counties). Tr. 1644:10–1645:4, 1681:18–1682:11. It was Davis's impression, moreover, that even if the counties ultimately did not act on the challenges made in the Senate runoff election, they had interest in the lists for future purposes. Tr. 1645:5–12.

Since the challenges, Davis has spoken with various levels of people at the Georgia state legislature and the media about his and Somerville's efforts as part of his goal to raise attention to the issue of the voter rolls. Tr. 1660:12–1661:3. He testified at trial, however, that he would not consider making Section 230 challenges again given this lawsuit and his deteriorating health.[26] Tr. 1662:10–22.

---

[26] Davis was diagnosed with "advanced cardiomyopathy" or chronic heart failure, and has other health related concerns requiring immediate and constant attention. Tr.

The Court finds Davis's testimony to be credible. Davis thoroughly and with candor answered questions on both direct and cross examination. He did not contradict himself, his prior testimony, or the testimony of other witnesses in this case. In fact, his testimony aligns with that of Defendant Somerville and the documentary evidence in this case. Accordingly, the Court credits Davis's testimony and weighs it in reaching its legal conclusions herein.

### (5)    Mark Williams

Defendant Mark Williams has lived in Gwinnett County his whole life and owns a printing and mailing company. Tr. 1717:14–21. In December 2020, he was introduced to True the Vote and Catherine Engelbrecht and hired to help with the printing of TTV's Section 230 challenges to submit to county Boards of Elections. Tr. 1333:3–20. Williams's company received a $40,000 retainer for this job. Tr. 1345:19–21. He had no role in actually compiling the list of potentially ineligible voters on the challenge list. Tr. 1345:22–25. Nor was he asked to ensure the accuracy of the lists. Tr. 1349:10–14.[27] He furthermore did not have any part

---

1602:2–10.

[27] One email from Engelbrecht, however, directed Williams to "remove addresses that would suggest they are military bases." PX 67. It does not appear, however, that Williams removed the military addresses. PX 105, 61:8–11.

50

in Davis's and Somerville's Section 230 lists. Tr. 1647:11–15 (Davis testifying that he did not communicate with Williams about filing Section 230 challenges).

Williams knew TTV wanted to challenge a large number of voters and so he introduced TTV to Defendants James Cooper and Ron Johnson, friends of his in the Republican party who "knew a lot of people" and who Williams felt "might be able to help [TTV] on their agenda." Tr. 1345:12–18. Cooper and Johnson led TTV's recruitment of volunteer challengers. See Section (II)(B)(1)(b)(6)–(7) infra.

Williams himself ultimately submitted challenges on behalf of TTV in Gwinnett County, challenging 32,000 voters less than 30-days before the Senate runoff election. Tr. 1349:16–21, 1357:17–23; PX 71. In his own submission of the challenges, he was not given the option to remove names off the list and did not recall any discussion about taking names off the list. Tr. 1350:4–18. He did not investigate individual names on the list but did check the number of voters on the Gwinnett County list and confirmed it matched the number obtained in his own assessment of the NCOA data. Tr. 1350:19–1351:13, 1733:10–18. He trusted TTV's process because he trusted their lists to reflect the NCOA data he had seen himself. Tr. 1351:14–23. He also, in completing the Section 230 print job for TTV,

51

experienced firsthand how they continued to "scrub the list as best they could." Tr. 1744:2–8.

Williams believed that the eligibility of any voter who was on the NCOA list needed to be questioned. Tr. 1352:5–8. Thus, when Gwinnett County had a hearing on the list of challenge voters he submitted, Williams asked the Board of Elections to consider the challenge and investigate the 32,000 voters on the TTV list. Tr. 1352:9–19. His goal was to question potential wrongdoing by Gwinnett County voters and then if such wrongdoing was actually occurring, then to expose it. Tr. 1356:18–1357:11. Gwinnett County did not ultimately accept Williams' challenges. PX 105, 63:13–15.

While somewhat intimidated by the instant lawsuit, Williams testified that he would submit Section 230 challenges again as it is a "legal" and "proper" way to address his concerns about the voter file. Tr. 1357:12–16, 1744:14–23. To the best of his knowledge, Williams believed he complied with the law in submitting his Section 230 challenges. Tr. 1744:24–1745:1.

While the Court perceived Defendant Williams' demeanor in testifying to be disagreeable, nothing in his testimony greatly contradicted itself or prior testimony he had given in this case. It also is fairly consistent with the

52

documentary evidence submitted. Accordingly, the Court finds Williams to be credible and will so weigh his testimony in its decision.

### *(6)* *Ron Johnson*

Defendant Ron Johnson worked with co-Defendant James Cooper to assist True the Vote in recruiting volunteer challengers across Georgia before the Senate runoff election. PX 96, 33:6–7, 34:3–9. Johnson focused primarily on counties in North Georgia. PX 96, 33:12–13. Generally, both Cooper and Johnson looked for volunteers from Georgia GOP leadership (i.e., county chairpersons) and other personal or political acquaintances. PX 96, 36:12–16; PX 101, 43:6–11. Johnson disclaims that these efforts constituted "recruitment" and instead indicates that he was merely "giving [TTV] a name that was the county chairman of those counties [with populations under 80,000] for the Georgia GOP." PX 101, 42:16–43:5; see also PX 46, 8 ("I contacted eligible Georgia voters I knew to ask if they would be interested in bringing a Georgia Elector Challenge in the county in which they live. I gave True the Vote, Inc. the contact information for any Georgia voter who expressed an interest in participating in such challenges.").

On December 18, 2020, TTV named Johnson as an associate in their efforts to challenge potentially ineligible Georgia voters in the press release on Section

53

230 challenges. PX 42 ("We are proud to be working alongside patriots from across the Peach State . . . Ron Johnson of Jackson County . . . who led the charge in recruiting hundreds of volunteer challengers across the state[.]"); see also PX 10, 11 ("Ron Johnson assisted with recruiting hundreds of voter challengers across the state of Georgia.").

Johnson also worked with TTV to submit approximately 1,400 voter challenges in Jackson County before the 2020 general election. PX 101, 20:20–21:5, 24:2–20. Jackson County did not act on these challenges, however. PX 101, 21:16–22:1.

There is documentary evidence of another challenge Johnson submitted on December 19, 2020 for 2,300 voters. PX 101, 73:15–18. Johnson did not recall submitting this challenge and was "surprise[d]" to learn that he challenged over 2,000 voters in Jackson County in December 2020. PX 101, 75:2–13. Johnson suggested that someone else would have been likely to submit a challenge in his name. PX 101, 74:1–75:17 (testifying that he would not be surprised to learn that the Democratic Chair in Jackson County submitted a challenge under his name without authorization).

Johnson also connected Defendant Derek Somerville with Defendant Catherine Engelbrecht. Tr. 1122:9–11; see also Tr. 1153:18–24 (Somerville testifying that there was "overlap" in the people Somerville knew and the people part of TTV's recruitment efforts for challenges, which was "why Ron Johnson introduced me to [TTV]."). Johnson, however, did not file challenges for the Davis and Somerville list. Tr. 1647:16–18.

Johnson did not testify at trial. Thus, the Court was unable to assess his demeanor. However, much of the evidence submitted regarding Johnson (without objection from Defendants (Tr. 1103:3–7)), most notably his deposition, was subject to cross examination or further inquiry from Plaintiffs. Accordingly, the Court credits Johnson's deposition testimony and the evidence of his involvement in the TTV voter challenges and will weigh it accordingly.

### (7) James Cooper

As indicated, Defendant James Cooper also worked with True the Vote to find volunteers to make Section 230 challenges before the Georgia Senate runoff election. PX 96, 33:2–7, 138:9–12; PX 21 ("I'm working with True the Vote on this very important issue"). Co-defendant Mark Williams introduced Cooper and TTV. Tr. 1345:12–14. Cooper perceived that Williams included him because "[h]e

55

thought that I would be interested in what they was going to discuss." PX 96, 137:7–138:2. TTV later named Cooper as a recruiter of volunteers in its press release announcing the Section 230 challenges in Georgia. PX 42; see also PX 10, 11 ("James Cooper . . . assisted with recruiting hundreds of voter challengers across the state of Georgia."). Davis did not speak with Cooper about his and Somerville's voter challenges. Tr. 1647:19–21.

Cooper focused on recruiting volunteer challengers in South Georgia. PX 96, 33:12–13. He sent emails and other correspondence to fellow members and leaders in the Georgia GOP and to other people he knew personally. PX 96, 36:11–37:3. He did not know everyone he contacted about this effort because he used the Georgia GOP database of county chairpersons as a source of contact information. PX 96, 36:21–37:19. Cooper did not submit Section 230 challenges himself because TTV had a volunteer in his county. PX 96, 63:14–22.

In the recruitment email he sent to potential volunteers, Cooper indicates that he had been assured the challenged voter file was 99.9% accurate. PX 21 ("True the Vote has assured me that the list they are challenging is 99.9% likely to be incorrectly registered."). This assurance came from Gregg Phillips at OpSec Group, which TTV used to make their challenge list. PX 96, 66:4–17. True the Vote

56

also assured Cooper that "they were checking the accuracy of the list by canvassing." PX 96, 66:18–22.

One volunteer challenger that Cooper recruited was Joseph Martin. [28] PX 94, 16:20–17:1. Martin and Cooper knew each other as acquaintances from their involvement in the Georgia GOP. PX 94, 17:2–12. Martin agreed to serve as the volunteer challenger for Taliaferro County. PX 94, 23:5–19. Martin believed Cooper contacted him as a member of the GOP and only later learned of TTV's involvement. PX 94, 21:13–22. Martin ultimately emailed Cooper (and others associated with TTV) and retracted his challenge because of concerns with the data. PX 43; PX 80. Cooper's response to Martin's retraction did not acknowledge Martin's concerns about the challenge file and instead reassured Engelbrecht that he would look for another challenger in Taliaferro County. PX 80. Cooper also indicated frustration with county Boards of Elections requiring challengers to "make their case" for a challenge submitted because it was "running off" (i.e., deterring) volunteer challengers. PX 80; see also PX 96, 112:1–8 ("[T]he counties

_____

[28] Martin testified at trial via video deposition and the Court recounts the full extent of Martin's testimony below. See Section (II)(B)(2)(d) *infra*.

were making people have to come make their case . . . and it was making recruiting a challenger extremely difficult.").

Cooper did not testify at trial. Thereby, like Johnson, the Court could not assess his demeanor to make a credibility determination. Nevertheless, much of the evidence submitted regarding Cooper (without objection from Defendants), especially his deposition, was subject to cross examination. Cooper's deposition testimony and the other evidence submitted does not contradict Martin's testimony, which the Court finds to be highly credible. See Section (II)(B)(2)(d) *infra*. Accordingly, the Court credits Cooper's testimony and the evidence of his involvement in the TTV voter challenges and weighs it accordingly.

### 2.    *Fact Witnesses at Trial*

The Court now will make its factual findings with regards to the fact witness who testified at trial. The Court addresses each of these witnesses in turn: (a) Gamaliel Turner, (b) Stephanie Stinetorf, (c) Ryan Germany, (d) Clair Joseph Martin (submitted by video deposition), and (e) Amy Holsworth.

### a)    <u>Gamaliel Turner</u>

Plaintiffs called Gamaliel Turner as non-Party voter who had been challenged under Section 230 before the Senate runoff election. Turner is a

70-year old veteran who grew up in Georgia and has resided in Muscogee County for many years. Tr. 188:14–15, 191:18–193:4. In Muscogee County, he owns property, holds a driver's license, registers his cars, and pays property taxes. Tr. 193:5–17. Since 2019, however, Turner has taken several consecutive one-year contract positions with the Navy Construction Group in California.[29] Tr. 193:18–194:1. As was true when he took the contract position, Turner intends and has always intended to return to Muscogee County. Tr. 194:11–16. He has never considered California to be his home, and in fact has set his resignation from his California contract position effective April 1, 2024. Tr. 197:8–198:7. For this job, Turner has leased an apartment in California, admittedly resides there, and lists his California address as his residence on various public websites and social media accounts.[30] Tr. 241:2–3, 244:7–246:24. He admits if a "reasonable person" did not know him that he or she may assume that he had moved to

_____

[29] While Turner intended to only stay in California for one one-year contract term, he had to extend his contract because of Covid-19 and to ensure the next group of people had been trained for the work. Tr. 195:10–21.

[30] Despite Defense Counsel's representations that documentary evidence of these website exhibits would be entered in the case (see, e.g., Tr. 242:17–21, 244:17–19) they never were. Doc. No. [329]. Plaintiffs did not object to Turner testifying from these documents without their admission, and thus the Court will consider Turner's testimony regarding the reasonableness of someone's belief of his residency without giving any evidentiary weight to the documents themselves.

59

California. Tr. 247:5–24. Turner maintains, however, that for official purposes he is a resident of Muscogee County. Tr. 251:24–252:5.

Turner votes at every opportunity presented. Tr. 199:2–3. In 2020, he voted in the primary election, the general election, and the runoff election by absentee ballot. Tr. 200:2–15. Before the Senate runoff election, however, Turner noticed that everyone he knew had received their absentee ballots while he had not yet received his. Tr. 201:4–10. He called Muscogee County's registrar and was informed that his vote had been challenged. Tr. 201:11–17. In response, he filed a lawsuit to ensure his ballot was cast and that he was given the opportunity to vote. Tr. 202:12–19. Turner testified that it was Alton Russell who challenged his voting eligibility in 2020.[31] Tr. 316:9–12. Turner has no admissible evidence, however, connecting Russell to the Defendants in this case. Tr. 320:1–12.

Turner's voting eligibility had not been challenged prior to the Senate runoff election. Tr. 203:25–204:2. He described his response as: "Anguish. Confusion. [P]ossible PTSD from having to revisit the '60s and voting in Georgia

_____

[31] He met Russell at the filming of a documentary about the challenge, where they discussed the Section 230 challenges filed. Tr. 316:20–317:6. The Court maintains its oral ruling at trial that the contents of this conversation are inadmissible hearsay.

on a personal level." Tr. 202:1–3. After having grown up a Black man in the Civil Rights Era, he again became concerned and doubtful about his vote being counted. Tr. 204:10–16.

Turner understands that the Postal Service will not forward an official ballot. Tr. 215:23–216:9. He, however, maintains that he has had continual problems with getting the Muscogee County Board of Elections to get his California mailing address on file and must call every time that he needs an absentee ballot. Tr. 219:16–220:22 (testifying that he called three times to get his ballot sent and had personally given his California address to the Board of Elections). He asserts that a flaw in the process has kept him from receiving his ballot. Tr. 227:1–22.

Turner did not know any of the Defendants in this case. Tr. 234:22–24. He had never spoken to or had any statement made directly to him by Defendants Engelbrecht, Somerville, Williams, Johnson, or Cooper.[32] Tr. 235:3–236:10. Turner testified that no one "terrorized" him or otherwise threatened or coerced him in his voting efforts for the 2020 Senate run off election. Tr. 302:1–9. His discomfort

---

[32] Defense did not elicit this testimony in relation to Defendant Davis, but there is no evidence that Davis contacted or spoke directly to Turner.

stems from "acceptance that the process is not working . . . [and that there is] a continued problem"—though he defined the problem as "not forward[ing] an absentee ballot" to the address on the NCOA form. Tr. 302:10–24.

The Court credits Turner's testimony about his experience of being challenged under Section 230. Turner testified thoroughly and consistently about his experience of voting in the 2020 Senate runoff election, without contradicting himself or any documentary evidence. Thus, the Court will weigh his testimony accordingly in rendering its conclusions.

### b)  Stephanie Stinetorf

Plaintiffs next called Stephanie Stinetorf, a Muscogee County voter. Stinetorf has lived in Germany working as a Department of Defense civilian federal employee since 2020. Tr. 448:3–16. Prior to moving to Germany, she and her family lived in Muscogee County. Tr. 447:7–17. They had bought a house, got a driver's licenses, registered cars and "fully settled" intending to make a life in Muscogee County. Tr. 447:7–17.

Once she and her family had relocated to Germany, Stinetorf changed her mailing address but properly continued to vote in Muscogee County because she had no other residency established in the United States at the time. Tr.

62

449:17–450:6. In the 2020 general election, Stinetorf voted by absentee ballot without incident. Tr. 450:10–451:14. In the runoff election, however, Stinetorf checked the status of her ballot and found that it was marked "challenged." Tr 452:5–13. She reached out to election officials, and a couple of days later, on December 24, 2020, a Muscogee County official contacted her. Tr. 456:4–20. This official informed her that "Austin [sic] Russell" had filed a number of challenges to Muscogee County voters, including Stinetorf, but that upon review of her application and ballot, the Board overturned the challenge against her and submitted her ballot. Tr. 456:20–457:4, 468:4–13.

Discovering her ballot to have been challenged was "stressful and "overwhelming." Tr. 453:1–8; 458:2–5 (testifying that her experience voting in the Senate runoff election as a challenged voter was "stressful, confusing, and little scary"). Stinetorf did not understand what she had done wrong and questioned whether she should be voting from overseas. Tr. 453:16–24. Stinetorf remains concerned about voting in future elections especially by absentee ballot. Tr. 458:10–21.

Defendants insinuated that Stinetorf's ballot had not been challenged given an email received on December 23, 2023, asserting that her ballot was

"received and accepted in [the Muscogee County Elections and Registration Office] on 12/11/2020." Doc. No. [304-2], 3.[33] However, other emails received by Stinetorf from the Muscogee County Board of Elections between December 22, 2020 and December 24, 2020, indicate that Stinetorf's ballot had indeed been challenged. Doc. No. [306-1], 2, ("I did speak with my Director and she was able to get the issue [of the challenged ballot] resolved for you[.]"), 3 ("The challenge [to] your[ ] voter registration[ has] been removed, and your ballots have been accepted."). In the light of this documentation and Stinetorf's general credibility, the Court finds that Stinetorf's vote had indeed been challenged.

Stinetorf could not name any Defendant in this case besides True the Vote. Tr. 464:2–465:24. As far as she is aware, she had no direct contact with any representative from TTV. Tr. 465:13–18. She further disclaimed ever having been contacted by or directly communicating with Defendants Cooper, Johnson, Williams, Somerville, Engelbrecht, or Davis. Tr. 464:5–465:24.

---

[33] The Court took judicial notice of the complete email correspondence between Stinetorf and Muscogee County in its order for judicial notice (Doc. No. [334]), which perfected the record of its oral ruling at trial (Tr. 1920:5–14).

64

The Court finds Stinetorf's testimony to be credible. She testified with candor and in a manner consistent with the documentary evidence in this case. The Court thereby credits her testimony and will weigh her experience of being a challenged voter accordingly,

### c)   Ryan Germany

Ryan Germany, former general counsel for the Georgia Secretary of State's Office, also testified in Plaintiff's case-in-chief. Tr. 483:15–18. The Court finds that Germany's testimony is particularly credible in this case. Not only is Germany a non-party without any personal interest in this matter, he also served as general counsel for the Secretary of State for nine years. Tr. 483:15–18. Holding this position for nearly a decade affords his testimony significant weight because of his particular knowledge of Georgia's election regulations and procedures. Tr. 483:19–484:11. Germany testified consistently at trial and provided thorough, balanced answers to the questions asked. The Court weighs his testimony accordingly.

Germany substantively testified that the federal regulations (namely, the NVRA) often make the State's voter list maintenance difficult. Tr. 510:7–10. He emphasized the 90-day blackout period before an election for systematic

65

removals and the lengthy process of removing unresponsive NCOA voters as particular regulations making the State's maintenance programs difficult. Tr. 511:3–512:2. At the Secretary of State's office, NCOA data is used as a basis for further inquiring into a voter's residency through sending the voter a form inquiring about their residency. Tr. 485:9–486:8. If the voter does not respond to the form, then they are moved to inactive status. [34] Tr. 486:15–487:1. If they respond, then the Secretary of State's office updates their records accordingly. Tr. 486:1–14. Residency determinations, however, are "complicated" and "very much an individualized case-by-case analysis." Tr. 488:21–25.

After the 2020 general election, the Secretary of State's office received a list of people believed to have moved out of state and thereby ineligible to vote in Georgia. Tr. 487:10–25. This spreadsheet of 8,000 names (Tr. 508:24–509:1) was not individualized. Tr. 500:10–13. Germany expressly testified that he did not think the list came from TTV but could not say if it came from the other Defendants. Tr. 492:10–17, 503:1–9. This list included UOCAVA voters and some obvious military addresses. Tr. 487:22–488:14. Once removing these obviously

---

[34] If an inactive voter does not vote in the next two general election cycles (i.e., over the next four years), then the voter is removed from the rolls. Tr. 486:24–487:1.

66

eligible voters, the Secretary of State's office sent out a form inquiring about residency. Tr. 489:1–11. Of the 8,000 voters initially on the list given, a little over a 1,000 responded. Tr. 489:1–11, 492:24–493:1; PX 8. Of these 1,000 responses, 26 reported being in the "process of relocating" and 13 reported having "relocated prior to July 2020."[35] PX 8. Any voters who had relocated were sent a "voter cancelation form" to update their Georgia voting registration. PX 8. Germany was unaware of any intimidation felt by this survey. Tr. 509:6–8.

Germany confirmed that, in the light of these regulations on the State, one of the few remaining ways to scrutinize voter rolls immediately prior to an election was an eligibility challenge under O.C.G.A. § 21-2-230. Tr. 513:5–8. In describing the Section 230 process for individual voters to challenge potentially ineligible voters, Germany highlighted the importance of the county Board of Elections in the Section 230 process. Specifically, Germany testified that the first step to be taken after receiving a Section 230 challenge was to determine if probable cause existed to inquire further into a challenge. Tr. 501:18–25. The Board of Elections solely makes this determination. Tr. 501:18–25, 505:5–22. While

---

[35]  The memo indicated that a "reasonable" rate of ineligible voters to have come from this list was around 98 voters. PX 8.

the Boards of Election certainly have to comply with relevant laws and regulations, ultimately how to proceed with the challenge remains in the discretion of the county. Tr. 505:18–19. If there is no probable cause finding, then the Section 230 analysis stops. Tr. 506:6–13.

Germany testified to a specific mass challenge of potentially ineligible voters before the 2020 Senate runoff election filed by True the Vote. Tr. 484:13–21. Germany recalled that TTV crafted its lists based on NCOA data. Tr. 484:20–21. Germany testified about attending a meeting held with the Secretary of State's office and True the Vote between the 2020 general election and Senate runoff election. Tr. 495:11–14, 496:8–497:7. Germany indicated TTV (via Engelbrecht) informed the Secretary of State's office about their plans to file Section 230 voter challenges. Tr. 496:20–23. Germany emphasized that Section 230 challenges are intended to be made on an individualized basis and that TTV needed to ensure there was sufficient evidence for each voter, "and not just basically a list of people without [any] kind of individualized evidence." [36] Tr. 497:1–7. Germany also

---

[36] This testimony came in over hearsay objections as it was offered for the effect on the listener (i.e., TTV/Engelbrecht's understanding of the Section 230 challenge process). Tr. 497:8–16. Consequently, the Court does not credit this testimony as true, but merely that TTV has been told of the need for an individualized inquiry in making Section 230 challenges.

testified to raising concerns over TTV's challenges, especially if they just handed over a "bunch of names," which Germany perceived would not be sufficient for the counties to move forward. Tr. 498:19–24, 499:13–15 ("[I]t's spelled out in Georgia law, that it needs to be an individualized approach for each voter."). Part of Germany's concern involved the hectic electoral environment before the Senate runoff election. Tr. 499:1–8 ("[T]his was a time when counties were still completing duties related to the 2020 general election, getting ready for a very high-profile election in January."). Germany also indicated that merely using a list of NCOA voters would be insufficient for a Section 230 challenge to move forward. Tr. 502:15–17. He did not recall there being any pushback from TTV in the meeting about the Section 230 process. Tr. 500:14–20.

As the Court indicated, it finds Germany's testimony to be particularly credible in this case given his impartiality and prior experience in the Georgia Secretary of State's office. Thus, to the extent that Engelbrecht's testimony about this meeting differed from Germany's account, the Court credits Germany over Engelbrecht. The Court finds that Germany's account will be given significant weight in its ultimate conclusions of law.

69

#### d)  Clair Joseph Martin

Plaintiff also played excerpts from a video deposition taken of Mr. Clair Joseph Martin. At the relevant time, Martin lived in Taliaferro County and had been registered to vote there since 2008. PX 94, 16:12–19. Defendant James Cooper reached out to Martin about serving as a volunteer challenger before the Georgia Senate runoff election. PX 94, 16:20–17:1. Both Martin and Cooper were part of GOP leadership in the State and had only limited familiarity with one another previously. PX 94, 17:2–12. When first presented with the request to be a volunteer challenger, Martin did not know of True the Vote's involvement and believed the initiative to be related to the GOP. PX 94, 21:13–22. Martin agreed to be the volunteer to submit challenges in Taliaferro County. PX 94, 23:5–19.

Once Martin discovered that this was not a GOP led initiative, he asked to see the list of potentially ineligible voters made by TTV. PX 94, 31:1–13. Cooper sent Martin TTV's list of Taliaferro County voters sometime in December. PX 94, 46:9–20. From there, he "took a different path to [the] challenge." PX 94, 38:13–14. He sent the list of 37 names to a member of his GOP leadership and discovered that 3 of the 37 names on the list had already submitted absentee ballots. PX 94,

70

39:3–10, 49:16–50:2. Martin thereafter opted to make a smaller set of challenges for these 3 individuals. PX 94, 54:1–17.

Martin discovered 2 of the 3 voters challenged were eligible to vote in Taliaferro County, and that the remaining voter (who was ineligible) had already been adequately addressed by the county Board. PX 94, 61:12–65:9; PX 93, 65:10–66:17. These discoveries reinforced Martin's concern about the TTV list. PX 94, 69:2–8. Martin thereafter withdrew all of his Section 230 challenges. PX 38; PX 39; PX 81.

At trial, Defendants questioned the documentary evidence pertaining to Martin's Taliaferro County voter challenges, specifically Martin's letter to the Board of Elections on December 17, 2020, challenging 37 voters. PX 69. Engelbrecht further testified that this letter did not match the form document TTV used to submit challenges. Tr. 1851:4–1852:20. Engelbrecht indicated that it was clear Martin was "also doing individual challenges" and taking actions independent of TTV. Tr. 1852:8–12. In his deposition testimony, Martin clarifies that he drafted this letter and sent it to Cooper "as a draft of what [Martin] was going to send." PX 93, 91:5–9. He did not ultimately sign or send the letter, however. PX 93, 91:5–14. Engelbrecht admitted that TTV made a submission "at

71

his behest" before they received his withdrawal email. Tr. 1852:13–15. Thus, the Court can credit Engelbrecht's testimony that this letter did not match TTV's ordinary document because it was, in fact, not their generic form for challenges—it had been made by Martin and sent to Cooper for review before officially filing it. The Court can also credit Martin's testimony that TTV submitted, per Engelbrecht's own admission, a challenge in Taliaferro County using his name.

Martin never discovered how TTV generated its list of challenged voters. PX 94, 50:17–20. In fact, at the time TTV was making challenges in Taliaferro County, Martin "did not know what True the Vote was doing." PX 94, 56:4–5. When Martin finally reviewed TTV's submission of the voter challenges TTV made—which he was not copied on—he noted that it looked like a "generic" message sent to every county. PX 94, 56:1–22. Martin in fact did not learn that TTV submitted this challenge until after the litigation in this case had commenced. PX 94, 57:5–15.

The Court finds Martin to be a highly credible witness. His deposition testimony was consistent and informative. He was upfront about his experience with True the Vote and the Section 230 challenge process. Notably, the Court

72

finds Martin to be particularly reliable because while his partisanship affiliation at the time of the Section 230 challenges was more aligned with True the Vote's interest, Martin still engaged in a deliberate investigation and testified with candor. The Court weighs his testimony heavily in its conclusions.

### e)    Amy Holsworth

Plaintiff also called Amy Holsworth as an adverse witness.[37] Holsworth was a contractor for TTV between September 2020 and July 2021, and thus was part of the team engaging in the Section 230 challenges in Georgia. Tr. 1370:7–9. She had knowledge of TTV's election integrity hotline, which received "a substantial amount of phone calls." Tr. 1371:1–5. She also was familiar with the whistleblower compensation fund. Tr. 1371:11–16. She rejected the suggestion that the announcement of the whistleblower fund increased calls to the hotline, and instead attributed the increase in calls to the proximity of the election. Tr. 1371:17–24.

As far as TTV's Section 230 challenges are concerned, Holsworth served as the contact between the volunteer challengers and TTV. She made sure they

---

[37]    Defendants never questioned Holsworth because they reserved their direct examination for their case-in-chief, but then never recalled Holsworth as a witness.

understood the process and received their consent to submit challenges on their behalf. Tr. 1372:3–12. Another TTV team member actually submitted the challenges through the TTV email address. Tr. 1372:25–1373:25. As far as Holsworth was aware, TTV sent these emails containing the challenge letters directly to the counties without the volunteer challenger being part of the process. Tr 1373:18–21.

While Plaintiffs attempted to elicit testimony from Holsworth regarding TTV's volunteer challenger in Muscogee County, they were unable to do so. While Holsworth identified the excel spreadsheet as TTV's challenger list (Tr. 1374:1–10), she expressly testified that she did not recall the names of specific challengers on that list and, even upon reviewing the file, could not testify from personal recollection about the Muscogee County challenger without reading directly from the spreadsheet. Tr. 1374:4–8, 1375:15–24 ("I would have no idea without looking at the spreadsheet."), 1376:5–7 ("[I]f it was on the spreadsheet then it was on the spreadsheet. I don't—I don't have any recollection of it being on the spreadsheet without seeing the spreadsheet."). Thus, the Court does not find Holsworth's testimony to support any factual finding regarding the TTV challenger volunteer in Muscogee County. The spreadsheet itself, moreover, was

74

not admitted into evidence because of a lack of foundation.[38] See Doc. No. [328] (excluding as denied from Plaintiff's exhibit list "PX 86" which was a "[l]ist of voter challengers from TTV").

The Court generally finds Holsworth's testimony to be credible and will be afforded due weight and consideration. The Court will thereby appropriately weigh her testimony regarding the election integrity hotline and the whistleblower compensation fund, in addition to the mechanics of TTV's process in submitting its Section 230 challenges through volunteers.

### 3. *Expert Witnesses at Trial*

Plaintiffs also tendered two expert witnesses at trial, (a) Dr. Kenneth Mayer and (b) Dr. Orville Burton. The Court makes the following findings of fact with regard to these expert witnesses' reports and testimonies.

### a) <u>Dr. Kenneth Mayer</u>

Plaintiffs tendered Dr. Kenneth Mayer as an expert witness in political science, quantitative analysis, election administration, and voter behavior. Tr. 327:24–328:6. Dr. Mayer is a full professor at the University of

---

[38] The Court thereby finds that Holsworth's testimony about the color-coding used to track each county's volunteer status (Tr. 1377:19–1380:22) to be insignificant given the Court cannot review the highlighting on the document.

Wisconsin-Madison, having completed graduate studies in econometrics and statistics. Tr. 325:6–23. He has testified as an expert witness in numerous cases where courts credited his opinions and relied on his analysis. PX 15, 11; Tr. 327:16–21. He has never been excluded as an expert witness under <u>Daubert</u> or other expert standards. PX 15, 11. Defendants did not object to Mayer being tendered as an expert in this case. Tr. 328:4–6. The Court has reviewed Mayer's qualifications and observed him during his testimony. He testified clearly, reliably, and objectively. The Court has no reason to doubt that he used sound methodology in reaching his conclusions, consistent with the standards in his professional field. The Court credits his expert report and testimony, and affords it great weight.

In this case, Plaintiffs asked Mayer to assess True the Vote's challenge file of potentially ineligible voters and to assess the reliability of this data in relation to the Georgia voter file. Tr. 330:2–5. Mayer only assessed TTV's file (not the Davis and Somerville list (Tr. 372:21–23)) and only looked at the counties that had a volunteer to make challenges. Tr. 330:2–3 ("I was asked to analyze the challenge files that True the Vote offered in 65 Georgia counties."). He concluded that

76

TTV's file was filled with errors, many of which were "obvious" to even an untrained eye upon "immediate inspection." Tr. 331:1–332:8, 390:6–25.

Mayer first criticizes TTV's premise of making the challenges, expressly disclaiming any empirical evidence of voter fraud or large-scale instances of ineligible individuals casting ballots. PX 15, 13; Tr. 332:13–334:2. Specifically, in Georgia, Mayer points out that the Secretary of State's office audited the absentee ballots cast in Cobb County and concluded that not one invalid absentee ballot had been cast in 2020. Tr. 332:22–25. Hence the underlying rationale for TTV's voter challenges is, in Mayer's view, empirically unsupportable.

For TTV's actual data set, Mayer testified that TTV's "record linkage" process was inadequate under professional standards. PX 15, 1; Tr. 334:4–20. Namely, TTV attempted to take two large datasets and determine if a voter on one list (i.e., a potentially ineligible voter based on NCOA data) is the same as a voter on the other list (i.e., the Georgia voter file), which is a difficult analysis ripe with potential problems. Tr. 334:9–20. In academic study, when a scholar undertakes this analysis, he or she clearly defines the exact procedures used for assurance of reliability and replication. Tr. 334:12–20. Such description was missing from TTV's process. Tr. 417:8–11 ("[I]f I had a complete and accurate and

reliable explanation of what True the Vote actually did and what that process looked like, I would have used that information in my analysis. *But that didn't exist*." (emphasis added)).

What Mayer did have access to, however, showed that TTV used the NCOA file and the Georgia voter file in their record linkage process—which was insufficient for proper analysis. Not only has the NCOA file been criticized as carrying a high risk of false positives[39] (PX 15, 33; Tr. 344:20–25), it also lacks any unique identifier—"some data field or combination of data fields that uniquely identifies an individual, such that when we see those values in those fields, that we can be certain or very confident that any other time you see those fields we're talking about the same person." Tr. 339:14–18; PX 15, 1 & 16–17. Of the two datasets, only the voter file contains a single unique identifier: the voter ID number. Tr. 340:4–25. TTV, however, did not use the voter ID number in making their list. Tr. 341:4–6. Mayer testified that the risk of this omission is that the process could "be matching or linking to the wrong person" and "by definition

---

[39] Mayer also cites to academic literature finding that these false positives are more likely to be made on minority voters than white voters. Tr. 413:1–7.

[it] increases the probability that you're linking to a different individual in the [other] file." Tr. 341:12–13, 341:25–342:1.

And indeed, Mayer found evidence of such mistakes in TTV's list. He found numerous duplicated names and addresses, meaning more than one person had the same first and last name and address. PX 15, 4; Tr. 342:2–11. Mayer found over ten thousand instances of challenged voters where the data lacked any information about the address where the voter moved. PX 15, 5; Tr. 349:13–15. On the list of potentially ineligible voters in Henry County specifically (which included over 9,000 voters), each record had the *municipality* of the voter's registration where a voter's *zip code* was supposed to be. PX 15, 5 & 27; Tr. 350:17–25. The TTV file generally contained misspellings and variations in recounting city names, indicating "a problem or a lack of quality control." Tr. 351:4–9; PX 15, 6 & 28. He found 240 instances where the voter in the voter file had a different name than the person in the NCOA file. PX 15, 6; Tr. 35113–19. In 5 cases, the registration address of the voter and the "moved-to" address were the same. PX 15, 6 & 28; Tr. 352:10–15, 363:13–16. A number of voters in the challenge file had "moved-to" addresses within the same county as their prior registration address, which under Georgia law allows the voter to "retain[ ] their

79

eligibility to vote in a presidential or Senate election." Tr. 353:13–15; PX 15, 6 & 28. In over 6,000 cases, the challenged voter re-registered at the address to which they moved, and in several hundred instances TTV challenged a voter who was not registered in Georgia. PX 15, 6 & 29; Tr. 353:23–25, 354:4–7. Mayer's overall conclusion based on these errors was that "the challenge file is just rife with errors" and "it just took [his] breath away how sloppy it was." Tr. 355:11–14; <u>see also</u> PX 15, 42–43 (summarizing the errors found).

Mayer also raised concerns about relying on the NCOA data as a basis for concluding that someone had moved permanently for a residency determination of a voter's registration address. He specified a number of categories of people who might be on a NCOA list but still eligible to vote at their prior address, such as people in the military and students away at college or university.[40] PX 15, 30–32; Tr. 359:1–360:8; <u>see also</u> Tr. 356 (stating that 397 of TTV's challenged voters "resided literally on a military installation"). He testified that while TTV indicated they removed students and military members from its file, the results

---

[40] Mayer's broad method of approximating the number of students and military service members is described in the body of his report and his data are contained in Appendix A. <u>See</u> PX 15, 30–32 & 49–56.

show that "it was not done . . . with a lot of accuracy." Tr. 399:5–10. Mayer admits, however, that removing all students or military members who did not reside on a military base from a challenge file would be difficult given a lack of publicly available information. Tr. 396:19–23, 401:1–2. Mayer accepted some ineligible voters may appear in TTV's file, but that ultimately "there [were] so many glaring examples of errors in [the] process" the file itself was unreliable on the whole. Tr. 367:1–8.

Mayer further opined in his report extensively on TTV's "selection" of counties in which to submit challenges. PX 15, 34–37; see also Tr. 347:18–348:10. The Court will not weigh these conclusions and testimony heavily given the great weight of evidence showing that TTV made challenges in counties in which they had volunteer challengers. [41] The Court does not fault Mayer for these conclusions given the information he had available, however. The Court specifically credits Mayer's trial testimony that even if the counties were not

_____

[41]   Thus, the Court does not find Mayer's conclusion that TTV's challenges disproportionately involved counties with higher Black populations to be particularly persuasive. PX 15, 3. The Court, however, acknowledges and considers the historical context of Black voters and how current voter challenges may affect Black voters differently than white voters, namely in relation to the testimony of Gamaliel Turner. See Section (III)(B)(3)(b) & note 69 *infra*.

81

intentionally selected by TTV, this fact does not alter Mayer's conclusions on the sloppiness or the unreliability of TTV's dataset. Tr. 380:1–381:19, 385:21–24 ("[M]y conclusions do not depend on these being the counties that were selected. Most of my report is about the observable errors and problems with the files that were produced.").

Mayer was not asked to and did not assess the actual impact of TTV's challenges on any actual voter. Tr. 391:20–24. He instead connected the unreliability of the TTV's challenge file to the well-known and well-regarded cost of voting theory. PX 15, 8. Under this theory, the higher the cost of voting, the less likely that a voter will indeed vote in an election. When a voter's eligibility is challenged, it is possible that the voter would have to submit additional documentation or attend further proceedings in order to prove their residency, which results in "enormously high" "administrative and time and opportunity costs." Tr. 368:9–19. Given the size of TTV's challenge file, Mayer concluded that "the almost certain effect, or certainly the likely effect, as there were, there were voters whose eligibility was challenged and it made it much more difficult for them to vote." Tr. 371:1–5. Mayer admitted, however, that once a challenge is made, the county Board of Election ultimately determines what additional steps

(if any) a voter must go through to prove his or her eligibility to vote. Tr. 369:1–19 ("[T]he costs [discussed] [are created by] the local board"). Mayer also stated that the determination of a voter's eligibility is up to the county Boards of Election. Tr. 389:24–390:1.

Defendants did not submit any expert rebuttal to Mayer's report and testimony. They instead attempted to rebut his conclusions with the testimony of Engelbrecht herself.[42] Not only does Engelbrecht's testimony not carry the same weight of expertise as Mayer's (and the Court weighs it accordingly), but Mayer even addressed some of Engelbrecht's points about TTV's process, such as using SmartyStreets or fuzzy logic.[43] See, e.g., Tr. 1899:2–1901:23. Mayer testified that these processes were inadequately described in the documents he reviewed and, more importantly, even if TTV did use these processes Mayer "can look at the data itself and conclude that whatever they did, it was not sufficient because

_____

[42] Defendants, even to an extent, tried to use Davis's and Somerville's testimony to rebut Mayer's conclusions on the TTV list. The Court finds Davis and Somerville's attempted rebuttal testimony to be particularly unpersuasive given that they both disclaim knowing much, if anything, about the TTV process of creating its challenger list and even criticize the list as being too broad. See, e.g., Tr. 1157:5–9, 1158:13–15, 1486:4–10, 1657:25–1658:2, 1659:9–15.

[43] The same conclusion applies to the deposition designations submitted for Gregg Phillips. See, e.g., PX 102, 111:2–112:19, 114:8–18 (testifying of OpSec's use of SmartyStreets).

83

there are still errors in the actual files that they created." Tr. 346:16–18. Similarly, despite Mayer's submission that middle names were absent from TTV's file (Tr. 415:11–16) and Engelbrecht's maintenance that the TTV file included middle names (Tr. 1893:10–12), the Court credits Mayer's testimony that the inclusion of middle names would not "affect my overall conclusion about . . . the flaws in that process and the accuracy and reliability issues that we can directly see in the data[.]" Tr. 415:16–19.

In sum, the Court finds Mayer's expert testimony and evidence to be reliable and unrebutted, and thereby affords it due weight in rendering its legal conclusions.

### b) Dr. Orville Burton

Plaintiffs also tendered Dr. Orville Burton as an expert in "the history of racial discrimination, voting, and politics in the South, including in Georgia." Tr. 605:22–606:4. Burton is currently a Professor of History and Professor of Pan-African Studies, Sociology, Anthropology, and Computer Science at Clemson University. PX 16, 3. He has had a distinguished multi-decade academic career and has published prolifically in his field. PX 16, 3 & 34–50. He has served as expert witness in several voting rights cases in prior decades. PX 16, 4.

84

Courts—including this one[44]—have accepted his expert testimony in both statistical analysis and in the history of discrimination and discriminatory intent in laws. PX 16, 4.

Following voir dire, Defendants did not object to Burton's qualifications to provide expert testimony in this case. Tr. 605:18–25. The Court has reviewed Burton's qualifications and observed him during his testimony. He testified clearly, reliably, and objectively. The Court finds that he used sound methodology in reaching his conclusions, consistent with the standards in his professional field.[45] The Court credits Burton's expert report and testimony, and affords it great weight.

Burton recounted the history of voter challenges in Georgia's history, starting in 1867 and through TTV's challenges in 2020. He reported on a number of voter challenges in the 1940s and 1950s, as well as the 1980s and 2000s. PX 16,

---

[44]   See Alpha Phi Alpha Fraternity Inc. v. Raffensperger, No. 1:21-CV-05337-SCJ, 2023 WL 7037537, at *42 (N.D. Ga. Oct. 26, 2023).

[45]   Defendants attempted to impugn Burton's report and testimony by emphasizing Burton's lack of statistical analysis and taking issue with his reference to newspapers and news articles in reaching his conclusions. Tr. 600:20–601:1, 695:3–22. However, the Court is persuaded by Burton's explanation that he was not retained in this case to provide quantitative analysis and that news articles (in paper or electronic form) are legitimate sources for reaching his conclusions based on historians' professional standards. Thus, the Court does not find Burton's methods to be lacking in this case.

85

11–17. When Georgia first passed its voter challenge law, it had the momentous effect of decreasing the number of Black voters registered in Georgia by 75%. PX 16, 10; Tr. 614:3–10. Disenfranchisement from voter challenges continued into the 20th and 21st centuries. Tr. 617:18–620:23; see also, e.g., PX 16, 16–17 (recalling an instance in 2004 where a county commissioner persuaded non-eligible Latinos to vote and then used these registrations as a basis for challenging all Hispanic voters).

More recently and most relevantly, Burton opined on True the Vote's voter challenges and other election activities in the period before the Senate runoff election. PX 16, 20–27. Burton highlighted that between 2010 and 2020, Georgia experienced significant increases in its minority populations, both from a numeric perspective and a political perspective. At the time of the Senate runoff election, in fact, Georgia anticipated its first Black Senator to be elected to Congress. Tr. 621:21–24. "[I]t [was] a major invisible shift of the power of this demographic shift of people voting and having an effect on the elections." Tr. 622:4–6.

True the Vote's intent to challenge over 360,000 Georgian voters "dwarf[ed]" prior voter challenges under Georgia law. Tr. 627:5–12. Burton

86

opined that such a challenge can result in voter intimidation given the historical context of voter challenges. Tr. 627:21–628:14. Given its gravity and proximity to the election, moreover, Burton feared that this mass challenge would overwhelm local election boards and would not give challenged voters adequate time to resolve the challenge. Tr. 628:18–25. The timing was also significant because TTV's challenges occurred "immediately before Black Georgians exercised their full political power." PX 16, 24. Even if one is able to prove his or her eligibility to vote, Burton still testified that a challenge would have an effect on voters because of "the intimidating fact" that a voter has been singled out and must now prove their eligibility. Tr. 630:2–9; see also PX 16, 25 ("[V]oters may be reasonably hesitant to arrive at the polls to 'prove' their eligibility if it has been challenged, even if the voter is in fact eligible to vote."). Burton concluded that TTV's challenges here "fit perfectly into the historical pattern" of prior challenges made with increases in minority voting registration and political power. Tr. 630:25–632:7. Burton did acknowledge, however, the role of county Boards of Election in making decisions to act on a voter challenge made. Tr. 604:1–8.

Burton's report also discusses TTV's (a) recruitment of former law enforcement officers and military servicemembers to patrol polling places,

87

(b) partnership with the Republican Party in election assistance, and (c) establishment of the whistleblower fund and the voter fraud hotline. PX 16, 23 & 25–27. According to Burton, all of TTV's activities contributed to "sustain[ing] the discriminatory use of laws to disfranchise minority voters in the modern age." PX 16, 27.

To be sure, Burton did not testify with the aim of asking the Court to find Section 230 (and its near identical predecessors [46]) to be intentionally discriminatory. Tr. 611:6–9. He nevertheless recounted the history of discrimination in Georgia's voter challenge provision for context and as illustrative examples of the reasoning for the law itself (i.e., voter fraud) extending into the present. See Tr. 611:18–612:7, 619:16–18 (indicating the rationale for voter challenges in the 1980s to be voter fraud). Election integrity and concern over the Georgia voter rolls indeed motivated TTV's Section 230 challenges in this case.[47] See generally, e.g., Tr. 1765:19–1775:17.

_____

[46] Georgia's first voter challenge law is essentially the same as Section 230 at issue. PX 16, 9 n.9.

[47] While Davis and Somerville were likewise motivated by concerns over the Georgia voter roll, Burton's report and testimony did not discuss Davis's and Somerville's efforts or their use of Section 230. See generally PX 16.

The Court finds Burton's expert testimony and report to be credible. Consequently, it will properly weigh the relevance of his conclusions in its legal conclusions *infra*.

### C.   Weighing and Summation of the Court's Factual Findings

The Court has largely found the witnesses to be reliable in their testimony and must weigh the scope of their testimonies in the light of one another and the documentary evidence. Having now made its factual findings and credibility determinations on the evidence presented at trial, the Court now weighs this evidence and summarizes the following findings of fact. The Court proceeds by first discussing TTV's (and its associated co-Defendants') actions and then Davis's and Somerville's activities around the Senate runoff election time period.

#### 1.   *True the Vote's Alleged Voter Intimidation*

Based on the aforementioned findings regarding witnesses' testimony and credibility, the Court finds as follows with regard to True the Vote and any relevant individual Defendants.[48] The Court assessing and determining the legal

_____

[48] The Court includes Defendants Catherine Engelbrecht, Mark Williams, Ron Johnson, and James Cooper as TTV Defendants given these individuals' closely related actions to TTV's voter challenges and other election-related activities in the Senate runoff election time period. See Tr. 827:21–23 (Engelbrecht as president of TTV), Tr. 1333:17–20,

implications of (a) TTV's voter challenge list, (b) TTV's recruitment of volunteers and submission of challenges, and (c) any of TTV's other actions adduced at trial.

### a)   TTV's voter challenge list

Leading to the 2020 Senate runoff election in Georgia, TTV turned significant attention and resources to Georgia in an effort to ensure perceived election integrity and counteract any voter fraud. TTV learned of O.C.G.A. § 21-2-230, which allows an individual voter to challenge the voting eligibility of other voters on their county voter roll. TTV thereafter engaged with its data analytics partner, the OpSec Group, to create a list of potentially ineligible voters to use to facilitate a mass challenge under Section 230. Tr. 906:3–908:12; Tr. 913:24-914:2.

TTV's list utterly lacked reliability. Indeed, it verges on recklessness. The Court has heard no testimony and seen no evidence of any significant quality control efforts, or any expertise guiding the data process. Dr. Mayer convincingly communicated that a lack of description of the process makes any meaningful assessment of TTV's inputs impossible. Tr. 417:8–11. As far as the resulting list,

---

1349:16–21 (Williams hired to print TTV's Section 230 challenges and acting as a volunteer challenge), PX 96, 33:2–7, 34:3–9, 138:9–12 (Johnson and Cooper recruiting volunteer challengers in counties across Georgia).

90

Mayer's expert opinion rings without rebuttal: the list was shoddy and rife with errors.[49] Tr. 355:11–14; PX 15, 42–43. A mere visual inspection of the list by a layperson would have returned an obvious concern for the datasets used. It is clear that TTV did not engage in a quality process to create the list, nor did they have proper review or controls in place. Even the sheer size of the list spurred concerns by TTV's co-Defendants, who thought the mass list verged on being a systemic challenge. Tr. 1157:21–32 (Somerville); Tr. 1659:9–15 (Davis). Clair Joseph Martin's experience with the list reaffirms that TTV's list was not made with the proper care or deliberation, and that such errors became easily apparent to a lay person with a similar political interest as TTV. See Section (II)(B)(2)(d) *supra*.

Moreover, the Court finds that TTV was on notice that asserting a mass challenge in manner they chose would be outside the spirit of Section 230. Ryan Germany testified to having communicated to TTV and Engelbrecht that Section

---

[49] Mayer also testified that TTV and Engelbrecht's concerns about voter fraud were misplaced as an initial matter. PX 15, 13; Tr. 332:13–334:2. The Court finds that the third adverse inference allowed in its sanctions order offers additional support for the historically misplaced intentions and poor use of data by TTV and its associates. Doc. No. [333], 17 (allowing the inference that non-party, Gregg Phillips, "made public allegations about non-citizen voting in the 2016 election that were unfounded and unsupported by proper data and methods.").

91

230 challenges are intended to be made on an individualized basis. Tr. 497:1–7. Moreover, Germany indicated that, in his view, a challenge made based on NCOA data alone would be insufficient to support a Section 230 challenge. Tr. 502:15–17. While Engelbrecht's own recollection was that TTV "had done everything that we could and should do to support Georgia citizens to the fullest of the law . . ." (Tr. 1781:19–1782:21) and that she did not come away from the meeting with any belief that the TTV challenges would be in violation of Georgia law (Tr. 1784:9–13), the Court credits Germany's testimony over Engelbrecht's. Thus, the Court also finds, in weighing the evidence, that TTV acted having been warned that non-individualized Section 230 challenges based on NCOA data might be found to be insufficient for the county Boards of Election to pursue further inquiry.

b)     **TTV's volunteers for and submissions of Section 230 challenges**

The Court also finds that once TTV completed its list and Defendants Ron Johnson and James Cooper had found a volunteer challenger for a county, TTV typically sent the challenge letters *directly* to the county without oversight or review by the volunteer. Certainly, the evidence regarding TTV's involvement is

92

somewhat unclear. <u>Compare</u> Tr. 1044:3–5 ("We submitted on behalf of the volunteer directly to the county so that there would be no confusion in what was said or how it was said.") <u>with</u> Tr. 1045:19–21 ("[The challenger] absolutely could have done whatever [they wanted] . . . they [might have] decided to do something different."); <u>see also</u> Tr. 1047:25–1048:3 (affirming that "the challenges for the most part were submitted through an email address created by True the Vote[.]"); Tr. 1373:18–25 (describing the process of sending counties the challenge file from the TTV email address and that Holsworth's understanding was that "the actual challenger themselves would not be involved in [the] process of sending the challenge materials directly to the county"). This conclusion is based on the fact that the only testimony indicating a volunteer's active role in overseeing the list came from Engelbrecht herself and is dwarfed by contrary evidence. Indeed, Martin's experience was anomalous. PX 96, 96:18–19 ("As far as I know, Mr. Martin is the only [volunteer] that did challenges on his own."). Consequently, the Court finds that typically TTV directly submitted the voter challenge file to the county on behalf of its volunteer challenger.

93

### c)     **TTV's actions and Georgia voters**

The Court now makes its factual findings in reference to all of TTV's election-relation activities adduced at trial as they pertain to voters in Georgia. During the Senate runoff election time period, in addition to the facilitated Section 230 challenges, TTV made statements—in online postings or through Engelbrecht's podcast—about compensating whistleblowers of voter fraud, recruiting former military servicemembers as poll workers, and initiating lawsuits to challenge election returns. TTV engaged in all of these activities with the asserted purpose of ensuring the integrity of the elections, and in Georgia specifically because of the national implication of the runoff elections (i.e., that it would determine political control of the Senate).

While the Court finds that TTV's challenge list was poorly created and carried the enormous possibility of challenging voters' eligibility who were in fact eligible voters in Georgia, there is little evidence connecting TTV's efforts to any particular voter in Georgia: overall, four voters testified at trial, three from Muscogee County and one from Banks County.[50] The Court now weighs the

---

[50] The Court affords the impact of TTV's purported challenge of Plaintiff Jane Doe negligible weight given the unreliability of the evidence submitted in support and will

94

evidence relating to Plaintiffs' evidence of voter intimidation and makes its factual findings accordingly.

### (1) *Muscogee County voters*

Of the four voters who testified, three were from Muscogee County. There was significant discussion and effort at trial to connect True the Vote, or the other Defendants, to Alton Russell—a Muscogee County voter who submitted Section 230 challenges. Gamaliel Turner testified that he knew Alton Russell challenged his eligibility to vote. Tr. 316:9–12. Stephanie Stinetorf attested to having a "letter from [Alton] Russell challenging [her] vote." Tr 472:21–22. Berson likewise knew that Russell had made the voter challenge against him, but could not connect Russell's challenges to any Defendant. Tr. 112:9–15, 130:16–18.

However, no evidence connects Russell to True the Vote's challenge list. The Court rejects Plaintiffs' attempt to use testimony by Amy Holsworth from an unsuccessful memory refresh to establish any connection between True the Vote and Alton Russell.[51] Holsworth specifically indicated that she did not "have any

_____

not dwell on it further at this time. The Court reemphasizes the evidence involving Jane Doe's challenge, however, does not change the Court's overall conclusion and even reinforces the causation issues present in this case.

[51] In fact, the Court finds Plaintiffs' attempt to assert in their proposed findings of fact

recollection of [Russell's name] being on the spreadsheet without seeing the spreadsheet." Tr. 1376:6–7. Accordingly, the Court cannot credit Holsworth's testimony that Russell's name appeared on the True the Vote list as it lacks proper foundation. Moreover, without a proper foundation, the Court did not allow the True the Vote excel file tracking its volunteers into evidence. Thus, there is nothing in the record connecting Alton Russell to True the Vote. See, e.g., Tr. 1740:4–5, 1741:20–22 (Mark Williams testifying that he did not know Alton Russell and did not have knowledge that Russell was involved with TTV), Tr. 1047:15–16 (Engelbrecht denying knowledge of Alton Russell) & 1839:8–19 (Engelbrecht further denying knowledge of Alton Russell, any affiliation between TTV and Russell, or TTV's coordination with Russell to submit voter challenges in Muscogee County).

### (2)   *Banks County voter*

The remaining voter who testified, Plaintiff Jocelyn Heredia, TTV challenged in Banks County through volunteer challenger, Jerry Boling. PX 49;

---

that Alton Russell challenged voters on behalf of TTV in Muscogee County based on Holsworth's testimony to lack candor. Doc. No. [318], ¶ 44 (indicating parenthetically "Ms. Holsworth [identified] Mr. Russell as True the Vote's Muscogee County challenger").

Tr. 1026:23–1027:1 (admitting that TTV and Boling worked together to challenge voters in Banks County).

The Court does not find that a challenge to Heredia's voting eligibility, however, was unreasonable. Heredia had lived in three different apartments—and had worked—in Atlanta for the three years prior to voting in Banks County in the Senate runoff election. While Heredia testified compellingly that in 2020 she was still spending a lot of time in Banks County and would have considered herself to be living in both Atlanta and Banks County (see, e.g., Tr. 547:5–14, 572:7–9), the Court finds that there was a reasonable question about her residency for purposes of voting in the 2020 elections. Heredia even admitted to as much herself. Tr. 591:19–592:7. Moreover, beyond the Section 230 challenge made against her, Heredia testified to not having any contact or communications with Defendants or their volunteer challenger in Banks County. Tr. 582:24–583:4.

Thus, as far as TTV's Section 230 challenge of Heredia, the Court finds the evidence overall supports a challenge to her voting eligibility. Plaintiffs have notably not challenged the constitutionality of Section 230, and thus the Court would be remiss to say that a challenge to Heredia was outside the scope of Georgia law.

### (3)     Other acts of TTV

Similarly, the Court finds that the evidence of TTV's initiatives regarding whistleblowers, military veterans, and other election related activities fail to show an impact on any Plaintiff or Georgia voter. There is no testimony that any voter heard of or personally read the press releases or announcements made by TTV. To the contrary, all voters who testified discovered the challenge to their eligibility through a means other than TTV and did not attest to any direct contact from TTV. See, e.g., Tr. 201:11–17, 235:3–236:10 (Turner); Tr. 456:20–457:4, 465:13–18 (Stinetorf); Tr. 548:16–549:7, 583:2–4 (Heredia); Tr. 97:4–15, 104:6–105:22 (Berson).

Plaintiffs admitted evidence regarding another organization, Time for a Hero, which Engelbrecht founded (along with Gregg Phillips) in 2018–2019. Tr. 974:16–975:1; see also PX 93, 2 (naming Engelbrecht as the Executive Director for Time for a Hero on a 2019 tax document). On July 19, 2020, Time for a Hero posted on social media that "Crusade for Freedom [was] coming soon[.]" PX 22, 20; see also Tr. 978:13–15. Crusade for Freedom later posted on social media that "[w]e just prospectively challenged the eligibility of 360,000 voters in GA" and "[i]f the Georgia counties refuse to handle the challenges . . . I plan to release the entire

98

list . . . ." PX 45. The Court, as a discovery sanction in a prior order, allowed the adverse inference that there was a connection between Time for a Hero and Crusade for Freedom at the time of the social media posts about releasing the challenged voters' names, overcoming any relevance issue with regards to speaker. Doc. No. [333], 13–14.

The Court's discovery sanction order, however, did not formally admit Plaintiffs' Exhibit 45 into evidence because of an outstanding hearsay objection. Doc. No. [333], 14 n.7. At trial, Plaintiffs argued that these posts were not hearsay because they were not being offered for the truth of matter asserted, but instead as a "threat" that "exacerbates the intimidation." Tr. 1025:12–13. Plaintiffs went on to argue that "it's irrelevant whether the threat actually reflects someone's true action or true intent. It's the statement. It's irrelevant whether it's true. It's the fact that it was publicized." Tr. 1025: 18–21. Defendants responded by arguing that Plaintiffs' Exhibit 45 was clearly offered "for the truth or untruth of the matter asserted[.]" Tr. 1025:14–15.

The Court agrees with Defendants that Plaintiffs' Exhibit 45 must be offered for the truth of the matter asserted for it to be relevant. While certainly Plaintiffs could submit these social media posts for purposes of establishing the

99

reaction of someone who read or received them, no such evidence of any reaction has been admitted in this case. As indicated, there is no evidence that anyone saw or read these posts at all. There is no evidence that these posts were intended to reach any voter to be an attempted intimidation under Section 11(b). Thus, if they are not admitted for their truth value (i.e., that Crusade for Freedom in fact intended to release the challenged voters' names if the counties did not pursue the challenges), then the Court cannot find they are relevant for any effect on the listener. Accordingly, Plaintiffs' Exhibit 45 is excluded from evidence.[52]

Thus, Plaintiffs have provided no compelling evidence that TTV's election-related activities in the period preceding the Senate runoff election had any effect or reached any Georgian voter.[53]

---

[52]  The Court maintains concerns about the potential releasing of challenged voter names. Cf. Doc. No. [222], 62 n.28 (discussing concerns about release of names from open records requests). In the Court's view, releasing the names of Georgia voters challenged under Section 230 has enormous implications for potential voter intimidation in future cases. Such evidence is just not properly (or persuasively) present in this case.

[53]  Fair Fight indicated that it had received calls from "voters who were being challenged . . . [who] felt this activity was threatening." Tr. 52:20–22. The Court finds this one statement by Fair Fight's representative without more specific information of the voter's circumstances to be insufficient evidence to show that TTV's efforts were intimidating Georgia voters. Indeed, this one assertion gives no detail about how many voters had called Fair Fight with the challenges in mind, any voter's circumstances of being challenged, how they discovered he or she was challenged, or other relevant

100

### 2.   *Davis and Somerville Voter Challenges*

As far as Davis's and Somerville's Section 230 challenges are concerned, the Court finds it must assess these challenges independent of the TTV challenges. The Court first addresses its separate treatment of Davis's and Somerville's activities, and then weighs its factual determinations relating to Davis and Somerville.

### a)   <u>Davis's and Somerville's separate and district activities from TTV</u>

The Court concludes that the TTV efforts and the Davis and Somerville efforts were separate, and that liability is not shared between these two sets of Defendants. This finding is largely based on the fact that the actual act of intimidation alleged against Davis and Somerville here—challenging Georgia voters—occurred independent of True the Vote and Engelbrecht, even though the public announcements of the two efforts occurred around the same time and the two groups communicated frequently before the Senate runoff election to draw greater attention to the Georgia voter rolls.

---

information to assess the reasonableness of one's fear or intimidation. This statement cannot, and does not, carry Plaintiffs' burden in this case.

101

First, there is no dispute that the TTV list and the Davis and Somerville lists are different. In fact, Somerville and Davis completed their Section 230 challenge list *before* meeting TTV and Engelbrecht. Tr. 1124:6–24, 1637:8–11. Somerville and Davis thereafter did not make any changes to their list after this meeting. Tr. 1485:17–1486:3. Somerville did not "have a tremendous amount of insight into how [TTV's list] was construed" (Tr. 1158:13–15) and until trial preparation, he had not seen the TTV list (Tr. 1486:4–10). Similarly, Davis does not know the details of how TTV's list was crafted. Tr. 1657:25–1658:2.

Somerville and Davis discussed their opinions that the TTV list was too big, even "systemic" (Tr. 1157:5–9) and that they would not have used TTV's methods themselves. Tr. 1157:21–23 ("There were conditions that True the Vote used per my understanding that we did not. And there were reasons why we excluded some of the individuals that they included."); 1659:9–15 ("[TTV's challenge list] was broader than I would have personally done myself."); see also PX 58. The two most prevalent differences in the two lists involved inactive voters or voters who did not cast a ballot in the 2020 general election, both of

102

which Davis and Somerville excluded from their list and TTV included.[54] Tr. 1158:4–8, 1667:19–1668:6. Somerville indicated some concern over the Board of Elections being overwhelmed by the number of challenges TTV intended. Tr. 1162:8–16. Davis likewise thought the larger the challenge, the less likely the Boards of Elections would act on it. Tr. 1659:9–15. Nevertheless, Somerville does not take any issue with TTV's use of the NCOA dataset, which he has "a tremendous amount of confidence in" (Tr. 1158:23–24) and Davis disclaimed that he had ever thought the TTV challenges were "illegitimate" (Tr. 1659:16–18).

Nor does the Court find that Somerville and Davis collaborated with TTV in recruiting volunteer challengers. Somerville relied on volunteers from his personal connections and posts made on his social media accounts (Tr. 1165:22–24), whereas TTV dispatched Defendants Ron Johnson and James Cooper to obtain volunteers. See, e.g., PX 42. The only part of TTV's recruitment of volunteers that Somerville could testify to was the involvement of Johnson,

---

[54] Englebrecht testified that if Davis and Somerville had included these two categories of voters—inactive voters and voters who did not cast a ballot in the 2020 general election—on their list, then the TTV list and the Davis and Somerville list would have had the same number of potentially ineligible voters. Tr. 1819:18–1820:13, 1823:9–13. There is no independent evidence supporting this statement, however, and Englebrecht is not tendered as an expert in this case. Thus, the Court does not consider this lay witness conclusion in its analysis.

who initially introduced TTV and Somerville. Tr. 1492:8–11. While there is some overlap in their volunteers (PX 92, 16; Tr. 1142:1–24), it was not "total" overlap. PX 92, 16. This overlap is unsurprising because many of TTV's recruited challengers Somerville had known for a long time and it was "a pretty small pool of people" involved. Tr. 1142:21–22. Somerville disagreed that "many of [the Somerville and Davis] challenge volunteers were also True the Vote's volunteer challengers." Tr. 1142:6–12.

As far as personal interactions, Somerville attended the introduction dinner with Engelbrecht. Thereafter, on December 16, 2020, Davis and Somerville both participated in a call with Engelbrecht, Somerville, and non-Party Gregg Phillips titled "Elector Challenge Alignment." Tr. 1124:3–24, 1674:12–1675:14; see also PX 6. Davis also attended a Zoom town hall meeting around December 20, 2020. Tr. 1675:15–21; PX 79. To the extent Davis maintained any connection to TTV, it was because of a mutual interest in election integrity. Tr. 1658:2–1659:8. Davis even declined to be part of a TTV team in Georgia. PX 97, 38:22–39:5. Somerville remained in contact with Engelbrecht regarding their independent Section 230 efforts. See PX 47, 8–10 (describing Somerville's communications with TTV and Engelbrecht following their introduction); see also PX 92.

104

TTV published Somerville's and Davis's names in its announcement of the Section 230 challenges on December 18, 2020. PX 42. This announcement references both Defendants Davis and Somerville and their own effort to ensure the accuracy in voter rolls. PX 42. Somerville himself reviewed this announcement and encouraged Davis's name be included. Tr. 1135:2–8, 1489:6–1490:15. The announcement indicates that all Defendants in this case "pitched in" for the voter challenges. PX 42. This announcement is really the only statement connecting the two group's voter challenges in this case.

To be sure, there is temporal overlap between the Somerville's and Davis's efforts and those of TTV. There are even communications between the two efforts and evidence of corresponding actions. See, e.g., PX 92. Following the submissions of challenges, Somerville "provide[d] some updates" to TTV about counties' acceptance or rejection of challenges. Tr. 1143:14–22. Somerville, however, disclaimed that they worked closely with TTV on the voter eligibility challenges. Tr. 1486:11–23 (denying that TTV and Somerville and Davis did "daily stand-up meetings," compared their NCOA voter lists, coordinated volunteers, or had phone calls with OPSEC group).

Thus, other than a number of communications and meetings between the completion of their list and the Senate runoff election (and this lawsuit), little to no evidence connects Davis's and Somerville's challenges to TTV's challenges. See, e.g., PX 104, 32:22–33:4 ("Mark [Davis] and I [Derek Somerville] were absolutely investigating the data at that time independent of True The Vote, independent of True The Vote's data, independent of their people, their resources—completely independent of them."), PX 92 (recounting communications between Somerville and Engelbrecht during the period before the Senate runoff election). The Court finds the connection between Davis's and Somerville's efforts and TTV's efforts to challenge Georgia voters under Section 230 too attenuated for any liability attributed to TTV to flow to Davis and Somerville. The Court specifically finds that these were two distinct efforts, aimed at the same purpose (i.e., reduce voter fraud and pursue election integrity) with the same general avenue of achieving that purpose (i.e., Section 230 challenges).

**b)**     **Davis's and Somerville's Section 230 challenges**

Davis and Somerville connected in the wake of the 2020 general election and mutually shared a concern over potential voter fraud in Georgia based on a

106

voter list that had not been cleaned in months. Tr. 1629:2–1630:2, 1667:23–25 (indicating that Davis removed voters who "had likely already been evaluated by the Secretary of State prior to June of 2019," which was the last time the voter rolls had been cleaned). The two collaborated, after consultation with legal and legislative authorities on the matter, to facilitate challenges to Georgia voters whose residency in the county in which they were registered to vote was uncertain. Tr. 1635:21–1636:11, 1246:8–23, 1258:13–23. Davis worked with the voter data and registration roles, whereas Somerville utilized his connections and social media platforms to recruit volunteer challengers. Tr. 1508:7–22.

The Court finds that the process that Somerville and Davis underwent to make their challenge files was more careful and deliberate than that of TTV. Plaintiffs submitted no expert testimony assessing the Davis and Somerville list. Cf. Tr. 372:21–23. Instead, Somerville and Davis both convincingly testified that they finalized their voter challenge list after a series of extensive exclusions. Tr. 1159:4–12, 1509:11–1510:14, 1653:1–1654:25. Somerville testified about the funnel they used to exclude as many voters from the initial NCOA list. Tr. 1159:4–12, 1540:5–23. As their goal was to draw attention to an issue in the Georgia voter file, they wished to challenge as few people as possible and ensure that the voters

107

they did challenge had a legitimate basis to be challenged. Tr. 1650:20–25. They did not want to burden voters or Boards of Elections. Tr. 1651:1–6, 1653:4–8. Davis's experience with the Georgia voter roll further reinforces the Court's greater confidence in Davis's process than TTV's process. See, e.g., Tr. 1603:21–23, 1607:1–1609:25.

The Court finds that it is likely eligible voters still remained on Davis and Somerville's list, but in a less concerning number than TTV's list. Per Mayer's expert testimony, problems with removing student voters or even voters who are temporarily relocated for work or military service exist no matter how careful data analytics are conducted. Tr. 400:23–401:2. The Court finds that Davis and Somerville took reasonable efforts to remove eligible voters as part of their overall desire to narrow their challenge file as much as possible and not overly burden the counties where they facilitated Section 230 challenges.

To be sure, in its order granting Plaintiffs' motion for sanctions, the Court allowed an adverse inference that Gregg Phillips from OpSec Group thought Davis's process was bad and that Phillips would have undergone the analysis differently (i.e., better). Doc. No. [333], 17. The Court takes this fact as established for purposes of this Order. However, the Court weighs Phillips's opinion about

108

Davis's process very little. First, while Phillips did not testify as a witness at trial, he did testify under oath regarding potential sequestration issues during the course of trial. See Tr. 1309:11–1332:4. The Court found his demeanor during his testimony to be non-credible and unreliable. Moreover, Phillips's deposition testimony is only afforded the weight of a lay witness[55] and the Court finds Davis's lay testimony more believable than Phillips' testimony. Thus, the Court finds that Davis made a reasonable effort to ensure only ineligible voters were on his challenge file—even if those efforts did not perfectly omit all eligible voters.

In total, Somerville and Davis facilitated volunteer challengers in around 40 counties in Georgia. Tr. 1171:12–23. Once a challenger had volunteered, Davis and Somerville made the list of potentially ineligible voters they had crafted available to the volunteer. Tr. 1169:23–1170:7. Often this list was emailed, but

---

[55] Indeed, in its order granting Plaintiffs' motion for sanctions, the Court rejected Plaintiffs' proposed inference "that Phillips 'considered' Davis's 'challenge process to be invalid and unreliable.'" Doc. No. [333], 11; see also id. at 11–12 (explaining that the redrafted inference allowed was "better supported by the context of the testimony and avoids any improper expert conclusions on the 'reliability' or 'invalidity' of an empirical process. Indeed, Plaintiffs have been incredibly prophylactic in this case about limiting lay witnesses from testifying about the reliability of the data methods used to craft voter challenge lists" and that "Phillips was not tendered as an expert in this case and making an adverse inference about his impression of the 'reliability' of a process would be part-and-parcel of the improper expert testimony that the Court has disallowed from Davis, Somerville, and Phillips himself.").

under certain conditions, the list was too large and they shared access to a Google Drive and Dropbox with the list of voter challenges. Tr. 1169:23–1170:7. Neither Davis nor Somerville knew how many people could access the voter file, but both were certain that access was limited. Tr. 1479:3–13, 1679:5–20. Moreover, it is unclear how many challenges were actually submitted from Davis's and Somerville's lists because they did not follow-up with the volunteer challengers and only a handful of volunteers confirmed that the challenges had in fact been made (and in some cases, rejected by the county Board of Elections). Tr. 1171:7–11, 1262:2–15.

c)      <u>Davis's and Somerville's voter contact</u>

The only voter who Plaintiffs submitted any evidence connecting Davis's and Somerville's Section 230 challenges to is Plaintiff Heredia. Somerville acknowledges that their list resulted in challenges in Banks County and that Heredia was on that list. Tr. 1172:7–15. For the same reasons as indicated regarding TTV's challenge of Heredia, however, the Court determines that an inquiry into her voter registration in Banks County was not unreasonable. <u>See</u> Section (II)(C)(1)(c)(2) *supra*.

110

The Court has already determined that Davis's and Somerville's efforts did not reach Muscogee County. Doc. No. [222], 29–31. While Plaintiff still tried to submit evidence that Somerville's and Davis's challenge list included the Muscogee County voters in this case, Somerville unequivocally denied facilitating any challenger in Muscogee County, in large part because he did not "have a reach in Muscogee County" and they did not receive any volunteers in Muscogee County. Tr. 1178:14–16; see also Tr. 1178:2–8 (asserting that many voters on their lists "never saw the light of day" given a lack of volunteer in a county). The Court reiterates that it has already rendered summary judgment in Davis's and Somerville's favor with regards to any contact with Muscogee County voters through Section 230 challenges.[56]

Accordingly, the Court finds that, per the evidence presented, Davis and Somerville made no contact or communication with any voter in this case. See, e.g., PX 97, 171:17–21 ("I would encourage people to avoid any kind of contact

---

[56] Somerville posted on Facebook that after "formal challenges" have been filed in counties then "all documentation will be public." PX 34, 4. At trial, Somerville explained that this statement reflected his "belief that ultimately the Government is going to disclose information as it's the public's information." Tr. 1187:23–25. The Court credits Somerville's explanation of this post and does not find this post to be a threat of releasing challenged voters' names.

111

with these voters unless it's done by an elected official or a county official or someone conducting an official investigation.").

## III.   CONCLUSIONS OF LAW

Having made its factual findings, the Court now turns to its legal conclusions. The Court makes its conclusions of law in the light of Plaintiff's burden of proof in this case. Plaintiffs must show by a preponderance of the evidence that Defendants violated Section 11(b) of the Voting Rights Act. See Langston ex rel. Langston v. ACT, 890 F.2d 380, 383–84 (11th Cir. 1989) (noting that the plaintiff in a § 1983 suit bears the burden of "prov[ing] his case by a preponderance of the evidence" at trial); League of United Latin Am. Citizens #4552 v. Roscoe Indep. Sch. Dist., 123 F.3d 843, 846 (5th Cir. 1997) (indicating that in the Voting Rights Act context, the plaintiff was "required to prove by a preponderance of the evidence that all of the Gingles preconditions were satisfied"); Swaters v. Osmus, 568 F.3d 1315, 1323–24 (11th Cir. 2009) ("The [affirmative] defense must be established by a preponderance of the evidence.") The Court ultimately finds that Plaintiffs have not met their burden to show that there has been a violation of Section 11(b) by any of the named Defendants in this case.

112

A.     **Legal Standards Section 11(b)**

Section 11(b) provides: "No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote . . . ." 52 U.S.C. § 10307(b). Thus, the VRA's prohibition extends to actual intimidation and attempted intimidation.[57]

At the time Congress passed Section 11(b):

> To "intimidate" mean[t] to "make timid or fearful," or to "inspire or affect with fear," especially "to compel action or inaction (as by threats)." To "threaten" mean[t] to "utter threats against' or 'promise punishment, reprisal, or other distress." And to "coerce" mean[t] to "restrain, control, or dominate, nullifying individual will or desire (as by force, power, violence, or intimidation)."

Nat'l Coal. on Black Civic Participation v. Wohl, 498 F. Supp. 3d 457, 477 (S.D.N.Y. 2020) (internal citations omitted) (quoting Webster's Third New International Dictionary, 1183, 2381 438 (1966)); see also United States v. Harvey,

---

[57]  The Court incorporates the following from its summary judgment order to its findings of fact and conclusions of law: "Section 11(b) prohibits acts of intimidation, threats, and coercion. To remain succinct, the Court may refer to Section 11(b)'s prohibitions as only 'intimidation' (or 'coercion,' or 'threats') with the understanding that when one prohibited act is referenced, the Court is implicating Section 11(b) broadly." Doc. No. [222], 4–5, n.5.

113

250 F. Supp. 219, 236–37 (E.D. La. 1966) (asserting, around the time of Section 11(b)'s passage, "[t]he word 'intimidate' is defined by Webster as 'to frighten; to make timid or fearful; to inspire or affect with fear; to deter, as by threats.' The word 'threat' is defined as 'the expression of an intention to inflict evil or injury on another; menace; threatening; denunciation.' To 'threaten' is 'to utter threats against; promise punishment, reprisal, or the like.' And to 'coerce' is 'to restrain by force; to repress; to curb; or to compel to any action.'").

The Court previously noted that the "clearest articulation of a Section 11(b) test" (Doc. No. [222], 14) came from a district court opinion on a motion to dismiss out of the Southern District of New York, National Coalition on Black Civic Participation v. Wohl, 512 F. Supp. 3d 500 (S.D.N.Y. 2021). In Wohl, the district court determined "intimidation includes messages that a *reasonable* recipient, familiar with the context of the message, would *interpret as a threat* of injury—whether physical or nonviolent—*intended to deter individuals from exercising their voting rights*." Id. at 509 (emphasis added). The Wohl court went on to explain that these illegal acts "may take on many forms," and can include "actions or communications that inspire fear of economic harm, legal repercussions, privacy violations, and even surveillance can constitute unlawful

114

threats or intimidation under the statute." Id. (citing United States v. Beaty, 288 F.2d 653, 656 (6th Cir. 1961)).

Given the fact-specific nature of Section 11(b) cases, the Court outlined guidance for the Parties, based on the summary judgment evidence, specifying the showings Plaintiffs would need to make to succeed in their Section 11(b) claim: (1) that Defendants' actions directly or through means of a third-party in which they directed, (2) caused, or could have caused, (3) any person to be reasonably intimidated, threatened, or coerced from voting or attempting to vote.[58] Based on the facts peculiar to this case—as apparent in the summary

---

[58] Unbeknownst to the Court at the time, the day before the Court issued its summary judgment order in this case, the Wohl court granted summary judgment to plaintiffs on their Section 11(b) claim. In Wohl, the defendants had made a series of Robocalls to tens of thousands of voters in numerous states, warning voters "to 'beware of vote by mail,'" and threatening legal, economic, and physical consequences for voting-by-mail. Nat'l Coal. on Black Civic Participation v. Wohl, --- F. Supp. 3d. ---, No. 20 CIV. 8668 (VM), 2023 WL 2403012, at *20 (S.D.N.Y. Mar. 8, 2023). Wohl held that these Robocalls constituted voter intimidation because "[u]nderpinning the legal, economic, and bodily consequences that [d]efendants articulated through the Robocall was the notion that voting by mail put voters at risk of increased surveillance and scrutiny, exposing their private data to any entity seeking to utilize that information in nefarious ways." Id. at *22.

Also following the Court's summary judgment order in this case, one of its sister district courts determined that no private right of action exists under Section 11(b). Andrews v. D'Souza, No. 1:22-CV-04259-SDG, 2023 WL 6456517, at *11 (N.D. Ga. Sept. 30, 2023) ("The Court agrees that there is no identifiable link between the rights created under Section 11(b) of the VRA and any statutory language demonstrating

115

judgment record evidence—the Court anticipated that in order for Plaintiffs to be successful on their Section 11(b) claim, they must overcome these three hurdles. The Court will address these three showings in the light of the trial evidence in its analysis below.

"[S]tanding is jurisdictional," however. <u>Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.</u>, <u>524 F.3d 1229, 1232</u> (11th Cir. 2008) (quoting <u>Cone Corp. v. Fla. Dep't of Transp.</u>, <u>921 F.2d 1190, 1203</u> n. 42 (11th Cir. 1991)). Thus, the Court first turns to the standing inquiry.

> **B.**    **Plaintiffs' Standing to Sue Under Section 11(b)**

The Court addresses Plaintiffs standing to sue based on the trial evidence. <u>Jacobson v. Fla. Sec'y of State</u>, <u>974 F.3d 1236, 1246</u> (11th Cir. 2020) ("[T]he facts necessary to establish standing . . . must not only be alleged at the pleading stage, but also proved at trial." (second alteration in original) (quoting <u>Gill v. Whitford</u>,

---

congressional intent to provide a private remedy for a violation of those rights. Accordingly, the Court concludes that there exists no private right of action under Section 11(b) of the VRA."). Other district courts, however, have held to the contrary. <u>See</u>, <u>e.g.</u>, <u>Krabach v. King Cnty.</u>, No. 2:22-CV-1252-BJR, <u>2023 WL 7018431</u>, at *3 (W.D. Wash. Oct. 25, 2023). And Defendants have not raised the private right of action issue in this case.

Neither the <u>Wohl</u> court's summary judgment order or the <u>Andrews's</u> decision, however, causes the Court to significantly alter the standards it previously put forth in the summary judgment order.

116

138 S. Ct. 1916, 1931 (2018))). Standing requires Plaintiffs show an injury in fact (that is both "concrete and particularized" and "actual and imminent"), as well as a causal connection between the injury and conduct at issue, and that the injury can be redressed by a favorable decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992).

As the Court has determined that the TTV Defendants are to be treated separately from Defendants Davis and Somerville, the Court must ensure that trial evidence supports the elements of standing as to both sets of Defendants. Stevens v. Osuna, 877 F.3d 1293, 1310 (11th Cir. 2017) (concluding "the district court committed no error in dismissing [p]laintiff's injunctive relief claim for lack of standing" when "the district court[ ] [determined] that [p]laintiff failed to allege facts sufficient to demonstrate that *each defendant* had committed a constitutional violation . . . ." (emphasis added)); Coffie v. Fla. Crystals Corp., 460 F. Supp. 3d 1297, 1305 (S.D. Fla. 2020) ("Plaintiffs must still show that the injuries they allege are fairly traceable to each Defendant.").

Most importantly, the Court concludes that Plaintiff Heredia has satisfied the standing requirements as to both Defendants based on the trial evidence. She has asserted an injury-in-fact caused by both the TTV Defendants and

117

Defendants Davis and Somerville in the Section 230 challenges made by both efforts against her. Cf. Jacobson, 974 F.3d at 1246 ("'[A] person's right to vote is individual and personal in nature,' so 'voters who allege facts showing disadvantage to themselves as individuals have standing to sue.'" (quoting Gill, 138 S. Ct. at 1929)). She moreover continues to reside in Georgia and thereby any injunctive relief granted against Defendants making future Section 230 challenges (or other efforts aimed at Georgia at issue in this case) would redress the injury caused by the conduct alleged in this case against Georgia voters.

When the standing of one plaintiff has been shown, moreover, it is unnecessary to consider if the other plaintiffs have standing to sue. See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264 n.9 (1977); Am. C.L. Union of Ga. v. Rabun Cnty. Chamber of Comm., Inc., 698 F.2d 1098, 1108–09 (11th Cir. 1983); Town of Chester v. Laroe Estates, Inc., 581 U.S. 433, 439 (2017). Thus, the Court need not further assess in great detail the other Plaintiffs' standing to sue derived from the trial evidence.

The Court notes that Plaintiff Scott Berson has not (and indeed could not have) shown standing as to Defendants Davis and Somerville because there has

118

been no evidence that Davis's and Somerville's Section 230 challenge list was filed in Muscogee County. See Doc. No. [222], 29–31.

Moreover, Fair Fight asserts standing under the organizational standing doctrine. See Doc. No. [318], ¶¶ 432–440 (proposing as the Court's findings of fact and conclusions of law that "Plaintiff Fair Fight, Inc. has organizational standing"). "[A]n organization has standing to sue on its own behalf if the defendant's illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts." Common Cause/Georgia et al. v. Billups, et al., 554 F.3d 1340, 1350 (11th Cir. 2009) (quoting Fla. State Conf. of NAACP v. Browning, 522 F.3d 1153, 1165 (11th Cir. 2008)); see also Black Voters Matter Fund v. Raffensperger, 508 F. Supp. 3d 1283, 1290 (N.D. Ga. 2020) ("Under Eleventh Circuit law, a litigant can establish organizational standing to challenge election laws by showing it has or will have to divert time, personnel, or other resources from its usual projects to assist voters whose ability to vote is affected by State action."). In the summary judgment order, the Court hinted that the harm protected by Section 11(b) does not readily apply to an organization and that Fair Fight would have to show at trial how it was injured by Defendants' actions under Section 11(b). Doc. No. [222], 17 n.11.

119

Here, while Fair Fight submitted adequate trial evidence that it has diverted, and continues to divert, resources on account of *TTV's* actions (see, e,g., Tr. 49:1–15, 55:1–58:24) it has not put forth any trial evidence that *Defendants Davis's and Somerville's* actions have caused it to divert resources. Fair Fight representative, Cianti Stewart-Reid's, testimony did not mention Defendants Davis or Somerville, let alone indicate that Fair Fight diverted resources to address their voter challenges or communications, either before the Senate runoff election or currently. See generally Tr. 42:18–79:6. Plaintiffs' proposed finding that Fair Fight has shown standing to sue Davis and Somerville relies on the Court finding that Davis's and Somerville's actions were connected to TTV for purposes of liability. Doc. No. [318], ¶ 439 (proposing the Court conclude that "[b]ecause the Court has found that all Defendants—including Ms. Engelbrecht, Mr. Williams, Mr. Cooper, Mr. Johnson, Mr. Somerville, and Mr. Davis—assisted True the Vote in launching and amplifying its challenges, the Court finds that Fair Fight has satisfied the traceability requirement as to these Defendants as well."). The Court has refused to make such a finding. See Section (II)(C)(2)(a) *supra*.

120

Thus, Plaintiffs Fair Fight and Berson have not shown trial evidence of standing to sue Defendants Davis and Somerville. Again, however, because Plaintiff Heredia has shown standing to sue Davis and Somerville, the case against Davis and Somerville continues. Moreover, because Heredia and Fair Fight have shown standing to sue the TTV Defendants, there is sufficient basis for the case to proceed to the merits, at the very least, based on these Plaintiffs' standing to sue. The Court thereby proceeds with its merits review of the Plaintiffs' Section 11(b) claim in this case.

### C.   **Defendants' Actions**

The Court now turns to answer the question presented in this matter: did Defendants unlawfully intimidate, coerce, or threaten any voter, or attempt to do so?

The Court organizes its assessment of Plaintiffs' evidence into two categories of intimidating conduct: first, Plaintiffs' evidence regarding Section 230 voter challenges, and second, Plaintiffs' evidence of other conduct, namely press releases and other social media postings in the period before the Senate runoff election. The Court now addresses each of these categories of conduct for each set of Defendants and determines whether they give rise to

121

Section 11(b) liability. Ultimately, for both the TTV Defendants and Defendants Davis and Somerville, the Court concludes it does not.

### 1.    *Section 230 Challenges*

The Court has determined that, for liability purposes, TTV's Section 230 challenges are distinct from the Section 230 challenges facilitated by Davis and Somerville. <u>See</u> Section (II)(C)(2)(a) *supra*. As a legal matter, however, the same difficulties present themselves for finding either TTV or Davis and Somerville liable under Section 11(b) based on the trial evidence in this case. Plaintiffs' arguments suggest that any mass challenge of voters near an election (especially if negligently or recklessly made) constitutes intimidation or an attempt to intimidate. The Court disagrees for the following reasons.

### a)    <u>The county Boards of Election as an intermediary</u>

Plaintiffs' most evident problem in their Section 11(b) claim is Georgia law itself, which allows voter challenges and dictates the procedure with which they are assessed.[59] <u>See</u> <u>O.C.G.A. § 21-2-230(a)</u> (2019) ("Any elector of the county or municipality may challenge the right of any other elector of the county or

---

[59] In this case, Plaintiffs have not made any argument challenging Section 230 under the Supremacy Clause, or as unconstitutional.

122

municipality[.]"). Specifically, O.C.G.A § 21-2-230 does not limit in any relevant way the number of voter challenges or their proximity to an election.[60] Thus, mass challenge by voters themselves in the weeks before an election is permissible under Section 230.[61]

---

[60] Neither does Section 230 require any particular quality control over the challenges made. The only statutory requirement is that the challenge "specify distinctly the grounds of such challenge[.]" O.C.G.A. § 21-2-230(a). Thus, even though the Court finds that TTV failed to make reasonable quality control efforts in creating their voter files, they still, based on the trial evidence, provided the reason for the challenges submitted to counties. See, e.g., PX 71 (Mark Williams challenge in Gwinnett County indicating a question of voter eligibility "[b]ased on available data from the United States Postal Service and other commercially available sources . . . ."). At that point, the determination to pursue an eligibility inquiry (or conversely, to dismiss a challenge as being without probable cause) is left with the county Boards of Elections. See O.C.G.A. § 21-2-230(b) (2019).

In making this conclusion, the Court, in no way, is condoning TTV's actions in facilitating a mass number of seemingly frivolous challenges. The Court, however, cannot under the operative legal framework say that these actions were contrary to Georgia law (which is unchallenged by Plaintiffs).

[61] The Georgia General Assembly subsequently amended Section 230 to make clear that there was no numerical limitation on voter challenges. O.C.G.A. § 21-2-230(a) (2021) ("There shall not be a limit on the number of persons whose qualifications such elector may challenge."). Moreover, Section 230's only temporal limitation is that challenges must be made "prior to the elector whose right to vote is being challenged voting at the elector's polling place or, if such elector cast an absentee ballot, prior to 5:00 P.M. on the day before the election." O.C.G.A. § 21-2-230(a) (2019); see also O.C.G.A. § 21-2-230(a) (2021) (amending the time to challenge a voter who votes by absentee to "5:00 P.M. on the day *before the absentee ballots are to begin to be scanned and tabulated* . . . .").

123

In this way, on its face, Section 230 permitting voter challenges appears to be in tension with the requirements imposed on Georgia (under federal law) and the county Boards of Elections (under Section 230 itself). The State of Georgia could not have systematically removed voters in this case (per the NVRA[62]) and the county Boards of Elections must determine if probable cause exists on a voter challenge to pursue further action inquiring of a voter's eligibility (O.C.G.A. § 21-2-230(b) (2019)). A voter challenge, however, does not contradict these other legal requirements for a simple reason: a Section 230 challenge determines nothing about a voter's eligibility to vote, nor does it have an immediate impact of removing a voter from a registration list. For a Section 230 challenge, the ultimate decision to pursue an inquiry into a voter's eligibility to vote rests in the county Board of Elections.[63] O.C.G.A. § 21-2-230(b) ("Upon the

_____

[62] The NVRA restricts Georgia from systematically removing voters 90-days before an election and outlines procedures for the use of NCOA data in the list maintenance process. 52 U.S.C. § 20507(c)–(d). None of the Defendants in this case however are subject to the NVRA. Thus, the Court does not find the NVRA's requirements superimpose or contradict O.C.G.A. § 21-2-230 (2019). Nor is there any evidence that Defendants showed a complete disregard for the NVRA's requirements on Georgia's voter list. See, e.g., PX 104 119:9–123:10 (Somerville recounting his understanding of the NVRA).

[63] The State of Georgia, moreover, in the period before an election can remove *individual* voters for appropriate reasons. See 52 U.S.C. § 20507(c)(2)(B) (allowing removals during

124

filing of such challenge, the board of registrars shall immediately consider such challenge and determine whether probable cause exists to sustain such challenge. If the registrars do not find probable cause, the challenge shall be denied.").

Thus, based on the evidence submitted in this case—that TTV directed the Section 230 challenges on behalf of volunteer challengers and that Davis and Somerville facilitated volunteers to submit Section 230 challenges—the Court cannot conclude that TTV's challenges or Davis's and Somerville's challenges alone had a direct effect on any voter. Under Georgia law, it is not the voter who makes the challenge (*or the entity that facilitates the challenge*) who causes a voter to provide additional information regarding his or her eligibility to vote in a particular county. That is a decision left to the county Boards of Election alone.[64]

---

the 90-day quiet period if the voter requests to be removed, for criminal conviction or mental incapacity, or death).

[64]    Indeed, throughout trial, witnesses—lay and fact, Plaintiffs and Defendants—affirmed their understanding that county Boards of Election make the determination of what to do with a voter challenge under Georgia law. See, e.g., Tr. 53, 78 (Fair Fight representative, Stewart-Reid); Tr. 1563–64 (Defendant Somerville); Tr. 1641–42 (Defendant Davis); Tr. 456–57, 468 (Stinetorf's challenge being overturned by Board); Tr. 389 (Dr. Mayer); Tr. 604 (Dr. Burton). On this point, the Court finds Ryan Germany's testimony based on his experience working in the Secretary of State's office to be particularly compelling. Tr. 501:23–25 ("Georgia law places [the probable cause] determination in the county board of elections. And so they have to weigh that, make that determination for themselves."); Tr. 505:5–22 (testifying of the county Boards of Elections' "discretion in terms of weighing the evidence and determining how they

125

And each county Board of Elections may (and the evidence shows did) treat Section 230 challenges differently. O.C.G.A. § 21-2-230(b).

This intermediary between the challenger and the eligibility inquiry—the county Boards of Election—creates a significant causation issue for Plaintiffs' case. It impugns the direct connection between the alleged intimidating conduct by Defendants and the voter allegedly intimidated, and breaks the chain of causation for purposes of establishing liability for voter intimidation.[65]

Plaintiffs evidence illustrates these problems. Particularly, the evidence shows that before the Senate runoff election, county Boards of Elections treated the Section 230 challenges differently. For example, with respect to Muscogee

---

move forward" within the bounds of relevant laws and regulations).

[65] The Court herein incorporates the legal bases purported in its summary judgment order for the requirements that Defendants directed the actions that caused the intimidation. Doc. No. [222], 19–20 & 23–25. Specifically, the Court highlights the citations to Wohl, which asserted "courts have concluded that conduct putting others 'in fear of harassment and interference with their right to vote' constitutes intimidation 'sufficient' to support a Section 11(b) claim." 498 F. Supp. 3d at 480. Wohl then proceeded to compare Section 11(b) to the Fair Housing Act, which requires "showing that the [defendant's] activities had generated fear in the [plaintiff]." Id. at 482 (alteration in original). The Court also emphasizes the common refrain regarding Section 11(b)—that it generally attributes to Defendants the natural consequences of their actions, which implies a causation requirement. Cf. e.g., Katzenbach, House Judiciary Statement ("[D]efendants [are] deemed to intend the natural consequences of their acts.").

126

County, the Court took judicial notice of a federal court order, issued prior to the Senate runoff election, which required the Board to inform challenged voters that they had been challenged.[66] Doc. No. [304-1], 17 (ordering, as of December 30, 2020, in a federal lawsuit, that the Muscogee County defendants must "advise any voter whose eligibility has been challenged" of the challenge and process for resolving it). In Banks County, Plaintiff Heredia did not discover she had been challenged until she arrived to vote. In Cobb or Gwinnett Counties, it is possible (even likely) that a voter *still* does not know he or she had been challenged because the counties did not take any action on the challenges made.[67]  See PX 105, 63:13–15 (Gwinnett County did not act on Williams' challenges); Tr. 992:3–7 (Cobb County rejected challenges). It is also possible that some county Boards of Election independently determined that there was no probable cause

---

[66] There is no evidence that any of the Muscogee County voters in this case became aware of their challenge pursuant to this court order. The Court instead intends its reference to this court order as exemplary of different ways counties may treat Section 230 challenges.

[67] If the Court had found that Plaintiff Jane Doe's evidence carried any weight in this case, Clarke County's treatment of the submitted voter challenges likewise supports a conclusion that the county Boards of Election act as an intermediary. See PX 78, ¶ 8 ("[M]y county, Clarke County, rejected the challenge to my eligibility shortly after the challenges were filed, [and so] the challenge did not prevent me from voting in the Runoff Election.").

127

to support the voter challenges, and thus did not contact or other prevent the challenged voters from voting.

No evidence was submitted that TTV, Davis, Somerville, or any recruited volunteer challenger had control over, attempted to manipulate these county Boards of Election, or otherwise acted to overcome this break in causation. To the contrary, for the most part, Defendants' Section 230 challenges were unsuccessful at inquiring into the eligibility of voters to vote. In fact, Defendant Williams, who submitted TTV's challenges in Gwinnett County, attended the public hearing on his challenges and was ultimately displeased with Gwinnett County's decision to decline his challenges. Tr. 1352:5–19. TTV itself considered suing Cobb County for not acting on the challenges (though no evidence proves this lawsuit was ever filed). Tr. 992:3–7. Defendants' lack of success in these Section 230 challenges highlights the lack of control Defendants and its volunteers had over the challenges once they were submitted.[68]

---

[68]  The Court does not mean to indicate that a Section 230 challenge must be successful to incur liability under Section 11(b), but that here the great unsuccess of Defendants' efforts shows how little control they had over what the county Boards of Elections did with their challenges.

The causation issues with Plaintiffs' case are even more acute for the Davis and Somerville challenges. Unlike True the Vote who *itself* submitted the challenges on behalf of a volunteer challenger (see Section (II)(C)(1)(b) *supra*), Davis and Somerville did not directly file the Section 230 challenges they facilitated. Instead, they gave their challenge list to the volunteer, who then made the submission to the county Boards of Election. Tr. 1168:8–15. To date, Davis and Somerville are not sure how many challenges were actually made from their lists because they only received follow-up information from a handful of volunteer challengers. Tr. 1171:7–11, 1262:2–15. Thus, in the case of Davis and Somerville, it could be said that there were *two* outcome-determinative intermediaries between Davis and Somerville and the Georgia voter challenged: the volunteer challenger and the county Board of Elections. Without evidence that Davis and Somerville controlled or directed behaviors of either, the Court concludes that holding them liable under Section 11(b) is inapposite.

Thus, based on the evidence provided and the structure of Section 230 challenges, the Court cannot say Defendants submitted these challenges as an act of intimidation toward any voter given the intermediary of the county Board of Elections.

129

       **b)**    <u>**Evidence of intimidation or attempted intimidation**</u>

Additionally, the Court concludes that Plaintiffs' Section 11(b) claims against Defendants fail on the evidence adduced at trial because they have not shown Defendants intimidated or attempted to intimidate "any voter." Plaintiffs emphasize Defendants are liable under Section 11(b) based on their attempts to intimidate, specifically given that the mass challenges were made recklessly and in close proximity to the election. The Court concludes otherwise.

The Court recalls the definitions of Section 11(b)'s prohibited conduct articulated above (<u>see</u> Section (III)(A) *supra*). Specifically, the statute prohibits Defendants from intimidating (threatening or coercing) or attempting to intimidate (threaten or coerce) any voter, which would include making a voter fearful, compelling voter action or inaction, promising reprisal or distress, or restraining, controlling, or dominating a voter. <u>Wohl</u>, <u>512 F. Supp. 3d at 509</u>. Given the statutorily imposed intermediary of the county Boards of Elections in the Section 230 process—and the lack of evidence that Defendants had any control over or took any action to affect the Boards' decisions—Defendants' Section 230 challenges could not have reasonably attempted to *compel* voter

130

action, to *promise* any adverse effect, or to assert other means of *control* over a voter. O.C.G.A. § 21-2-230(b).

Thus, the remaining avenue for Section 11(b) liability in this case would be that Defendants actions attempted to make any voter "timid or fearful." Wohl, 512 F. Supp. 3d at 509. Here, the evidence is lacking on a number of fronts: Plaintiffs' evidence only connects Defendants' actions to *one* voter who testified at trial (Plaintiff Heredia) and, even if the evidence connected Defendants' actions to the other Muscogee County voters in this case, there is no evidence that Defendants attempted to make any of the voters in this case feel timid or fearful, or that they experienced any actual reasonable intimidation.[69]

The Court addresses the Muscogee County voters first and then Plaintiff Heredia in Banks County. Finally, the Court concludes that it is legally

---

[69] The Court reiterates that it does not consider Jane Doe's self-serving affidavit that was not subject to cross-examination to carry any relevant weight in its decision regarding individual voter intimidation. See Section (II)(B)(1)(a)(4) *supra*. Assuming that the Court were to consider the evidence relating to Plaintiff Jane Doe, however, the evidence is lacking for the Court to confidently conclude that Davis and Somerville or TTV successfully launched a challenge in Clarke County.

Nor does the Court find Fair Fight's assertion that voters were calling the organization feeling that the challenges to their vote was intimidating to be sufficient evidence to carry *Plaintiffs'* burden of showing Defendants' intimidation in this case. See note 53 *supra*.

131

insufficient to rely on the mass scale voter challenges to show voter intimidation or attempted voter intimidation under Section 11(b).

### (1)    Defendants and the Muscogee County voters

Plaintiffs' evidence largely fails to connect Defendants' actions to the voters in this case. In fact, of the challenged voters who testified, three of the four were from Muscogee County. The Court previously granted summary judgment to Defendants Davis and Somerville on acts of intimidation against Muscogee County voters because the undisputed facts showed that they did not facilitate any Section 230 challenges in Muscogee County. Doc. No. [222], 29–31.

Moreover, the Court has found that the trial evidence fails to connect TTV to any challenges in Muscogee County. While the Muscogee County voters testified to their personal knowledge that a man named Alton Russell challenged them, Plaintiffs did not connect Russell to TTV. See Section (II)(C)(1)(c)(1) supra. Without proper evidentiary support connecting TTV to the Muscogee County challenger, the Court cannot find it more likely than not that TTV facilitated the challenge to these Muscogee County voters.

Accordingly, there is no evidence that Defendants made Section 230 challenges to the testifying Muscogee County voters for the Court to find that

Defendants attempted to make these voters timid or fearful of voting in the Senate runoff election.[70]

### (2)   *Banks County and Plaintiff Heredia*

Plaintiffs did elicit testimony and evidence that both Davis and Somerville and TTV facilitated separate Section 230 challenges in Banks County, and that Plaintiff Heredia was on both lists. Thus, the Court turns to the question of

---

[70]  Moreover, even if the Court were to find that such evidence had been submitted, Plaintiffs have not proven that Defendants attempted to make the Muscogee County voters timid or fearful, nor is there sufficient evidence that the Muscogee County voters felt timid or fearful of voting. Two of the three voters merely testified to being confused or inconvenienced by the challenge, and feeling like they had been accused of doing something wrong Tr. 119:821, 130:3–8 (Berson); Tr. 453:13–24, 458:5–9 (Stinetorf). Such experiences, while certainly difficult, does not rise to a reasonable degree of fear or intimidation for Section 11(b) liability to incur.

Gamaliel Turner was the only voter who testified that the Court could even possibly conclude experienced reasonable fear in being challenged as a voter. He testified that the challenge to his vote caused him "[a]nguish" and "[c]onfusion" and even "PTSD from having to revisit the '60s[.]" Tr. 202:1–3. The Court finds Turner's testimony to be compelling. In fact, absent the causation and directness problems discussed elsewhere, it is possible that Turner's testimony would be sufficient to support a conclusion that the Section 230 challenge against him attempted to intimidate him as a voter. The Court, however, remains hesitant to make this conclusion given that Turner also attributed his discomfort with being challenged to realizing that "the process is not working . . . it's a continued problem" and then defining this problem as the registrars' failure to forward an absentee ballot to his address on the NCOA form (an act not attributable to Defendants). Tr. 302:10–24. In short, given the variety of legal impediments with Plaintiffs' evidence in this case and the unclear factual basis for Turner's expressed fear, the Court cannot find that it is more likely than not that Defendants intimidated or attempted to intimidate Turner.

133

whether these voter challenges attempted to make Heredia timid or fearful, or actually made Heredia timid or fearful. The Court concludes they did neither.

As far as the attempt to make Heredia timid or fearful, the Court has found that the facts in this case show Defendants submitted a reasonable challenge to Heredia. Heredia had lived and worked in Atlanta for three-years at the time of the Senate runoff election and all public information indicated her residency around Atlanta, and hence there was a reasonable question about Heredia's proper residency for voting purpose. <u>See</u> Section (II)(C)(1)(c)(2) *supra*.

Heredia also recounted experiencing fear while voting. Her fear, however, existed *prior* to discovering she had been challenged as a voter because she was a minority voter in a majority-white county. Tr. 584:10–25 Heredia explained her "fear" after discovering the challenge to her vote was because she had to provide additional documentation to vote—that is, she experienced additional "hoops" to overcome that other voters did not have. Tr. 585:18–24.

The Court previously indicated that the voter intimidation for Section 11(b) liability must be reasonable. Doc. No. [222], 17; <u>see also</u> <u>Wohl</u>, <u>498 F. Supp. 3d at 477</u> ("[T]hreats and intimidation include messages that a *reasonable recipient* familiar with the context of the message would interpret as a threat of injury

134

tending to deter individuals from exercising their voting rights." (emphasis added)). While the additional "hoops" Heredia experienced are frustrating and prolonged her voting experience, the Court cannot conclude that such constituted *reasonable* intimidation for Section 11(b) liability purposes.[71]

> ### (3)   *General evidence of mass challenges and voter intimidation*

The Court further concludes that neither Dr. Mayer's or Dr. Burton's testimony on the general adverse effect of mass challenges on voters alone carries Plaintiffs' burden to establish a Section 11(b) case. To be sure, Mayer testified that the size of the challenge "almost certain[ly]" had the effect of making it *more difficult* for voters to vote. Tr. 371:1–5. While the Court believes that actions increasing the difficulty to vote if paired with other conduct might give rise to a Section 11(b) violation in some circumstances, increased difficulty alone does not constitute voter intimidation. The Court has already determined (and will further

---

[71] Nor does the Court conclude that the fact Heredia has not voted in an election since the Senate runoff election (Tr. 555:13–18) should alter its conclusion given that (a) the county Board of Election stood as a causal intermediary between Defendants and Heredia's voter challenge, (b) the challenge to Heredia's eligibility reflected a legitimate question about her residency for voting, and (c) there is no evidence of further actions by Defendants since the Senate runoff election that would reasonably cause her to remain fearful or timid of voting.

135

make clear *infra*) that no such conduct on part of Defendants has been proven here.

Burton's conclusions that the voter challenges may be intimidating given the historical context of voter challenges is well taken. Tr. 627:21–628:14. But ultimately, this historical context without specific evidentiary support of voter intimidation in this case leaves Plaintiffs' burden unmet. While Burton's testimony provides useful context for Section 230 challenges and may be considered in support of an intimidation claim, it is legally insufficient on its own to find Section 11(b) liability for the mass challenges here.

Plaintiffs also contend that Defendants' attempt to submit challenges in all Georgia counties supports finding attempted voter intimidation. The Court finds this submission to be unpersuasive as a legal matter.[72] Plaintiffs suggest using the requirements for criminal attempts to assess attempted voter intimidation. See Doc. No. [318], ¶ 538 ("[F]ederal courts have recognized the elements of attempt in criminal cases include (i) the specific intent to engage in the prohibited

---

[72] The Court's prior finding about the insufficiency of Fair Fight's testimony about generally receiving calls from challenged voters who felt intimidated further supports that broad, general evidence indicating that otherwise lawful voter challenges under Georgia law are intimidating is not enough for Plaintiffs to have met their burden in this case. See note 53 *supra*.

136

conduct, and (ii) a substantial step taken toward the commission of the offense."

(citing <u>United States v. St. Hubert</u>, <u>909 F.3d 335, 351</u> (11th Ci<u>r. 2018</u>), <u>abrogated</u>

<u>on other grounds by United States v. Taylor</u>, <u>142 S. Ct. 2015</u> (2022))). Contrary to

Plaintiffs' application of these elements, however, the prohibited action under

Section 11(b) is attempted *voter intimidation*—not attempted voter challenges

otherwise valid under Georgia law. The Court finds no legal support for the

proposition that Section 11(b)'s imputes liability when a plaintiff shows that a

defendant's actions merely attempted to affect a large number of the voting

populace. There still must be some evidence that a defendant's otherwise lawful

action intimidated or attempted to intimidate "*any voter*." <u>52 U.S.C. § 10307(b)</u>

(emphasis added). Thus, the Court finds that the arguments Plaintiffs make about

mass voter challenges being broadly made across Georgia (i.e., to affect a large

number of Georgian voters)—without some compelling evidence of intimidation

(or attempted intimidation) of any voter—to be insufficient for Section 11(b).

### c)     Conclusion on Section 230 challenges

The Court concludes that Defendants' Section 230 challenges made in this

case do not violate Section 11(b). To be sure, the Court does not mean to suggest

that Section 230 challenges can never be a violation of Section 11(b). Nor is the

137

Court wishing to imply that the manner in which Defendants made these challenges should be permissible under the Georgia law—that is a question for the Georgia General Assembly, not this Court.[73] But the Court must apply the relevant law, and here it merely concludes that based on the evidence before it, there is insufficient evidence to show voter intimidation or attempted voter intimidation by Defendants against the voters in this case. Not only have Plaintiffs failed to overcome the fact that their actions did not result in any direct voter contact or alone include or direct county Boards of Elections to pursue an eligibility inquiry, but there is no evidence that Defendants' actions caused (or attempted to cause) any voter to be intimidated, coerced, or threatened in voting. Consequently, the Court concludes that the Section 230 challenges made by Defendants do not support finding a violation of Section 11(b) of the Voting Rights Act.

---

[73] To be sure, the text of O.C.G.A. § 21-2-230, especially as amended in 2021, does not clearly reflect Ryan Germany's testimony that voter challenges are intended to be *individualized* matters. Tr. 498:19–24, 499:13–15.

138

## 2. Other Actions By Defendants: Public Communications and Postings

This conclusion does not end the matter, however, because Plaintiffs also submit a number of public communications made by both TTV and Davis and Somerville that they argue constitute voter intimidation. Thus, the Court must also assess if this evidence is sufficient to show voter intimidation by Defendants. The Court starts with the TTV Defendants and concludes with Davis and Somerville.

### a) True the Vote's public communications

The trial evidence shows that TTV issued a series of public statements—in written press releases or on podcasts hosted by Engelbrecht—that discussed ensuring ballot integrity, recruiting military veterans and former law enforcement officers as poll watchers, establishing a whistleblower fund for reports of fraud, and challenging more than 360,000 voters in Georgia under Section 230. See, e.g., PX 25; PX 26; PX 35; PX 37; PX 42.

The Court finds the recent Wohl summary judgment decision to be particularly persuasive in its analysis of TTV's public communications, namely for its differences to the instant case. Wohl found undisputed evidence of voter

139

intimidation under Section 11(b) when defendants made Robocalls to voters that warned of "several specific and foreboding consequences of voting by mail." Wohl, 2023 WL 2403012, at *20. Here, rather than direct specific phone calls at voters, TTV issued large scale press releases and hosted a publicly available podcast both of which were accessible by anyone. Hence TTV's actions were not directed at any particular voter. A direct call to a voter's phone number communicating "specific and foreboding consequences" for voting is categorically differently from a public social media announcement or a podcast episode that did not mention any voters by name, identify personal information of any voter, or convey any adverse consequences for voting.

Moreover, none of the challenged voters who testified at trial indicated that they saw or heard TTV's public communications.[74] Nor had they been contacted by TTV or any of its representatives. Tr. 104:6–105:22 (Berson); Tr. 582:24–583:4 (Heredia); Tr. 464:5–465:24 (Stinetorf); Tr. 235:3–236:10 (Turner). Sure, a few voters testified that they had heard about the mass challenges in their counties through news reports. See, e.g., Tr. 95:21–96:23 (Berson). But there is no

---

[74] See note 53 supra.

evidence that TTV reached out to these newspaper outlets, made any county-level specific attempts to broadcast the names of voters on its lists itself, or otherwise attempted to make the challenged voters' names known. <u>See</u> Section (II)(C)(1)(c)(3) *supra*.[75]

Finally, the Court has First Amendment concerns about finding TTV's announcements made in public social media forums to be illegal in this case.[76] For sure, the First Amendment does not protect all speech. And relevantly, "[t]rue threats of violence, everyone agrees, lie outside the bounds of the First Amendment's protection." <u>Counterman v. Colorado</u>, <u>600 U.S. 66, 72</u> (2023).

---

[75]  Even if the Court were to admit the Crusade for Freedom social media post threatening to release challenged voters' names if the counties did not act on the challenges (PX 45), it would not change the Court's conclusion. While, as a matter of adverse inference, the Court has found a connection between Time for a Hero (an organization Engelbrecht founded and was, at one point, affiliated with) and Crusade for Freedom, there is no evidence that Crusade for Freedom ever released any voters' names or that any voter in Georgia saw this post to be intimidated by it. In the alternative, therefore, that the Court considers this inadmissible hearsay evidence (<u>see</u> Section (II)(C)(1)(c)(3) *supra*), the Court does not find it proves a Section 11(b) violation here.

[76]  Plaintiffs primarily engage with Defendants' First Amendment defense in relation to the Section 230 challenges made. <u>See</u>, <u>e.g.</u>, Doc. No. [318], ¶¶ 558–563. The Court, however, has already concluded that the challenges do not violate Section 11(b) and so there is no need for the Court to determine (and the Court in fact declines to determine) if a First Amendment defense would otherwise protect Defendants' actions.

141

Plaintiffs, however, have not shown Defendants' statements are true threats because there is no evidence they were intended to be violent, or made with a *mens rea* of at least recklessness.[77] While Plaintiffs submitted evidence of TTV's recklessness in making the Section 230 challenges, they have submitted no similar evidence of recklessness in TTV's public communications and social media posts.[78] Thus, the First Amendment reinforces a conclusion that TTV is not liable under Section 11(b) for its public social media posts.

### b)   Davis's and Somerville's public communications

Davis and Somerville also made a variety of social media posts about their challenges and concerns over voter fraud in Georgia.[79] See generally, e.g., PX 33;

---

[77]  The Supreme Court has recently required a *mens rea* of at least recklessness for criminal prosecutions implicating speech. See Counterman, 600 U.S. at 79–80.

[78]  For the same reason (among others), neither do these announcements fall under the defamation exception to First Amendment speech. Counterman, 600 U.S. at 80 ("Using a recklessness standard [for true threats] also fits with the analysis in our defamation decisions. As noted earlier, the Court there adopted a recklessness rule, applicable in both civil and criminal contexts, as a way of accommodating competing interests.").

[79]  In another post, Defendant Somerville redacted identifying information about a voter he names "Dave." PX 34, 1. The post suggests "Dave" is registered to vote in Georgia and North Carolina. PX 34, 1. While it appears that Somerville is referencing an actual voter, the redactions remove all personal identifying information except "Dave's" race and gender. There is no evidence that Somerville otherwise publicly disclosed this voter or any other voter's personal information. Thus, the Court concludes this one heavily redacted post, while not encouraged, is insufficient to show voter intimidation.

142

PX 34; PX 41. In one post highlighted by Plaintiffs, Somerville references the Section 230 challenges being made public. PX 34, 4. However, the Court found that Somerville was referencing public information requests made to government entities, not releasing voter information himself.[80] See note 56 *supra*.

To the contrary, there is prolific evidence that Davis and Somerville *did not* intend for challenged voters' information to be made public. See PX 103, 73:1–14 (Somerville rejecting that he would have ever "list[ed] the 39,000 individual names" of challenged voters on Facebook because it "would have been too inflammatory, and it would have been counter to the intent of the effort"), 87:2–7 ("Certainly I didn't think that the Boards of Elections were going to nail these lists on the front door, and I don't know that they did that. But I think all exchange with the government ultimately needs to be public."); PX 97, 164:22–165:8 (Davis acknowledging that challenges may be part of an open records request but that he was "not aware of challengers who put [lists] on the internet or published them in a newspaper[.]"); PX 98, 139:18–19 (Davis attesting

---

[80]  Nor is there any evidence that Somerville knew that these public information request would in fact occur or directed any voter to make such request in order to make challenged voter's information public.

143

"I don't have any control over Open Records Requests to county governments."). If a citizen or news outlet made a public information request and received a challenged voter's information by this means, such request is not an action attributable to Davis and Somerville that constitutes intimidation under Section 11(b). Thus, the Court concludes that the evidence of Davis and Somerville's public postings during the relevant time period does not support finding Section 11(b) liability here.[81]

### 3.    Summary of Conclusions on Section 11(b) Liability

In sum, the Court concludes that no action taken by the Defendants in this case constitute voter intimidation under Section 11(b). The Court will not hold Defendants liable for the combination of actions Plaintiffs submit given that the Court has concluded there is such a lack of evidentiary support. Plaintiffs have not overcome the hurdle that Section 230 makes the county Boards of Election an intermediary between the challenge submitted and the voter. Nor have Plaintiffs sufficiently shown that any voter in Georgia was reasonably intimidated by Defendants' actions. The Court thereby concludes that Plaintiffs did not carry

---

[81]  The Court's aforementioned First Amendment concerns also reinforce its conclusion that the Davis and Somerville social media posts were not intimidating conduct under Section 11(b).

144

their burden to show a Section 11(b) claim against any of the named Defendants in this case.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that there has not been any violation of Section 11(b) of the Voting Rights Act by any of the named Defendants in this case. Accordingly, the Court **DIRECTS** the Clerk to enter judgment in favor of Defendants and against Plaintiffs.

**IT IS SO ORDERED** this 2nd day of January, 2024.

_____
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**

145

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| FAIR FIGHT INC., SCOTT BERSON, JOCELYN HEREDIA, and JANE DOE, | |
| Plaintiffs, | CIVIL ACTION FILE |
| v. | NO. 2:20-CV-0302-SCJ |
| TRUE THE VOTE, CATHERINE ENGELBRECHT, DEREK SOMERVILLE, MARK DAVIS, MARK WILLIAMS, RON JOHNSON, JAMES COOPER, and JOHN DOES 1-10, | |
| Defendants. | |

## JUDGMENT

This action having come before the Court for a bench trial on Plaintiffs' claim against Defendants brought under Section 11(b) of the Voting Rights Act, the Honorable Steve C. Jones presiding, and the issues having been tried and the Court having found no violation and having rendered its verdict in favor of Defendants,

It is **ORDERED AND ADJUDGED** that **JUDGMENT** is entered in favor of **DEFENDANTS** and against Plaintiffs in accordance with this Court's Order of January 2, 2024, and

**ORDERED AND ADJUDGED** that Defendants recover the costs of this action, and the action be, and the same hereby, is **DISMISSED**.

Dated at Atlanta, Georgia this 2nd day of January, 2024.

KEVIN P. WEIMER
CLERK OF COURT

By: _____
Pamela Wright
Deputy Clerk

Prepared, filed and entered
in the Clerk's Office
January 2, 2024.
Kevin P. Weimer
Clerk of Court

By: _____
Pamela Wright
Deputy Clerk

-2-

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

| | |
|---|---|
| FAIR FIGHT, INC., JOCELYN HEREDIA, SCOTT BERSON, and JANE DOE, | |
| Plaintiffs, | Civil Action No. 2:20-cv-00302-SCJ |
| v. | |
| TRUE THE VOTE, INC., CATHERINE ENGELBRECHT, DEREK SOMERVILLE, MARK DAVIS, MARK WILLIAMS, RON JOHNSON, and JAMES COOPER, | |
| Defendants. | |

## PLAINTIFF'S NOTICE OF APPEAL

Pursuant to 28 U.S.C. § 1291 and Rules 3 and 4 of the Federal Rules of Appellate Procedure, Plaintiff FAIR FIGHT, INC. hereby gives notice of its appeal to the United States Court of Appeals for the Eleventh Circuit from the order entered by the district court on January 2, 2024, granting judgment in favor of Defendants. *See* Order (ECF No. 336) (attached as Ex. 1). Plaintiff appeals the judgments in favor of TRUE THE VOTE, INC., and CATHERINE ENGELBRECHT.

Respectfully submitted this 1st day of February, 2024.

Allegra J. Lawrence
Georgia Bar No. 439797
Leslie J. Bryan
Georgia Bar No. 091175
Maia Cogen
Georgia Bar No. 832438
Michelle L. McClafferty
Georgia Bar No. 161970
**LAWRENCE & BUNDY LLC**
1180 West Peachtree Street, Suite 1650
Atlanta, GA 30309
Telephone: (404) 400-3350
Fax: (404) 609-2504
allegra.lawrence-hardy@lawrencebundy.com
leslie.bryan@lawrencebundy.com
maia.cogen@lawrencebundy.com
michelle.mcclafferty@lawrencebundy.com

*/s/ Uzoma N. Nkwonta*
Marc E. Elias*
Uzoma N. Nkwonta*
Christina A. Ford*
Tina Meng Morrison*
Marcos Mocine-McQueen*
Jacob D. Shelly*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW
Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
melias@elias.law
unkwonta@elias.law
cford@elias.law
tmengmorrison@elias.law
mmcqueen@elias.law
jshelly@elias.law


*Counsel for Plaintiff*
*Admitted *pro hac vice*

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

FAIR FIGHT INC., SCOTT BERSON,
JOCELYN HEREDIA, and JANE
DOE,

        Plaintiffs,

        v.

TRUE THE VOTE, CATHERINE
ENGELBRECHT, DEREK
SOMERVILLE, MARK DAVIS,
MARK WILLIAMS, RON JOHNSON,
JAMES COOPER, and JOHN DOES
1-10,

        Defendants.

CIVIL ACTION FILE

NO. 2:20-CV-0302-SCJ

## JUDGMENT

This action having come before the Court for a bench trial on Plaintiffs' claim against Defendants brought under Section 11(b) of the Voting Rights Act, the Honorable Steve C. Jones presiding, and the issues having been tried and the Court having found no violation and having rendered its verdict in favor of Defendants,

It is **ORDERED AND ADJUDGED** that **JUDGMENT** is entered in favor of **DEFENDANTS** and against Plaintiffs in accordance with this Court's Order of January 2, 2024, and

**ORDERED AND ADJUDGED** that Defendants recover the costs of this action, and the action be, and the same hereby, is **DISMISSED**.

Dated at Atlanta, Georgia this 2nd day of January, 2024.

KEVIN P. WEIMER
CLERK OF COURT

By: _____
Pamela Wright
Deputy Clerk

Prepared, filed and entered
in the Clerk's Office
January 2, 2024.
Kevin P. Weimer
Clerk of Court

By: _____
Pamela Wright
Deputy Clerk

-2-

# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF GEORGIA
#### 201 UNITED STATES COURTHOUSE
#### 121 SPRING STREET, SE
#### GAINESVILLE, GEORGIA 30501-3789

KEVIN P. WEIMER
DISTRICT COURT EXECUTIVE
 AND CLERK OF COURT

DOCKETING SECTION
678-450-2760

February 2, 2024

Clerk's Office
U.S. Court of Appeals
Eleventh Circuit
56 Forsyth Street, NW
Atlanta, Georgia     30303

**U.S.D.C. No.: 2:20-cv-0302-SCJ**
**U.S.C.A. No.: 00-00000-00**
**In re:        Fair Fight, Inc. et al v. Engelbrecht et al**

Enclosed are documents regarding an appeal in this matter.   Please acknowledge receipt on the enclosed copy of this letter.

| | |
|---|---|
| X | **Certified copies of the Notice of Appeal, Clerk's Judgment, Opinion & Order and Docket Sheet appealed enclosed.** |
| ____ | This is not the first notice of appeal. Other notices were filed on . |
| ____ | There is no transcript. |
| X | **The court reporters are Shannon R. Welch, Viola S. Zborowski, Keisha M. Crump, Geraldine Glover, David Ritchie, Jana B. Colter** |
| ____ | There is sealed material as described below: . |
| ____ | Other: Original record A/V Record Exhibits transmitted pursuant to request.   (See attached copy of request.) |
| X | **Fees HAVE been paid electronically 2/01/24. (Receipt# BGANDC-13198166)** |
| ____ | Appellant has been   leave to proceed *in forma pauperis*. |
| ____ | This is a bankruptcy appeal.   The Bankruptcy Judge is . |
| ____ | The Magistrate Judge is . |
| X | **The District Judge is Steve C. Jones.** |
| ____ | This is a **DEATH PENALTY** appeal. |

Sincerely,

Kevin P. Weimer
District Court Executive
and Clerk of Court

By:   /s/Shane Gazaway
      Deputy Clerk